**IN THE UNITED STATES DISTRICT COURT**

**FOR THE NORTHERN DISTRICT OF CALIFONIA**

| | |
|---|---|
| The People of the State of California, et al | ) ) ) |
| Plaintiffs, | ) ) ) |
| v. | ) Case No. [4:23-cv-05448-YGR] ) |
| Meta Platforms, Inc. et al | ) ) |
| Defendants. | ) ) ) |



**REPLY TO STATES' RESPONSE TO PRO SE MOTION TO INTERVENE**

**I. INTRODUCTION**

On November 1st, 2023, the Plaintiff-Intervenor, Conghua Yan, filed a Motion to Intervene [ECF No. 35]. On November 15th, 2023, 33 state attorneys general (the States) filed Opposition/Response to Motion to Intervene. In the Plaintiff-Intervenor's Motion to Intervene, the Plaintiff-Intervenor stated his motion should be granted either as Intervention as of Right pursuant to FRCP rule 24(a)(2) or Permissive Intervention pursuant to FRCP rule 24(b)(1)(B).

**II. STANDARD OF REVIEW**

(a) Intervention of Right. On timely motion, the court **must** permit **anyone** to intervene who: (2) claims **an** interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action **may** as a practical matter impair or impede the **movant's ability** to protect **its interest**, unless existing parties adequately represent that interest.

(b) Permissive Intervention. (1) In General. On timely motion, the court **may** permit **anyone** to intervene who: (B) has a **claim** or defense that shares with the main action **a** common question of law or fact.

**III. ARUGMENTS AND AUTHORITIES**

**A. FRCP rule 24(a)(2) is a right which this Court has no discretion**

Under rule 24(a)(2), the States raised three arguments as following,

- Yan Has No Significantly Protectable Interest Under Rule 24(a).

- The States' Public Enforcement Action Does Not Impact Yan's Claims because Yan Can File a Separate Action.
- The States Best Represent Public Interests.

The Plaintiff-Intervenor contends that Rule 24(a)(2) guarantees a **right** that allows **anyone** to intervene if all the requirements are met. The Plaintiff-Intervenor argues that this right cannot be taken away by the will of other parties, regardless of any sovereign authority claimed by the States. This Court does not have the discretion to balance interests between private plaintiffs and government entities (the States).

Fed.R.Civ.P. 24(a)(2). "[T]he requirements of Rule 24(a)(2) may be broken down into four elements, each of which must be demonstrated in order to provide a non-party with a right to intervene: (1) the application must be timely; (2) the applicant must have a `significantly protectable' interest relating to the transaction(property) that is the subject of the litigation; (3) the applicant must be so situated that the disposition of the action may, as a practical matter, impair or impede the applicant's ability to protect its interest; and (4) the applicant's interest must be inadequately represented by the parties before the court." *Smith v. Marsh*, 194 F.3d 1045, 1049 (9th Cir. 1999).

**(1) the application must be timely;**

The States did not oppose the "timely" clause in its Response. Therefore, the Plaintiff-Intervenor needs not argue this point.

**(2) the applicant must have a `significantly protectable' interest relating to the transaction(property) that is the subject of the litigation;**

Reading from the States' pleading, the subject of the litigation is very clear, including but not limited to "Meta social medial platform"; "business model"; "algorithms"; "advertising promoting or appearing on" etc. All of these features and its platform are either transaction or property.

In the pleading, the States says, "Meta's **algorithms** apply not only to material generated by users but also to **advertisements**. As Sandberg expressed in a 2019 earnings call, "[a]cross all of our platforms and formats, we're investing in AI [artificial intelligence] to make ads more **relevant** and **effective**. In Q4, we developed new AI ranking models to **help** people see ads they're **more likely** to be **interested in**.""

The Plaintiff-Intervenor alleged that Meta through its flagship Social Media Platform Facebook harnessed "powerful and unprecedented technologies" in a motivation of "profit, and in seeking to maximize its financial gain", "while falsely assuring the public that its features were safe and suitable" to young and adult users, "ignored the sweeping damage these Platforms have caused to the mental and physical health of our nation's youth." All these quoted citations were from the States' pleading.

The States' claims are related to Meta social medial platform's features are too pulling to the young users, which is an internal directional force, the States seeks an action to change it. The Plaintiff-Intervenor's claims are related to Meta social medial platform's features are too dangerously pushing to the young users, which is an external directional force, the Plaintiff-Intervenor seeks an action to change it. If the States believe changing the internal directional force of product features is significant, Plaintiff-Intervenor argues that changing the external directional force of product features is equally significant.

