1  Taiming Zhang (pro se movant)
2  801, No. 21 Taishan Lane, Zhongshan District, Dalian, Liaoning, China
3  TELEPHONE NO.: +8618604267322
4  E-MAIL ADDRESS: nick.705073604@gmail.com
5  *****I **DO** consent to service by email.*****

RECEIVED

MAR 11 2024

CLERK, U.S. DISTRICT COURT
NORTH DISTRICT OF CALIFORNIA

9  IN THE UNITED STATES District Court
10  FOR THE Northern District of California

11  Taiming Zhang              )     Case No. 4:23-cv-05448
12                             )              4:23-cv-05885
13  Movant                     )
14                             )     motion to intervene;
15                             )     ex parte motion for service by
16                             )     US Marshals and to proceed IFP;
17                             )     all motions WITHOUT HEARING

18  1. I move to intervene per FRCP 24 (b) (1) (B). I have "a claim or defense that

19  shares with the main action a common question of law or fact". Specifically,

20  I have a claim that shares with the main action a common question of law.

21  This is an application for Permissive Intervention and is at the discretion

22  of the Court. *As well*, disposing of the action may as a practical matter

23  impair or impede the movant's ability to protect its interest, so I also move

24  to intervene as a matter of right per FRCP 24 (a) (2).

25  The claim is 3:23-cv-00980 in this court (CAND). It is on appeal at the ninth

26  circuit under 23-16125 (pending), and 23-15740 (closed). It was dismissed

27  entirely by the judge JSC, who lied ruthlessly on even what the contract

28  said, deleting contract terms to achieve the false dismissal. I will come back

29  to the conduct of JSC, and trust me it is relevant.

30  2. I have been granted IFP status in that other case. I should be granted the

31  same. I still, because of serious emotional distress caused by *murderer*

32  *Andrew Joseph Bonomolo* {who also has committed so many crimes other

Motion to intervene              - 1 -

LDC7864A11A0AAA.000218.02.37.000000

than murder and fraud including countless occasions of public sex (indecent exposure NC crime), <u>in fact public sex is currently his only source of income, hundreds of 18 USC 2257 violations</u>, driving without a license, owning and driving a vehicle with expired registration, prostitution, solicitation (online advertisement) to prostitution, reckless endangerment and intentional HIV spread, lying or misleading police and submitting a false report (NCGS 14-225 False incl. misleading reports to law enforcement agencies or officers), but the Pittsboro PD of NC AS WELL AS the DOJ and FBI for no proper reason just won't do anything to him; the PD has let him drive without a license for over TWO YEARS now}, and Twitter, and others but mostly them, am suffering from MDD and GAD (medical depression and anxiety) and thus **cannot work or study**. I have **no savings** and own **no property, and have no income**. My financial situation has not changed, and I still am in serious emotional distress. FURTHER, there is VERY real and EXTREME difficulties of serving the <u>MULTIPLE (over 40)</u> other parties <u>as I am situated in China;</u> usually <u>when a party is granted IFP status, it is ordered the US Marshals serves the documents.</u> For these reasons, it is asked I am allowed to proceed IFP and the Marshals serve the documents.

IN THE MEANWHILE, I really hope the state AGs especially NC AG and NY AG will do something about *murderer Andrew Joseph Bonomolo's* countless crimes and will act to stop his endless path and wander of criminality.

In fact his whole family are criminals. For context, he obtains his only source of income with his Toyota car parked at 342 Chatham Forest Drive, Pittsboro, NC, 27312, and he has to physically be there to use the car for criminal public sex (indecent exposure), and whenever he's in NC, he does live there. His mother, Karen Marie White Bonomolo, no longer has legal entitlement to the property that is 342 Chatham Forest Drive, Pittsboro, NC, 27312. This is the result of a Chapter 7 bankruptcy. The loan was discharged. <u>With the loan</u>

LDC7864A11A0AAA.000218.03.37.000000

1   discharged, **cancelled that is**, she doesn't own any legal right to abode at that
2   house anymore. HOWEVER, she continues to live there with Giana Nicole
3   Bonomolo (**second degree burglary NC crime**), and even filed and paid false
4   estate taxes without revealing that she no longer has a loan or any right to
5   that property at all. False taxes and false payment of course are crimes too.

6   For some weird reason, WSFS bank won't do foreclosure, and they have no
7   reason not to act, which is fraud against stockholders and they need to be
8   charged for that fraud.

9   Really, NC is entirely lawless with the tiny little gang like group that is the
10  Pittsboro Police Department in Chatham County. **I really hope y'all can**
11  **step in and charge Giana, Karen, and as well Andrew Joseph**
12  **Bonomolo for the countless crimes they've committed.**

13  If he continues on wandering this path of criminality, more people will fall
14  victim. There really will be a day when it is all too late to stop him. He is two
15  steps away from owning a gun and he is incredibly dangerous, especially
16  dangerous with his as yet neotenous face. He shouldn't pass any background
17  checks but without a criminal record, he will easily pass any. He intentionally
18  pursues the death of innocent man and is utterly indifferent to others' basic
19  rights. I am extremely serious when I say you can't even find a Disney villain
20  like this. **He really is just a heinous criminal and will not stop**
21  **committing crimes.**

22  Please. States of NY and especially NC need to intervene and make sure justice
23  is served. Somebody get the FBI to charge him for the countless crimes
24  including hundreds of 2257 violations too. Please. His crimes need to stop.

25  You guys should also write to Twitter and OnlyFans to shut him down. Their
26  contracts and the law oblige them to shut him down.

27  You can find evidence of his countless public sex and how it is his only source
28  of income at https://x.com/troyejacobs/

Motion to intervene                              - 3 -

3. There however are extremely compelling reason for the Court to allow intervention. Specifically, the first reason to intervene is as follows:

The motion to dismiss in the case relies <u>largely</u> on CDA 230 subsection c1. Adverse rulings purportedly "relying" upon the same were made in 4:22-MD-3047-YGR, greenlighting certain violations of law. **As held in that case, "*Plaintiffs' framing does not change the analysis. Nothing in Section 230 or existing case law indicates that Section 230 <u>only</u> applies to publishing where a defendants' <u>only</u> intent is to convey or curate information.*"**

The current "interpretation" of 230 by the ninth circuit is unconstitutional in an extremely contemptuously straightforward way (literally the sheer opposite of what the Constitution ordains), subverts the TEXT of that very law by ignoring the grammatical meaning of a certain word in that very clause, and is undoubtedly against the legislator's intent.

In short, the first reason to intervene is that unfortunately, **the 42 states' AGs' case** given 4:22-MD-3047-YGR **is destined to fail without my intervention** which looks at the constitutionality of such "interpretation" that is not only unconstitutional but against the TEXT of that very clause by ignoring the grammatical meaning of a certain word. If the court does not look at my arguments, their case is destined to fail. AND, further, because my argument roots in the Constitution, it'd be a failure of the Constitution. I will go into details later on my arguments.