Pursuant to *1964(a)* and *Fed. R. Civ. P. 65(d)*, the Plaintiff-Intervenor has an interest in seeking declaratory or injunctive relief that could result in enjoining Meta's social media platform from using powerful and unprecedented technologies to continue its unsafe and unsuitable interstate distribution of obscene materials. The significance of this type of relief interest is plainly evident.

The States argues that Fed.R.Civ.P. 24(a)(2) "requires that the asserted interest be 'protectable under some law' and that there exist 'a relationship." Pursuant to *1964(a)* and *Fed. R. Civ. P. 65(d)*, the Plaintiff-Intervenor has an interest in seeking declaratory or injunctive relief that could result in enjoining Meta's social media platform from using powerful and unprecedented technologies to continue its unsafe and unsuitable interstate distribution of obscene materials. The States already admitted in its Response, that "halting Meta's misconduct—an interest many members of the public share." the Plaintiff-Intervenor further argues that an interest of many members is unquestionable significant.

The States admitted that a relationship exists "only if the resolution of the plaintiff's claims will actually affect the [proposed intervenor]." Since the States are the parties seeking the resolution of their claims, to deny this relationship, they bear the burden of proof to demonstrate that their actions will not affect the Plaintiff-Intervenor.

The States admitted that "a law enforcement action designed to protect the public and not to benefit private parties" and "holding that if a wrong is private in nature and does not affect the public, the claim is not actionable". But this is not what RICO act says. Racketing activities is never a wrong is private in nature and does not affect the public, because it is targeting "the same or similar purposes, results, participants, victims, or methods of commission," *H. J. Inc. v. Northwestern Bell Telephone Co.*, 492 U.S. 229. "Interstate distribution of obscenity materials" is a public wrong. When the States pursue further law enforcement actions, Congress has provided criminal remedies under *1963* to protect the public, as well as civil remedies under *18 1964* to benefit private parties. The States attempted to mischaracterize the Plaintiff-Intervenor's claim without arguing the specific facts of the *1961* predicated acts.

When the States stated in section A of their Response, by saying that "the States have brought a public enforcement action entirely distinct from any protectable interest Yan may have," they acknowledged that the predicated acts under *1961* are not within the States' interests. This is irrespective of the possibility that the "Interstate distribution of obscene materials" might have reached the residents of these States. The States suddenly changed to a different tone in subsequent section C of their Response, by saying "When the government is representing the public, there is an "**assumption of adequacy**." Arakaki, 324 F.3d at 1086." To accept the States' opposition, this Court would need to adopt the States' illogical concept that two separate interests can be distinct yet both adequate. The Plaintiff-Intervenor cannot argue two contradictory points.

Even though this Court concluded that the Plaintiff-Intervenor failed to make a sufficient claim regarding "**significantly protectable' interest**", this Court has held that, "It is an **entrenched principle** that pro se filings " 'however inartfully pleaded' are held 'to less stringent standards than formal pleadings drafted by lawyers.' " Hughes v. Rowe , 449 U.S. 5, 9, 101 S.Ct. 173, 66 L.Ed.2d 163 (1980) (per curiam) (quoting Haines v. Kerner , 404 U.S. 519, 520, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972) ); Hamilton v. United States , 67 F.3d 761, 764 (9th Cir. 1995). We are specifically directed to "construe pro se pleadings liberally."Hamilton , 67 F.3d at 764. This **duty** applies equally to **pro se motions** and with special force to filings from pro se inmates. See, e.g. , Thomas v. Ponder , 611 F.3d 1144, 1150 (9th Cir. 2010) ; Zichko v. Idaho , 247 F.3d 1015, 1020 (9th Cir. 2001)." *United States v. Qazi*, 975 F.3d 989, 992-93 (9th Cir. 2020).

The Plaintiff-Intervenor argues that he is entitled to file an amendment to fix the deficiency if there is any.

> (3) **the applicant must be so situated that the disposition of the action may, as a practical matter, impair or impede the applicant's ability to protect its interest;**

"Miller v. Fairchild Industries, Inc., 797 F.2d 727, 738 (9th Cir. 1986) (issues raised for first time in reply brief generally not addressed)" *Adriana Intern. Corp. v. Thoeren*, 913 F.2d 1406, 1414 n.6 (9th Cir. 1990). The States wanted to dispose Plaintiff-Intervenor's intervention action, but they never prove that this disposition of the action absolutely will not impair or impede the applicant's ability to protect its interest. The magic keyword clause here is "may". The States must prove that it could not impair or impede the applicant's ability to protect its interest at 100%, under all possible theory. Plaintiff-Intervenor only needs to state any possible theory to reach the 1% benchmark, which will fulfill the requirement of "may".