As well, my first amendment argument should also be considered. <u>The earlier ruling 22-MD-3047-YGR subverted other clauses of the Constitution, and that earlier ruling had not been tackled by the 42 state AGs.</u> Without my intervention, the same judge will probably rule similarly.

4. In the response to motion to dismiss, the State AGs wrote "Because the States seek to hold Meta liable for its role as the product designer and promoter of its Platforms, rather than as the publisher of third-party

LDC7864A11A0AAA,000218.05.37.000000



content shown on those Platforms, Meta cannot avail itself of this provision."..."A claim does not treat a defendant as a publisher under the second prong of the Barnes test <u>merely because publication is relevant to the claim</u>. Instead, to fall within Section 230, the claim must impose on the defendant a duty to make "changes to the content posted by the website's users." Order Denying in Part and Granting in Part Defendants' Motion to Dismiss, ECF 430 ("MTD Order") at 11 (quoting Doe v. Internet Brands, Inc., 824 F.3d 846, 851 (9th Cir. 2016))"—Page 15, doc 95 of docket.

"Publication" is a strictly defined concept involving "<u>reviewing, editing, and deciding whether to publish or to withdraw from publication third-party content</u>," including reproducing material for publication and editing for style and technical fluency, <u>altering content, and postponing content</u>. Barnes, 570 F.3d at 1102; see also Lemmon, 995 F.3d at 1091; Fair Hous. Council v. Roommates.com, 521 F.3d 1157, 1170–71 (9th Cir. 2008); Zeran v. Am. Online, Inc., 129 F.3d 327, 332 (4th Cir. 1997). (Page 19, doc 95 dkt) HOWEVER, it is so clear that much of the complaint attacks the algorithm and feed and push notification features of Instagram, which is republishing, which is "changes to the content posted by the website's users", which is "<u>reproducing material for publication</u> and editing for style and technical fluency, altering content, and postponing content". Rearranging or replacing is changing. <u>As long as it is republishing, it falls within the 9th circuit current subversive interpretation of 230 c1.</u> "Features designed to lure users back onto its Platforms" is the same: it also is about republishing. **As I stated**, as held in the earlier case against tiktok and others by YGR (same judge presiding in this case), **"Plaintiffs' framing does not change the analysis. Nothing in Section 230 or existing case law indicates that Section 230 <u>only</u> applies to publishing where a defendants' <u>only</u> intent is to convey or curate information."**

LDC7864A11A0AAA,00021B.06.37.000000

1   Holding them as the product designer does not change anything as the
2   design is about publishing and republishing so I hardly see any difference.
3   The rest of the "STATES' OPPOSITION TO META'S MOTION TO
4   DISMISS" repeats how serious the violations of countless laws by meta are,
5   how evident their claim is, but they have not adequately tackled the
6   assertion by Meta's lying lawyers on what CDA 230 says, **BUT INSTEAD,**
7   **the States' AGs CONCUR with the 9th circuit's subversive falsities**
8   **on what CDA 230 says.**

9   5.  The failure would be a total one here. The allegations are different in this
10  case. If the falsity on what that law says stands, this entire case would fail.
11  6.  The second reason to intervene is the extreme public interest in this case.
12  This obviously is a case that concerns what near all of the general public
13  will experience. For that reason, the Court should carefully consider all
14  pertinent arguments.

15  7.  The third reason to intervene is that disposing of the action may as a
16  practical matter impair or impede the movant's ability to protect its interest.
17  I was born in October 1998, and much of the conduct alleged did impact me
18  as a child. I was a youth Facebook and Instagram user. The complaint by
19  the AGs includes claims for damages on behalf of victims; it follows that if
20  I do not intervene, I cannot claim for those damages separately due to claim
21  preclusion (res adjudicata). Payne v. Nat'l Collection Sys., Inc., 91
22  Cal.App.4th 1037, 1047 (2001) does NOT say I can litigate on **the same**
23  **merits**: this case already claims those damages on behalf of victims.

24  The first reason to intervene stated in this document already proves that
25  the existing parties may not adequately meet the applicant's (my) interest,
26  as they haven't come up with an argument to win against the purported
27  CDA 230 c1 argument and 1st amendment argument by Meta.

28  Statute of limitation is not an issue for reasonable discovery. Before this

LDC7864A11A0AAA.000218.07.37.000000



1    lawsuit filed by the state AGs, I, although victim to the conduct, as a person
2    under 18, did not recognize what they were doing and their pattern of
3    behaviors. I only discovered how they harmed me NOW, and not earlier. I
4    do suffer from phone and computer addiction and addiction to endless feed.
5    8. Back to the first reason, my arguments are reasonably arguable, and they
6    must be considered. I shall discuss 230 c1 first. I'll come back to the first
7    amendment after discussing 230 c1.

8    Very weirdly, for decades, no one has reviewed the Constitutionality of 47
9    U.S. Code § 230, or at least the ninth circuit's construal of it. This is quite
10    unique. Normally, laws related to speech have constitutional reviews filed
11    on all the time. But this one became a one-off.

12    THEN, social media companies have changed nature and gone cray cray
13    over the past few years. When the law was written, smartphones did not
14    exist, and targeting youth and children and children pornography were not
15    issues prevalent. In recent years, however, not only is targeting teens for
16    profit a real thing, in 21-cv-00485-JCS, court found the fact that twitter
17    received confirming evidence—children's IDs and knew <u>child porn</u> on its
18    platform, and decided to KEEP the child pornography on its platform,
19    against their contract saying they have zero tolerance for child pornography.
20    Political messages are also targeted. <u>Harvard-graduated doctors'</u> speech
21    and suggestion on COVID or SARS Junior policies were deleted as
22    "misinformation" by twitter. Multiple Congressmen wrote to social media
23    companies, on a) charges of practical treason and/or contempt of the US, as
24    their disrespect for the first amendment is disgusting and unacceptable as
25    a public actor, b) deleting content not in violation of anything, editing and
26    reforming information to <u>manipulate public perception and to change</u>
27    <u>meaning and defame,</u> c) not deleting content clearly banned by its contract
28    and causing serious harm by not deleting, <u>namely twitter keeping Taliban's</u>

LDC7864A11A0AAA.000218.08.37.000000



1  accounts full of lies during and after the disastrous withdrawal from
2  Afghanistan. Compared with twitter, the conduct of Meta is MUCH more
3  restrained, but they still have committed serious crimes with what they do.
4  As Mr. Yan wrote, he was pushed obscene material by push notifications by
5  Facebook. This contemporary context adds urgency to properly construing
6  CDA 230 c1. Other than the above problems, social media companies are
7  criminal syndicates that have committed countless crimes relating to illegal
8  manipulation and fraud (breach of contract). Namely, near all social media
9  companies in fact promises content deletion or moderation in their
10  contracts, and such freedom of molestation clauses are the main theme of
11  most social media companies' contract, and is a major purpose of contract.