The States argued that their "public enforcement action has no impact on Yan's interests. Individual interests are not impeded or impaired by a pending action when they can be "raise[d] . . . through a separate lawsuit[.]" Warren v. Comm'r of Internal Revenue, 302 F.3d 1012, 1015 (9th Cir. 2002)." In this argument, the States only argued "public enforcement action" has no impact on Plaintiff-Intervenor's interests. However, this is not what was ruled in the Precedential case *Smith v. Marsh*, 194 F.3d 1045, 1049 (9th Cir. 1999). It is written, "impair or impede the applicant's ability to protect its interest." The Plaintiff-Intervenor argues that the "**ability** to protect an interest" is not equivalent to the individual "**interest**" itself. The Plaintiff-Intervenor further argues that the States' counsels do not have an attorney-client relationship with the Pro Se Plaintiff-Intervenor. Therefore, it is not appropriate to provide legal advice to the Pro Se Plaintiff-Intervenor about his legal options, as such advice might mislead a non-client and lead him to a position that is not in their best interest

The States made a conclusory statement by saying, "courts have held that an individual's interests are not impaired or impeded where the proposed intervenor **can** pursue a claim independently from the government." The States also referred the case *Greene v. United States*, 996 F.3d 973, 977-78 (9th Cir. 1993) without context. However, that case says differently. "Where the precedential impact has been clear, we have allowed intervention. In Oregon, we held that **residents** of a state mental health facility **could** intervene in **an action** against the facility **by the federal government**. Because the litigation involved the conditions of the institution." *Greene v. U.S.*, 996 F.2d 973, 977 (9th Cir. 1993). It is never Congress's intention that if Plaintiff is a government entity, "anyone" cannot be an individual. The Plaintiff-Intervenor

argues that "user of Meta Social Media platform could intervene in an action by the States, because this litigation involved the Social Media platform features."

The Plaintiff-Intervenor argues, the "anyone" clause guarantees that an individual (Congress's intention) has the private right of intervention, any pinched construction or narrow readings would in effect eliminate the "anyone" clause. The "petition" clause of First Amendment also guarantees that an individual has the private right to file a petition. Private right of an individual under the Federal law, cannot be taken way upon the States' will, just because the States assert that individual might have other options. "it may violate **due process** by empowering entities that are not courts of competent jurisdiction to deprive citizens of core private rights." *Axon Enterprise, Inc. v. FTC* et al., 143 S.Ct. 890 (**2023**) (No. 21-86) (T HOMAS , J., concurring).

The Plaintiff-Intervenor asserts that disposition of the Motion, impair or impede the applicant's financial and legal ability to protect his interest at his position. The States has pleaded that the contents in the **Meta's Ad Library** is harmful to the children. When the contents of Meta's Ad Library can be subpoenaed in this case, it is also positioned well that the Plaintiff-Intervenor has interest to have access to this type of materials. The information related to "business model" and "algorithms" are can also help the Plaintiff-Intervenor to determine the scale of Facebook's racketeering activities. Participating in this case reduces the financial expenses and litigation efforts for the Plaintiff-Intervenor. Otherwise, the Plaintiff-Intervenor would have to bear the financial burden and undertake the litigation efforts alone, which could damage and/or obstruct his ability to proceed.

The States did not argue the "ability" clause in its Response. Therefore, the Plaintiff-Intervenor needs not argue this point.

**(4) the applicant's interest must be inadequately represented by the parties before the court.**

In the response, the States argued that this is a "action brought by **33** state attorneys general (**the States**). The States have exercised their **sovereign authority** to bring this multistate, civil enforcement action against Meta." The States also admitted that the Plaintiff-Intervenor is a "Texas resident" and "Yan's individual **interests** bear **no** relationship to the **public interests** represented by the States." It is clear that the **sovereign authority** of the 33 state attorneys general (**the States**) does not extend to the State of **Texas**. If the States cannot prove that Yan's

interest is fully represented, then it is considered inadequately represented. When the States acknowledged that Yan's interest is not related to the public interests they represent and "the States have brought a public enforcement action entirely distinct from any protectable interest Yan may have," This admission itself demonstrates that Yan's interest is inadequately represented by the States. Therefore, the Plaintiff-Intervenor needs not argue this point.