12  *I should specially mention here:* consumers are the intended beneficiaries
13  third parties to the contracts they have with advertisers. So a breach is a
14  violation of the right to property. Further, those companies chose those
15  companies to advertise, but not other companies, largely because they offer
16  freedom of molestation, as they want to be seen as ethical by the public. If
17  those advertisers were directly aware of Twitter's involvement of child porn,
18  they would have dropped a long time ago. Repeated breaches is therefore a
19  MATERIAL BREACH of those ad contracts.

20  For decades, there has been a special privileged class in America, simply
21  because they are internet content providers (ICP), but have some functions
22  as ICSs where part of their service provides mere access, they have been
23  ABOVE THE LAW. They get away with harassment, fraud, defamation,
24  etc.. This subverts the Constitution to the point of no return.

25  9. I should discuss the nature of "changes to the content posted by the
26  website's users" or "reviewing, editing, and deciding whether to publish or
27  to withdraw from publication third-party content," including "reproducing
28  material for publication and editing for style and technical fluency, altering

LDC7864A11A0AAA.000218.09.37.000000



1   content, and postponing content".

2   By nature, altering someone else's messages changes its meaning. The
3   modification process is not shown, and there's no otherwise trace of such
4   manipulation, so others sees it as if it were from the original messenger.
5   THAT IS CLASSIC defamation of character.

6   Equally, if a strain of messages is redacted or abridged, say 3 out of five is
7   deleted, and the others are untouched, the meaning also changes, and that
8   also is defamation of character. AS WELL, it manipulates public perception.
9   Then, the immunity with any republishing practically means they are
10   allowed to harass anyone they want, as long as their harassment is with
11   someone else's (their version of "another ICP") speech. Court is reminded
12   that c1 says "provider or user". So even if a user continuously harasses
13   people, it is not an issue under the ninth circuit's interpretation as long as
14   they are copying and pasting someone else's speech from the platforms.

15   The conduct of choosing what is on the site's home page is also an editorial
16   choice, and is not providing mere access (definition of ICS). Even per the
17   grammatical meaning without evaluating anything else, such is
18   development of information in part. Creation or development of information
19   in whole or in part is definition of ICP. Naturally, the definition of
20   development of information is that it must not be creation of information in
21   part, or else WHY would congress say "Creation or development of
22   information in whole or in part". It is for this reason, the act of rearranging
23   is naturally development of information in part. Twitter and Facebook's
24   home pages are handpicked, and that is development of information (its
25   home page) in whole in my opinion. Creation is a fairly distinct word from
26   development. Details later on the two words in the summary at ¶f.

27   *I put forth my opinion that lying lawyers who indeed ARE criminals are a*
28   *terrorist group preying on everything the Constitution guarantees.*



LLC7864A11A0AAA.000218.10.37.000000

The fifth amendment to the US Constitution says (things not relevant to this suit redacted): No person shall be, ..., nor be deprived of life, liberty, or property, without due process of law, ... .

Section 1 of the fourteenth amendment to the US Constitution says (things not relevant to this suit redacted): No State shall make or enforce any law which shall <u>abridge the privileges or immunities of citizens of the United States</u>; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor <u>deny to any person within its jurisdiction the equal protection of the laws</u>.

**OF COURSE, <u>allowing a certain privileged group</u> to get away with breach contract and do other harms including tort intentional and negligent and defamation <u>denies to people "within its jurisdiction the equal protection of the laws"</u>. As well, allowing them to break the law without civil consequences <u>abridges the privileges of all Americans other than the privileged group</u>.**

**THEN, <u>the fifth protects right to property</u>. So there is no allowing breach of contract per the Constitution.**

10. In summary, what I stated in 3:23-cv-00980 and 23-16125 on CDA 230 c1 is as follows:

a) The conduct of allowing a certain group of people (social media companies and search engines and streaming) breach of contract, fraud, IIED, defamation (again, manipulating others' speech, namely deleting certain words from a chain of expressions, is defamation as it changes the meanings), failure of duty of care, intrusion of privacy, harassment, UCL violations, and even <u>intentional</u> possession of child pornography, could not possibly fit the 14th amendment incl. <u>equal protection clause</u>. <u>Such selective allowing of violation of rights **denies to people "within its jurisdiction the equal protection of the laws"**</u>. Breach of contract is even specifically banned by the 5th, as it relates to violation of the right to property. **The same duties of others can't just be**

LDC7864A11A0AAA.000218.11.37.000000



exempt for a group, as that is abridgement of rights and privileges of Americans (Americans who are not social media companies) which violates the fourteenth amendment. Such exemption or differential treatment or special privileges to one section is strictly unconstitutional. See specifically Brown v Board of Education. For the purpose of compliance with the fourteenth amendment, where equality and lack of "special privilege" are constitutionally required, it includes also nonfeasance, negligence. If a doctor or caregiver is held accountable for negligence, social media must also be held accountable per the Constitution specifically the EPC.

b) I've said stated clearly, editing or altering others' expressions is pure and simple defamation, and more importantly, such editing is the natural meaning of development of information.

c) **The grammar of the law tells a clear story.** c1 treats "provider or user of an interactive computer service" as one class. It states that that one class is "another" *(two separate but of the same kind, see dictionary definition of "another": the dictionary definition is "used to refer to an additional person or thing of the same type as one already mentioned or known about")* to ICPs, which declares "provider or user of an interactive computer service" as ICPs. As a reminder, Fair Housing Council of San Fernando Valley v. Roommates.com, LLC, 521 F.3d 1157 (9th Cir. 2008), heavily quoted by JSC, held that if a company does ICP conduct itself, that ICP conduct holding them as the ICP rather than another ICP is not immune by CDA 230 c1. The question is always whether they're being held as the ICP or another ICP, as held by that case. As stated, the word another means two separate but of the same kind, if they had a hand in creation or development of information in

LDC7864A11A0AAA.000218.12.37.000000

1  whole or in part, they are no longer <u>another</u> ICP as they're not

2  independent from the information and they become <u>THE</u> ICP.

3  Had Congress said "an other", they would at least have a case. However,

4  the phrase "<u>an other</u>" means "<u>any other</u>" and is grammatically

5  completely different from the word "another". The word and the phrase

6  do NOT have the same meaning.

7  d) **<u>Then, the specific examples given by Congress as ICSs are</u>**

8  **<u>library search engines and internet service providers (ISPs) like</u>**

9  **<u>AT&T (see subsection f 2 of 230).</u>** The ONLY conduct of theirs

10  that could be "creation <u>or</u> <u>development</u> of information <u>in whole</u>

11  <u>or in part</u>" (definition of ICP, see CDA 230 subsection f 3) <u>is blocking</u>

12  <u>content for AT&T, and sorting and rearranging in presenting</u>

13  <u>information for search engines, in other words, search engine</u>

14  <u>algorithms.</u> Nothing else done by search engines and internet service

15  providers could fit <u>creation or development of information in whole or in</u>

16  <u>part</u>. So naturally, it follows that all of twitter's conduct of deleting

17  editing et cetera fits ICP conduct.

18  e) It also follows that <u>failure to delete is also ICP conduct</u>, as they're held

19  for deleting or not deleting certain content, which is ICP conduct

20  <u>treating them as the</u> ICP who needs to edit (delete) or should have edited.