### B. FRCP rule 24(b)(1)(B) is permissive this Court has discretion

In the Motion to Intervention, Plaintiff-Intervenor stated,

> *In the alternative, Plaintiff-Intervenor should be granted permissive intervention. Rule 24(b) states that permissive intervention is allowed: when an applicant's claim or defense and the main action have a question of law **or** fact in common . . . In exercising its discretion the court shall consider whether the intervention will **unduly delay** or **prejudice** the adjudication of the rights of the original parties.*

It is very clear that the Plaintiff-Intervenor sought permissive intervention under FRCP rule 24(b)(1)(B), not 24(b)(1)(A).

In the Section II "YAN HAS NO BASIS" of Response, the States raised two arguments as following,

- Yan does not identify a federal statute that provides a conditional right to intervene
- Yan's motion appears to raise questions of law **and** fact that are fundamentally different from those raised by the States.

In the Section II, the States argued that "Yan does not identify a federal statute that provides a conditional right to intervene." The Plaintiff-Intervenor did not seek 24(b)(1)(A). Therefore, the Plaintiff-Intervenor needs not argue this point.

Secondly, the States argued that "*Moreover, as discussed, Yan's motion appears to raise questions of law **and** fact that are fundamentally different from those raised by the States.*" The States intentionally changed the context of FRCP rule 24(b)(1)(B) from **"law or fact"** to "law **and** fact", then raised the arguments "*Yan seeks to insert a RICO claim into this public law enforcement action—a legal theory advanced by none of the States.*" The Plaintiff-Intervenor never claimed the RICO law is common. The Plaintiff-Intervenor needs not argue this point.

Thirdly, the States argued that "*And Yan's proposed legal theory factually appears to derive exclusively from the content published on Meta's platforms (the alleged **obscene** materials "in the form of sponsored **advertisements**"). Mot. at 1. Whereas, in summary, the States allege misconduct stemming from Meta's (1) collection of data from users under thirteen years old without required parental notification and consent; (2) misrepresentations surrounding the safety of its social media platforms; and (3) the deceptive and unfair constellation of features that*

*prolong engagement and lead to youth addiction."* The States attempted to argue there is no fact in common.

    The States seem want to deny their own claims, in ¶747 and ¶748, the States said,

    The FTC promulgated regulations implementing Section 6502(b) of COPPA, including 16 C.F.R. § 312.2, which defines **website or online service** "directed to children" as one "that is targeted to children." The regulation lists factors for determining whether an online service, or a part thereof, is directed to children and therefore subject to the statute's **"verifiable parental consent"** requirement. These factors include:

    subject matter, **visual content**, use of animated characters or child-oriented activities and incentives, music or other audio content, age of models, presence of child celebrities or celebrities who appeal to children, language or other characteristics of the Web site or online service, as well as whether **advertising promoting or appearing** on the Web site or online service is directed to children. The Commission will also consider **competent and reliable empirical evidence** regarding **audience composition**, and **evidence** regarding the **intended audience**.

    An online service is "directed to children" if it "targets children as **one of** its audiences - **even if children are not the primary audience**." Even if a website **claims** to target teenagers or **adults**, "in reality, [the] site may attract a substantial number of children under 13, and thus may be considered [to be] . . . 'directed to children' . . . .

Between ¶ 812 and ¶832, the States said,

- Meta **does not comply with COPPA** with respect to Facebook
- Meta has actual **knowledge of users under age 13** on Facebook
- Facebook is "**directed to children**."
- Meta has published advertising campaigns designed to encourage more children to use its Social Media Platforms like Facebook. Meta touts the **alleged safety of those Platforms**.
- Meta **permits advertisements to be displayed** within Facebook that **feature children** and are directed to children.
- According to **Meta's Ad Library** website, **an advertisement promoting** the PBS Kids television show "Wild Kratts" and the "PBS KIDS Prime Video Channel" was run on Facebook in July 2023, as depicted in the following screenshot:
- Because Facebook is targeted to children, Meta is required to **obtain verifiable parental consent** for its collection of personal information from users under the age of 13

    The Plaintiff-Intervenor argues that Facebook targets children as one of its audiences, therefor Facebook is an online service directed to children. The Plaintiff-Intervenor argues Facebook's visual content of "sponsored advertisements" is **advertising promoting or appearing** on online service. Therefore, this factor is subject to the Section 6502(b) of COPPA statute's "**verifiable parental consent**" requirement. Plaintiff alleged that Facebook distribute interstate obscene materials. Meanwhile, it is very obvious that the States alleged Facebook misconducts by permitting advertisement to be display within Face that feature children as well. The Plaintiff-Intervenor had a question of law (COPPA) **or** fact (permitting advertisement in