21  f) <u>Creation is a fairly distinct word from development. Development talks</u>

22  <u>about editing/publishing incl. technical style in whole or in part that's</u>

23  **<u>\*\*NOT\*\* creation of information, really "publisher conduct" per the 9th</u>**

24  <u>circuit's subversive falsity. **Their subversive falsity treats them as**</u>

25  **<u>ONE word i.e. creation, but they are TWO words. No dictionary</u>**

26  **<u>lists creation as a synonym to development even. Development</u>**

27  **<u>requires creation first; one can't develop from thin air.</u>**

28  **<u>Development develops information created. That's the grammar.</u>**

LDC7864A11A0AAA.000218.13.37.000000



g) Legislator's intent is also clear, **subsection c2 and d specifically mention blocking content and even has it as a duty, an obligation for them to provide it as a commercial option. c2 states only deletions in GOOD FAITH are immune**. It would be really interesting if Congress meant otherwise wouldn't it? <u>How could they possibly mean</u> that <u>all</u> deletions are immune <u>if they specifically say</u> **ONLY those in GOOD FAITH are immune**. You're gonna tell me the <u>accusation now is that Congress</u>, after careful deliberation and a lengthy legislative process, <u>deliberately acted redundantly for the sake of fun?</u> These terrorists a.k.a. lying lawyers will do anything. Anything at all. There is no limit. Nothing is impossible for the purpose of terrorism. THEN, how could they possibly mean that all deletions are immune, <u>whilst obliging a **commercial** option to filter content</u>? IF such is true, wouldn't that be a palpably GINORMOUS violation of the fifth amendment? That they have the right to steal property now? <u>Taking money and not providing the service they took money for, which is a service Congress OBLIGES them to provide</u>? **That could fit the fifth? Are you kidding me? <u>Is the accusation that Congress made this law to abet and allow FRAUD, to subvert the fifth amendment? LIKE I SAID, there is no limit for these terrorists. They'll EVEN allow the Taliban to lie on the open net to harm U.S. soldiers. They are violent, and they aid and abet violence, including violence against the military, and all evidence evinces that THEY LOVE IT.</u>**

h) *Needless to say, those legislator's intents **drawn from** speculations or **EVEN folktales**, when such speculation is AGAINST the very text of the very law (clearly false in other words), **is nothing but pure nonsense.***

i) **Provided that the "specific" examples of ICSs are search engines**

LDC7864A11A0AAA,000218.14.37.000000



and AT&T, even the assertion by the terrorists that social media companies are pure ICSs (without ICP conduct) is absurd. What kind of pure ICS that <u>merely provides access</u> (see definition of ICS) profits on your addiction to more content, has a FEED that gets you to read endlessly, and pushes notifications at you? <u>Do those even resemble providing mere access? They are certainly completely unlike search engines and AT&T.</u>

In fact, even web drives are ICPs, as they obviously moved information around (made available to someone else) with a link. I should take this opportunity to remind all that ICP conduct is not illegal per se and is not conduct that <u>is</u> <u>likely</u> illegal <u>simply</u> by what it is. In fact, again, c1 doesn't even say liability, but ONLY says *treatment as.*

AGAIN, <u>Congress said ALL ICS providers ARE ICPs</u>!!!!!!!

j) **Naturally, if google search and AT&T are ICPs, everything social media companies do, from algorithm, to push notification, to reblogging or retweeting (as they create their home pages), to deleting stuff, to the feed where they rearrange things per their will TO PROFIT FROM YOU READING MORE which is the algorithm, <u>is ICP conduct</u>.** The conduct of bringing things before you and even push notifications are way outside of providing mere access and are more ICP than Google search and thus is definitely ICP conduct. Like I said, even without a) the Constitution, b) natural grammar, they wouldn't fit the definition of an ICS, or rather providing mere access to another's page is SUCH a small part of what they do every day, <u>they spend their energy to do every day: speech policing and trying to FEED you more with the feed et al.,</u> which is loosely tied with who you follow but not entirely: they RECOMMEND pages and EVEN <u>harass you with unsolicited notifications. The major part of their doing is ICP conduct.</u> If

LDc7864A11A0AAA.000218.15.37.000000

1   we were to weigh this on a for the most part scale, for the most part,
2   they're ICPs. Close to everything they do is ICP conduct. Not much of
3   their business model relates to providing mere access. Although again,
4   Congress declared all provider of ICSs as ICPs.

5   k) At a5, 230 states "Increasingly Americans are relying on interactive
6   media for a variety of political, educational, cultural, and entertainment
7   services.", so it would be nonsensical to allow defamation and
8   manipulation (editing and deleting of and manipulating political
9   messages), and b3 says "to encourage the development of technologies
10  which maximize user control over what information is received by
11  individuals, families, and schools who use the Internet and other
12  interactive computer services". Their assertions are against those.

13  l) **In any case, if their argument stands, it's an argument to**
14  **restitute the whole business, that their business is a contract**
15  **illegal in law.** Their contract promises to edit in certain ways, which if
16  c1 means what they assert, they are an illegal business in law and their
17  business must be fully restituted per law.

18  m) The subversion started with drawing a binary line between ICS and ICP,
19  BUT c1 literally refers to users of ICSs, how are they not ICPs? This was
20  intentional subversion, of course from incitement of lawyers, but such
21  inciter must have known what they were taking out from the law.
22  MASTER manipulation. I again emphasize my opinion that lying
23  lawyers who are criminals are a terrorist group preying on everything
24  the Constitution guarantees.

25  n) The ninth circuit has said that the purpose of the legislation is to
26  prevent the public suing websites for defamation for hosting someone
27  else's content (when that content is defamatory). That is the purpose of
28  c1 and **is the ONLY purpose of c1.** The distinction between conduct of



LDC7864A11A0AAA,000218.16.37.000000

the ICP versus another ICP is important. They must have completely not touched the information to be called another ICP. Any touching, incl. algorithm and feeds and recommendations, is ICP conduct, and they are liable for that. The Common law already achieved this before CDA 230.

Congress should have either not bothered to codify it, or written it better.

11. I should clarify, in the amended complaint of 3:23-cv-00980, I did not talk about ISPs. Instead, I stated if library search engines thereby search engine algorithms which merely rearrange things by an algorithm are ICP conduct, THEN it's a no-brainer that deleting or blocking content MUST BE ICP conduct. I did not think about ISP being ICPs. I just used library search engines to make the argument on what development of information in part is. Here, I've added AT&T to complete it.

Other than this, everything said above was stated clearly in the amended complaint of 3:23-cv-00980. The judge, JSC, ignored them completely. **She subverted multiple clauses of the Constitution, the text of CDA 230, and the legislator's intent, and wrote her total dismissal WP. She further lied about twitter's contract terms, concealed many terms pointed clearly to her by me, to defeat justice, and ruled on the case based on falsity.** An application to have her **fired** for rebellion against United States laws as well as subverting the constitution per section 3 of amendment XIV is pending in the ninth circuit.