**Meta's Ad Library**) in common, does *18 U.S.C. § 1461–1465* violates COPPA as well? If permitting advertisement in Meta's Ad Library feature children without age verification is alleged misconduct by the States, why the States refused to admit that permitting advertisement in Meta's Ad Library feature obscene materials without age verification is alleged misconduct as well? The Plaintiff-Intervenor argues that the States cannot convince this Court, or their own taxpayers, that they have adequately represented the public interest in this case, which seeks remedies against Facebook for their advertisements in Meta's Ad Library featuring children. Yet, they have shown no interest in addressing the issue of featuring pornography. If the States alleged that "Meta has published advertising campaigns designed to encourage more children to use its Social Media Platforms like Facebook," why the States have no subsequent concerns regarding the visual pornography content of "sponsored advertisements?"

Yes, it takes extra work, the Plaintiff-Intervenor gets it. However, isn't 33 attorneys' general's duty to seek justice is done?

At last, the States made a conclusory statement by saying,

> *It would be **infeasible** to litigate such distinct factual issues and **private** legal theories in the same **public** enforcement action brought by the States. And it is **unnecessary** to try to do so, especially when Yan has other means to pursue **private** litigation in either state court or alongside numerous other private claimants in the multi-district litigation. Furthermore, allowing a **private** claimant to intervene and exercise any influence or control over a **public** enforcement action would impede the States' ability and sovereign authority to vindicate the **public** interest. These significant differences underscore why permissive intervention should also be denied.*

The States basically said, it is **workable** to have 33 state attorneys general, to pursue **various** state statues independently, including, but not limited to, Colorado Consumer Protection Act and Georgia Fair Business Practices Act. The States' argument is that it was **feasible** and **necessary** to have 28 plus one, 29 plus one, 30 plus one, 31 plus one, 32 plus one, but it is **infeasible** and **unnecessary** to have 33 plus one. Is this really **unnecessary** to try to do so or **unwilling** to try to do so?

Disallowing individuals to intervene in public actions was never the intention of Congress, nor is it the position of the Ninth Circuit. "Where the precedential impact has been clear, we have allowed intervention. In Oregon, we held that **residents** of a state mental health facility **could** intervene in **an action** against the facility **by the federal government**. Because the litigation involved the conditions of the institution." *Greene v. U.S.*, 996 F.2d 973, 977 (9th Cir. 1993).

If this Court permits the government the privilege of selecting their preferred intervenor in any case, it would undermine the purpose of FRCP Rule 24, constitutes a pinched construction or narrow readings. "The statute is as clear as statutes get" *Axon Enterprise, Inc. v. FTC* et al., 143 S.Ct. 890 (**2023**) (No. 21-86) (GORSUCH, J., concurring). FRCP Rule 24 has no clause relating to preference. Intervention right should never be used as a privilege vehicle for sorting or reconciling parties.

Undoubtedly, the States would not have a problem with adding another new State to the case for any State law claim. However, if this Court denies a claimant's right to intervene based on their identity (as a private individual), as the States desire, such action would demonstrate discrimination against individuals under same statue in this Court. This would constitute a violation of Due Process under the Fourteenth Amendment.

The States have not adequately explained why other States may join the suit, yet an individual is prohibited. Given this, the Plaintiff-Intervenor finds no reason why his motion should be denied.

While the States took two weeks to draft a seven-page response, the Plaintiff-Intervenor completed a ten-page reply in just one day, showcasing efficiency comparable to that of the States.

The Plaintiff-Intervenor argues that the States never analyzed the factors of **undue delay** or **prejudice** in relation to the Plaintiff-Intervenor's motion. Instead, the States only brought up their opinions, deeming it **infeasible** and **unnecessary** against the Plaintiff-Intervenor's identity. This argument seems more like an expression of attitude than a legal analysis. It should not be taken seriously.

### IV. CONCLUSION

For the foregoing reasons, the Plaintiff-Intervenor's Motion to Intervene should be granted.
Respectfully Submitted,

/s/ Conghua Yan        Nov/16/23
[Conghua Yan]
[2140 E Southlake Blvd, Suite L-439]
[Southlake, Texas 76092]
[214-228-1886]
[arnold200@gmail.com]