Interestingly, twitter(now X)-hired terrorists (self-proclaimed lawyers but lying and vexatious arguments are not lawyers' statutory allowances) NEVER responded to the assertion that their version of c1 is against the 14th amendment and the 5th amendment. **Well, they couldn't. They wouldn't even mention it is how obvious things are.**

**JSC and X's lack of response shows they've no valid grounds to refute (failure to deny and adverse inference, see FRCP Rule 8 (d)).**

LDC7864A11A0AAA.000218.17.37.000000



12. **Even if, subjunctively, arguendo, the terrorists' obviously unconstitutional and anti-grammar reading of the clause were correct, it still would NOT support "civil immunity" as they stated. The short title, which has no legal effect, but nonetheless a product of Congress, states explicitly that only (c) (2) relates to Civil liability.** Subsection (c) (1)'s short title is "Treatment of publisher or speaker" and states "No provider or user of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider." (c) (2)'s short title is "Civil liability", and immunes good faith removals or restriction of access.

13. It follows, that if "No provider or user of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider" means what they state, at best, it supports restituting their entire business. Again, I am the intended beneficiary of all their advertisement contracts, and I have the right as third party to ask for restitution of such clearly illegal contract. **If their argument stands, any act of removal or editing or abridgment which is still editing and changing meaning IS republishing IS the treatment of them "as the publisher or speaker of any information provided by another information content provider."** So they argue their contract is illegal in law, **VOID that is**, as much of their contract promises to edit or remove content. In that case, it should be fully restituted. **Nothing AT ALL in CDA 230 says c1 is about immunity; it follows any violation of c1 should be treated seriously by the Court.** To put it in better wording, c1 only says what it says, and does not say anything about removing liability.

14. The above is exactly why lying lawyers are terrorists. EVEN if their argument on c1 stands, **it still does not bare relevance**

LDC7864A11A0AAA.000218.18.37.000000



1    to immunity or <u>Court ignoring what happened</u>. <u>**Instead,**</u>

2    <u>**it obliges court to restitute their *entire* business**</u>.

3    **But these terrorists FRAUDULENTLY conceal what**
4    **their argument actually suggests, and <u>defraud their own</u>**
5    **<u>clients INTO BANKRUPTCY,</u> without any revealing.**

6    # Terrorists deserve at least ONE THING:

7    ## maximum security prison

8    ## AS WELL AS

9    ## solitary confinement.

10   <u>A contract illegal in law is a contract **prohibited by law**</u>. It has many

11   names. Void. Illegal. **<u>Prohibited by law.</u>** Contempt of the United States.

12   Et cetera. Their argument is that the contract is prohibited by law. If it is

13   so, restitute it already.

14   **15.** The subversion started with terrorists going in and pretending the law said

15   something else. They came in and asserted that ICPs must be entirely

16   different from ICSs, in a binary way, <u>that you can only be either but not</u>

17   <u>both</u>. But I mean c1 literally says provider <u>or user</u>. Why ignore "user"? If

18   the law is any confusing, it wouldn't say user, or "in good faith". The

19   subversion by any judge of CDA 230 is <u>clearly malignant</u>. There is no

20   ground, even without thinking, only with having read through CDA 230, to

21   think that bad faith removals are allowed. The legislator's intent is so clear.

22   The incitement was simple: they took out the word "another" or changed its

23   meaning. BUT EVEN THEN, doesn't the natural meaning of "development

24   of information in part" clearly include a feed and presentations and

25   <u>deletions</u>: the information is literally EDITED? **What you see, the**



1    information, is different before and after the restriction of access
2    or deletion, so how is that not development of information in part???
3    <u>Their webpage literally LOOKS different after the editing or</u>
4    <u>deleting or abridging.</u> So how does the Court plan to continue on
5    with this *BIG LIE* (a Nazi idea that extreme repetition of lies will
6    make people believe it as true)? The information literally looks
7    different after their editing. In fact it's even defamatory. The
8    meaning even changes. So how does the Court plan to continue on
9    with this *BIG LIE* (a Nazi idea that extreme repetition of lies will
10   make people believe it as true)? The *big lie* by terrorists preying on
11   everything the Constitution guarantees.

12   *"A big lie (German: große Lüge) is a gross distortion or misrepresentation of*
13   *the truth primarily used as a political propaganda technique"* invented by
14   the NAZI party. –source Wikipedia

15   16. The above clearly show the constitution, and the text of the law
16   ignored by the ruling of the ninth circuit, and legislator's intent, all
17   of which are necessary for the success of the claim 4:23-cv-05448.
18   <u>Without these arguments considered, the case is destined to fail.</u>
19   <u>This is a COMPELLING reason for court to allow me to intervene, bigly.</u>

20   17. <u>Equally, **without tackling the earlier subversive rulings by**</u>
21   <u>**the same judge,** their case is destined to fail</u> per the ruling of
22   4:22-MD-3047-YGR, and 4:21-CV-06561-YGR—two rulings by
23   the same judge in this present case—Yvonne Gonzalez Rogers.
24   This is especially because the state AGs did not really respond to the <u>clearly</u>
25   <u>false</u> first amendment defenses by the terrorists in their opposition (doc 95).
26   They did not go into how the first amendment does not bar any part of the
27   claim, nor do they need to, but that is relied on by Meta. **HOWEVER, this**
28   **is extremely dangerous as the presiding judge ruled falsely to**

LDC7864A1 A0AAA.000218.20.37.000000


1   **protect similar crimes or illegalities with very clearly absurd**
2   **reasoning of the 1st amendment**.

3   I do state that such ruling is a knowing and willful wrong and is malevolent.

4   18. In the JSC case, first amendment was used by Twitter as a
5   defense, but I called it absurd and abusive and a vexatious
6   argument. I did not go into it, feeling similar to state AGs in this
7   case on how absurd it is. HOWEVER, after reading 4:22-MD-3047-
8   YGR, and 4:21-CV-06561-YGR, I find this case WILL fail in her
9   hands if I don't go into it (if my arguments aren't considered).
10   Going into it will clear the path for my suit as well.

11   19. In the 2022 case, YGR ruled "timing and clustering of
12   notifications of defendants' content **to increase addictive use**
13   **is entitled to First Amendment protection**". She subsequently said
14   "The Court conceives of no way to interpret plaintiffs' claim with respect to
15   the frequency of the notifications that would not require defendants to
16   change when and how much they publish speech. This is barred by the First
17   Amendment." and "Accordingly, the Court finds that the First Amendment
18   protects defendants for the timing and clustering of notifications they
19   publish to users regarding content created by defendants themselves. These
20   are fundamentally choices about when and *to whom to* publish content
21   notifications. The motion to dismiss the product defect claims as to this
22   defect is GRANTED." In the Netflix case (4:21-CV-06561-YGR *The Estate*
23   *of B.H. et al v. Netflix, Inc.*), she granted defendant Netflix's motion to
24   dismiss because plaintiffs "premised" the operative complaint on Netflix
25   intentionally abetting suicide (targeted advertisement at those at risk) "on
26   the content and dissemination of the show." She found the plaintiffs'
27   injuries were inseparable from a specific show. She proclaims she was

LDC7864A11A0AAA.000218.21.37.000000


therefore left with no option but to conclude that, "[w]ithout the content," meaning the show in question, "there would be no claim."

This analysis is disgusting to say the least. FOLLOWING this analysis, she annuls all of <u>harassment</u>, intrusion of privacy, stalking, defamation, abetting suicide (including specifically suicide pacts) which is murder, perjury and other offenses on lies, **fraud** or breach of contract, importation with false statements (18 U.S. Code § 542), **AND EVEN hitman contracts (solicitation to or abetting murder),** et cetera. The length she will go to protect malicious syndicates is appalling. **In all of those occasions, "[w]ithout the content," meaning the speech in question, "there would be no claim" or case.** <u>**In all of these occasions, including harassment and fraud, it must be that**</u> **"The Court conceives of no way to interpret plaintiffs' claim with respect to the frequency of the notifications that would not require defendants to** <u>**change when and how much they publish speech"**</u>**.**

Long story short, YGR truly will go to <u>any</u> length to protect the illegal and in many occasions criminal conduct by ICPs.

**IN SHORT, YGR repeatedly held,** in conspiracy or collusion or aid of ICPs' illegalities incl. negligence and even intentional conduct, *AND ONLY IN SUCH CONTEXTS,* **that their speech is protected** <u>**simply because it is speech**</u>**. This is pure and simple subversion of the Constitution. As well, this is absurdity on a creating-a-new-world level.** <u>**In those particular cases, she held respectively that harassment (the timing**</u>



1    and clustering of notifications, when and *to whom to* publish) and

2    abetting suicide which is the crime of MURDER are protected by

3    the first amendment, as they are conduct by way of speech.

4    YGR, as an article III judge, is also a judge in criminal proceedings. But she

5    never AT ALL held that any of the above mentioned offenses are "barred by

6    the first amendment". This shows beyond any doubt that she understands

7    perfectly how the first amendment works, but lies about it to protect a

8    particular group of people, social media companies that is. And most

9    prominently, her ruling clearly violates the fourteenth amendment. IF

10    speech cannot be barred, regardless of its nature or purpose, or meaning or

11    content, or mode or frequency and way of impartation or communication,

12    **simply because it is speech, then harassment and hiring hitmen are**

13    **allowed by the first amendment. BUT she does not hold 18 U.S.**

14    **Code § 2261A as unconstitutional, or cast any doubts on the crime**

15    **of murder or the criminality of abetting (18 U.S. Code § 2)**, but Netflix

16    and by a long shot social media companies in general (other ICPs) deserve

17    to have their conduct "immune" simply **because the conduct is speech**,

18    this kind of ruling violates the fourteen amendment badly, as she's using

19    lies or half-truths which are lies to create a privileged class & deny equal

20    protection. **AGAIN, her absurdity is paramount and it's fully**

21    **intentional. She really has no limits on going in to aid and abet**

22    **whatever illegalities illegal syndicates have done.**

23 20. Since the enactment of the amendments, *speech integral to illegal conduct*

24    *or rather violation of others' rights has never been protected by the first*

25    *amendment. In fact, YGR is so clearly aware of this that she quotes the*

26    *exceptions to protecting speech integral to illegal conduct in the Netflix case.*

27    In the Netflix case, she quotes case law that states it's only per the public

28    interest that certain speech discussing the ills of society is protected,



1   although it may be <u>integral to illegal conduct or violation of others' rights.</u>
2   *However*, <u>they did sue for Netflix's targeted advertising and failure to warn,</u>
3   <u>neither of which is</u> discussing the ills of society or making a TV show. Those
4   are <u>targeted</u> advertising and failing duty of care (to warn), and they clearly
5   are not the making and showing of the TV show itself. The complaint even
6   specifically said they were not suing for the TV show itself.

7   Basically, it is only in exceptional cases <u>speech *integral to illegal conduct*</u>
8   <u>may be protected.</u> Those relate to public discussion or public interest.

9   There is no ground to hold illegal conduct is allowed by the first because it's
10  by way of speech. This is <u>a basic building block of United States laws.</u>
11  Nothing in Meta's conduct relates to THEM expressing public discussion or
12  political opinion, and thus such things as a public interest test is irrelevant.

13  21. IN FACT, sending obscene or otherwise illegal content in notifications, or
14      sending them at certain times of the day, is a clear case of harassment and
15      intrusion of privacy. But YGR says this must be protected simply <u>because</u>
16      <u>it is speech</u>. SHE rules to abolish tort laws at large to protect
17      INTENTIONAL conduct by ICPs.

18  22. IF YGR's rulings of unlimited free speech or free speech as the <u>only</u> thing
19      in the Constitution (speech is protected simply because it is speech) stand,
20      it is a must that all law enforcement and the courts are abolished. Namely,
21      civil courts deal with violation of rights <u>by means of speech</u> every day, be it
22      breach, fraud, IIED, or defamation, or harassment or intrusion of privacy.
23      Even negligent cases involving lack of warning is a matter of failure to
24      speak or express: forcing someone to speak also "violates" free speech, as it
25      includes whether to speak, not just what to and when to speak. <u>And yet she</u>
26      <u>used this absurd rulings to willingly and flagrantly protect intentional torts</u>
27      <u>TWICE, and she probably will do it again in this case without my</u>
28      <u>intervention.</u>



1     AND AGAIN, she does it <u>knowingly</u> and willingly and with malice
2     <u>as she deals with speech violations including criminal violations as</u>
3     <u>a criminal and civil judge all the time.</u>
4     <u>LONG STORY SHORT, there is no ground to hold that a violation</u>
5     <u>of rights should be allowed because it is by method of speech.</u>
6 The first amendment is not the only clause in the constitution. The fifth
7 amendment protects right to life, health, property, and liberties. The fifth and
8 fourteenth amendment protects the right to privacy or Personal Autonomy. In
9 fact, free consciousness is the preexisting condition to free speech, so the right
10 to privacy is even protected by the first. <u>It is important that the first and fifth</u>
11 <u>amendment have the same weight as enactments</u>. And to evaluate the
12 legislator's purpose, those need to be read together.
13 Like all rights, when reasonably necessary, it is not required to amend the
14 Constitution to limit them. It's only a matter of balancing rights to free speech
15 and other rights. This is called *proportionality* in the British realm.
16 *"Categories of speech that are given <u>lesser or no protection by the First</u>*
17 <u>*Amendment include*</u> *obscenity (as determined by the Miller test), fraud, child*
18 *pornography, <u>speech integral to illegal conduct</u>, speech that incites imminent*
19 *lawless action, and regulation of commercial speech such as advertising. Within*
20 *these limited areas, other limitations on free speech balance rights to free speech*
21 *and other rights, such as rights for authors over their works (copyright),*
22 *protection from imminent or potential violence against particular persons,*
23 *restrictions on the use of untruths to harm others (slander and libel), and*
24 *communications while a person is in prison."* –Wikipedia
25 There is generally <u>no</u> freedom of speech <u>when such speech is used to achieve</u>
26 <u>harm of others' rights</u>, including right to privacy (such as by harassment). That
27 is the law. With this said, when speech is used for discussion or political
28 opinion, it has stronger protection.


LDc78644A11A0AAA.000218.25.37.000000

1    This has to do with two things: a) the right to speak is obviously subordinate

2    to (actual) national security, right to life, health, property, privacy, and other

3    constitutional rights or otherwise rights. b) the legislator's purpose or intent.

4    In *New York Times Co. v. Sullivan, 376 U.S. 254 (1964),* Justice William J.

5    Brennan Jr. authored the Court's opinion, and five other justices joined it. The

6    Court began by explaining that criticizing government and public officials was

7    at the core of the American constitutional rights to freedom of speech and

8    freedom of the press.

9    *"The general proposition that freedom of expression upon public questions is*

10   *secured by the First Amendment has long been settled by our decisions. The*

11   *constitutional safeguard, we have said, "was fashioned to assure unfettered*

12   *interchange of ideas for the bringing about of political and social changes*

13   *desired by the people." ... "[I]t is a prized American privilege to speak one's mind,*

14   *although not always with perfect taste, on all public institutions." ... The First*

15   *Amendment, said Judge Learned Hand, "presupposes that right conclusions are*

16   *more likely to be gathered out of a multitude of tongues, than through any kind*

17   *of authoritative selection. To many, this is, and always will be, folly; but we*

18   *have staked upon it our all.""*

19   Of course, the legislator's purpose does not trump the natural grammar of the

20   actual law. As the CA said in the pentagon papers case, "heavy presumption

21   against its constitutional validity" is how any speech injunction must survive.

22   **But they never said the Constitution protects any speech, WHICH IS**

23   **Meta's argument**. The legislator's purpose was clear in securing debates and

24   criticism. When speech is relevant to this purpose, it is protected more as

25   precedents held. Specifically, the legislator's purpose was "*to assure unfettered*

26   *interchange of ideas for the bringing about of political and social changes*

27   *desired by the people*". It has nothing at all to do with ruining life or fraud or

28   transgression of personal autonomy or harming health.

29   I should remind y'all, free speech includes access to information. Free

30   consciousness is the preexisting condition or prelude to free speech.



1   I stated that the 5th supports the legislator's intent as it has the same
2   weight and was enacted <u>together</u> with the 1st. <u>It was specific even in</u>
3   <u>the ten original amendments that free speech is not intended to be</u>
4   <u>unlimited and certainly is not to be used to harm other rights.</u>

5   All court rulings, specifically Supreme Court rulings, <u>follow the legislator's</u>
6   <u>intent of **protecting public debate**</u>. In *Snyder v. Phelps*, 562 U.S. 443
7   (2011), the SC held Speech on <u>a matter of *public* concern</u>, <u>in a public place</u>,
8   cannot be the basis of liability for a tort of emotional distress, even if the speech
9   is viewed as offensive or outrageous. And yet, the terrorists hired by social
10  media companies, who seem capable of nothing other than lying ON COURT
11  RECORD, say that because their company's <u>intentional</u> torts were done <u>in the</u>
12  <u>manner or means of speech</u>, they are protected by the first amendment. BY
13  THEIR and YGR's logic, I'd have the right **per the first amendment** to hire
14  a hitman to murder them, as that OBVIOUSLY is <u>EQUALLY</u> limited to being
15  <u>in the manner or means of</u> speech. I call them terrorists for a REASON.

16  I mention *Snyder v. Phelps*, 562 U.S. 443 (2011) and the rule on actual malice
17  specifically to point out that there is <u>VERY few limitations on tort law by the</u>
18  <u>1st</u>. And to strike a case of negligence or even intentional tort due to free speech
19  is nothing but a challenge to the existence of the country. It follows, if speech
20  cannot be used to abet suicide, or defraud, or obstruct justice or legislation or
21  gov't function, or harass, of course the decisions by YGR (respectively on
22  harassment or intrusion of privacy and intentionally abetting suicide by
23  TARGETED ADVERTISEMENT) to dismiss per the 1st, which is clearly
24  irrelevant, are wrong and subversive.

25  Of course, the first amendment is not limited to speech. It's freedom of speech,
26  press, religion, and assembly.

27  <u>As a general and fast rule</u>, if the conduct in question is not for the purpose of
28  expressing a political opinion or art, it <u>likely</u> has no relevance to the 1st. The

LDC7864A11A0AAA.000218.27.37.000000



1  protection of the first is *more* purpose oriented, than means oriented, different
2  from other rights. Even the actual malice ruling on defamation was tied to
3  criticizing the gov't. "The constitutional guarantees require, we think, a federal
4  rule that prohibits a public official from recovering damages for a defamatory
5  falsehood relating to his official conduct unless he proves that the statement
6  was made with "actual malice"" *New York Times Co. v. Sullivan*, 376 U.S.
7  254 (1964). All rulings protecting speech by the SC relates to that purpose, or
8  at least when the purpose is met, the protection is stronger and stricter.
9  Whereas when the speech is not mainly for such purposes, the "presumption
10  against its constitutional validity" is much weaker, and in many cases not
11  there, as other rights are violated by means of speech. The test is balance of
12  rights. Free speech is an important and constitutional right.

13  For the most extreme examples, lying to Congress or Court (contempt of
14  Congress or Court) or not showing up against a summons (order by Congress
15  or Court) to testify (with perjury to frame someone or false accusations
16  included) does not directly harm others' right to life, property, liberties, but
17  since they harm the state's operation (obstruct legislation or justice) and
18  **vicariously** social welfare, **they are held as necessary limitation of**
19  **rights, including the right to liberties as it is imprisonment**. Similarly,
20  copyright and patent laws exist. So this lowest standard or extreme example
21  show how much a test of constitutional validity requires determining whether
22  or not something is a necessary and proper limitation to Constitutional rights,
23  especially free speech, which is more tested on this scale, as it was never even
24  intended to be an absolute unlimited right. The weight of the presumption in
25  testing is very different if the purpose is nonexistent in the conduct concerned.
26  Although social media companies' algorithms and otherwise manipulations do
27  bring about political and social changes, it is achieved by fraud, manipulation
28  (not *unfettered interchange of ideas*) and pretending to be objective and



1    fraudulently pretending to host opinions of all sides, it is thus not protected by

2    the 1st. Limiting manipulations such as defamation and brainwashing

3    (misinforming) is not against the first. What they are committing, by and large,

4    is brainwashing by repeating what they in many occasions know to be

5    misinformation to achieve brainwashing. Deleting Harvard-graduated doctors'

6    opinions not mirroring Anthony Fauci's on SARS Junior is a classic example.

7    Like I said, sure, what these abusive ICPs are doing is speaking their minds,

8    but their minds is committing the crime of torture (18 U.S. Code § 2340A)

9    against the people with brainwashing, fraud, harassment, et cetera. Note that

10    torture is a crime that requires "whoever outside the United States commits".

11    Social media companies' speech policing and other conduct including

12    brainwashing has nothing to do with expressing a political opinion, but has to

13    do with fraud and defamation and other torts. Neither does their feed or

14    algorithm have to do with that. It's simple fraud and defamation and other

15    illegalities. They do speak to the public both expressly and implicitly that they

16    are neutral, that anyone can register, that they have rules and won't disappear

17    random opinions in compliance with those rules, that they host opinions on

18    both sides. **None of these representations is true.**

19    MOST IMPORTANTLY, manipulating public opinion pretending to be doing

20    something else is "*unfettered interchange of ideas for the bringing about of*

21    *political and social changes desired by the people*". In fact it is per se fettering

22    the interchange of ideas, **so it definitely is not protected by the 1st.**

23    **In any case, as well stated, they are not protected to use speech to**

24    **violate others' other rights incl. constitutional rights.**

25    AGAIN, YGR's conduct in those cases, saying simply because the defendant

26    used speech as a means to achieve human rights violations, when the case was

27    intentional tort (harassment and abetting suicide), they are protected by the

28    first, is nothing but intentional destruction of the United States of America (its

LDC7864A11A0AAA.000218.29.37.000000

1   constitution). It's a **heinous and flagrant** lie. <u>What's appalling is that she</u>
2   <u>didn't even take money from the allegedly criminal syndicates.</u> In other words,
3   she was doing it out of pure and simple sadism. Antisocial personality disorder.
4   **I vigorously ask the 42 state AGs to try and** a) send YGR to jail for
5   rebellion against the lawful authority of the United States or the laws thereof
6   WITH direct intention (18 U.S. Code § 2383), and fraud of course, do quote the
7   EPC, b) get her fired per section 3 of the 14th amendment, note that that section
8   specifically refers to "judicial officers", c) investigate whether she acts outs
9   sadism elsewhere such as <u>namely</u> child abuse or domestic violence, d) severely
10   censure her, e) file for injunctions to have her recuse, remember nemo judex in
11   parte sua, she has no jurisdiction on that (invoked by the United States
12   Supreme Court in various cases, such as the 1798 case Calder v. Bull ("a law
13   that makes a man a Judge in his own cause [...] is against all reason and
14   justice") and the 1974 case Arnett v. Kennedy ("we might start with a first
15   principle: '[N]o man shall be a judge in his own cause.' Bonham's Case, 8 Co.
16   114a, 118a, 77 Eng. Rep. 646, 652 (1610)")), f) maybe write a public statement
17   or have a press conference, you have the freedom to <u>literally cry</u> about the
18   abuses you suffer from her and Meta's lawyers. <u>Drama has ALWAYS been</u>
19   <u>underestimated in this country.</u> g) call Merrick Garland and homeland security
20   and the military (the military has a blanket auth. to deal with insurrection per
21   Art I sec. 8 of the Constitution) and see what they say.

22   23. **<u>Nothing raised in the complaint of this case could possibly be seen</u>**
23       **<u>as protected by the first</u>**<u>, as they do not relate to the purpose (discussion</u>
24       <u>and criticism), and are straightforward violations of rights **for the sake of**</u>
25       **<u>illegal profits</u>**<u>. Lying to Congress then could not possibly be protected by</u>
26       <u>the first. Those assertions by Meta's counsel are quite appalling.</u>

27   24. IN SUMMARY, the above clearly shows that **if my arguments** (*on CDA*
28       *230 c1 more specifically as the AGs failed to find fault with the ninth circuit's*



1   *ruling, but the 1ˢᵗ as well, cuz they didn't pertinently respond to previous*
2   *clearly subversive and malevolent rulings by the same judge)* **are not**
3   **considered, the** plaintiffs' case is destined to fail entirely per the
4   current falsity by the ninth circuit that is against both the constitu. and the
5   text of c1 itself, and against legislator's intent, and per YGR's previous
6   subversions protecting ICPs stating they have absolute free speech and that
7   the 1ˢᵗ amendment protects all and any speech regardless of its content or
8   purpose or way of impartation (such as by intrusion of privacy).

9   It comes back to simple points: the question the court has to answer is
10  whether or not republishing or "changes to the content posted by the
11  website's users" is immune, and the validity incl. constitutional validity of
12  such immunity, and CRUCIALLY what ICP conduct is. Then, to apply the
13  law, the court has to answer whether they're being treated as another ICP
14  or the ICP; as for free speech, the question is even simpler, do ICPs have
15  special privileges to murder, or not? Cuz if such is true, in fact twitter would
16  be a great platform to hire a hitman. After all, hiring is only *by speech*, so
17  is encouragement for others to join ISIS or Al-Qaeda only *by*
18  *speech.* Brand NEW FREEDOM given by the rulings of YGR,
19  how interesting. YES YGR does threaten the national security of the
20  United States of America. Don't forget, the cases she ruled against,
21  "protected by 1ˢᵗ", **was harassment, and abetting suicide**
22  **which is murder**. These are WELL-established WELL-settled law
23  that they are things you can't do, by whatever means, including specifically,
24  by means of speech. That's what she ruled on. IT IS COMPLETELY
25  INEXCUSABLE, her transgression of the national security of the United
26  States of America.

27              **COMPLETELY INEXCUSABLE**



1   Of course the EPC also applies on free speech issues. If others' free speech
2   to murder or harass is nonexistent, there's no reason ICPs are above the
3   law or have that special privilege.
4   Although the above also clearly show the corruptions and insurrections by
5   JSC and YGR, they are not the subject of the motion.
6   **Further, the above also show the 42 state AGs do not adequately**
7   **represent my interests, as they had failed to refute the lies by the**
8   **defense counsel. This makes it a matter of right to intervene.**
9   25. Lastly, I should state, as I am situated in China (PRC), if there are to be
10      any hearings, I will have to attend remotely. I'm not obliged to attend
11      hearings though as I am an intervener, not the plaintiff or defendant.
12      The utter desperation and urgency is that the Court does not make a
13      FURTHER unconstitutional and subversive (of 230 itself) ruling, in other
14      words, having the court consider my arguments.
15  26. The 42 states' AGs are urged to fully read and comprehend this motion,
16      AS QUICKLY AS POSSIBLE, and to file opinions on the issues raised,
17      given their **extreme** importance. They'd lose the chance to file a recusal
18      application if they don't act fast. They should especially take note of and
19      tackle the track record of YGR, who ruled harassment, intrusion of
20      privacy, murder by abetting suicide, and general violations of rights are
21      protected by the first amendment, as banning them would change the
22      content and mode of their speech, and ICP's "immune" for its own conduct.
23
24  Declaration
25  I declare under penalty of perjury under the laws of the United States of America
26  that the foregoing is true and correct.
27  (In accordance with 28 U.S. Code § 1746)
28
29                                                      Taiming Zhang, movant



Mailed via DocuPost.com

LLC7864A11A0AAA.000218.33.37.000000