# EXHIBIT C

*[Counsel Listed on Signature Pages]*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: SOCIAL MEDIA ADOLESCENT ADDICTION/PERSONAL INJURY PRODUCTS LIABILITY LITIGATION | Case No. 4:22:MD-03047-YGR |
| | MDL No. 3047 |
| THIS DOCUMENT RELATES TO: People of the State of California, et al., Case No.: 4:23-cv-05448 | **META DEFENDANTS' NOTICE OF INTENT TO SERVE SUBPOENAS** |

Pursuant to Federal Rule of Civil Procedure 45(a)(4), Defendants Meta Platforms, Inc. f/k/a Facebook, Inc.; Facebook Holdings, LLC; Facebook Operations, LLC; Facebook Payments, Inc.; Facebook Technologies, LLC; Instagram, LLC; and Siculus, Inc. provide notice that they intend to serve the attached subpoenas to:

1. Commission on Improving the Status of Children in Indiana;
2. Indiana Department of Education;
3. Indiana Department of Health;
4. Louisiana Department of Education;
5. Louisiana Department of Health;
6. Arizona Department of Child Safety;
7. Arizona Department of Education;

8.  Arizona Department of Health Services;

9.  Idaho Department of Education;

10. Idaho Health & Welfare Department.


Dated:  July 24, 2024

Respectfully submitted,

COVINGTON & BURLING LLP


By: */s/ Ashley M. Simonsen*
Ashley M. Simonsen, SBN 275203
COVINGTON & BURLING LLP
1999 Avenue of the Stars
Los Angeles, CA 90067
Telephone: (424) 332-4800
Facsimile: + 1 (424) 332-4749
Email: asimonsen@cov.com

Phyllis A. Jones, *pro hac vice*
Paul W. Schmidt, *pro hac vice*
COVINGTON & BURLING LLP
One City Center
850 Tenth Street, NW
Washington, DC 20001-4956
Telephone: + 1 (202) 662-6000
Facsimile: + 1 (202) 662-6291
Email: pajones@cov.com
Email:  pschmidt@cov.com

*Attorneys for Defendants Meta Platforms,*
*Inc. f/k/a Facebook, Inc.; Facebook*
*Holdings, LLC; Facebook Operations, LLC;*
*Facebook Payments, Inc.; Facebook*
*Technologies, LLC; Instagram, LLC;*
*Siculus, Inc.*

**CERTIFICATE OF SERVICE**

I hereby certify that on July 24, 2024, a true and correct copy of the Notice of Intent to Serve

Subpoena, was served upon the following by email:

Laura Dilweg
Consumer Protection Section Chief Counsel
Nathan Whelihan, *pro hac vice*
Assistant Attorney General
Arizona Attorney General's Office
2005 North Central Avenue
Phoenix, AZ 85004
Phone: (602) 542-3725
Fax:                    (602) 542-4377
Laura.Dilweg@azag.gov
Nathan.Whelihan@azag.gov

 *Attorneys for Plaintiff State of Arizona,*
*ex rel. Kristin K. Mayes, Attorney General*

Nicklas A. Akers
Senior Assistant Attorney General
Bernard Eskandari
Supervising Deputy Attorney General
Megan O'Neill
Joshua Olszewski-Jubelirer
Marissa Roy
Deputy Attorneys General
California Department of Justice
Office of the Attorney General
455 Golden Gate Ave., Suite 11000
San Francisco, CA 94102-7004
Phone: (415) 510-4400
Fax: (415) 703-5480
nicklas.akers@doj.ca.gov
bernard.eskandari@doj.ca.gov
megan.oneill@doj.ca.gov
joshua.olszewskijubelirer@doj.ca.gov
marissa.roy@doj.ca.gov

*Attorneys for Plaintiff the People of the State of California*

Bianca E. Miyata
Senior Assistant Attorney General
Lauren M. Dickey
First Assistant Attorney General
Megan Paris Rundlet
Senior Assistant Solicitor General
Elizabeth Orem
Assistant Attorney General
Colorado Department of Law
Ralph L. Carr Judicial Center
Consumer Protection Section
1300 Broadway, 7th Floor
Denver, CO 80203
Phone: (720) 508-6651
bianca.miyata@coag.gov
lauren.dickey@coag.gov
megan.rundlet@coag.gov
beth.orem@coag.gov

*Attorneys for the State of Colorado*


Lauren H. Bidra
Special Counsel for Media and Technology
Krislyn M. Launer
Ashley H. Meskill
Assistant Attorneys General
Connecticut Office of the Attorney General 165 Capitol Avenue
Hartford, Connecticut 06106
Phone: 860-808-5306
Fax: 860-808-5593
Lauren.Bidra@ct.gov
Krislyn.Launer@ct.gov
Ashley.Meskill@ct.gov

*Attorneys for Plaintiff State of Connecticut*


Marion Quirk
Director of Consumer Protection
Dashiell Radosti
Deputy Attorney General
Delaware Department of Justice
820 N. French Street, 5th Floor
Wilmington, DE 19801
Phone: (302) 683-8800
Marion.quirk@delaware.gov
Dashiell.Radosti@delaware.gov

*Attorneys for Plaintiff State of Delaware*

Victoria Ann Butler
Director of Consumer Protection Litigation
3507 E. Frontage Road, Suite 325
Tampa, FL 33607
Telephone: (813) 287-7950
Victoria.butler@myfloridalegal.com

Nicholas J. Weilhammer
Associate Deputy Attorney General for
Enforcement
PL-01 The Capitol
Tallahassee, FL 32399
Telephone: (850) 414-3861
Nicholas.weilhammer@myfloridalegal.com

Karen E. Berger
Special Counsel, Assistant Attorney General
110 SE 6th Street, 10th Floor
Fort Lauderdale, FL 33301
Telephone: (954) 712-4600
Karen.berger@myfloridalegal.com

*Attorneys for Office of the Attorney General,
State of Florida, Department of Legal Affairs*

John M. Guard
Chief Deputy Attorney General
PL-01 The Capitol
Tallahassee, FL 32399
John.guard@myfloridalegal.com

Donna Cecilia Valin
Special Counsel, Assistant Attorney General
135 West Central Blvd.
Orlando, FL 32801
Telephone: (407) 316-4840
Donna.valin@myfloridalegal.com

Melissa M. Devine
Assistant Attorney General
Office of the Attorney General of the State of Georgia
2 Martin Luther King Jr. Drive, SE, Ste. 356
Atlanta, GA 30334
Phone: (404) 458-3765
Fax: (404) 651-9108
mdevine@law.ga.gov

*Attorneys for Plaintiff State of Georgia*

Bryan C. Yee
Supervising Deputy Attorney General
Christopher T. Han
Deputy Attorney General
Department of the Attorney General
Commerce and Economic Development Division
425 Queen Street
Honolulu, Hawai'i 96813
Phone: (808) 586-1180
Bryan.c.yee@hawaii.gov
Christopher.t.han@hawaii.gov

*Attorneys for Plaintiff State of Hawaii*

Nathan H. Nielson
Stephanie N. Guyon
Deputy Attorneys General
Attorney General's Office
P.O. Box 83720
Boise, ID 83720-0010
(208) 334-2424
nathan.nielson@ag.idaho.gov
stephanie.guyon@ag.idaho.gov

*Attorneys for Plaintiff State of Idaho*

Susan Ellis
Chief, Consumer Protection Division
Greg Grzeskiewicz
Chief, Consumer Fraud Bureau
Jacob Gilbert
Deputy Chief, Consumer Fraud Bureau
Daniel Edelstein
Supervising Attorney, Consumer Fraud Bureau
Kevin Whelan
Supervising Attorney, Consumer Fraud Bureau
Matthew Davies
Assistant Attorney General, Consumer Fraud Bureau
Adam Sokol
Senior Assistant Attorney General, Consumer Fraud Bureau Emily María Migliore,
Assistant Attorney General, Consumer Fraud Bureau
Office of the Illinois Attorney General
115 S. LaSalle Street
Chicago, Illinois 60603
312-814-8554
Susan.Ellis@ilag.gov
Greg.Grzeskiewicz@ilag.gov
Jacob.Gilbert@ilag.gov
Daniel.Edelstein@ilag.gov
Kevin.Whelan@ilag.gov
Adam.Sokol@ilag.gov
Emily.Migliore@ilag.gov

*Attorneys for Plaintiff the People of the State of Illinois*

Scott L. Barnhart
Chief Counsel and Director of Consumer Protection
Corinne Gilchrist
Section Chief, Consumer Litigation
Mark M. Snodgrass
Deputy Attorney General
Office of the Indiana Attorney General
Indiana Government Center South
302 West Washington St., 5th Floor
Indianapolis, IN 46203
Telephone: (317) 232-6309
Scott.Barnhart@atg.in.gov
Corinne.Gilchrist@atg.in.gov
Mark.Snodgrass@atg.in.gov

*Attorneys for Plaintiff State of Indiana*


Sarah M. Dietz
Assistant Attorney General
Office of the Attorney General
120 SW 10th Avenue, 2nd Floor
Topeka, Kansas 66612
Telephone: (785) 296-3751
Fax: (785) 296-3131
sarah.dietz@ag.ks.gov

*Attorney for Plaintiff State of Kansas*


J. Christian Lewis
Philip Heleringer
Zachary Richards
Daniel I. Keiser
Assistant Attorneys General
1024 Capital Center Drive, Ste. 200
Frankfort, KY 40601
Christian.Lewis@ky.gov
Philip.Heleringer@ky.gov
Zach.Richards@ky.gov
Daniel.Keiser@ky.gov
Phone: (502) 696-5300
Fax: (502) 564-2698

*Attorneys for Plaintiff the Commonwealth
of Kentucky*

Arham Mughal
L. Christopher Styron
Assistant Attorneys General
Louisiana Department of Justice
Office of the Attorney General
Public Protection Division
Consumer Protection Section
1885 N 3rd Street, 4th Floor
Baton Rouge, LA 70802
Tel: (225) 326-6438
MughalA@ag.louisiana.gov
StyronL@ag.louisiana.gov

*Attorneys for State of Louisiana*


Michael Devine
Laura Lee Barry Wommack
Assistant Attorneys General
Office of the Maine Attorney General
6 State House Station
Augusta, ME 04333
(207) 626-8800
michael.devine@maine.gov
lauralee.barrywommack@maine.gov

*Attorneys for Plaintiff State of Maine*


Philip D. Ziperman
Deputy Chief, Consumer Protection Division
Elizabeth J. Stern
Assistant Attorney General
Office of the Attorney General of Maryland
200 St. Paul Place
Baltimore, MD 21202
Phone: (410) 576-6417 (Mr. Ziperman)
Phone: (410) 576-7226 (Ms. Stern)
Fax: (410) 576-6566
pziperman@oag.state.md.us
estern@oag.state.md.us

*Attorneys for Plaintiff Office of the Attorney General of Maryland*

Daniel J. Ping
Assistant Attorney General
Michigan Department of Attorney General
Corporate Oversight Division
P.O. Box 30736
Lansing, MI 48909
517-335-7632
PingD@michigan.gov

*Attorneys for Plaintiff State of Michigan*

Caitlin M. Micko
Assistant Attorney General
Consumer Protection Division
Office of the Minnesota Attorney General
445 Minnesota Street, Suite 1200
St. Paul, MN 55101-2130
Tel: (651) 724-9180
caitlin.micko@ag.state.mn.us

*Attorney for Plaintiff State of Minnesota, by its Attorney General, Keith Ellison*

Michael Schwalbert
Assistant Attorney General
Consumer Protection Section
Missouri Attorney General's Office
815 Olive Street | Suite 200
Saint Louis, Missouri 63101
michael.schwalbert@ago.mo.gov
Phone: 314-340-7888
Fax: 314-340-7981

*Attorney for Plaintiff State of Missouri, ex rel. Andrew Bailey, Attorney General*

Anna Schneider
Office of Consumer Protection
Department Of Justice P.O. Box 200151
Helena, MT 59620-0151
406-444-5791
Anna.Schneider@mt.Gov

Athanasia Livas
Cooper & Kirk, PLLC
1523 New Hampshire Avenue, N.W.
Washington, DC 20036
202-220-9600
Alivas@cooperkirk.Com

Brian W. Barnes
Cooper and Kirk, PLLC
1523 New Hampshire, Nw
Washington, DC 20036
202-220-9623
Bbarnes@cooperkirk.Com

David H. Thompson
Cooper & Kirk PLLC
1523 New Hampshire Avenue Nw
Washington, DC 20036
(202) 220-9600 Fax: (202) 220-9601
Dthompson@cooperkirk.Com

Megan Marie Wold
Cooper & Kirk, PLLC
1523 New Hampshire Ave., Nw
Washington, DC 20036
202-220-9650
Mwold@cooperkirk.Com

Michael W. Kirk
ATTORNEY TO BE NOTICED
Cooper & Kirk, PLLC
1523 New Hampshire Avenue, Nw
Washington, Dc 2003
202.220.9600
mkirk@cooperkirk.com ☐

*Attorneys for Plaintiff State Montana*

Colin P. Snider
Assistant Attorney General
Nebraska Attorney General's Office
2115 State Capitol Building
Lincoln, NE 68509
Phone: (402) 471-2682
colin.snider@nebraska.gov

*Attorney for Plaintiff State of Nebraska*

Kashif T. Chand
Section Chief, Deputy Attorney General
Thomas Huynh
Assistant Section Chief, Deputy Attorney General
Gina F. Pittore
Verna J. Pradaxay
Mandy K. Wang
Deputy Attorneys General
New Jersey Office of the Attorney General, Division of Law
124 Halsey Street, 5th Floor
Newark, NJ 07101
Tel: (973) 648-2052
Kashif.Chand@law.njoag.gov
Thomas.Huynh@law.njoag.gov
Gina.Pittore@law.njoag.gov
Verna.Pradaxay@law.njoag.gov
Mandy.Wang@law.njoag.gov

*Attorneys for Plaintiffs State of New Jersey and
the New Jersey Division of Consumer Affairs*

Christopher D'Angelo
Chief Deputy Attorney General,
Economic Justice Division
Clark Russell
Deputy Chief, Bureau of Internet and Technology
Nathaniel Kosslyn
Assistant Attorney General
New York State Office of the Attorney General
28 Liberty Street
New York, NY 10005
(212) 416-8262
Christopher.D'Angelo@ag.ny.gov
Clark.Russell@ag.ny.gov
Nathaniel.Kosslyn@ag.ny.gov

*Attorneys for Plaintiff the People of the State
of New York*

Kevin Anderson
Senior Counsel
N.C. Department of Justice
Post Office Box 629
Raleigh, North Carolina 27602
Telephone: (919) 716-6006
Facsimile: (919) 716-6050
kander@ncdoj.gov

*Attorneys for Plaintiff State of North Carolina*

Elin S. Alm

Assistant Attorney General
Christopher G. Lindblad
Assistant Attorney General
Consumer Protection and Antitrust Division
Office of Attorney General
1720 Burlington Drive, Suite C
Bismarck, ND 58504-7736
Telephone (701) 328-5570
ealm@nd.gov
clindblad@nd.gov

*Attorneys for Plaintiff State of North Dakota,*
*ex rel. Drew H. Wrigley, Attorney General*


Melissa G. Wright
Section Chief, Consumer Protection Section
Melissa S. Smith
Asst. Section Chief, Consumer Protection
Section
Michael S. Ziegler
Principal Assistant Attorney General
Kevin R. Walsh, *pro hac vice*
Senior Assistant Attorney General
30 East Broad Street, 14th Floor
Columbus, Ohio 43215
Tel: 614-466-1031
Melissa.Wright@ohioago.gov
Melissa.S.Smith@ohioago.gov
Michael.Ziegler@ohioago.gov
Kevin.Walsh@ohioago.gov

*Attorneys for State of Ohio, ex rel. Attorney General Dave Yost*


Jordan M. Roberts
Assistant Attorney General
Oregon Department of Justice
Consumer Protection Section
100 SW Market Street
Portland, Oregon 97201
Telephone: (971) 673-1880
Facsimile: (971) 673-1884

jordan.m.roberts@doj.state.or.us

*Attorneys for State of Oregon, ex rel.*
*Ellen F. Rosenblum, Attorney General*
*for the State of Oregon*

Timothy R. Murphy
Senior Deputy Attorney General
Jonathan R. Burns
Deputy Attorney General
Pennsylvania Office of Attorney General
Strawberry Square, 14th Floor
Harrisburg, PA 17120
Tel: 717.787.4530
tmurphy@attorneygeneral.gov
jburns@attorneygeneral.gov

*Attorneys for Plaintiff the Commonwealth of Pennsylvania*

Stephen N. Provazza
Special Assistant Attorney General
Rhode Island Office of the Attorney General
150 South Main St.
Providence, RI 02903
Phone: 401-274-4400
SProvazza@riag.ri.gov

*Attorneys for Plaintiff State of Rhode Island*

Jared Q. Libet
Assistant Deputy Attorney General
Anna C. Smith
Assistant Attorney General
Clark C. Kirkland, Jr.
Assistant Attorney General
P.O. Box 11549
Columbia, South Carolina 29211
Tel: (803) 734-0536
jlibet@scag.gov
annasmith@scag.gov
ckirkland@scag.gov

*Attorneys for Plaintiff the State of South*
*Carolina, ex rel. Alan M. Wilson, in His*
*Official Capacity as Attorney General*
*of the State of South Carolina*

Jessica M. LaMie
Assistant Attorney General
1302 East Highway 14, Suite 1
Pierre, SD 57501-8501
Telephone: (605) 773-3215
Jessica.LaMie@state.sd.us

*Attorneys for Plaintiff State of South Dakota*

Joelle E. Gotwals
Assistant Attorney General
Office of the Attorney General of Virginia
Consumer Protection Section
202 N. 9th Street
Richmond, Virginia 23219
Telephone: (804) 786-8789
Facsimile: (804) 786-0122
jgotwals@oag.state.va.us

*Attorneys for the Plaintiff Commonwealth*
*of Virginia ex rel. Jason S. Miyares,*
*Attorney General*

Joseph Kanada
Alexandra Kory
Alexia M. Diorio
Assistant Attorneys General
Washington State Office of the Attorney General
800 Fifth Avenue, Suite 2000
Seattle, WA 98104
(206) 389-3843
Joe.Kanada@atg.wa.gov
Alexandra.kory@atg.wa.gov
Alexia.diorio@atg.wa.gov

*Attorneys for Plaintiff State of Washington*

R. Duane Harlow
Assistant Attorney General
Wisconsin Department of Justice
Post Office Box 7857
Madison, Wisconsin 53707-7857
(608) 266-2950
harlowrd@doj.state.wi.us

*Attorneys for Plaintiff State of Wisconsin*

Laurel K. Lackey
Assistant Attorney General
Office of the Attorney General

Consumer Protection & Antitrust Division
Eastern Panhandle Office
269 Aikens Center
Martinsburg, West Virginia 25404
(304) 267-0239
laurel.k.lackey@wvago.gov

*Attorneys for Plaintiff State of West Virginia,
ex rel. Patrick Morrisey, Attorney General*

By:    */s/ Ashley M. Simonsen*
       Ashley M. Simonsen

**COVINGTON**

BEIJING  BOSTON  BRUSSELS  DUBAI  FRANKFURT
JOHANNESBURG  LONDON  LOS ANGELES  NEW YORK
PALO ALTO  SAN FRANCISCO  SEOUL  SHANGHAI  WASHINGTON

Covington & Burling LLP
Salesforce Tower
415 Mission Street, Suite 5400
San Francisco, CA 94105-2533
T  +1 415 591 6000

July 24, 2024

DELIVERED VIA PROCESS SERVER

Arizona Department of Child Safety
Phoenix Corporate Center
3003 N. Central Avenue
Phoenix, AZ 85012

Re: <u>People of the State of California v. Meta Platforms, Inc., 4:23-cv-05448</u>

Dear Sir/Madam:

Enclosed please find a subpoena being served upon you in connection with the above-captioned litigation currently pending in the U.S. District Court for the Northern District of California. I represent Defendants Meta Platforms, Inc.; Instagram, LLC, Meta Payments, Inc. and Meta Platforms Technologies, LLC (collectively, the "Meta Defendants") in this matter.

The document subpoena requests the production of specific documents identified in the attached subpoena (see Attachment A to the subpoena), which are requested to be produced by 10:00 a.m. on August 23, 2024.  We are willing to work with you on the time, date, location, method and manner of document production, as well as answer any questions or concerns you may have regarding subpoena compliance.   It is sufficient compliance with this subpoena if you electronically transmit a copy of the requested documents to the undersigned.  As such, please contact me at kpatchen@cov.com and 415-591-6031, to discuss document production and subpoena compliance, unless you are already represented by counsel in connection with this matter.

The Court is currently considering whether the Arizona Attorney General's Office has control over Arizona Department of Child Safety's information for the purposes of discovery in this action.  If the Court rules that the Arizona Attorney General's Office has control over the Arizona Department of Child Safety's information, the Arizona Attorney General has pending discovery requests that seek this agency's documents.  By serving this subpoena, Meta does not waive its position in the state agency dispute, nor does Meta in any way waive rights to compel the Arizona Attorney General to produce Arizona Department of Child Safety information as part of discovery in this action.  However, to avoid further delay in the production of information from the Arizona Department of Child Safety, Meta is serving the attached subpoena to request the timely production of this information.

Your anticipated time and assistance with this matter is greatly appreciated.

**COVINGTON**

Page 2

Best regards,

*/s/ Kate Patchen*

Kate Patchen

Enclosed:  Subpoena, Attachment A, and Attachment B

AO 88B  (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT

### for the

#### Northern District of California

| | |
|---|---|
| IN RE: SOCIAL MEDIA ADOLESCENT ADDICTION/PERSONAL INJURY  PRODUCTS LIABILITY LITIGATION | ) ) ) |
| THIS DOCUMENT RELATES TO: People of the State of California, et al. v. Meta Platforms, Inc. et al., Case No.: 4:23-cv-05448 | ) ) ) ) | Civil Action No.    4:22-MD-03047-YGR  MDL No. 3047 |

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS
## OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

To: Arizona Department of Child Safety
Phoenix Corporate Center, 3003 N. Central Ave., Phoenix, AZ 85012

*(Name of person to whom this subpoena is directed)*

☑ *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material: See Attachment A.

| Place: | Date and Time: August 23, 2024, 10:00 a.m. |
|---|---|

☐ *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date:   07/24/2024

| CLERK OF COURT | | |
|---|---|---|
| | OR | |
| _____ | | /s/ Ashley Simonsen |
| *Signature of Clerk or Deputy Clerk* | | *Attorney's signature* |

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)*
Meta Platforms, Inc. f/k/a Facebook, Inc.; Instagram, LLC, Meta Payments, Inc. and
Meta Platforms Technologies, LLC,                                      who issues or requests this subpoena, are:
Ashley Simonsen, Covington & Burling LLP, 1999 Avenue of the Stars, Los Angeles, CA 90067, 424-332-4782, asimonsen@cov.com

### Notice to the person who issues or requests this subpoena

If this subpoena commands the production of documents, electronically stored information, or tangible things or the inspection of premises before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

AO 88B  (Rev.  02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (Page 2)

Civil Action No. 4:23-cv-05448

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____

on *(date)* _____ .

❏  I served the subpoena by delivering a copy to the named person as follows: _____

_____

_____ on *(date)* _____ ; or

❏  I returned the subpoena unexecuted because: _____

_____ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also
tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $     0.00     .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc.:

AO 88B  (Rev.  02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action(Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

  **(1)** *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
    **(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
    **(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person
      **(i)** is a party or a party's officer; or
      **(ii)** is commanded to attend a trial and would not incur substantial expense.

  **(2)** *For Other Discovery.* A subpoena may command:
    **(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
    **(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

  **(1)** *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

  **(2)** *Command to Produce Materials or Permit Inspection.*
    **(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
    **(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
      **(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
      **(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

  **(3)** *Quashing or Modifying a Subpoena.*
    **(A)** *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
      **(i)** fails to allow a reasonable time to comply;
      **(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);
      **(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
      **(iv)** subjects a person to undue burden.
    **(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
      **(i)** disclosing a trade secret or other confidential research, development, or commercial information; or

      **(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
    **(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
      **(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
      **(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

  **(1)** *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
    **(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
    **(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
    **(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
    **(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

  **(2)** *Claiming Privilege or Protection.*
    **(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
      **(i)** expressly make the claim; and
      **(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
    **(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

## DEFINITIONS AND INSTRUCTIONS TO ATTACHMENT A

## DEFINITIONS

1.      The term "communication" means the transmittal of information (in the form of facts, ideas, inquiries or otherwise).

2.      "Document" or "documents" shall have the broadest meaning ascribed to it by the Federal Rules of Civil Procedure, and includes, without limitation electronically stored information ("ESI") (including, without limitation, electronic databases and the data therein, all electronic messages or communications, electronic word processing documents, electronically stored voicemail, webpages, and social media posts) in accordance with any order in this case governing ESI at the time of production. Different versions of the same documents, including, but not limited to, drafts or documents with handwritten notations or marks not found in the original or on other copies are different documents.

3.      "You", "you", "Your" and "your" means the Arizona Department of Child Safety.

4.      "Relating" or "related to" means and includes referring to, concerning, referencing, mentioning, associated with, constituting, discussing, containing, embodying, recording, reflecting, identifying, summarizing, incorporating, and/or dealing with or pertaining to in any way.

5.      "And" includes "or", and vice versa.

6.      The singular form of a word or term includes the plural, and vice versa.

7.      The present tense of a verb includes the past tense, and vice versa.

8.      The use of the article "the" shall not be construed as limiting the scope of any request.

9.      "Including" means "including without limitation."

10.     "Any" includes "all", and vice versa.

11.     The capitalized version of a word or term includes the lower case version of a word or term, and vice versa.

12.     "Social Media Platforms" or "Platforms" means a digital service that facilitates interactions between two or more distinct but interdependent sets of users, including but not limited to Facebook, Instagram, Snapchat, TikTok, YouTube, Twitter (or "X"), Pinterest, LinkedIn, BeReal, Lapse, Reddit, Threads, VSCO, Goodreads, Quora, Discord, Twitch, and Tumblr.

13.     "Young Users" means users of Social Platforms who are under 18 years of age when using the Platform(s).

All words, terms, and phrases not specifically defined herein are to be given their normal and customary meaning in the context in which they are used in these Requests.

## INSTRUCTIONS

1.     These Requests are intended to cover any and all documents in your possession, custody, or control, to the extent not privileged.  Documents held by any office, department, board, commission, or instrumentality of the Arizona Department of Child Safety are within your possession, custody, or control.

2.     In accordance with ESI Protocol attached hereto as Attachment B, if you object to furnishing any of the documents or information requested by these Requests on the grounds of attorney-client privilege, work product, other privilege, or otherwise then, with respect to each such document:

      a.   state the nature of the privilege claimed;

      b.   state the date of each communication supporting the privilege claim;

      c.   identify all participants in the supporting communication;

      d.   state the specific grounds on which the objection is based; and

e.   identify the specific request calling for such information;

2.     If you object to any Request on the grounds that it is vague or ambiguous, state: (i) the portions or terms of such Request that you claim to be vague or ambiguous; and (ii) the interpretation of the Request pursuant to which you provide a response.

3.     Each request shall be deemed continuing, so as to require supplemental or mandatory responses should you obtain additional responsive information subsequent to your initial responses.

4.     If you cannot fully respond to a particular Request after exercising due diligence to make inquiry and to secure the necessary information, provide a response to the extent possible, specifying your inability to respond to the remainder and providing whatever information or knowledge you have concerning the portion not responded to.

5.     Each page of a produced document shall have a legible, unique page identifier ("Bates Number") and confidentiality legend (where applicable) on the face of the image at a location that does not obliterate, conceal, or interfere with any information from the source document.  Redactions should be clearly marked or stamped on the page in such a way that it is clear from review that a portion of the image has been redacted.

6.     All responsive and non-privileged electronic documents shall be produced in the format ordered by the Court in its ESI order.

7.     All responsive electronic documents shall be produced in a format agreed upon by the parties, to include at least native versions of Excel spreadsheets and presentation files, with a Bates-stamped placeholder image.

8.     Unless otherwise specified, the time period for these Requests is January 1, 2012 to the date of production of the Documents.

## ATTACHMENT A

1. Research, investigations, studies, surveys, reports, evaluations, or analyses concerning the mental, social, emotional, or behavioral health of persons ages 13 to 18.

2. Research, investigations, studies, surveys, reports, evaluations, or analyses related to Social Media Platforms, including the importance of Social Media Platforms and the use of Social Media Platforms by Young Users and the potential benefits and harms created by the use of Social Media Platforms.

3. Research, investigations, studies, surveys, reports, evaluations, or analyses concerning the mental, social, emotional, or behavioral health of Young Users, including those related to the effects of:
   a. Social Media Platforms usage;
   b. Video games usage;
   c. Cell phone usage;
   d. Messaging usage;
   e. Usage of other electronics apart from usage of Social Media Platforms;
   f. COVID-19 and/or remote learning;
   g. Use of drugs or alcohol;
   h. The opioid and fentanyl epidemic;
   i. Poverty, homelessness, lack of health insurance, and/or food insecurity;
   j. Physical health including nutrition, exercise, weight management, sleeping habits, and sexual activity;
   k. Family trauma or deaths;
   l. Academic pressure;
   m. Violence, including school violence, domestic violence, gun violence, gun control and/or mass shootings;
   n. Bullying or verbal abuse apart from usage of Social Media Platforms;
   o. Political polarization;
   p. Natural disasters;
   q. Climate change;
   r. Discrimination and inequity;
   s. Global warfare and conflict; and
   t. Any other potential causes of harms to the mental, social, emotional, or behavioral health of Young Users.

4. Youth Risk Behavior Surveys conducted by the Arizona Department of Child Safety or on its behalf.

5. Research, investigations, studies, surveys, reports, evaluations, or analyses related to:
   a. Features of Social Media Platforms that are psychologically or physically harmful to Young Users;
   b. Features of Social Media Platforms that promote compulsive, prolonged, or unhealthy use by Young Users;
   c. The impact of features of Social Media Platforms, including:

      (1) Algorithmic recommendation and sequencing;
      (2) Image filters;
      (3) Use of multiple user accounts;
      (4) Infinite scroll;
      (5) Ephemeral content features;
      (6) Autoplay;
      (7) Quantification and display of likes; or
      (8) Audiovisual and haptic alerts.

6. Programs, initiatives, efforts, or actions proposed or taken by the Arizona Department of Child Safety to address Young Users' use of Social Media Platforms, including any program, initiative, effort, or action to prevent, limit, encourage, or promote the use of Social Media Platforms by Young Users.

7. Policies proposed, recommended, or enacted by the Arizona Department of Child Safety regarding screen time and acceptable use of cell phones, computers, tablets, or other electronic devices by Young Users.

8. Complaints to the Arizona Department of Child Safety by teachers or school districts regarding social media or cell phone use by Young Users and/or the need for acceptable use or other policies to address Young Users' use of social media or cell phones.

9. Complaints to the Arizona Department of Child Safety by teachers or school districts regarding budget crises from inflation, underfunding, unfunded mandates, and other causes.

10. Documents related to state assessments in Arizona, including reports and analyses regarding the history of K-12 state assessment or standardized testing scores, performance by schools and/or school districts, and any other measures of school performance.

11. Legislation or policies proposed by, proposed on behalf of, or testified on by the Arizona Department of Child Safety, regardless of whether such legislation or policies were enacted, regarding Young Users' use of Social Media Platforms.

12. Mental, social, emotional, or behavioral health services provided by the Arizona Department of Child Safety to Young Users during the Relevant Period, including:
    a. Counseling or therapy;
    b. Psychiatric services;
    c. Crisis intervention;
    d. Inpatient short-term and long-term programs;
    e. Resource centers; and
    f. Services for Young Users dealing with substance abuse or addiction issues.

13. Any and all Arizona Department of Child Safety grants to address Young Users' mental health, including information about when, where, why, and how any disbursements were

paid, any schedules or plans for future disbursements, policies governing evaluation or approval of such disbursements, records of how the disbursements were used, and all agendas, minutes, notes, or recordings from meetings related to such grant.

14. Public or non-public meetings held by the Arizona Department of Child Safety related to Social Media Platforms and use of Social Media Platforms by Young Users, including but not limited to, notices, meeting notes, PowerPoint presentations, internal memoranda, summaries, personal notes, or attendee lists.

15. Policies, procedures, and practices related to the Arizona Department of Child Safety's use of Social Media Platforms, including communication of information or promotion of Arizona Department of Child Safety's programs, initiatives, efforts, or actions on Social Media Platforms.

16. Arizona Department of Child Safety's communications and/or collaboration with any Social Media Platform on any program, initiative or other action related to, or directed at, Young Users.

17. Arizona Department of Child Safety's communications with any third party related to Young Users and/or Social Media Platforms.

18. Budgeted and actual expenditures by the Arizona Department of Child Safety during the Relevant Period related to Young Users' use of Social Media Platforms.

19. Budgeted and actual expenditures by the Arizona Department of Child Safety during the Relevant Period related to treatment of teen mental, social, emotional, or behavioral health issues.

20. Policies, procedures, and practices applicable to the Arizona Department of Child Safety and Arizona Department of Child Safety employees regarding the use of Social Media Platforms, including any changes to these policies during the Relevant Period.

21. Studies, programs, initiatives, efforts, or actions proposed or taken by the Arizona Department of Child Safety that sought to provide or promote internet access or phones, computers, tablets, or other electronic devices to Young Users.

22. Arizona Department of Child Safety's budget and actual expenditures during the Relevant Period, including expenditures on:
    a. Digital advertisements by the Arizona Department of Child Safety on Social Media Platforms;
    b. Digital advertisements by the Arizona Department of Child Safety purchased through Social Media Platforms.

**<u>ATTACHMENT B</u>**

## IN THE UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: *Social Media Adolescent Addiction/Personal Injury Products Liability Litigation*<br><br>This document relates to:<br>ALL ACTIONS | MDL No. 3047<br>Case No. 4:22-md-03047-YGR<br><br>Honorable Yvonne Gonzalez Rogers<br>Honorable Peter H. Kang<br><br>**STIPULATION AND [PROPOSED] ORDER GOVERNING THE PRODUCTION OF ELECTRONICALLY STORED INFORMATION AND HARD COPY DOCUMENTS** |

### 1.    PURPOSE

This Order Governing the Production of Electronically Stored Information and Hard Copy Documents ("ESI Order") will govern discovery of electronically stored information and any hard copy documents in this Litigation as a supplement to the Federal Rules of Civil Procedure, this District's Guidelines for the Discovery of Electronically Stored Information, and any other applicable orders and rules. "This Litigation" includes all actions currently in MDL No. 3047, *In Re: Social Media Adolescent Addiction/Personal Injury Products Liability*, or hereafter added or transferred to MDL No. 3047, and all actions later remanded to their respective transferor courts.

### 2.    DEFINITIONS

a)    "Document" is defined to be synonymous in meaning and equal in scope to the usage of this term in Rules 26 and 34 of the Federal Rules of Civil Procedure and shall include Hard-Copy Documents and ESI.

b) "Electronically stored information" or "ESI," as used herein has the same meaning as in Federal Rules of Civil Procedure 26 and 34.

c) "Hard-Copy Document" means Documents existing in paper form at the time of collection.

d) "Searchable Text" means the native text extracted from an Electronic Document and any Optical Character Recognition text ("OCR text") generated from a Hard-Copy Document or electronic image.

## 3.   COOPERATION

The Parties are aware of the importance the Court places on cooperation and commit to cooperate in good faith throughout this Litigation consistent with this Court's Guidelines for the Discovery of ESI and this Court's Rules of Professional Conduct. The Parties will endeavor to cooperate in good faith and be reasonably transparent in all aspects of the discovery process.

## 4.   LIAISON

The Parties will identify Discovery Liaisons to each other who are and will be knowledgeable about and responsible for discussing their respective ESI.  Any Party is free to change their designated Discovery Liaison by providing written notice to the other Parties. Each Party's Discovery Liaison must: (a) be prepared to meet and confer on discovery-related matters and to participate in discovery dispute resolution; (b) be knowledgeable about the Party's discovery efforts; (c) be, or have reasonable access to those who are, familiar with the Party's electronic systems and capabilities in order to explain those systems and answer relevant questions; and (d) be, or have reasonable access to those who are knowledgeable about the technical aspects of discovery, including electronic document storage, organization, and format issues, and relevant information retrieval technology, including search methodology.

## 5.   IDENTIFICATION OF CUSTODIANS AND DATA SOURCES

The parties will disclose information about custodians and custodial and non-custodial data sources likely to possess relevant or responsive information in accordance with Fed. R. Civ. P. 26 and this District's ESI Guidelines. The Parties will participate in Rule 26(f) discussions guided by this District's Checklist for Rule 26(f) Meet and Confer Regarding Electronically

Stored Information. After responses to Requests for Production under Fed. R. Civ. P. 34 have been served, the parties will meet and confer regarding those custodians and custodial and non-custodial data sources from which Documents and ESI will be collected for search and review for potential production in this litigation. The custodian and data source exchanges will include brief explanations of the rationale for their selections; for example, for custodians, their current job titles and descriptions of their work, and for data sources, location information and description.

## 6.    INACCESSIBLE OR UNUSABLE ESI

If a Producing Party asserts that certain requested ESI is inaccessible or not "reasonably accessible," otherwise unnecessary, or if the Receiving Party asserts that, following production, certain ESI is not reasonably useable, the parties shall meet and confer to discuss resolving such assertions. The parties will exchange sufficient information to enable the parties to confer in good faith. If the parties cannot resolve any such disputes after such a meet and confer has taken place, the issue shall be presented to the Court for resolution.

## 7.    KNOWN RESPONSIVE DOCUMENTS

Documents or ESI identified in a custodial or non-custodial file, or in a discrete folder or collection, that are known to a Producing Party through reasonable investigation to be responsive to a discovery request shall be collected for review without regard to whether the responsive content was located via any search methodology developed in accordance with this Order, and nothing about such review shall prevent the Producing Party from redacting or withholding and logging such documents for applicable privileges.

## 8.    SEARCH METHODOLOGIES

The Parties shall adopt reasonable and proportionate methodologies to identify, search, collect, cull, review, and produce ESI as required under applicable legal standards. The Parties recognize and agree that each Party may use one or more methodologies to identify, search, collect, cull, review, and produce responsive and non-privileged ESI, including the use of keyword search terms and/or the use of technology assisted review ("TAR") as discussed further herein. The Parties further recognize that different data sets may implicate different methodologies to identify, search, collect, cull, review, and produce responsive and non-

privileged ESI. The Parties therefore agree to meet and confer in good faith regarding any

potential disputes over their respective ESI productions.

### 9.     HIT REPORTS AND SEARCH TERMS

If a Producing Party uses search terms to identify, search, or cull potentially responsive

ESI, the Producing Party shall disclose the search terms to the Requesting Party. The Parties shall

meet and confer regarding any disputes over the disclosed search terms. In the event that a

Producing Party claims burden with respect to modified and/or additional search terms proposed

by a Requesting Party, the Producing Party shall provide a hit report for the terms at issue using

industry-standard processing tools, such as NUIX or other similar tools. The Producing Party

shall provide a hit report for the document collection where the terms were applied, including the

following with respect to each proposed or modified search term in the collection:

a)   The number of documents with hits for that term; and

b)   The number of unique documents, i.e., documents which do not have hits for any other term.

If, after reviewing a hit report from a Producing Party, a Requesting Party so chooses, it

may reasonably request a further hit report which includes:

c)   The number of family members, including the documents with hits, of the documents with hits for that term; and

d)   The number of unique family members of the documents with hits for that term.

If the ESI tool for the Producing Party is capable without undue burden of providing the

number of family members and unique family members, then the Producing Party shall provide

such further hit report. The Parties (including the person most knowledgeable about the

capabilities of the Producing Party's ESI tool and the Requesting Party's person most

knowledgeable about technical issues from its ESI service provider) shall meet and confer

regarding any disputes over whether the Producing Party's ESI tool has the capability or not to

provider either number of family members or number of unique family members.

The Parties shall meet and confer to resolve disagreements over the search terms or their

application. To the extent the Parties are unable to reach agreement on the application of, or

procedures for, any search or filtering processes, the Parties shall fully comply with the provisions of this Court's Discovery Standing Order regarding the procedure for raising discovery disputes with the Court, including the meet and confer and certification requirements therein.

**10. TECHNOLOGY ASSISTED REVIEW (TAR)**

A Producing Party may use TAR (technology-assisted review) during the culling and review process of ESI, which may be applied in addition to search terms. If a Producing Party uses TAR to cull, filter out, or exclude documents from that Party's production, that Producing Party shall do the following:

- If a Producing Party chooses to apply both search terms and TAR to a review set, the Producing Party will disclose the search terms to all other Party/Parties.
- Disclose the name of the TAR tool or service used to all other Party/Parties.

**11. VALIDATION**

Each Producing Party shall take reasonable steps to validate its review process (i.e., using quality control measures to determine whether its production is missing relevant ESI or contains substantial amounts of irrelevant ESI) and make any necessary adjustments or corrections to its process. If, after reviewing a Producing Party's production, a Requesting Party reasonably requests additional information regarding the validation method(s) used by the Producing Party, the Producing Party will disclose the level of end-to-end recall (the percentage of responsive Documents in the collection which were identified as responsive by that Producing Party's methodology). If there remain disputes between the Parties regarding validation, the Parties shall meet and confer to resolve such disputes in good faith, including a reasonable discussion regarding the tool used and the parameters used to obtain or calculate the level of recall.

**12. UNSEARCHABLE DOCUMENTS**

The Producing Party shall use reasonable efforts to identify and review potentially responsive documents for which text-based search technologies are fundamentally ineffective.

**13. SYSTEM FILES**

Each Party will use its best efforts to filter out common system files and application executable files using the national software reference library ("NSRL") NIST hash set list. The

1    Parties also may filter out stand-alone files identified as zero bytes in size. Additional culling of

2    file types based on file header information may be applied to the following, provided these files

3    are not known to be otherwise attached, embedded in, or included with an otherwise responsive

4    document, or are not themselves reasonably known to contain information responsive or contain

5    responsive data or are used to interface with users or interact with or access individual or

6    aggregated user data: Application Package File, Backup Files, Batch Files, Binary Disc Image,

7    C++ File Formats, Cascading Style Sheet, Configuration File, Database File, Dictionary Files,

8    Dynamic Link Library, Event Log Files, Executable Files, Hypertext Cascading Stylesheet, Java

9    Archive Files, JavaScript Files, JavaScript Source Code and Class Files, Macintosh Resource

10   Fork Files, Package Manager Files, Program Files, Program Installers, Python Script Files, Shell

11   Script Files, System or Temporary Files, Thumbnail Cache Files, Troff Files, Truetype Font Files,

12   Windows Cabinet File, Windows Command Files, Windows File Shortcut, Windows Help Files,

13   Windows Metafiles and Enhanced Metafiles, Windows Spool Files, Windows System File.

14        **14.**    **DEDUPLICATION**

15        Each Producing Party shall make reasonable efforts to globally deduplicate exact

16   duplicate Documents within that Producing Party's ESI data set across all custodial and non-

17   custodial sources at the family level using either MD5 hash values or SHA hash values or any

18   other agreed-upon (and disclosed) industry-standard deduplication technology. The Parties shall

19   reach agreement on such other deduplication technology and shall reach agreement on how their

20   deduplication tools shall identify exact duplicates of documents in a manner that is consistent

21   with the disclosed tools and technologies a Producing Party is using. The Parties shall reach

22   agreement on how to identify exact duplicates of emails using industry-standard commercially

23   available software tools or services, which may for example calculate hash values of emails based

24   on concatenated values of agreed-upon email fields and/or hash values of attachments, or which

25   may use any other method the Parties agree upon. Having further met and conferred in keeping

26   with the previous sentence, the Parties shall calculate deduplication hash values for emails on the

27   concatenated values set forth in and in accordance with the documentation specifications of the

28   disclosed deduplication tools to be used in this Litigation (i.e., RelativityOne, Relativity Server,

and Nuix); however, if Nuix is used, the Producing Party shall select the optional field "Include Bcc" as an additional field to add to the default ones.

The Parties shall not withhold from production near-duplicates without meeting and conferring on this issue.

The names of all custodians who were either identified as custodians for purposes of collection for this matter (or otherwise known by the Producing Party to have been in possession or custody of a document prior to deduplication) will be populated in the ALL CUSTODIANS metadata field for the produced version of a document that has duplicates removed from production. The original file paths (if any exist) of a document prior to deduplication will be populated in the ALL FILE PATHS metadata field of the produced document.

### 15.    EMAIL THREADING

The Parties may use analytics technology to identify email threads and shall produce the unique most inclusive copy and related family members. Where multiple email messages are part of a single chain or "thread," a Party is only required to produce the most inclusive copy of an email message(s) ("Last In Time Email(s)") and need not produce earlier, lesser inclusive email messages or "thread members," provided that the tool or software service being used to perform threading is disclosed. A Producing Party may exclude from production lesser inclusive copies of the most inclusive email message in the thread, where the entire body of each of those lesser inclusive copies is included within the Last in Time Email. The Producing Party will honor reasonable requests to produce lesser inclusive copies of a Last In Time Email or other earlier chains of emails otherwise excluded by email thread suppression.

The Parties shall treat new or different email chains or threads pursuant to further agreement on safeguards or guidelines for defining emails threads which reasonably take into account the capabilities of the email threading/dethreading/hyperthreading tools used by each Defendant (which shall be disclosed to Plaintiffs).

### 16.    SOURCE CODE

The Parties will meet and confer to address the production and/or inspection of source code and entering into a separate order governing the same if needed.

**17.    PRODUCTION FORMATS**

The Parties agree to produce documents and data in the formats described in **Appendix 1** to this ESI Order. If particular documents or categories of documents identified in response to document requests warrant a different format, the Parties will cooperate to arrange for the mutually acceptable production of such documents. The Parties further agree not to degrade the searchability of documents as part of the document production process.

In addition, the Parties agree that the production and production format of social media and/or user account information is not covered by this agreement and to meet and confer on the production and production format, including metadata, for social media and/or user account information.

**18.    PHASING**

Once the Parties begin propounding discovery requests pursuant to Fed. R. Civ. P. 34, the Parties agree to meet and confer regarding appropriate phasing for the production of ESI.

**19.    MISCELLANEOUS PROVISIONS**

a) **Production of Plaintiffs ESI and Case-Specific Materials**.  Subject to any further agreement among the Parties or Order of the Court, the Parties shall produce case-specific documents (i.e., documents specific to the claim of a given Plaintiff, produced by Plaintiffs or Defendants) for any Plaintiff in discovery pools or other selections designed to inform bellwether selection, including those selected for a bellwether trial, in accordance with the production format specified herein, provided, however, that the Producing Party may elect to produce such materials in their native format. To the extent production of case-specific documents for any Plaintiff selected for a bellwether trial presents an issue for any Party, the Parties shall reasonably confer, and may present any disputes to the Court or its designee.  The Parties shall further agree to confer concerning the production format and associated matters (*e.g.*, hosting platform) for case-specific documents produced in the cases of other Plaintiffs. Nothing herein shall limit Defendant's right to seek discovery from any Plaintiff.

b) **Translations Of Produced Materials**.  The Producing Party has no obligation to

create a translation of the Documents or any portion thereof. For any foreign-language documents responsive to document requests that a Party reasonably knows as the result of a reasonable investigation have been translated into the English language using human translators or through machine translation for its own purposes, except to the extent such translation is protected by attorney-client or work-product privileges, the Producing Party shall produce the translation of the original document with the original. The parties will meet and confer as necessary concerning procedures for using translations at depositions and at trial. In the event the Parties cannot reach agreement, the matter may be submitted to the Court for determination.

c) **Third-Party Documents**.  A Party that issues a Non-Party subpoena ("Issuing Party") shall include a copy of this Order with the subpoena and state that (1) the subpoenaed Non-Party should produce Documents in response to the subpoena to all Parties; and (2) the Parties to this Litigation have requested that Third Parties produce Documents in accordance with the specifications set forth herein. If the subpoenaed Non-Party produces Documents to the Issuing Party but does not produce those Documents to other Parties, the Issuing Party shall produce such Documents to those other Parties within 14 days of receiving the Documents, except where the Documents are to be used in a deposition, in which case the Issuing Party shall produce such Documents to all other Parties no later than three (3) days prior to the deposition, or as soon as reasonably practicable if such production occurs thereafter. Nothing in this Order is intended or may be interpreted to narrow, expand, or otherwise affect the rights of the Parties or Third Parties to object to a subpoena. If the Non-Party production is not Bates-stamped, the Parties will meet and confer to agree upon a format for designating the documents with a unique Bates Number prefix.

d) **Documents Produced by Parties – Presumption of Authenticity**.  In order to reduce the number of requests for admission, this Order establishes a rebuttable presumption that documents produced by the Parties are authentic, if said documents were either created or authored by the producing Party, or any of its employees, agents, or

contractors, so long as the employees', agents', or contractors' work was performed in connection with a project or assignment sponsored by the producing Party. No further evidence to establish authenticity need be provided. Nothing in this paragraph shall be deemed to waive any other evidentiary objection a party may have, including but not limited to hearsay, foundation/personal knowledge, or relevance.

e) **Re-productions.** Notwithstanding any provisions to the contrary, re-production of discrete sets of documents from another litigation, arbitration, government inquiry, or other matter may be re-produced in the same manner and form as originally produced in the other matter, provided however that a party will re-produce documents in a different format for good cause shown. This provision does not waive the right of a party to object to any requests for reproduction of production files from another litigation, arbitration, government inquiry, or other matter.

f) **Modification**. This ESI Order may be modified by a Stipulated Order of the Parties or by the Court for good cause shown.

g) **Good Faith**. The Parties will act in good faith as required by law and use these procedures to identify and reduce the potential for disputes.

h) **Continuing Obligations**. The Parties recognize that discovery shall be an iterative and cooperative process. The Parties will continue to meet and confer regarding any issues as reasonably necessary and appropriate. This Order does not address or resolve any objections to the Parties' respective discovery requests.

i) **Reservation of Rights**. The Parties agree that any topic not addressed herein is neither a waiver nor acknowledgement of agreement by either Party.

**IT IS SO STIPULATED**, through Counsel of Record.

| | |
|---|---|
| 1 | DATED: March 15, 2024 |
| 2 | |
| 3 | |
| 4 | |
| 5 | |
| 6 | |
| 7 | |
| 8 | |
| 9 | |
| 10 | |
| 11 | |
| 12 | |
| 13 | |
| 14 | |
| 15 | |
| 16 | |
| 17 | |
| 18 | |
| 19 | |
| 20 | |
| 21 | |
| 22 | |
| 23 | |
| 24 | |
| 25 | |
| 26 | |
| 27 | |
| 28 | |

Respectfully submitted,

*/s/ Lexi J. Hazam*
LEXI J. HAZAM
**LIEFF CABRASER HEIMANN &**
**BERNSTEIN, LLP**
275 BATTERY STREET, 29TH FLOOR
SAN FRANCISCO, CA 94111-3339
Telephone: 415-956-1000
lhazam@lchb.com

PREVIN WARREN
**MOTLEY RICE LLC**
401 9th Street NW Suite 630
Washington DC 20004
T: 202-386-9610
pwarren@motleyrice.com

Co-Lead Counsel

CHRISTOPHER A. SEEGER
**SEEGER WEISS, LLP**
55 CHALLENGER ROAD, 6TH FLOOR
RIDGEFIELD PARK, NJ 07660
Telephone: 973-639-9100
Facsimile: 973-679-8656
cseeger@seegerweiss.com

Counsel to Co-Lead Counsel

JENNIE LEE ANDERSON
**ANDRUS ANDERSON, LLP**
155 MONTGOMERY STREET, SUITE 900
SAN FRANCISCO, CA 94104
Telephone: 415-986-1400
jennie@andrusanderson.com

Liaison Counsel

MATTHEW BERGMAN
GLENN DRAPER
**SOCIAL MEDIA VICTIMS LAW CENTER**
821 SECOND AVENUE, SUITE 2100
SEATTLE, WA 98104
Telephone: 206-741-4862
matt@socialmediavictims.org
glenn@socialmediavictims.org

JAMES J. BILSBORROW
**WEITZ & LUXENBERG, PC**
700 BROADWAY
NEW YORK, NY 10003
Telephone: 212-558-5500
Facsimile: 212-344-5461
jbilsborrow@weitzlux.com
PAIGE BOLDT
**WATTS GUERRA LLP**
4 Dominion Drive, Bldg. 3, Suite 100
San Antonio, TX 78257
T: 210-448-0500
PBoldt@WattsGuerra.com

THOMAS P. CARTMELL
**WAGSTAFF & CARTMELL LLP**
4740 Grand Avenue, Suite 300
Kansas City, MO 64112
T: 816-701 1100
tcartmell@wcllp.com

JAYNE CONROY
**SIMMONS HANLY CONROY, LLC**
112 MADISON AVE, 7TH FLOOR
NEW YORK, NY 10016
Telephone: 917-882-5522
jconroy@simmonsfirm.com
CARRIE GOLDBERG
**C.A. GOLDBERG, PLLC**
16 Court St.
Brooklyn, NY 11241
T: (646) 666-8908
carrie@cagoldberglaw.com

SIN-TING MARY LIU
**AYLSTOCK WITKIN KREIS &**
**OVERHOLTZ, PLLC**
17 EAST MAIN STREET, SUITE 200
PENSACOLA, FL 32502
Telephone: 510-698-9566
mliu@awkolaw.com

ANDRE MURA
**GIBBS LAW GROUP, LLP**
1111 BROADWAY, SUITE 2100
OAKLAND, CA 94607
Telephone: 510-350-9717
amm@classlawgroup.com

1

2

3     EMMIE PAULOS
      **LEVIN PAPANTONIO RAFFERTY**
4     316 SOUTH BAYLEN STREET, SUITE 600
      PENSACOLA, FL 32502
5     Telephone: 850-435-7107
      epaulos@levinlaw.com
6

7     ROLAND TELLIS
      DAVID FERNANDES
8     **BARON & BUDD, P.C.**
      15910 Ventura Boulevard, Suite 1600
9     Encino, CA 91436
      Telephone: (818) 839-2333
10    Facsimile: (818) 986-9698
      rtellis@baronbudd.com
11    dfernandes@baronbudd.com

12
      ALEXANDRA WALSH
13    **WALSH LAW**
      1050 Connecticut Ave, NW, Suite 500
14    Washington D.C. 20036
      T: 202-780-3014
15    awalsh@alexwalshlaw.com

16
      MICHAEL M. WEINKOWITZ
17    **LEVIN SEDRAN & BERMAN, LLP**
      510 WALNUT STREET
18    SUITE 500
      PHILADELPHIA, PA 19106
19    Telephone: 215-592-1500
      mweinkowitz@lfsbalw.com
20

21    DIANDRA "FU" DEBROSSE ZIMMERMANN
      **DICELLO LEVITT**
22    505 20th St North
      Suite 1500
23    Birmingham, Alabama 35203
      Telephone: 205.855.5700
24    fu@dicellolevitt.com

25

26

27

28

HILLARY NAPPI
**HACH & ROSE LLP**
112 Madison Avenue, 10th Floor
New York, New York 10016
Tel: 212.213.8311
hnappi@hrsclaw.com

JAMES MARSH
**MARSH LAW FIRM PLLC**
31 HUDSON YARDS, 11TH FLOOR
NEW YORK, NY 10001-2170
Telephone: 212-372-3030
jamesmarsh@marshlaw.com

*Attorneys for Individual Plaintiffs*

**ROB BONTA**
Attorney General
State of California

 _/s/ Megan O'Neill_
Nick A. Akers (CA SBN 211222)
Senior Assistant Attorney General
Bernard Eskandari (SBN 244395)
Supervising Deputy Attorney General
Megan O'Neill (CA SBN 343535)
Joshua Olszewski-Jubelirer
(CA SBN 336428)
Marissa Roy (CA SBN 318773)
Deputy Attorneys General
California Department of Justice
Office of the Attorney General
455 Golden Gate Ave., Suite 11000
San Francisco, CA 94102-7004
Phone: (415) 510-4400
Fax: (415) 703-5480
Bernard.Eskandari@doj.ca.gov

*Attorneys for Plaintiff the People of the State of
California*

1

2      **RUSSELL COLEMAN**
       Attorney General
3      Commonwealth of Kentucky

4      */s/ J. Christian Lewis*
       J. Christian Lewis (KY Bar No. 87109),
5      *Pro hac vice*
       Philip Heleringer (KY Bar No. 96748),
6      *Pro hac vice*
       Zachary Richards (KY Bar No. 99209),
7      *Pro hac vice app. forthcoming*
       Daniel I. Keiser (KY Bar No. 100264),
8      *Pro hac vice*
       Matthew Cocanougher (KY Bar No. 94292),
9      *Pro hac vice*
       Assistant Attorneys General
10     1024 Capital Center Drive, Suite 200
       Frankfort, KY 40601
11     CHRISTIAN.LEWIS@KY.GOV
       PHILIP.HELERINGER@KY.GOV
12     ZACH.RICHARDS@KY.GOV
       DANIEL.KEISER@KY.GOV
13     MATTHEW.COCANOUGHER@KY.GOV
       Phone: (502) 696-5300
14     Fax: (502) 564-2698

15

16     *Attorneys for Plaintiff the Commonwealth of
       Kentucky*
17

18

19

20

21

22

23

24

25

26

27

28

COVINGTON & BURLING LLP

By:  */s/ Ashley M. Simonsen*
Ashley M. Simonsen, SBN 275203
COVINGTON & BURLING LLP
1999 Avenue of the Stars
Los Angeles, CA 90067
Telephone: (424) 332-4800
Facsimile: + 1 (424) 332-4749
Email: asimonsen@cov.com

Phyllis A. Jones, *pro hac vice*
Paul W. Schmidt, *pro hac vice*
COVINGTON & BURLING LLP
One City Center
850 Tenth Street, NW
Washington, DC 20001-4956
Telephone: + 1 (202) 662-6000
Facsimile: + 1 (202) 662-6291
Email: pajones@cov.com

*Attorney for Defendants Meta Platforms, Inc.*
*f/k/a Facebook, Inc.; Facebook Holdings,*
*LLC; Facebook Operations, LLC; Facebook*
*Payments, Inc.; Facebook Technologies, LLC;*
*Instagram, LLC; Siculus, Inc.; and Mark Elliot*
*Zuckerberg*

FAEGRE DRINKER LLP
*By: /s/ Andrea Roberts Pierson*
Andrea Roberts Pierson, pro hac vice
FAEGRE DRINKER LLP
300 N. Meridian Street, Suite 2500
Indianapolis, IN 46204
Telephone: + 1 (317) 237-0300
Facsimile: + 1 (317) 237-1000
Email: andrea.pierson@faegredrinker.com

Amy R. Fiterman, pro hac vice
FAEGRE DRINKER LLP
2200 Wells Fargo Center
90 South Seventh Street
Minneapolis MN 55402
Telephone: +1 (612) 766 7768
Facsimile: + 1 (612) 766 1600
Email: amy.fiterman@faegredrinker.com

Geoffrey M. Drake, pro hac vice

KING & SPALDING LLP
1180 Peachtree Street, NE, Suite 1600
Atlanta, GA  30309
Telephone: +1 (404) 572 4726
Email: gdrake@kslaw.com

David P. Mattern, pro hac vice
KING & SPALDING LLP
1700 Pennsylvania Avenue, NW, Suite 900
Washington, D.C.  20006
Telephone: +1 (202) 626 2946
Email: dmattern@kslaw.com

*Attorneys for Defendants TikTok Inc. and
ByteDance Inc.*

MUNGER, TOLLES & OLSEN LLP
By: */s/ Jonathan H. Blavin*
Jonathan H. Blavin, SBN 230269
MUNGER, TOLLES & OLSON LLP
560 Mission Street, 27th Floor
San Francisco, CA 94105-3089
Telephone: (415) 512-4000
Facsimile: (415) 512-4077
Email: jonathan.blavin@mto.com

Rose L. Ehler (SBN 29652)
Victoria A. Degtyareva (SBN 284199)
Laura M. Lopez, (SBN 313450)
Ariel T. Teshuva (SBN 324238)
MUNGER, TOLLES & OLSON LLP
350 South Grand Avenue, 50th Floor
Los Angeles, CA 90071-3426
Telephone: (213) 683-9100
Facsimile: (213) 687-3702
Email: rose.ehler@mto.com
Email: victoria.degtyareva@mto.com
Email: Ariel.Teshuva@mto.com

Lauren A. Bell (*pro hac vice forthcoming*)
MUNGER, TOLLES & OLSON LLP
601 Massachusetts Ave., NW St.,
Suite 500 E
Washington, D.C. 20001-5369
Telephone: (202) 220-1100
Facsimile: (202) 220-2300
Email: lauren.bell@mto.com

*Attorneys for Defendant Snap Inc.*

WILSON SONSINI GOODRICH & ROSATI
Professional Corporation
By: */s/ Brian M. Willen*
Brian M. Willen (*pro hac vice*)
WILSON SONSINI GOODRICH & ROSATI
1301 Avenue of the Americas, 40th Floor
New York, New York 10019
Telephone: (212) 999-5800
Facsimile: (212) 999-5899
Email: bwillen@wsgr.com

Lauren Gallo White
Samantha A. Machock
WILSON SONSINI GOODRICH & ROSATI
One Market Plaza, Spear Tower, Suite 3300
San Francisco, CA 94105
Telephone: (415) 947-2000
Facsimile: (415) 947-2099
Email: lwhite@wsgr.com
Email: smachock@wsgr.com

Christopher Chiou
WILSON SONSINI GOODRICH & ROSATI
953 East Third Street, Suite 100
Los Angeles, CA 90013
Telephone:  (323) 210-2900
Facsimile:  (866) 974-7329
Email: cchiou@wsgr.com

*Attorneys for Defendants YouTube, LLC, Google
LLC, and Alphabet Inc.*

WILLIAMS & CONNOLLY LLP
By: */s/ Joseph G. Petrosinelli*
Joseph G. Petrosinelli (*pro hac vice*)
jpetrosinelli@wc.com
Ashley W. Hardin (*pro hac vice*)
ahardin@wc.com
680 Maine Avenue, SW
Washington, DC 20024
Telephone.: 202-434-5000
Fax: 202-434-5029

*Attorneys for Defendants YouTube, LLC, Google
LLC, and Alphabet Inc.*

MORGAN, LEWIS & BOCKIUS LLP
By: */s/ Stephanie Schuster*
Stephanie Schuster (*pro hac vice*)
stephanie.schuster@morganlewis.com
1111 Pennsylvania Avenue NW
NW Washington, DC 20004-2541
Tel.: 202.373.6595

Yardena R. Zwang-Weissman (SBN 247111)
yardena.zwang-weissman@morganlewis.com
300 South Grand Avenue, 22nd Floor
Los Angeles, CA 90071-3132
Tel.: 213.612.7238

Brian Ercole (*pro hac vice*)
brian.ercole@morganlewis.com
600 Brickell Avenue, Suite 1600
Miami, FL 33131-3075
Tel.: 305.415.3416

*Attorneys for Defendants YouTube, LLC and Google LLC*

**IT IS ORDERED** that the foregoing Agreement is approved.

Dated: _____March 18, 2024_____          _____

MAGISTRATE JUDGE PETER H.  KANG

# APPENDIX 1: PRODUCTION FORMAT

1) **Production Components.** Except as otherwise provided below, ESI must be produced in accordance with the following specifications:

    a) an ASCII delimited data file (.DAT) using standard delimiters;

    b) an image load file (.OPT) that can be loaded into commercially acceptable production software (*e.g.* Concordance);

    c) single page black-and-white TIFF images, or JPEG images when color is specified herein, or native files with single page placeholder TIFF images depending on the applicable production format for each type of file;

    d) and document level .TXT files for all documents containing extracted full text or OCR text.

    e) Family relationships between emails and their attachments, embedded files and their source document, and connected hardcopy documents will be maintained in production. Attachments should be consecutively produced with their parent.

    f) If a particular document warrants a different production format, the Parties will cooperate in good faith to arrange for a mutually acceptable production format.

2) **Production Media and Access Controls.** Productions must be encrypted and produced through secure electronic means, such as secure file sharing methods (*e.g.* FTP), or on CD, DVD, flash drive or external hard drive ("Production Media"). Each piece of Production Media must identify a production number corresponding to the production volume (*e.g.* "VOL001"). Each piece of Production Media must also identify: (a) the case caption; (b) the following label: "This media contains material subject to Court Ordered security measures"; (c) the Producing Party's name; (d) the production date; (e) the Bates Number range of the materials contained on the Production Media.

Nothing in this ESI Order will preclude or impair any and all protections provided the Parties by any Protective Order(s) agreed and entered into by the Parties. Parties will use best efforts to avoid the unnecessary copying or transmittal of produced documents. If questions arise, the Parties will meet and confer to ensure security concerns are addressed prior to the exchange of

any documents.

      **3)**     **Data Load Files/Image Load Files.** Each TIFF in a production must be referenced in the corresponding image load file. The total number of documents referenced in a production's data load file should match the total number of designated document breaks in the image load file(s) in the production. The total number of pages referenced in a production's image load file should match the total number of TIFF files in the production. All images must be assigned a unique Bates number that is sequential within a given document and across the production sets. The Bates Numbers in the image load file must match the corresponding documents' beginning Bates numbers in the data load file. The total number of documents in a production should match the total number of records in the data load file. Load files must not vary in format or structure within a production, or from one production to another except by agreement of the Parties.

      **4)**     **Metadata Fields.** Each of the metadata and coding fields set forth below that can be extracted should be produced for each document, except that if the field contains privileged information, that privileged information may be redacted. However, to the extent that metadata does not exist, is not available for any documents produced, this provision shall not be read to require any Party to extract, capture, collect, manually populate, or produce such metadata, with the exception of the following: (a) BEGBATES, (b) ENDBATES, (c) BEGATTACH, (d) ENDATTACH, (e) PRODVOL, (f) ALL CUSTODIANS, (g) CONFIDENTIALITY, (h) REDACTIONS, (i) REDACTION TYPE, (j) HASHVALUE, (k) NATIVEFILEPATH, and (l) TEXTFILEPATH, which should be populated by the Party or the Party's vendor. The Parties will make reasonable efforts to ensure that metadata fields automatically extracted from the documents correspond directly to the information that exists in the original documents.

| Field Name | Field Description |
|---|---|
| BEGBATES | Beginning Bates number for a particular document as stamped on the first production image for that document |
| ENDBATES | Ending Bates number as stamped on the last |

| Field Name | Field Description |
|---|---|
| | production image for a particular document |
| BEGATTACH | First production Bates number of the first document in a family |
| ENDATTACH | Last production Bates number of the last document in a family |
| ATTACHCOUNT | Number of attachments to an e-mail or embedded parent, as generated by commercially available discovery processing tools. |
| ATTACHNAMES | Names of each individual Attachment, separated by semicolons. |
| PRODVOL | Production volume |
| ALLCUSTODIANS | List of all custodians associated with Document, i.e. "Custodian" + "Other Custodian" values delimited by semicolon. |
| ALLFILEPATHS | All original path(s) to the individual source file(s) when available in the ordinary course of business to and processable by the parties and their ESI vendors of choice. Includes path up to and including internal path of containers. |
| CONFIDENTIALITY | Confidentiality designation assigned to the document consistent with the Stipulated Protective Order governing this Litigation |
| NATIVEFILEPATH | Native File Link (Native Files only) |
| TEXTFILEPATH | Path to extracted text/OCR file for the document |
| HASHVALUE | MD5 hash value of the document |
| DOCUMENT TYPE | Descriptor for the type of document: "E-document" for electronic documents not attached to e-mails; "E-mail" for all e-mails; "E-attachment" for files that were attachments to e-mails; and "Physical" for hard copy physical documents that have been scanned and converted to an electronic image. |
| AUTHOR | Any value populated in the Author field of the |

| Field Name | Field Description |
|---|---|
| | document properties |
| DOCDATE | Date the document was created according to filesystem information (format: MM/DD/YYYY) |
| DATELASTMODIFIED | Date when document was last modified according to filesystem information (format: MM/DD/YYYY) |
| LAST MODIFIED BY | Last person who modified (saved) a document, as generated by commercially available discovery processing tools. |
| TRACK CHANGES | Y if a document with track changes value, otherwise N or empty, if available separately from the HASHIDDENDATA flag |
| COMMENTS | Y if a document with comments, otherwise N or empty, if available separately from the HASHIDDENDATA flag |
| HASHIDDENDATA | Y if a document with hidden content value, otherwise N or empty |
| FILENAME | Filename of an electronic document |
| TITLE | Any value populated in the Title field of the document properties |
| DOCEXT | File extension of document pulled from the document properties |
| FROM | The sender of the email |
| TO | All recipients that were included on the "To" line of the email |
| CC | All recipients that were included on the "CC" line of the email |
| BCC | All recipients that were included on the "BCC" line of the email |
| DATETIMERECEIVED | Date and time email was received (format: MM/DD/YYYY HH:MM) |
| DATETIMESENT | Date and time email was sent (format: MM/DD/YYYY HH:MM) |

| Field Name | Field Description |
|---|---|
| TIMEZONE | The timezone used to process the document |
| EMAILSUBJECT | Subject line of email pulled from the document properties |
| THREADID | If a threading tool is used for emails, the thread id generated by the threading tool. |
| REDACTION TYPE[1] | General category of redaction reason as agreed to by the parties. For example, PII, SCA, CODE, and/or PRIV. If more than one, separate reasons by semicolons. |
| REDACTIONS | Y if a document is redacted, otherwise N or empty |

    **5)**    **TIFFs.** Unless excepted below, single page, black and white, Group IV TIFFs should be provided, at least 300 dots per inch (dpi) for all documents. Each TIFF image must be named according to a unique corresponding Bates number associated with the document. Each image must be branded according to the Bates number and the agreed upon confidentiality designation. Original document orientation should be maintained (i.e., portrait to portrait and landscape to landscape). Where the TIFF image is unreadable or has materially degraded the quality of the original, the Producing Party shall provide a higher quality TIFF image or the native or original file. In addition, the Parties shall take reasonable efforts to process word processing documents (*e.g.*, MS Word) with track changes and/or comments unhidden on the TIFF image.

    **6)**    **Color.** Word processing documents containing tracked changes shall be produced in color, as single-page, 300 dpi JPG images with JPG compression and a high quality setting as to not degrade the original image. The Producing Party shall comply with good faith by the Requesting Party to provide replacement color images for documents originally produced in black and white. A Party making such a request shall make the request by individual Bates

---

[1] The Parties will provide specific information on any privilege(s) asserted in their privilege logs, in an overlay, or the redaction boxes. The "Redaction Reason" field is informational only for redaction type and shall not in any way limit a party's right to assert attorney-client privilege, attorney-work product privilege, and/or any other applicable privilege or protection.

number(s) and shall limit requests made pursuant to this paragraph to a reasonable number of documents.

**7)** **Text Files.** A single multi-page text file must be provided for each document, and the filename should match its respective TIFF filename for the first page of that document. Extracted text shall be generated with commercially acceptable technology set to include all comments, revisions, tracked changes, speaker's notes and text from documents with comments or tracked changes, and hidden and very hidden worksheets, slides, columns and rows. When possible, the text of native files should be extracted directly from the native file. Parties will perform optical character recognition ("OCR") on foreign language documents using the appropriate settings for languages reasonably anticipated to be in the production following a meet and confer with the Requesting Party to identify those languages. Text files will not contain the redacted portions of the documents. A commercially acceptable technology for OCR should be used for all scanned, hard copy documents and for documents with redactions other than Excel files and other spreadsheets which shall be redacted in native format. Text extracted from emails should include the following header information where available: (1) the individuals to whom the communication was directed ("To"), (2) the author of the email communication ("From"), (3) who was copied and blind copied on such email ("CC" and "BCC"), (4) the subject line of the email ("RE" or "Subject"), and (5) the date and time of the email. To the extent the text extraction technology the Parties are using can be configured to include the text of any URLs or links, the Parties shall utilize that setting.

**8)** **Native files.** Spreadsheets (*e.g.* MS Excel), and un-redacted presentations (e.g. Microsoft PowerPoint,) will be produced in native format to the extent that they are produced in this Litigation, audio, video, and multi-media files will be produced in native format. The Parties will meet and confer on the production of other file types, such as proprietary files, etc. Native files will be produced with a link in the NATIVEFILEPATH field, along with extracted text (where extracted text is available) and applicable metadata fields set forth in paragraph 4 above. A Bates numbered TIFF placeholder indicating that the document was provided in native format must accompany every native file. Where redaction makes production of native-format

files other than spreadsheets or presentations infeasible, the Parties will confer to determine a reasonably usable form for the production, but spreadsheets shall presumptively be redacted in native, and presentations presumptively redacted in image form, in these cases without the need for further conferring.

**9)      Production Format for Hard Copy Documents.** Documents that exist in hardcopy will be scanned to *.tiff image format and produced in accordance with the specifications set forth herein. Hard copy documents that are not text-searchable shall be made searchable by OCR prior to production.  In scanning paper documents, distinct documents should not be merged into a single record, and single documents should not be split into multiple records (i.e., paper documents should be logically unitized). In the case of an organized compilation of separate documents (for example, a binder containing several separate documents behind numbered tabs), the document behind each tab should be scanned separately, but the relationship among the documents in the compilation should be reflected in the proper coding of the beginning and ending document and attachment fields. The Parties will make their best efforts to unitize the documents correctly. If relevant documents are maintained in a file, folder, envelope, binder, notebook or similar container used to store documents, all contents therein shall be reviewed for production and privilege. Document pages which have affixed notes, such as Post-it notes, should be imaged with and without the note attached.

**10)      Confidentiality Designation.** All images will be stamped with the appropriate confidentiality designations in accordance with the Stipulated Protective Order entered in this Litigation. Each document produced in native format will have its confidentiality designation identified in the filename of the native file and indicated on its corresponding TIFF placeholder.

**11)      Bates Numbering**. Bates numbering should be a consistent length across the production, contain no special characters, and be numerically sequential within a given document.  If a Bates number or set of Bates numbers is skipped, the skipped number or set of numbers should be noted with a placeholder.  Attachments to documents will be assigned Bates numbers that directly follow the Bates numbers on the documents to which they were attached.

In addition, wherever possible, each image will have its assigned Bates number electronically "burned" onto the image.

**12)** **Databases and Other Structured Data.** To the extent that responsive information is stored in a database, or database management system, or proprietary system or application which has is directed to data storage as one of its primary functions, the Producing Party will identify the database and platform to the Requesting Party. The Producing Party shall produce exports and reports about such responsive information stored in such database, where such exports and reports shall be in a reasonably usable form, and information may be produced in CSV format, tab-delimited text format, Microsoft Excel format, or Microsoft Access format. If there are future disputes over the production of information from a database, the Parties shall meet and confer in good faith in an attempt to reach any further agreements (if needed) on the data to be produced and the format and scope of the production. The Producing Party will provide reasonable amounts of information about the databases to facilitate that discussion.

**13)** **Hyperlinks.** Document(s) and/or folder(s) of documents that are hyperlinked inside a responsive document (including hyperlinked inside emails) within a Producing Party's custody, possession, or control, do not need to be produced in the first instance as part of the same family group as the Document residing at the location to which that hyperlink points. If there are particular hyperlinks identified by the Requesting Party in produced documents, the Requesting Party may submit a list of hyperlinks to a particular Producing Party for potentially relevant documents by identifying the Bates number and URL or link text for each requested link to the Producing Party, and the Producing Party will engage in reasonable efforts to locate the hyperlinked document at that location and either identify it by Bates number or provide any responsive, non-produced, and non-privileged documents. The number of hyperlinks a Requesting Party may identify to a Producing Party shall not be excessive and shall be reasonable, proportional to the needs of the case, and not unduly burdensome.

**14)** **Embedded Objects.** The Parties agree non-substantive embedded objects, including, but not limited to, logos, icons, emoticons, and footers, may be culled from a document set (but not a document) and need not be produced as separate documents by a

Producing Party (i.e., such embedded objects will be produced within the document itself, rather than as separate documents). Embedded files, except for images (including but not limited to, logos, icons, emoticons), are to be produced as family groups. Embedded files should be assigned Bates numbers that directly follow the Bates numbers on the documents within which they are embedded.

**15)** **Production of Family Groups and Relationships**. If any member of a family group is produced, all members of that group must also be produced or else logged as privileged, and no such member shall be withheld from production as a duplicate.

**16)** **Dynamic Fields**. Documents with dynamic fields for file names, dates, and times will be imaged to show the field code (e.g., "[FILENAME]") where possible, rather than the values for such fields existing at the time the file is processed.

**17)** **Time Zone**. The time zone used to process a document, including its metadata, shall be disclosed in the TIMEZONE metadata field consistent with Appendix 1, and shall be standardized for each Defendant across productions.

**18)** **Redactions**.

a)       A Producing Party may redact (i) information subject to the attorney client privilege or the work product protection (PRIV); (ii) information that cannot be disclosed pursuant to the Stored Communications Act (SCA); (iii) source code subject to separate agreement applicable to production of source code (CODE); (iv) personal identifying information (PII) including phone numbers, personal addresses, personal email addresses, the month and day of birth, driver's license numbers, and other PII agreed to by the Parties (for example, the Parties shall complete their meet and confer on whether or not to redact users' ages and years of birth). In any event, there shall be no redaction of illnesses, injuries, and medical diagnoses. To the extent a document or pleading contains PII, the Parties shall designate such documents at the appropriate Confidentiality level under the Protective Order and shall comply with Fed. R. Civ. P. 5.2 with regard to filings with the Court.

b)       No redactions for relevance may be made within a produced document or ESI item. If, during the course of discovery, the Parties identify other kinds of information that any

Party has a reasonable basis for redacting, the Parties will meet and confer on a case-by-case basis regarding that information before such redactions are made. If the Parties cannot agree, they may seek resolution from the Court.

c)  The Producing Party will indicate, on the face of the redaction, the asserted reason(s) for the redaction (PII, SCA, CODE, and/or PRIV) and the REDACTION TYPE metadata field shall indicate that the document contains redactions and the reason(s) for the redaction.

d)  Notwithstanding the foregoing, this provision shall not be read to prohibit redactions permitted under any applicable U.S. law or Protective Order.

e)  Where a responsive document contains both redacted and non-redacted content, the Parties shall produce the non-redacted portions of the document and the OCR text corresponding to the non-redacted portions.

f)  Native Redactions. Spreadsheet files requiring redaction, including without limitation Microsoft Excel files, shall be redacted and produced natively (unless the Parties agree to production in some other format). In addition, a Producing Party may natively redact other files that cannot be properly imaged for redaction.

g)  All images of redacted files shall be processed to show all comments, revision marks, speaker notes, marks made in track changes, or other user-entered data which are visible in a normal view of the document in its native application, unless such material is redacted and marked as redacted in accordance with this section. Where possible, any occurrences of date/time auto-field items, including in headers and footers, will be removed and replaced with the term AUTODATE to prevent the current date from being printed. Email header information (e.g., date and/or subject line) shall not be redacted unless it is independently privileged. The Parties shall honor reasonable requests for the production of particular redacted documents in other formats where the image is not reasonably usable.

h)  Color.  Redacted versions of documents that would have been produced in color in their un-redacted form shall be produced in color as detailed herein.

**19) Exception Files**. The Parties will use reasonable efforts to address processing exceptions.

**20) Mobile and Handheld Device Documents and Data**. If responsive and unique data that can reasonably be extracted and produced in the formats described herein is identified on a mobile or handheld device, that data shall be produced in accordance with the generic provisions of this protocol. To the extent that responsive data identified on a mobile or handheld device is not susceptible to normal production protocols, the Parties will meet and confer to address the identification, production, and production format of any responsive documents and data contained on any mobile or handheld device.

**COVINGTON**

BEIJING  BOSTON  BRUSSELS  DUBAI  FRANKFURT
JOHANNESBURG  LONDON  LOS ANGELES  NEW YORK
PALO ALTO  SAN FRANCISCO  SEOUL  SHANGHAI  WASHINGTON

Covington & Burling LLP
Salesforce Tower
415 Mission Street, Suite 5400
San Francisco, CA 94105-2533
T  +1 415 591 6000

July 24, 2024

DELIVERED VIA PROCESS SERVER

Arizona Department of Education
1535 W. Jefferson Street
Phoenix, AZ 85007

Re: <u>People of the State of California v. Meta Platforms, Inc., 4:23-cv-05448</u>

Dear Sir/Madam:

Enclosed please find a subpoena being served upon you in connection with the above-captioned litigation currently pending in the U.S. District Court for the Northern District of California. I represent Defendants Meta Platforms, Inc.; Instagram, LLC, Meta Payments, Inc. and Meta Platforms Technologies, LLC (collectively, the "Meta Defendants") in this matter.

The document subpoena requests the production of specific documents identified in the attached subpoena (see Attachment A to the subpoena), which are requested to be produced by 10:00 a.m. on August 23, 2024.  We are willing to work with you on the time, date, location, method and manner of document production, as well as answer any questions or concerns you may have regarding subpoena compliance.   It is sufficient compliance with this subpoena if you electronically transmit a copy of the requested documents to the undersigned.  As such, please contact me at kpatchen@cov.com and 415-591-6031, to discuss document production and subpoena compliance, unless you are already represented by counsel in connection with this matter.

The Court is currently considering whether the Arizona Attorney General's Office has control over Arizona Department of Education's information for the purposes of discovery in this action.  If the Court rules that the Arizona Attorney General's Office has control over the Arizona Department of Education's information, the Arizona Attorney General has pending discovery requests that seek this agency's documents.  By serving this subpoena, Meta does not waive its position in the state agency dispute, nor does Meta in any way waive rights to compel the Arizona Attorney General to produce Arizona Department of Education information as part of discovery in this action.  However, to avoid further delay in the production of information from the Arizona Department of Education, Meta is serving the attached subpoena to request the timely production of this information.

Your anticipated time and assistance with this matter is greatly appreciated.

**COVINGTON**

Page 2

Best regards,

*/s/ Kate Patchen*

Kate Patchen

Enclosed:  Subpoena, Attachment A, and Attachment B

AO 88B  (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT

for the

Northern District of California

| | |
|---|---|
| IN RE: SOCIAL MEDIA ADOLESCENT ADDICTION/PERSONAL INJURY  PRODUCTS LIABILITY LITIGATION | ) ) |
| THIS DOCUMENT RELATES TO: People of the State of California, et al. v. Meta Platforms, Inc. et al., Case No.: 4:23-cv-05448 | ) )  Civil Action No.   4:22-MD-03047-YGR ) MDL No. 3047 ) ) ) |

**SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS
OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION**

To:  Arizona Department of Education
 1535 W. Jefferson Street, Phoenix, AZ 85007

*(Name of person to whom this subpoena is directed)*

☛ *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material: See Attachment A.

| Place: | Date and Time: August 23, 2024, 10:00 a.m. |
|---|---|

☐ *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date:   07/24/2024

|  CLERK OF COURT | |
|---|---|
| | OR |
| _____ | /s/ Ashley Simonsen |
| *Signature of Clerk or Deputy Clerk* | *Attorney's signature* |

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)*
Meta Platforms, Inc. f/k/a Facebook, Inc.; Instagram, LLC, Meta Payments, Inc. and
Meta Platforms Technologies, LLC, who issues or requests this subpoena, are:
Ashley Simonsen, Covington & Burling LLP, 1999 Avenue of the Stars, Los Angeles, CA 90067, 424-332-4782, asimonsen@cov.com

**Notice to the person who issues or requests this subpoena**
If this subpoena commands the production of documents, electronically stored information, or tangible things or the inspection of premises before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

AO 88B  (Rev.  02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (Page 2)

Civil Action No. 4:23-cv-05448

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____

on *(date)* _____ .

❒  I served the subpoena by delivering a copy to the named person as follows: _____

_____ on *(date)* _____ ; or

❒  I returned the subpoena unexecuted because: _____

_____ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also
tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $     0.00     .

I declare under penalty of perjury that this information is true.

Date: _____        _____
                                              *Server's signature*

                                   _____
                                              *Printed name and title*

                                   _____
                                              *Server's address*

Additional information regarding attempted service, etc.:

AO 88B  (Rev.  02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action(Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

  **(1)** *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
    **(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
    **(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person
      **(i)** is a party or a party's officer; or
      **(ii)** is commanded to attend a trial and would not incur substantial expense.

  **(2)** *For Other Discovery.* A subpoena may command:
    **(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
    **(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

  **(1)** *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

  **(2)** *Command to Produce Materials or Permit Inspection.*
    **(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
    **(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
      **(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
      **(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

  **(3)** *Quashing or Modifying a Subpoena.*
    **(A)** *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
      **(i)** fails to allow a reasonable time to comply;
      **(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);
      **(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
      **(iv)** subjects a person to undue burden.
    **(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
      **(i)** disclosing a trade secret or other confidential research, development, or commercial information; or

      **(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
    **(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
      **(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
      **(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

  **(1)** *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
    **(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
    **(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
    **(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
    **(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

  **(2)** *Claiming Privilege or Protection.*
    **(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
      **(i)** expressly make the claim; and
      **(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
    **(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

## <u>DEFINITIONS AND INSTRUCTIONS TO ATTACHMENT A</u>

### <u>DEFINITIONS</u>

1.      The term "communication" means the transmittal of information (in the form of facts, ideas, inquiries or otherwise).

2.      "Document" or "documents" shall have the broadest meaning ascribed to it by the Federal Rules of Civil Procedure, and includes, without limitation electronically stored information ("ESI") (including, without limitation, electronic databases and the data therein, all electronic messages or communications, electronic word processing documents, electronically stored voicemail, webpages, and social media posts) in accordance with any order in this case governing ESI at the time of production. Different versions of the same documents, including, but not limited to, drafts or documents with handwritten notations or marks not found in the original or on other copies are different documents.

3.      "You", "you", "Your" and "your" means the Arizona Department of Education.

4.      "Relating" or "related to" means and includes referring to, concerning, referencing, mentioning, associated with, constituting, discussing, containing, embodying, recording, reflecting, identifying, summarizing, incorporating, and/or dealing with or pertaining to in any way.

5.      "And" includes "or", and vice versa.

6.      The singular form of a word or term includes the plural, and vice versa.

7.      The present tense of a verb includes the past tense, and vice versa.

8.      The use of the article "the" shall not be construed as limiting the scope of any request.

9.      "Including" means "including without limitation."

10.    "Any" includes "all", and vice versa.

11.    The capitalized version of a word or term includes the lower case version of a word or term, and vice versa.

12.    "Social Media Platforms" or "Platforms" means a digital service that facilitates interactions between two or more distinct but interdependent sets of users, including but not limited to Facebook, Instagram, Snapchat, TikTok, YouTube, Twitter (or "X"), Pinterest, LinkedIn, BeReal, Lapse, Reddit, Threads, VSCO, Goodreads, Quora, Discord, Twitch, and Tumblr.

13.    "Young Users" means users of Social Platforms who are under 18 years of age when using the Platform(s).

All words, terms, and phrases not specifically defined herein are to be given their normal and customary meaning in the context in which they are used in these Requests.

## <u>INSTRUCTIONS</u>

1.    These Requests are intended to cover any and all documents in your possession, custody, or control, to the extent not privileged.  Documents held by any office, department, board, commission, or instrumentality of the Arizona Department of Education are within your possession, custody, or control.

2.    In accordance with ESI Protocol attached hereto as Attachment B, if you object to furnishing any of the documents or information requested by these Requests on the grounds of attorney-client privilege, work product, other privilege, or otherwise then, with respect to each such document:

    a.  state the nature of the privilege claimed;

    b.  state the date of each communication supporting the privilege claim;

    c.  identify all participants in the supporting communication;

    d.  state the specific grounds on which the objection is based; and

      e.   identify the specific request calling for such information;

2.      If you object to any Request on the grounds that it is vague or ambiguous, state: (i) the portions or terms of such Request that you claim to be vague or ambiguous; and (ii) the interpretation of the Request pursuant to which you provide a response.

3.      Each request shall be deemed continuing, so as to require supplemental or mandatory responses should you obtain additional responsive information subsequent to your initial responses.

4.      If you cannot fully respond to a particular Request after exercising due diligence to make inquiry and to secure the necessary information, provide a response to the extent possible, specifying your inability to respond to the remainder and providing whatever information or knowledge you have concerning the portion not responded to.

5.      Each page of a produced document shall have a legible, unique page identifier ("Bates Number") and confidentiality legend (where applicable) on the face of the image at a location that does not obliterate, conceal, or interfere with any information from the source document.  Redactions should be clearly marked or stamped on the page in such a way that it is clear from review that a portion of the image has been redacted.

6.      All responsive and non-privileged electronic documents shall be produced in the format ordered by the Court in its ESI order.

7.      All responsive electronic documents shall be produced in a format agreed upon by the parties, to include at least native versions of Excel spreadsheets and presentation files, with a Bates-stamped placeholder image.

8.      Unless otherwise specified, the time period for these Requests is January 1, 2012 to the date of production of the Documents.

**ATTACHMENT A**

1. Research, investigations, studies, surveys, reports, evaluations, or analyses concerning the mental, social, emotional, or behavioral health of persons ages 13 to 18.

2. Programs, initiatives, efforts, or actions proposed or taken by the Arizona Department of Education to encourage or promote the use of Social Media Platforms.

3. Programs, initiatives, efforts, or actions proposed or taken by the Arizona Department of Education to address Young Users' use of Social Media Platforms, including any program, initiative, effort, or action to prevent, limit, encourage, or promote the use of Social Media Platforms by Young Users.

4. Studies, programs, initiatives, efforts, or actions proposed or taken by the Arizona Department of Education that sought to provide or promote internet access or phones, computers, tablets, or other electronic devices to Young Users.

5. Policies proposed, recommended, or enacted by the Arizona Department of Education regarding screen time and acceptable use of cell phones, computers, tablets, or other electronic devices by Young Users.

6. Complaints to the Arizona Department of Education by teachers regarding social media or cell phone use by Young Users and/or the need for acceptable use or other policies to address Young Users' use of social media or cell phones.

7. Complaints to the Arizona Department of Education by teachers or school districts regarding budget crises from inflation, underfunding, unfunded mandates, and other causes.

8. Documents related to state assessments in Arizona, including reports and analyses regarding the history of K-12 state assessment or standardized testing scores, performance by schools and/or school districts, and any other measures of school performance.

9. Arizona Department of Education's communications and/or collaboration with any Social Media Platform on any program, initiative or other action related to, or directed at, Young Users.

10. Arizona Department of Education's communications with any third party related to Young Users and/or Social Media Platforms.

11. Policies, procedures, and practices applicable to Arizona Department of Education and Arizona Department of Education employees regarding the use of Social Media Platforms, including any changes to these policies during the Relevant Period.

12. Legislation or policies proposed by, proposed on behalf of, or testified on by the Arizona Department of Education, regardless of whether such legislation or policies were enacted, regarding Young Users' use of Social Media Platforms.

13. Research, investigations, studies, surveys, reports, evaluations, or analyses related to Social Media Platforms, including the importance of Social Media Platforms and the use of Social Media Platforms by Young Users and the potential benefits and harms created by the use of Social Media Platforms.

14. Research, investigations, studies, surveys, reports, evaluations, or analyses related to Social Media Platforms regarding the impact of social media on the mental, social, emotional, or behavioral health of Young Users.

15. Research, investigations, studies, surveys, reports, evaluations, or analyses related to:
    a. Features of Social Media Platforms that are psychologically or physically harmful to Young Users;
    b. Features of Social Media Platforms that promote compulsive, prolonged, or unhealthy use by Young Users;
    c. The impact of features of Social Media Platforms, including:
        (1) Algorithmic recommendation and sequencing;
        (2) Image filters;
        (3) Use of multiple user accounts;
        (4) Infinite scroll;
        (5) Ephemeral content features;
        (6) Autoplay;
        (7) Quantification and display of likes; or
        (8) Audiovisual and haptic alerts.

16. Research, investigations, studies, surveys, reports, evaluations, or analyses concerning the mental, social, emotional, or behavioral health of Young Users, including those related to the effects of:
    a. Social Media Platforms usage;
    b. Video games usage;
    c. Cell phone usage;
    d. Messaging usage;
    e. Usage of other electronics apart from usage of Social Media Platforms;
    f. COVID-19 and/or remote learning;
    g. Use of drugs or alcohol;
    h. The opioid and fentanyl epidemic;
    i. Poverty, homelessness, lack of health insurance, and/or food insecurity;
    j. Physical health including nutrition, exercise, weight management, sleeping habits, and sexual activity;
    k. Family trauma or deaths;
    l. Academic pressure;
    m. Violence, including school violence, domestic violence, gun violence, gun control and/or mass shootings;

    n.  Bullying or verbal abuse apart from usage of Social Media Platforms;
    o.  Political polarization;
    p.  Natural disasters;
    q.  Climate change;
    r.  Discrimination and inequity;
    s.  Global warfare and conflict; and
    t.  Any other potential causes of harms to the mental, social, emotional, or behavioral health of Young Users.

17. Youth Risk Behavior Surveys conducted by the Arizona Department of Education or on its behalf.

18. Public or non-public meetings held by the Arizona Department of Education related to Social Media Platforms and use of Social Media Platforms by Young Users, including notices, meeting notes, PowerPoint presentations, internal memoranda, summaries, personal notes, or attendee lists.

19. Mental, social, emotional, or behavioral health services provided by the Arizona Department of Education to Young Users during the Relevant Period.

20. Budgeted and actual expenditures by the Arizona Department of Education during the Relevant Period related to Young Users' use of Social Media Platforms.

21. Policies, procedures, and practices related to the Arizona Department of Education's use of Social Media Platforms, including communication of information or promotion of Arizona Department of Education programs, initiatives, efforts, or actions on Social Media Platforms.

22. Arizona Department of Education's budget and actual expenditures during the Relevant Period, including expenditures on:
    a.  Digital advertisements by the Arizona Department of Education on Social Media Platforms
    b.  Digital advertisements by the Arizona Department of Education purchased through Social Media Platforms.

**<u>ATTACHMENT B</u>**

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| IN RE: *Social Media Adolescent Addiction/Personal Injury Products Liability Litigation*<br><br>This document relates to:<br>ALL ACTIONS | MDL No. 3047<br>Case No. 4:22-md-03047-YGR<br><br>Honorable Yvonne Gonzalez Rogers<br>Honorable Peter H. Kang<br><br>**STIPULATION AND [PROPOSED] ORDER GOVERNING THE PRODUCTION OF ELECTRONICALLY STORED INFORMATION AND HARD COPY DOCUMENTS** |

1.  **PURPOSE**

    This Order Governing the Production of Electronically Stored Information and Hard Copy Documents ("ESI Order") will govern discovery of electronically stored information and any hard copy documents in this Litigation as a supplement to the Federal Rules of Civil Procedure, this District's Guidelines for the Discovery of Electronically Stored Information, and any other applicable orders and rules. "This Litigation" includes all actions currently in MDL No. 3047, *In Re: Social Media Adolescent Addiction/Personal Injury Products Liability*, or hereafter added or transferred to MDL No. 3047, and all actions later remanded to their respective transferor courts.

2.  **DEFINITIONS**

    a)  "Document" is defined to be synonymous in meaning and equal in scope to the usage of this term in Rules 26 and 34 of the Federal Rules of Civil Procedure and shall include Hard-Copy Documents and ESI.

b) "Electronically stored information" or "ESI," as used herein has the same meaning as in Federal Rules of Civil Procedure 26 and 34.

c) "Hard-Copy Document" means Documents existing in paper form at the time of collection.

d) "Searchable Text" means the native text extracted from an Electronic Document and any Optical Character Recognition text ("OCR text") generated from a Hard-Copy Document or electronic image.

**3.     COOPERATION**

The Parties are aware of the importance the Court places on cooperation and commit to cooperate in good faith throughout this Litigation consistent with this Court's Guidelines for the Discovery of ESI and this Court's Rules of Professional Conduct. The Parties will endeavor to cooperate in good faith and be reasonably transparent in all aspects of the discovery process.

**4.     LIAISON**

The Parties will identify Discovery Liaisons to each other who are and will be knowledgeable about and responsible for discussing their respective ESI.  Any Party is free to change their designated Discovery Liaison by providing written notice to the other Parties. Each Party's Discovery Liaison must: (a) be prepared to meet and confer on discovery-related matters and to participate in discovery dispute resolution; (b) be knowledgeable about the Party's discovery efforts; (c) be, or have reasonable access to those who are, familiar with the Party's electronic systems and capabilities in order to explain those systems and answer relevant questions; and (d) be, or have reasonable access to those who are knowledgeable about the technical aspects of discovery, including electronic document storage, organization, and format issues, and relevant information retrieval technology, including search methodology.

**5.     IDENTIFICATION OF CUSTODIANS AND DATA SOURCES**

The parties will disclose information about custodians and custodial and non-custodial data sources likely to possess relevant or responsive information in accordance with Fed. R. Civ. P. 26 and this District's ESI Guidelines. The Parties will participate in Rule 26(f) discussions guided by this District's Checklist for Rule 26(f) Meet and Confer Regarding Electronically

1  Stored Information. After responses to Requests for Production under Fed. R. Civ. P. 34 have

2  been served, the parties will meet and confer regarding those custodians and custodial and non-

3  custodial data sources from which Documents and ESI will be collected for search and review for

4  potential production in this litigation. The custodian and data source exchanges will include brief

5  explanations of the rationale for their selections; for example, for custodians, their current job

6  titles and descriptions of their work, and for data sources, location information and description.

7       **6.    INACCESSIBLE OR UNUSABLE ESI**

8       If a Producing Party asserts that certain requested ESI is inaccessible or not "reasonably

9  accessible," otherwise unnecessary, or if the Receiving Party asserts that, following production,

10  certain ESI is not reasonably useable, the parties shall meet and confer to discuss resolving such

11  assertions. The parties will exchange sufficient information to enable the parties to confer in good

12  faith. If the parties cannot resolve any such disputes after such a meet and confer has taken place,

13  the issue shall be presented to the Court for resolution.

14       **7.    KNOWN RESPONSIVE DOCUMENTS**

15       Documents or ESI identified in a custodial or non-custodial file, or in a discrete folder or

16  collection, that are known to a Producing Party through reasonable investigation to be responsive

17  to a discovery request shall be collected for review without regard to whether the responsive

18  content was located via any search methodology developed in accordance with this Order, and

19  nothing about such review shall prevent the Producing Party from redacting or withholding and

20  logging such documents for applicable privileges.

21       **8.    SEARCH METHODOLOGIES**

22       The Parties shall adopt reasonable and proportionate methodologies to identify, search,

23  collect, cull, review, and produce ESI as required under applicable legal standards. The Parties

24  recognize and agree that each Party may use one or more methodologies to identify, search,

25  collect, cull, review, and produce responsive and non-privileged ESI, including the use of

26  keyword search terms and/or the use of technology assisted review ("TAR") as discussed further

27  herein. The Parties further recognize that different data sets may implicate different

28  methodologies to identify, search, collect, cull, review, and produce responsive and non-

privileged ESI. The Parties therefore agree to meet and confer in good faith regarding any

potential disputes over their respective ESI productions.

## 9. HIT REPORTS AND SEARCH TERMS

If a Producing Party uses search terms to identify, search, or cull potentially responsive

ESI, the Producing Party shall disclose the search terms to the Requesting Party. The Parties shall

meet and confer regarding any disputes over the disclosed search terms. In the event that a

Producing Party claims burden with respect to modified and/or additional search terms proposed

by a Requesting Party, the Producing Party shall provide a hit report for the terms at issue using

industry-standard processing tools, such as NUIX or other similar tools. The Producing Party

shall provide a hit report for the document collection where the terms were applied, including the

following with respect to each proposed or modified search term in the collection:

    a) The number of documents with hits for that term; and

    b) The number of unique documents, i.e., documents which do not have hits for any other

       term.

If, after reviewing a hit report from a Producing Party, a Requesting Party so chooses, it

may reasonably request a further hit report which includes:

    c) The number of family members, including the documents with hits, of the documents

       with hits for that term; and

    d) The number of unique family members of the documents with hits for that term.

If the ESI tool for the Producing Party is capable without undue burden of providing the

number of family members and unique family members, then the Producing Party shall provide

such further hit report. The Parties (including the person most knowledgeable about the

capabilities of the Producing Party's ESI tool and the Requesting Party's person most

knowledgeable about technical issues from its ESI service provider) shall meet and confer

regarding any disputes over whether the Producing Party's ESI tool has the capability or not to

provider either number of family members or number of unique family members.

The Parties shall meet and confer to resolve disagreements over the search terms or their

application. To the extent the Parties are unable to reach agreement on the application of, or

procedures for, any search or filtering processes, the Parties shall fully comply with the provisions of this Court's Discovery Standing Order regarding the procedure for raising discovery disputes with the Court, including the meet and confer and certification requirements therein.

## 10.   TECHNOLOGY ASSISTED REVIEW (TAR)

A Producing Party may use TAR (technology-assisted review) during the culling and review process of ESI, which may be applied in addition to search terms. If a Producing Party uses TAR to cull, filter out, or exclude documents from that Party's production, that Producing Party shall do the following:

- If a Producing Party chooses to apply both search terms and TAR to a review set, the Producing Party will disclose the search terms to all other Party/Parties.
- Disclose the name of the TAR tool or service used to all other Party/Parties.

## 11.   VALIDATION

Each Producing Party shall take reasonable steps to validate its review process (i.e., using quality control measures to determine whether its production is missing relevant ESI or contains substantial amounts of irrelevant ESI) and make any necessary adjustments or corrections to its process. If, after reviewing a Producing Party's production, a Requesting Party reasonably requests additional information regarding the validation method(s) used by the Producing Party, the Producing Party will disclose the level of end-to-end recall (the percentage of responsive Documents in the collection which were identified as responsive by that Producing Party's methodology). If there remain disputes between the Parties regarding validation, the Parties shall meet and confer to resolve such disputes in good faith, including a reasonable discussion regarding the tool used and the parameters used to obtain or calculate the level of recall.

## 12.   UNSEARCHABLE DOCUMENTS

The Producing Party shall use reasonable efforts to identify and review potentially responsive documents for which text-based search technologies are fundamentally ineffective.

## 13.   SYSTEM FILES

Each Party will use its best efforts to filter out common system files and application executable files using the national software reference library ("NSRL") NIST hash set list. The

Parties also may filter out stand-alone files identified as zero bytes in size. Additional culling of file types based on file header information may be applied to the following, provided these files are not known to be otherwise attached, embedded in, or included with an otherwise responsive document, or are not themselves reasonably known to contain information responsive or contain responsive data or are used to interface with users or interact with or access individual or aggregated user data: Application Package File, Backup Files, Batch Files, Binary Disc Image, C++ File Formats, Cascading Style Sheet, Configuration File, Database File, Dictionary Files, Dynamic Link Library, Event Log Files, Executable Files, Hypertext Cascading Stylesheet, Java Archive Files, JavaScript Files, JavaScript Source Code and Class Files, Macintosh Resource Fork Files, Package Manager Files, Program Files, Program Installers, Python Script Files, Shell Script Files, System or Temporary Files, Thumbnail Cache Files, Troff Files, Truetype Font Files, Windows Cabinet File, Windows Command Files, Windows File Shortcut, Windows Help Files, Windows Metafiles and Enhanced Metafiles, Windows Spool Files, Windows System File.

## 14.    DEDUPLICATION

Each Producing Party shall make reasonable efforts to globally deduplicate exact duplicate Documents within that Producing Party's ESI data set across all custodial and non-custodial sources at the family level using either MD5 hash values or SHA hash values or any other agreed-upon (and disclosed) industry-standard deduplication technology. The Parties shall reach agreement on such other deduplication technology and shall reach agreement on how their deduplication tools shall identify exact duplicates of documents in a manner that is consistent with the disclosed tools and technologies a Producing Party is using. The Parties shall reach agreement on how to identify exact duplicates of emails using industry-standard commercially available software tools or services, which may for example calculate hash values of emails based on concatenated values of agreed-upon email fields and/or hash values of attachments, or which may use any other method the Parties agree upon. Having further met and conferred in keeping with the previous sentence, the Parties shall calculate deduplication hash values for emails on the concatenated values set forth in and in accordance with the documentation specifications of the disclosed deduplication tools to be used in this Litigation (i.e., RelativityOne, Relativity Server,

and Nuix); however, if Nuix is used, the Producing Party shall select the optional field "Include Bcc" as an additional field to add to the default ones.

The Parties shall not withhold from production near-duplicates without meeting and conferring on this issue.

The names of all custodians who were either identified as custodians for purposes of collection for this matter (or otherwise known by the Producing Party to have been in possession or custody of a document prior to deduplication) will be populated in the ALL CUSTODIANS metadata field for the produced version of a document that has duplicates removed from production. The original file paths (if any exist) of a document prior to deduplication will be populated in the ALL FILE PATHS metadata field of the produced document.

### 15.    EMAIL THREADING

The Parties may use analytics technology to identify email threads and shall produce the unique most inclusive copy and related family members. Where multiple email messages are part of a single chain or "thread," a Party is only required to produce the most inclusive copy of an email message(s) ("Last In Time Email(s)") and need not produce earlier, lesser inclusive email messages or "thread members," provided that the tool or software service being used to perform threading is disclosed. A Producing Party may exclude from production lesser inclusive copies of the most inclusive email message in the thread, where the entire body of each of those lesser inclusive copies is included within the Last in Time Email. The Producing Party will honor reasonable requests to produce lesser inclusive copies of a Last In Time Email or other earlier chains of emails otherwise excluded by email thread suppression.

The Parties shall treat new or different email chains or threads pursuant to further agreement on safeguards or guidelines for defining emails threads which reasonably take into account the capabilities of the email threading/dethreading/hyperthreading tools used by each Defendant (which shall be disclosed to Plaintiffs).

### 16.    SOURCE CODE

The Parties will meet and confer to address the production and/or inspection of source code and entering into a separate order governing the same if needed.

### 17.   PRODUCTION FORMATS

The Parties agree to produce documents and data in the formats described in **Appendix 1** to this ESI Order. If particular documents or categories of documents identified in response to document requests warrant a different format, the Parties will cooperate to arrange for the mutually acceptable production of such documents. The Parties further agree not to degrade the searchability of documents as part of the document production process.

In addition, the Parties agree that the production and production format of social media and/or user account information is not covered by this agreement and to meet and confer on the production and production format, including metadata, for social media and/or user account information.

### 18.   PHASING

Once the Parties begin propounding discovery requests pursuant to Fed. R. Civ. P. 34, the Parties agree to meet and confer regarding appropriate phasing for the production of ESI.

### 19.   MISCELLANEOUS PROVISIONS

a) **Production of Plaintiffs ESI and Case-Specific Materials**.  Subject to any further agreement among the Parties or Order of the Court, the Parties shall produce case-specific documents (i.e., documents specific to the claim of a given Plaintiff, produced by Plaintiffs or Defendants) for any Plaintiff in discovery pools or other selections designed to inform bellwether selection, including those selected for a bellwether trial, in accordance with the production format specified herein, provided, however, that the Producing Party may elect to produce such materials in their native format. To the extent production of case-specific documents for any Plaintiff selected for a bellwether trial presents an issue for any Party, the Parties shall reasonably confer, and may present any disputes to the Court or its designee.  The Parties shall further agree to confer concerning the production format and associated matters (*e.g.*, hosting platform) for case-specific documents produced in the cases of other Plaintiffs. Nothing herein shall limit Defendant's right to seek discovery from any Plaintiff.

b) **Translations Of Produced Materials**.  The Producing Party has no obligation to

create a translation of the Documents or any portion thereof. For any foreign-language documents responsive to document requests that a Party reasonably knows as the result of a reasonable investigation have been translated into the English language using human translators or through machine translation for its own purposes, except to the extent such translation is protected by attorney-client or work-product privileges, the Producing Party shall produce the translation of the original document with the original. The parties will meet and confer as necessary concerning procedures for using translations at depositions and at trial. In the event the Parties cannot reach agreement, the matter may be submitted to the Court for determination.

c) **Third-Party Documents**.  A Party that issues a Non-Party subpoena ("Issuing Party") shall include a copy of this Order with the subpoena and state that (1) the subpoenaed Non-Party should produce Documents in response to the subpoena to all Parties; and (2) the Parties to this Litigation have requested that Third Parties produce Documents in accordance with the specifications set forth herein. If the subpoenaed Non-Party produces Documents to the Issuing Party but does not produce those Documents to other Parties, the Issuing Party shall produce such Documents to those other Parties within 14 days of receiving the Documents, except where the Documents are to be used in a deposition, in which case the Issuing Party shall produce such Documents to all other Parties no later than three (3) days prior to the deposition, or as soon as reasonably practicable if such production occurs thereafter. Nothing in this Order is intended or may be interpreted to narrow, expand, or otherwise affect the rights of the Parties or Third Parties to object to a subpoena. If the Non-Party production is not Bates-stamped, the Parties will meet and confer to agree upon a format for designating the documents with a unique Bates Number prefix.

d) **Documents Produced by Parties – Presumption of Authenticity**.  In order to reduce the number of requests for admission, this Order establishes a rebuttable presumption that documents produced by the Parties are authentic, if said documents were either created or authored by the producing Party, or any of its employees, agents, or

contractors, so long as the employees', agents', or contractors' work was performed in connection with a project or assignment sponsored by the producing Party. No further evidence to establish authenticity need be provided. Nothing in this paragraph shall be deemed to waive any other evidentiary objection a party may have, including but not limited to hearsay, foundation/personal knowledge, or relevance.

e) **Re-productions.** Notwithstanding any provisions to the contrary, re-production of discrete sets of documents from another litigation, arbitration, government inquiry, or other matter may be re-produced in the same manner and form as originally produced in the other matter, provided however that a party will re-produce documents in a different format for good cause shown. This provision does not waive the right of a party to object to any requests for reproduction of production files from another litigation, arbitration, government inquiry, or other matter.

f) **Modification**. This ESI Order may be modified by a Stipulated Order of the Parties or by the Court for good cause shown.

g) **Good Faith**. The Parties will act in good faith as required by law and use these procedures to identify and reduce the potential for disputes.

h) **Continuing Obligations**. The Parties recognize that discovery shall be an iterative and cooperative process. The Parties will continue to meet and confer regarding any issues as reasonably necessary and appropriate. This Order does not address or resolve any objections to the Parties' respective discovery requests.

i) **Reservation of Rights**. The Parties agree that any topic not addressed herein is neither a waiver nor acknowledgement of agreement by either Party.

**IT IS SO STIPULATED**, through Counsel of Record.

1   DATED: March 15, 2024                Respectfully submitted,

2                                        */s/ Lexi J. Hazam*
                                         LEXI J. HAZAM
3                                        **LIEFF CABRASER HEIMANN &**
                                         **BERNSTEIN, LLP**
4                                        275 BATTERY STREET, 29TH FLOOR
                                         SAN FRANCISCO, CA 94111-3339
5                                        Telephone: 415-956-1000
                                         lhazam@lchb.com
6

7

8                                        PREVIN WARREN
                                         **MOTLEY RICE LLC**
9                                        401 9th Street NW Suite 630
                                         Washington DC 20004
10                                       T: 202-386-9610
                                         pwarren@motleyrice.com
11

12                                       Co-Lead Counsel

13                                       CHRISTOPHER A. SEEGER
                                         **SEEGER WEISS, LLP**
14                                       55 CHALLENGER ROAD, 6TH FLOOR
                                         RIDGEFIELD PARK, NJ 07660
15                                       Telephone: 973-639-9100
                                         Facsimile: 973-679-8656
16                                       cseeger@seegerweiss.com

17                                       Counsel to Co-Lead Counsel

18

19                                       JENNIE LEE ANDERSON
                                         **ANDRUS ANDERSON, LLP**
20                                       155 MONTGOMERY STREET, SUITE 900
                                         SAN FRANCISCO, CA 94104
21                                       Telephone: 415-986-1400
                                         jennie@andrusanderson.com
22

23                                       Liaison Counsel

24                                       MATTHEW BERGMAN
                                         GLENN DRAPER
25                                       **SOCIAL MEDIA VICTIMS LAW CENTER**
                                         821 SECOND AVENUE, SUITE 2100
26                                       SEATTLE, WA 98104
                                         Telephone: 206-741-4862
27                                       matt@socialmediavictims.org
                                         glenn@socialmediavictims.org
28

JAMES J. BILSBORROW
**WEITZ & LUXENBERG, PC**
700 BROADWAY
NEW YORK, NY 10003
Telephone: 212-558-5500
Facsimile: 212-344-5461
jbilsborrow@weitzlux.com
PAIGE BOLDT
**WATTS GUERRA LLP**
4 Dominion Drive, Bldg. 3, Suite 100
San Antonio, TX 78257
T: 210-448-0500
PBoldt@WattsGuerra.com

THOMAS P. CARTMELL
**WAGSTAFF & CARTMELL LLP**
4740 Grand Avenue, Suite 300
Kansas City, MO 64112
T: 816-701 1100
tcartmell@wcllp.com

JAYNE CONROY
**SIMMONS HANLY CONROY, LLC**
112 MADISON AVE, 7TH FLOOR
NEW YORK, NY 10016
Telephone: 917-882-5522
jconroy@simmonsfirm.com
CARRIE GOLDBERG
**C.A. GOLDBERG, PLLC**
16 Court St.
Brooklyn, NY 11241
T: (646) 666-8908
carrie@cagoldberglaw.com

SIN-TING MARY LIU
**AYLSTOCK WITKIN KREIS &**
**OVERHOLTZ, PLLC**
17 EAST MAIN STREET, SUITE 200
PENSACOLA, FL 32502
Telephone: 510-698-9566
mliu@awkolaw.com

ANDRE MURA
**GIBBS LAW GROUP, LLP**
1111 BROADWAY, SUITE 2100
OAKLAND, CA 94607
Telephone: 510-350-9717
amm@classlawgroup.com

1
2
3   EMMIE PAULOS
    **LEVIN PAPANTONIO RAFFERTY**
4   316 SOUTH BAYLEN STREET, SUITE 600
    PENSACOLA, FL 32502
5   Telephone: 850-435-7107
    epaulos@levinlaw.com
6
7   ROLAND TELLIS
    DAVID FERNANDES
8   **BARON & BUDD, P.C.**
    15910 Ventura Boulevard, Suite 1600
9   Encino, CA 91436
    Telephone: (818) 839-2333
10  Facsimile: (818) 986-9698
    rtellis@baronbudd.com
11  dfernandes@baronbudd.com
12
    ALEXANDRA WALSH
13  **WALSH LAW**
    1050 Connecticut Ave, NW, Suite 500
14  Washington D.C. 20036
    T: 202-780-3014
15  awalsh@alexwalshlaw.com
16
    MICHAEL M. WEINKOWITZ
17  **LEVIN SEDRAN & BERMAN, LLP**
    510 WALNUT STREET
18  SUITE 500
    PHILADELPHIA, PA 19106
19  Telephone: 215-592-1500
    mweinkowitz@lfsbalw.com
20
21  DIANDRA "FU" DEBROSSE ZIMMERMANN
    **DICELLO LEVITT**
22  505 20th St North
    Suite 1500
23  Birmingham, Alabama 35203
    Telephone: 205.855.5700
24  fu@dicellolevitt.com
25
26
27
28

HILLARY NAPPI
**HACH & ROSE LLP**
112 Madison Avenue, 10th Floor
New York, New York 10016
Tel: 212.213.8311
hnappi@hrsclaw.com

JAMES MARSH
**MARSH LAW FIRM PLLC**
31 HUDSON YARDS, 11TH FLOOR
NEW YORK, NY 10001-2170
Telephone: 212-372-3030
jamesmarsh@marshlaw.com

*Attorneys for Individual Plaintiffs*

**ROB BONTA**
Attorney General
State of California

 _/s/ Megan O'Neill_
Nick A. Akers (CA SBN 211222)
Senior Assistant Attorney General
Bernard Eskandari (SBN 244395)
Supervising Deputy Attorney General
Megan O'Neill (CA SBN 343535)
Joshua Olszewski-Jubelirer
(CA SBN 336428)
Marissa Roy (CA SBN 318773)
Deputy Attorneys General
California Department of Justice
Office of the Attorney General
455 Golden Gate Ave., Suite 11000
San Francisco, CA 94102-7004
Phone: (415) 510-4400
Fax: (415) 703-5480
Bernard.Eskandari@doj.ca.gov

*Attorneys for Plaintiff the People of the State of California*

1
2  **RUSSELL COLEMAN**
   Attorney General
3  Commonwealth of Kentucky

4  */s/ J. Christian Lewis*
   J. Christian Lewis (KY Bar No. 87109),
5  *Pro hac vice*
   Philip Heleringer (KY Bar No. 96748),
6  *Pro hac vice*
   Zachary Richards (KY Bar No. 99209),
7  *Pro hac vice app. forthcoming*
   Daniel I. Keiser (KY Bar No. 100264),
8  *Pro hac vice*
   Matthew Cocanougher (KY Bar No. 94292),
9  *Pro hac vice*
   Assistant Attorneys General
10 1024 Capital Center Drive, Suite 200
   Frankfort, KY 40601
11 CHRISTIAN.LEWIS@KY.GOV
   PHILIP.HELERINGER@KY.GOV
12 ZACH.RICHARDS@KY.GOV
   DANIEL.KEISER@KY.GOV
13 MATTHEW.COCANOUGHER@KY.GOV
   Phone: (502) 696-5300
14 Fax: (502) 564-2698

15 *Attorneys for Plaintiff the Commonwealth of Kentucky*
16
17
18
19
20
21
22
23
24
25
26
27
28

COVINGTON & BURLING LLP

By:  */s/ Ashley M. Simonsen*
Ashley M. Simonsen, SBN 275203
COVINGTON & BURLING LLP
1999 Avenue of the Stars
Los Angeles, CA 90067
Telephone: (424) 332-4800
Facsimile: + 1 (424) 332-4749
Email: asimonsen@cov.com

Phyllis A. Jones, *pro hac vice*
Paul W. Schmidt, *pro hac vice*
COVINGTON & BURLING LLP
One City Center
850 Tenth Street, NW
Washington, DC 20001-4956
Telephone: + 1 (202) 662-6000
Facsimile: + 1 (202) 662-6291
Email: pajones@cov.com

*Attorney for Defendants Meta Platforms, Inc.*
*f/k/a Facebook, Inc.; Facebook Holdings,*
*LLC; Facebook Operations, LLC; Facebook*
*Payments, Inc.; Facebook Technologies, LLC;*
*Instagram, LLC; Siculus, Inc.; and Mark Elliot*
*Zuckerberg*

FAEGRE DRINKER LLP
*By: /s/ Andrea Roberts Pierson*
Andrea Roberts Pierson, pro hac vice
FAEGRE DRINKER LLP
300 N. Meridian Street, Suite 2500
Indianapolis, IN 46204
Telephone: + 1 (317) 237-0300
Facsimile: + 1 (317) 237-1000
Email: andrea.pierson@faegredrinker.com

Amy R. Fiterman, pro hac vice
FAEGRE DRINKER LLP
2200 Wells Fargo Center
90 South Seventh Street
Minneapolis MN 55402
Telephone: +1 (612) 766 7768
Facsimile: + 1 (612) 766 1600
Email: amy.fiterman@faegredrinker.com

Geoffrey M. Drake, pro hac vice

KING & SPALDING LLP
1180 Peachtree Street, NE, Suite 1600
Atlanta, GA  30309
Telephone: +1 (404) 572 4726
Email: gdrake@kslaw.com

David P. Mattern, pro hac vice
KING & SPALDING LLP
1700 Pennsylvania Avenue, NW, Suite 900
Washington, D.C.  20006
Telephone: +1 (202) 626 2946
Email: dmattern@kslaw.com

*Attorneys for Defendants TikTok Inc. and
ByteDance Inc.*

MUNGER, TOLLES & OLSEN LLP
By: */s/ Jonathan H. Blavin*
Jonathan H. Blavin, SBN 230269
MUNGER, TOLLES & OLSON LLP
560 Mission Street, 27th Floor
San Francisco, CA 94105-3089
Telephone: (415) 512-4000
Facsimile: (415) 512-4077
Email: jonathan.blavin@mto.com

Rose L. Ehler (SBN 29652)
Victoria A. Degtyareva (SBN 284199)
Laura M. Lopez, (SBN 313450)
Ariel T. Teshuva (SBN 324238)
MUNGER, TOLLES & OLSON LLP
350 South Grand Avenue, 50th Floor
Los Angeles, CA 90071-3426
Telephone: (213) 683-9100
Facsimile: (213) 687-3702
Email: rose.ehler@mto.com
Email: victoria.degtyareva@mto.com
Email: Ariel.Teshuva@mto.com

Lauren A. Bell (*pro hac vice forthcoming*)
MUNGER, TOLLES & OLSON LLP
601 Massachusetts Ave., NW St.,
Suite 500 E
Washington, D.C. 20001-5369
Telephone: (202) 220-1100
Facsimile: (202) 220-2300
Email: lauren.bell@mto.com

*Attorneys for Defendant Snap Inc.*

WILSON SONSINI GOODRICH & ROSATI
Professional Corporation
By: */s/ Brian M. Willen*
Brian M. Willen (*pro hac vice*)
WILSON SONSINI GOODRICH & ROSATI
1301 Avenue of the Americas, 40th Floor
New York, New York 10019
Telephone: (212) 999-5800
Facsimile: (212) 999-5899
Email: bwillen@wsgr.com

Lauren Gallo White
Samantha A. Machock
WILSON SONSINI GOODRICH & ROSATI
One Market Plaza, Spear Tower, Suite 3300
San Francisco, CA 94105
Telephone: (415) 947-2000
Facsimile: (415) 947-2099
Email: lwhite@wsgr.com
Email: smachock@wsgr.com

Christopher Chiou
WILSON SONSINI GOODRICH & ROSATI
953 East Third Street, Suite 100
Los Angeles, CA 90013
Telephone:  (323) 210-2900
Facsimile:  (866) 974-7329
Email: cchiou@wsgr.com

*Attorneys for Defendants YouTube, LLC, Google
LLC, and Alphabet Inc.*

WILLIAMS & CONNOLLY LLP
By: */s/ Joseph G. Petrosinelli*
Joseph G. Petrosinelli (*pro hac vice*)
jpetrosinelli@wc.com
Ashley W. Hardin (*pro hac vice*)
ahardin@wc.com
680 Maine Avenue, SW
Washington, DC 20024
Telephone.: 202-434-5000
Fax: 202-434-5029

*Attorneys for Defendants YouTube, LLC, Google
LLC, and Alphabet Inc.*

MORGAN, LEWIS & BOCKIUS LLP
By: */s/ Stephanie Schuster*
Stephanie Schuster (*pro hac vice*)
stephanie.schuster@morganlewis.com
1111 Pennsylvania Avenue NW
NW Washington, DC 20004-2541
Tel.: 202.373.6595

Yardena R. Zwang-Weissman (SBN 247111)
yardena.zwang-weissman@morganlewis.com
300 South Grand Avenue, 22nd Floor
Los Angeles, CA 90071-3132
Tel.: 213.612.7238

Brian Ercole (*pro hac vice*)
brian.ercole@morganlewis.com
600 Brickell Avenue, Suite 1600
Miami, FL 33131-3075
Tel.: 305.415.3416

*Attorneys for Defendants YouTube, LLC and Google LLC*

**IT IS ORDERED** that the foregoing Agreement is approved.

Dated: _____March 18, 2024_____     _____

MAGISTRATE JUDGE PETER H. KANG

**APPENDIX 1: PRODUCTION FORMAT**

1) **Production Components.** Except as otherwise provided below, ESI must be produced in accordance with the following specifications:

    a) an ASCII delimited data file (.DAT) using standard delimiters;

    b) an image load file (.OPT) that can be loaded into commercially acceptable production software (*e.g.* Concordance);

    c) single page black-and-white TIFF images, or JPEG images when color is specified herein, or native files with single page placeholder TIFF images depending on the applicable production format for each type of file;

    d) and document level .TXT files for all documents containing extracted full text or OCR text.

    e) Family relationships between emails and their attachments, embedded files and their source document, and connected hardcopy documents will be maintained in production. Attachments should be consecutively produced with their parent.

    f) If a particular document warrants a different production format, the Parties will cooperate in good faith to arrange for a mutually acceptable production format.

2) **Production Media and Access Controls.** Productions must be encrypted and produced through secure electronic means, such as secure file sharing methods (*e.g.* FTP), or on CD, DVD, flash drive or external hard drive ("Production Media"). Each piece of Production Media must identify a production number corresponding to the production volume (*e.g.* "VOL001"). Each piece of Production Media must also identify: (a) the case caption; (b) the following label: "This media contains material subject to Court Ordered security measures"; (c) the Producing Party's name; (d) the production date; (e) the Bates Number range of the materials contained on the Production Media.

Nothing in this ESI Order will preclude or impair any and all protections provided the Parties by any Protective Order(s) agreed and entered into by the Parties. Parties will use best efforts to avoid the unnecessary copying or transmittal of produced documents. If questions arise, the Parties will meet and confer to ensure security concerns are addressed prior to the exchange of

any documents.

    **3)**    **Data Load Files/Image Load Files.** Each TIFF in a production must be referenced in the corresponding image load file. The total number of documents referenced in a production's data load file should match the total number of designated document breaks in the image load file(s) in the production. The total number of pages referenced in a production's image load file should match the total number of TIFF files in the production. All images must be assigned a unique Bates number that is sequential within a given document and across the production sets. The Bates Numbers in the image load file must match the corresponding documents' beginning Bates numbers in the data load file. The total number of documents in a production should match the total number of records in the data load file. Load files must not vary in format or structure within a production, or from one production to another except by agreement of the Parties.

    **4)**    **Metadata Fields.** Each of the metadata and coding fields set forth below that can be extracted should be produced for each document, except that if the field contains privileged information, that privileged information may be redacted. However, to the extent that metadata does not exist, is not available for any documents produced, this provision shall not be read to require any Party to extract, capture, collect, manually populate, or produce such metadata, with the exception of the following: (a) BEGBATES, (b) ENDBATES, (c) BEGATTACH, (d) ENDATTACH, (e) PRODVOL, (f) ALL CUSTODIANS, (g) CONFIDENTIALITY, (h) REDACTIONS, (i) REDACTION TYPE, (j) HASHVALUE, (k) NATIVEFILEPATH, and (l) TEXTFILEPATH, which should be populated by the Party or the Party's vendor. The Parties will make reasonable efforts to ensure that metadata fields automatically extracted from the documents correspond directly to the information that exists in the original documents.

| Field Name | Field Description |
|---|---|
| BEGBATES | Beginning Bates number for a particular document as stamped on the first production image for that document |
| ENDBATES | Ending Bates number as stamped on the last |

| Field Name | Field Description |
|---|---|
| | production image for a particular document |
| BEGATTACH | First production Bates number of the first document in a family |
| ENDATTACH | Last production Bates number of the last document in a family |
| ATTACHCOUNT | Number of attachments to an e-mail or embedded parent, as generated by commercially available discovery processing tools. |
| ATTACHNAMES | Names of each individual Attachment, separated by semicolons. |
| PRODVOL | Production volume |
| ALLCUSTODIANS | List of all custodians associated with Document, i.e. "Custodian" + "Other Custodian" values delimited by semicolon. |
| ALLFILEPATHS | All original path(s) to the individual source file(s) when available in the ordinary course of business to and processable by the parties and their ESI vendors of choice. Includes path up to and including internal path of containers. |
| CONFIDENTIALITY | Confidentiality designation assigned to the document consistent with the Stipulated Protective Order governing this Litigation |
| NATIVEFILEPATH | Native File Link (Native Files only) |
| TEXTFILEPATH | Path to extracted text/OCR file for the document |
| HASHVALUE | MD5 hash value of the document |
| DOCUMENT TYPE | Descriptor for the type of document: "E-document" for electronic documents not attached to e-mails; "E-mail" for all e-mails; "E-attachment" for files that were attachments to e-mails; and "Physical" for hard copy physical documents that have been scanned and converted to an electronic image. |
| AUTHOR | Any value populated in the Author field of the |

| Field Name | Field Description |
|---|---|
| | document properties |
| DOCDATE | Date the document was created according to filesystem information (format: MM/DD/YYYY) |
| DATELASTMODIFIED | Date when document was last modified according to filesystem information (format: MM/DD/YYYY) |
| LAST MODIFIED BY | Last person who modified (saved) a document, as generated by commercially available discovery processing tools. |
| TRACK CHANGES | Y if a document with track changes value, otherwise N or empty, if available separately from the HASHIDDENDATA flag |
| COMMENTS | Y if a document with comments, otherwise N or empty, if available separately from the HASHIDDENDATA flag |
| HASHIDDENDATA | Y if a document with hidden content value, otherwise N or empty |
| FILENAME | Filename of an electronic document |
| TITLE | Any value populated in the Title field of the document properties |
| DOCEXT | File extension of document pulled from the document properties |
| FROM | The sender of the email |
| TO | All recipients that were included on the "To" line of the email |
| CC | All recipients that were included on the "CC" line of the email |
| BCC | All recipients that were included on the "BCC" line of the email |
| DATETIMERECEIVED | Date and time email was received (format: MM/DD/YYYY HH:MM) |
| DATETIMESENT | Date and time email was sent (format: MM/DD/YYYY HH:MM) |

| Field Name | Field Description |
|---|---|
| TIMEZONE | The timezone used to process the document |
| EMAILSUBJECT | Subject line of email pulled from the document properties |
| THREADID | If a threading tool is used for emails, the thread id generated by the threading tool. |
| REDACTION TYPE[1] | General category of redaction reason as agreed to by the parties. For example,  PII, SCA, CODE, and/or PRIV.  If more than one, separate reasons by semicolons. |
| REDACTIONS | Y if a document is redacted, otherwise N or empty |

5)      **TIFFs.** Unless excepted below, single page, black and white, Group IV TIFFs should be provided, at least 300 dots per inch (dpi) for all documents. Each TIFF image must be named according to a unique corresponding Bates number associated with the document. Each image must be branded according to the Bates number and the agreed upon confidentiality designation. Original document orientation should be maintained (i.e., portrait to portrait and landscape to landscape). Where the TIFF image is unreadable or has materially degraded the quality of the original, the Producing Party shall provide a higher quality TIFF image or the native or original file.  In addition, the Parties shall take reasonable efforts to process word processing documents (*e.g.*, MS Word) with track changes and/or comments unhidden on the TIFF image.

6)      **Color.** Word processing documents containing tracked changes shall be produced in color, as single-page, 300 dpi JPG images with JPG compression and a high quality setting as to not degrade the original image.  The Producing Party shall comply with good faith by the Requesting Party to provide replacement color images for documents originally produced in black and white.  A Party making such a request shall make the request by individual Bates

---

[1] The Parties will provide specific information on any privilege(s) asserted in their privilege logs, in an overlay, or the redaction boxes.  The "Redaction Reason" field is informational only for redaction type and shall not in any way limit a party's right to assert attorney-client privilege, attorney-work product privilege, and/or any other applicable privilege or protection.

number(s) and shall limit requests made pursuant to this paragraph to a reasonable number of documents.

**7)** **Text Files.** A single multi-page text file must be provided for each document, and the filename should match its respective TIFF filename for the first page of that document. Extracted text shall be generated with commercially acceptable technology set to include all comments, revisions, tracked changes, speaker's notes and text from documents with comments or tracked changes, and hidden and very hidden worksheets, slides, columns and rows. When possible, the text of native files should be extracted directly from the native file. Parties will perform optical character recognition ("OCR") on foreign language documents using the appropriate settings for languages reasonably anticipated to be in the production following a meet and confer with the Requesting Party to identify those languages. Text files will not contain the redacted portions of the documents. A commercially acceptable technology for OCR should be used for all scanned, hard copy documents and for documents with redactions other than Excel files and other spreadsheets which shall be redacted in native format. Text extracted from emails should include the following header information where available: (1) the individuals to whom the communication was directed ("To"), (2) the author of the email communication ("From"), (3) who was copied and blind copied on such email ("CC" and "BCC"), (4) the subject line of the email ("RE" or "Subject"), and (5) the date and time of the email. To the extent the text extraction technology the Parties are using can be configured to include the text of any URLs or links, the Parties shall utilize that setting.

**8)** **Native files.** Spreadsheets (*e.g.* MS Excel), and un-redacted presentations (e.g. Microsoft PowerPoint,) will be produced in native format to the extent that they are produced in this Litigation, audio, video, and multi-media files will be produced in native format. The Parties will meet and confer on the production of other file types, such as proprietary files, etc. Native files will be produced with a link in the NATIVEFILEPATH field, along with extracted text (where extracted text is available) and applicable metadata fields set forth in paragraph 4 above. A Bates numbered TIFF placeholder indicating that the document was provided in native format must accompany every native file. Where redaction makes production of native-format

files other than spreadsheets or presentations infeasible, the Parties will confer to determine a reasonably usable form for the production, but spreadsheets shall presumptively be redacted in native, and presentations presumptively redacted in image form, in these cases without the need for further conferring.

**9)** **Production Format for Hard Copy Documents.** Documents that exist in hardcopy will be scanned to *.tiff image format and produced in accordance with the specifications set forth herein. Hard copy documents that are not text-searchable shall be made searchable by OCR prior to production.  In scanning paper documents, distinct documents should not be merged into a single record, and single documents should not be split into multiple records (i.e., paper documents should be logically unitized). In the case of an organized compilation of separate documents (for example, a binder containing several separate documents behind numbered tabs), the document behind each tab should be scanned separately, but the relationship among the documents in the compilation should be reflected in the proper coding of the beginning and ending document and attachment fields. The Parties will make their best efforts to unitize the documents correctly. If relevant documents are maintained in a file, folder, envelope, binder, notebook or similar container used to store documents, all contents therein shall be reviewed for production and privilege. Document pages which have affixed notes, such as Post-it notes, should be imaged with and without the note attached.

**10)** **Confidentiality Designation.** All images will be stamped with the appropriate confidentiality designations in accordance with the Stipulated Protective Order entered in this Litigation. Each document produced in native format will have its confidentiality designation identified in the filename of the native file and indicated on its corresponding TIFF placeholder.

**11)** **Bates Numbering**. Bates numbering should be a consistent length across the production, contain no special characters, and be numerically sequential within a given document.  If a Bates number or set of Bates numbers is skipped, the skipped number or set of numbers should be noted with a placeholder.  Attachments to documents will be assigned Bates numbers that directly follow the Bates numbers on the documents to which they were attached.

In addition, wherever possible, each image will have its assigned Bates number electronically "burned" onto the image.

**12) Databases and Other Structured Data.** To the extent that responsive information is stored in a database, or database management system, or proprietary system or application which has is directed to data storage as one of its primary functions, the Producing Party will identify the database and platform to the Requesting Party. The Producing Party shall produce exports and reports about such responsive information stored in such database, where such exports and reports shall be in a reasonably usable form, and information may be produced in CSV format, tab-delimited text format, Microsoft Excel format, or Microsoft Access format. If there are future disputes over the production of information from a database, the Parties shall meet and confer in good faith in an attempt to reach any further agreements (if needed) on the data to be produced and the format and scope of the production. The Producing Party will provide reasonable amounts of information about the databases to facilitate that discussion.

**13) Hyperlinks.** Document(s) and/or folder(s) of documents that are hyperlinked inside a responsive document (including hyperlinked inside emails) within a Producing Party's custody, possession, or control, do not need to be produced in the first instance as part of the same family group as the Document residing at the location to which that hyperlink points. If there are particular hyperlinks identified by the Requesting Party in produced documents, the Requesting Party may submit a list of hyperlinks to a particular Producing Party for potentially relevant documents by identifying the Bates number and URL or link text for each requested link to the Producing Party, and the Producing Party will engage in reasonable efforts to locate the hyperlinked document at that location and either identify it by Bates number or provide any responsive, non-produced, and non-privileged documents. The number of hyperlinks a Requesting Party may identify to a Producing Party shall not be excessive and shall be reasonable, proportional to the needs of the case, and not unduly burdensome.

**14) Embedded Objects.** The Parties agree non-substantive embedded objects, including, but not limited to, logos, icons, emoticons, and footers, may be culled from a document set (but not a document) and need not be produced as separate documents by a

Producing Party (i.e., such embedded objects will be produced within the document itself, rather than as separate documents). Embedded files, except for images (including but not limited to, logos, icons, emoticons), are to be produced as family groups. Embedded files should be assigned Bates numbers that directly follow the Bates numbers on the documents within which they are embedded.

**15)** **Production of Family Groups and Relationships**. If any member of a family group is produced, all members of that group must also be produced or else logged as privileged, and no such member shall be withheld from production as a duplicate.

**16)** **Dynamic Fields**. Documents with dynamic fields for file names, dates, and times will be imaged to show the field code (e.g., "[FILENAME]") where possible, rather than the values for such fields existing at the time the file is processed.

**17)** **Time Zone**. The time zone used to process a document, including its metadata, shall be disclosed in the TIMEZONE metadata field consistent with Appendix 1, and shall be standardized for each Defendant across productions.

**18)** **Redactions**.

a)      A Producing Party may redact (i) information subject to the attorney client privilege or the work product protection (PRIV); (ii) information that cannot be disclosed pursuant to the Stored Communications Act (SCA); (iii) source code subject to separate agreement applicable to production of source code (CODE); (iv) personal identifying information (PII) including phone numbers, personal addresses, personal email addresses, the month and day of birth, driver's license numbers, and other PII agreed to by the Parties (for example, the Parties shall complete their meet and confer on whether or not to redact users' ages and years of birth). In any event, there shall be no redaction of illnesses, injuries, and medical diagnoses. To the extent a document or pleading contains PII, the Parties shall designate such documents at the appropriate Confidentiality level under the Protective Order and shall comply with Fed. R. Civ. P. 5.2 with regard to filings with the Court.

b)      No redactions for relevance may be made within a produced document or ESI item. If, during the course of discovery, the Parties identify other kinds of information that any

Party has a reasonable basis for redacting, the Parties will meet and confer on a case-by-case basis regarding that information before such redactions are made. If the Parties cannot agree, they may seek resolution from the Court.

       c)      The Producing Party will indicate, on the face of the redaction, the asserted reason(s) for the redaction (PII, SCA, CODE, and/or PRIV) and the REDACTION TYPE metadata field shall indicate that the document contains redactions and the reason(s) for the redaction.

       d)      Notwithstanding the foregoing, this provision shall not be read to prohibit redactions permitted under any applicable U.S. law or Protective Order.

       e)      Where a responsive document contains both redacted and non-redacted content, the Parties shall produce the non-redacted portions of the document and the OCR text corresponding to the non-redacted portions.

       f)      Native Redactions. Spreadsheet files requiring redaction, including without limitation Microsoft Excel files, shall be redacted and produced natively (unless the Parties agree to production in some other format). In addition, a Producing Party may natively redact other files that cannot be properly imaged for redaction.

       g)      All images of redacted files shall be processed to show all comments, revision marks, speaker notes, marks made in track changes, or other user-entered data which are visible in a normal view of the document in its native application, unless such material is redacted and marked as redacted in accordance with this section. Where possible, any occurrences of date/time auto-field items, including in headers and footers, will be removed and replaced with the term AUTODATE to prevent the current date from being printed. Email header information (e.g., date and/or subject line) shall not be redacted unless it is independently privileged. The Parties shall honor reasonable requests for the production of particular redacted documents in other formats where the image is not reasonably usable.

       h)      Color.  Redacted versions of documents that would have been produced in color in their un-redacted form shall be produced in color as detailed herein.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**19)**    **Exception Files**. The Parties will use reasonable efforts to address processing exceptions.

**20)**    **Mobile and Handheld Device Documents and Data**. If responsive and unique data that can reasonably be extracted and produced in the formats described herein is identified on a mobile or handheld device, that data shall be produced in accordance with the generic provisions of this protocol. To the extent that responsive data identified on a mobile or handheld device is not susceptible to normal production protocols, the Parties will meet and confer to address the identification, production, and production format of any responsive documents and data contained on any mobile or handheld device.

# COVINGTON

BEIJING  BOSTON  BRUSSELS  DUBAI  FRANKFURT
JOHANNESBURG  LONDON  LOS ANGELES  NEW YORK
PALO ALTO  SAN FRANCISCO  SEOUL  SHANGHAI  WASHINGTON

Covington & Burling LLP
Salesforce Tower
415 Mission Street, Suite 5400
San Francisco, CA 94105-2533
T  +1 415 591 6000

July 24, 2024

DELIVERED VIA PROCESS SERVER

Arizona Department of Health Services
150 N. 18th Avenue
Phoenix, AZ 85007

Re: People of the State of California v. Meta Platforms, Inc., 4:23-cv-05448

Dear Sir/Madam:

Enclosed please find a subpoena being served upon you in connection with the above-captioned litigation currently pending in the U.S. District Court for the Northern District of California. I represent Defendants Meta Platforms, Inc.; Instagram, LLC, Meta Payments, Inc. and Meta Platforms Technologies, LLC (collectively, the "Meta Defendants") in this matter.

The document subpoena requests the production of specific documents identified in the attached subpoena (see Attachment A to the subpoena), which are requested to be produced by 10:00 a.m. on August 23, 2024. We are willing to work with you on the time, date, location, method and manner of document production, as well as answer any questions or concerns you may have regarding subpoena compliance. It is sufficient compliance with this subpoena if you electronically transmit a copy of the requested documents to the undersigned. As such, please contact me at kpatchen@cov.com and 415-591-6031, to discuss document production and subpoena compliance, unless you are already represented by counsel in connection with this matter.

The Court is currently considering whether the Arizona Attorney General's Office has control over Arizona Department of Health Services' information for the purposes of discovery in this action. If the Court rules that the Arizona Attorney General's Office has control over the Arizona Department of Health Services' information, the Arizona Attorney General has pending discovery requests that seek this agency's documents. By serving this subpoena, Meta does not waive its position in the state agency dispute, nor does Meta in any way waive rights to compel the Arizona Attorney General to produce Arizona Department of Health Services information as part of discovery in this action. However, to avoid further delay in the production of information from the Arizona Department of Health Services, Meta is serving the attached subpoena to request the timely production of this information.

Your anticipated time and assistance with this matter is greatly appreciated.

**COVINGTON**

Page 2

Best regards,

*/s/ Kate Patchen*

Kate Patchen

Enclosed:  Subpoena, Attachment A, and Attachment B

AO 88B  (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT

for the

Northern District of California

| | |
|---|---|
| IN RE: SOCIAL MEDIA ADOLESCENT ADDICTION/PERSONAL INJURY  PRODUCTS LIABILITY LITIGATION | ) ) ) |
| THIS DOCUMENT RELATES TO: People of the State of California, et al. v. Meta Platforms, Inc. et al., Case No.: 4:23-cv-05448 | ) ) ) ) ) |

Civil Action No.    4:22-MD-03047-YGR
MDL No. 3047

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS
## OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

To:    Arizona Department of Health Services
       150 N. 18th Avenue, Phoenix, AZ 85007

*(Name of person to whom this subpoena is directed)*

☑ *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material: See Attachment A.

| Place: | Date and Time: August 23, 2024, 10:00 a.m. |
|---|---|

❐ *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date:    07/24/2024

| *CLERK OF COURT* | OR | |
|---|---|---|
| _____ Signature of Clerk or Deputy Clerk | | /s/ Ashley Simonsen _____ Attorney's signature |

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)*
Meta Platforms, Inc. f/k/a Facebook, Inc.; Instagram, LLC, Meta Payments, Inc. and
Meta Platforms Technologies, LLC,
_____ who issues or requests this subpoena, are:
Ashley Simonsen, Covington & Burling LLP, 1999 Avenue of the Stars, Los Angeles, CA 90067, 424-332-4782, asimonsen@cov.com

### Notice to the person who issues or requests this subpoena

If this subpoena commands the production of documents, electronically stored information, or tangible things or the inspection of premises before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

AO 88B (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (Page 2)

Civil Action No. 4:23-cv-05448

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____

on *(date)* _____ .

❑ I served the subpoena by delivering a copy to the named person as follows: _____

_____

_____ on *(date)* _____ ; or

❑ I returned the subpoena unexecuted because: _____

_____ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $    0.00    .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc.:

AO 88B  (Rev.  02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action(Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

**(1) *For a Trial, Hearing, or Deposition.*** A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
  **(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
  **(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person
    **(i)** is a party or a party's officer; or
    **(ii)** is commanded to attend a trial and would not incur substantial expense.

**(2) *For Other Discovery.*** A subpoena may command:
  **(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
  **(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

**(1) *Avoiding Undue Burden or Expense; Sanctions.*** A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

**(2) *Command to Produce Materials or Permit Inspection.***
  **(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
  **(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
    **(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
    **(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

**(3) *Quashing or Modifying a Subpoena.***
  **(A)** *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
    **(i)** fails to allow a reasonable time to comply;
    **(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);
    **(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
    **(iv)** subjects a person to undue burden.
  **(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
    **(i)** disclosing a trade secret or other confidential research, development, or commercial information; or

    **(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
  **(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
    **(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
    **(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

**(1) *Producing Documents or Electronically Stored Information.*** These procedures apply to producing documents or electronically stored information:
  **(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
  **(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
  **(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
  **(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

**(2) *Claiming Privilege or Protection.***
  **(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
    **(i)** expressly make the claim; and
    **(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
  **(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

## <u>DEFINITIONS AND INSTRUCTIONS TO ATTACHMENT A</u>

## <u>DEFINITIONS</u>

1.      The term "communication" means the transmittal of information (in the form of facts, ideas, inquiries or otherwise).

2.      "Document" or "documents" shall have the broadest meaning ascribed to it by the Federal Rules of Civil Procedure, and includes, without limitation electronically stored information ("ESI") (including, without limitation, electronic databases and the data therein, all electronic messages or communications, electronic word processing documents, electronically stored voicemail, webpages, and social media posts) in accordance with any order in this case governing ESI at the time of production. Different versions of the same documents, including, but not limited to, drafts or documents with handwritten notations or marks not found in the original or on other copies are different documents.

3.      "You", "you", "Your" and "your" means the Arizona Department of Health Services.

4.      "Relating" or "related to" means and includes referring to, concerning, referencing, mentioning, associated with, constituting, discussing, containing, embodying, recording, reflecting, identifying, summarizing, incorporating, and/or dealing with or pertaining to in any way.

5.      "And" includes "or", and vice versa.

6.      The singular form of a word or term includes the plural, and vice versa.

7.      The present tense of a verb includes the past tense, and vice versa.

8.      The use of the article "the" shall not be construed as limiting the scope of any request.

9.      "Including" means "including without limitation."

10.     "Any" includes "all", and vice versa.

11.     The capitalized version of a word or term includes the lower case version of a word or term, and vice versa.

12.     "Social Media Platforms" or "Platforms" means a digital service that facilitates interactions between two or more distinct but interdependent sets of users, including but not limited to Facebook, Instagram, Snapchat, TikTok, YouTube, Twitter (or "X"), Pinterest, LinkedIn, BeReal, Lapse, Reddit, Threads, VSCO, Goodreads, Quora, Discord, Twitch, and Tumblr.

13.     "Young Users" means users of Social Platforms who are under 18 years of age when using the Platform(s).

All words, terms, and phrases not specifically defined herein are to be given their normal and customary meaning in the context in which they are used in these Requests.

## **INSTRUCTIONS**

1.      These Requests are intended to cover any and all documents in your possession, custody, or control, to the extent not privileged.  Documents held by any office, department, board, commission, or instrumentality of the Arizona Department of Health Services are within your possession, custody, or control.

2.      In accordance with ESI Protocol attached hereto as Attachment B, if you object to furnishing any of the documents or information requested by these Requests on the grounds of attorney-client privilege, work product, other privilege, or otherwise then, with respect to each such document:

    a.   state the nature of the privilege claimed;

    b.   state the date of each communication supporting the privilege claim;

    c.  identify all participants in the supporting communication;

    d.  state the specific grounds on which the objection is based; and

    e.  identify the specific request calling for such information;

2.      If you object to any Request on the grounds that it is vague or ambiguous, state: (i) the portions or terms of such Request that you claim to be vague or ambiguous; and (ii) the interpretation of the Request pursuant to which you provide a response.

3.      Each request shall be deemed continuing, so as to require supplemental or mandatory responses should you obtain additional responsive information subsequent to your initial responses.

4.      If you cannot fully respond to a particular Request after exercising due diligence to make inquiry and to secure the necessary information, provide a response to the extent possible, specifying your inability to respond to the remainder and providing whatever information or knowledge you have concerning the portion not responded to.

5.      Each page of a produced document shall have a legible, unique page identifier ("Bates Number") and confidentiality legend (where applicable) on the face of the image at a location that does not obliterate, conceal, or interfere with any information from the source document. Redactions should be clearly marked or stamped on the page in such a way that it is clear from review that a portion of the image has been redacted.

6.      All responsive and non-privileged electronic documents shall be produced in the format ordered by the Court in its ESI order.

7.      All responsive electronic documents shall be produced in a format agreed upon by the parties, to include at least native versions of Excel spreadsheets and presentation files, with a Bates-stamped placeholder image.

8.      Unless otherwise specified, the time period for these Requests is January 1, 2012 to the date of production of the Documents.

## ATTACHMENT A

1. Research, investigations, studies, surveys, reports, evaluations, or analyses concerning the mental, social, emotional, or behavioral health of persons ages 13 to 18.

2. Research, investigations, studies, surveys, reports, evaluations, or analyses related to Social Media Platforms, including the importance of Social Media Platforms and the use of Social Media Platforms by Young Users and the potential benefits and harms created by the use of Social Media Platforms.

3. Research, investigations, studies, surveys, reports, evaluations, or analyses concerning the mental, social, emotional, or behavioral health of Young Users, including those related to the effects of:
   a.   Social Media Platforms usage;
   b.   Video games usage;
   c.   Cell phone usage;
   d.   Messaging usage;
   e.   Usage of other electronics apart from usage of Social Media Platforms;
   f.   COVID-19 and/or remote learning;
   g.   Use of drugs or alcohol;
   h.   The opioid and fentanyl epidemic;
   i.   Poverty, homelessness, lack of health insurance, and/or food insecurity;
   j.   Physical health including nutrition, exercise, weight management, sleeping habits, and sexual activity;
   k.   Family trauma or deaths;
   l.   Academic pressure;
   m.   Violence, including school violence, domestic violence, gun violence, gun control and/or mass shootings;
   n.   Bullying or verbal abuse apart from usage of Social Media Platforms;
   o.   Political polarization;
   p.   Natural disasters;
   q.   Climate change;
   r.   Discrimination and inequity;
   s.   Global warfare and conflict; and
   t.   Any other potential causes of harms to the mental, social, emotional, or behavioral health of Young Users.

4. Youth Risk Behavior Surveys conducted by the Arizona Department of Health Services or on its behalf.

5. Research, investigations, studies, surveys, reports, evaluations, or analyses related to:
   a.   Features of Social Media Platforms that are psychologically or physically harmful to Young Users;
   b.   Features of Social Media Platforms that promote compulsive, prolonged, or unhealthy use by Young Users;
   c.   The impact of features of Social Media Platforms, including:

    (1) Algorithmic recommendation and sequencing;
    (2) Image filters;
    (3) Use of multiple user accounts;
    (4) Infinite scroll;
    (5) Ephemeral content features;
    (6) Autoplay;
    (7) Quantification and display of likes; or
    (8) Audiovisual and haptic alerts.

6. Programs, initiatives, efforts, or actions proposed or taken by the Arizona Department of Health Services to address Young Users' use of Social Media Platforms, including any program, initiative, effort, or action to prevent, limit, encourage, or promote the use of Social Media Platforms by Young Users.

7. Policies proposed, recommended, or enacted by the Arizona Department of Health Services regarding screen time and acceptable use of cell phones, computers, tablets, or other electronic devices by Young Users.

8. Complaints to the Arizona Department of Health Services by teachers or school districts regarding social media or cell phone use by Young Users and/or the need for acceptable use or other policies to address Young Users' use of social media or cell phones.

9. Complaints to the Arizona Department of Health Services by teachers or school districts regarding budget crises from inflation, underfunding, unfunded mandates, and other causes.

10. Documents related to state assessments in Arizona, including reports and analyses regarding the history of K-12 state assessment or standardized testing scores, performance by schools and/or school districts, and any other measures of school performance.

11. Legislation or policies proposed by, proposed on behalf of, or testified on by the Arizona Department of Health Services, regardless of whether such legislation or policies were enacted, regarding Young Users' use of Social Media Platforms.

12. Mental, social, emotional, or behavioral health services provided by the Arizona Department of Health Services to Young Users during the Relevant Period, including:
    a. Counseling or therapy;
    b. Psychiatric services;
    c. Crisis intervention;
    d. Inpatient short-term and long-term programs;
    e. Resource centers; and
    f. Services for Young Users dealing with substance abuse or addiction issues.

13. Any and all Arizona Department of Health Services grants to address Young Users' mental health, including information about when, where, why, and how any disbursements were

paid, any schedules or plans for future disbursements, policies governing evaluation or approval of such disbursements, records of how the disbursements were used, and all agendas, minutes, notes, or recordings from meetings related to such grant.

14. Public or non-public meetings held by the Arizona Department of Health Services related to Social Media Platforms and use of Social Media Platforms by Young Users, including but not limited to, notices, meeting notes, PowerPoint presentations, internal memoranda, summaries, personal notes, or attendee lists.

15. Policies, procedures, and practices related to the Arizona Department of Health Services' use of Social Media Platforms, including communication of information or promotion of Arizona Department of Health Services' programs, initiatives, efforts, or actions on Social Media Platforms.

16. Arizona Department of Health Services' communications and/or collaboration with any Social Media Platform on any program, initiative or other action related to, or directed at, Young Users.

17. Arizona Department of Health Services' communications with any third party related to Young Users and/or Social Media Platforms.

18. Budgeted and actual expenditures by the Arizona Department of Health Services during the Relevant Period related to Young Users' use of Social Media Platforms.

19. Budgeted and actual expenditures by the Arizona Department of Health Services during the Relevant Period related to treatment of teen mental, social, emotional, or behavioral health issues.

20. Policies, procedures, and practices applicable to the Arizona Department of Health Services and Arizona Department of Health Services employees regarding the use of Social Media Platforms, including any changes to these policies during the Relevant Period.

21. Studies, programs, initiatives, efforts, or actions proposed or taken by the Arizona Department of Health Services that sought to provide or promote internet access or phones, computers, tablets, or other electronic devices to Young Users.

22. Arizona Department of Health Services' budget and actual expenditures during the Relevant Period, including expenditures on:
    a. Digital advertisements by the Arizona Department of Health Services on Social Media Platforms;
    b. Digital advertisements by the Arizona Department of Health Services purchased through Social Media Platforms.

**ATTACHMENT B**

1
2
3
4
5
6
7
8

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| IN RE: *Social Media Adolescent Addiction/Personal Injury Products Liability Litigation*<br><br>This document relates to:<br>ALL ACTIONS | MDL No. 3047<br>Case No. 4:22-md-03047-YGR<br><br>Honorable Yvonne Gonzalez Rogers<br>Honorable Peter H. Kang<br><br>**STIPULATION AND [PROPOSED] ORDER GOVERNING THE PRODUCTION OF ELECTRONICALLY STORED INFORMATION AND HARD COPY DOCUMENTS** |

### 1.    PURPOSE

This Order Governing the Production of Electronically Stored Information and Hard Copy Documents ("ESI Order") will govern discovery of electronically stored information and any hard copy documents in this Litigation as a supplement to the Federal Rules of Civil Procedure, this District's Guidelines for the Discovery of Electronically Stored Information, and any other applicable orders and rules. "This Litigation" includes all actions currently in MDL No. 3047, *In Re: Social Media Adolescent Addiction/Personal Injury Products Liability*, or hereafter added or transferred to MDL No. 3047, and all actions later remanded to their respective transferor courts.

### 2.    DEFINITIONS

a)  "Document" is defined to be synonymous in meaning and equal in scope to the usage of this term in Rules 26 and 34 of the Federal Rules of Civil Procedure and shall include Hard-Copy Documents and ESI.

     b)  "Electronically stored information" or "ESI," as used herein has the same meaning as in Federal Rules of Civil Procedure 26 and 34.

     c)  "Hard-Copy Document" means Documents existing in paper form at the time of collection.

     d)  "Searchable Text" means the native text extracted from an Electronic Document and any Optical Character Recognition text ("OCR text") generated from a Hard-Copy Document or electronic image.

**3.**     **COOPERATION**

The Parties are aware of the importance the Court places on cooperation and commit to cooperate in good faith throughout this Litigation consistent with this Court's Guidelines for the Discovery of ESI and this Court's Rules of Professional Conduct. The Parties will endeavor to cooperate in good faith and be reasonably transparent in all aspects of the discovery process.

**4.**     **LIAISON**

The Parties will identify Discovery Liaisons to each other who are and will be knowledgeable about and responsible for discussing their respective ESI. Any Party is free to change their designated Discovery Liaison by providing written notice to the other Parties. Each Party's Discovery Liaison must: (a) be prepared to meet and confer on discovery-related matters and to participate in discovery dispute resolution; (b) be knowledgeable about the Party's discovery efforts; (c) be, or have reasonable access to those who are, familiar with the Party's electronic systems and capabilities in order to explain those systems and answer relevant questions; and (d) be, or have reasonable access to those who are knowledgeable about the technical aspects of discovery, including electronic document storage, organization, and format issues, and relevant information retrieval technology, including search methodology.

**5.**     **IDENTIFICATION OF CUSTODIANS AND DATA SOURCES**

The parties will disclose information about custodians and custodial and non-custodial data sources likely to possess relevant or responsive information in accordance with Fed. R. Civ. P. 26 and this District's ESI Guidelines. The Parties will participate in Rule 26(f) discussions guided by this District's Checklist for Rule 26(f) Meet and Confer Regarding Electronically

1  Stored Information. After responses to Requests for Production under Fed. R. Civ. P. 34 have

2  been served, the parties will meet and confer regarding those custodians and custodial and non-

3  custodial data sources from which Documents and ESI will be collected for search and review for

4  potential production in this litigation. The custodian and data source exchanges will include brief

5  explanations of the rationale for their selections; for example, for custodians, their current job

6  titles and descriptions of their work, and for data sources, location information and description.

7       **6.**     **INACCESSIBLE OR UNUSABLE ESI**

8       If a Producing Party asserts that certain requested ESI is inaccessible or not "reasonably

9  accessible," otherwise unnecessary, or if the Receiving Party asserts that, following production,

10  certain ESI is not reasonably useable, the parties shall meet and confer to discuss resolving such

11  assertions. The parties will exchange sufficient information to enable the parties to confer in good

12  faith. If the parties cannot resolve any such disputes after such a meet and confer has taken place,

13  the issue shall be presented to the Court for resolution.

14       **7.**     **KNOWN RESPONSIVE DOCUMENTS**

15       Documents or ESI identified in a custodial or non-custodial file, or in a discrete folder or

16  collection, that are known to a Producing Party through reasonable investigation to be responsive

17  to a discovery request shall be collected for review without regard to whether the responsive

18  content was located via any search methodology developed in accordance with this Order, and

19  nothing about such review shall prevent the Producing Party from redacting or withholding and

20  logging such documents for applicable privileges.

21       **8.**     **SEARCH METHODOLOGIES**

22       The Parties shall adopt reasonable and proportionate methodologies to identify, search,

23  collect, cull, review, and produce ESI as required under applicable legal standards. The Parties

24  recognize and agree that each Party may use one or more methodologies to identify, search,

25  collect, cull, review, and produce responsive and non-privileged ESI, including the use of

26  keyword search terms and/or the use of technology assisted review ("TAR") as discussed further

27  herein. The Parties further recognize that different data sets may implicate different

28  methodologies to identify, search, collect, cull, review, and produce responsive and non-

privileged ESI. The Parties therefore agree to meet and confer in good faith regarding any potential disputes over their respective ESI productions.

### 9. HIT REPORTS AND SEARCH TERMS

If a Producing Party uses search terms to identify, search, or cull potentially responsive ESI, the Producing Party shall disclose the search terms to the Requesting Party. The Parties shall meet and confer regarding any disputes over the disclosed search terms. In the event that a Producing Party claims burden with respect to modified and/or additional search terms proposed by a Requesting Party, the Producing Party shall provide a hit report for the terms at issue using industry-standard processing tools, such as NUIX or other similar tools. The Producing Party shall provide a hit report for the document collection where the terms were applied, including the following with respect to each proposed or modified search term in the collection:

a) The number of documents with hits for that term; and

b) The number of unique documents, i.e., documents which do not have hits for any other term.

If, after reviewing a hit report from a Producing Party, a Requesting Party so chooses, it may reasonably request a further hit report which includes:

c) The number of family members, including the documents with hits, of the documents with hits for that term; and

d) The number of unique family members of the documents with hits for that term.

If the ESI tool for the Producing Party is capable without undue burden of providing the number of family members and unique family members, then the Producing Party shall provide such further hit report. The Parties (including the person most knowledgeable about the capabilities of the Producing Party's ESI tool and the Requesting Party's person most knowledgeable about technical issues from its ESI service provider) shall meet and confer regarding any disputes over whether the Producing Party's ESI tool has the capability or not to provider either number of family members or number of unique family members.

The Parties shall meet and confer to resolve disagreements over the search terms or their application. To the extent the Parties are unable to reach agreement on the application of, or

procedures for, any search or filtering processes, the Parties shall fully comply with the provisions of this Court's Discovery Standing Order regarding the procedure for raising discovery disputes with the Court, including the meet and confer and certification requirements therein.

## 10.   TECHNOLOGY ASSISTED REVIEW (TAR)

A Producing Party may use TAR (technology-assisted review) during the culling and review process of ESI, which may be applied in addition to search terms. If a Producing Party uses TAR to cull, filter out, or exclude documents from that Party's production, that Producing Party shall do the following:

- If a Producing Party chooses to apply both search terms and TAR to a review set, the Producing Party will disclose the search terms to all other Party/Parties.
- Disclose the name of the TAR tool or service used to all other Party/Parties.

## 11.   VALIDATION

Each Producing Party shall take reasonable steps to validate its review process (i.e., using quality control measures to determine whether its production is missing relevant ESI or contains substantial amounts of irrelevant ESI) and make any necessary adjustments or corrections to its process. If, after reviewing a Producing Party's production, a Requesting Party reasonably requests additional information regarding the validation method(s) used by the Producing Party, the Producing Party will disclose the level of end-to-end recall (the percentage of responsive Documents in the collection which were identified as responsive by that Producing Party's methodology). If there remain disputes between the Parties regarding validation, the Parties shall meet and confer to resolve such disputes in good faith, including a reasonable discussion regarding the tool used and the parameters used to obtain or calculate the level of recall.

## 12.   UNSEARCHABLE DOCUMENTS

The Producing Party shall use reasonable efforts to identify and review potentially responsive documents for which text-based search technologies are fundamentally ineffective.

## 13.   SYSTEM FILES

Each Party will use its best efforts to filter out common system files and application executable files using the national software reference library ("NSRL") NIST hash set list. The

Parties also may filter out stand-alone files identified as zero bytes in size. Additional culling of file types based on file header information may be applied to the following, provided these files are not known to be otherwise attached, embedded in, or included with an otherwise responsive document, or are not themselves reasonably known to contain information responsive or contain responsive data or are used to interface with users or interact with or access individual or aggregated user data: Application Package File, Backup Files, Batch Files, Binary Disc Image, C++ File Formats, Cascading Style Sheet, Configuration File, Database File, Dictionary Files, Dynamic Link Library, Event Log Files, Executable Files, Hypertext Cascading Stylesheet, Java Archive Files, JavaScript Files, JavaScript Source Code and Class Files, Macintosh Resource Fork Files, Package Manager Files, Program Files, Program Installers, Python Script Files, Shell Script Files, System or Temporary Files, Thumbnail Cache Files, Troff Files, Truetype Font Files, Windows Cabinet File, Windows Command Files, Windows File Shortcut, Windows Help Files, Windows Metafiles and Enhanced Metafiles, Windows Spool Files, Windows System File.

## 14.  DEDUPLICATION

Each Producing Party shall make reasonable efforts to globally deduplicate exact duplicate Documents within that Producing Party's ESI data set across all custodial and non-custodial sources at the family level using either MD5 hash values or SHA hash values or any other agreed-upon (and disclosed) industry-standard deduplication technology. The Parties shall reach agreement on such other deduplication technology and shall reach agreement on how their deduplication tools shall identify exact duplicates of documents in a manner that is consistent with the disclosed tools and technologies a Producing Party is using. The Parties shall reach agreement on how to identify exact duplicates of emails using industry-standard commercially available software tools or services, which may for example calculate hash values of emails based on concatenated values of agreed-upon email fields and/or hash values of attachments, or which may use any other method the Parties agree upon. Having further met and conferred in keeping with the previous sentence, the Parties shall calculate deduplication hash values for emails on the concatenated values set forth in and in accordance with the documentation specifications of the disclosed deduplication tools to be used in this Litigation (i.e., RelativityOne, Relativity Server,

and Nuix); however, if Nuix is used, the Producing Party shall select the optional field "Include Bcc" as an additional field to add to the default ones.

The Parties shall not withhold from production near-duplicates without meeting and conferring on this issue.

The names of all custodians who were either identified as custodians for purposes of collection for this matter (or otherwise known by the Producing Party to have been in possession or custody of a document prior to deduplication) will be populated in the ALL CUSTODIANS metadata field for the produced version of a document that has duplicates removed from production. The original file paths (if any exist) of a document prior to deduplication will be populated in the ALL FILE PATHS metadata field of the produced document.

### 15. EMAIL THREADING

The Parties may use analytics technology to identify email threads and shall produce the unique most inclusive copy and related family members. Where multiple email messages are part of a single chain or "thread," a Party is only required to produce the most inclusive copy of an email message(s) ("Last In Time Email(s)") and need not produce earlier, lesser inclusive email messages or "thread members," provided that the tool or software service being used to perform threading is disclosed. A Producing Party may exclude from production lesser inclusive copies of the most inclusive email message in the thread, where the entire body of each of those lesser inclusive copies is included within the Last in Time Email. The Producing Party will honor reasonable requests to produce lesser inclusive copies of a Last In Time Email or other earlier chains of emails otherwise excluded by email thread suppression.

The Parties shall treat new or different email chains or threads pursuant to further agreement on safeguards or guidelines for defining emails threads which reasonably take into account the capabilities of the email threading/dethreading/hyperthreading tools used by each Defendant (which shall be disclosed to Plaintiffs).

### 16. SOURCE CODE

The Parties will meet and confer to address the production and/or inspection of source code and entering into a separate order governing the same if needed.

### 17.   PRODUCTION FORMATS

The Parties agree to produce documents and data in the formats described in **Appendix 1** to this ESI Order. If particular documents or categories of documents identified in response to document requests warrant a different format, the Parties will cooperate to arrange for the mutually acceptable production of such documents. The Parties further agree not to degrade the searchability of documents as part of the document production process.

In addition, the Parties agree that the production and production format of social media and/or user account information is not covered by this agreement and to meet and confer on the production and production format, including metadata, for social media and/or user account information.

### 18.   PHASING

Once the Parties begin propounding discovery requests pursuant to Fed. R. Civ. P. 34, the Parties agree to meet and confer regarding appropriate phasing for the production of ESI.

### 19.   MISCELLANEOUS PROVISIONS

a) **Production of Plaintiffs ESI and Case-Specific Materials**.  Subject to any further agreement among the Parties or Order of the Court, the Parties shall produce case-specific documents (i.e., documents specific to the claim of a given Plaintiff, produced by Plaintiffs or Defendants) for any Plaintiff in discovery pools or other selections designed to inform bellwether selection, including those selected for a bellwether trial, in accordance with the production format specified herein, provided, however, that the Producing Party may elect to produce such materials in their native format. To the extent production of case-specific documents for any Plaintiff selected for a bellwether trial presents an issue for any Party, the Parties shall reasonably confer, and may present any disputes to the Court or its designee.  The Parties shall further agree to confer concerning the production format and associated matters (*e.g.*, hosting platform) for case-specific documents produced in the cases of other Plaintiffs. Nothing herein shall limit Defendant's right to seek discovery from any Plaintiff.

b) **Translations Of Produced Materials**.  The Producing Party has no obligation to

1  create a translation of the Documents or any portion thereof. For any foreign-language

2  documents responsive to document requests that a Party reasonably knows as the

3  result of a reasonable investigation have been translated into the English language

4  using human translators or through machine translation for its own purposes, except to

5  the extent such translation is protected by attorney-client or work-product privileges,

6  the Producing Party shall produce the translation of the original document with the

7  original. The parties will meet and confer as necessary concerning procedures for

8  using translations at depositions and at trial. In the event the Parties cannot reach

9  agreement, the matter may be submitted to the Court for determination.

10  c) **Third-Party Documents**.  A Party that issues a Non-Party subpoena ("Issuing Party")

11  shall include a copy of this Order with the subpoena and state that (1) the subpoenaed

12  Non-Party should produce Documents in response to the subpoena to all Parties; and

13  (2) the Parties to this Litigation have requested that Third Parties produce Documents

14  in accordance with the specifications set forth herein. If the subpoenaed Non-Party

15  produces Documents to the Issuing Party but does not produce those Documents to

16  other Parties, the Issuing Party shall produce such Documents to those other Parties

17  within 14 days of receiving the Documents, except where the Documents are to be

18  used in a deposition, in which case the Issuing Party shall produce such Documents to

19  all other Parties no later than three (3) days prior to the deposition, or as soon as

20  reasonably practicable if such production occurs thereafter. Nothing in this Order is

21  intended or may be interpreted to narrow, expand, or otherwise affect the rights of the

22  Parties or Third Parties to object to a subpoena. If the Non-Party production is not

23  Bates-stamped, the Parties will meet and confer to agree upon a format for designating

24  the documents with a unique Bates Number prefix.

25  d) **Documents Produced by Parties – Presumption of Authenticity**.  In order to reduce

26  the number of requests for admission, this Order establishes a rebuttable presumption

27  that documents produced by the Parties are authentic, if said documents were either

28  created or authored by the producing Party, or any of its employees, agents, or

contractors, so long as the employees', agents', or contractors' work was performed in connection with a project or assignment sponsored by the producing Party. No further evidence to establish authenticity need be provided. Nothing in this paragraph shall be deemed to waive any other evidentiary objection a party may have, including but not limited to hearsay, foundation/personal knowledge, or relevance.

e) **Re-productions.** Notwithstanding any provisions to the contrary, re-production of discrete sets of documents from another litigation, arbitration, government inquiry, or other matter may be re-produced in the same manner and form as originally produced in the other matter, provided however that a party will re-produce documents in a different format for good cause shown. This provision does not waive the right of a party to object to any requests for reproduction of production files from another litigation, arbitration, government inquiry, or other matter.

f) **Modification**. This ESI Order may be modified by a Stipulated Order of the Parties or by the Court for good cause shown.

g) **Good Faith**. The Parties will act in good faith as required by law and use these procedures to identify and reduce the potential for disputes.

h) **Continuing Obligations**. The Parties recognize that discovery shall be an iterative and cooperative process. The Parties will continue to meet and confer regarding any issues as reasonably necessary and appropriate. This Order does not address or resolve any objections to the Parties' respective discovery requests.

i) **Reservation of Rights**. The Parties agree that any topic not addressed herein is neither a waiver nor acknowledgement of agreement by either Party.

**IT IS SO STIPULATED**, through Counsel of Record.

1    DATED: March 15, 2024          Respectfully submitted,

2                                   */s/ Lexi J. Hazam*
                                    LEXI J. HAZAM
3                                   **LIEFF CABRASER HEIMANN &**
                                    **BERNSTEIN, LLP**
4                                   275 BATTERY STREET, 29TH FLOOR
                                    SAN FRANCISCO, CA 94111-3339
5                                   Telephone: 415-956-1000
                                    lhazam@lchb.com
6

7

8                                   PREVIN WARREN
                                    **MOTLEY RICE LLC**
9                                   401 9th Street NW Suite 630
                                    Washington DC 20004
10                                  T: 202-386-9610
                                    pwarren@motleyrice.com
11

12                                  Co-Lead Counsel

13                                  CHRISTOPHER A. SEEGER
                                    **SEEGER WEISS, LLP**
14                                  55 CHALLENGER ROAD, 6TH FLOOR
                                    RIDGEFIELD PARK, NJ 07660
15                                  Telephone: 973-639-9100
                                    Facsimile: 973-679-8656
16                                  cseeger@seegerweiss.com

17                                  Counsel to Co-Lead Counsel

18
                                    JENNIE LEE ANDERSON
19                                  **ANDRUS ANDERSON, LLP**
                                    155 MONTGOMERY STREET, SUITE 900
20                                  SAN FRANCISCO, CA 94104
                                    Telephone: 415-986-1400
21                                  jennie@andrusanderson.com

22                                  Liaison Counsel
23

24                                  MATTHEW BERGMAN
                                    GLENN DRAPER
25                                  **SOCIAL MEDIA VICTIMS LAW CENTER**
                                    821 SECOND AVENUE, SUITE 2100
26                                  SEATTLE, WA 98104
                                    Telephone: 206-741-4862
27                                  matt@socialmediavictims.org
                                    glenn@socialmediavictims.org
28

JAMES J. BILSBORROW
**WEITZ & LUXENBERG, PC**
700 BROADWAY
NEW YORK, NY 10003
Telephone: 212-558-5500
Facsimile: 212-344-5461
jbilsborrow@weitzlux.com
PAIGE BOLDT
**WATTS GUERRA LLP**
4 Dominion Drive, Bldg. 3, Suite 100
San Antonio, TX 78257
T: 210-448-0500
PBoldt@WattsGuerra.com

THOMAS P. CARTMELL
**WAGSTAFF & CARTMELL LLP**
4740 Grand Avenue, Suite 300
Kansas City, MO 64112
T: 816-701 1100
tcartmell@wcllp.com

JAYNE CONROY
**SIMMONS HANLY CONROY, LLC**
112 MADISON AVE, 7TH FLOOR
NEW YORK, NY 10016
Telephone: 917-882-5522
jconroy@simmonsfirm.com
CARRIE GOLDBERG
**C.A. GOLDBERG, PLLC**
16 Court St.
Brooklyn, NY 11241
T: (646) 666-8908
carrie@cagoldberglaw.com

SIN-TING MARY LIU
**AYLSTOCK WITKIN KREIS &
OVERHOLTZ, PLLC**
17 EAST MAIN STREET, SUITE 200
PENSACOLA, FL 32502
Telephone: 510-698-9566
mliu@awkolaw.com

ANDRE MURA
**GIBBS LAW GROUP, LLP**
1111 BROADWAY, SUITE 2100
OAKLAND, CA 94607
Telephone: 510-350-9717
amm@classlawgroup.com

EMMIE PAULOS
**LEVIN PAPANTONIO RAFFERTY**
316 SOUTH BAYLEN STREET, SUITE 600
PENSACOLA, FL 32502
Telephone: 850-435-7107
epaulos@levinlaw.com

ROLAND TELLIS
DAVID FERNANDES
**BARON & BUDD, P.C.**
15910 Ventura Boulevard, Suite 1600
Encino, CA 91436
Telephone: (818) 839-2333
Facsimile: (818) 986-9698
rtellis@baronbudd.com
dfernandes@baronbudd.com

ALEXANDRA WALSH
**WALSH LAW**
1050 Connecticut Ave, NW, Suite 500
Washington D.C. 20036
T: 202-780-3014
awalsh@alexwalshlaw.com

MICHAEL M. WEINKOWITZ
**LEVIN SEDRAN & BERMAN, LLP**
510 WALNUT STREET
SUITE 500
PHILADELPHIA, PA 19106
Telephone: 215-592-1500
mweinkowitz@lfsbalw.com

DIANDRA "FU" DEBROSSE ZIMMERMANN
**DICELLO LEVITT**
505 20th St North
Suite 1500
Birmingham, Alabama 35203
Telephone: 205.855.5700
fu@dicellolevitt.com

HILLARY NAPPI
**HACH & ROSE LLP**
112 Madison Avenue, 10th Floor
New York, New York 10016
Tel: 212.213.8311
hnappi@hrsclaw.com

JAMES MARSH
**MARSH LAW FIRM PLLC**
31 HUDSON YARDS, 11TH FLOOR
NEW YORK, NY 10001-2170
Telephone: 212-372-3030
jamesmarsh@marshlaw.com

*Attorneys for Individual Plaintiffs*

**ROB BONTA**
Attorney General
State of California

_/s/ Megan O'Neill_
Nick A. Akers (CA SBN 211222)
Senior Assistant Attorney General
Bernard Eskandari (SBN 244395)
Supervising Deputy Attorney General
Megan O'Neill (CA SBN 343535)
Joshua Olszewski-Jubelirer
(CA SBN 336428)
Marissa Roy (CA SBN 318773)
Deputy Attorneys General
California Department of Justice
Office of the Attorney General
455 Golden Gate Ave., Suite 11000
San Francisco, CA 94102-7004
Phone: (415) 510-4400
Fax: (415) 703-5480
Bernard.Eskandari@doj.ca.gov

*Attorneys for Plaintiff the People of the State of
California*

**RUSSELL COLEMAN**
Attorney General
Commonwealth of Kentucky

*/s/ J. Christian Lewis*
J. Christian Lewis (KY Bar No. 87109),
*Pro hac vice*
Philip Heleringer (KY Bar No. 96748),
*Pro hac vice*
Zachary Richards (KY Bar No. 99209),
*Pro hac vice app. forthcoming*
Daniel I. Keiser (KY Bar No. 100264),
*Pro hac vice*
Matthew Cocanougher (KY Bar No. 94292),
*Pro hac vice*
Assistant Attorneys General
1024 Capital Center Drive, Suite 200
Frankfort, KY 40601
CHRISTIAN.LEWIS@KY.GOV
PHILIP.HELERINGER@KY.GOV
ZACH.RICHARDS@KY.GOV
DANIEL.KEISER@KY.GOV
MATTHEW.COCANOUGHER@KY.GOV
Phone: (502) 696-5300
Fax: (502) 564-2698

*Attorneys for Plaintiff the Commonwealth of Kentucky*

COVINGTON & BURLING LLP

By: */s/ Ashley M. Simonsen*
Ashley M. Simonsen, SBN 275203
COVINGTON & BURLING LLP
1999 Avenue of the Stars
Los Angeles, CA 90067
Telephone: (424) 332-4800
Facsimile: + 1 (424) 332-4749
Email: asimonsen@cov.com

Phyllis A. Jones, *pro hac vice*
Paul W. Schmidt, *pro hac vice*
COVINGTON & BURLING LLP
One City Center
850 Tenth Street, NW
Washington, DC 20001-4956
Telephone: + 1 (202) 662-6000
Facsimile: + 1 (202) 662-6291
Email: pajones@cov.com

*Attorney for Defendants Meta Platforms, Inc.*
*f/k/a Facebook, Inc.; Facebook Holdings,*
*LLC; Facebook Operations, LLC; Facebook*
*Payments, Inc.; Facebook Technologies, LLC;*
*Instagram, LLC; Siculus, Inc.; and Mark Elliot*
*Zuckerberg*

FAEGRE DRINKER LLP
*By: /s/ Andrea Roberts Pierson*
Andrea Roberts Pierson, pro hac vice
FAEGRE DRINKER LLP
300 N. Meridian Street, Suite 2500
Indianapolis, IN 46204
Telephone: + 1 (317) 237-0300
Facsimile: + 1 (317) 237-1000
Email: andrea.pierson@faegredrinker.com

Amy R. Fiterman, pro hac vice
FAEGRE DRINKER LLP
2200 Wells Fargo Center
90 South Seventh Street
Minneapolis MN 55402
Telephone: +1 (612) 766 7768
Facsimile: + 1 (612) 766 1600
Email: amy.fiterman@faegredrinker.com

Geoffrey M. Drake, pro hac vice

KING & SPALDING LLP
1180 Peachtree Street, NE, Suite 1600
Atlanta, GA 30309
Telephone: +1 (404) 572 4726
Email: gdrake@kslaw.com

David P. Mattern, pro hac vice
KING & SPALDING LLP
1700 Pennsylvania Avenue, NW, Suite 900
Washington, D.C. 20006
Telephone: +1 (202) 626 2946
Email: dmattern@kslaw.com

*Attorneys for Defendants TikTok Inc. and
ByteDance Inc.*

MUNGER, TOLLES & OLSEN LLP
By: */s/ Jonathan H. Blavin*
Jonathan H. Blavin, SBN 230269
MUNGER, TOLLES & OLSON LLP
560 Mission Street, 27th Floor
San Francisco, CA 94105-3089
Telephone: (415) 512-4000
Facsimile: (415) 512-4077
Email: jonathan.blavin@mto.com

Rose L. Ehler (SBN 29652)
Victoria A. Degtyareva (SBN 284199)
Laura M. Lopez, (SBN 313450)
Ariel T. Teshuva (SBN 324238)
MUNGER, TOLLES & OLSON LLP
350 South Grand Avenue, 50th Floor
Los Angeles, CA 90071-3426
Telephone: (213) 683-9100
Facsimile: (213) 687-3702
Email: rose.ehler@mto.com
Email: victoria.degtyareva@mto.com
Email: Ariel.Teshuva@mto.com

Lauren A. Bell (*pro hac vice forthcoming*)
MUNGER, TOLLES & OLSON LLP
601 Massachusetts Ave., NW St.,
Suite 500 E
Washington, D.C. 20001-5369
Telephone: (202) 220-1100
Facsimile: (202) 220-2300
Email: lauren.bell@mto.com

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

*Attorneys for Defendant Snap Inc.*

WILSON SONSINI GOODRICH & ROSATI
Professional Corporation
By: */s/ Brian M. Willen*
Brian M. Willen (*pro hac vice*)
WILSON SONSINI GOODRICH & ROSATI
1301 Avenue of the Americas, 40th Floor
New York, New York 10019
Telephone: (212) 999-5800
Facsimile: (212) 999-5899
Email: bwillen@wsgr.com

Lauren Gallo White
Samantha A. Machock
WILSON SONSINI GOODRICH & ROSATI
One Market Plaza, Spear Tower, Suite 3300
San Francisco, CA 94105
Telephone: (415) 947-2000
Facsimile: (415) 947-2099
Email: lwhite@wsgr.com
Email: smachock@wsgr.com

Christopher Chiou
WILSON SONSINI GOODRICH & ROSATI
953 East Third Street, Suite 100
Los Angeles, CA 90013
Telephone:  (323) 210-2900
Facsimile:  (866) 974-7329
Email: cchiou@wsgr.com

*Attorneys for Defendants YouTube, LLC, Google
LLC, and Alphabet Inc.*

WILLIAMS & CONNOLLY LLP
By: */s/ Joseph G. Petrosinelli*
Joseph G. Petrosinelli (*pro hac vice*)
jpetrosinelli@wc.com
Ashley W. Hardin (*pro hac vice*)
ahardin@wc.com
680 Maine Avenue, SW
Washington, DC 20024
Telephone.: 202-434-5000
Fax: 202-434-5029

*Attorneys for Defendants YouTube, LLC, Google
LLC, and Alphabet Inc.*

MORGAN, LEWIS & BOCKIUS LLP
By: */s/ Stephanie Schuster*
Stephanie Schuster (*pro hac vice*)
stephanie.schuster@morganlewis.com
1111 Pennsylvania Avenue NW
NW Washington, DC 20004-2541
Tel.: 202.373.6595

Yardena R. Zwang-Weissman (SBN 247111)
yardena.zwang-weissman@morganlewis.com
300 South Grand Avenue, 22nd Floor
Los Angeles, CA 90071-3132
Tel.: 213.612.7238

Brian Ercole (*pro hac vice*)
brian.ercole@morganlewis.com
600 Brickell Avenue, Suite 1600
Miami, FL 33131-3075
Tel.: 305.415.3416

*Attorneys for Defendants YouTube, LLC and Google LLC*

**IT IS ORDERED** that the foregoing Agreement is approved.

Dated: _____ March 18, 2024 _____    _____

MAGISTRATE JUDGE PETER H. KANG

**APPENDIX 1: PRODUCTION FORMAT**

1) **Production Components.** Except as otherwise provided below, ESI must be produced in accordance with the following specifications:

    a) an ASCII delimited data file (.DAT) using standard delimiters;

    b) an image load file (.OPT) that can be loaded into commercially acceptable production software (*e.g.* Concordance);

    c) single page black-and-white TIFF images, or JPEG images when color is specified herein, or native files with single page placeholder TIFF images depending on the applicable production format for each type of file;

    d) and document level .TXT files for all documents containing extracted full text or OCR text.

    e) Family relationships between emails and their attachments, embedded files and their source document, and connected hardcopy documents will be maintained in production. Attachments should be consecutively produced with their parent.

    f) If a particular document warrants a different production format, the Parties will cooperate in good faith to arrange for a mutually acceptable production format.

2) **Production Media and Access Controls.** Productions must be encrypted and produced through secure electronic means, such as secure file sharing methods (*e.g.* FTP), or on CD, DVD, flash drive or external hard drive ("Production Media"). Each piece of Production Media must identify a production number corresponding to the production volume (*e.g.* "VOL001"). Each piece of Production Media must also identify: (a) the case caption; (b) the following label: "This media contains material subject to Court Ordered security measures"; (c) the Producing Party's name; (d) the production date; (e) the Bates Number range of the materials contained on the Production Media.

Nothing in this ESI Order will preclude or impair any and all protections provided the Parties by any Protective Order(s) agreed and entered into by the Parties. Parties will use best efforts to avoid the unnecessary copying or transmittal of produced documents. If questions arise, the Parties will meet and confer to ensure security concerns are addressed prior to the exchange of

any documents.

    **3)**       **Data Load Files/Image Load Files.** Each TIFF in a production must be referenced in the corresponding image load file. The total number of documents referenced in a production's data load file should match the total number of designated document breaks in the image load file(s) in the production. The total number of pages referenced in a production's image load file should match the total number of TIFF files in the production. All images must be assigned a unique Bates number that is sequential within a given document and across the production sets. The Bates Numbers in the image load file must match the corresponding documents' beginning Bates numbers in the data load file. The total number of documents in a production should match the total number of records in the data load file. Load files must not vary in format or structure within a production, or from one production to another except by agreement of the Parties.

    **4)**       **Metadata Fields.** Each of the metadata and coding fields set forth below that can be extracted should be produced for each document, except that if the field contains privileged information, that privileged information may be redacted. However, to the extent that metadata does not exist, is not available for any documents produced, this provision shall not be read to require any Party to extract, capture, collect, manually populate, or produce such metadata, with the exception of the following: (a) BEGBATES, (b) ENDBATES, (c) BEGATTACH, (d) ENDATTACH, (e) PRODVOL, (f) ALL CUSTODIANS, (g) CONFIDENTIALITY, (h) REDACTIONS, (i) REDACTION TYPE, (j) HASHVALUE, (k) NATIVEFILEPATH, and (l) TEXTFILEPATH, which should be populated by the Party or the Party's vendor. The Parties will make reasonable efforts to ensure that metadata fields automatically extracted from the documents correspond directly to the information that exists in the original documents.

| Field Name | Field Description |
|---|---|
| BEGBATES | Beginning Bates number for a particular document as stamped on the first production image for that document |
| ENDBATES | Ending Bates number as stamped on the last |

| Field Name | Field Description |
|---|---|
| | production image for a particular document |
| BEGATTACH | First production Bates number of the first document in a family |
| ENDATTACH | Last production Bates number of the last document in a family |
| ATTACHCOUNT | Number of attachments to an e-mail or embedded parent, as generated by commercially available discovery processing tools. |
| ATTACHNAMES | Names of each individual Attachment, separated by semicolons. |
| PRODVOL | Production volume |
| ALLCUSTODIANS | List of all custodians associated with Document, i.e. "Custodian" + "Other Custodian" values delimited by semicolon. |
| ALLFILEPATHS | All original path(s) to the individual source file(s) when available in the ordinary course of business to and processable by the parties and their ESI vendors of choice. Includes path up to and including internal path of containers. |
| CONFIDENTIALITY | Confidentiality designation assigned to the document consistent with the Stipulated Protective Order governing this Litigation |
| NATIVEFILEPATH | Native File Link (Native Files only) |
| TEXTFILEPATH | Path to extracted text/OCR file for the document |
| HASHVALUE | MD5 hash value of the document |
| DOCUMENT TYPE | Descriptor for the type of document: "E-document" for electronic documents not attached to e-mails; "E-mail" for all e-mails; "E-attachment" for files that were attachments to e-mails; and "Physical" for hard copy physical documents that have been scanned and converted to an electronic image. |
| AUTHOR | Any value populated in the Author field of the |

| Field Name | Field Description |
|---|---|
| | document properties |
| DOCDATE | Date the document was created according to filesystem information (format: MM/DD/YYYY) |
| DATELASTMODIFIED | Date when document was last modified according to filesystem information (format: MM/DD/YYYY) |
| LAST MODIFIED BY | Last person who modified (saved) a document, as generated by commercially available discovery processing tools. |
| TRACK CHANGES | Y if a document with track changes value, otherwise N or empty, if available separately from the HASHIDDENDATA flag |
| COMMENTS | Y if a document with comments, otherwise N or empty, if available separately from the HASHIDDENDATA flag |
| HASHIDDENDATA | Y if a document with hidden content value, otherwise N or empty |
| FILENAME | Filename of an electronic document |
| TITLE | Any value populated in the Title field of the document properties |
| DOCEXT | File extension of document pulled from the document properties |
| FROM | The sender of the email |
| TO | All recipients that were included on the "To" line of the email |
| CC | All recipients that were included on the "CC" line of the email |
| BCC | All recipients that were included on the "BCC" line of the email |
| DATETIMERECEIVED | Date and time email was received (format: MM/DD/YYYY HH:MM) |
| DATETIMESENT | Date and time email was sent (format: MM/DD/YYYY HH:MM) |

| Field Name | Field Description |
|---|---|
| TIMEZONE | The timezone used to process the document |
| EMAILSUBJECT | Subject line of email pulled from the document properties |
| THREADID | If a threading tool is used for emails, the thread id generated by the threading tool. |
| REDACTION TYPE[1] | General category of redaction reason as agreed to by the parties. For example, PII, SCA, CODE, and/or PRIV. If more than one, separate reasons by semicolons. |
| REDACTIONS | Y if a document is redacted, otherwise N or empty |

**5)** **TIFFs.** Unless excepted below, single page, black and white, Group IV TIFFs should be provided, at least 300 dots per inch (dpi) for all documents. Each TIFF image must be named according to a unique corresponding Bates number associated with the document. Each image must be branded according to the Bates number and the agreed upon confidentiality designation. Original document orientation should be maintained (i.e., portrait to portrait and landscape to landscape). Where the TIFF image is unreadable or has materially degraded the quality of the original, the Producing Party shall provide a higher quality TIFF image or the native or original file. In addition, the Parties shall take reasonable efforts to process word processing documents (*e.g.*, MS Word) with track changes and/or comments unhidden on the TIFF image.

**6)** **Color.** Word processing documents containing tracked changes shall be produced in color, as single-page, 300 dpi JPG images with JPG compression and a high quality setting as to not degrade the original image. The Producing Party shall comply with good faith by the Requesting Party to provide replacement color images for documents originally produced in black and white. A Party making such a request shall make the request by individual Bates

---

[1] The Parties will provide specific information on any privilege(s) asserted in their privilege logs, in an overlay, or the redaction boxes. The "Redaction Reason" field is informational only for redaction type and shall not in any way limit a party's right to assert attorney-client privilege, attorney-work product privilege, and/or any other applicable privilege or protection.

number(s) and shall limit requests made pursuant to this paragraph to a reasonable number of documents.

**7)** **Text Files.** A single multi-page text file must be provided for each document, and the filename should match its respective TIFF filename for the first page of that document. Extracted text shall be generated with commercially acceptable technology set to include all comments, revisions, tracked changes, speaker's notes and text from documents with comments or tracked changes, and hidden and very hidden worksheets, slides, columns and rows. When possible, the text of native files should be extracted directly from the native file. Parties will perform optical character recognition ("OCR") on foreign language documents using the appropriate settings for languages reasonably anticipated to be in the production following a meet and confer with the Requesting Party to identify those languages. Text files will not contain the redacted portions of the documents. A commercially acceptable technology for OCR should be used for all scanned, hard copy documents and for documents with redactions other than Excel files and other spreadsheets which shall be redacted in native format. Text extracted from emails should include the following header information where available: (1) the individuals to whom the communication was directed ("To"), (2) the author of the email communication ("From"), (3) who was copied and blind copied on such email ("CC" and "BCC"), (4) the subject line of the email ("RE" or "Subject"), and (5) the date and time of the email. To the extent the text extraction technology the Parties are using can be configured to include the text of any URLs or links, the Parties shall utilize that setting.

**8)** **Native files.** Spreadsheets (*e.g.* MS Excel), and un-redacted presentations (e.g. Microsoft PowerPoint,) will be produced in native format to the extent that they are produced in this Litigation, audio, video, and multi-media files will be produced in native format. The Parties will meet and confer on the production of other file types, such as proprietary files, etc. Native files will be produced with a link in the NATIVEFILEPATH field, along with extracted text (where extracted text is available) and applicable metadata fields set forth in paragraph 4 above. A Bates numbered TIFF placeholder indicating that the document was provided in native format must accompany every native file. Where redaction makes production of native-format

files other than spreadsheets or presentations infeasible, the Parties will confer to determine a reasonably usable form for the production, but spreadsheets shall presumptively be redacted in native, and presentations presumptively redacted in image form, in these cases without the need for further conferring.

**9)     Production Format for Hard Copy Documents.** Documents that exist in hardcopy will be scanned to *.tiff image format and produced in accordance with the specifications set forth herein. Hard copy documents that are not text-searchable shall be made searchable by OCR prior to production.  In scanning paper documents, distinct documents should not be merged into a single record, and single documents should not be split into multiple records (i.e., paper documents should be logically unitized). In the case of an organized compilation of separate documents (for example, a binder containing several separate documents behind numbered tabs), the document behind each tab should be scanned separately, but the relationship among the documents in the compilation should be reflected in the proper coding of the beginning and ending document and attachment fields. The Parties will make their best efforts to unitize the documents correctly. If relevant documents are maintained in a file, folder, envelope, binder, notebook or similar container used to store documents, all contents therein shall be reviewed for production and privilege. Document pages which have affixed notes, such as Post-it notes, should be imaged with and without the note attached.

**10)     Confidentiality Designation.** All images will be stamped with the appropriate confidentiality designations in accordance with the Stipulated Protective Order entered in this Litigation. Each document produced in native format will have its confidentiality designation identified in the filename of the native file and indicated on its corresponding TIFF placeholder.

**11)     Bates Numbering**.  Bates numbering should be a consistent length across the production, contain no special characters, and be numerically sequential within a given document.  If a Bates number or set of Bates numbers is skipped, the skipped number or set of numbers should be noted with a placeholder.  Attachments to documents will be assigned Bates numbers that directly follow the Bates numbers on the documents to which they were attached.

In addition, wherever possible, each image will have its assigned Bates number electronically "burned" onto the image.

**12)** **Databases and Other Structured Data.** To the extent that responsive information is stored in a database, or database management system, or proprietary system or application which has is directed to data storage as one of its primary functions, the Producing Party will identify the database and platform to the Requesting Party. The Producing Party shall produce exports and reports about such responsive information stored in such database, where such exports and reports shall be in a reasonably usable form, and information may be produced in CSV format, tab-delimited text format, Microsoft Excel format, or Microsoft Access format. If there are future disputes over the production of information from a database, the Parties shall meet and confer in good faith in an attempt to reach any further agreements (if needed) on the data to be produced and the format and scope of the production. The Producing Party will provide reasonable amounts of information about the databases to facilitate that discussion.

**13)** **Hyperlinks.** Document(s) and/or folder(s) of documents that are hyperlinked inside a responsive document (including hyperlinked inside emails) within a Producing Party's custody, possession, or control, do not need to be produced in the first instance as part of the same family group as the Document residing at the location to which that hyperlink points. If there are particular hyperlinks identified by the Requesting Party in produced documents, the Requesting Party may submit a list of hyperlinks to a particular Producing Party for potentially relevant documents by identifying the Bates number and URL or link text for each requested link to the Producing Party, and the Producing Party will engage in reasonable efforts to locate the hyperlinked document at that location and either identify it by Bates number or provide any responsive, non-produced, and non-privileged documents. The number of hyperlinks a Requesting Party may identify to a Producing Party shall not be excessive and shall be reasonable, proportional to the needs of the case, and not unduly burdensome.

**14)** **Embedded Objects.** The Parties agree non-substantive embedded objects, including, but not limited to, logos, icons, emoticons, and footers, may be culled from a document set (but not a document) and need not be produced as separate documents by a

Producing Party (i.e., such embedded objects will be produced within the document itself, rather than as separate documents). Embedded files, except for images (including but not limited to, logos, icons, emoticons), are to be produced as family groups. Embedded files should be assigned Bates numbers that directly follow the Bates numbers on the documents within which they are embedded.

**15)** **Production of Family Groups and Relationships**. If any member of a family group is produced, all members of that group must also be produced or else logged as privileged, and no such member shall be withheld from production as a duplicate.

**16)** **Dynamic Fields**.  Documents with dynamic fields for file names, dates, and times will be imaged to show the field code (e.g., "[FILENAME]") where possible, rather than the values for such fields existing at the time the file is processed.

**17)** **Time Zone**.  The time zone used to process a document, including its metadata, shall be disclosed in the TIMEZONE metadata field consistent with Appendix 1, and shall be standardized for each Defendant across productions.

**18)** **Redactions**.

a) A Producing Party may redact (i) information subject to the attorney client privilege or the work product protection (PRIV); (ii) information that cannot be disclosed pursuant to the Stored Communications Act (SCA); (iii) source code subject to separate agreement applicable to production of source code (CODE); (iv) personal identifying information (PII) including phone numbers, personal addresses, personal email addresses, the month and day of birth, driver's license numbers, and other PII agreed to by the Parties (for example, the Parties shall complete their meet and confer on whether or not to redact users' ages and years of birth). In any event, there shall be no redaction of illnesses, injuries, and medical diagnoses. To the extent a document or pleading contains PII, the Parties shall designate such documents at the appropriate Confidentiality level under the Protective Order and shall comply with Fed. R. Civ. P. 5.2 with regard to filings with the Court.

b) No redactions for relevance may be made within a produced document or ESI item. If, during the course of discovery, the Parties identify other kinds of information that any

Party has a reasonable basis for redacting, the Parties will meet and confer on a case-by-case basis regarding that information before such redactions are made. If the Parties cannot agree, they may seek resolution from the Court.

c)  The Producing Party will indicate, on the face of the redaction, the asserted reason(s) for the redaction (PII, SCA, CODE, and/or PRIV) and the REDACTION TYPE metadata field shall indicate that the document contains redactions and the reason(s) for the redaction.

d)  Notwithstanding the foregoing, this provision shall not be read to prohibit redactions permitted under any applicable U.S. law or Protective Order.

e)  Where a responsive document contains both redacted and non-redacted content, the Parties shall produce the non-redacted portions of the document and the OCR text corresponding to the non-redacted portions.

f)  Native Redactions. Spreadsheet files requiring redaction, including without limitation Microsoft Excel files, shall be redacted and produced natively (unless the Parties agree to production in some other format). In addition, a Producing Party may natively redact other files that cannot be properly imaged for redaction.

g)  All images of redacted files shall be processed to show all comments, revision marks, speaker notes, marks made in track changes, or other user-entered data which are visible in a normal view of the document in its native application, unless such material is redacted and marked as redacted in accordance with this section. Where possible, any occurrences of date/time auto-field items, including in headers and footers, will be removed and replaced with the term AUTODATE to prevent the current date from being printed. Email header information (e.g., date and/or subject line) shall not be redacted unless it is independently privileged. The Parties shall honor reasonable requests for the production of particular redacted documents in other formats where the image is not reasonably usable.

h)  Color.  Redacted versions of documents that would have been produced in color in their un-redacted form shall be produced in color as detailed herein.

**19) Exception Files**. The Parties will use reasonable efforts to address processing exceptions.

**20) Mobile and Handheld Device Documents and Data**. If responsive and unique data that can reasonably be extracted and produced in the formats described herein is identified on a mobile or handheld device, that data shall be produced in accordance with the generic provisions of this protocol. To the extent that responsive data identified on a mobile or handheld device is not susceptible to normal production protocols, the Parties will meet and confer to address the identification, production, and production format of any responsive documents and data contained on any mobile or handheld device.

**COVINGTON**

BEIJING  BOSTON  BRUSSELS  DUBAI  FRANKFURT
JOHANNESBURG  LONDON  LOS ANGELES  NEW YORK
PALO ALTO  SAN FRANCISCO  SEOUL  SHANGHAI  WASHINGTON

Covington & Burling LLP
Salesforce Tower
415 Mission Street, Suite 5400
San Francisco, CA 94105-2533
T  +1 415 591 6000

July 24, 2024

DELIVERED VIA PROCESS SERVER

Idaho Department of Education
450 W. State Street
Boise, ID 83702

Re: People of the State of California v. Meta Platforms, Inc., 4:23-cv-05448

Dear Sir/Madam:

Enclosed please find a subpoena being served upon you in connection with the above-captioned litigation currently pending in the U.S. District Court for the Northern District of California. I represent Defendants Meta Platforms, Inc.; Instagram, LLC, Meta Payments, Inc. and Meta Platforms Technologies, LLC (collectively, the "Meta Defendants") in this matter.

The document subpoena requests the production of specific documents identified in the attached subpoena (see Attachment A to the subpoena), which are requested to be produced by 10:00 a.m. on August 23, 2024.  We are willing to work with you on the time, date, location, method and manner of document production, as well as answer any questions or concerns you may have regarding subpoena compliance.  It is sufficient compliance with this subpoena if you electronically transmit a copy of the requested documents to the undersigned.  As such, please contact me at kpatchen@cov.com and 415-591-6031, to discuss document production and subpoena compliance, unless you are already represented by counsel in connection with this matter.

The Court is currently considering whether the Idaho Attorney General's Office has control over Idaho Education Department's information for the purposes of discovery in this action.  If the Court rules that the Idaho Attorney General's Office has control over Idaho Education Department's information, the Idaho Attorney General has pending discovery requests that seek this agency's documents.  By serving this subpoena, Meta does not waive its position in the state agency dispute, nor does Meta in any way waive rights to compel the Idaho Attorney General to produce Idaho Education Department information as part of discovery in this action.  However, to avoid further delay in the production of information from the Idaho Education Department, Meta is serving the attached subpoena to request the timely production of this information.

Your anticipated time and assistance with this matter is greatly appreciated.

**COVINGTON**

Page 2

Best regards,

*/s/ Kate Patchen*

Kate Patchen

Enclosed:  Subpoena, Attachment A, and Attachment B

AO 88B  (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT
### for the
Northern District of California

IN RE: SOCIAL MEDIA ADOLESCENT ADDICTION/PERSONAL
INJURY  PRODUCTS LIABILITY LITIGATION

THIS DOCUMENT RELATES TO:
People of the State of California, et al. v. Meta Platforms,
Inc. et al., Case No.: 4:23-cv-05448

)
)
)
)
)
)

Civil Action No.    4:22-MD-03047-YGR
                    MDL No. 3047

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS
## OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

To:    Idaho Department of Education
       650 West State Street, Boise, ID 83702

*(Name of person to whom this subpoena is directed)*

☑ *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material: See Attachment A.

| Place: | Date and Time: |
|---|---|
|  | August 23, 2024, 10:00 a.m. |

☐ *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|
|  |  |

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date:    07/24/2024

                  *CLERK OF COURT*
                                              OR
                                                        /s/ Ashley Simonsen
_____         _____
    *Signature of Clerk or Deputy Clerk*                    *Attorney's signature*

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)*
Meta Platforms, Inc. f/k/a Facebook, Inc.; Instagram, LLC, Meta Payments, Inc. and
Meta Platforms Technologies, LLC,
                                                        who issues or requests this subpoena, are:
Ashley Simonsen, Covington & Burling LLP, 1999 Avenue of the Stars, Los Angeles, CA 90067, 424-332-4782, asimonsen@cov.com

### Notice to the person who issues or requests this subpoena
If this subpoena commands the production of documents, electronically stored information, or tangible things or the inspection of premises before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

AO 88B (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (Page 2)

Civil Action No. 4:23-cv-05448

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____

on *(date)* _____ .

❑ I served the subpoena by delivering a copy to the named person as follows: _____

_____

_____ on *(date)* _____ ; or

❑ I returned the subpoena unexecuted because: _____

_____ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also
tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $    0.00    .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc.:

Print    Save As...    Add Attachment    Reset

AO 88B  (Rev.  02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action(Page 3)

# Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

  **(1)** *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
    **(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
    **(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person
      **(i)** is a party or a party's officer; or
      **(ii)** is commanded to attend a trial and would not incur substantial expense.

  **(2)** *For Other Discovery.* A subpoena may command:
    **(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
    **(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

  **(1)** *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

  **(2)** *Command to Produce Materials or Permit Inspection.*
    **(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
    **(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
      **(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
      **(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

  **(3)** *Quashing or Modifying a Subpoena.*
    **(A)** *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
      **(i)** fails to allow a reasonable time to comply;
      **(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);
      **(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
      **(iv)** subjects a person to undue burden.
    **(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
      **(i)** disclosing a trade secret or other confidential research, development, or commercial information; or

      **(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
    **(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
      **(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
      **(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

  **(1)** *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
    **(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
    **(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
    **(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
    **(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

  **(2)** *Claiming Privilege or Protection.*
    **(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
      **(i)** expressly make the claim; and
      **(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
    **(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

## DEFINITIONS AND INSTRUCTIONS TO ATTACHMENT A

## DEFINITIONS

1.      The term "communication" means the transmittal of information (in the form of facts, ideas, inquiries or otherwise).

2.      "Document" or "documents" shall have the broadest meaning ascribed to it by the Federal Rules of Civil Procedure, and includes, without limitation electronically stored information ("ESI") (including, without limitation, electronic databases and the data therein, all electronic messages or communications, electronic word processing documents, electronically stored voicemail, webpages, and social media posts) in accordance with any order in this case governing ESI at the time of production. Different versions of the same documents, including, but not limited to, drafts or documents with handwritten notations or marks not found in the original or on other copies are different documents.

3.      "You", "you", "Your" and "your" means the Idaho Department of Education.

4.      "Relating" or "related to" means and includes referring to, concerning, referencing, mentioning, associated with, constituting, discussing, containing, embodying, recording, reflecting, identifying, summarizing, incorporating, and/or dealing with or pertaining to in any way.

5.      "And" includes "or", and vice versa.

6.      The singular form of a word or term includes the plural, and vice versa.

7.      The present tense of a verb includes the past tense, and vice versa.

8.      The use of the article "the" shall not be construed as limiting the scope of any request.

9.      "Including" means "including without limitation."

10.    "Any" includes "all", and vice versa.

11.    The capitalized version of a word or term includes the lower case version of a word or term, and vice versa.

12.    "Social Media Platforms" or "Platforms" means a digital service that facilitates interactions between two or more distinct but interdependent sets of users, including but not limited to Facebook, Instagram, Snapchat, TikTok, YouTube, Twitter (or "X"), Pinterest, LinkedIn, BeReal, Lapse, Reddit, Threads, VSCO, Goodreads, Quora, Discord, Twitch, and Tumblr.

13.    "Young Users" means users of Social Platforms who are under 18 years of age when using the Platform(s).

All words, terms, and phrases not specifically defined herein are to be given their normal and customary meaning in the context in which they are used in these Requests.

## **INSTRUCTIONS**

1.    These Requests are intended to cover any and all documents in your possession, custody, or control, to the extent not privileged.  Documents held by any office, department, board, commission, or instrumentality of the Idaho Department of Education are within your possession, custody, or control.

2.    In accordance with ESI Protocol attached hereto as Attachment B, if you object to furnishing any of the documents or information requested by these Requests on the grounds of attorney-client privilege, work product, other privilege, or otherwise then, with respect to each such document:

      a.   state the nature of the privilege claimed;

      b.   state the date of each communication supporting the privilege claim;

      c.   identify all participants in the supporting communication;

      d.   state the specific grounds on which the objection is based; and

e.   identify the specific request calling for such information;

2.      If you object to any Request on the grounds that it is vague or ambiguous, state: (i) the portions or terms of such Request that you claim to be vague or ambiguous; and (ii) the interpretation of the Request pursuant to which you provide a response.

3.      Each request shall be deemed continuing, so as to require supplemental or mandatory responses should you obtain additional responsive information subsequent to your initial responses.

4.      If you cannot fully respond to a particular Request after exercising due diligence to make inquiry and to secure the necessary information, provide a response to the extent possible, specifying your inability to respond to the remainder and providing whatever information or knowledge you have concerning the portion not responded to.

5.      Each page of a produced document shall have a legible, unique page identifier ("Bates Number") and confidentiality legend (where applicable) on the face of the image at a location that does not obliterate, conceal, or interfere with any information from the source document.  Redactions should be clearly marked or stamped on the page in such a way that it is clear from review that a portion of the image has been redacted.

6.      All responsive and non-privileged electronic documents shall be produced in the format ordered by the Court in its ESI order.

7.      All responsive electronic documents shall be produced in a format agreed upon by the parties, to include at least native versions of Excel spreadsheets and presentation files, with a Bates-stamped placeholder image.

8.      Unless otherwise specified, the time period for these Requests is January 1, 2012 to the date of production of the Documents.

## <u>ATTACHMENT A</u>

1. Research, investigations, studies, surveys, reports, evaluations, or analyses concerning the mental, social, emotional, or behavioral health of persons ages 13 to 18.

2. Programs, initiatives, efforts, or actions proposed or taken by the Idaho Department of Education to encourage or promote the use of Social Media Platforms.

3. Programs, initiatives, efforts, or actions proposed or taken by the Idaho Department of Education to address Young Users' use of Social Media Platforms, including any program, initiative, effort, or action to prevent, limit, encourage, or promote the use of Social Media Platforms by Young Users.

4. Studies, programs, initiatives, efforts, or actions proposed or taken by the Idaho Department of Education that sought to provide or promote internet access or phones, computers, tablets, or other electronic devices to Young Users.

5. Policies proposed, recommended, or enacted by the Idaho Department of Education regarding screen time and acceptable use of cell phones, computers, tablets, or other electronic devices by Young Users.

6. Complaints to the Idaho Department of Education by teachers or school districts regarding social media or cell phone use by Young Users and/or the need for acceptable use or other policies to address Young Users' use of social media or cell phones.

7. Complaints to the Idaho Department of Education by teachers or school districts regarding budget crises from inflation, underfunding, unfunded mandates, and other causes.

8. Documents related to state assessments in Idaho, including reports and analyses regarding the history of K-12 state assessment or standardized testing scores, performance by schools and/or school districts, and any other measures of school performance.

9. Idaho Department of Education's communications and/or collaboration with any Social Media Platform on any program, initiative or other action related to, or directed at, Young Users.

10. Idaho Department of Education's communications with any third party related to Young Users and/or Social Media Platforms.

11. Policies, procedures, and practices applicable to Idaho Department of Education and Idaho Department of Education employees regarding the use of Social Media Platforms, including any changes to these policies during the Relevant Period.

12. Legislation or policies proposed by, proposed on behalf of, or testified on by the Idaho Department of Education, regardless of whether such legislation or policies were enacted, regarding Young Users' use of Social Media Platforms.

13. Research, investigations, studies, surveys, reports, evaluations, or analyses related to Social Media Platforms, including the importance of Social Media Platforms and the use of Social Media Platforms by Young Users and the potential benefits and harms created by the use of Social Media Platforms.

14. Research, investigations, studies, surveys, reports, evaluations, or analyses related to Social Media Platforms regarding the impact of social media on the mental, social, emotional, or behavioral health of Young Users.

15. Research, investigations, studies, surveys, reports, evaluations, or analyses related to:
    a. Features of Social Media Platforms that are psychologically or physically harmful to Young Users;
    b. Features of Social Media Platforms that promote compulsive, prolonged, or unhealthy use by Young Users;
    c. The impact of features of Social Media Platforms, including:
        (1) Algorithmic recommendation and sequencing;
        (2) Image filters;
        (3) Use of multiple user accounts;
        (4) Infinite scroll;
        (5) Ephemeral content features;
        (6) Autoplay;
        (7) Quantification and display of likes; or
        (8) Audiovisual and haptic alerts.

16. Research, investigations, studies, surveys, reports, evaluations, or analyses concerning the mental, social, emotional, or behavioral health of Young Users, including those related to the effects of:
    a. Social Media Platforms usage;
    b. Video games usage;
    c. Cell phone usage;
    d. Messaging usage;
    e. Usage of other electronics apart from usage of Social Media Platforms;
    f. COVID-19 and/or remote learning;
    g. Use of drugs or alcohol;
    h. The opioid and fentanyl epidemic;
    i. Poverty, homelessness, lack of health insurance, and/or food insecurity;
    j. Physical health including nutrition, exercise, weight management, sleeping habits, and sexual activity;
    k. Family trauma or deaths;
    l. Academic pressure;
    m. Violence, including school violence, domestic violence, gun violence, gun control and/or mass shootings;

    n.  Bullying or verbal abuse apart from usage of Social Media Platforms;
    o.  Political polarization;
    p.  Natural disasters;
    q.  Climate change;
    r.  Discrimination and inequity;
    s.  Global warfare and conflict; and
    t.  Any other potential causes of harms to the mental, social, emotional, or behavioral health of Young Users.

17. Youth Risk Behavior Surveys conducted by the Idaho Department of Education or on its behalf.

18. Public or non-public meetings held by the Idaho Department of Education related to Social Media Platforms and use of Social Media Platforms by Young Users, including notices, meeting notes, PowerPoint presentations, internal memoranda, summaries, personal notes, or attendee lists.

19. Mental, social, emotional, or behavioral health services provided by the Idaho Department of Education to Young Users during the Relevant Period.

20. Budgeted and actual expenditures by the Idaho Department of Education during the Relevant Period related to Young Users' use of Social Media Platforms.

21. Policies, procedures, and practices related to the Idaho Department of Education's use of Social Media Platforms, including communication of information or promotion of Idaho Department of Education programs, initiatives, efforts, or actions on Social Media Platforms.

22. Idaho Department of Education's budget and actual expenditures during the Relevant Period, including expenditures on:
    a.  Digital advertisements by the Idaho Department of Education on Social Media Platforms
    b.  Digital advertisements by the Idaho Department of Education purchased through Social Media Platforms.

**ATTACHMENT B**

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| IN RE: *Social Media Adolescent Addiction/Personal Injury Products Liability Litigation*<br><br>This document relates to:<br>ALL ACTIONS | MDL No. 3047<br>Case No. 4:22-md-03047-YGR<br><br>Honorable Yvonne Gonzalez Rogers<br>Honorable Peter H. Kang<br><br>**STIPULATION AND [PROPOSED] ORDER GOVERNING THE PRODUCTION OF ELECTRONICALLY STORED INFORMATION AND HARD COPY DOCUMENTS** |

1. **PURPOSE**

This Order Governing the Production of Electronically Stored Information and Hard Copy Documents ("ESI Order") will govern discovery of electronically stored information and any hard copy documents in this Litigation as a supplement to the Federal Rules of Civil Procedure, this District's Guidelines for the Discovery of Electronically Stored Information, and any other applicable orders and rules. "This Litigation" includes all actions currently in MDL No. 3047, *In Re: Social Media Adolescent Addiction/Personal Injury Products Liability*, or hereafter added or transferred to MDL No. 3047, and all actions later remanded to their respective transferor courts.

2. **DEFINITIONS**

a) "Document" is defined to be synonymous in meaning and equal in scope to the usage of this term in Rules 26 and 34 of the Federal Rules of Civil Procedure and shall include Hard-Copy Documents and ESI.

b) "Electronically stored information" or "ESI," as used herein has the same meaning as in Federal Rules of Civil Procedure 26 and 34.

c) "Hard-Copy Document" means Documents existing in paper form at the time of collection.

d) "Searchable Text" means the native text extracted from an Electronic Document and any Optical Character Recognition text ("OCR text") generated from a Hard-Copy Document or electronic image.

**3.     COOPERATION**

The Parties are aware of the importance the Court places on cooperation and commit to cooperate in good faith throughout this Litigation consistent with this Court's Guidelines for the Discovery of ESI and this Court's Rules of Professional Conduct. The Parties will endeavor to cooperate in good faith and be reasonably transparent in all aspects of the discovery process.

**4.     LIAISON**

The Parties will identify Discovery Liaisons to each other who are and will be knowledgeable about and responsible for discussing their respective ESI.  Any Party is free to change their designated Discovery Liaison by providing written notice to the other Parties. Each Party's Discovery Liaison must: (a) be prepared to meet and confer on discovery-related matters and to participate in discovery dispute resolution; (b) be knowledgeable about the Party's discovery efforts; (c) be, or have reasonable access to those who are, familiar with the Party's electronic systems and capabilities in order to explain those systems and answer relevant questions; and (d) be, or have reasonable access to those who are knowledgeable about the technical aspects of discovery, including electronic document storage, organization, and format issues, and relevant information retrieval technology, including search methodology.

**5.     IDENTIFICATION OF CUSTODIANS AND DATA SOURCES**

The parties will disclose information about custodians and custodial and non-custodial data sources likely to possess relevant or responsive information in accordance with Fed. R. Civ. P. 26 and this District's ESI Guidelines. The Parties will participate in Rule 26(f) discussions guided by this District's Checklist for Rule 26(f) Meet and Confer Regarding Electronically

1   Stored Information. After responses to Requests for Production under Fed. R. Civ. P. 34 have

2   been served, the parties will meet and confer regarding those custodians and custodial and non-

3   custodial data sources from which Documents and ESI will be collected for search and review for

4   potential production in this litigation. The custodian and data source exchanges will include brief

5   explanations of the rationale for their selections; for example, for custodians, their current job

6   titles and descriptions of their work, and for data sources, location information and description.

7       **6.      INACCESSIBLE OR UNUSABLE ESI**

8       If a Producing Party asserts that certain requested ESI is inaccessible or not "reasonably

9   accessible," otherwise unnecessary, or if the Receiving Party asserts that, following production,

10  certain ESI is not reasonably useable, the parties shall meet and confer to discuss resolving such

11  assertions. The parties will exchange sufficient information to enable the parties to confer in good

12  faith. If the parties cannot resolve any such disputes after such a meet and confer has taken place,

13  the issue shall be presented to the Court for resolution.

14      **7.      KNOWN RESPONSIVE DOCUMENTS**

15      Documents or ESI identified in a custodial or non-custodial file, or in a discrete folder or

16  collection, that are known to a Producing Party through reasonable investigation to be responsive

17  to a discovery request shall be collected for review without regard to whether the responsive

18  content was located via any search methodology developed in accordance with this Order, and

19  nothing about such review shall prevent the Producing Party from redacting or withholding and

20  logging such documents for applicable privileges.

21      **8.      SEARCH METHODOLOGIES**

22      The Parties shall adopt reasonable and proportionate methodologies to identify, search,

23  collect, cull, review, and produce ESI as required under applicable legal standards. The Parties

24  recognize and agree that each Party may use one or more methodologies to identify, search,

25  collect, cull, review, and produce responsive and non-privileged ESI, including the use of

26  keyword search terms and/or the use of technology assisted review ("TAR") as discussed further

27  herein. The Parties further recognize that different data sets may implicate different

28  methodologies to identify, search, collect, cull, review, and produce responsive and non-

1  privileged ESI. The Parties therefore agree to meet and confer in good faith regarding any

2  potential disputes over their respective ESI productions.

3  **9.    HIT REPORTS AND SEARCH TERMS**

4       If a Producing Party uses search terms to identify, search, or cull potentially responsive

5  ESI, the Producing Party shall disclose the search terms to the Requesting Party. The Parties shall

6  meet and confer regarding any disputes over the disclosed search terms. In the event that a

7  Producing Party claims burden with respect to modified and/or additional search terms proposed

8  by a Requesting Party, the Producing Party shall provide a hit report for the terms at issue using

9  industry-standard processing tools, such as NUIX or other similar tools. The Producing Party

10  shall provide a hit report for the document collection where the terms were applied, including the

11  following with respect to each proposed or modified search term in the collection:

12       a)  The number of documents with hits for that term; and

13       b)  The number of unique documents, i.e., documents which do not have hits for any other

14         term.

15       If, after reviewing a hit report from a Producing Party, a Requesting Party so chooses, it

16  may reasonably request a further hit report which includes:

17       c)  The number of family members, including the documents with hits, of the documents

18         with hits for that term; and

19       d)  The number of unique family members of the documents with hits for that term.

20       If the ESI tool for the Producing Party is capable without undue burden of providing the

21  number of family members and unique family members, then the Producing Party shall provide

22  such further hit report. The Parties (including the person most knowledgeable about the

23  capabilities of the Producing Party's ESI tool and the Requesting Party's person most

24  knowledgeable about technical issues from its ESI service provider) shall meet and confer

25  regarding any disputes over whether the Producing Party's ESI tool has the capability or not to

26  provider either number of family members or number of unique family members.

27       The Parties shall meet and confer to resolve disagreements over the search terms or their

28  application. To the extent the Parties are unable to reach agreement on the application of, or

procedures for, any search or filtering processes, the Parties shall fully comply with the provisions of this Court's Discovery Standing Order regarding the procedure for raising discovery disputes with the Court, including the meet and confer and certification requirements therein.

### 10.   TECHNOLOGY ASSISTED REVIEW (TAR)

A Producing Party may use TAR (technology-assisted review) during the culling and review process of ESI, which may be applied in addition to search terms. If a Producing Party uses TAR to cull, filter out, or exclude documents from that Party's production, that Producing Party shall do the following:

- If a Producing Party chooses to apply both search terms and TAR to a review set, the Producing Party will disclose the search terms to all other Party/Parties.
- Disclose the name of the TAR tool or service used to all other Party/Parties.

### 11.   VALIDATION

Each Producing Party shall take reasonable steps to validate its review process (i.e., using quality control measures to determine whether its production is missing relevant ESI or contains substantial amounts of irrelevant ESI) and make any necessary adjustments or corrections to its process. If, after reviewing a Producing Party's production, a Requesting Party reasonably requests additional information regarding the validation method(s) used by the Producing Party, the Producing Party will disclose the level of end-to-end recall (the percentage of responsive Documents in the collection which were identified as responsive by that Producing Party's methodology). If there remain disputes between the Parties regarding validation, the Parties shall meet and confer to resolve such disputes in good faith, including a reasonable discussion regarding the tool used and the parameters used to obtain or calculate the level of recall.

### 12.   UNSEARCHABLE DOCUMENTS

The Producing Party shall use reasonable efforts to identify and review potentially responsive documents for which text-based search technologies are fundamentally ineffective.

### 13.   SYSTEM FILES

Each Party will use its best efforts to filter out common system files and application executable files using the national software reference library ("NSRL") NIST hash set list. The

Parties also may filter out stand-alone files identified as zero bytes in size. Additional culling of file types based on file header information may be applied to the following, provided these files are not known to be otherwise attached, embedded in, or included with an otherwise responsive document, or are not themselves reasonably known to contain information responsive or contain responsive data or are used to interface with users or interact with or access individual or aggregated user data: Application Package File, Backup Files, Batch Files, Binary Disc Image, C++ File Formats, Cascading Style Sheet, Configuration File, Database File, Dictionary Files, Dynamic Link Library, Event Log Files, Executable Files, Hypertext Cascading Stylesheet, Java Archive Files, JavaScript Files, JavaScript Source Code and Class Files, Macintosh Resource Fork Files, Package Manager Files, Program Files, Program Installers, Python Script Files, Shell Script Files, System or Temporary Files, Thumbnail Cache Files, Troff Files, Truetype Font Files, Windows Cabinet File, Windows Command Files, Windows File Shortcut, Windows Help Files, Windows Metafiles and Enhanced Metafiles, Windows Spool Files, Windows System File.

## 14. DEDUPLICATION

Each Producing Party shall make reasonable efforts to globally deduplicate exact duplicate Documents within that Producing Party's ESI data set across all custodial and non-custodial sources at the family level using either MD5 hash values or SHA hash values or any other agreed-upon (and disclosed) industry-standard deduplication technology. The Parties shall reach agreement on such other deduplication technology and shall reach agreement on how their deduplication tools shall identify exact duplicates of documents in a manner that is consistent with the disclosed tools and technologies a Producing Party is using. The Parties shall reach agreement on how to identify exact duplicates of emails using industry-standard commercially available software tools or services, which may for example calculate hash values of emails based on concatenated values of agreed-upon email fields and/or hash values of attachments, or which may use any other method the Parties agree upon. Having further met and conferred in keeping with the previous sentence, the Parties shall calculate deduplication hash values for emails on the concatenated values set forth in and in accordance with the documentation specifications of the disclosed deduplication tools to be used in this Litigation (i.e., RelativityOne, Relativity Server,

1   and Nuix); however, if Nuix is used, the Producing Party shall select the optional field "Include

2   Bcc" as an additional field to add to the default ones.

3       The Parties shall not withhold from production near-duplicates without meeting and

4   conferring on this issue.

5       The names of all custodians who were either identified as custodians for purposes of

6   collection for this matter (or otherwise known by the Producing Party to have been in possession

7   or custody of a document prior to deduplication) will be populated in the ALL CUSTODIANS

8   metadata field for the produced version of a document that has duplicates removed from

9   production. The original file paths (if any exist) of a document prior to deduplication will be

10  populated in the ALL FILE PATHS metadata field of the produced document.

11      **15.    EMAIL THREADING**

12      The Parties may use analytics technology to identify email threads and shall produce the

13  unique most inclusive copy and related family members. Where multiple email messages are part

14  of a single chain or "thread," a Party is only required to produce the most inclusive copy of an

15  email message(s) ("Last In Time Email(s)") and need not produce earlier, lesser inclusive email

16  messages or "thread members," provided that the tool or software service being used to perform

17  threading is disclosed. A Producing Party may exclude from production lesser inclusive copies of

18  the most inclusive email message in the thread, where the entire body of each of those lesser

19  inclusive copies is included within the Last in Time Email. The Producing Party will honor

20  reasonable requests to produce lesser inclusive copies of a Last In Time Email or other earlier

21  chains of emails otherwise excluded by email thread suppression.

22      The Parties shall treat new or different email chains or threads pursuant to further

23  agreement on safeguards or guidelines for defining emails threads which reasonably take into

24  account the capabilities of the email threading/dethreading/hyperthreading tools used by each

25  Defendant (which shall be disclosed to Plaintiffs).

26      **16.    SOURCE CODE**

27      The Parties will meet and confer to address the production and/or inspection of source

28  code and entering into a separate order governing the same if needed.

**17.   PRODUCTION FORMATS**

The Parties agree to produce documents and data in the formats described in **Appendix 1** to this ESI Order. If particular documents or categories of documents identified in response to document requests warrant a different format, the Parties will cooperate to arrange for the mutually acceptable production of such documents. The Parties further agree not to degrade the searchability of documents as part of the document production process.

In addition, the Parties agree that the production and production format of social media and/or user account information is not covered by this agreement and to meet and confer on the production and production format, including metadata, for social media and/or user account information.

**18.   PHASING**

Once the Parties begin propounding discovery requests pursuant to Fed. R. Civ. P. 34, the Parties agree to meet and confer regarding appropriate phasing for the production of ESI.

**19.   MISCELLANEOUS PROVISIONS**

a) **Production of Plaintiffs ESI and Case-Specific Materials**.  Subject to any further agreement among the Parties or Order of the Court, the Parties shall produce case-specific documents (i.e., documents specific to the claim of a given Plaintiff, produced by Plaintiffs or Defendants) for any Plaintiff in discovery pools or other selections designed to inform bellwether selection, including those selected for a bellwether trial, in accordance with the production format specified herein, provided, however, that the Producing Party may elect to produce such materials in their native format. To the extent production of case-specific documents for any Plaintiff selected for a bellwether trial presents an issue for any Party, the Parties shall reasonably confer, and may present any disputes to the Court or its designee.  The Parties shall further agree to confer concerning the production format and associated matters (*e.g.*, hosting platform) for case-specific documents produced in the cases of other Plaintiffs. Nothing herein shall limit Defendant's right to seek discovery from any Plaintiff.

b) **Translations Of Produced Materials**.  The Producing Party has no obligation to

create a translation of the Documents or any portion thereof. For any foreign-language
documents responsive to document requests that a Party reasonably knows as the
result of a reasonable investigation have been translated into the English language
using human translators or through machine translation for its own purposes, except to
the extent such translation is protected by attorney-client or work-product privileges,
the Producing Party shall produce the translation of the original document with the
original. The parties will meet and confer as necessary concerning procedures for
using translations at depositions and at trial. In the event the Parties cannot reach
agreement, the matter may be submitted to the Court for determination.

c) **Third-Party Documents**.  A Party that issues a Non-Party subpoena ("Issuing Party")
shall include a copy of this Order with the subpoena and state that (1) the subpoenaed
Non-Party should produce Documents in response to the subpoena to all Parties; and
(2) the Parties to this Litigation have requested that Third Parties produce Documents
in accordance with the specifications set forth herein. If the subpoenaed Non-Party
produces Documents to the Issuing Party but does not produce those Documents to
other Parties, the Issuing Party shall produce such Documents to those other Parties
within 14 days of receiving the Documents, except where the Documents are to be
used in a deposition, in which case the Issuing Party shall produce such Documents to
all other Parties no later than three (3) days prior to the deposition, or as soon as
reasonably practicable if such production occurs thereafter. Nothing in this Order is
intended or may be interpreted to narrow, expand, or otherwise affect the rights of the
Parties or Third Parties to object to a subpoena. If the Non-Party production is not
Bates-stamped, the Parties will meet and confer to agree upon a format for designating
the documents with a unique Bates Number prefix.

d) **Documents Produced by Parties – Presumption of Authenticity**.  In order to reduce
the number of requests for admission, this Order establishes a rebuttable presumption
that documents produced by the Parties are authentic, if said documents were either
created or authored by the producing Party, or any of its employees, agents, or

contractors, so long as the employees', agents', or contractors' work was performed in connection with a project or assignment sponsored by the producing Party.  No further evidence to establish authenticity need be provided.  Nothing in this paragraph shall be deemed to waive any other evidentiary objection a party may have, including but not limited to hearsay, foundation/personal knowledge, or relevance.

e) **Re-productions.** Notwithstanding any provisions to the contrary, re-production of discrete sets of documents from another litigation, arbitration, government inquiry, or other matter may be re-produced in the same manner and form as originally produced in the other matter, provided however that a party will re-produce documents in a different format for good cause shown. This provision does not waive the right of a party to object to any requests for reproduction of production files from another litigation, arbitration, government inquiry, or other matter.

f) **Modification**.  This ESI Order may be modified by a Stipulated Order of the Parties or by the Court for good cause shown.

g) **Good Faith**.  The Parties will act in good faith as required by law and use these procedures to identify and reduce the potential for disputes.

h) **Continuing Obligations**. The Parties recognize that discovery shall be an iterative and cooperative process. The Parties will continue to meet and confer regarding any issues as reasonably necessary and appropriate. This Order does not address or resolve any objections to the Parties' respective discovery requests.

i) **Reservation of Rights**.  The Parties agree that any topic not addressed herein is neither a waiver nor acknowledgement of agreement by either Party.

**IT IS SO STIPULATED**, through Counsel of Record.

| | |
|---|---|
| 1 | DATED: March 15, 2024 |
| 2 | |
| 3 | |

DATED: March 15, 2024          Respectfully submitted,

*/s/ Lexi J. Hazam*
LEXI J. HAZAM
**LIEFF CABRASER HEIMANN &**
**BERNSTEIN, LLP**
275 BATTERY STREET, 29TH FLOOR
SAN FRANCISCO, CA 94111-3339
Telephone: 415-956-1000
lhazam@lchb.com

PREVIN WARREN
**MOTLEY RICE LLC**
401 9th Street NW Suite 630
Washington DC 20004
T: 202-386-9610
pwarren@motleyrice.com

Co-Lead Counsel

CHRISTOPHER A. SEEGER
**SEEGER WEISS, LLP**
55 CHALLENGER ROAD, 6TH FLOOR
RIDGEFIELD PARK, NJ 07660
Telephone: 973-639-9100
Facsimile: 973-679-8656
cseeger@seegerweiss.com

Counsel to Co-Lead Counsel

JENNIE LEE ANDERSON
**ANDRUS ANDERSON, LLP**
155 MONTGOMERY STREET, SUITE 900
SAN FRANCISCO, CA 94104
Telephone: 415-986-1400
jennie@andrusanderson.com

Liaison Counsel

MATTHEW BERGMAN
GLENN DRAPER
**SOCIAL MEDIA VICTIMS LAW CENTER**
821 SECOND AVENUE, SUITE 2100
SEATTLE, WA 98104
Telephone: 206-741-4862
matt@socialmediavictims.org
glenn@socialmediavictims.org

JAMES J. BILSBORROW
**WEITZ & LUXENBERG, PC**
700 BROADWAY
NEW YORK, NY 10003
Telephone: 212-558-5500
Facsimile: 212-344-5461
jbilsborrow@weitzlux.com
PAIGE BOLDT
**WATTS GUERRA LLP**
4 Dominion Drive, Bldg. 3, Suite 100
San Antonio, TX 78257
T: 210-448-0500
PBoldt@WattsGuerra.com

THOMAS P. CARTMELL
**WAGSTAFF & CARTMELL LLP**
4740 Grand Avenue, Suite 300
Kansas City, MO 64112
T: 816-701 1100
tcartmell@wcllp.com

JAYNE CONROY
**SIMMONS HANLY CONROY, LLC**
112 MADISON AVE, 7TH FLOOR
NEW YORK, NY 10016
Telephone: 917-882-5522
jconroy@simmonsfirm.com
CARRIE GOLDBERG
**C.A. GOLDBERG, PLLC**
16 Court St.
Brooklyn, NY 11241
T: (646) 666-8908
carrie@cagoldberglaw.com

SIN-TING MARY LIU
**AYLSTOCK WITKIN KREIS &
OVERHOLTZ, PLLC**
17 EAST MAIN STREET, SUITE 200
PENSACOLA, FL 32502
Telephone: 510-698-9566
mliu@awkolaw.com

ANDRE MURA
**GIBBS LAW GROUP, LLP**
1111 BROADWAY, SUITE 2100
OAKLAND, CA 94607
Telephone: 510-350-9717
amm@classlawgroup.com

EMMIE PAULOS
**LEVIN PAPANTONIO RAFFERTY**
316 SOUTH BAYLEN STREET, SUITE 600
PENSACOLA, FL 32502
Telephone: 850-435-7107
epaulos@levinlaw.com

ROLAND TELLIS
DAVID FERNANDES
**BARON & BUDD, P.C.**
15910 Ventura Boulevard, Suite 1600
Encino, CA 91436
Telephone: (818) 839-2333
Facsimile: (818) 986-9698
rtellis@baronbudd.com
dfernandes@baronbudd.com

ALEXANDRA WALSH
**WALSH LAW**
1050 Connecticut Ave, NW, Suite 500
Washington D.C. 20036
T: 202-780-3014
awalsh@alexwalshlaw.com

MICHAEL M. WEINKOWITZ
**LEVIN SEDRAN & BERMAN, LLP**
510 WALNUT STREET
SUITE 500
PHILADELPHIA, PA 19106
Telephone: 215-592-1500
mweinkowitz@lfsbalw.com

DIANDRA "FU" DEBROSSE ZIMMERMANN
**DICELLO LEVITT**
505 20th St North
Suite 1500
Birmingham, Alabama 35203
Telephone: 205.855.5700
fu@dicellolevitt.com

1    HILLARY NAPPI
     **HACH & ROSE LLP**
2    112 Madison Avenue, 10th Floor
     New York, New York 10016
3    Tel: 212.213.8311
     hnappi@hrsclaw.com
4

5    JAMES MARSH
     **MARSH LAW FIRM PLLC**
6    31 HUDSON YARDS, 11TH FLOOR
     NEW YORK, NY 10001-2170
7    Telephone: 212-372-3030
     jamesmarsh@marshlaw.com
8

9    *Attorneys for Individual Plaintiffs*

10   **ROB BONTA**
     Attorney General
11   State of California

12
      */s/ Megan O'Neill*
13   Nick A. Akers (CA SBN 211222)
     Senior Assistant Attorney General
14   Bernard Eskandari (SBN 244395)
     Supervising Deputy Attorney General
15   Megan O'Neill (CA SBN 343535)
     Joshua Olszewski-Jubelirer
16   (CA SBN 336428)
     Marissa Roy (CA SBN 318773)
17   Deputy Attorneys General
     California Department of Justice
18   Office of the Attorney General
     455 Golden Gate Ave., Suite 11000
19   San Francisco, CA 94102-7004
     Phone: (415) 510-4400
20   Fax: (415) 703-5480
     Bernard.Eskandari@doj.ca.gov
21

22   *Attorneys for Plaintiff the People of the State of*
23   *California*

24

25

26

27

28

1

2      **RUSSELL COLEMAN**
       Attorney General
3      Commonwealth of Kentucky

4      */s/ J. Christian Lewis*
       J. Christian Lewis (KY Bar No. 87109),
5      *Pro hac vice*
       Philip Heleringer (KY Bar No. 96748),
6      *Pro hac vice*
       Zachary Richards (KY Bar No. 99209),
7      *Pro hac vice app. forthcoming*
       Daniel I. Keiser (KY Bar No. 100264),
8      *Pro hac vice*
       Matthew Cocanougher (KY Bar No. 94292),
9      *Pro hac vice*
       Assistant Attorneys General
10     1024 Capital Center Drive, Suite 200
       Frankfort, KY 40601
11     CHRISTIAN.LEWIS@KY.GOV
       PHILIP.HELERINGER@KY.GOV
12     ZACH.RICHARDS@KY.GOV
       DANIEL.KEISER@KY.GOV
13     MATTHEW.COCANOUGHER@KY.GOV
       Phone: (502) 696-5300
14     Fax: (502) 564-2698

15

16     *Attorneys for Plaintiff the Commonwealth of
       Kentucky*
17

18

19

20

21

22

23

24

25

26

27

28

COVINGTON & BURLING LLP

By: */s/ Ashley M. Simonsen*
Ashley M. Simonsen, SBN 275203
COVINGTON & BURLING LLP
1999 Avenue of the Stars
Los Angeles, CA 90067
Telephone: (424) 332-4800
Facsimile: + 1 (424) 332-4749
Email: asimonsen@cov.com

Phyllis A. Jones, *pro hac vice*
Paul W. Schmidt, *pro hac vice*
COVINGTON & BURLING LLP
One City Center
850 Tenth Street, NW
Washington, DC 20001-4956
Telephone: + 1 (202) 662-6000
Facsimile: + 1 (202) 662-6291
Email: pajones@cov.com

*Attorney for Defendants Meta Platforms, Inc.*
*f/k/a Facebook, Inc.; Facebook Holdings,*
*LLC; Facebook Operations, LLC; Facebook*
*Payments, Inc.; Facebook Technologies, LLC;*
*Instagram, LLC; Siculus, Inc.; and Mark Elliot*
*Zuckerberg*

FAEGRE DRINKER LLP
*By: /s/ Andrea Roberts Pierson*
Andrea Roberts Pierson, pro hac vice
FAEGRE DRINKER LLP
300 N. Meridian Street, Suite 2500
Indianapolis, IN 46204
Telephone: + 1 (317) 237-0300
Facsimile: + 1 (317) 237-1000
Email: andrea.pierson@faegredrinker.com

Amy R. Fiterman, pro hac vice
FAEGRE DRINKER LLP
2200 Wells Fargo Center
90 South Seventh Street
Minneapolis MN 55402
Telephone: +1 (612) 766 7768
Facsimile: + 1 (612) 766 1600
Email: amy.fiterman@faegredrinker.com

Geoffrey M. Drake, pro hac vice

KING & SPALDING LLP
1180 Peachtree Street, NE, Suite 1600
Atlanta, GA 30309
Telephone: +1 (404) 572 4726
Email: gdrake@kslaw.com

David P. Mattern, pro hac vice
KING & SPALDING LLP
1700 Pennsylvania Avenue, NW, Suite 900
Washington, D.C. 20006
Telephone: +1 (202) 626 2946
Email: dmattern@kslaw.com

*Attorneys for Defendants TikTok Inc. and ByteDance Inc.*

MUNGER, TOLLES & OLSEN LLP
By: */s/ Jonathan H. Blavin*
Jonathan H. Blavin, SBN 230269
MUNGER, TOLLES & OLSON LLP
560 Mission Street, 27th Floor
San Francisco, CA 94105-3089
Telephone: (415) 512-4000
Facsimile: (415) 512-4077
Email: jonathan.blavin@mto.com

Rose L. Ehler (SBN 29652)
Victoria A. Degtyareva (SBN 284199)
Laura M. Lopez, (SBN 313450)
Ariel T. Teshuva (SBN 324238)
MUNGER, TOLLES & OLSON LLP
350 South Grand Avenue, 50th Floor
Los Angeles, CA 90071-3426
Telephone: (213) 683-9100
Facsimile: (213) 687-3702
Email: rose.ehler@mto.com
Email: victoria.degtyareva@mto.com
Email: Ariel.Teshuva@mto.com

Lauren A. Bell (*pro hac vice forthcoming*)
MUNGER, TOLLES & OLSON LLP
601 Massachusetts Ave., NW St.,
Suite 500 E
Washington, D.C. 20001-5369
Telephone: (202) 220-1100
Facsimile: (202) 220-2300
Email: lauren.bell@mto.com

*Attorneys for Defendant Snap Inc.*

WILSON SONSINI GOODRICH & ROSATI
Professional Corporation
By: */s/ Brian M. Willen*
Brian M. Willen (*pro hac vice*)
WILSON SONSINI GOODRICH & ROSATI
1301 Avenue of the Americas, 40th Floor
New York, New York 10019
Telephone: (212) 999-5800
Facsimile: (212) 999-5899
Email: bwillen@wsgr.com

Lauren Gallo White
Samantha A. Machock
WILSON SONSINI GOODRICH & ROSATI
One Market Plaza, Spear Tower, Suite 3300
San Francisco, CA 94105
Telephone: (415) 947-2000
Facsimile: (415) 947-2099
Email: lwhite@wsgr.com
Email: smachock@wsgr.com

Christopher Chiou
WILSON SONSINI GOODRICH & ROSATI
953 East Third Street, Suite 100
Los Angeles, CA 90013
Telephone:  (323) 210-2900
Facsimile:  (866) 974-7329
Email: cchiou@wsgr.com

*Attorneys for Defendants YouTube, LLC, Google LLC, and Alphabet Inc.*

WILLIAMS & CONNOLLY LLP
By: */s/ Joseph G. Petrosinelli*
Joseph G. Petrosinelli (*pro hac vice*)
jpetrosinelli@wc.com
Ashley W. Hardin (*pro hac vice*)
ahardin@wc.com
680 Maine Avenue, SW
Washington, DC 20024
Telephone.: 202-434-5000
Fax: 202-434-5029

*Attorneys for Defendants YouTube, LLC, Google LLC, and Alphabet Inc.*

MORGAN, LEWIS & BOCKIUS LLP
By: */s/ Stephanie Schuster*
Stephanie Schuster (*pro hac vice*)
stephanie.schuster@morganlewis.com
1111 Pennsylvania Avenue NW
NW Washington, DC 20004-2541
Tel.: 202.373.6595

Yardena R. Zwang-Weissman (SBN 247111)
yardena.zwang-weissman@morganlewis.com
300 South Grand Avenue, 22nd Floor
Los Angeles, CA 90071-3132
Tel.: 213.612.7238

Brian Ercole (*pro hac vice*)
brian.ercole@morganlewis.com
600 Brickell Avenue, Suite 1600
Miami, FL 33131-3075
Tel.: 305.415.3416

*Attorneys for Defendants YouTube, LLC and Google LLC*

**IT IS ORDERED** that the foregoing Agreement is approved.

Dated: _____ March 18, 2024 _____  _____

MAGISTRATE JUDGE PETER H.  KANG

**APPENDIX 1: PRODUCTION FORMAT**

1) **Production Components.** Except as otherwise provided below, ESI must be produced in accordance with the following specifications:

   a) an ASCII delimited data file (.DAT) using standard delimiters;

   b) an image load file (.OPT) that can be loaded into commercially acceptable production software (*e.g.* Concordance);

   c) single page black-and-white TIFF images, or JPEG images when color is specified herein, or native files with single page placeholder TIFF images depending on the applicable production format for each type of file;

   d) and document level .TXT files for all documents containing extracted full text or OCR text.

   e) Family relationships between emails and their attachments, embedded files and their source document, and connected hardcopy documents will be maintained in production. Attachments should be consecutively produced with their parent.

   f) If a particular document warrants a different production format, the Parties will cooperate in good faith to arrange for a mutually acceptable production format.

2) **Production Media and Access Controls.** Productions must be encrypted and produced through secure electronic means, such as secure file sharing methods (*e.g.* FTP), or on CD, DVD, flash drive or external hard drive ("Production Media"). Each piece of Production Media must identify a production number corresponding to the production volume (*e.g.* "VOL001"). Each piece of Production Media must also identify: (a) the case caption; (b) the following label: "This media contains material subject to Court Ordered security measures"; (c) the Producing Party's name; (d) the production date; (e) the Bates Number range of the materials contained on the Production Media.

Nothing in this ESI Order will preclude or impair any and all protections provided the Parties by any Protective Order(s) agreed and entered into by the Parties. Parties will use best efforts to avoid the unnecessary copying or transmittal of produced documents. If questions arise, the Parties will meet and confer to ensure security concerns are addressed prior to the exchange of

any documents.

  **3)**   **Data Load Files/Image Load Files.** Each TIFF in a production must be referenced in the corresponding image load file. The total number of documents referenced in a production's data load file should match the total number of designated document breaks in the image load file(s) in the production. The total number of pages referenced in a production's image load file should match the total number of TIFF files in the production. All images must be assigned a unique Bates number that is sequential within a given document and across the production sets. The Bates Numbers in the image load file must match the corresponding documents' beginning Bates numbers in the data load file. The total number of documents in a production should match the total number of records in the data load file. Load files must not vary in format or structure within a production, or from one production to another except by agreement of the Parties.

  **4)**   **Metadata Fields.** Each of the metadata and coding fields set forth below that can be extracted should be produced for each document, except that if the field contains privileged information, that privileged information may be redacted. However, to the extent that metadata does not exist, is not available for any documents produced, this provision shall not be read to require any Party to extract, capture, collect, manually populate, or produce such metadata, with the exception of the following: (a) BEGBATES, (b) ENDBATES, (c) BEGATTACH, (d) ENDATTACH, (e) PRODVOL, (f) ALL CUSTODIANS, (g) CONFIDENTIALITY, (h) REDACTIONS, (i) REDACTION TYPE, (j) HASHVALUE, (k) NATIVEFILEPATH, and (l) TEXTFILEPATH, which should be populated by the Party or the Party's vendor. The Parties will make reasonable efforts to ensure that metadata fields automatically extracted from the documents correspond directly to the information that exists in the original documents.

| Field Name | Field Description |
|---|---|
| BEGBATES | Beginning Bates number for a particular document as stamped on the first production image for that document |
| ENDBATES | Ending Bates number as stamped on the last |

| Field Name | Field Description |
|---|---|
| | production image for a particular document |
| BEGATTACH | First production Bates number of the first document in a family |
| ENDATTACH | Last production Bates number of the last document in a family |
| ATTACHCOUNT | Number of attachments to an e-mail or embedded parent, as generated by commercially available discovery processing tools. |
| ATTACHNAMES | Names of each individual Attachment, separated by semicolons. |
| PRODVOL | Production volume |
| ALLCUSTODIANS | List of all custodians associated with Document, i.e. "Custodian" + "Other Custodian" values delimited by semicolon. |
| ALLFILEPATHS | All original path(s) to the individual source file(s) when available in the ordinary course of business to and processable by the parties and their ESI vendors of choice. Includes path up to and including internal path of containers. |
| CONFIDENTIALITY | Confidentiality designation assigned to the document consistent with the Stipulated Protective Order governing this Litigation |
| NATIVEFILEPATH | Native File Link (Native Files only) |
| TEXTFILEPATH | Path to extracted text/OCR file for the document |
| HASHVALUE | MD5 hash value of the document |
| DOCUMENT TYPE | Descriptor for the type of document: "E-document" for electronic documents not attached to e-mails; "E-mail" for all e-mails; "E-attachment" for files that were attachments to e-mails; and "Physical" for hard copy physical documents that have been scanned and converted to an electronic image. |
| AUTHOR | Any value populated in the Author field of the |

| Field Name | Field Description |
|------------|-------------------|
|  | document properties |
| DOCDATE | Date the document was created according to filesystem information (format: MM/DD/YYYY) |
| DATELASTMODIFIED | Date when document was last modified according to filesystem information (format: MM/DD/YYYY) |
| LAST MODIFIED BY | Last person who modified (saved) a document, as generated by commercially available discovery processing tools. |
| TRACK CHANGES | Y if a document with track changes value, otherwise N or empty, if available separately from the HASHIDDENDATA flag |
| COMMENTS | Y if a document with comments, otherwise N or empty, if available separately from the HASHIDDENDATA flag |
| HASHIDDENDATA | Y if a document with hidden content value, otherwise N or empty |
| FILENAME | Filename of an electronic document |
| TITLE | Any value populated in the Title field of the document properties |
| DOCEXT | File extension of document pulled from the document properties |
| FROM | The sender of the email |
| TO | All recipients that were included on the "To" line of the email |
| CC | All recipients that were included on the "CC" line of the email |
| BCC | All recipients that were included on the "BCC" line of the email |
| DATETIMERECEIVED | Date and time email was received (format: MM/DD/YYYY HH:MM) |
| DATETIMESENT | Date and time email was sent (format: MM/DD/YYYY HH:MM) |

| Field Name | Field Description |
|------------|-------------------|
| TIMEZONE | The timezone used to process the document |
| EMAILSUBJECT | Subject line of email pulled from the document properties |
| THREADID | If a threading tool is used for emails, the thread id generated by the threading tool. |
| REDACTION TYPE[1] | General category of redaction reason as agreed to by the parties. For example,  PII, SCA, CODE, and/or PRIV.  If more than one, separate reasons by semicolons. |
| REDACTIONS | Y if a document is redacted, otherwise N or empty |

    **5)**    **TIFFs.** Unless excepted below, single page, black and white, Group IV TIFFs should be provided, at least 300 dots per inch (dpi) for all documents. Each TIFF image must be named according to a unique corresponding Bates number associated with the document. Each image must be branded according to the Bates number and the agreed upon confidentiality designation. Original document orientation should be maintained (i.e., portrait to portrait and landscape to landscape). Where the TIFF image is unreadable or has materially degraded the quality of the original, the Producing Party shall provide a higher quality TIFF image or the native or original file.  In addition, the Parties shall take reasonable efforts to process word processing documents (*e.g.*, MS Word) with track changes and/or comments unhidden on the TIFF image.

    **6)**    **Color.** Word processing documents containing tracked changes shall be produced in color, as single-page, 300 dpi JPG images with JPG compression and a high quality setting as to not degrade the original image.  The Producing Party shall comply with good faith by the Requesting Party to provide replacement color images for documents originally produced in black and white.  A Party making such a request shall make the request by individual Bates

---

[1] The Parties will provide specific information on any privilege(s) asserted in their privilege logs, in an overlay, or the redaction boxes.  The "Redaction Reason" field is informational only for redaction type and shall not in any way limit a party's right to assert attorney-client privilege, attorney-work product privilege, and/or any other applicable privilege or protection.

number(s) and shall limit requests made pursuant to this paragraph to a reasonable number of documents.

**7)** **Text Files.** A single multi-page text file must be provided for each document, and the filename should match its respective TIFF filename for the first page of that document. Extracted text shall be generated with commercially acceptable technology set to include all comments, revisions, tracked changes, speaker's notes and text from documents with comments or tracked changes, and hidden and very hidden worksheets, slides, columns and rows. When possible, the text of native files should be extracted directly from the native file. Parties will perform optical character recognition ("OCR") on foreign language documents using the appropriate settings for languages reasonably anticipated to be in the production following a meet and confer with the Requesting Party to identify those languages. Text files will not contain the redacted portions of the documents. A commercially acceptable technology for OCR should be used for all scanned, hard copy documents and for documents with redactions other than Excel files and other spreadsheets which shall be redacted in native format. Text extracted from emails should include the following header information where available: (1) the individuals to whom the communication was directed ("To"), (2) the author of the email communication ("From"), (3) who was copied and blind copied on such email ("CC" and "BCC"), (4) the subject line of the email ("RE" or "Subject"), and (5) the date and time of the email. To the extent the text extraction technology the Parties are using can be configured to include the text of any URLs or links, the Parties shall utilize that setting.

**8)** **Native files.** Spreadsheets (*e.g.* MS Excel), and un-redacted presentations (e.g. Microsoft PowerPoint,) will be produced in native format to the extent that they are produced in this Litigation, audio, video, and multi-media files will be produced in native format. The Parties will meet and confer on the production of other file types, such as proprietary files, etc. Native files will be produced with a link in the NATIVEFILEPATH field, along with extracted text (where extracted text is available) and applicable metadata fields set forth in paragraph 4 above. A Bates numbered TIFF placeholder indicating that the document was provided in native format must accompany every native file. Where redaction makes production of native-format

files other than spreadsheets or presentations infeasible, the Parties will confer to determine a reasonably usable form for the production, but spreadsheets shall presumptively be redacted in native, and presentations presumptively redacted in image form, in these cases without the need for further conferring.

**9)** **Production Format for Hard Copy Documents.** Documents that exist in hardcopy will be scanned to *.tiff image format and produced in accordance with the specifications set forth herein. Hard copy documents that are not text-searchable shall be made searchable by OCR prior to production.  In scanning paper documents, distinct documents should not be merged into a single record, and single documents should not be split into multiple records (i.e., paper documents should be logically unitized). In the case of an organized compilation of separate documents (for example, a binder containing several separate documents behind numbered tabs), the document behind each tab should be scanned separately, but the relationship among the documents in the compilation should be reflected in the proper coding of the beginning and ending document and attachment fields. The Parties will make their best efforts to unitize the documents correctly. If relevant documents are maintained in a file, folder, envelope, binder, notebook or similar container used to store documents, all contents therein shall be reviewed for production and privilege. Document pages which have affixed notes, such as Post-it notes, should be imaged with and without the note attached.

**10)** **Confidentiality Designation.** All images will be stamped with the appropriate confidentiality designations in accordance with the Stipulated Protective Order entered in this Litigation. Each document produced in native format will have its confidentiality designation identified in the filename of the native file and indicated on its corresponding TIFF placeholder.

**11)** **Bates Numbering**.  Bates numbering should be a consistent length across the production, contain no special characters, and be numerically sequential within a given document.  If a Bates number or set of Bates numbers is skipped, the skipped number or set of numbers should be noted with a placeholder.  Attachments to documents will be assigned Bates numbers that directly follow the Bates numbers on the documents to which they were attached.

In addition, wherever possible, each image will have its assigned Bates number electronically "burned" onto the image.

**12)** **Databases and Other Structured Data.** To the extent that responsive information is stored in a database, or database management system, or proprietary system or application which has is directed to data storage as one of its primary functions, the Producing Party will identify the database and platform to the Requesting Party. The Producing Party shall produce exports and reports about such responsive information stored in such database, where such exports and reports shall be in a reasonably usable form, and information may be produced in CSV format, tab-delimited text format, Microsoft Excel format, or Microsoft Access format. If there are future disputes over the production of information from a database, the Parties shall meet and confer in good faith in an attempt to reach any further agreements (if needed) on the data to be produced and the format and scope of the production. The Producing Party will provide reasonable amounts of information about the databases to facilitate that discussion.

**13)** **Hyperlinks.** Document(s) and/or folder(s) of documents that are hyperlinked inside a responsive document (including hyperlinked inside emails) within a Producing Party's custody, possession, or control, do not need to be produced in the first instance as part of the same family group as the Document residing at the location to which that hyperlink points. If there are particular hyperlinks identified by the Requesting Party in produced documents, the Requesting Party may submit a list of hyperlinks to a particular Producing Party for potentially relevant documents by identifying the Bates number and URL or link text for each requested link to the Producing Party, and the Producing Party will engage in reasonable efforts to locate the hyperlinked document at that location and either identify it by Bates number or provide any responsive, non-produced, and non-privileged documents. The number of hyperlinks a Requesting Party may identify to a Producing Party shall not be excessive and shall be reasonable, proportional to the needs of the case, and not unduly burdensome.

**14)** **Embedded Objects.** The Parties agree non-substantive embedded objects, including, but not limited to, logos, icons, emoticons, and footers, may be culled from a document set (but not a document) and need not be produced as separate documents by a

Producing Party (i.e., such embedded objects will be produced within the document itself, rather than as separate documents). Embedded files, except for images (including but not limited to, logos, icons, emoticons), are to be produced as family groups. Embedded files should be assigned Bates numbers that directly follow the Bates numbers on the documents within which they are embedded.

**15)** **Production of Family Groups and Relationships**. If any member of a family group is produced, all members of that group must also be produced or else logged as privileged, and no such member shall be withheld from production as a duplicate.

**16)** **Dynamic Fields**. Documents with dynamic fields for file names, dates, and times will be imaged to show the field code (e.g., "[FILENAME]") where possible, rather than the values for such fields existing at the time the file is processed.

**17)** **Time Zone**. The time zone used to process a document, including its metadata, shall be disclosed in the TIMEZONE metadata field consistent with Appendix 1, and shall be standardized for each Defendant across productions.

**18)** **Redactions**.

a)      A Producing Party may redact (i) information subject to the attorney client privilege or the work product protection (PRIV); (ii) information that cannot be disclosed pursuant to the Stored Communications Act (SCA); (iii) source code subject to separate agreement applicable to production of source code (CODE); (iv) personal identifying information (PII) including phone numbers, personal addresses, personal email addresses, the month and day of birth, driver's license numbers, and other PII agreed to by the Parties (for example, the Parties shall complete their meet and confer on whether or not to redact users' ages and years of birth). In any event, there shall be no redaction of illnesses, injuries, and medical diagnoses. To the extent a document or pleading contains PII, the Parties shall designate such documents at the appropriate Confidentiality level under the Protective Order and shall comply with Fed. R. Civ. P. 5.2 with regard to filings with the Court.

b)      No redactions for relevance may be made within a produced document or ESI item. If, during the course of discovery, the Parties identify other kinds of information that any

Party has a reasonable basis for redacting, the Parties will meet and confer on a case-by-case basis regarding that information before such redactions are made. If the Parties cannot agree, they may seek resolution from the Court.

      c)      The Producing Party will indicate, on the face of the redaction, the asserted reason(s) for the redaction (PII, SCA, CODE, and/or PRIV) and the REDACTION TYPE metadata field shall indicate that the document contains redactions and the reason(s) for the redaction.

      d)      Notwithstanding the foregoing, this provision shall not be read to prohibit redactions permitted under any applicable U.S. law or Protective Order.

      e)      Where a responsive document contains both redacted and non-redacted content, the Parties shall produce the non-redacted portions of the document and the OCR text corresponding to the non-redacted portions.

      f)      Native Redactions. Spreadsheet files requiring redaction, including without limitation Microsoft Excel files, shall be redacted and produced natively (unless the Parties agree to production in some other format). In addition, a Producing Party may natively redact other files that cannot be properly imaged for redaction.

      g)      All images of redacted files shall be processed to show all comments, revision marks, speaker notes, marks made in track changes, or other user-entered data which are visible in a normal view of the document in its native application, unless such material is redacted and marked as redacted in accordance with this section. Where possible, any occurrences of date/time auto-field items, including in headers and footers, will be removed and replaced with the term AUTODATE to prevent the current date from being printed. Email header information (e.g., date and/or subject line) shall not be redacted unless it is independently privileged. The Parties shall honor reasonable requests for the production of particular redacted documents in other formats where the image is not reasonably usable.

      h)      Color.  Redacted versions of documents that would have been produced in color in their un-redacted form shall be produced in color as detailed herein.

1    **19)    Exception Files**. The Parties will use reasonable efforts to address processing

2    exceptions.

3    **20)    Mobile and Handheld Device Documents and Data**. If responsive and unique

4    data that can reasonably be extracted and produced in the formats described herein is identified

5    on a mobile or handheld device, that data shall be produced in accordance with the generic

6    provisions of this protocol. To the extent that responsive data identified on a mobile or handheld

7    device is not susceptible to normal production protocols, the Parties will meet and confer to

8    address the identification, production, and production format of any responsive documents and

9    data contained on any mobile or handheld device.

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**COVINGTON**

BEIJING  BOSTON  BRUSSELS  DUBAI  FRANKFURT
JOHANNESBURG  LONDON  LOS ANGELES  NEW YORK
PALO ALTO  SAN FRANCISCO  SEOUL  SHANGHAI  WASHINGTON

Covington & Burling LLP
Salesforce Tower
415 Mission Street, Suite 5400
San Francisco, CA 94105-2533
T  +1 415 591 6000

July 24, 2024

DELIVERED VIA PROCESS SERVER

Idaho Health & Welfare Department
450 W. State Street
Boise, ID 83702

Re: People of the State of California v. Meta Platforms, Inc., 4:23-cv-05448

Dear Sir/Madam:

Enclosed please find a subpoena being served upon you in connection with the above-captioned litigation currently pending in the U.S. District Court for the Northern District of California. I represent Defendants Meta Platforms, Inc.; Instagram, LLC, Meta Payments, Inc. and Meta Platforms Technologies, LLC (collectively, the "Meta Defendants") in this matter.

The document subpoena requests the production of specific documents identified in the attached subpoena (see Attachment A to the subpoena), which are requested to be produced by 10:00 a.m. on August 23, 2024. We are willing to work with you on the time, date, location, method and manner of document production, as well as answer any questions or concerns you may have regarding subpoena compliance. It is sufficient compliance with this subpoena if you electronically transmit a copy of the requested documents to the undersigned. As such, please contact me at kpatchen@cov.com and 415-591-6031, to discuss document production and subpoena compliance, unless you are already represented by counsel in connection with this matter.

The Court is currently considering whether the Idaho Attorney General's Office has control over Idaho Health & Welfare Department's information for the purposes of discovery in this action. If the Court rules that the Idaho Attorney General's Office has control over Idaho Health & Welfare Department's information, the Idaho Attorney General has pending discovery requests that seek this agency's documents. By serving this subpoena, Meta does not waive its position in the state agency dispute, nor does Meta in any way waive rights to compel the Idaho Attorney General to produce Idaho Health & Welfare Department information as part of discovery in this action. However, to avoid further delay in the production of information from the Idaho Health & Welfare Department, Meta is serving the attached subpoena to request the timely production of this information.

Your anticipated time and assistance with this matter is greatly appreciated.

**COVINGTON**

Page 2

Best regards,

*/s/ Kate Patchen*

Kate Patchen

Enclosed:  Subpoena, Attachment A, and Attachment B

AO 88B  (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT

for the

Northern District of California

| | |
|---|---|
| IN RE: SOCIAL MEDIA ADOLESCENT ADDICTION/PERSONAL INJURY  PRODUCTS LIABILITY LITIGATION | ) ) ) |
| THIS DOCUMENT RELATES TO: People of the State of California, et al. v. Meta Platforms, Inc. et al., Case No.: 4:23-cv-05448 | ) ) ) ) |

Civil Action No.   4:22-MD-03047-YGR
MDL No. 3047

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS
## OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

To:   Idaho Health & Welfare Department
      450 W. State Street, Boise, ID 83702

*(Name of person to whom this subpoena is directed)*

☑ *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material: See Attachment A.

| Place: | Date and Time: August 23, 2024, 10:00 a.m. |
|---|---|

☐ *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date:   07/24/2024

CLERK OF COURT

OR

_____          /s/ Ashley Simonsen
*Signature of Clerk or Deputy Clerk*              *Attorney's signature*

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)*
Meta Platforms, Inc. f/k/a Facebook, Inc.; Instagram, LLC, Meta Payments, Inc. and
Meta Platforms Technologies, LLC,                                         who issues or requests this subpoena, are:
Ashley Simonsen, Covington & Burling LLP, 1999 Avenue of the Stars, Los Angeles, CA 90067, 424-332-4782, asimonsen@cov.com

### Notice to the person who issues or requests this subpoena

If this subpoena commands the production of documents, electronically stored information, or tangible things or the inspection of premises before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

AO 88B  (Rev.  02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (Page 2)

Civil Action No.  4:23-cv-05448

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____

on *(date)* _____ .

❏  I served the subpoena by delivering a copy to the named person as follows: _____

_____

_____ on *(date)* _____ ; or

❏  I returned the subpoena unexecuted because: _____

_____ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also
tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $       0.00       .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc.:

AO 88B  (Rev.  02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action(Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

  **(1)** *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
   **(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
   **(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person
     **(i)** is a party or a party's officer; or
     **(ii)** is commanded to attend a trial and would not incur substantial expense.

  **(2)** *For Other Discovery.* A subpoena may command:
   **(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
   **(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

  **(1)** *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

  **(2)** *Command to Produce Materials or Permit Inspection.*
   **(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
   **(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
     **(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
     **(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

  **(3)** *Quashing or Modifying a Subpoena.*
   **(A)** *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
     **(i)** fails to allow a reasonable time to comply;
     **(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);
     **(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
     **(iv)** subjects a person to undue burden.
   **(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
     **(i)** disclosing a trade secret or other confidential research, development, or commercial information; or

     **(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
   **(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
     **(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
     **(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

  **(1)** *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
   **(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
   **(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
   **(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
   **(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

  **(2)** *Claiming Privilege or Protection.*
   **(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
     **(i)** expressly make the claim; and
     **(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
   **(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

## DEFINITIONS AND INSTRUCTIONS TO ATTACHMENT A

## DEFINITIONS

1.     The term "communication" means the transmittal of information (in the form of facts, ideas, inquiries or otherwise).

2.     "Document" or "documents" shall have the broadest meaning ascribed to it by the Federal Rules of Civil Procedure, and includes, without limitation electronically stored information ("ESI") (including, without limitation, electronic databases and the data therein, all electronic messages or communications, electronic word processing documents, electronically stored voicemail, webpages, and social media posts) in accordance with any order in this case governing ESI at the time of production. Different versions of the same documents, including, but not limited to, drafts or documents with handwritten notations or marks not found in the original or on other copies are different documents.

3.     "You", "you", "Your" and "your" means the Idaho Health & Welfare Department.

4.     "Relating" or "related to" means and includes referring to, concerning, referencing, mentioning, associated with, constituting, discussing, containing, embodying, recording, reflecting, identifying, summarizing, incorporating, and/or dealing with or pertaining to in any way.

5.     "And" includes "or", and vice versa.

6.     The singular form of a word or term includes the plural, and vice versa.

7.     The present tense of a verb includes the past tense, and vice versa.

8.     The use of the article "the" shall not be construed as limiting the scope of any request.

9.     "Including" means "including without limitation."

10.    "Any" includes "all", and vice versa.

11.    The capitalized version of a word or term includes the lower case version of a word or term, and vice versa.

12.    "Social Media Platforms" or "Platforms" means a digital service that facilitates interactions between two or more distinct but interdependent sets of users, including but not limited to Facebook, Instagram, Snapchat, TikTok, YouTube, Twitter (or "X"), Pinterest, LinkedIn, BeReal, Lapse, Reddit, Threads, VSCO, Goodreads, Quora, Discord, Twitch, and Tumblr.

13.    "Young Users" means users of Social Platforms who are under 18 years of age when using the Platform(s).

All words, terms, and phrases not specifically defined herein are to be given their normal and customary meaning in the context in which they are used in these Requests.

## INSTRUCTIONS

1.    These Requests are intended to cover any and all documents in your possession, custody, or control, to the extent not privileged.  Documents held by any office, department, board, commission, or instrumentality of the Idaho Health & Welfare Department are within your possession, custody, or control.

2.    In accordance with ESI Protocol attached hereto as Attachment B, if you object to furnishing any of the documents or information requested by these Requests on the grounds of attorney-client privilege, work product, other privilege, or otherwise then, with respect to each such document:

      a.  state the nature of the privilege claimed;

      b.  state the date of each communication supporting the privilege claim;

      c.  identify all participants in the supporting communication;

      d.  state the specific grounds on which the objection is based; and

e.  identify the specific request calling for such information;

2.      If you object to any Request on the grounds that it is vague or ambiguous, state: (i) the portions or terms of such Request that you claim to be vague or ambiguous; and (ii) the interpretation of the Request pursuant to which you provide a response.

3.      Each request shall be deemed continuing, so as to require supplemental or mandatory responses should you obtain additional responsive information subsequent to your initial responses.

4.      If you cannot fully respond to a particular Request after exercising due diligence to make inquiry and to secure the necessary information, provide a response to the extent possible, specifying your inability to respond to the remainder and providing whatever information or knowledge you have concerning the portion not responded to.

5.      Each page of a produced document shall have a legible, unique page identifier ("Bates Number") and confidentiality legend (where applicable) on the face of the image at a location that does not obliterate, conceal, or interfere with any information from the source document.  Redactions should be clearly marked or stamped on the page in such a way that it is clear from review that a portion of the image has been redacted.

6.      All responsive and non-privileged electronic documents shall be produced in the format ordered by the Court in its ESI order.

7.      All responsive electronic documents shall be produced in a format agreed upon by the parties, to include at least native versions of Excel spreadsheets and presentation files, with a Bates-stamped placeholder image.

8.      Unless otherwise specified, the time period for these Requests is January 1, 2012 to the date of production of the Documents.

## ATTACHMENT A

1. Research, investigations, studies, surveys, reports, evaluations, or analyses concerning the mental, social, emotional, or behavioral health of persons ages 13 to 18.

2. Research, investigations, studies, surveys, reports, evaluations, or analyses related to Social Media Platforms, including the importance of Social Media Platforms and the use of Social Media Platforms by Young Users and the potential benefits and harms created by the use of Social Media Platforms.

3. Research, investigations, studies, surveys, reports, evaluations, or analyses concerning the mental, social, emotional, or behavioral health of Young Users, including those related to the effects of:
    a. Social Media Platforms usage;
    b. Video games usage;
    c. Cell phone usage;
    d. Messaging usage;
    e. Usage of other electronics apart from usage of Social Media Platforms;
    f. COVID-19 and/or remote learning;
    g. Use of drugs or alcohol;
    h. The opioid and fentanyl epidemic;
    i. Poverty, homelessness, lack of health insurance, and/or food insecurity;
    j. Physical health including nutrition, exercise, weight management, sleeping habits, and sexual activity;
    k. Family trauma or deaths;
    l. Academic pressure;
    m. Violence, including school violence, domestic violence, gun violence, gun control and/or mass shootings;
    n. Bullying or verbal abuse apart from usage of Social Media Platforms;
    o. Political polarization;
    p. Natural disasters;
    q. Climate change;
    r. Discrimination and inequity;
    s. Global warfare and conflict; and
    t. Any other potential causes of harms to the mental, social, emotional, or behavioral health of Young Users.

4. Youth Risk Behavior Surveys conducted by the Idaho Health & Welfare Department or on its behalf.

5. Research, investigations, studies, surveys, reports, evaluations, or analyses related to:
    a. Features of Social Media Platforms that are psychologically or physically harmful to Young Users;
    b. Features of Social Media Platforms that promote compulsive, prolonged, or unhealthy use by Young Users;
    c. The impact of features of Social Media Platforms, including:

      (1) Algorithmic recommendation and sequencing;
      (2) Image filters;
      (3) Use of multiple user accounts;
      (4) Infinite scroll;
      (5) Ephemeral content features;
      (6) Autoplay;
      (7) Quantification and display of likes; or
      (8) Audiovisual and haptic alerts.

6. Programs, initiatives, efforts, or actions proposed or taken by the Idaho Health & Welfare Department to address Young Users' use of Social Media Platforms, including any program, initiative, effort, or action to prevent, limit, encourage, or promote the use of Social Media Platforms by Young Users.

7. Policies proposed, recommended, or enacted by the Idaho Health & Welfare Department regarding screen time and acceptable use of cell phones, computers, tablets, or other electronic devices by Young Users.

8. Complaints to the Idaho Health & Welfare Department by teachers or school districts regarding social media or cell phone use by Young Users and/or the need for acceptable use or other policies to address Young Users' use of social media or cell phones.

9. Complaints to the Idaho Health & Welfare Department by teachers or school districts regarding budget crises from inflation, underfunding, unfunded mandates, and other causes.

10. Documents related to state assessments in Idaho, including reports and analyses regarding the history of K-12 state assessment or standardized testing scores, performance by schools and/or school districts, and any other measures of school performance.

11. Legislation or policies proposed by, proposed on behalf of, or testified on by the Idaho Health & Welfare Department, regardless of whether such legislation or policies were enacted, regarding Young Users' use of Social Media Platforms.

12. Mental, social, emotional, or behavioral health services provided by the Idaho Health & Welfare Department to Young Users during the Relevant Period, including:
      a. Counseling or therapy;
      b. Psychiatric services;
      c. Crisis intervention;
      d. Inpatient short-term and long-term programs;
      e. Resource centers; and
      f. Services for Young Users dealing with substance abuse or addiction issues.

13. Any and all Idaho Health & Welfare Department grants to address Young Users' mental health, including information about when, where, why, and how any disbursements were paid, any schedules or plans for future disbursements, policies governing evaluation or

approval of such disbursements, records of how the disbursements were used, and all agendas, minutes, notes, or recordings from meetings related to such grant.

14. Public or non-public meetings held by the Idaho Health & Welfare Department related to Social Media Platforms and use of Social Media Platforms by Young Users, including but not limited to, notices, meeting notes, PowerPoint presentations, internal memoranda, summaries, personal notes, or attendee lists.

15. Policies, procedures, and practices related to the Idaho Health & Welfare Department's use of Social Media Platforms, including communication of information or promotion of Idaho Health & Welfare Department's programs, initiatives, efforts, or actions on Social Media Platforms.

16. Idaho Health & Welfare Department's communications and/or collaboration with any Social Media Platform on any program, initiative or other action related to, or directed at, Young Users.

17. Idaho Health & Welfare Department's communications with any third party related to Young Users and/or Social Media Platforms.

18. Budgeted and actual expenditures by the Idaho Health & Welfare Department during the Relevant Period related to Young Users' use of Social Media Platforms.

19. Budgeted and actual expenditures by the Idaho Health & Welfare Department during the Relevant Period related to treatment of teen mental, social, emotional, or behavioral health issues.

20. Policies, procedures, and practices applicable to the Idaho Health & Welfare Department and Idaho Health & Welfare Department employees regarding the use of Social Media Platforms, including any changes to these policies during the Relevant Period.

21. Studies, programs, initiatives, efforts, or actions proposed or taken by the Idaho Health & Welfare Department that sought to provide or promote internet access or phones, computers, tablets, or other electronic devices to Young Users.

22. Idaho Health & Welfare Department's budget and actual expenditures during the Relevant Period, including expenditures on:
    a. Digital advertisements by the Idaho Health & Welfare Department on Social Media Platforms;
    b. Digital advertisements by the Idaho Health & Welfare Department purchased through Social Media Platforms.

**ATTACHMENT B**

# IN THE UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: *Social Media Adolescent Addiction/Personal Injury Products Liability Litigation*<br><br>This document relates to:<br>ALL ACTIONS | MDL No. 3047<br>Case No. 4:22-md-03047-YGR<br><br>Honorable Yvonne Gonzalez Rogers<br>Honorable Peter H. Kang<br><br>**STIPULATION AND [PROPOSED] ORDER GOVERNING THE PRODUCTION OF ELECTRONICALLY STORED INFORMATION AND HARD COPY DOCUMENTS** |

## 1.   PURPOSE

This Order Governing the Production of Electronically Stored Information and Hard Copy Documents ("ESI Order") will govern discovery of electronically stored information and any hard copy documents in this Litigation as a supplement to the Federal Rules of Civil Procedure, this District's Guidelines for the Discovery of Electronically Stored Information, and any other applicable orders and rules. "This Litigation" includes all actions currently in MDL No. 3047, *In Re: Social Media Adolescent Addiction/Personal Injury Products Liability*, or hereafter added or transferred to MDL No. 3047, and all actions later remanded to their respective transferor courts.

## 2.   DEFINITIONS

a)   "Document" is defined to be synonymous in meaning and equal in scope to the usage of this term in Rules 26 and 34 of the Federal Rules of Civil Procedure and shall include Hard-Copy Documents and ESI.

b) "Electronically stored information" or "ESI," as used herein has the same meaning as in Federal Rules of Civil Procedure 26 and 34.

c) "Hard-Copy Document" means Documents existing in paper form at the time of collection.

d) "Searchable Text" means the native text extracted from an Electronic Document and any Optical Character Recognition text ("OCR text") generated from a Hard-Copy Document or electronic image.

**3.      COOPERATION**

The Parties are aware of the importance the Court places on cooperation and commit to cooperate in good faith throughout this Litigation consistent with this Court's Guidelines for the Discovery of ESI and this Court's Rules of Professional Conduct. The Parties will endeavor to cooperate in good faith and be reasonably transparent in all aspects of the discovery process.

**4.      LIAISON**

The Parties will identify Discovery Liaisons to each other who are and will be knowledgeable about and responsible for discussing their respective ESI.  Any Party is free to change their designated Discovery Liaison by providing written notice to the other Parties. Each Party's Discovery Liaison must: (a) be prepared to meet and confer on discovery-related matters and to participate in discovery dispute resolution; (b) be knowledgeable about the Party's discovery efforts; (c) be, or have reasonable access to those who are, familiar with the Party's electronic systems and capabilities in order to explain those systems and answer relevant questions; and (d) be, or have reasonable access to those who are knowledgeable about the technical aspects of discovery, including electronic document storage, organization, and format issues, and relevant information retrieval technology, including search methodology.

**5.      IDENTIFICATION OF CUSTODIANS AND DATA SOURCES**

The parties will disclose information about custodians and custodial and non-custodial data sources likely to possess relevant or responsive information in accordance with Fed. R. Civ. P. 26 and this District's ESI Guidelines. The Parties will participate in Rule 26(f) discussions guided by this District's Checklist for Rule 26(f) Meet and Confer Regarding Electronically

1 Stored Information. After responses to Requests for Production under Fed. R. Civ. P. 34 have

2 been served, the parties will meet and confer regarding those custodians and custodial and non-

3 custodial data sources from which Documents and ESI will be collected for search and review for

4 potential production in this litigation. The custodian and data source exchanges will include brief

5 explanations of the rationale for their selections; for example, for custodians, their current job

6 titles and descriptions of their work, and for data sources, location information and description.

### 6. INACCESSIBLE OR UNUSABLE ESI

8 If a Producing Party asserts that certain requested ESI is inaccessible or not "reasonably

9 accessible," otherwise unnecessary, or if the Receiving Party asserts that, following production,

10 certain ESI is not reasonably useable, the parties shall meet and confer to discuss resolving such

11 assertions. The parties will exchange sufficient information to enable the parties to confer in good

12 faith. If the parties cannot resolve any such disputes after such a meet and confer has taken place,

13 the issue shall be presented to the Court for resolution.

### 7. KNOWN RESPONSIVE DOCUMENTS

15 Documents or ESI identified in a custodial or non-custodial file, or in a discrete folder or

16 collection, that are known to a Producing Party through reasonable investigation to be responsive

17 to a discovery request shall be collected for review without regard to whether the responsive

18 content was located via any search methodology developed in accordance with this Order, and

19 nothing about such review shall prevent the Producing Party from redacting or withholding and

20 logging such documents for applicable privileges.

### 8. SEARCH METHODOLOGIES

22 The Parties shall adopt reasonable and proportionate methodologies to identify, search,

23 collect, cull, review, and produce ESI as required under applicable legal standards. The Parties

24 recognize and agree that each Party may use one or more methodologies to identify, search,

25 collect, cull, review, and produce responsive and non-privileged ESI, including the use of

26 keyword search terms and/or the use of technology assisted review ("TAR") as discussed further

27 herein. The Parties further recognize that different data sets may implicate different

28 methodologies to identify, search, collect, cull, review, and produce responsive and non-

1  privileged ESI. The Parties therefore agree to meet and confer in good faith regarding any

2  potential disputes over their respective ESI productions.

3  **9.     HIT REPORTS AND SEARCH TERMS**

4          If a Producing Party uses search terms to identify, search, or cull potentially responsive

5  ESI, the Producing Party shall disclose the search terms to the Requesting Party. The Parties shall

6  meet and confer regarding any disputes over the disclosed search terms. In the event that a

7  Producing Party claims burden with respect to modified and/or additional search terms proposed

8  by a Requesting Party, the Producing Party shall provide a hit report for the terms at issue using

9  industry-standard processing tools, such as NUIX or other similar tools. The Producing Party

10  shall provide a hit report for the document collection where the terms were applied, including the

11  following with respect to each proposed or modified search term in the collection:

12          a)  The number of documents with hits for that term; and

13          b)  The number of unique documents, i.e., documents which do not have hits for any other

14             term.

15          If, after reviewing a hit report from a Producing Party, a Requesting Party so chooses, it

16  may reasonably request a further hit report which includes:

17          c)  The number of family members, including the documents with hits, of the documents

18             with hits for that term; and

19          d)  The number of unique family members of the documents with hits for that term.

20          If the ESI tool for the Producing Party is capable without undue burden of providing the

21  number of family members and unique family members, then the Producing Party shall provide

22  such further hit report. The Parties (including the person most knowledgeable about the

23  capabilities of the Producing Party's ESI tool and the Requesting Party's person most

24  knowledgeable about technical issues from its ESI service provider) shall meet and confer

25  regarding any disputes over whether the Producing Party's ESI tool has the capability or not to

26  provider either number of family members or number of unique family members.

27          The Parties shall meet and confer to resolve disagreements over the search terms or their

28  application. To the extent the Parties are unable to reach agreement on the application of, or

1   procedures for, any search or filtering processes, the Parties shall fully comply with the

2   provisions of this Court's Discovery Standing Order regarding the procedure for raising discovery

3   disputes with the Court, including the meet and confer and certification requirements therein.

4       **10.    TECHNOLOGY ASSISTED REVIEW (TAR)**

5       A Producing Party may use TAR (technology-assisted review) during the culling and

6   review process of ESI, which may be applied in addition to search terms. If a Producing Party

7   uses TAR to cull, filter out, or exclude documents from that Party's production, that Producing

8   Party shall do the following:

9       • If a Producing Party chooses to apply both search terms and TAR to a review set,

10      the Producing Party will disclose the search terms to all other Party/Parties.

11      • Disclose the name of the TAR tool or service used to all other Party/Parties.

12      **11.    VALIDATION**

13      Each Producing Party shall take reasonable steps to validate its review process (i.e., using

14  quality control measures to determine whether its production is missing relevant ESI or contains

15  substantial amounts of irrelevant ESI) and make any necessary adjustments or corrections to its

16  process. If, after reviewing a Producing Party's production, a Requesting Party reasonably

17  requests additional information regarding the validation method(s) used by the Producing Party,

18  the Producing Party will disclose the level of end-to-end recall (the percentage of responsive

19  Documents in the collection which were identified as responsive by that Producing Party's

20  methodology). If there remain disputes between the Parties regarding validation, the Parties shall

21  meet and confer to resolve such disputes in good faith, including a reasonable discussion

22  regarding the tool used and the parameters used to obtain or calculate the level of recall.

23      **12.    UNSEARCHABLE DOCUMENTS**

24      The Producing Party shall use reasonable efforts to identify and review potentially

25  responsive documents for which text-based search technologies are fundamentally ineffective.

26      **13.    SYSTEM FILES**

27      Each Party will use its best efforts to filter out common system files and application

28  executable files using the national software reference library ("NSRL") NIST hash set list. The

Parties also may filter out stand-alone files identified as zero bytes in size. Additional culling of file types based on file header information may be applied to the following, provided these files are not known to be otherwise attached, embedded in, or included with an otherwise responsive document, or are not themselves reasonably known to contain information responsive or contain responsive data or are used to interface with users or interact with or access individual or aggregated user data: Application Package File, Backup Files, Batch Files, Binary Disc Image, C++ File Formats, Cascading Style Sheet, Configuration File, Database File, Dictionary Files, Dynamic Link Library, Event Log Files, Executable Files, Hypertext Cascading Stylesheet, Java Archive Files, JavaScript Files, JavaScript Source Code and Class Files, Macintosh Resource Fork Files, Package Manager Files, Program Files, Program Installers, Python Script Files, Shell Script Files, System or Temporary Files, Thumbnail Cache Files, Troff Files, Truetype Font Files, Windows Cabinet File, Windows Command Files, Windows File Shortcut, Windows Help Files, Windows Metafiles and Enhanced Metafiles, Windows Spool Files, Windows System File.

## 14.   DEDUPLICATION

Each Producing Party shall make reasonable efforts to globally deduplicate exact duplicate Documents within that Producing Party's ESI data set across all custodial and non-custodial sources at the family level using either MD5 hash values or SHA hash values or any other agreed-upon (and disclosed) industry-standard deduplication technology. The Parties shall reach agreement on such other deduplication technology and shall reach agreement on how their deduplication tools shall identify exact duplicates of documents in a manner that is consistent with the disclosed tools and technologies a Producing Party is using. The Parties shall reach agreement on how to identify exact duplicates of emails using industry-standard commercially available software tools or services, which may for example calculate hash values of emails based on concatenated values of agreed-upon email fields and/or hash values of attachments, or which may use any other method the Parties agree upon. Having further met and conferred in keeping with the previous sentence, the Parties shall calculate deduplication hash values for emails on the concatenated values set forth in and in accordance with the documentation specifications of the disclosed deduplication tools to be used in this Litigation (i.e., RelativityOne, Relativity Server,

and Nuix); however, if Nuix is used, the Producing Party shall select the optional field "Include Bcc" as an additional field to add to the default ones.

The Parties shall not withhold from production near-duplicates without meeting and conferring on this issue.

The names of all custodians who were either identified as custodians for purposes of collection for this matter (or otherwise known by the Producing Party to have been in possession or custody of a document prior to deduplication) will be populated in the ALL CUSTODIANS metadata field for the produced version of a document that has duplicates removed from production. The original file paths (if any exist) of a document prior to deduplication will be populated in the ALL FILE PATHS metadata field of the produced document.

## 15. EMAIL THREADING

The Parties may use analytics technology to identify email threads and shall produce the unique most inclusive copy and related family members. Where multiple email messages are part of a single chain or "thread," a Party is only required to produce the most inclusive copy of an email message(s) ("Last In Time Email(s)") and need not produce earlier, lesser inclusive email messages or "thread members," provided that the tool or software service being used to perform threading is disclosed. A Producing Party may exclude from production lesser inclusive copies of the most inclusive email message in the thread, where the entire body of each of those lesser inclusive copies is included within the Last in Time Email. The Producing Party will honor reasonable requests to produce lesser inclusive copies of a Last In Time Email or other earlier chains of emails otherwise excluded by email thread suppression.

The Parties shall treat new or different email chains or threads pursuant to further agreement on safeguards or guidelines for defining emails threads which reasonably take into account the capabilities of the email threading/dethreading/hyperthreading tools used by each Defendant (which shall be disclosed to Plaintiffs).

## 16. SOURCE CODE

The Parties will meet and confer to address the production and/or inspection of source code and entering into a separate order governing the same if needed.

17. **PRODUCTION FORMATS**

The Parties agree to produce documents and data in the formats described in **Appendix 1** to this ESI Order. If particular documents or categories of documents identified in response to document requests warrant a different format, the Parties will cooperate to arrange for the mutually acceptable production of such documents. The Parties further agree not to degrade the searchability of documents as part of the document production process.

In addition, the Parties agree that the production and production format of social media and/or user account information is not covered by this agreement and to meet and confer on the production and production format, including metadata, for social media and/or user account information.

18. **PHASING**

Once the Parties begin propounding discovery requests pursuant to Fed. R. Civ. P. 34, the Parties agree to meet and confer regarding appropriate phasing for the production of ESI.

19. **MISCELLANEOUS PROVISIONS**

   a) **Production of Plaintiffs ESI and Case-Specific Materials**.  Subject to any further agreement among the Parties or Order of the Court, the Parties shall produce case-specific documents (i.e., documents specific to the claim of a given Plaintiff, produced by Plaintiffs or Defendants) for any Plaintiff in discovery pools or other selections designed to inform bellwether selection, including those selected for a bellwether trial, in accordance with the production format specified herein, provided, however, that the Producing Party may elect to produce such materials in their native format. To the extent production of case-specific documents for any Plaintiff selected for a bellwether trial presents an issue for any Party, the Parties shall reasonably confer, and may present any disputes to the Court or its designee.  The Parties shall further agree to confer concerning the production format and associated matters (*e.g.*, hosting platform) for case-specific documents produced in the cases of other Plaintiffs. Nothing herein shall limit Defendant's right to seek discovery from any Plaintiff.

   b) **Translations Of Produced Materials**.  The Producing Party has no obligation to

1    create a translation of the Documents or any portion thereof. For any foreign-language

2    documents responsive to document requests that a Party reasonably knows as the

3    result of a reasonable investigation have been translated into the English language

4    using human translators or through machine translation for its own purposes, except to

5    the extent such translation is protected by attorney-client or work-product privileges,

6    the Producing Party shall produce the translation of the original document with the

7    original. The parties will meet and confer as necessary concerning procedures for

8    using translations at depositions and at trial. In the event the Parties cannot reach

9    agreement, the matter may be submitted to the Court for determination.

10    c)    **Third-Party Documents**.  A Party that issues a Non-Party subpoena ("Issuing Party")

11    shall include a copy of this Order with the subpoena and state that (1) the subpoenaed

12    Non-Party should produce Documents in response to the subpoena to all Parties; and

13    (2) the Parties to this Litigation have requested that Third Parties produce Documents

14    in accordance with the specifications set forth herein. If the subpoenaed Non-Party

15    produces Documents to the Issuing Party but does not produce those Documents to

16    other Parties, the Issuing Party shall produce such Documents to those other Parties

17    within 14 days of receiving the Documents, except where the Documents are to be

18    used in a deposition, in which case the Issuing Party shall produce such Documents to

19    all other Parties no later than three (3) days prior to the deposition, or as soon as

20    reasonably practicable if such production occurs thereafter. Nothing in this Order is

21    intended or may be interpreted to narrow, expand, or otherwise affect the rights of the

22    Parties or Third Parties to object to a subpoena. If the Non-Party production is not

23    Bates-stamped, the Parties will meet and confer to agree upon a format for designating

24    the documents with a unique Bates Number prefix.

25    d)    **Documents Produced by Parties – Presumption of Authenticity**.  In order to reduce

26    the number of requests for admission, this Order establishes a rebuttable presumption

27    that documents produced by the Parties are authentic, if said documents were either

28    created or authored by the producing Party, or any of its employees, agents, or

contractors, so long as the employees', agents', or contractors' work was performed in connection with a project or assignment sponsored by the producing Party. No further evidence to establish authenticity need be provided. Nothing in this paragraph shall be deemed to waive any other evidentiary objection a party may have, including but not limited to hearsay, foundation/personal knowledge, or relevance.

e) **Re-productions.** Notwithstanding any provisions to the contrary, re-production of discrete sets of documents from another litigation, arbitration, government inquiry, or other matter may be re-produced in the same manner and form as originally produced in the other matter, provided however that a party will re-produce documents in a different format for good cause shown. This provision does not waive the right of a party to object to any requests for reproduction of production files from another litigation, arbitration, government inquiry, or other matter.

f) **Modification**. This ESI Order may be modified by a Stipulated Order of the Parties or by the Court for good cause shown.

g) **Good Faith**. The Parties will act in good faith as required by law and use these procedures to identify and reduce the potential for disputes.

h) **Continuing Obligations**. The Parties recognize that discovery shall be an iterative and cooperative process. The Parties will continue to meet and confer regarding any issues as reasonably necessary and appropriate. This Order does not address or resolve any objections to the Parties' respective discovery requests.

i) **Reservation of Rights**. The Parties agree that any topic not addressed herein is neither a waiver nor acknowledgement of agreement by either Party.

**IT IS SO STIPULATED**, through Counsel of Record.

1    DATED: March 15, 2024            Respectfully submitted,

2                                  */s/ Lexi J. Hazam*

3                                  LEXI J. HAZAM
**LIEFF CABRASER HEIMANN &
BERNSTEIN, LLP**

4                                  275 BATTERY STREET, 29TH FLOOR

5                                  SAN FRANCISCO, CA 94111-3339
Telephone: 415-956-1000

6                                  lhazam@lchb.com

7

8                                  PREVIN WARREN
**MOTLEY RICE LLC**

9                                  401 9th Street NW Suite 630
Washington DC 20004

10                                 T: 202-386-9610

11                                 pwarren@motleyrice.com

12                               Co-Lead Counsel

13                                CHRISTOPHER A. SEEGER
**SEEGER WEISS, LLP**

14                               55 CHALLENGER ROAD, 6TH FLOOR

15                               RIDGEFIELD PARK, NJ 07660
Telephone: 973-639-9100

16                               Facsimile: 973-679-8656

17                               cseeger@seegerweiss.com

18                             Counsel to Co-Lead Counsel

19                               JENNIE LEE ANDERSON
**ANDRUS ANDERSON, LLP**

20                             155 MONTGOMERY STREET, SUITE 900
SAN FRANCISCO, CA 94104

21                             Telephone: 415-986-1400

22                             jennie@andrusanderson.com

23                             Liaison Counsel

24                             MATTHEW BERGMAN
GLENN DRAPER

25                             **SOCIAL MEDIA VICTIMS LAW CENTER**

26                           821 SECOND AVENUE, SUITE 2100
SEATTLE, WA 98104

27                           Telephone: 206-741-4862
matt@socialmediavictims.org

28                           glenn@socialmediavictims.org

1    JAMES J. BILSBORROW
2    **WEITZ & LUXENBERG, PC**
     700 BROADWAY
3    NEW YORK, NY 10003
     Telephone: 212-558-5500
4    Facsimile: 212-344-5461
     jbilsborrow@weitzlux.com
5    PAIGE BOLDT
6    **WATTS GUERRA LLP**
     4 Dominion Drive, Bldg. 3, Suite 100
7    San Antonio, TX 78257
     T: 210-448-0500
8    PBoldt@WattsGuerra.com

9    THOMAS P. CARTMELL
10   **WAGSTAFF & CARTMELL LLP**
     4740 Grand Avenue, Suite 300
11   Kansas City, MO 64112
     T: 816-701 1100
12   tcartmell@wcllp.com

13   JAYNE CONROY
14   **SIMMONS HANLY CONROY, LLC**
     112 MADISON AVE, 7TH FLOOR
15   NEW YORK, NY 10016
     Telephone: 917-882-5522
16   jconroy@simmonsfirm.com
     CARRIE GOLDBERG
17   **C.A. GOLDBERG, PLLC**
18   16 Court St.
     Brooklyn, NY 11241
19   T: (646) 666-8908
     carrie@cagoldberglaw.com
20
     SIN-TING MARY LIU
21   **AYLSTOCK WITKIN KREIS &**
22   **OVERHOLTZ, PLLC**
     17 EAST MAIN STREET, SUITE 200
23   PENSACOLA, FL 32502
     Telephone: 510-698-9566
24   mliu@awkolaw.com
25
     ANDRE MURA
26   **GIBBS LAW GROUP, LLP**
     1111 BROADWAY, SUITE 2100
27   OAKLAND, CA 94607
     Telephone: 510-350-9717
28   amm@classlawgroup.com

EMMIE PAULOS
**LEVIN PAPANTONIO RAFFERTY**
316 SOUTH BAYLEN STREET, SUITE 600
PENSACOLA, FL 32502
Telephone: 850-435-7107
epaulos@levinlaw.com

ROLAND TELLIS
DAVID FERNANDES
**BARON & BUDD, P.C.**
15910 Ventura Boulevard, Suite 1600
Encino, CA 91436
Telephone: (818) 839-2333
Facsimile: (818) 986-9698
rtellis@baronbudd.com
dfernandes@baronbudd.com

ALEXANDRA WALSH
**WALSH LAW**
1050 Connecticut Ave, NW, Suite 500
Washington D.C. 20036
T: 202-780-3014
awalsh@alexwalshlaw.com

MICHAEL M. WEINKOWITZ
**LEVIN SEDRAN & BERMAN, LLP**
510 WALNUT STREET
SUITE 500
PHILADELPHIA, PA 19106
Telephone: 215-592-1500
mweinkowitz@lfsbalw.com

DIANDRA "FU" DEBROSSE ZIMMERMANN
**DICELLO LEVITT**
505 20th St North
Suite 1500
Birmingham, Alabama 35203
Telephone: 205.855.5700
fu@dicellolevitt.com

HILLARY NAPPI
**HACH & ROSE LLP**
112 Madison Avenue, 10th Floor
New York, New York 10016
Tel: 212.213.8311
hnappi@hrsclaw.com

JAMES MARSH
**MARSH LAW FIRM PLLC**
31 HUDSON YARDS, 11TH FLOOR
NEW YORK, NY 10001-2170
Telephone: 212-372-3030
jamesmarsh@marshlaw.com

*Attorneys for Individual Plaintiffs*

**ROB BONTA**
Attorney General
State of California

   */s/ Megan O'Neill*
Nick A. Akers (CA SBN 211222)
Senior Assistant Attorney General
Bernard Eskandari (SBN 244395)
Supervising Deputy Attorney General
Megan O'Neill (CA SBN 343535)
Joshua Olszewski-Jubelirer
(CA SBN 336428)
Marissa Roy (CA SBN 318773)
Deputy Attorneys General
California Department of Justice
Office of the Attorney General
455 Golden Gate Ave., Suite 11000
San Francisco, CA 94102-7004
Phone: (415) 510-4400
Fax: (415) 703-5480
Bernard.Eskandari@doj.ca.gov

*Attorneys for Plaintiff the People of the State of California*

1

2 **RUSSELL COLEMAN**
Attorney General
3 Commonwealth of Kentucky

4 */s/ J. Christian Lewis*
J. Christian Lewis (KY Bar No. 87109),
5 *Pro hac vice*
Philip Heleringer (KY Bar No. 96748),
6 *Pro hac vice*
Zachary Richards (KY Bar No. 99209),
7 *Pro hac vice app. forthcoming*
Daniel I. Keiser (KY Bar No. 100264),
8 *Pro hac vice*
Matthew Cocanougher (KY Bar No. 94292),
9 *Pro hac vice*
Assistant Attorneys General
10 1024 Capital Center Drive, Suite 200
Frankfort, KY 40601
11 CHRISTIAN.LEWIS@KY.GOV
PHILIP.HELERINGER@KY.GOV
12 ZACH.RICHARDS@KY.GOV
DANIEL.KEISER@KY.GOV
13 MATTHEW.COCANOUGHER@KY.GOV
Phone: (502) 696-5300
14 Fax: (502) 564-2698

15 *Attorneys for Plaintiff the Commonwealth of*
16 *Kentucky*

17

18

19

20

21

22

23

24

25

26

27

28

COVINGTON & BURLING LLP

By: */s/ Ashley M. Simonsen*
Ashley M. Simonsen, SBN 275203
COVINGTON & BURLING LLP
1999 Avenue of the Stars
Los Angeles, CA 90067
Telephone: (424) 332-4800
Facsimile: + 1 (424) 332-4749
Email: asimonsen@cov.com

Phyllis A. Jones, *pro hac vice*
Paul W. Schmidt, *pro hac vice*
COVINGTON & BURLING LLP
One City Center
850 Tenth Street, NW
Washington, DC 20001-4956
Telephone: + 1 (202) 662-6000
Facsimile: + 1 (202) 662-6291
Email: pajones@cov.com

*Attorney for Defendants Meta Platforms, Inc. f/k/a Facebook, Inc.; Facebook Holdings, LLC; Facebook Operations, LLC; Facebook Payments, Inc.; Facebook Technologies, LLC; Instagram, LLC; Siculus, Inc.; and Mark Elliot Zuckerberg*

FAEGRE DRINKER LLP
*By: /s/ Andrea Roberts Pierson*
Andrea Roberts Pierson, pro hac vice
FAEGRE DRINKER LLP
300 N. Meridian Street, Suite 2500
Indianapolis, IN 46204
Telephone: + 1 (317) 237-0300
Facsimile: + 1 (317) 237-1000
Email: andrea.pierson@faegredrinker.com

Amy R. Fiterman, pro hac vice
FAEGRE DRINKER LLP
2200 Wells Fargo Center
90 South Seventh Street
Minneapolis MN 55402
Telephone: +1 (612) 766 7768
Facsimile: + 1 (612) 766 1600
Email: amy.fiterman@faegredrinker.com

Geoffrey M. Drake, pro hac vice

KING & SPALDING LLP
1180 Peachtree Street, NE, Suite 1600
Atlanta, GA  30309
Telephone: +1 (404) 572 4726
Email: gdrake@kslaw.com

David P. Mattern, pro hac vice
KING & SPALDING LLP
1700 Pennsylvania Avenue, NW, Suite 900
Washington, D.C.  20006
Telephone: +1 (202) 626 2946
Email: dmattern@kslaw.com

*Attorneys for Defendants TikTok Inc. and ByteDance Inc.*

MUNGER, TOLLES & OLSEN LLP
By: */s/ Jonathan H. Blavin*
Jonathan H. Blavin, SBN 230269
MUNGER, TOLLES & OLSON LLP
560 Mission Street, 27th Floor
San Francisco, CA 94105-3089
Telephone: (415) 512-4000
Facsimile: (415) 512-4077
Email: jonathan.blavin@mto.com

Rose L. Ehler (SBN 29652)
Victoria A. Degtyareva (SBN 284199)
Laura M. Lopez, (SBN 313450)
Ariel T. Teshuva (SBN 324238)
MUNGER, TOLLES & OLSON LLP
350 South Grand Avenue, 50th Floor
Los Angeles, CA 90071-3426
Telephone: (213) 683-9100
Facsimile: (213) 687-3702
Email: rose.ehler@mto.com
Email: victoria.degtyareva@mto.com
Email: Ariel.Teshuva@mto.com

Lauren A. Bell (*pro hac vice forthcoming*)
MUNGER, TOLLES & OLSON LLP
601 Massachusetts Ave., NW St.,
Suite 500 E
Washington, D.C. 20001-5369
Telephone: (202) 220-1100
Facsimile: (202) 220-2300
Email: lauren.bell@mto.com

*Attorneys for Defendant Snap Inc.*

WILSON SONSINI GOODRICH & ROSATI
Professional Corporation
By: */s/ Brian M. Willen*
Brian M. Willen (*pro hac vice*)
WILSON SONSINI GOODRICH & ROSATI
1301 Avenue of the Americas, 40th Floor
New York, New York 10019
Telephone: (212) 999-5800
Facsimile: (212) 999-5899
Email: bwillen@wsgr.com

Lauren Gallo White
Samantha A. Machock
WILSON SONSINI GOODRICH & ROSATI
One Market Plaza, Spear Tower, Suite 3300
San Francisco, CA 94105
Telephone: (415) 947-2000
Facsimile: (415) 947-2099
Email: lwhite@wsgr.com
Email: smachock@wsgr.com

Christopher Chiou
WILSON SONSINI GOODRICH & ROSATI
953 East Third Street, Suite 100
Los Angeles, CA 90013
Telephone:  (323) 210-2900
Facsimile:  (866) 974-7329
Email: cchiou@wsgr.com

*Attorneys for Defendants YouTube, LLC, Google LLC, and Alphabet Inc.*

WILLIAMS & CONNOLLY LLP
By: */s/ Joseph G. Petrosinelli*
Joseph G. Petrosinelli (*pro hac vice*)
jpetrosinelli@wc.com
Ashley W. Hardin (*pro hac vice*)
ahardin@wc.com
680 Maine Avenue, SW
Washington, DC 20024
Telephone.: 202-434-5000
Fax: 202-434-5029

*Attorneys for Defendants YouTube, LLC, Google LLC, and Alphabet Inc.*

MORGAN, LEWIS & BOCKIUS LLP
By: */s/ Stephanie Schuster*
Stephanie Schuster (*pro hac vice*)
stephanie.schuster@morganlewis.com
1111 Pennsylvania Avenue NW
NW Washington, DC 20004-2541
Tel.: 202.373.6595

Yardena R. Zwang-Weissman (SBN 247111)
yardena.zwang-weissman@morganlewis.com
300 South Grand Avenue, 22nd Floor
Los Angeles, CA 90071-3132
Tel.: 213.612.7238

Brian Ercole (*pro hac vice*)
brian.ercole@morganlewis.com
600 Brickell Avenue, Suite 1600
Miami, FL 33131-3075
Tel.: 305.415.3416

*Attorneys for Defendants YouTube, LLC and*
*Google LLC*

**IT IS ORDERED** that the foregoing Agreement is approved.

Dated: _____ March 18, 2024 _____     _____

MAGISTRATE JUDGE PETER H.  KANG

**APPENDIX 1: PRODUCTION FORMAT**

1)  **Production Components.** Except as otherwise provided below, ESI must be produced in accordance with the following specifications:

    a)  an ASCII delimited data file (.DAT) using standard delimiters;

    b)  an image load file (.OPT) that can be loaded into commercially acceptable production software (*e.g.* Concordance);

    c)  single page black-and-white TIFF images, or JPEG images when color is specified herein, or native files with single page placeholder TIFF images depending on the applicable production format for each type of file;

    d)  and document level .TXT files for all documents containing extracted full text or OCR text.

    e)  Family relationships between emails and their attachments, embedded files and their source document, and connected hardcopy documents will be maintained in production. Attachments should be consecutively produced with their parent.

    f)  If a particular document warrants a different production format, the Parties will cooperate in good faith to arrange for a mutually acceptable production format.

2)  **Production Media and Access Controls.** Productions must be encrypted and produced through secure electronic means, such as secure file sharing methods (*e.g.* FTP), or on CD, DVD, flash drive or external hard drive ("Production Media"). Each piece of Production Media must identify a production number corresponding to the production volume (*e.g.* "VOL001"). Each piece of Production Media must also identify: (a) the case caption; (b) the following label: "This media contains material subject to Court Ordered security measures"; (c) the Producing Party's name; (d) the production date; (e) the Bates Number range of the materials contained on the Production Media.

Nothing in this ESI Order will preclude or impair any and all protections provided the Parties by any Protective Order(s) agreed and entered into by the Parties. Parties will use best efforts to avoid the unnecessary copying or transmittal of produced documents. If questions arise, the Parties will meet and confer to ensure security concerns are addressed prior to the exchange of

any documents.

**3)** **Data Load Files/Image Load Files.** Each TIFF in a production must be referenced in the corresponding image load file. The total number of documents referenced in a production's data load file should match the total number of designated document breaks in the image load file(s) in the production. The total number of pages referenced in a production's image load file should match the total number of TIFF files in the production. All images must be assigned a unique Bates number that is sequential within a given document and across the production sets. The Bates Numbers in the image load file must match the corresponding documents' beginning Bates numbers in the data load file. The total number of documents in a production should match the total number of records in the data load file. Load files must not vary in format or structure within a production, or from one production to another except by agreement of the Parties.

**4)** **Metadata Fields.** Each of the metadata and coding fields set forth below that can be extracted should be produced for each document, except that if the field contains privileged information, that privileged information may be redacted. However, to the extent that metadata does not exist, is not available for any documents produced, this provision shall not be read to require any Party to extract, capture, collect, manually populate, or produce such metadata, with the exception of the following: (a) BEGBATES, (b) ENDBATES, (c) BEGATTACH, (d) ENDATTACH, (e) PRODVOL, (f) ALL CUSTODIANS, (g) CONFIDENTIALITY, (h) REDACTIONS, (i) REDACTION TYPE, (j) HASHVALUE, (k) NATIVEFILEPATH, and (l) TEXTFILEPATH, which should be populated by the Party or the Party's vendor. The Parties will make reasonable efforts to ensure that metadata fields automatically extracted from the documents correspond directly to the information that exists in the original documents.

| Field Name | Field Description |
|---|---|
| BEGBATES | Beginning Bates number for a particular document as stamped on the first production image for that document |
| ENDBATES | Ending Bates number as stamped on the last |

| Field Name | Field Description |
|---|---|
| | production image for a particular document |
| BEGATTACH | First production Bates number of the first document in a family |
| ENDATTACH | Last production Bates number of the last document in a family |
| ATTACHCOUNT | Number of attachments to an e-mail or embedded parent, as generated by commercially available discovery processing tools. |
| ATTACHNAMES | Names of each individual Attachment, separated by semicolons. |
| PRODVOL | Production volume |
| ALLCUSTODIANS | List of all custodians associated with Document, i.e. "Custodian" + "Other Custodian" values delimited by semicolon. |
| ALLFILEPATHS | All original path(s) to the individual source file(s) when available in the ordinary course of business to and processable by the parties and their ESI vendors of choice. Includes path up to and including internal path of containers. |
| CONFIDENTIALITY | Confidentiality designation assigned to the document consistent with the Stipulated Protective Order governing this Litigation |
| NATIVEFILEPATH | Native File Link (Native Files only) |
| TEXTFILEPATH | Path to extracted text/OCR file for the document |
| HASHVALUE | MD5 hash value of the document |
| DOCUMENT TYPE | Descriptor for the type of document: "E-document" for electronic documents not attached to e-mails; "E-mail" for all e-mails; "E-attachment" for files that were attachments to e-mails; and "Physical" for hard copy physical documents that have been scanned and converted to an electronic image. |
| AUTHOR | Any value populated in the Author field of the |

| Field Name | Field Description |
|---|---|
| | document properties |
| DOCDATE | Date the document was created according to filesystem information (format: MM/DD/YYYY) |
| DATELASTMODIFIED | Date when document was last modified according to filesystem information (format: MM/DD/YYYY) |
| LAST MODIFIED BY | Last person who modified (saved) a document, as generated by commercially available discovery processing tools. |
| TRACK CHANGES | Y if a document with track changes value, otherwise N or empty, if available separately from the HASHIDDENDATA flag |
| COMMENTS | Y if a document with comments, otherwise N or empty, if available separately from the HASHIDDENDATA flag |
| HASHIDDENDATA | Y if a document with hidden content value, otherwise N or empty |
| FILENAME | Filename of an electronic document |
| TITLE | Any value populated in the Title field of the document properties |
| DOCEXT | File extension of document pulled from the document properties |
| FROM | The sender of the email |
| TO | All recipients that were included on the "To" line of the email |
| CC | All recipients that were included on the "CC" line of the email |
| BCC | All recipients that were included on the "BCC" line of the email |
| DATETIMERECEIVED | Date and time email was received (format: MM/DD/YYYY HH:MM) |
| DATETIMESENT | Date and time email was sent (format: MM/DD/YYYY HH:MM) |

| Field Name | Field Description |
|---|---|
| TIMEZONE | The timezone used to process the document |
| EMAILSUBJECT | Subject line of email pulled from the document properties |
| THREADID | If a threading tool is used for emails, the thread id generated by the threading tool. |
| REDACTION TYPE[1] | General category of redaction reason as agreed to by the parties. For example, PII, SCA, CODE, and/or PRIV. If more than one, separate reasons by semicolons. |
| REDACTIONS | Y if a document is redacted, otherwise N or empty |

**5)** **TIFFs.** Unless excepted below, single page, black and white, Group IV TIFFs should be provided, at least 300 dots per inch (dpi) for all documents. Each TIFF image must be named according to a unique corresponding Bates number associated with the document. Each image must be branded according to the Bates number and the agreed upon confidentiality designation. Original document orientation should be maintained (i.e., portrait to portrait and landscape to landscape). Where the TIFF image is unreadable or has materially degraded the quality of the original, the Producing Party shall provide a higher quality TIFF image or the native or original file. In addition, the Parties shall take reasonable efforts to process word processing documents (*e.g.*, MS Word) with track changes and/or comments unhidden on the TIFF image.

**6)** **Color.** Word processing documents containing tracked changes shall be produced in color, as single-page, 300 dpi JPG images with JPG compression and a high quality setting as to not degrade the original image. The Producing Party shall comply with good faith by the Requesting Party to provide replacement color images for documents originally produced in black and white. A Party making such a request shall make the request by individual Bates

---

[1] The Parties will provide specific information on any privilege(s) asserted in their privilege logs, in an overlay, or the redaction boxes. The "Redaction Reason" field is informational only for redaction type and shall not in any way limit a party's right to assert attorney-client privilege, attorney-work product privilege, and/or any other applicable privilege or protection.

number(s) and shall limit requests made pursuant to this paragraph to a reasonable number of documents.

**7)** **Text Files.** A single multi-page text file must be provided for each document, and the filename should match its respective TIFF filename for the first page of that document. Extracted text shall be generated with commercially acceptable technology set to include all comments, revisions, tracked changes, speaker's notes and text from documents with comments or tracked changes, and hidden and very hidden worksheets, slides, columns and rows. When possible, the text of native files should be extracted directly from the native file. Parties will perform optical character recognition ("OCR") on foreign language documents using the appropriate settings for languages reasonably anticipated to be in the production following a meet and confer with the Requesting Party to identify those languages. Text files will not contain the redacted portions of the documents. A commercially acceptable technology for OCR should be used for all scanned, hard copy documents and for documents with redactions other than Excel files and other spreadsheets which shall be redacted in native format. Text extracted from emails should include the following header information where available: (1) the individuals to whom the communication was directed ("To"), (2) the author of the email communication ("From"), (3) who was copied and blind copied on such email ("CC" and "BCC"), (4) the subject line of the email ("RE" or "Subject"), and (5) the date and time of the email. To the extent the text extraction technology the Parties are using can be configured to include the text of any URLs or links, the Parties shall utilize that setting.

**8)** **Native files.** Spreadsheets (*e.g.* MS Excel), and un-redacted presentations (e.g. Microsoft PowerPoint,) will be produced in native format to the extent that they are produced in this Litigation, audio, video, and multi-media files will be produced in native format. The Parties will meet and confer on the production of other file types, such as proprietary files, etc. Native files will be produced with a link in the NATIVEFILEPATH field, along with extracted text (where extracted text is available) and applicable metadata fields set forth in paragraph 4 above. A Bates numbered TIFF placeholder indicating that the document was provided in native format must accompany every native file. Where redaction makes production of native-format

files other than spreadsheets or presentations infeasible, the Parties will confer to determine a reasonably usable form for the production, but spreadsheets shall presumptively be redacted in native, and presentations presumptively redacted in image form, in these cases without the need for further conferring.

**9)** **Production Format for Hard Copy Documents.** Documents that exist in hardcopy will be scanned to *.tiff image format and produced in accordance with the specifications set forth herein. Hard copy documents that are not text-searchable shall be made searchable by OCR prior to production.  In scanning paper documents, distinct documents should not be merged into a single record, and single documents should not be split into multiple records (i.e., paper documents should be logically unitized). In the case of an organized compilation of separate documents (for example, a binder containing several separate documents behind numbered tabs), the document behind each tab should be scanned separately, but the relationship among the documents in the compilation should be reflected in the proper coding of the beginning and ending document and attachment fields. The Parties will make their best efforts to unitize the documents correctly. If relevant documents are maintained in a file, folder, envelope, binder, notebook or similar container used to store documents, all contents therein shall be reviewed for production and privilege. Document pages which have affixed notes, such as Post-it notes, should be imaged with and without the note attached.

**10)** **Confidentiality Designation.** All images will be stamped with the appropriate confidentiality designations in accordance with the Stipulated Protective Order entered in this Litigation. Each document produced in native format will have its confidentiality designation identified in the filename of the native file and indicated on its corresponding TIFF placeholder.

**11)** **Bates Numbering**. Bates numbering should be a consistent length across the production, contain no special characters, and be numerically sequential within a given document.  If a Bates number or set of Bates numbers is skipped, the skipped number or set of numbers should be noted with a placeholder.  Attachments to documents will be assigned Bates numbers that directly follow the Bates numbers on the documents to which they were attached.

In addition, wherever possible, each image will have its assigned Bates number electronically "burned" onto the image.

**12)** **Databases and Other Structured Data.** To the extent that responsive information is stored in a database, or database management system, or proprietary system or application which has is directed to data storage as one of its primary functions, the Producing Party will identify the database and platform to the Requesting Party. The Producing Party shall produce exports and reports about such responsive information stored in such database, where such exports and reports shall be in a reasonably usable form, and information may be produced in CSV format, tab-delimited text format, Microsoft Excel format, or Microsoft Access format. If there are future disputes over the production of information from a database, the Parties shall meet and confer in good faith in an attempt to reach any further agreements (if needed) on the data to be produced and the format and scope of the production. The Producing Party will provide reasonable amounts of information about the databases to facilitate that discussion.

**13)** **Hyperlinks.** Document(s) and/or folder(s) of documents that are hyperlinked inside a responsive document (including hyperlinked inside emails) within a Producing Party's custody, possession, or control, do not need to be produced in the first instance as part of the same family group as the Document residing at the location to which that hyperlink points. If there are particular hyperlinks identified by the Requesting Party in produced documents, the Requesting Party may submit a list of hyperlinks to a particular Producing Party for potentially relevant documents by identifying the Bates number and URL or link text for each requested link to the Producing Party, and the Producing Party will engage in reasonable efforts to locate the hyperlinked document at that location and either identify it by Bates number or provide any responsive, non-produced, and non-privileged documents. The number of hyperlinks a Requesting Party may identify to a Producing Party shall not be excessive and shall be reasonable, proportional to the needs of the case, and not unduly burdensome.

**14)** **Embedded Objects.** The Parties agree non-substantive embedded objects, including, but not limited to, logos, icons, emoticons, and footers, may be culled from a document set (but not a document) and need not be produced as separate documents by a

Producing Party (i.e., such embedded objects will be produced within the document itself, rather than as separate documents). Embedded files, except for images (including but not limited to, logos, icons, emoticons), are to be produced as family groups. Embedded files should be assigned Bates numbers that directly follow the Bates numbers on the documents within which they are embedded.

**15)**     **Production of Family Groups and Relationships**. If any member of a family group is produced, all members of that group must also be produced or else logged as privileged, and no such member shall be withheld from production as a duplicate.

**16)**     **Dynamic Fields**.  Documents with dynamic fields for file names, dates, and times will be imaged to show the field code (e.g., "[FILENAME]") where possible, rather than the values for such fields existing at the time the file is processed.

**17)**     **Time Zone**.  The time zone used to process a document, including its metadata, shall be disclosed in the TIMEZONE metadata field consistent with Appendix 1, and shall be standardized for each Defendant across productions.

**18)**     **Redactions**.

a)     A Producing Party may redact (i) information subject to the attorney client privilege or the work product protection (PRIV); (ii) information that cannot be disclosed pursuant to the Stored Communications Act (SCA); (iii) source code subject to separate agreement applicable to production of source code (CODE); (iv) personal identifying information (PII) including phone numbers, personal addresses, personal email addresses, the month and day of birth, driver's license numbers, and other PII agreed to by the Parties (for example, the Parties shall complete their meet and confer on whether or not to redact users' ages and years of birth). In any event, there shall be no redaction of illnesses, injuries, and medical diagnoses. To the extent a document or pleading contains PII, the Parties shall designate such documents at the appropriate Confidentiality level under the Protective Order and shall comply with Fed. R. Civ. P. 5.2 with regard to filings with the Court.

b)     No redactions for relevance may be made within a produced document or ESI item. If, during the course of discovery, the Parties identify other kinds of information that any

Party has a reasonable basis for redacting, the Parties will meet and confer on a case-by-case basis regarding that information before such redactions are made. If the Parties cannot agree, they may seek resolution from the Court.

c)      The Producing Party will indicate, on the face of the redaction, the asserted reason(s) for the redaction (PII, SCA, CODE, and/or PRIV) and the REDACTION TYPE metadata field shall indicate that the document contains redactions and the reason(s) for the redaction.

d)      Notwithstanding the foregoing, this provision shall not be read to prohibit redactions permitted under any applicable U.S. law or Protective Order.

e)      Where a responsive document contains both redacted and non-redacted content, the Parties shall produce the non-redacted portions of the document and the OCR text corresponding to the non-redacted portions.

f)      Native Redactions. Spreadsheet files requiring redaction, including without limitation Microsoft Excel files, shall be redacted and produced natively (unless the Parties agree to production in some other format). In addition, a Producing Party may natively redact other files that cannot be properly imaged for redaction.

g)      All images of redacted files shall be processed to show all comments, revision marks, speaker notes, marks made in track changes, or other user-entered data which are visible in a normal view of the document in its native application, unless such material is redacted and marked as redacted in accordance with this section. Where possible, any occurrences of date/time auto-field items, including in headers and footers, will be removed and replaced with the term AUTODATE to prevent the current date from being printed. Email header information (e.g., date and/or subject line) shall not be redacted unless it is independently privileged. The Parties shall honor reasonable requests for the production of particular redacted documents in other formats where the image is not reasonably usable.

h)      Color.  Redacted versions of documents that would have been produced in color in their un-redacted form shall be produced in color as detailed herein.

1

2

     **19)**    **Exception Files**. The Parties will use reasonable efforts to address processing

3

exceptions.

4

     **20)**    **Mobile and Handheld Device Documents and Data**. If responsive and unique

5

data that can reasonably be extracted and produced in the formats described herein is identified

6

on a mobile or handheld device, that data shall be produced in accordance with the generic

7

provisions of this protocol. To the extent that responsive data identified on a mobile or handheld

8

device is not susceptible to normal production protocols, the Parties will meet and confer to

9

address the identification, production, and production format of any responsive documents and

10

data contained on any mobile or handheld device.

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# COVINGTON

BEIJING  BOSTON  BRUSSELS  DUBAI  FRANKFURT
JOHANNESBURG  LONDON  LOS ANGELES  NEW YORK
PALO ALTO  SAN FRANCISCO  SEOUL  SHANGHAI  WASHINGTON

Covington & Burling LLP
1999 Avenue of the Stars
Los Angeles, CA 90067-4643
T  +1 424 332 4800

**DELIVERED VIA PROCESS SERVER**                    July 24, 2024

Commission on Improving the Status of Children in Indiana
251 N. Illinois Street
Suite 800
Indianapolis, IN 46204

Re:  <u>People of the State of California v. Meta Platforms, Inc., 4:23-cv- 05448</u>

Dear Sir/Madam:

Enclosed please find a subpoena being served upon you in connection with the above-captioned litigation currently pending in the U.S. District Court for the Northern District of California. I represent Defendants Meta Platforms, Inc., Instagram, LLC, Meta Payments, Inc. and Meta Platforms Technologies, LLC (collectively, the "Meta Defendants") in this matter.

The document subpoena requests the production of specific documents identified in the attached subpoena (see Attachment A to the subpoena), which are requested to be produced by 10:00 a.m. on August 23, 2024.  We are willing to work with you on the time, date, location, method and manner of document production, as well as answer any questions or concerns you may have regarding subpoena compliance.  It is sufficient compliance with this subpoena if you electronically transmit a copy of the requested documents to the undersigned.  As such, please contact me at <u>ceppich@cov.com</u> and 424-332-4764, to discuss document production and subpoena compliance, unless you are already represented by counsel in connection with this matter.

The Court is currently considering whether the Indiana Attorney General's Office has control over Commission on Improving the Status of Children in Indiana's information for the purposes of discovery in this action.  If the Court rules that the Indiana Attorney General's Office has control over the Commission on Improving the Status of Children in Indiana's information, the Indiana Attorney General has pending discovery requests that seek this agency's documents.  By serving this subpoena, Meta does not waive its position in the state agency dispute, nor does Meta in any way waive rights to compel the Indiana Attorney General to produce Commission on Improving the Status of Children in Indiana information as part of discovery in this action.  However, to avoid further delay in the production of information from the Commission on Improving the Status of Children in Indiana, Meta is serving the attached subpoena to request the timely production of this information.

**COVINGTON**

Commission on Improving the Status of Children in Indiana
July 24, 2024
Page 2

Your anticipated time and assistance with this matter is greatly appreciated.

Best regards,

/s/ *Christopher K. Eppich*

Christopher K. Eppich


Enclosed:  Subpoena, Attachment A, and Attachment B

AO 88B (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT
### for the
Northern District of California

| | |
|---|---|
| IN RE: SOCIAL MEDIA ADOLESCENT ADDICTION/PERSONAL INJURY  PRODUCTS LIABILITY LITIGATION | ) ) ) |
| THIS DOCUMENT RELATES TO: People of the State of California, et al. v. Meta Platforms, Inc. et al., Case No.: 4:23-cv-05448 | ) ) ) ) ) | Civil Action No.    4:22-MD-03047-YGR   MDL No. 3047 |

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS
## OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

To:  Commission on Improving the Status of Children in Indiana
251 N. Ilinois Street, Suite 800, Indianapolis, IN 46204

*(Name of person to whom this subpoena is directed)*

☑ *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material: See Attachment A.

| | |
|---|---|
| Place:    Veritext Legal Solutions<br>111 Monument Circle, Suite 4350<br>Indianapolis, IN 46204 | Date and Time:<br>August 23, 2024, 10:00 a.m. |

❑ *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| | |
|---|---|
| Place: | Date and Time: |

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date:    07/24/2024

| | | |
|---|---|---|
| *CLERK OF COURT* | OR | |
| | | /s/ Ashley Simonsen |
| _____<br>*Signature of Clerk or Deputy Clerk* | | _____<br>*Attorney's signature* |

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)* _____
Meta Platforms, Inc. f/k/a Facebook, Inc.; Instagram, LLC, Meta Payments, Inc. and
Meta Platforms Technologies, LLC _____ who issues or requests this subpoena, are:
Ashley Simonsen, Covington & Burling LLP, 1999 Avenue of the Stars, Los Angeles, CA 90067, 424-332-4782, asimonsen@cov.com

### Notice to the person who issues or requests this subpoena
If this subpoena commands the production of documents, electronically stored information, or tangible things or the inspection of premises before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

AO 88B (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (Page 2)

Civil Action No. 4:23-cv-05448

### PROOF OF SERVICE
#### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____

on *(date)* _____ .

     ❑ I served the subpoena by delivering a copy to the named person as follows: _____

_____ on *(date)* _____ ; or

     ❑ I returned the subpoena unexecuted because: _____

_____ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

     $ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $ 0.00 .

I declare under penalty of perjury that this information is true.

Date: _____

                                _____
                                       *Server's signature*

                                _____
                                     *Printed name and title*

                                _____
                                     *Server's address*

Additional information regarding attempted service, etc.:

Print     Save As...     Add Attachment     Reset

# Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

  **(1)** *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
    **(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
    **(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person
      **(i)** is a party or a party's officer; or
      **(ii)** is commanded to attend a trial and would not incur substantial expense.

  **(2)** *For Other Discovery.* A subpoena may command:
    **(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
    **(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

  **(1)** *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

  **(2)** *Command to Produce Materials or Permit Inspection.*
    **(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
    **(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
      **(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
      **(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

  **(3)** *Quashing or Modifying a Subpoena.*
    **(A)** *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
      **(i)** fails to allow a reasonable time to comply;
      **(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);
      **(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
      **(iv)** subjects a person to undue burden.
    **(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
      **(i)** disclosing a trade secret or other confidential research, development, or commercial information; or

      **(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
    **(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
      **(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
      **(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

  **(1)** *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
    **(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
    **(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
    **(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
    **(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

  **(2)** *Claiming Privilege or Protection.*
    **(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
      **(i)** expressly make the claim; and
      **(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
    **(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

---

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

## DEFINITIONS AND INSTRUCTIONS TO ATTACHMENT A

### DEFINITIONS

1.      The term "communication" means the transmittal of information (in the form of facts, ideas, inquiries or otherwise).

2.      "Document" or "documents" shall have the broadest meaning ascribed to it by the Federal Rules of Civil Procedure, and includes, without limitation electronically stored information ("ESI") (including, without limitation, electronic databases and the data therein, all electronic messages or communications, electronic word processing documents, electronically stored voicemail, webpages, and social media posts) in accordance with any order in this case governing ESI at the time of production. Different versions of the same documents, including, but not limited to, drafts or documents with handwritten notations or marks not found in the original or on other copies are different documents.

3.      "You", "you", "Your" and "your" means the Commission on Improving the Status of Children in Indiana.

4.      "Relating" or "related to" means and includes referring to, concerning, referencing, mentioning, associated with, constituting, discussing, containing, embodying, recording, reflecting, identifying, summarizing, incorporating, and/or dealing with or pertaining to in any way.

5.      "And" includes "or", and vice versa.

6.      The singular form of a word or term includes the plural, and vice versa.

7.      The present tense of a verb includes the past tense, and vice versa.

8.      The use of the article "the" shall not be construed as limiting the scope of any request.

9.      "Including" means "including without limitation."

10.     "Any" includes "all", and vice versa.

11.     The capitalized version of a word or term includes the lower case version of a word or term, and vice versa.

12.     "Social Media Platforms" or "Platforms" means a digital service that facilitates interactions between two or more distinct but interdependent sets of users, including but not limited to Facebook, Instagram, Snapchat, TikTok, YouTube, Twitter (or "X"), Pinterest, LinkedIn, BeReal, Lapse, Reddit, Threads, VSCO, Goodreads, Quora, Discord, Twitch, and Tumblr.

13.     "Young Users" means users of Social Platforms who are under 18 years of age when using the Platform(s).

All words, terms, and phrases not specifically defined herein are to be given their normal and customary meaning in the context in which they are used in these Requests.

## INSTRUCTIONS

1.      These Requests are intended to cover any and all documents in your possession, custody, or control, to the extent not privileged.  Documents held by any office, department, board, commission, or instrumentality of the Commission on Improving the Status of Children in Indiana are within your possession, custody, or control.

2.      In accordance with ESI Protocol attached hereto as Attachment B, if you object to furnishing any of the documents or information requested by these Requests on the grounds of attorney-client privilege, work product, other privilege, or otherwise then, with respect to each such document:

   a.   state the nature of the privilege claimed;

   b.   state the date of each communication supporting the privilege claim;

2

c.  identify all participants in the supporting communication;

d.  state the specific grounds on which the objection is based; and

e.  identify the specific request calling for such information;

2.  If you object to any Request on the grounds that it is vague or ambiguous, state: (i) the portions or terms of such Request that you claim to be vague or ambiguous; and (ii) the interpretation of the Request pursuant to which you provide a response.

3.  Each request shall be deemed continuing, so as to require supplemental or mandatory responses should you obtain additional responsive information subsequent to your initial responses.

4.  If you cannot fully respond to a particular Request after exercising due diligence to make inquiry and to secure the necessary information, provide a response to the extent possible, specifying your inability to respond to the remainder and providing whatever information or knowledge you have concerning the portion not responded to.

5.  Each page of a produced document shall have a legible, unique page identifier ("Bates Number") and confidentiality legend (where applicable) on the face of the image at a location that does not obliterate, conceal, or interfere with any information from the source document.  Redactions should be clearly marked or stamped on the page in such a way that it is clear from review that a portion of the image has been redacted.

6.  All responsive and non-privileged electronic documents shall be produced in the format ordered by the Court in its ESI order.

7.  All responsive electronic documents shall be produced in a format agreed upon by the parties, to include at least native versions of Excel spreadsheets and presentation files, with a Bates-stamped placeholder image.

8.  Unless otherwise specified, the time period for these Requests is January 1, 2012 to the date of production of the Documents.

## ATTACHMENT A

1. Research, investigations, studies, surveys, reports, evaluations, or analyses concerning the mental, social, emotional, or behavioral health of persons ages 13 to 18.

2. Research, investigations, studies, surveys, reports, evaluations, or analyses related to Social Media Platforms, including the importance of Social Media Platforms and the use of Social Media Platforms by Young Users and the potential benefits and harms created by the use of Social Media Platforms.

3. Research, investigations, studies, surveys, reports, evaluations, or analyses concerning the mental, social, emotional, or behavioral health of Young Users, including those related to the effects of:
   a. Social Media Platforms usage;
   b. Video games usage;
   c. Cell phone usage;
   d. Messaging usage;
   e. Usage of other electronics apart from usage of Social Media Platforms;
   f. COVID-19 and/or remote learning;
   g. Use of drugs or alcohol;
   h. The opioid and fentanyl epidemic;
   i. Poverty, homelessness, lack of health insurance, and/or food insecurity;
   j. Physical health including nutrition, exercise, weight management, sleeping habits, and sexual activity;
   k. Family trauma or deaths;
   l. Academic pressure;
   m. Violence, including school violence, domestic violence, gun violence, gun control and/or mass shootings;
   n. Bullying or verbal abuse apart from usage of Social Media Platforms;
   o. Political polarization;
   p. Natural disasters;
   q. Climate change;
   r. Discrimination and inequity;
   s. Global warfare and conflict; and
   t. Any other potential causes of harms to the mental, social, emotional, or behavioral health of Young Users.

4. Youth Risk Behavior Surveys conducted by the Commission on Improving the Status of Children in Indiana or on its behalf.

5. Research, investigations, studies, surveys, reports, evaluations, or analyses related to:
   a. Features of Social Media Platforms that are psychologically or physically harmful to Young Users;
   b. Features of Social Media Platforms that promote compulsive, prolonged, or unhealthy use by Young Users;
   c. The impact of features of Social Media Platforms, including:

(1) Algorithmic recommendation and sequencing;
(2) Image filters;
(3) Use of multiple user accounts;
(4) Infinite scroll;
(5) Ephemeral content features;
(6) Autoplay;
(7) Quantification and display of likes; or
(8) Audiovisual and haptic alerts.

6. Programs, initiatives, efforts, or actions proposed or taken by the Commission on Improving the Status of Children in Indiana to address Young Users' use of Social Media Platforms, including any program, initiative, effort, or action to prevent, limit, encourage, or promote the use of Social Media Platforms by Young Users.

7. Policies proposed, recommended, or enacted by the Commission on Improving the Status of Children in Indiana regarding screen time and acceptable use of cell phones, computers, tablets, or other electronic devices by Young Users.

8. Complaints to the Commission on Improving the Status of Children in Indiana by teachers or school districts regarding social media or cell phone use by Young Users and/or the need for acceptable use or other policies to address Young Users' use of social media or cell phones.

9. Complaints to the Commission on Improving the Status of Children in Indiana by teachers or school districts regarding budget crises from inflation, underfunding, unfunded mandates, and other causes.

10. Documents related to state assessments in Indiana, including reports and analyses regarding the history of K-12 state assessment or standardized testing scores, performance by schools and/or school districts, and any other measures of school performance.

11. Legislation or policies proposed by, proposed on behalf of, or testified on by the Commission on Improving the Status of Children in Indiana, regardless of whether such legislation or policies were enacted, regarding Young Users' use of Social Media Platforms.

12. Mental, social, emotional, or behavioral health services provided by the Commission on Improving the Status of Children in Indiana to Young Users during the Relevant Period, including:
   a. Counseling or therapy;
   b. Psychiatric services;
   c. Crisis intervention;
   d. Inpatient short-term and long-term programs;
   e. Resource centers; and
   f. Services for Young Users dealing with substance abuse or addiction issues.

13. Any and all Commission on Improving the Status of Children in Indiana grants to address Young Users' mental health, including information about when, where, why, and how any disbursements were paid, any schedules or plans for future disbursements, policies governing evaluation or approval of such disbursements, records of how the disbursements were used, and all agendas, minutes, notes, or recordings from meetings related to such grant.

14. Public or non-public meetings held by the Commission on Improving the Status of Children in Indiana related to Social Media Platforms and use of Social Media Platforms by Young Users, including but not limited to, notices, meeting notes, PowerPoint presentations, internal memoranda, summaries, personal notes, or attendee lists.

15. Policies, procedures, and practices related to the Commission on Improving the Status of Children in Indiana's use of Social Media Platforms, including communication of information or promotion of Commission on Improving the Status of Children in Indiana's programs, initiatives, efforts, or actions on Social Media Platforms.

16. Commission on Improving the Status of Children in Indiana's communications and/or collaboration with any Social Media Platform on any program, initiative or other action related to, or directed at, Young Users.

17. Commission on Improving the Status of Children in Indiana's communications with any third party related to Young Users and/or Social Media Platforms.

18. Budgeted and actual expenditures by the Commission on Improving the Status of Children in Indiana during the Relevant Period related to Young Users' use of Social Media Platforms.

19. Budgeted and actual expenditures by the Commission on Improving the Status of Children in Indiana during the Relevant Period related to treatment of teen mental, social, emotional, or behavioral health issues.

20. Policies, procedures, and practices applicable to the Commission on Improving the Status of Children in Indiana and Commission on Improving the Status of Children in Indiana employees regarding the use of Social Media Platforms, including any changes to these policies during the Relevant Period.

21. Studies, programs, initiatives, efforts, or actions proposed or taken by the Commission on Improving the Status of Children in Indiana that sought to provide or promote internet access or phones, computers, tablets, or other electronic devices to Young Users.

22. Commission on Improving the Status of Children in Indiana's budget and actual expenditures during the Relevant Period, including expenditures on:

   a. Digital advertisements by the Commission on Improving the Status of Children in Indiana on Social Media Platforms;

   b. Digital advertisements by the Commission on Improving the Status of Children in Indiana purchased through Social Media Platforms.

**ATTACHMENT B**

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| IN RE: *Social Media Adolescent Addiction/Personal Injury Products Liability Litigation*<br><br>This document relates to:<br>ALL ACTIONS | MDL No. 3047<br>Case No. 4:22-md-03047-YGR<br><br>Honorable Yvonne Gonzalez Rogers<br>Honorable Peter H. Kang<br><br>**STIPULATION AND [PROPOSED] ORDER GOVERNING THE PRODUCTION OF ELECTRONICALLY STORED INFORMATION AND HARD COPY DOCUMENTS** |

## 1. PURPOSE

This Order Governing the Production of Electronically Stored Information and Hard Copy Documents ("ESI Order") will govern discovery of electronically stored information and any hard copy documents in this Litigation as a supplement to the Federal Rules of Civil Procedure, this District's Guidelines for the Discovery of Electronically Stored Information, and any other applicable orders and rules. "This Litigation" includes all actions currently in MDL No. 3047, *In Re: Social Media Adolescent Addiction/Personal Injury Products Liability*, or hereafter added or transferred to MDL No. 3047, and all actions later remanded to their respective transferor courts.

## 2. DEFINITIONS

a) "Document" is defined to be synonymous in meaning and equal in scope to the usage of this term in Rules 26 and 34 of the Federal Rules of Civil Procedure and shall include Hard-Copy Documents and ESI.

b) "Electronically stored information" or "ESI," as used herein has the same meaning as in Federal Rules of Civil Procedure 26 and 34.

c) "Hard-Copy Document" means Documents existing in paper form at the time of collection.

d) "Searchable Text" means the native text extracted from an Electronic Document and any Optical Character Recognition text ("OCR text") generated from a Hard-Copy Document or electronic image.

**3.     COOPERATION**

The Parties are aware of the importance the Court places on cooperation and commit to cooperate in good faith throughout this Litigation consistent with this Court's Guidelines for the Discovery of ESI and this Court's Rules of Professional Conduct. The Parties will endeavor to cooperate in good faith and be reasonably transparent in all aspects of the discovery process.

**4.     LIAISON**

The Parties will identify Discovery Liaisons to each other who are and will be knowledgeable about and responsible for discussing their respective ESI.  Any Party is free to change their designated Discovery Liaison by providing written notice to the other Parties. Each Party's Discovery Liaison must: (a) be prepared to meet and confer on discovery-related matters and to participate in discovery dispute resolution; (b) be knowledgeable about the Party's discovery efforts; (c) be, or have reasonable access to those who are, familiar with the Party's electronic systems and capabilities in order to explain those systems and answer relevant questions; and (d) be, or have reasonable access to those who are knowledgeable about the technical aspects of discovery, including electronic document storage, organization, and format issues, and relevant information retrieval technology, including search methodology.

**5.     IDENTIFICATION OF CUSTODIANS AND DATA SOURCES**

The parties will disclose information about custodians and custodial and non-custodial data sources likely to possess relevant or responsive information in accordance with Fed. R. Civ. P. 26 and this District's ESI Guidelines. The Parties will participate in Rule 26(f) discussions guided by this District's Checklist for Rule 26(f) Meet and Confer Regarding Electronically

Stored Information. After responses to Requests for Production under Fed. R. Civ. P. 34 have been served, the parties will meet and confer regarding those custodians and custodial and non-custodial data sources from which Documents and ESI will be collected for search and review for potential production in this litigation. The custodian and data source exchanges will include brief explanations of the rationale for their selections; for example, for custodians, their current job titles and descriptions of their work, and for data sources, location information and description.

### 6. INACCESSIBLE OR UNUSABLE ESI

If a Producing Party asserts that certain requested ESI is inaccessible or not "reasonably accessible," otherwise unnecessary, or if the Receiving Party asserts that, following production, certain ESI is not reasonably useable, the parties shall meet and confer to discuss resolving such assertions. The parties will exchange sufficient information to enable the parties to confer in good faith. If the parties cannot resolve any such disputes after such a meet and confer has taken place, the issue shall be presented to the Court for resolution.

### 7. KNOWN RESPONSIVE DOCUMENTS

Documents or ESI identified in a custodial or non-custodial file, or in a discrete folder or collection, that are known to a Producing Party through reasonable investigation to be responsive to a discovery request shall be collected for review without regard to whether the responsive content was located via any search methodology developed in accordance with this Order, and nothing about such review shall prevent the Producing Party from redacting or withholding and logging such documents for applicable privileges.

### 8. SEARCH METHODOLOGIES

The Parties shall adopt reasonable and proportionate methodologies to identify, search, collect, cull, review, and produce ESI as required under applicable legal standards. The Parties recognize and agree that each Party may use one or more methodologies to identify, search, collect, cull, review, and produce responsive and non-privileged ESI, including the use of keyword search terms and/or the use of technology assisted review ("TAR") as discussed further herein. The Parties further recognize that different data sets may implicate different methodologies to identify, search, collect, cull, review, and produce responsive and non-

privileged ESI. The Parties therefore agree to meet and confer in good faith regarding any potential disputes over their respective ESI productions.

### 9.    HIT REPORTS AND SEARCH TERMS

If a Producing Party uses search terms to identify, search, or cull potentially responsive ESI, the Producing Party shall disclose the search terms to the Requesting Party. The Parties shall meet and confer regarding any disputes over the disclosed search terms. In the event that a Producing Party claims burden with respect to modified and/or additional search terms proposed by a Requesting Party, the Producing Party shall provide a hit report for the terms at issue using industry-standard processing tools, such as NUIX or other similar tools. The Producing Party shall provide a hit report for the document collection where the terms were applied, including the following with respect to each proposed or modified search term in the collection:

a) The number of documents with hits for that term; and

b) The number of unique documents, i.e., documents which do not have hits for any other term.

If, after reviewing a hit report from a Producing Party, a Requesting Party so chooses, it may reasonably request a further hit report which includes:

c) The number of family members, including the documents with hits, of the documents with hits for that term; and

d) The number of unique family members of the documents with hits for that term.

If the ESI tool for the Producing Party is capable without undue burden of providing the number of family members and unique family members, then the Producing Party shall provide such further hit report. The Parties (including the person most knowledgeable about the capabilities of the Producing Party's ESI tool and the Requesting Party's person most knowledgeable about technical issues from its ESI service provider) shall meet and confer regarding any disputes over whether the Producing Party's ESI tool has the capability or not to provider either number of family members or number of unique family members.

The Parties shall meet and confer to resolve disagreements over the search terms or their application. To the extent the Parties are unable to reach agreement on the application of, or

procedures for, any search or filtering processes, the Parties shall fully comply with the provisions of this Court's Discovery Standing Order regarding the procedure for raising discovery disputes with the Court, including the meet and confer and certification requirements therein.

## 10. TECHNOLOGY ASSISTED REVIEW (TAR)

A Producing Party may use TAR (technology-assisted review) during the culling and review process of ESI, which may be applied in addition to search terms. If a Producing Party uses TAR to cull, filter out, or exclude documents from that Party's production, that Producing Party shall do the following:

- If a Producing Party chooses to apply both search terms and TAR to a review set, the Producing Party will disclose the search terms to all other Party/Parties.
- Disclose the name of the TAR tool or service used to all other Party/Parties.

## 11. VALIDATION

Each Producing Party shall take reasonable steps to validate its review process (i.e., using quality control measures to determine whether its production is missing relevant ESI or contains substantial amounts of irrelevant ESI) and make any necessary adjustments or corrections to its process. If, after reviewing a Producing Party's production, a Requesting Party reasonably requests additional information regarding the validation method(s) used by the Producing Party, the Producing Party will disclose the level of end-to-end recall (the percentage of responsive Documents in the collection which were identified as responsive by that Producing Party's methodology). If there remain disputes between the Parties regarding validation, the Parties shall meet and confer to resolve such disputes in good faith, including a reasonable discussion regarding the tool used and the parameters used to obtain or calculate the level of recall.

## 12. UNSEARCHABLE DOCUMENTS

The Producing Party shall use reasonable efforts to identify and review potentially responsive documents for which text-based search technologies are fundamentally ineffective.

## 13. SYSTEM FILES

Each Party will use its best efforts to filter out common system files and application executable files using the national software reference library ("NSRL") NIST hash set list. The

Parties also may filter out stand-alone files identified as zero bytes in size. Additional culling of file types based on file header information may be applied to the following, provided these files are not known to be otherwise attached, embedded in, or included with an otherwise responsive document, or are not themselves reasonably known to contain information responsive or contain responsive data or are used to interface with users or interact with or access individual or aggregated user data: Application Package File, Backup Files, Batch Files, Binary Disc Image, C++ File Formats, Cascading Style Sheet, Configuration File, Database File, Dictionary Files, Dynamic Link Library, Event Log Files, Executable Files, Hypertext Cascading Stylesheet, Java Archive Files, JavaScript Files, JavaScript Source Code and Class Files, Macintosh Resource Fork Files, Package Manager Files, Program Files, Program Installers, Python Script Files, Shell Script Files, System or Temporary Files, Thumbnail Cache Files, Troff Files, Truetype Font Files, Windows Cabinet File, Windows Command Files, Windows File Shortcut, Windows Help Files, Windows Metafiles and Enhanced Metafiles, Windows Spool Files, Windows System File.

## 14.   DEDUPLICATION

Each Producing Party shall make reasonable efforts to globally deduplicate exact duplicate Documents within that Producing Party's ESI data set across all custodial and non-custodial sources at the family level using either MD5 hash values or SHA hash values or any other agreed-upon (and disclosed) industry-standard deduplication technology. The Parties shall reach agreement on such other deduplication technology and shall reach agreement on how their deduplication tools shall identify exact duplicates of documents in a manner that is consistent with the disclosed tools and technologies a Producing Party is using. The Parties shall reach agreement on how to identify exact duplicates of emails using industry-standard commercially available software tools or services, which may for example calculate hash values of emails based on concatenated values of agreed-upon email fields and/or hash values of attachments, or which may use any other method the Parties agree upon. Having further met and conferred in keeping with the previous sentence, the Parties shall calculate deduplication hash values for emails on the concatenated values set forth in and in accordance with the documentation specifications of the disclosed deduplication tools to be used in this Litigation (i.e., RelativityOne, Relativity Server,

and Nuix); however, if Nuix is used, the Producing Party shall select the optional field "Include Bcc" as an additional field to add to the default ones.

The Parties shall not withhold from production near-duplicates without meeting and conferring on this issue.

The names of all custodians who were either identified as custodians for purposes of collection for this matter (or otherwise known by the Producing Party to have been in possession or custody of a document prior to deduplication) will be populated in the ALL CUSTODIANS metadata field for the produced version of a document that has duplicates removed from production. The original file paths (if any exist) of a document prior to deduplication will be populated in the ALL FILE PATHS metadata field of the produced document.

## 15. EMAIL THREADING

The Parties may use analytics technology to identify email threads and shall produce the unique most inclusive copy and related family members. Where multiple email messages are part of a single chain or "thread," a Party is only required to produce the most inclusive copy of an email message(s) ("Last In Time Email(s)") and need not produce earlier, lesser inclusive email messages or "thread members," provided that the tool or software service being used to perform threading is disclosed. A Producing Party may exclude from production lesser inclusive copies of the most inclusive email message in the thread, where the entire body of each of those lesser inclusive copies is included within the Last in Time Email. The Producing Party will honor reasonable requests to produce lesser inclusive copies of a Last In Time Email or other earlier chains of emails otherwise excluded by email thread suppression.

The Parties shall treat new or different email chains or threads pursuant to further agreement on safeguards or guidelines for defining emails threads which reasonably take into account the capabilities of the email threading/dethreading/hyperthreading tools used by each Defendant (which shall be disclosed to Plaintiffs).

## 16. SOURCE CODE

The Parties will meet and confer to address the production and/or inspection of source code and entering into a separate order governing the same if needed.

17. **PRODUCTION FORMATS**

The Parties agree to produce documents and data in the formats described in **Appendix 1** to this ESI Order. If particular documents or categories of documents identified in response to document requests warrant a different format, the Parties will cooperate to arrange for the mutually acceptable production of such documents. The Parties further agree not to degrade the searchability of documents as part of the document production process.

In addition, the Parties agree that the production and production format of social media and/or user account information is not covered by this agreement and to meet and confer on the production and production format, including metadata, for social media and/or user account information.

18. **PHASING**

Once the Parties begin propounding discovery requests pursuant to Fed. R. Civ. P. 34, the Parties agree to meet and confer regarding appropriate phasing for the production of ESI.

19. **MISCELLANEOUS PROVISIONS**

a) **Production of Plaintiffs ESI and Case-Specific Materials**.  Subject to any further agreement among the Parties or Order of the Court, the Parties shall produce case-specific documents (i.e., documents specific to the claim of a given Plaintiff, produced by Plaintiffs or Defendants) for any Plaintiff in discovery pools or other selections designed to inform bellwether selection, including those selected for a bellwether trial, in accordance with the production format specified herein, provided, however, that the Producing Party may elect to produce such materials in their native format. To the extent production of case-specific documents for any Plaintiff selected for a bellwether trial presents an issue for any Party, the Parties shall reasonably confer, and may present any disputes to the Court or its designee.  The Parties shall further agree to confer concerning the production format and associated matters (*e.g.*, hosting platform) for case-specific documents produced in the cases of other Plaintiffs. Nothing herein shall limit Defendant's right to seek discovery from any Plaintiff.

b) **Translations Of Produced Materials**.  The Producing Party has no obligation to

create a translation of the Documents or any portion thereof. For any foreign-language

documents responsive to document requests that a Party reasonably knows as the

result of a reasonable investigation have been translated into the English language

using human translators or through machine translation for its own purposes, except to

the extent such translation is protected by attorney-client or work-product privileges,

the Producing Party shall produce the translation of the original document with the

original. The parties will meet and confer as necessary concerning procedures for

using translations at depositions and at trial. In the event the Parties cannot reach

agreement, the matter may be submitted to the Court for determination.

c) **Third-Party Documents**.  A Party that issues a Non-Party subpoena ("Issuing Party")

shall include a copy of this Order with the subpoena and state that (1) the subpoenaed

Non-Party should produce Documents in response to the subpoena to all Parties; and

(2) the Parties to this Litigation have requested that Third Parties produce Documents

in accordance with the specifications set forth herein. If the subpoenaed Non-Party

produces Documents to the Issuing Party but does not produce those Documents to

other Parties, the Issuing Party shall produce such Documents to those other Parties

within 14 days of receiving the Documents, except where the Documents are to be

used in a deposition, in which case the Issuing Party shall produce such Documents to

all other Parties no later than three (3) days prior to the deposition, or as soon as

reasonably practicable if such production occurs thereafter. Nothing in this Order is

intended or may be interpreted to narrow, expand, or otherwise affect the rights of the

Parties or Third Parties to object to a subpoena. If the Non-Party production is not

Bates-stamped, the Parties will meet and confer to agree upon a format for designating

the documents with a unique Bates Number prefix.

d) **Documents Produced by Parties – Presumption of Authenticity**.  In order to reduce

the number of requests for admission, this Order establishes a rebuttable presumption

that documents produced by the Parties are authentic, if said documents were either

created or authored by the producing Party, or any of its employees, agents, or

contractors, so long as the employees', agents', or contractors' work was performed in connection with a project or assignment sponsored by the producing Party.  No further evidence to establish authenticity need be provided.  Nothing in this paragraph shall be deemed to waive any other evidentiary objection a party may have, including but not limited to hearsay, foundation/personal knowledge, or relevance.

e) **Re-productions.** Notwithstanding any provisions to the contrary, re-production of discrete sets of documents from another litigation, arbitration, government inquiry, or other matter may be re-produced in the same manner and form as originally produced in the other matter, provided however that a party will re-produce documents in a different format for good cause shown. This provision does not waive the right of a party to object to any requests for reproduction of production files from another litigation, arbitration, government inquiry, or other matter.

f) **Modification**.  This ESI Order may be modified by a Stipulated Order of the Parties or by the Court for good cause shown.

g) **Good Faith**.  The Parties will act in good faith as required by law and use these procedures to identify and reduce the potential for disputes.

h) **Continuing Obligations**. The Parties recognize that discovery shall be an iterative and cooperative process. The Parties will continue to meet and confer regarding any issues as reasonably necessary and appropriate. This Order does not address or resolve any objections to the Parties' respective discovery requests.

i) **Reservation of Rights**.  The Parties agree that any topic not addressed herein is neither a waiver nor acknowledgement of agreement by either Party.

**IT IS SO STIPULATED**, through Counsel of Record.

DATED: March 15, 2024

Respectfully submitted,

*/s/ Lexi J. Hazam*
LEXI J. HAZAM
**LIEFF CABRASER HEIMANN &
BERNSTEIN, LLP**
275 BATTERY STREET, 29TH FLOOR
SAN FRANCISCO, CA 94111-3339
Telephone: 415-956-1000
lhazam@lchb.com

PREVIN WARREN
**MOTLEY RICE LLC**
401 9th Street NW Suite 630
Washington DC 20004
T: 202-386-9610
pwarren@motleyrice.com

Co-Lead Counsel

CHRISTOPHER A. SEEGER
**SEEGER WEISS, LLP**
55 CHALLENGER ROAD, 6TH FLOOR
RIDGEFIELD PARK, NJ 07660
Telephone: 973-639-9100
Facsimile: 973-679-8656
cseeger@seegerweiss.com

Counsel to Co-Lead Counsel

JENNIE LEE ANDERSON
**ANDRUS ANDERSON, LLP**
155 MONTGOMERY STREET, SUITE 900
SAN FRANCISCO, CA 94104
Telephone: 415-986-1400
jennie@andrusanderson.com

Liaison Counsel

MATTHEW BERGMAN
GLENN DRAPER
**SOCIAL MEDIA VICTIMS LAW CENTER**
821 SECOND AVENUE, SUITE 2100
SEATTLE, WA 98104
Telephone: 206-741-4862
matt@socialmediavictims.org
glenn@socialmediavictims.org

JAMES J. BILSBORROW
**WEITZ & LUXENBERG, PC**
700 BROADWAY
NEW YORK, NY 10003
Telephone: 212-558-5500
Facsimile: 212-344-5461
jbilsborrow@weitzlux.com
PAIGE BOLDT
**WATTS GUERRA LLP**
4 Dominion Drive, Bldg. 3, Suite 100
San Antonio, TX 78257
T: 210-448-0500
PBoldt@WattsGuerra.com

THOMAS P. CARTMELL
**WAGSTAFF & CARTMELL LLP**
4740 Grand Avenue, Suite 300
Kansas City, MO 64112
T: 816-701 1100
tcartmell@wcllp.com

JAYNE CONROY
**SIMMONS HANLY CONROY, LLC**
112 MADISON AVE, 7TH FLOOR
NEW YORK, NY 10016
Telephone: 917-882-5522
jconroy@simmonsfirm.com
CARRIE GOLDBERG
**C.A. GOLDBERG, PLLC**
16 Court St.
Brooklyn, NY 11241
T: (646) 666-8908
carrie@cagoldberglaw.com

SIN-TING MARY LIU
**AYLSTOCK WITKIN KREIS &
OVERHOLTZ, PLLC**
17 EAST MAIN STREET, SUITE 200
PENSACOLA, FL 32502
Telephone: 510-698-9566
mliu@awkolaw.com

ANDRE MURA
**GIBBS LAW GROUP, LLP**
1111 BROADWAY, SUITE 2100
OAKLAND, CA 94607
Telephone: 510-350-9717
amm@classlawgroup.com

1

2

3    EMMIE PAULOS
     **LEVIN PAPANTONIO RAFFERTY**
4    316 SOUTH BAYLEN STREET, SUITE 600
     PENSACOLA, FL 32502
5    Telephone: 850-435-7107
     epaulos@levinlaw.com
6

7    ROLAND TELLIS
     DAVID FERNANDES
8    **BARON & BUDD, P.C.**
     15910 Ventura Boulevard, Suite 1600
9    Encino, CA 91436
     Telephone: (818) 839-2333
10   Facsimile: (818) 986-9698
     rtellis@baronbudd.com
11   dfernandes@baronbudd.com

12
     ALEXANDRA WALSH
13   **WALSH LAW**
     1050 Connecticut Ave, NW, Suite 500
14   Washington D.C. 20036
     T: 202-780-3014
15   awalsh@alexwalshlaw.com

16
     MICHAEL M. WEINKOWITZ
17   **LEVIN SEDRAN & BERMAN, LLP**
     510 WALNUT STREET
18   SUITE 500
     PHILADELPHIA, PA 19106
19   Telephone: 215-592-1500
     mweinkowitz@lfsbalw.com
20

21   DIANDRA "FU" DEBROSSE ZIMMERMANN
     **DICELLO LEVITT**
22   505 20th St North
     Suite 1500
23   Birmingham, Alabama 35203
     Telephone: 205.855.5700
24   fu@dicellolevitt.com

25

26

27

28

STIP. & [PROPOSED] ORDER GOVERNING THE          - 13 -          3:22-MD-03047-YGR; MDL NO. 3047
PRODUCTION OF ESI & HARD COPY DOCUMENTS

1
2
3
4

HILLARY NAPPI
**HACH & ROSE LLP**
112 Madison Avenue, 10th Floor
New York, New York 10016
Tel: 212.213.8311
hnappi@hrsclaw.com

5
6
7
8

JAMES MARSH
**MARSH LAW FIRM PLLC**
31 HUDSON YARDS, 11TH FLOOR
NEW YORK, NY 10001-2170
Telephone: 212-372-3030
jamesmarsh@marshlaw.com

9

*Attorneys for Individual Plaintiffs*

10
11
12

**ROB BONTA**
Attorney General
State of California

13
14
15
16
17
18
19
20
21
22

 _/s/ Megan O'Neill_
Nick A. Akers (CA SBN 211222)
Senior Assistant Attorney General
Bernard Eskandari (SBN 244395)
Supervising Deputy Attorney General
Megan O'Neill (CA SBN 343535)
Joshua Olszewski-Jubelirer
(CA SBN 336428)
Marissa Roy (CA SBN 318773)
Deputy Attorneys General
California Department of Justice
Office of the Attorney General
455 Golden Gate Ave., Suite 11000
San Francisco, CA 94102-7004
Phone: (415) 510-4400
Fax: (415) 703-5480
Bernard.Eskandari@doj.ca.gov

23
24

*Attorneys for Plaintiff the People of the State of California*

25
26
27
28

1

2  **RUSSELL COLEMAN**
   Attorney General
3  Commonwealth of Kentucky

4  */s/ J. Christian Lewis*
   J. Christian Lewis (KY Bar No. 87109),
5  *Pro hac vice*
   Philip Heleringer (KY Bar No. 96748),
6  *Pro hac vice*
   Zachary Richards (KY Bar No. 99209),
7  *Pro hac vice app. forthcoming*
   Daniel I. Keiser (KY Bar No. 100264),
8  *Pro hac vice*
   Matthew Cocanougher (KY Bar No. 94292),
9  *Pro hac vice*
   Assistant Attorneys General
10 1024 Capital Center Drive, Suite 200
   Frankfort, KY 40601
11 CHRISTIAN.LEWIS@KY.GOV
   PHILIP.HELERINGER@KY.GOV
12 ZACH.RICHARDS@KY.GOV
   DANIEL.KEISER@KY.GOV
13 MATTHEW.COCANOUGHER@KY.GOV
   Phone: (502) 696-5300
14 Fax: (502) 564-2698

15 *Attorneys for Plaintiff the Commonwealth of Kentucky*

16

17

18

19

20

21

22

23

24

25

26

27

28

COVINGTON & BURLING LLP

By: */s/ Ashley M. Simonsen*
Ashley M. Simonsen, SBN 275203
COVINGTON & BURLING LLP
1999 Avenue of the Stars
Los Angeles, CA 90067
Telephone: (424) 332-4800
Facsimile: + 1 (424) 332-4749
Email: asimonsen@cov.com

Phyllis A. Jones, *pro hac vice*
Paul W. Schmidt, *pro hac vice*
COVINGTON & BURLING LLP
One City Center
850 Tenth Street, NW
Washington, DC 20001-4956
Telephone: + 1 (202) 662-6000
Facsimile: + 1 (202) 662-6291
Email: pajones@cov.com

*Attorney for Defendants Meta Platforms, Inc.
f/k/a Facebook, Inc.; Facebook Holdings,
LLC; Facebook Operations, LLC; Facebook
Payments, Inc.; Facebook Technologies, LLC;
Instagram, LLC; Siculus, Inc.; and Mark Elliot
Zuckerberg*

FAEGRE DRINKER LLP
*By: /s/ Andrea Roberts Pierson*
Andrea Roberts Pierson, pro hac vice
FAEGRE DRINKER LLP
300 N. Meridian Street, Suite 2500
Indianapolis, IN 46204
Telephone: + 1 (317) 237-0300
Facsimile: + 1 (317) 237-1000
Email: andrea.pierson@faegredrinker.com

Amy R. Fiterman, pro hac vice
FAEGRE DRINKER LLP
2200 Wells Fargo Center
90 South Seventh Street
Minneapolis MN 55402
Telephone: +1 (612) 766 7768
Facsimile: + 1 (612) 766 1600
Email: amy.fiterman@faegredrinker.com

Geoffrey M. Drake, pro hac vice

KING & SPALDING LLP
1180 Peachtree Street, NE, Suite 1600
Atlanta, GA  30309
Telephone: +1 (404) 572 4726
Email: gdrake@kslaw.com

David P. Mattern, pro hac vice
KING & SPALDING LLP
1700 Pennsylvania Avenue, NW, Suite 900
Washington, D.C.  20006
Telephone: +1 (202) 626 2946
Email: dmattern@kslaw.com

*Attorneys for Defendants TikTok Inc. and
ByteDance Inc.*

MUNGER, TOLLES & OLSEN LLP
By: */s/ Jonathan H. Blavin*
Jonathan H. Blavin, SBN 230269
MUNGER, TOLLES & OLSON LLP
560 Mission Street, 27th Floor
San Francisco, CA 94105-3089
Telephone: (415) 512-4000
Facsimile: (415) 512-4077
Email: jonathan.blavin@mto.com

Rose L. Ehler (SBN 29652)
Victoria A. Degtyareva (SBN 284199)
Laura M. Lopez, (SBN 313450)
Ariel T. Teshuva (SBN 324238)
MUNGER, TOLLES & OLSON LLP
350 South Grand Avenue, 50th Floor
Los Angeles, CA 90071-3426
Telephone: (213) 683-9100
Facsimile: (213) 687-3702
Email: rose.ehler@mto.com
Email: victoria.degtyareva@mto.com
Email: Ariel.Teshuva@mto.com

Lauren A. Bell (*pro hac vice forthcoming*)
MUNGER, TOLLES & OLSON LLP
601 Massachusetts Ave., NW St.,
Suite 500 E
Washington, D.C. 20001-5369
Telephone: (202) 220-1100
Facsimile: (202) 220-2300
Email: lauren.bell@mto.com

1          *Attorneys for Defendant Snap Inc.*

2          WILSON SONSINI GOODRICH & ROSATI
3          Professional Corporation
           By: */s/ Brian M. Willen*
4          Brian M. Willen (*pro hac vice*)
           WILSON SONSINI GOODRICH & ROSATI
5          1301 Avenue of the Americas, 40th Floor
           New York, New York 10019
6          Telephone: (212) 999-5800
           Facsimile: (212) 999-5899
7          Email: bwillen@wsgr.com

8
           Lauren Gallo White
9          Samantha A. Machock
           WILSON SONSINI GOODRICH & ROSATI
10         One Market Plaza, Spear Tower, Suite 3300
           San Francisco, CA 94105
11         Telephone: (415) 947-2000
           Facsimile: (415) 947-2099
12         Email: lwhite@wsgr.com
           Email: smachock@wsgr.com
13

14         Christopher Chiou
15         WILSON SONSINI GOODRICH & ROSATI
           953 East Third Street, Suite 100
16         Los Angeles, CA 90013
           Telephone:  (323) 210-2900
17         Facsimile:  (866) 974-7329
           Email: cchiou@wsgr.com
18

19         *Attorneys for Defendants YouTube, LLC, Google
           LLC, and Alphabet Inc.*
20
           WILLIAMS & CONNOLLY LLP
21         By: */s/ Joseph G. Petrosinelli*
           Joseph G. Petrosinelli (*pro hac vice*)
22         jpetrosinelli@wc.com
           Ashley W. Hardin (*pro hac vice*)
23         ahardin@wc.com
           680 Maine Avenue, SW
24         Washington, DC 20024
           Telephone.: 202-434-5000
25         Fax: 202-434-5029
26
           *Attorneys for Defendants YouTube, LLC, Google
27         LLC, and Alphabet Inc.*

28

MORGAN, LEWIS & BOCKIUS LLP
By: */s/ Stephanie Schuster*
Stephanie Schuster (*pro hac vice*)
stephanie.schuster@morganlewis.com
1111 Pennsylvania Avenue NW
NW Washington, DC 20004-2541
Tel.: 202.373.6595

Yardena R. Zwang-Weissman (SBN 247111)
yardena.zwang-weissman@morganlewis.com
300 South Grand Avenue, 22nd Floor
Los Angeles, CA 90071-3132
Tel.: 213.612.7238

Brian Ercole (*pro hac vice*)
brian.ercole@morganlewis.com
600 Brickell Avenue, Suite 1600
Miami, FL 33131-3075
Tel.: 305.415.3416

*Attorneys for Defendants YouTube, LLC and Google LLC*

**IT IS ORDERED** that the foregoing Agreement is approved.

Dated: _____ March 18, 2024 _____    _____

MAGISTRATE JUDGE PETER H. KANG

**APPENDIX 1: PRODUCTION FORMAT**

1) **Production Components.** Except as otherwise provided below, ESI must be produced in accordance with the following specifications:

    a) an ASCII delimited data file (.DAT) using standard delimiters;

    b) an image load file (.OPT) that can be loaded into commercially acceptable production software (*e.g.* Concordance);

    c) single page black-and-white TIFF images, or JPEG images when color is specified herein, or native files with single page placeholder TIFF images depending on the applicable production format for each type of file;

    d) and document level .TXT files for all documents containing extracted full text or OCR text.

    e) Family relationships between emails and their attachments, embedded files and their source document, and connected hardcopy documents will be maintained in production. Attachments should be consecutively produced with their parent.

    f) If a particular document warrants a different production format, the Parties will cooperate in good faith to arrange for a mutually acceptable production format.

2) **Production Media and Access Controls.** Productions must be encrypted and produced through secure electronic means, such as secure file sharing methods (*e.g.* FTP), or on CD, DVD, flash drive or external hard drive ("Production Media"). Each piece of Production Media must identify a production number corresponding to the production volume (*e.g.* "VOL001"). Each piece of Production Media must also identify: (a) the case caption; (b) the following label: "This media contains material subject to Court Ordered security measures"; (c) the Producing Party's name; (d) the production date; (e) the Bates Number range of the materials contained on the Production Media.

Nothing in this ESI Order will preclude or impair any and all protections provided the Parties by any Protective Order(s) agreed and entered into by the Parties. Parties will use best efforts to avoid the unnecessary copying or transmittal of produced documents. If questions arise, the Parties will meet and confer to ensure security concerns are addressed prior to the exchange of

any documents.

    **3)**    **Data Load Files/Image Load Files.** Each TIFF in a production must be referenced in the corresponding image load file. The total number of documents referenced in a production's data load file should match the total number of designated document breaks in the image load file(s) in the production. The total number of pages referenced in a production's image load file should match the total number of TIFF files in the production. All images must be assigned a unique Bates number that is sequential within a given document and across the production sets. The Bates Numbers in the image load file must match the corresponding documents' beginning Bates numbers in the data load file. The total number of documents in a production should match the total number of records in the data load file. Load files must not vary in format or structure within a production, or from one production to another except by agreement of the Parties.

    **4)**    **Metadata Fields.** Each of the metadata and coding fields set forth below that can be extracted should be produced for each document, except that if the field contains privileged information, that privileged information may be redacted. However, to the extent that metadata does not exist, is not available for any documents produced, this provision shall not be read to require any Party to extract, capture, collect, manually populate, or produce such metadata, with the exception of the following: (a) BEGBATES, (b) ENDBATES, (c) BEGATTACH, (d) ENDATTACH, (e) PRODVOL, (f) ALL CUSTODIANS, (g) CONFIDENTIALITY, (h) REDACTIONS, (i) REDACTION TYPE, (j) HASHVALUE, (k) NATIVEFILEPATH, and (l) TEXTFILEPATH, which should be populated by the Party or the Party's vendor. The Parties will make reasonable efforts to ensure that metadata fields automatically extracted from the documents correspond directly to the information that exists in the original documents.

| Field Name | Field Description |
|---|---|
| BEGBATES | Beginning Bates number for a particular document as stamped on the first production image for that document |
| ENDBATES | Ending Bates number as stamped on the last |

| Field Name | Field Description |
|------------|------------------|
|  | production image for a particular document |
| BEGATTACH | First production Bates number of the first document in a family |
| ENDATTACH | Last production Bates number of the last document in a family |
| ATTACHCOUNT | Number of attachments to an e-mail or embedded parent, as generated by commercially available discovery processing tools. |
| ATTACHNAMES | Names of each individual Attachment, separated by semicolons. |
| PRODVOL | Production volume |
| ALLCUSTODIANS | List of all custodians associated with Document, i.e. "Custodian" + "Other Custodian" values delimited by semicolon. |
| ALLFILEPATHS | All original path(s) to the individual source file(s) when available in the ordinary course of business to and processable by the parties and their ESI vendors of choice. Includes path up to and including internal path of containers. |
| CONFIDENTIALITY | Confidentiality designation assigned to the document consistent with the Stipulated Protective Order governing this Litigation |
| NATIVEFILEPATH | Native File Link (Native Files only) |
| TEXTFILEPATH | Path to extracted text/OCR file for the document |
| HASHVALUE | MD5 hash value of the document |
| DOCUMENT TYPE | Descriptor for the type of document: "E-document" for electronic documents not attached to e-mails; "E-mail" for all e-mails; "E-attachment" for files that were attachments to e-mails; and "Physical" for hard copy physical documents that have been scanned and converted to an electronic image. |
| AUTHOR | Any value populated in the Author field of the |

| Field Name | Field Description |
|---|---|
| | document properties |
| DOCDATE | Date the document was created according to filesystem information (format: MM/DD/YYYY) |
| DATELASTMODIFIED | Date when document was last modified according to filesystem information (format: MM/DD/YYYY) |
| LAST MODIFIED BY | Last person who modified (saved) a document, as generated by commercially available discovery processing tools. |
| TRACK CHANGES | Y if a document with track changes value, otherwise N or empty, if available separately from the HASHIDDENDATA flag |
| COMMENTS | Y if a document with comments, otherwise N or empty, if available separately from the HASHIDDENDATA flag |
| HASHIDDENDATA | Y if a document with hidden content value, otherwise N or empty |
| FILENAME | Filename of an electronic document |
| TITLE | Any value populated in the Title field of the document properties |
| DOCEXT | File extension of document pulled from the document properties |
| FROM | The sender of the email |
| TO | All recipients that were included on the "To" line of the email |
| CC | All recipients that were included on the "CC" line of the email |
| BCC | All recipients that were included on the "BCC" line of the email |
| DATETIMERECEIVED | Date and time email was received (format: MM/DD/YYYY HH:MM) |
| DATETIMESENT | Date and time email was sent (format: MM/DD/YYYY HH:MM) |

| Field Name | Field Description |
|---|---|
| TIMEZONE | The timezone used to process the document |
| EMAILSUBJECT | Subject line of email pulled from the document properties |
| THREADID | If a threading tool is used for emails, the thread id generated by the threading tool. |
| REDACTION TYPE[1] | General category of redaction reason as agreed to by the parties. For example,  PII, SCA, CODE, and/or PRIV.  If more than one, separate reasons by semicolons. |
| REDACTIONS | Y if a document is redacted, otherwise N or empty |

**5)** **TIFFs.** Unless excepted below, single page, black and white, Group IV TIFFs should be provided, at least 300 dots per inch (dpi) for all documents. Each TIFF image must be named according to a unique corresponding Bates number associated with the document. Each image must be branded according to the Bates number and the agreed upon confidentiality designation. Original document orientation should be maintained (i.e., portrait to portrait and landscape to landscape). Where the TIFF image is unreadable or has materially degraded the quality of the original, the Producing Party shall provide a higher quality TIFF image or the native or original file.  In addition, the Parties shall take reasonable efforts to process word processing documents (*e.g.*, MS Word) with track changes and/or comments unhidden on the TIFF image.

**6)** **Color.** Word processing documents containing tracked changes shall be produced in color, as single-page, 300 dpi JPG images with JPG compression and a high quality setting as to not degrade the original image.  The Producing Party shall comply with good faith by the Requesting Party to provide replacement color images for documents originally produced in black and white.  A Party making such a request shall make the request by individual Bates

---

[1] The Parties will provide specific information on any privilege(s) asserted in their privilege logs, in an overlay, or the redaction boxes.  The "Redaction Reason" field is informational only for redaction type and shall not in any way limit a party's right to assert attorney-client privilege, attorney-work product privilege, and/or any other applicable privilege or protection.

number(s) and shall limit requests made pursuant to this paragraph to a reasonable number of documents.

7)      **Text Files.** A single multi-page text file must be provided for each document, and the filename should match its respective TIFF filename for the first page of that document. Extracted text shall be generated with commercially acceptable technology set to include all comments, revisions, tracked changes, speaker's notes and text from documents with comments or tracked changes, and hidden and very hidden worksheets, slides, columns and rows. When possible, the text of native files should be extracted directly from the native file. Parties will perform optical character recognition ("OCR") on foreign language documents using the appropriate settings for languages reasonably anticipated to be in the production following a meet and confer with the Requesting Party to identify those languages. Text files will not contain the redacted portions of the documents. A commercially acceptable technology for OCR should be used for all scanned, hard copy documents and for documents with redactions other than Excel files and other spreadsheets which shall be redacted in native format. Text extracted from emails should include the following header information where available: (1) the individuals to whom the communication was directed ("To"), (2) the author of the email communication ("From"), (3) who was copied and blind copied on such email ("CC" and "BCC"), (4) the subject line of the email ("RE" or "Subject"), and (5) the date and time of the email. To the extent the text extraction technology the Parties are using can be configured to include the text of any URLs or links, the Parties shall utilize that setting.

8)      **Native files.** Spreadsheets (*e.g.* MS Excel), and un-redacted presentations (e.g. Microsoft PowerPoint,) will be produced in native format to the extent that they are produced in this Litigation, audio, video, and multi-media files will be produced in native format. The Parties will meet and confer on the production of other file types, such as proprietary files, etc. Native files will be produced with a link in the NATIVEFILEPATH field, along with extracted text (where extracted text is available) and applicable metadata fields set forth in paragraph 4 above. A Bates numbered TIFF placeholder indicating that the document was provided in native format must accompany every native file. Where redaction makes production of native-format

files other than spreadsheets or presentations infeasible, the Parties will confer to determine a reasonably usable form for the production, but spreadsheets shall presumptively be redacted in native, and presentations presumptively redacted in image form, in these cases without the need for further conferring.

**9)** **Production Format for Hard Copy Documents.** Documents that exist in hardcopy will be scanned to *.tiff image format and produced in accordance with the specifications set forth herein. Hard copy documents that are not text-searchable shall be made searchable by OCR prior to production.  In scanning paper documents, distinct documents should not be merged into a single record, and single documents should not be split into multiple records (i.e., paper documents should be logically unitized). In the case of an organized compilation of separate documents (for example, a binder containing several separate documents behind numbered tabs), the document behind each tab should be scanned separately, but the relationship among the documents in the compilation should be reflected in the proper coding of the beginning and ending document and attachment fields. The Parties will make their best efforts to unitize the documents correctly. If relevant documents are maintained in a file, folder, envelope, binder, notebook or similar container used to store documents, all contents therein shall be reviewed for production and privilege. Document pages which have affixed notes, such as Post-it notes, should be imaged with and without the note attached.

**10)** **Confidentiality Designation.** All images will be stamped with the appropriate confidentiality designations in accordance with the Stipulated Protective Order entered in this Litigation. Each document produced in native format will have its confidentiality designation identified in the filename of the native file and indicated on its corresponding TIFF placeholder.

**11)** **Bates Numbering**.  Bates numbering should be a consistent length across the production, contain no special characters, and be numerically sequential within a given document.  If a Bates number or set of Bates numbers is skipped, the skipped number or set of numbers should be noted with a placeholder.  Attachments to documents will be assigned Bates numbers that directly follow the Bates numbers on the documents to which they were attached.

In addition, wherever possible, each image will have its assigned Bates number electronically "burned" onto the image.

**12)  Databases and Other Structured Data.** To the extent that responsive information is stored in a database, or database management system, or proprietary system or application which has is directed to data storage as one of its primary functions, the Producing Party will identify the database and platform to the Requesting Party. The Producing Party shall produce exports and reports about such responsive information stored in such database, where such exports and reports shall be in a reasonably usable form, and information may be produced in CSV format, tab-delimited text format, Microsoft Excel format, or Microsoft Access format. If there are future disputes over the production of information from a database, the Parties shall meet and confer in good faith in an attempt to reach any further agreements (if needed) on the data to be produced and the format and scope of the production. The Producing Party will provide reasonable amounts of information about the databases to facilitate that discussion.

**13)  Hyperlinks.** Document(s) and/or folder(s) of documents that are hyperlinked inside a responsive document (including hyperlinked inside emails) within a Producing Party's custody, possession, or control, do not need to be produced in the first instance as part of the same family group as the Document residing at the location to which that hyperlink points. If there are particular hyperlinks identified by the Requesting Party in produced documents, the Requesting Party may submit a list of hyperlinks to a particular Producing Party for potentially relevant documents by identifying the Bates number and URL or link text for each requested link to the Producing Party, and the Producing Party will engage in reasonable efforts to locate the hyperlinked document at that location and either identify it by Bates number or provide any responsive, non-produced, and non-privileged documents. The number of hyperlinks a Requesting Party may identify to a Producing Party shall not be excessive and shall be reasonable, proportional to the needs of the case, and not unduly burdensome.

**14)  Embedded Objects.** The Parties agree non-substantive embedded objects, including, but not limited to, logos, icons, emoticons, and footers, may be culled from a document set (but not a document) and need not be produced as separate documents by a

Producing Party (i.e., such embedded objects will be produced within the document itself, rather than as separate documents). Embedded files, except for images (including but not limited to, logos, icons, emoticons), are to be produced as family groups. Embedded files should be assigned Bates numbers that directly follow the Bates numbers on the documents within which they are embedded.

**15)** **Production of Family Groups and Relationships**. If any member of a family group is produced, all members of that group must also be produced or else logged as privileged, and no such member shall be withheld from production as a duplicate.

**16)** **Dynamic Fields**. Documents with dynamic fields for file names, dates, and times will be imaged to show the field code (e.g., "[FILENAME]") where possible, rather than the values for such fields existing at the time the file is processed.

**17)** **Time Zone**. The time zone used to process a document, including its metadata, shall be disclosed in the TIMEZONE metadata field consistent with Appendix 1, and shall be standardized for each Defendant across productions.

**18)** **Redactions**.

a) A Producing Party may redact (i) information subject to the attorney client privilege or the work product protection (PRIV); (ii) information that cannot be disclosed pursuant to the Stored Communications Act (SCA); (iii) source code subject to separate agreement applicable to production of source code (CODE); (iv) personal identifying information (PII) including phone numbers, personal addresses, personal email addresses, the month and day of birth, driver's license numbers, and other PII agreed to by the Parties (for example, the Parties shall complete their meet and confer on whether or not to redact users' ages and years of birth). In any event, there shall be no redaction of illnesses, injuries, and medical diagnoses. To the extent a document or pleading contains PII, the Parties shall designate such documents at the appropriate Confidentiality level under the Protective Order and shall comply with Fed. R. Civ. P. 5.2 with regard to filings with the Court.

b) No redactions for relevance may be made within a produced document or ESI item. If, during the course of discovery, the Parties identify other kinds of information that any

- 9 -

Party has a reasonable basis for redacting, the Parties will meet and confer on a case-by-case basis regarding that information before such redactions are made. If the Parties cannot agree, they may seek resolution from the Court.

c)     The Producing Party will indicate, on the face of the redaction, the asserted reason(s) for the redaction (PII, SCA, CODE, and/or PRIV) and the REDACTION TYPE metadata field shall indicate that the document contains redactions and the reason(s) for the redaction.

d)     Notwithstanding the foregoing, this provision shall not be read to prohibit redactions permitted under any applicable U.S. law or Protective Order.

e)     Where a responsive document contains both redacted and non-redacted content, the Parties shall produce the non-redacted portions of the document and the OCR text corresponding to the non-redacted portions.

f)     Native Redactions. Spreadsheet files requiring redaction, including without limitation Microsoft Excel files, shall be redacted and produced natively (unless the Parties agree to production in some other format). In addition, a Producing Party may natively redact other files that cannot be properly imaged for redaction.

g)     All images of redacted files shall be processed to show all comments, revision marks, speaker notes, marks made in track changes, or other user-entered data which are visible in a normal view of the document in its native application, unless such material is redacted and marked as redacted in accordance with this section. Where possible, any occurrences of date/time auto-field items, including in headers and footers, will be removed and replaced with the term AUTODATE to prevent the current date from being printed. Email header information (e.g., date and/or subject line) shall not be redacted unless it is independently privileged. The Parties shall honor reasonable requests for the production of particular redacted documents in other formats where the image is not reasonably usable.

h)     Color.  Redacted versions of documents that would have been produced in color in their un-redacted form shall be produced in color as detailed herein.

1

2       **19)     Exception Files**. The Parties will use reasonable efforts to address processing

exceptions.

3

4       **20)     Mobile and Handheld Device Documents and Data**. If responsive and unique

5   data that can reasonably be extracted and produced in the formats described herein is identified

6   on a mobile or handheld device, that data shall be produced in accordance with the generic

7   provisions of this protocol. To the extent that responsive data identified on a mobile or handheld

8   device is not susceptible to normal production protocols, the Parties will meet and confer to

9   address the identification, production, and production format of any responsive documents and

10  data contained on any mobile or handheld device.

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**COVINGTON**

BEIJING  BOSTON  BRUSSELS  DUBAI  FRANKFURT
JOHANNESBURG  LONDON  LOS ANGELES  NEW YORK
PALO ALTO  SAN FRANCISCO  SEOUL  SHANGHAI  WASHINGTON

Covington & Burling LLP
1999 Avenue of the Stars
Los Angeles, CA 90067-4643
T  +1 424 332 4800

DELIVERED VIA PROCESS SERVER                    July 24, 2024

Indiana Department of Education
100 N. Senate Avenue, 9th Floor
Indianapolis, IN 46204

Re:  People of the State of California v. Meta Platforms, Inc., 4:23-cv- 05448

Dear Sir/Madam:

Enclosed please find a subpoena being served upon you in connection with the above-captioned litigation currently pending in the U.S. District Court for the Northern District of California. I represent Defendants Meta Platforms, Inc., Instagram, LLC, Meta Payments, Inc. and Meta Platforms Technologies, LLC (collectively, the "Meta Defendants") in this matter.

The document subpoena requests the production of specific documents identified in the attached subpoena (see Attachment A to the subpoena), which are requested to be produced by 10:00 a.m. on August 23, 2024. We are willing to work with you on the time, date, location, method and manner of document production, as well as answer any questions or concerns you may have regarding subpoena compliance. It is sufficient compliance with this subpoena if you electronically transmit a copy of the requested documents to the undersigned. As such, please contact me at ceppich@cov.com and 424-332-4764, to discuss document production and subpoena compliance, unless you are already represented by counsel in connection with this matter.

The Court is currently considering whether the Indiana Attorney General's Office has control over Indiana Department of Education's information for the purposes of discovery in this action. If the Court rules that the Indiana Attorney General's Office has control over the Indiana Department of Education's information, the Indiana Attorney General has pending discovery requests that seek this agency's documents. By serving this subpoena, Meta does not waive its position in the state agency dispute, nor does Meta in any way waive rights to compel the Indiana Attorney General to produce Indiana Department of Education information as part of discovery in this action. However, to avoid further delay in the production of information from the Indiana Department of Education, Meta is serving the attached subpoena to request the timely production of this information.

**COVINGTON**

Indiana Department of Education
July 24, 2024
Page 2

Your anticipated time and assistance with this matter is greatly appreciated.


Best regards,

/s/ *Christopher K. Eppich*

Christopher K. Eppich


Enclosed:  Subpoena, Attachment A, and Attachment B

AO 88B  (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT

for the

Northern District of California

| | |
|---|---|
| IN RE: SOCIAL MEDIA ADOLESCENT ADDICTION/PERSONAL INJURY  PRODUCTS LIABILITY LITIGATION | ) ) ) |
| THIS DOCUMENT RELATES TO:<br>People of the State of California, et al. v. Meta Platforms, Inc., et al. Case No.: 4:23-cv-05448 | ) ) ) ) ) |

Civil Action No.    4:22-MD-03047-YGR
MDL No. 3047

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS
## OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

To:    Indiana Department of Education
       100 N. Senate Avenue, 9th Floor, Indianapolis, IN 46204

*(Name of person to whom this subpoena is directed)*

☛ *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material: See Attachment A.

| Place:    Veritext Legal Solutions<br>111 Monument Circle, Suite 4350<br>Indianapolis, IN 46204 | Date and Time:<br>August 23, 2024; 10:00 a.m. |
|---|---|

❑ *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|
| | |

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date:    07/24/2024

CLERK OF COURT

OR

_____                    /s/ Ashley Simonsen
*Signature of Clerk or Deputy Clerk*                *Attorney's signature*

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)*
Meta Platforms, Inc. f/k/a Facebook, Inc.; Instagram, LLC, Meta Payments, Inc. and
Meta Platforms Technologies, LLC,                                who issues or requests this subpoena, are:
Ashley Simonsen, Covington & Burling LLP, 1999 Avenue of the Stars, Los Angeles, CA 90067, 424-332-4782, asimonsen@cov.com

## Notice to the person who issues or requests this subpoena
If this subpoena commands the production of documents, electronically stored information, or tangible things or the inspection of premises before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

AO 88B (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (Page 2)

Civil Action No. 4:23-cv-05448

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____

on *(date)* _____ .

☐ I served the subpoena by delivering a copy to the named person as follows: _____

_____ on *(date)* _____ ; or

☐ I returned the subpoena unexecuted because: _____

_____ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $    0.00    .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc.:

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

  **(1)** *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
   **(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
   **(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person
     **(i)** is a party or a party's officer; or
     **(ii)** is commanded to attend a trial and would not incur substantial expense.

  **(2)** *For Other Discovery.* A subpoena may command:
   **(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
   **(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

  **(1)** *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

  **(2)** *Command to Produce Materials or Permit Inspection.*
   **(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
   **(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
     **(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
     **(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

  **(3)** *Quashing or Modifying a Subpoena.*
   **(A)** *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
     **(i)** fails to allow a reasonable time to comply;
     **(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);
     **(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
     **(iv)** subjects a person to undue burden.
   **(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
     **(i)** disclosing a trade secret or other confidential research, development, or commercial information; or

     **(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
   **(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
     **(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
     **(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

  **(1)** *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
   **(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
   **(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
   **(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
   **(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

  **(2)** *Claiming Privilege or Protection.*
   **(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
     **(i)** expressly make the claim; and
     **(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
   **(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

## <u>DEFINITIONS AND INSTRUCTIONS TO ATTACHMENT A</u>

### <u>DEFINITIONS</u>

1.      The term "communication" means the transmittal of information (in the form of facts, ideas, inquiries or otherwise).

2.      "Document" or "documents" shall have the broadest meaning ascribed to it by the Federal Rules of Civil Procedure, and includes, without limitation electronically stored information ("ESI") (including, without limitation, electronic databases and the data therein, all electronic messages or communications, electronic word processing documents, electronically stored voicemail, webpages, and social media posts) in accordance with any order in this case governing ESI at the time of production. Different versions of the same documents, including, but not limited to, drafts or documents with handwritten notations or marks not found in the original or on other copies are different documents.

3.      "You", "you", "Your" and "your" means the Indiana Department of Education.

4.      "Relating" or "related to" means and includes referring to, concerning, referencing, mentioning, associated with, constituting, discussing, containing, embodying, recording, reflecting, identifying, summarizing, incorporating, and/or dealing with or pertaining to in any way.

5.      "And" includes "or", and vice versa.

6.      The singular form of a word or term includes the plural, and vice versa.

7.      The present tense of a verb includes the past tense, and vice versa.

8.      The use of the article "the" shall not be construed as limiting the scope of any request.

9.      "Including" means "including without limitation."

10.     "Any" includes "all", and vice versa.

11.     The capitalized version of a word or term includes the lower case version of a word or term, and vice versa.

12.     "Social Media Platforms" or "Platforms" means a digital service that facilitates interactions between two or more distinct but interdependent sets of users, including but not limited to Facebook, Instagram, Snapchat, TikTok, YouTube, Twitter (or "X"), Pinterest, LinkedIn, BeReal, Lapse, Reddit, Threads, VSCO, Goodreads, Quora, Discord, Twitch, and Tumblr.

13.     "Young Users" means users of Social Platforms who are under 18 years of age when using the Platform(s).

All words, terms, and phrases not specifically defined herein are to be given their normal and customary meaning in the context in which they are used in these Requests.

## **INSTRUCTIONS**

1.     These Requests are intended to cover any and all documents in your possession, custody, or control, to the extent not privileged.  Documents held by any office, department, board, commission, or instrumentality of the Indiana Department of Education are within your possession, custody, or control.

2.     In accordance with ESI Protocol attached hereto as Attachment B, if you object to furnishing any of the documents or information requested by these Requests on the grounds of attorney-client privilege, work product, other privilege, or otherwise then, with respect to each such document:

        a.   state the nature of the privilege claimed;

        b.   state the date of each communication supporting the privilege claim;

        c.   identify all participants in the supporting communication;

        d.   state the specific grounds on which the objection is based; and

e.  identify the specific request calling for such information;

2.    If you object to any Request on the grounds that it is vague or ambiguous, state: (i) the portions or terms of such Request that you claim to be vague or ambiguous; and (ii) the interpretation of the Request pursuant to which you provide a response.

3.    Each request shall be deemed continuing, so as to require supplemental or mandatory responses should you obtain additional responsive information subsequent to your initial responses.

4.    If you cannot fully respond to a particular Request after exercising due diligence to make inquiry and to secure the necessary information, provide a response to the extent possible, specifying your inability to respond to the remainder and providing whatever information or knowledge you have concerning the portion not responded to.

5.    Each page of a produced document shall have a legible, unique page identifier ("Bates Number") and confidentiality legend (where applicable) on the face of the image at a location that does not obliterate, conceal, or interfere with any information from the source document.  Redactions should be clearly marked or stamped on the page in such a way that it is clear from review that a portion of the image has been redacted.

6.    All responsive and non-privileged electronic documents shall be produced in the format ordered by the Court in its ESI order.

7.    All responsive electronic documents shall be produced in a format agreed upon by the parties, to include at least native versions of Excel spreadsheets and presentation files, with a Bates-stamped placeholder image.

8.    Unless otherwise specified, the time period for these Requests is January 1, 2012 to the date of production of the Documents.

## ATTACHMENT A

1. Research, investigations, studies, surveys, reports, evaluations, or analyses concerning the mental, social, emotional, or behavioral health of persons ages 13 to 18.

2. Programs, initiatives, efforts, or actions proposed or taken by the Indiana Department of Education to encourage or promote the use of Social Media Platforms.

3. Programs, initiatives, efforts, or actions proposed or taken by the Indiana Department of Education to address Young Users' use of Social Media Platforms, including any program, initiative, effort, or action to prevent, limit, encourage, or promote the use of Social Media Platforms by Young Users.

4. Studies, programs, initiatives, efforts, or actions proposed or taken by the Indiana Department of Education that sought to provide or promote internet access or phones, computers, tablets, or other electronic devices to Young Users.

5. Policies proposed, recommended, or enacted by the Indiana Department of Education regarding screen time and acceptable use of cell phones, computers, tablets, or other electronic devices by Young Users.

6. Complaints to the Indiana Department of Education by teachers or school districts regarding social media or cell phone use by Young Users and/or the need for acceptable use or other policies to address Young Users' use of social media or cell phones.

7. Complaints to the Indiana Department of Education by teachers or school districts regarding budget crises from inflation, underfunding, unfunded mandates, and other causes.

8. Documents related to state assessments in Indiana, including reports and analyses regarding the history of K-12 state assessment or standardized testing scores, performance by schools and/or school districts, and any other measures of school performance.

9. Indiana Department of Education's communications and/or collaboration with any Social Media Platform on any program, initiative or other action related to, or directed at, Young Users.

10. Indiana Department of Education's communications with any third party related to Young Users and/or Social Media Platforms.

11. Policies, procedures, and practices applicable to Indiana Department of Education and Indiana Department of Education employees regarding the use of Social Media Platforms, including any changes to these policies during the Relevant Period.

12. Legislation or policies proposed by, proposed on behalf of, or testified on by the Indiana Department of Education, regardless of whether such legislation or policies were enacted, regarding Young Users' use of Social Media Platforms.

13. Research, investigations, studies, surveys, reports, evaluations, or analyses related to Social Media Platforms, including the importance of Social Media Platforms and the use of Social Media Platforms by Young Users and the potential benefits and harms created by the use of Social Media Platforms.

14. Research, investigations, studies, surveys, reports, evaluations, or analyses related to Social Media Platforms regarding the impact of social media on the mental, social, emotional, or behavioral health of Young Users.

15. Research, investigations, studies, surveys, reports, evaluations, or analyses related to:
    a. Features of Social Media Platforms that are psychologically or physically harmful to Young Users;
    b. Features of Social Media Platforms that promote compulsive, prolonged, or unhealthy use by Young Users;
    c. The impact of features of Social Media Platforms, including:
        (1) Algorithmic recommendation and sequencing;
        (2) Image filters;
        (3) Use of multiple user accounts;
        (4) Infinite scroll;
        (5) Ephemeral content features;
        (6) Autoplay;
        (7) Quantification and display of likes; or
        (8) Audiovisual and haptic alerts.

16. Research, investigations, studies, surveys, reports, evaluations, or analyses concerning the mental, social, emotional, or behavioral health of Young Users, including those related to the effects of:
    a. Social Media Platforms usage;
    b. Video games usage;
    c. Cell phone usage;
    d. Messaging usage;
    e. Usage of other electronics apart from usage of Social Media Platforms;
    f. COVID-19 and/or remote learning;
    g. Use of drugs or alcohol;
    h. The opioid and fentanyl epidemic;
    i. Poverty, homelessness, lack of health insurance, and/or food insecurity;
    j. Physical health including nutrition, exercise, weight management, sleeping habits, and sexual activity;
    k. Family trauma or deaths;
    l. Academic pressure;
    m. Violence, including school violence, domestic violence, gun violence, gun control and/or mass shootings;

      n.  Bullying or verbal abuse apart from usage of Social Media Platforms;
      o.  Political polarization;
      p.  Natural disasters;
      q.  Climate change;
      r.  Discrimination and inequity;
      s.  Global warfare and conflict; and
      t.  Any other potential causes of harms to the mental, social, emotional, or behavioral health of Young Users.

17. Youth Risk Behavior Surveys conducted by the Indiana Department of Education or on its behalf.

18. Public or non-public meetings held by the Indiana Department of Education related to Social Media Platforms and use of Social Media Platforms by Young Users, including notices, meeting notes, PowerPoint presentations, internal memoranda, summaries, personal notes, or attendee lists.

19. Mental, social, emotional, or behavioral health services provided by the Indiana Department of Education to Young Users during the Relevant Period.

20. Budgeted and actual expenditures by the Indiana Department of Education during the Relevant Period related to Young Users' use of Social Media Platforms.

21. Policies, procedures, and practices related to the Indiana Department of Education's use of Social Media Platforms, including communication of information or promotion of Indiana Department of Education programs, initiatives, efforts, or actions on Social Media Platforms.

22. Indiana Department of Education's budget and actual expenditures during the Relevant Period, including expenditures on:
      a.  Digital advertisements by the Indiana Department of Education on Social Media Platforms
      b.  Digital advertisements by the Indiana Department of Education purchased through Social Media Platforms.

**ATTACHMENT B**

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| IN RE: *Social Media Adolescent Addiction/Personal Injury Products Liability Litigation*<br><br>This document relates to:<br>ALL ACTIONS | MDL No. 3047<br>Case No. 4:22-md-03047-YGR<br><br>Honorable Yvonne Gonzalez Rogers<br>Honorable Peter H. Kang<br><br>**STIPULATION AND [PROPOSED] ORDER GOVERNING THE PRODUCTION OF ELECTRONICALLY STORED INFORMATION AND HARD COPY DOCUMENTS** |

## 1.   PURPOSE

This Order Governing the Production of Electronically Stored Information and Hard Copy Documents ("ESI Order") will govern discovery of electronically stored information and any hard copy documents in this Litigation as a supplement to the Federal Rules of Civil Procedure, this District's Guidelines for the Discovery of Electronically Stored Information, and any other applicable orders and rules. "This Litigation" includes all actions currently in MDL No. 3047, *In Re: Social Media Adolescent Addiction/Personal Injury Products Liability*, or hereafter added or transferred to MDL No. 3047, and all actions later remanded to their respective transferor courts.

## 2.   DEFINITIONS

a)   "Document" is defined to be synonymous in meaning and equal in scope to the usage of this term in Rules 26 and 34 of the Federal Rules of Civil Procedure and shall include Hard-Copy Documents and ESI.

b) "Electronically stored information" or "ESI," as used herein has the same meaning as in Federal Rules of Civil Procedure 26 and 34.

c) "Hard-Copy Document" means Documents existing in paper form at the time of collection.

d) "Searchable Text" means the native text extracted from an Electronic Document and any Optical Character Recognition text ("OCR text") generated from a Hard-Copy Document or electronic image.

**3.     COOPERATION**

The Parties are aware of the importance the Court places on cooperation and commit to cooperate in good faith throughout this Litigation consistent with this Court's Guidelines for the Discovery of ESI and this Court's Rules of Professional Conduct. The Parties will endeavor to cooperate in good faith and be reasonably transparent in all aspects of the discovery process.

**4.     LIAISON**

The Parties will identify Discovery Liaisons to each other who are and will be knowledgeable about and responsible for discussing their respective ESI.  Any Party is free to change their designated Discovery Liaison by providing written notice to the other Parties. Each Party's Discovery Liaison must: (a) be prepared to meet and confer on discovery-related matters and to participate in discovery dispute resolution; (b) be knowledgeable about the Party's discovery efforts; (c) be, or have reasonable access to those who are, familiar with the Party's electronic systems and capabilities in order to explain those systems and answer relevant questions; and (d) be, or have reasonable access to those who are knowledgeable about the technical aspects of discovery, including electronic document storage, organization, and format issues, and relevant information retrieval technology, including search methodology.

**5.     IDENTIFICATION OF CUSTODIANS AND DATA SOURCES**

The parties will disclose information about custodians and custodial and non-custodial data sources likely to possess relevant or responsive information in accordance with Fed. R. Civ. P. 26 and this District's ESI Guidelines. The Parties will participate in Rule 26(f) discussions guided by this District's Checklist for Rule 26(f) Meet and Confer Regarding Electronically

1  Stored Information. After responses to Requests for Production under Fed. R. Civ. P. 34 have

2  been served, the parties will meet and confer regarding those custodians and custodial and non-

3  custodial data sources from which Documents and ESI will be collected for search and review for

4  potential production in this litigation. The custodian and data source exchanges will include brief

5  explanations of the rationale for their selections; for example, for custodians, their current job

6  titles and descriptions of their work, and for data sources, location information and description.

7      ## 6.  INACCESSIBLE OR UNUSABLE ESI

8          If a Producing Party asserts that certain requested ESI is inaccessible or not "reasonably

9  accessible," otherwise unnecessary, or if the Receiving Party asserts that, following production,

10  certain ESI is not reasonably useable, the parties shall meet and confer to discuss resolving such

11  assertions. The parties will exchange sufficient information to enable the parties to confer in good

12  faith. If the parties cannot resolve any such disputes after such a meet and confer has taken place,

13  the issue shall be presented to the Court for resolution.

14      ## 7.  KNOWN RESPONSIVE DOCUMENTS

15          Documents or ESI identified in a custodial or non-custodial file, or in a discrete folder or

16  collection, that are known to a Producing Party through reasonable investigation to be responsive

17  to a discovery request shall be collected for review without regard to whether the responsive

18  content was located via any search methodology developed in accordance with this Order, and

19  nothing about such review shall prevent the Producing Party from redacting or withholding and

20  logging such documents for applicable privileges.

21      ## 8.  SEARCH METHODOLOGIES

22          The Parties shall adopt reasonable and proportionate methodologies to identify, search,

23  collect, cull, review, and produce ESI as required under applicable legal standards. The Parties

24  recognize and agree that each Party may use one or more methodologies to identify, search,

25  collect, cull, review, and produce responsive and non-privileged ESI, including the use of

26  keyword search terms and/or the use of technology assisted review ("TAR") as discussed further

27  herein. The Parties further recognize that different data sets may implicate different

28  methodologies to identify, search, collect, cull, review, and produce responsive and non-

1     privileged ESI. The Parties therefore agree to meet and confer in good faith regarding any

2     potential disputes over their respective ESI productions.

3           **9.**       **HIT REPORTS AND SEARCH TERMS**

4        If a Producing Party uses search terms to identify, search, or cull potentially responsive

5     ESI, the Producing Party shall disclose the search terms to the Requesting Party. The Parties shall

6     meet and confer regarding any disputes over the disclosed search terms. In the event that a

7     Producing Party claims burden with respect to modified and/or additional search terms proposed

8     by a Requesting Party, the Producing Party shall provide a hit report for the terms at issue using

9     industry-standard processing tools, such as NUIX or other similar tools. The Producing Party

10     shall provide a hit report for the document collection where the terms were applied, including the

11     following with respect to each proposed or modified search term in the collection:

12          a)    The number of documents with hits for that term; and

13          b)    The number of unique documents, i.e., documents which do not have hits for any other

14              term.

15        If, after reviewing a hit report from a Producing Party, a Requesting Party so chooses, it

16     may reasonably request a further hit report which includes:

17          c)    The number of family members, including the documents with hits, of the documents

18              with hits for that term; and

19          d)    The number of unique family members of the documents with hits for that term.

20        If the ESI tool for the Producing Party is capable without undue burden of providing the

21     number of family members and unique family members, then the Producing Party shall provide

22     such further hit report. The Parties (including the person most knowledgeable about the

23     capabilities of the Producing Party's ESI tool and the Requesting Party's person most

24     knowledgeable about technical issues from its ESI service provider) shall meet and confer

25     regarding any disputes over whether the Producing Party's ESI tool has the capability or not to

26     provider either number of family members or number of unique family members.

27        The Parties shall meet and confer to resolve disagreements over the search terms or their

28     application. To the extent the Parties are unable to reach agreement on the application of, or

procedures for, any search or filtering processes, the Parties shall fully comply with the provisions of this Court's Discovery Standing Order regarding the procedure for raising discovery disputes with the Court, including the meet and confer and certification requirements therein.

### 10. TECHNOLOGY ASSISTED REVIEW (TAR)

A Producing Party may use TAR (technology-assisted review) during the culling and review process of ESI, which may be applied in addition to search terms. If a Producing Party uses TAR to cull, filter out, or exclude documents from that Party's production, that Producing Party shall do the following:

- If a Producing Party chooses to apply both search terms and TAR to a review set, the Producing Party will disclose the search terms to all other Party/Parties.
- Disclose the name of the TAR tool or service used to all other Party/Parties.

### 11. VALIDATION

Each Producing Party shall take reasonable steps to validate its review process (i.e., using quality control measures to determine whether its production is missing relevant ESI or contains substantial amounts of irrelevant ESI) and make any necessary adjustments or corrections to its process. If, after reviewing a Producing Party's production, a Requesting Party reasonably requests additional information regarding the validation method(s) used by the Producing Party, the Producing Party will disclose the level of end-to-end recall (the percentage of responsive Documents in the collection which were identified as responsive by that Producing Party's methodology). If there remain disputes between the Parties regarding validation, the Parties shall meet and confer to resolve such disputes in good faith, including a reasonable discussion regarding the tool used and the parameters used to obtain or calculate the level of recall.

### 12. UNSEARCHABLE DOCUMENTS

The Producing Party shall use reasonable efforts to identify and review potentially responsive documents for which text-based search technologies are fundamentally ineffective.

### 13. SYSTEM FILES

Each Party will use its best efforts to filter out common system files and application executable files using the national software reference library ("NSRL") NIST hash set list. The

Parties also may filter out stand-alone files identified as zero bytes in size. Additional culling of file types based on file header information may be applied to the following, provided these files are not known to be otherwise attached, embedded in, or included with an otherwise responsive document, or are not themselves reasonably known to contain information responsive or contain responsive data or are used to interface with users or interact with or access individual or aggregated user data: Application Package File, Backup Files, Batch Files, Binary Disc Image, C++ File Formats, Cascading Style Sheet, Configuration File, Database File, Dictionary Files, Dynamic Link Library, Event Log Files, Executable Files, Hypertext Cascading Stylesheet, Java Archive Files, JavaScript Files, JavaScript Source Code and Class Files, Macintosh Resource Fork Files, Package Manager Files, Program Files, Program Installers, Python Script Files, Shell Script Files, System or Temporary Files, Thumbnail Cache Files, Troff Files, Truetype Font Files, Windows Cabinet File, Windows Command Files, Windows File Shortcut, Windows Help Files, Windows Metafiles and Enhanced Metafiles, Windows Spool Files, Windows System File.

## 14. DEDUPLICATION

Each Producing Party shall make reasonable efforts to globally deduplicate exact duplicate Documents within that Producing Party's ESI data set across all custodial and non-custodial sources at the family level using either MD5 hash values or SHA hash values or any other agreed-upon (and disclosed) industry-standard deduplication technology. The Parties shall reach agreement on such other deduplication technology and shall reach agreement on how their deduplication tools shall identify exact duplicates of documents in a manner that is consistent with the disclosed tools and technologies a Producing Party is using. The Parties shall reach agreement on how to identify exact duplicates of emails using industry-standard commercially available software tools or services, which may for example calculate hash values of emails based on concatenated values of agreed-upon email fields and/or hash values of attachments, or which may use any other method the Parties agree upon. Having further met and conferred in keeping with the previous sentence, the Parties shall calculate deduplication hash values for emails on the concatenated values set forth in and in accordance with the documentation specifications of the disclosed deduplication tools to be used in this Litigation (i.e., RelativityOne, Relativity Server,

and Nuix); however, if Nuix is used, the Producing Party shall select the optional field "Include Bcc" as an additional field to add to the default ones.

The Parties shall not withhold from production near-duplicates without meeting and conferring on this issue.

The names of all custodians who were either identified as custodians for purposes of collection for this matter (or otherwise known by the Producing Party to have been in possession or custody of a document prior to deduplication) will be populated in the ALL CUSTODIANS metadata field for the produced version of a document that has duplicates removed from production. The original file paths (if any exist) of a document prior to deduplication will be populated in the ALL FILE PATHS metadata field of the produced document.

### 15. EMAIL THREADING

The Parties may use analytics technology to identify email threads and shall produce the unique most inclusive copy and related family members. Where multiple email messages are part of a single chain or "thread," a Party is only required to produce the most inclusive copy of an email message(s) ("Last In Time Email(s)") and need not produce earlier, lesser inclusive email messages or "thread members," provided that the tool or software service being used to perform threading is disclosed. A Producing Party may exclude from production lesser inclusive copies of the most inclusive email message in the thread, where the entire body of each of those lesser inclusive copies is included within the Last in Time Email. The Producing Party will honor reasonable requests to produce lesser inclusive copies of a Last In Time Email or other earlier chains of emails otherwise excluded by email thread suppression.

The Parties shall treat new or different email chains or threads pursuant to further agreement on safeguards or guidelines for defining emails threads which reasonably take into account the capabilities of the email threading/dethreading/hyperthreading tools used by each Defendant (which shall be disclosed to Plaintiffs).

### 16. SOURCE CODE

The Parties will meet and confer to address the production and/or inspection of source code and entering into a separate order governing the same if needed.

**17. PRODUCTION FORMATS**

The Parties agree to produce documents and data in the formats described in **Appendix 1** to this ESI Order. If particular documents or categories of documents identified in response to document requests warrant a different format, the Parties will cooperate to arrange for the mutually acceptable production of such documents. The Parties further agree not to degrade the searchability of documents as part of the document production process.

In addition, the Parties agree that the production and production format of social media and/or user account information is not covered by this agreement and to meet and confer on the production and production format, including metadata, for social media and/or user account information.

**18. PHASING**

Once the Parties begin propounding discovery requests pursuant to Fed. R. Civ. P. 34, the Parties agree to meet and confer regarding appropriate phasing for the production of ESI.

**19. MISCELLANEOUS PROVISIONS**

a) **Production of Plaintiffs ESI and Case-Specific Materials**. Subject to any further agreement among the Parties or Order of the Court, the Parties shall produce case-specific documents (i.e., documents specific to the claim of a given Plaintiff, produced by Plaintiffs or Defendants) for any Plaintiff in discovery pools or other selections designed to inform bellwether selection, including those selected for a bellwether trial, in accordance with the production format specified herein, provided, however, that the Producing Party may elect to produce such materials in their native format. To the extent production of case-specific documents for any Plaintiff selected for a bellwether trial presents an issue for any Party, the Parties shall reasonably confer, and may present any disputes to the Court or its designee. The Parties shall further agree to confer concerning the production format and associated matters (*e.g.*, hosting platform) for case-specific documents produced in the cases of other Plaintiffs. Nothing herein shall limit Defendant's right to seek discovery from any Plaintiff.

b) **Translations Of Produced Materials**. The Producing Party has no obligation to

create a translation of the Documents or any portion thereof. For any foreign-language

documents responsive to document requests that a Party reasonably knows as the

result of a reasonable investigation have been translated into the English language

using human translators or through machine translation for its own purposes, except to

the extent such translation is protected by attorney-client or work-product privileges,

the Producing Party shall produce the translation of the original document with the

original. The parties will meet and confer as necessary concerning procedures for

using translations at depositions and at trial. In the event the Parties cannot reach

agreement, the matter may be submitted to the Court for determination.

c) **Third-Party Documents**.  A Party that issues a Non-Party subpoena ("Issuing Party")

shall include a copy of this Order with the subpoena and state that (1) the subpoenaed

Non-Party should produce Documents in response to the subpoena to all Parties; and

(2) the Parties to this Litigation have requested that Third Parties produce Documents

in accordance with the specifications set forth herein. If the subpoenaed Non-Party

produces Documents to the Issuing Party but does not produce those Documents to

other Parties, the Issuing Party shall produce such Documents to those other Parties

within 14 days of receiving the Documents, except where the Documents are to be

used in a deposition, in which case the Issuing Party shall produce such Documents to

all other Parties no later than three (3) days prior to the deposition, or as soon as

reasonably practicable if such production occurs thereafter. Nothing in this Order is

intended or may be interpreted to narrow, expand, or otherwise affect the rights of the

Parties or Third Parties to object to a subpoena. If the Non-Party production is not

Bates-stamped, the Parties will meet and confer to agree upon a format for designating

the documents with a unique Bates Number prefix.

d) **Documents Produced by Parties – Presumption of Authenticity**.  In order to reduce

the number of requests for admission, this Order establishes a rebuttable presumption

that documents produced by the Parties are authentic, if said documents were either

created or authored by the producing Party, or any of its employees, agents, or

contractors, so long as the employees', agents', or contractors' work was performed in connection with a project or assignment sponsored by the producing Party.  No further evidence to establish authenticity need be provided.  Nothing in this paragraph shall be deemed to waive any other evidentiary objection a party may have, including but not limited to hearsay, foundation/personal knowledge, or relevance.

e)  **Re-productions.** Notwithstanding any provisions to the contrary, re-production of discrete sets of documents from another litigation, arbitration, government inquiry, or other matter may be re-produced in the same manner and form as originally produced in the other matter, provided however that a party will re-produce documents in a different format for good cause shown. This provision does not waive the right of a party to object to any requests for reproduction of production files from another litigation, arbitration, government inquiry, or other matter.

f)  **Modification**.  This ESI Order may be modified by a Stipulated Order of the Parties or by the Court for good cause shown.

g)  **Good Faith**.  The Parties will act in good faith as required by law and use these procedures to identify and reduce the potential for disputes.

h)  **Continuing Obligations**. The Parties recognize that discovery shall be an iterative and cooperative process. The Parties will continue to meet and confer regarding any issues as reasonably necessary and appropriate. This Order does not address or resolve any objections to the Parties' respective discovery requests.

i)  **Reservation of Rights**.  The Parties agree that any topic not addressed herein is neither a waiver nor acknowledgement of agreement by either Party.

**IT IS SO STIPULATED**, through Counsel of Record.

DATED: March 15, 2024     Respectfully submitted,

*/s/ Lexi J. Hazam*
LEXI J. HAZAM
**LIEFF CABRASER HEIMANN &**
**BERNSTEIN, LLP**
275 BATTERY STREET, 29TH FLOOR
SAN FRANCISCO, CA 94111-3339
Telephone: 415-956-1000
lhazam@lchb.com

PREVIN WARREN
**MOTLEY RICE LLC**
401 9th Street NW Suite 630
Washington DC 20004
T: 202-386-9610
pwarren@motleyrice.com

Co-Lead Counsel

CHRISTOPHER A. SEEGER
**SEEGER WEISS, LLP**
55 CHALLENGER ROAD, 6TH FLOOR
RIDGEFIELD PARK, NJ 07660
Telephone: 973-639-9100
Facsimile: 973-679-8656
cseeger@seegerweiss.com

Counsel to Co-Lead Counsel

JENNIE LEE ANDERSON
**ANDRUS ANDERSON, LLP**
155 MONTGOMERY STREET, SUITE 900
SAN FRANCISCO, CA 94104
Telephone: 415-986-1400
jennie@andrusanderson.com

Liaison Counsel

MATTHEW BERGMAN
GLENN DRAPER
**SOCIAL MEDIA VICTIMS LAW CENTER**
821 SECOND AVENUE, SUITE 2100
SEATTLE, WA 98104
Telephone: 206-741-4862
matt@socialmediavictims.org
glenn@socialmediavictims.org

JAMES J. BILSBORROW
**WEITZ & LUXENBERG, PC**
700 BROADWAY
NEW YORK, NY 10003
Telephone: 212-558-5500
Facsimile: 212-344-5461
jbilsborrow@weitzlux.com
PAIGE BOLDT
**WATTS GUERRA LLP**
4 Dominion Drive, Bldg. 3, Suite 100
San Antonio, TX 78257
T: 210-448-0500
PBoldt@WattsGuerra.com

THOMAS P. CARTMELL
**WAGSTAFF & CARTMELL LLP**
4740 Grand Avenue, Suite 300
Kansas City, MO 64112
T: 816-701 1100
tcartmell@wcllp.com

JAYNE CONROY
**SIMMONS HANLY CONROY, LLC**
112 MADISON AVE, 7TH FLOOR
NEW YORK, NY 10016
Telephone: 917-882-5522
jconroy@simmonsfirm.com
CARRIE GOLDBERG
**C.A. GOLDBERG, PLLC**
16 Court St.
Brooklyn, NY 11241
T: (646) 666-8908
carrie@cagoldberglaw.com

SIN-TING MARY LIU
**AYLSTOCK WITKIN KREIS &
OVERHOLTZ, PLLC**
17 EAST MAIN STREET, SUITE 200
PENSACOLA, FL 32502
Telephone: 510-698-9566
mliu@awkolaw.com

ANDRE MURA
**GIBBS LAW GROUP, LLP**
1111 BROADWAY, SUITE 2100
OAKLAND, CA 94607
Telephone: 510-350-9717
amm@classlawgroup.com

EMMIE PAULOS
**LEVIN PAPANTONIO RAFFERTY**
316 SOUTH BAYLEN STREET, SUITE 600
PENSACOLA, FL 32502
Telephone: 850-435-7107
epaulos@levinlaw.com

ROLAND TELLIS
DAVID FERNANDES
**BARON & BUDD, P.C.**
15910 Ventura Boulevard, Suite 1600
Encino, CA 91436
Telephone: (818) 839-2333
Facsimile: (818) 986-9698
rtellis@baronbudd.com
dfernandes@baronbudd.com

ALEXANDRA WALSH
**WALSH LAW**
1050 Connecticut Ave, NW, Suite 500
Washington D.C. 20036
T: 202-780-3014
awalsh@alexwalshlaw.com

MICHAEL M. WEINKOWITZ
**LEVIN SEDRAN & BERMAN, LLP**
510 WALNUT STREET
SUITE 500
PHILADELPHIA, PA 19106
Telephone: 215-592-1500
mweinkowitz@lfsbalw.com

DIANDRA "FU" DEBROSSE ZIMMERMANN
**DICELLO LEVITT**
505 20th St North
Suite 1500
Birmingham, Alabama 35203
Telephone: 205.855.5700
fu@dicellolevitt.com

HILLARY NAPPI
**HACH & ROSE LLP**
112 Madison Avenue, 10th Floor
New York, New York 10016
Tel: 212.213.8311
hnappi@hrsclaw.com

JAMES MARSH
**MARSH LAW FIRM PLLC**
31 HUDSON YARDS, 11TH FLOOR
NEW YORK, NY 10001-2170
Telephone: 212-372-3030
jamesmarsh@marshlaw.com

*Attorneys for Individual Plaintiffs*

**ROB BONTA**
Attorney General
State of California

 _/s/ Megan O'Neill_____
Nick A. Akers (CA SBN 211222)
Senior Assistant Attorney General
Bernard Eskandari (SBN 244395)
Supervising Deputy Attorney General
Megan O'Neill (CA SBN 343535)
Joshua Olszewski-Jubelirer
(CA SBN 336428)
Marissa Roy (CA SBN 318773)
Deputy Attorneys General
California Department of Justice
Office of the Attorney General
455 Golden Gate Ave., Suite 11000
San Francisco, CA 94102-7004
Phone: (415) 510-4400
Fax: (415) 703-5480
Bernard.Eskandari@doj.ca.gov

*Attorneys for Plaintiff the People of the State of
California*

1

2    **RUSSELL COLEMAN**
     Attorney General
3    Commonwealth of Kentucky

4    */s/ J. Christian Lewis*
     J. Christian Lewis (KY Bar No. 87109),
5    *Pro hac vice*
     Philip Heleringer (KY Bar No. 96748),
6    *Pro hac vice*
     Zachary Richards (KY Bar No. 99209),
7    *Pro hac vice app. forthcoming*
     Daniel I. Keiser (KY Bar No. 100264),
8    *Pro hac vice*
     Matthew Cocanougher (KY Bar No. 94292),
9    *Pro hac vice*
     Assistant Attorneys General
10   1024 Capital Center Drive, Suite 200
     Frankfort, KY 40601
11   CHRISTIAN.LEWIS@KY.GOV
     PHILIP.HELERINGER@KY.GOV
12   ZACH.RICHARDS@KY.GOV
     DANIEL.KEISER@KY.GOV
13   MATTHEW.COCANOUGHER@KY.GOV
     Phone: (502) 696-5300
14   Fax: (502) 564-2698

15   *Attorneys for Plaintiff the Commonwealth of*
     *Kentucky*
16

17

18

19

20

21

22

23

24

25

26

27

28

COVINGTON & BURLING LLP

By: */s/ Ashley M. Simonsen*
Ashley M. Simonsen, SBN 275203
COVINGTON & BURLING LLP
1999 Avenue of the Stars
Los Angeles, CA 90067
Telephone: (424) 332-4800
Facsimile: + 1 (424) 332-4749
Email: asimonsen@cov.com

Phyllis A. Jones, *pro hac vice*
Paul W. Schmidt, *pro hac vice*
COVINGTON & BURLING LLP
One City Center
850 Tenth Street, NW
Washington, DC 20001-4956
Telephone: + 1 (202) 662-6000
Facsimile: + 1 (202) 662-6291
Email: pajones@cov.com

*Attorney for Defendants Meta Platforms, Inc.*
*f/k/a Facebook, Inc.; Facebook Holdings,*
*LLC; Facebook Operations, LLC; Facebook*
*Payments, Inc.; Facebook Technologies, LLC;*
*Instagram, LLC; Siculus, Inc.; and Mark Elliot*
*Zuckerberg*

FAEGRE DRINKER LLP
*By: /s/ Andrea Roberts Pierson*
Andrea Roberts Pierson, pro hac vice
FAEGRE DRINKER LLP
300 N. Meridian Street, Suite 2500
Indianapolis, IN 46204
Telephone: + 1 (317) 237-0300
Facsimile: + 1 (317) 237-1000
Email: andrea.pierson@faegredrinker.com

Amy R. Fiterman, pro hac vice
FAEGRE DRINKER LLP
2200 Wells Fargo Center
90 South Seventh Street
Minneapolis MN 55402
Telephone: +1 (612) 766 7768
Facsimile: + 1 (612) 766 1600
Email: amy.fiterman@faegredrinker.com

Geoffrey M. Drake, pro hac vice

1     KING & SPALDING LLP
      1180 Peachtree Street, NE, Suite 1600
2     Atlanta, GA 30309
      Telephone: +1 (404) 572 4726
3     Email: gdrake@kslaw.com

4
      David P. Mattern, pro hac vice
5     KING & SPALDING LLP
      1700 Pennsylvania Avenue, NW, Suite 900
6     Washington, D.C. 20006
      Telephone: +1 (202) 626 2946
7     Email: dmattern@kslaw.com

8
      *Attorneys for Defendants TikTok Inc. and*
9     *ByteDance Inc.*

10    MUNGER, TOLLES & OLSEN LLP
      By: */s/ Jonathan H. Blavin*
11    Jonathan H. Blavin, SBN 230269
      MUNGER, TOLLES & OLSON LLP
12    560 Mission Street, 27th Floor
      San Francisco, CA 94105-3089
13    Telephone: (415) 512-4000
      Facsimile: (415) 512-4077
14    Email: jonathan.blavin@mto.com

15
      Rose L. Ehler (SBN 29652)
16    Victoria A. Degtyareva (SBN 284199)
      Laura M. Lopez, (SBN 313450)
17    Ariel T. Teshuva (SBN 324238)
      MUNGER, TOLLES & OLSON LLP
18    350 South Grand Avenue, 50th Floor
      Los Angeles, CA 90071-3426
19    Telephone: (213) 683-9100
      Facsimile: (213) 687-3702
20    Email: rose.ehler@mto.com
      Email: victoria.degtyareva@mto.com
21    Email: Ariel.Teshuva@mto.com

22
      Lauren A. Bell (*pro hac vice forthcoming*)
23    MUNGER, TOLLES & OLSON LLP
      601 Massachusetts Ave., NW St.,
24    Suite 500 E
      Washington, D.C. 20001-5369
25    Telephone: (202) 220-1100
      Facsimile: (202) 220-2300
26    Email: lauren.bell@mto.com

27

28

1          *Attorneys for Defendant Snap Inc.*

2          WILSON SONSINI GOODRICH & ROSATI
           Professional Corporation
3          By: */s/ Brian M. Willen*
           Brian M. Willen (*pro hac vice*)
4          WILSON SONSINI GOODRICH & ROSATI
           1301 Avenue of the Americas, 40th Floor
5          New York, New York 10019
           Telephone: (212) 999-5800
6          Facsimile: (212) 999-5899
           Email: bwillen@wsgr.com
7
8          Lauren Gallo White
           Samantha A. Machock
9          WILSON SONSINI GOODRICH & ROSATI
           One Market Plaza, Spear Tower, Suite 3300
10         San Francisco, CA 94105
           Telephone: (415) 947-2000
11         Facsimile: (415) 947-2099
           Email: lwhite@wsgr.com
12         Email: smachock@wsgr.com
13
14         Christopher Chiou
           WILSON SONSINI GOODRICH & ROSATI
15         953 East Third Street, Suite 100
           Los Angeles, CA 90013
16         Telephone:  (323) 210-2900
           Facsimile:  (866) 974-7329
17         Email: cchiou@wsgr.com
18
19         *Attorneys for Defendants YouTube, LLC, Google*
           *LLC, and Alphabet Inc.*
20
21         WILLIAMS & CONNOLLY LLP
           By: */s/ Joseph G. Petrosinelli*
22         Joseph G. Petrosinelli (*pro hac vice*)
           jpetrosinelli@wc.com
23         Ashley W. Hardin (*pro hac vice*)
           ahardin@wc.com
24         680 Maine Avenue, SW
           Washington, DC 20024
25         Telephone.: 202-434-5000
           Fax: 202-434-5029
26
27         *Attorneys for Defendants YouTube, LLC, Google*
           *LLC, and Alphabet Inc.*
28

1        MORGAN, LEWIS & BOCKIUS LLP
         By: */s/ Stephanie Schuster*

2         Stephanie Schuster (*pro hac vice*)
         stephanie.schuster@morganlewis.com

3         1111 Pennsylvania Avenue NW
         NW Washington, DC 20004-2541

4         Tel.: 202.373.6595

5

6         Yardena R. Zwang-Weissman (SBN 247111)
         yardena.zwang-weissman@morganlewis.com

7         300 South Grand Avenue, 22nd Floor
         Los Angeles, CA 90071-3132

8         Tel.: 213.612.7238

9         Brian Ercole (*pro hac vice*)
         brian.ercole@morganlewis.com

10        600 Brickell Avenue, Suite 1600
        Miami, FL 33131-3075

11        Tel.: 305.415.3416

12        *Attorneys for Defendants YouTube, LLC and*

13        *Google LLC*

14    **IT IS ORDERED** that the foregoing Agreement is approved.

15

16

  Dated: _____ March 18, 2024 _____   _____

17          MAGISTRATE JUDGE PETER H.  KANG

18

19

20

21

22

23

24

25

26

27

28

# APPENDIX 1: PRODUCTION FORMAT

1) **Production Components.** Except as otherwise provided below, ESI must be produced in accordance with the following specifications:

    a) an ASCII delimited data file (.DAT) using standard delimiters;

    b) an image load file (.OPT) that can be loaded into commercially acceptable production software (*e.g.* Concordance);

    c) single page black-and-white TIFF images, or JPEG images when color is specified herein, or native files with single page placeholder TIFF images depending on the applicable production format for each type of file;

    d) and document level .TXT files for all documents containing extracted full text or OCR text.

    e) Family relationships between emails and their attachments, embedded files and their source document, and connected hardcopy documents will be maintained in production. Attachments should be consecutively produced with their parent.

    f) If a particular document warrants a different production format, the Parties will cooperate in good faith to arrange for a mutually acceptable production format.

2) **Production Media and Access Controls.** Productions must be encrypted and produced through secure electronic means, such as secure file sharing methods (*e.g.* FTP), or on CD, DVD, flash drive or external hard drive ("Production Media"). Each piece of Production Media must identify a production number corresponding to the production volume (*e.g.* "VOL001"). Each piece of Production Media must also identify: (a) the case caption; (b) the following label: "This media contains material subject to Court Ordered security measures"; (c) the Producing Party's name; (d) the production date; (e) the Bates Number range of the materials contained on the Production Media.

Nothing in this ESI Order will preclude or impair any and all protections provided the Parties by any Protective Order(s) agreed and entered into by the Parties. Parties will use best efforts to avoid the unnecessary copying or transmittal of produced documents. If questions arise, the Parties will meet and confer to ensure security concerns are addressed prior to the exchange of

any documents.

  **3)**  **Data Load Files/Image Load Files.** Each TIFF in a production must be referenced in the corresponding image load file. The total number of documents referenced in a production's data load file should match the total number of designated document breaks in the image load file(s) in the production. The total number of pages referenced in a production's image load file should match the total number of TIFF files in the production. All images must be assigned a unique Bates number that is sequential within a given document and across the production sets. The Bates Numbers in the image load file must match the corresponding documents' beginning Bates numbers in the data load file. The total number of documents in a production should match the total number of records in the data load file. Load files must not vary in format or structure within a production, or from one production to another except by agreement of the Parties.

  **4)**  **Metadata Fields.** Each of the metadata and coding fields set forth below that can be extracted should be produced for each document, except that if the field contains privileged information, that privileged information may be redacted. However, to the extent that metadata does not exist, is not available for any documents produced, this provision shall not be read to require any Party to extract, capture, collect, manually populate, or produce such metadata, with the exception of the following: (a) BEGBATES, (b) ENDBATES, (c) BEGATTACH, (d) ENDATTACH, (e) PRODVOL, (f) ALL CUSTODIANS, (g) CONFIDENTIALITY, (h) REDACTIONS, (i) REDACTION TYPE, (j) HASHVALUE, (k) NATIVEFILEPATH, and (l) TEXTFILEPATH, which should be populated by the Party or the Party's vendor. The Parties will make reasonable efforts to ensure that metadata fields automatically extracted from the documents correspond directly to the information that exists in the original documents.

| Field Name | Field Description |
|---|---|
| BEGBATES | Beginning Bates number for a particular document as stamped on the first production image for that document |
| ENDBATES | Ending Bates number as stamped on the last |

| Field Name | Field Description |
|---|---|
|  | production image for a particular document |
| BEGATTACH | First production Bates number of the first document in a family |
| ENDATTACH | Last production Bates number of the last document in a family |
| ATTACHCOUNT | Number of attachments to an e-mail or embedded parent, as generated by commercially available discovery processing tools. |
| ATTACHNAMES | Names of each individual Attachment, separated by semicolons. |
| PRODVOL | Production volume |
| ALLCUSTODIANS | List of all custodians associated with Document, i.e. "Custodian" + "Other Custodian" values delimited by semicolon. |
| ALLFILEPATHS | All original path(s) to the individual source file(s) when available in the ordinary course of business to and processable by the parties and their ESI vendors of choice. Includes path up to and including internal path of containers. |
| CONFIDENTIALITY | Confidentiality designation assigned to the document consistent with the Stipulated Protective Order governing this Litigation |
| NATIVEFILEPATH | Native File Link (Native Files only) |
| TEXTFILEPATH | Path to extracted text/OCR file for the document |
| HASHVALUE | MD5 hash value of the document |
| DOCUMENT TYPE | Descriptor for the type of document: "E-document" for electronic documents not attached to e-mails; "E-mail" for all e-mails; "E-attachment" for files that were attachments to e-mails; and "Physical" for hard copy physical documents that have been scanned and converted to an electronic image. |
| AUTHOR | Any value populated in the Author field of the |

| Field Name | Field Description |
|---|---|
|  | document properties |
| DOCDATE | Date the document was created according to filesystem information (format: MM/DD/YYYY) |
| DATELASTMODIFIED | Date when document was last modified according to filesystem information (format: MM/DD/YYYY) |
| LAST MODIFIED BY | Last person who modified (saved) a document, as generated by commercially available discovery processing tools. |
| TRACK CHANGES | Y if a document with track changes value, otherwise N or empty, if available separately from the HASHIDDENDATA flag |
| COMMENTS | Y if a document with comments, otherwise N or empty, if available separately from the HASHIDDENDATA flag |
| HASHIDDENDATA | Y if a document with hidden content value, otherwise N or empty |
| FILENAME | Filename of an electronic document |
| TITLE | Any value populated in the Title field of the document properties |
| DOCEXT | File extension of document pulled from the document properties |
| FROM | The sender of the email |
| TO | All recipients that were included on the "To" line of the email |
| CC | All recipients that were included on the "CC" line of the email |
| BCC | All recipients that were included on the "BCC" line of the email |
| DATETIMERECEIVED | Date and time email was received (format: MM/DD/YYYY HH:MM) |
| DATETIMESENT | Date and time email was sent (format: MM/DD/YYYY HH:MM) |

| Field Name | Field Description |
|---|---|
| TIMEZONE | The timezone used to process the document |
| EMAILSUBJECT | Subject line of email pulled from the document properties |
| THREADID | If a threading tool is used for emails, the thread id generated by the threading tool. |
| REDACTION TYPE[1] | General category of redaction reason as agreed to by the parties. For example,  PII, SCA, CODE, and/or PRIV.  If more than one, separate reasons by semicolons. |
| REDACTIONS | Y if a document is redacted, otherwise N or empty |

5) **TIFFs.** Unless excepted below, single page, black and white, Group IV TIFFs should be provided, at least 300 dots per inch (dpi) for all documents. Each TIFF image must be named according to a unique corresponding Bates number associated with the document. Each image must be branded according to the Bates number and the agreed upon confidentiality designation. Original document orientation should be maintained (i.e., portrait to portrait and landscape to landscape). Where the TIFF image is unreadable or has materially degraded the quality of the original, the Producing Party shall provide a higher quality TIFF image or the native or original file.  In addition, the Parties shall take reasonable efforts to process word processing documents (*e.g.*, MS Word) with track changes and/or comments unhidden on the TIFF image.

6) **Color.** Word processing documents containing tracked changes shall be produced in color, as single-page, 300 dpi JPG images with JPG compression and a high quality setting as to not degrade the original image.  The Producing Party shall comply with good faith by the Requesting Party to provide replacement color images for documents originally produced in black and white.  A Party making such a request shall make the request by individual Bates

---

[1] The Parties will provide specific information on any privilege(s) asserted in their privilege logs, in an overlay, or the redaction boxes.  The "Redaction Reason" field is informational only for redaction type and shall not in any way limit a party's right to assert attorney-client privilege, attorney-work product privilege, and/or any other applicable privilege or protection.

number(s) and shall limit requests made pursuant to this paragraph to a reasonable number of documents.

**7)    Text Files.** A single multi-page text file must be provided for each document, and the filename should match its respective TIFF filename for the first page of that document. Extracted text shall be generated with commercially acceptable technology set to include all comments, revisions, tracked changes, speaker's notes and text from documents with comments or tracked changes, and hidden and very hidden worksheets, slides, columns and rows. When possible, the text of native files should be extracted directly from the native file. Parties will perform optical character recognition ("OCR") on foreign language documents using the appropriate settings for languages reasonably anticipated to be in the production following a meet and confer with the Requesting Party to identify those languages. Text files will not contain the redacted portions of the documents. A commercially acceptable technology for OCR should be used for all scanned, hard copy documents and for documents with redactions other than Excel files and other spreadsheets which shall be redacted in native format. Text extracted from emails should include the following header information where available: (1) the individuals to whom the communication was directed ("To"), (2) the author of the email communication ("From"), (3) who was copied and blind copied on such email ("CC" and "BCC"), (4) the subject line of the email ("RE" or "Subject"), and (5) the date and time of the email. To the extent the text extraction technology the Parties are using can be configured to include the text of any URLs or links, the Parties shall utilize that setting.

**8)    Native files.** Spreadsheets (*e.g.* MS Excel), and un-redacted presentations (e.g. Microsoft PowerPoint,) will be produced in native format to the extent that they are produced in this Litigation, audio, video, and multi-media files will be produced in native format. The Parties will meet and confer on the production of other file types, such as proprietary files, etc. Native files will be produced with a link in the NATIVEFILEPATH field, along with extracted text (where extracted text is available) and applicable metadata fields set forth in paragraph 4 above. A Bates numbered TIFF placeholder indicating that the document was provided in native format must accompany every native file. Where redaction makes production of native-format

files other than spreadsheets or presentations infeasible, the Parties will confer to determine a reasonably usable form for the production, but spreadsheets shall presumptively be redacted in native, and presentations presumptively redacted in image form, in these cases without the need for further conferring.

**9)** **Production Format for Hard Copy Documents.** Documents that exist in hardcopy will be scanned to *.tiff image format and produced in accordance with the specifications set forth herein. Hard copy documents that are not text-searchable shall be made searchable by OCR prior to production.  In scanning paper documents, distinct documents should not be merged into a single record, and single documents should not be split into multiple records (i.e., paper documents should be logically unitized). In the case of an organized compilation of separate documents (for example, a binder containing several separate documents behind numbered tabs), the document behind each tab should be scanned separately, but the relationship among the documents in the compilation should be reflected in the proper coding of the beginning and ending document and attachment fields. The Parties will make their best efforts to unitize the documents correctly. If relevant documents are maintained in a file, folder, envelope, binder, notebook or similar container used to store documents, all contents therein shall be reviewed for production and privilege. Document pages which have affixed notes, such as Post-it notes, should be imaged with and without the note attached.

**10)** **Confidentiality Designation.** All images will be stamped with the appropriate confidentiality designations in accordance with the Stipulated Protective Order entered in this Litigation. Each document produced in native format will have its confidentiality designation identified in the filename of the native file and indicated on its corresponding TIFF placeholder.

**11)** **Bates Numbering**. Bates numbering should be a consistent length across the production, contain no special characters, and be numerically sequential within a given document.  If a Bates number or set of Bates numbers is skipped, the skipped number or set of numbers should be noted with a placeholder.  Attachments to documents will be assigned Bates numbers that directly follow the Bates numbers on the documents to which they were attached.

In addition, wherever possible, each image will have its assigned Bates number electronically "burned" onto the image.

**12)** **Databases and Other Structured Data.** To the extent that responsive information is stored in a database, or database management system, or proprietary system or application which has is directed to data storage as one of its primary functions, the Producing Party will identify the database and platform to the Requesting Party. The Producing Party shall produce exports and reports about such responsive information stored in such database, where such exports and reports shall be in a reasonably usable form, and information may be produced in CSV format, tab-delimited text format, Microsoft Excel format, or Microsoft Access format. If there are future disputes over the production of information from a database, the Parties shall meet and confer in good faith in an attempt to reach any further agreements (if needed) on the data to be produced and the format and scope of the production. The Producing Party will provide reasonable amounts of information about the databases to facilitate that discussion.

**13)** **Hyperlinks.** Document(s) and/or folder(s) of documents that are hyperlinked inside a responsive document (including hyperlinked inside emails) within a Producing Party's custody, possession, or control, do not need to be produced in the first instance as part of the same family group as the Document residing at the location to which that hyperlink points. If there are particular hyperlinks identified by the Requesting Party in produced documents, the Requesting Party may submit a list of hyperlinks to a particular Producing Party for potentially relevant documents by identifying the Bates number and URL or link text for each requested link to the Producing Party, and the Producing Party will engage in reasonable efforts to locate the hyperlinked document at that location and either identify it by Bates number or provide any responsive, non-produced, and non-privileged documents. The number of hyperlinks a Requesting Party may identify to a Producing Party shall not be excessive and shall be reasonable, proportional to the needs of the case, and not unduly burdensome.

**14)** **Embedded Objects.** The Parties agree non-substantive embedded objects, including, but not limited to, logos, icons, emoticons, and footers, may be culled from a document set (but not a document) and need not be produced as separate documents by a

Producing Party (i.e., such embedded objects will be produced within the document itself, rather than as separate documents). Embedded files, except for images (including but not limited to, logos, icons, emoticons), are to be produced as family groups. Embedded files should be assigned Bates numbers that directly follow the Bates numbers on the documents within which they are embedded.

15)    **Production of Family Groups and Relationships**. If any member of a family group is produced, all members of that group must also be produced or else logged as privileged, and no such member shall be withheld from production as a duplicate.

16)    **Dynamic Fields**. Documents with dynamic fields for file names, dates, and times will be imaged to show the field code (e.g., "[FILENAME]") where possible, rather than the values for such fields existing at the time the file is processed.

17)    **Time Zone**. The time zone used to process a document, including its metadata, shall be disclosed in the TIMEZONE metadata field consistent with Appendix 1, and shall be standardized for each Defendant across productions.

18)    **Redactions**.

a)    A Producing Party may redact (i) information subject to the attorney client privilege or the work product protection (PRIV); (ii) information that cannot be disclosed pursuant to the Stored Communications Act (SCA); (iii) source code subject to separate agreement applicable to production of source code (CODE); (iv) personal identifying information (PII) including phone numbers, personal addresses, personal email addresses, the month and day of birth, driver's license numbers, and other PII agreed to by the Parties (for example, the Parties shall complete their meet and confer on whether or not to redact users' ages and years of birth). In any event, there shall be no redaction of illnesses, injuries, and medical diagnoses. To the extent a document or pleading contains PII, the Parties shall designate such documents at the appropriate Confidentiality level under the Protective Order and shall comply with Fed. R. Civ. P. 5.2 with regard to filings with the Court.

b)    No redactions for relevance may be made within a produced document or ESI item. If, during the course of discovery, the Parties identify other kinds of information that any

Party has a reasonable basis for redacting, the Parties will meet and confer on a case-by-case basis regarding that information before such redactions are made. If the Parties cannot agree, they may seek resolution from the Court.

      c)     The Producing Party will indicate, on the face of the redaction, the asserted reason(s) for the redaction (PII, SCA, CODE, and/or PRIV) and the REDACTION TYPE metadata field shall indicate that the document contains redactions and the reason(s) for the redaction.

      d)     Notwithstanding the foregoing, this provision shall not be read to prohibit redactions permitted under any applicable U.S. law or Protective Order.

      e)     Where a responsive document contains both redacted and non-redacted content, the Parties shall produce the non-redacted portions of the document and the OCR text corresponding to the non-redacted portions.

      f)     Native Redactions. Spreadsheet files requiring redaction, including without limitation Microsoft Excel files, shall be redacted and produced natively (unless the Parties agree to production in some other format). In addition, a Producing Party may natively redact other files that cannot be properly imaged for redaction.

      g)     All images of redacted files shall be processed to show all comments, revision marks, speaker notes, marks made in track changes, or other user-entered data which are visible in a normal view of the document in its native application, unless such material is redacted and marked as redacted in accordance with this section. Where possible, any occurrences of date/time auto-field items, including in headers and footers, will be removed and replaced with the term AUTODATE to prevent the current date from being printed. Email header information (e.g., date and/or subject line) shall not be redacted unless it is independently privileged. The Parties shall honor reasonable requests for the production of particular redacted documents in other formats where the image is not reasonably usable.

      h)     Color.  Redacted versions of documents that would have been produced in color in their un-redacted form shall be produced in color as detailed herein.

**19)** **Exception Files**. The Parties will use reasonable efforts to address processing exceptions.

**20)** **Mobile and Handheld Device Documents and Data**. If responsive and unique data that can reasonably be extracted and produced in the formats described herein is identified on a mobile or handheld device, that data shall be produced in accordance with the generic provisions of this protocol. To the extent that responsive data identified on a mobile or handheld device is not susceptible to normal production protocols, the Parties will meet and confer to address the identification, production, and production format of any responsive documents and data contained on any mobile or handheld device.

# COVINGTON

BEIJING  BOSTON  BRUSSELS  DUBAI  FRANKFURT
JOHANNESBURG  LONDON  LOS ANGELES  NEW YORK
PALO ALTO  SAN FRANCISCO  SEOUL  SHANGHAI  WASHINGTON

Covington & Burling LLP
1999 Avenue of the Stars
Los Angeles, CA 90067-4643
T  +1 424 332 4800

**DELIVERED VIA PROCESS SERVER**                    July 24, 2024

Indiana Department of Health
N. Meridian Street
Indianapolis, IN 46204

Re: People of the State of California v. Meta Platforms, Inc., 4:23-cv-05448

Dear Sir/Madam:

Enclosed please find a subpoena being served upon you in connection with the above-captioned litigation currently pending in the U.S. District Court for the Northern District of California. I represent Defendants Meta Platforms, Inc., Instagram, LLC, Meta Payments, Inc. and Meta Platforms Technologies, LLC (collectively, the "Meta Defendants") in this matter.

The document subpoena requests the production of specific documents identified in the attached subpoena (see Attachment A to the subpoena), which are requested to be produced by 10:00 a.m. on August 23, 2024.  We are willing to work with you on the time, date, location, method and manner of document production, as well as answer any questions or concerns you may have regarding subpoena compliance.   It is sufficient compliance with this subpoena if you electronically transmit a copy of the requested documents to the undersigned.  As such, please contact me at ceppich@cov.com and 424-332-4764, to discuss document production and subpoena compliance, unless you are already represented by counsel in connection with this matter.

The Court is currently considering whether the Indiana Attorney General's Office has control over Indiana Department of Health's information for the purposes of discovery in this action.  If the Court rules that the Indiana Attorney General's Office has control over the Indiana Department of Health's information, the Indiana Attorney General has pending discovery requests that seek this agency's documents.  By serving this subpoena, Meta does not waive its position in the state agency dispute, nor does Meta in any way waive rights to compel the Indiana Attorney General to produce Indiana Department of Health information as part of discovery in this action.  However, to avoid further delay in the production of information from the Indiana Department of Health, Meta is serving the attached subpoena to request the timely production of this information.

Your anticipated time and assistance with this matter is greatly appreciated.

Best regards,

/s/ Christopher K. Eppich

Christopher K. Eppich

Enclosed:  Subpoena, Attachment A, and Attachment B

AO 88B  (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT
for the

Northern District of California

IN RE: SOCIAL MEDIA ADOLESCENT ADDICTION/PERSONAL INJURY  PRODUCTS LIABILITY LITIGATION

THIS DOCUMENT RELATES TO:
People of the State of California, et al. v. Meta Platforms, Inc., et al. Case No.: 4:23-cv-05448

)
)
)
)
)
)
)

Civil Action No.    4:22-MD-03047-YGR
MDL No. 3047

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS
## OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

To:    Indiana Department of Health
2 N. Meridian Street Indianapolis, IN 46204

*(Name of person to whom this subpoena is directed)*

☛ *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material: See Attachment A.

| Place: | Veritext Legal Solutions<br>111 Monument Circle, Suite 4350<br>Indianapolis, IN 46204 | Date and Time:<br><br>August 23, 2024; 10:00 a.m. |
|---|---|---|

❑ *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|
| | |

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date:    07/24/2024

*CLERK OF COURT*

OR

_____    /s/ Ashley Simonsen
*Signature of Clerk or Deputy Clerk*         *Attorney's signature*

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)*
Meta Platforms, Inc. f/k/a Facebook, Inc.; Instagram, LLC, Meta Payments, Inc. and
Meta Platforms Technologies, LLC,                                             who issues or requests this subpoena, are:
Ashley Simonsen, Covington & Burling LLP, 1999 Avenue of the Stars, Los Angeles, CA 90067, 424-332-4782, asimonsen@cov.com

## Notice to the person who issues or requests this subpoena
If this subpoena commands the production of documents, electronically stored information, or tangible things or the inspection of premises before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

AO 88B (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (Page 2)

Civil Action No. 4:23-cv-05448

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____

on *(date)* _____ .

     ❏ I served the subpoena by delivering a copy to the named person as follows: _____

_____ on *(date)* _____ ; or

     ❏ I returned the subpoena unexecuted because: _____

_____ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also
tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

     $ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $   0.00   .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc.:

Print    Save As...    Add Attachment    Reset

# Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

**(1) *For a Trial, Hearing, or Deposition.*** A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
  **(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
  **(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person
    **(i)** is a party or a party's officer; or
    **(ii)** is commanded to attend a trial and would not incur substantial expense.

**(2) *For Other Discovery.*** A subpoena may command:
  **(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
  **(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

**(1) *Avoiding Undue Burden or Expense; Sanctions.*** A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

**(2) *Command to Produce Materials or Permit Inspection.***
  **(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
  **(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
    **(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
    **(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

**(3) *Quashing or Modifying a Subpoena.***
  **(A)** *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
    **(i)** fails to allow a reasonable time to comply;
    **(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);
    **(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
    **(iv)** subjects a person to undue burden.
  **(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
    **(i)** disclosing a trade secret or other confidential research, development, or commercial information; or

    **(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
  **(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
    **(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
    **(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

**(1) *Producing Documents or Electronically Stored Information.*** These procedures apply to producing documents or electronically stored information:
  **(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
  **(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
  **(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
  **(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

**(2) *Claiming Privilege or Protection.***
  **(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
    **(i)** expressly make the claim; and
    **(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
  **(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

## DEFINITIONS AND INSTRUCTIONS TO ATTACHMENT A

## DEFINITIONS

1.      The term "communication" means the transmittal of information (in the form of facts, ideas, inquiries or otherwise).

2.      "Document" or "documents" shall have the broadest meaning ascribed to it by the Federal Rules of Civil Procedure, and includes, without limitation electronically stored information ("ESI") (including, without limitation, electronic databases and the data therein, all electronic messages or communications, electronic word processing documents, electronically stored voicemail, webpages, and social media posts) in accordance with any order in this case governing ESI at the time of production. Different versions of the same documents, including, but not limited to, drafts or documents with handwritten notations or marks not found in the original or on other copies are different documents.

3.      "You", "you", "Your" and "your" means the Indiana Department of Health.

4.      "Relating" or "related to" means and includes referring to, concerning, referencing, mentioning, associated with, constituting, discussing, containing, embodying, recording, reflecting, identifying, summarizing, incorporating, and/or dealing with or pertaining to in any way.

5.      "And" includes "or", and vice versa.

6.      The singular form of a word or term includes the plural, and vice versa.

7.      The present tense of a verb includes the past tense, and vice versa.

8.      The use of the article "the" shall not be construed as limiting the scope of any request.

9.      "Including" means "including without limitation."

10.     "Any" includes "all", and vice versa.

11.     The capitalized version of a word or term includes the lower case version of a word or term, and vice versa.

12.     "Social Media Platforms" or "Platforms" means a digital service that facilitates interactions between two or more distinct but interdependent sets of users, including but not limited to Facebook, Instagram, Snapchat, TikTok, YouTube, Twitter (or "X"), Pinterest, LinkedIn, BeReal, Lapse, Reddit, Threads, VSCO, Goodreads, Quora, Discord, Twitch, and Tumblr.

13.     "Young Users" means users of Social Platforms who are under 18 years of age when using the Platform(s).

All words, terms, and phrases not specifically defined herein are to be given their normal and customary meaning in the context in which they are used in these Requests.

## **INSTRUCTIONS**

1.     These Requests are intended to cover any and all documents in your possession, custody, or control, to the extent not privileged.  Documents held by any office, department, board, commission, or instrumentality of the Indiana Department of Health are within your possession, custody, or control.

2.     In accordance with ESI Protocol attached hereto as Attachment B, if you object to furnishing any of the documents or information requested by these Requests on the grounds of attorney-client privilege, work product, other privilege, or otherwise then, with respect to each such document:

        a.   state the nature of the privilege claimed;

        b.   state the date of each communication supporting the privilege claim;

        c.   identify all participants in the supporting communication;

        d.   state the specific grounds on which the objection is based; and

      e.  identify the specific request calling for such information;

2.      If you object to any Request on the grounds that it is vague or ambiguous, state: (i) the portions or terms of such Request that you claim to be vague or ambiguous; and (ii) the interpretation of the Request pursuant to which you provide a response.

3.      Each request shall be deemed continuing, so as to require supplemental or mandatory responses should you obtain additional responsive information subsequent to your initial responses.

4.      If you cannot fully respond to a particular Request after exercising due diligence to make inquiry and to secure the necessary information, provide a response to the extent possible, specifying your inability to respond to the remainder and providing whatever information or knowledge you have concerning the portion not responded to.

5.      Each page of a produced document shall have a legible, unique page identifier ("Bates Number") and confidentiality legend (where applicable) on the face of the image at a location that does not obliterate, conceal, or interfere with any information from the source document.  Redactions should be clearly marked or stamped on the page in such a way that it is clear from review that a portion of the image has been redacted.

6.      All responsive and non-privileged electronic documents shall be produced in the format ordered by the Court in its ESI order.

7.      All responsive electronic documents shall be produced in a format agreed upon by the parties, to include at least native versions of Excel spreadsheets and presentation files, with a Bates-stamped placeholder image.

8.      Unless otherwise specified, the time period for these Requests is January 1, 2012 to the date of production of the Documents.

## ATTACHMENT A

1.  Research, investigations, studies, surveys, reports, evaluations, or analyses concerning the mental, social, emotional, or behavioral health of persons ages 13 to 18.

2.  Research, investigations, studies, surveys, reports, evaluations, or analyses related to Social Media Platforms, including the importance of Social Media Platforms and the use of Social Media Platforms by Young Users and the potential benefits and harms created by the use of Social Media Platforms.

3.  Research, investigations, studies, surveys, reports, evaluations, or analyses concerning the mental, social, emotional, or behavioral health of Young Users, including those related to the effects of:
    a.  Social Media Platforms usage;
    b.  Video games usage;
    c.  Cell phone usage;
    d.  Messaging usage;
    e.  Usage of other electronics apart from usage of Social Media Platforms;
    f.  COVID-19 and/or remote learning;
    g.  Use of drugs or alcohol;
    h.  The opioid and fentanyl epidemic;
    i.  Poverty, homelessness, lack of health insurance, and/or food insecurity;
    j.  Physical health including nutrition, exercise, weight management, sleeping habits, and sexual activity;
    k.  Family trauma or deaths;
    l.  Academic pressure;
    m.  Violence, including school violence, domestic violence, gun violence, gun control and/or mass shootings;
    n.  Bullying or verbal abuse apart from usage of Social Media Platforms;
    o.  Political polarization;
    p.  Natural disasters;
    q.  Climate change;
    r.  Discrimination and inequity;
    s.  Global warfare and conflict; and
    t.  Any other potential causes of harms to the mental, social, emotional, or behavioral health of Young Users.

4.  Youth Risk Behavior Surveys conducted by the Indiana Department of Health or on its behalf.

5.  Research, investigations, studies, surveys, reports, evaluations, or analyses related to:
    a.  Features of Social Media Platforms that are psychologically or physically harmful to Young Users;
    b.  Features of Social Media Platforms that promote compulsive, prolonged, or unhealthy use by Young Users;
    c.  The impact of features of Social Media Platforms, including:

(1) Algorithmic recommendation and sequencing;
(2) Image filters;
(3) Use of multiple user accounts;
(4) Infinite scroll;
(5) Ephemeral content features;
(6) Autoplay;
(7) Quantification and display of likes; or
(8) Audiovisual and haptic alerts.

6. Programs, initiatives, efforts, or actions proposed or taken by the Indiana Department of Health to address Young Users' use of Social Media Platforms, including any program, initiative, effort, or action to prevent, limit, encourage, or promote the use of Social Media Platforms by Young Users.

7. Policies proposed, recommended, or enacted by the Indiana Department of Health regarding screen time and acceptable use of cell phones, computers, tablets, or other electronic devices by Young Users.

8. Complaints to the Indiana Department of Health by teachers or school districts regarding social media or cell phone use by Young Users and/or the need for acceptable use or other policies to address Young Users' use of social media or cell phones.

9. Complaints to the Indiana Department of Health by teachers or school districts regarding budget crises from inflation, underfunding, unfunded mandates, and other causes.

10. Documents related to state assessments in Indiana, including reports and analyses regarding the history of K-12 state assessment or standardized testing scores, performance by schools and/or school districts, and any other measures of school performance.

11. Legislation or policies proposed by, proposed on behalf of, or testified on by the Indiana Department of Health, regardless of whether such legislation or policies were enacted, regarding Young Users' use of Social Media Platforms.

12. Mental, social, emotional, or behavioral health services provided by the Indiana Department of Health to Young Users during the Relevant Period, including:
    a. Counseling or therapy;
    b. Psychiatric services;
    c. Crisis intervention;
    d. Inpatient short-term and long-term programs;
    e. Resource centers; and
    f. Services for Young Users dealing with substance abuse or addiction issues.

13. Any and all Indiana Department of Health grants to address Young Users' mental health, including information about when, where, why, and how any disbursements were paid, any schedules or plans for future disbursements, policies governing evaluation or approval of

such disbursements, records of how the disbursements were used, and all agendas, minutes, notes, or recordings from meetings related to such grant.

14. Public or non-public meetings held by the Indiana Department of Health related to Social Media Platforms and use of Social Media Platforms by Young Users, including but not limited to, notices, meeting notes, PowerPoint presentations, internal memoranda, summaries, personal notes, or attendee lists.

15. Policies, procedures, and practices related to the Indiana Department of Health's use of Social Media Platforms, including communication of information or promotion of Indiana Department of Health's programs, initiatives, efforts, or actions on Social Media Platforms.

16. Indiana Department of Health's communications and/or collaboration with any Social Media Platform on any program, initiative or other action related to, or directed at, Young Users.

17. Indiana Department of Health's communications with any third party related to Young Users and/or Social Media Platforms.

18. Budgeted and actual expenditures by the Indiana Department of Health during the Relevant Period related to Young Users' use of Social Media Platforms.

19. Budgeted and actual expenditures by the Indiana Department of Health during the Relevant Period related to treatment of teen mental, social, emotional, or behavioral health issues.

20. Policies, procedures, and practices applicable to the Indiana Department of Health and Indiana Department of Health employees regarding the use of Social Media Platforms, including any changes to these policies during the Relevant Period.

21. Studies, programs, initiatives, efforts, or actions proposed or taken by the Indiana Department of Health that sought to provide or promote internet access or phones, computers, tablets, or other electronic devices to Young Users.

22. Indiana Department of Health's budget and actual expenditures during the Relevant Period, including expenditures on:
    a. Digital advertisements by the Indiana Department of Health on Social Media Platforms;
    b. Digital advertisements by the Indiana Department of Health purchased through Social Media Platforms.

**ATTACHMENT B**

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: *Social Media Adolescent Addiction/Personal Injury Products Liability Litigation*<br><br>This document relates to:<br>ALL ACTIONS | MDL No. 3047<br>Case No. 4:22-md-03047-YGR<br><br>Honorable Yvonne Gonzalez Rogers<br>Honorable Peter H. Kang<br><br>**STIPULATION AND [PROPOSED] ORDER GOVERNING THE PRODUCTION OF ELECTRONICALLY STORED INFORMATION AND HARD COPY DOCUMENTS** |

## 1.    PURPOSE

This Order Governing the Production of Electronically Stored Information and Hard Copy Documents ("ESI Order") will govern discovery of electronically stored information and any hard copy documents in this Litigation as a supplement to the Federal Rules of Civil Procedure, this District's Guidelines for the Discovery of Electronically Stored Information, and any other applicable orders and rules. "This Litigation" includes all actions currently in MDL No. 3047, *In Re: Social Media Adolescent Addiction/Personal Injury Products Liability*, or hereafter added or transferred to MDL No. 3047, and all actions later remanded to their respective transferor courts.

## 2.    DEFINITIONS

a)   "Document" is defined to be synonymous in meaning and equal in scope to the usage of this term in Rules 26 and 34 of the Federal Rules of Civil Procedure and shall include Hard-Copy Documents and ESI.

b) "Electronically stored information" or "ESI," as used herein has the same meaning as in Federal Rules of Civil Procedure 26 and 34.

c) "Hard-Copy Document" means Documents existing in paper form at the time of collection.

d) "Searchable Text" means the native text extracted from an Electronic Document and any Optical Character Recognition text ("OCR text") generated from a Hard-Copy Document or electronic image.

**3.     COOPERATION**

The Parties are aware of the importance the Court places on cooperation and commit to cooperate in good faith throughout this Litigation consistent with this Court's Guidelines for the Discovery of ESI and this Court's Rules of Professional Conduct. The Parties will endeavor to cooperate in good faith and be reasonably transparent in all aspects of the discovery process.

**4.     LIAISON**

The Parties will identify Discovery Liaisons to each other who are and will be knowledgeable about and responsible for discussing their respective ESI.  Any Party is free to change their designated Discovery Liaison by providing written notice to the other Parties. Each Party's Discovery Liaison must: (a) be prepared to meet and confer on discovery-related matters and to participate in discovery dispute resolution; (b) be knowledgeable about the Party's discovery efforts; (c) be, or have reasonable access to those who are, familiar with the Party's electronic systems and capabilities in order to explain those systems and answer relevant questions; and (d) be, or have reasonable access to those who are knowledgeable about the technical aspects of discovery, including electronic document storage, organization, and format issues, and relevant information retrieval technology, including search methodology.

**5.     IDENTIFICATION OF CUSTODIANS AND DATA SOURCES**

The parties will disclose information about custodians and custodial and non-custodial data sources likely to possess relevant or responsive information in accordance with Fed. R. Civ. P. 26 and this District's ESI Guidelines. The Parties will participate in Rule 26(f) discussions guided by this District's Checklist for Rule 26(f) Meet and Confer Regarding Electronically

Stored Information. After responses to Requests for Production under Fed. R. Civ. P. 34 have been served, the parties will meet and confer regarding those custodians and custodial and non-custodial data sources from which Documents and ESI will be collected for search and review for potential production in this litigation. The custodian and data source exchanges will include brief explanations of the rationale for their selections; for example, for custodians, their current job titles and descriptions of their work, and for data sources, location information and description.

### 6. INACCESSIBLE OR UNUSABLE ESI

If a Producing Party asserts that certain requested ESI is inaccessible or not "reasonably accessible," otherwise unnecessary, or if the Receiving Party asserts that, following production, certain ESI is not reasonably useable, the parties shall meet and confer to discuss resolving such assertions. The parties will exchange sufficient information to enable the parties to confer in good faith. If the parties cannot resolve any such disputes after such a meet and confer has taken place, the issue shall be presented to the Court for resolution.

### 7. KNOWN RESPONSIVE DOCUMENTS

Documents or ESI identified in a custodial or non-custodial file, or in a discrete folder or collection, that are known to a Producing Party through reasonable investigation to be responsive to a discovery request shall be collected for review without regard to whether the responsive content was located via any search methodology developed in accordance with this Order, and nothing about such review shall prevent the Producing Party from redacting or withholding and logging such documents for applicable privileges.

### 8. SEARCH METHODOLOGIES

The Parties shall adopt reasonable and proportionate methodologies to identify, search, collect, cull, review, and produce ESI as required under applicable legal standards. The Parties recognize and agree that each Party may use one or more methodologies to identify, search, collect, cull, review, and produce responsive and non-privileged ESI, including the use of keyword search terms and/or the use of technology assisted review ("TAR") as discussed further herein. The Parties further recognize that different data sets may implicate different methodologies to identify, search, collect, cull, review, and produce responsive and non-

1    privileged ESI. The Parties therefore agree to meet and confer in good faith regarding any

2    potential disputes over their respective ESI productions.

3         **9.    HIT REPORTS AND SEARCH TERMS**

4         If a Producing Party uses search terms to identify, search, or cull potentially responsive

5    ESI, the Producing Party shall disclose the search terms to the Requesting Party. The Parties shall

6    meet and confer regarding any disputes over the disclosed search terms. In the event that a

7    Producing Party claims burden with respect to modified and/or additional search terms proposed

8    by a Requesting Party, the Producing Party shall provide a hit report for the terms at issue using

9    industry-standard processing tools, such as NUIX or other similar tools. The Producing Party

10   shall provide a hit report for the document collection where the terms were applied, including the

11   following with respect to each proposed or modified search term in the collection:

12        a)   The number of documents with hits for that term; and

13        b)   The number of unique documents, i.e., documents which do not have hits for any other

14             term.

15        If, after reviewing a hit report from a Producing Party, a Requesting Party so chooses, it

16   may reasonably request a further hit report which includes:

17        c)   The number of family members, including the documents with hits, of the documents

18             with hits for that term; and

19        d)   The number of unique family members of the documents with hits for that term.

20        If the ESI tool for the Producing Party is capable without undue burden of providing the

21   number of family members and unique family members, then the Producing Party shall provide

22   such further hit report. The Parties (including the person most knowledgeable about the

23   capabilities of the Producing Party's ESI tool and the Requesting Party's person most

24   knowledgeable about technical issues from its ESI service provider) shall meet and confer

25   regarding any disputes over whether the Producing Party's ESI tool has the capability or not to

26   provider either number of family members or number of unique family members.

27        The Parties shall meet and confer to resolve disagreements over the search terms or their

28   application. To the extent the Parties are unable to reach agreement on the application of, or

1   procedures for, any search or filtering processes, the Parties shall fully comply with the

2   provisions of this Court's Discovery Standing Order regarding the procedure for raising discovery

3   disputes with the Court, including the meet and confer and certification requirements therein.

4         **10.   TECHNOLOGY ASSISTED REVIEW (TAR)**

5         A Producing Party may use TAR (technology-assisted review) during the culling and

6   review process of ESI, which may be applied in addition to search terms. If a Producing Party

7   uses TAR to cull, filter out, or exclude documents from that Party's production, that Producing

8   Party shall do the following:

9         • If a Producing Party chooses to apply both search terms and TAR to a review set,

10          the Producing Party will disclose the search terms to all other Party/Parties.

11         • Disclose the name of the TAR tool or service used to all other Party/Parties.

12         **11.   VALIDATION**

13         Each Producing Party shall take reasonable steps to validate its review process (i.e., using

14   quality control measures to determine whether its production is missing relevant ESI or contains

15   substantial amounts of irrelevant ESI) and make any necessary adjustments or corrections to its

16   process. If, after reviewing a Producing Party's production, a Requesting Party reasonably

17   requests additional information regarding the validation method(s) used by the Producing Party,

18   the Producing Party will disclose the level of end-to-end recall (the percentage of responsive

19   Documents in the collection which were identified as responsive by that Producing Party's

20   methodology). If there remain disputes between the Parties regarding validation, the Parties shall

21   meet and confer to resolve such disputes in good faith, including a reasonable discussion

22   regarding the tool used and the parameters used to obtain or calculate the level of recall.

23         **12.   UNSEARCHABLE DOCUMENTS**

24         The Producing Party shall use reasonable efforts to identify and review potentially

25   responsive documents for which text-based search technologies are fundamentally ineffective.

26         **13.   SYSTEM FILES**

27         Each Party will use its best efforts to filter out common system files and application

28   executable files using the national software reference library ("NSRL") NIST hash set list. The

Parties also may filter out stand-alone files identified as zero bytes in size. Additional culling of file types based on file header information may be applied to the following, provided these files are not known to be otherwise attached, embedded in, or included with an otherwise responsive document, or are not themselves reasonably known to contain information responsive or contain responsive data or are used to interface with users or interact with or access individual or aggregated user data: Application Package File, Backup Files, Batch Files, Binary Disc Image, C++ File Formats, Cascading Style Sheet, Configuration File, Database File, Dictionary Files, Dynamic Link Library, Event Log Files, Executable Files, Hypertext Cascading Stylesheet, Java Archive Files, JavaScript Files, JavaScript Source Code and Class Files, Macintosh Resource Fork Files, Package Manager Files, Program Files, Program Installers, Python Script Files, Shell Script Files, System or Temporary Files, Thumbnail Cache Files, Troff Files, Truetype Font Files, Windows Cabinet File, Windows Command Files, Windows File Shortcut, Windows Help Files, Windows Metafiles and Enhanced Metafiles, Windows Spool Files, Windows System File.

## 14.     DEDUPLICATION

Each Producing Party shall make reasonable efforts to globally deduplicate exact duplicate Documents within that Producing Party's ESI data set across all custodial and non-custodial sources at the family level using either MD5 hash values or SHA hash values or any other agreed-upon (and disclosed) industry-standard deduplication technology. The Parties shall reach agreement on such other deduplication technology and shall reach agreement on how their deduplication tools shall identify exact duplicates of documents in a manner that is consistent with the disclosed tools and technologies a Producing Party is using. The Parties shall reach agreement on how to identify exact duplicates of emails using industry-standard commercially available software tools or services, which may for example calculate hash values of emails based on concatenated values of agreed-upon email fields and/or hash values of attachments, or which may use any other method the Parties agree upon. Having further met and conferred in keeping with the previous sentence, the Parties shall calculate deduplication hash values for emails on the concatenated values set forth in and in accordance with the documentation specifications of the disclosed deduplication tools to be used in this Litigation (i.e., RelativityOne, Relativity Server,

1    and Nuix); however, if Nuix is used, the Producing Party shall select the optional field "Include

2    Bcc" as an additional field to add to the default ones.

3           The Parties shall not withhold from production near-duplicates without meeting and

4    conferring on this issue.

5           The names of all custodians who were either identified as custodians for purposes of

6    collection for this matter (or otherwise known by the Producing Party to have been in possession

7    or custody of a document prior to deduplication) will be populated in the ALL CUSTODIANS

8    metadata field for the produced version of a document that has duplicates removed from

9    production. The original file paths (if any exist) of a document prior to deduplication will be

10   populated in the ALL FILE PATHS metadata field of the produced document.

11          **15.    EMAIL THREADING**

12          The Parties may use analytics technology to identify email threads and shall produce the

13   unique most inclusive copy and related family members. Where multiple email messages are part

14   of a single chain or "thread," a Party is only required to produce the most inclusive copy of an

15   email message(s) ("Last In Time Email(s)") and need not produce earlier, lesser inclusive email

16   messages or "thread members," provided that the tool or software service being used to perform

17   threading is disclosed. A Producing Party may exclude from production lesser inclusive copies of

18   the most inclusive email message in the thread, where the entire body of each of those lesser

19   inclusive copies is included within the Last in Time Email. The Producing Party will honor

20   reasonable requests to produce lesser inclusive copies of a Last In Time Email or other earlier

21   chains of emails otherwise excluded by email thread suppression.

22          The Parties shall treat new or different email chains or threads pursuant to further

23   agreement on safeguards or guidelines for defining emails threads which reasonably take into

24   account the capabilities of the email threading/dethreading/hyperthreading tools used by each

25   Defendant (which shall be disclosed to Plaintiffs).

26          **16.    SOURCE CODE**

27          The Parties will meet and confer to address the production and/or inspection of source

28   code and entering into a separate order governing the same if needed.

### 17.   PRODUCTION FORMATS

The Parties agree to produce documents and data in the formats described in **Appendix 1** to this ESI Order. If particular documents or categories of documents identified in response to document requests warrant a different format, the Parties will cooperate to arrange for the mutually acceptable production of such documents. The Parties further agree not to degrade the searchability of documents as part of the document production process.

In addition, the Parties agree that the production and production format of social media and/or user account information is not covered by this agreement and to meet and confer on the production and production format, including metadata, for social media and/or user account information.

### 18.   PHASING

Once the Parties begin propounding discovery requests pursuant to Fed. R. Civ. P. 34, the Parties agree to meet and confer regarding appropriate phasing for the production of ESI.

### 19.   MISCELLANEOUS PROVISIONS

a) **Production of Plaintiffs ESI and Case-Specific Materials**.  Subject to any further agreement among the Parties or Order of the Court, the Parties shall produce case-specific documents (i.e., documents specific to the claim of a given Plaintiff, produced by Plaintiffs or Defendants) for any Plaintiff in discovery pools or other selections designed to inform bellwether selection, including those selected for a bellwether trial, in accordance with the production format specified herein, provided, however, that the Producing Party may elect to produce such materials in their native format. To the extent production of case-specific documents for any Plaintiff selected for a bellwether trial presents an issue for any Party, the Parties shall reasonably confer, and may present any disputes to the Court or its designee.  The Parties shall further agree to confer concerning the production format and associated matters (*e.g.*, hosting platform) for case-specific documents produced in the cases of other Plaintiffs. Nothing herein shall limit Defendant's right to seek discovery from any Plaintiff.

b) **Translations Of Produced Materials**.  The Producing Party has no obligation to

create a translation of the Documents or any portion thereof. For any foreign-language

documents responsive to document requests that a Party reasonably knows as the

result of a reasonable investigation have been translated into the English language

using human translators or through machine translation for its own purposes, except to

the extent such translation is protected by attorney-client or work-product privileges,

the Producing Party shall produce the translation of the original document with the

original. The parties will meet and confer as necessary concerning procedures for

using translations at depositions and at trial. In the event the Parties cannot reach

agreement, the matter may be submitted to the Court for determination.

c) **Third-Party Documents**.  A Party that issues a Non-Party subpoena ("Issuing Party")

shall include a copy of this Order with the subpoena and state that (1) the subpoenaed

Non-Party should produce Documents in response to the subpoena to all Parties; and

(2) the Parties to this Litigation have requested that Third Parties produce Documents

in accordance with the specifications set forth herein. If the subpoenaed Non-Party

produces Documents to the Issuing Party but does not produce those Documents to

other Parties, the Issuing Party shall produce such Documents to those other Parties

within 14 days of receiving the Documents, except where the Documents are to be

used in a deposition, in which case the Issuing Party shall produce such Documents to

all other Parties no later than three (3) days prior to the deposition, or as soon as

reasonably practicable if such production occurs thereafter. Nothing in this Order is

intended or may be interpreted to narrow, expand, or otherwise affect the rights of the

Parties or Third Parties to object to a subpoena. If the Non-Party production is not

Bates-stamped, the Parties will meet and confer to agree upon a format for designating

the documents with a unique Bates Number prefix.

d) **Documents Produced by Parties – Presumption of Authenticity**.  In order to reduce

the number of requests for admission, this Order establishes a rebuttable presumption

that documents produced by the Parties are authentic, if said documents were either

created or authored by the producing Party, or any of its employees, agents, or

contractors, so long as the employees', agents', or contractors' work was performed in connection with a project or assignment sponsored by the producing Party.  No further evidence to establish authenticity need be provided.  Nothing in this paragraph shall be deemed to waive any other evidentiary objection a party may have, including but not limited to hearsay, foundation/personal knowledge, or relevance.

e) **Re-productions.** Notwithstanding any provisions to the contrary, re-production of discrete sets of documents from another litigation, arbitration, government inquiry, or other matter may be re-produced in the same manner and form as originally produced in the other matter, provided however that a party will re-produce documents in a different format for good cause shown. This provision does not waive the right of a party to object to any requests for reproduction of production files from another litigation, arbitration, government inquiry, or other matter.

f) **Modification**.  This ESI Order may be modified by a Stipulated Order of the Parties or by the Court for good cause shown.

g) **Good Faith**.  The Parties will act in good faith as required by law and use these procedures to identify and reduce the potential for disputes.

h) **Continuing Obligations**. The Parties recognize that discovery shall be an iterative and cooperative process. The Parties will continue to meet and confer regarding any issues as reasonably necessary and appropriate. This Order does not address or resolve any objections to the Parties' respective discovery requests.

i) **Reservation of Rights**.  The Parties agree that any topic not addressed herein is neither a waiver nor acknowledgement of agreement by either Party.

**IT IS SO STIPULATED**, through Counsel of Record.

DATED: March 15, 2024

Respectfully submitted,

*/s/ Lexi J. Hazam*
LEXI J. HAZAM
**LIEFF CABRASER HEIMANN &**
**BERNSTEIN, LLP**
275 BATTERY STREET, 29TH FLOOR
SAN FRANCISCO, CA 94111-3339
Telephone: 415-956-1000
lhazam@lchb.com

PREVIN WARREN
**MOTLEY RICE LLC**
401 9th Street NW Suite 630
Washington DC 20004
T: 202-386-9610
pwarren@motleyrice.com

Co-Lead Counsel

CHRISTOPHER A. SEEGER
**SEEGER WEISS, LLP**
55 CHALLENGER ROAD, 6TH FLOOR
RIDGEFIELD PARK, NJ 07660
Telephone: 973-639-9100
Facsimile: 973-679-8656
cseeger@seegerweiss.com

Counsel to Co-Lead Counsel

JENNIE LEE ANDERSON
**ANDRUS ANDERSON, LLP**
155 MONTGOMERY STREET, SUITE 900
SAN FRANCISCO, CA 94104
Telephone: 415-986-1400
jennie@andrusanderson.com

Liaison Counsel

MATTHEW BERGMAN
GLENN DRAPER
**SOCIAL MEDIA VICTIMS LAW CENTER**
821 SECOND AVENUE, SUITE 2100
SEATTLE, WA 98104
Telephone: 206-741-4862
matt@socialmediavictims.org
glenn@socialmediavictims.org

JAMES J. BILSBORROW
**WEITZ & LUXENBERG, PC**
700 BROADWAY
NEW YORK, NY 10003
Telephone: 212-558-5500
Facsimile: 212-344-5461
jbilsborrow@weitzlux.com

PAIGE BOLDT
**WATTS GUERRA LLP**
4 Dominion Drive, Bldg. 3, Suite 100
San Antonio, TX 78257
T: 210-448-0500
PBoldt@WattsGuerra.com

THOMAS P. CARTMELL
**WAGSTAFF & CARTMELL LLP**
4740 Grand Avenue, Suite 300
Kansas City, MO 64112
T: 816-701 1100
tcartmell@wcllp.com

JAYNE CONROY
**SIMMONS HANLY CONROY, LLC**
112 MADISON AVE, 7TH FLOOR
NEW YORK, NY 10016
Telephone: 917-882-5522
jconroy@simmonsfirm.com

CARRIE GOLDBERG
**C.A. GOLDBERG, PLLC**
16 Court St.
Brooklyn, NY 11241
T: (646) 666-8908
carrie@cagoldberglaw.com

SIN-TING MARY LIU
**AYLSTOCK WITKIN KREIS &
OVERHOLTZ, PLLC**
17 EAST MAIN STREET, SUITE 200
PENSACOLA, FL 32502
Telephone: 510-698-9566
mliu@awkolaw.com

ANDRE MURA
**GIBBS LAW GROUP, LLP**
1111 BROADWAY, SUITE 2100
OAKLAND, CA 94607
Telephone: 510-350-9717
amm@classlawgroup.com

1

2

3   EMMIE PAULOS
    **LEVIN PAPANTONIO RAFFERTY**
4   316 SOUTH BAYLEN STREET, SUITE 600
    PENSACOLA, FL 32502
5   Telephone: 850-435-7107
    epaulos@levinlaw.com
6

7   ROLAND TELLIS
    DAVID FERNANDES
8   **BARON & BUDD, P.C.**
    15910 Ventura Boulevard, Suite 1600
9   Encino, CA 91436
    Telephone: (818) 839-2333
10  Facsimile: (818) 986-9698
    rtellis@baronbudd.com
11  dfernandes@baronbudd.com

12
    ALEXANDRA WALSH
13  **WALSH LAW**
    1050 Connecticut Ave, NW, Suite 500
14  Washington D.C. 20036
    T: 202-780-3014
15  awalsh@alexwalshlaw.com

16
    MICHAEL M. WEINKOWITZ
17  **LEVIN SEDRAN & BERMAN, LLP**
    510 WALNUT STREET
18  SUITE 500
    PHILADELPHIA, PA 19106
19  Telephone: 215-592-1500
    mweinkowitz@lfsbalw.com
20

21  DIANDRA "FU" DEBROSSE ZIMMERMANN
    **DICELLO LEVITT**
22  505 20th St North
    Suite 1500
23  Birmingham, Alabama 35203
    Telephone: 205.855.5700
24  fu@dicellolevitt.com

25

26

27

28

HILLARY NAPPI
**HACH & ROSE LLP**
112 Madison Avenue, 10th Floor
New York, New York 10016
Tel: 212.213.8311
hnappi@hrsclaw.com

JAMES MARSH
**MARSH LAW FIRM PLLC**
31 HUDSON YARDS, 11TH FLOOR
NEW YORK, NY 10001-2170
Telephone: 212-372-3030
jamesmarsh@marshlaw.com

*Attorneys for Individual Plaintiffs*

**ROB BONTA**
Attorney General
State of California

 */s/ Megan O'Neill*
Nick A. Akers (CA SBN 211222)
Senior Assistant Attorney General
Bernard Eskandari (SBN 244395)
Supervising Deputy Attorney General
Megan O'Neill (CA SBN 343535)
Joshua Olszewski-Jubelirer
(CA SBN 336428)
Marissa Roy (CA SBN 318773)
Deputy Attorneys General
California Department of Justice
Office of the Attorney General
455 Golden Gate Ave., Suite 11000
San Francisco, CA 94102-7004
Phone: (415) 510-4400
Fax: (415) 703-5480
Bernard.Eskandari@doj.ca.gov

*Attorneys for Plaintiff the People of the State of*
*California*

1

2    **RUSSELL COLEMAN**
     Attorney General
3    Commonwealth of Kentucky

4    */s/ J. Christian Lewis*
     J. Christian Lewis (KY Bar No. 87109),
5    *Pro hac vice*
     Philip Heleringer (KY Bar No. 96748),
6    *Pro hac vice*
     Zachary Richards (KY Bar No. 99209),
7    *Pro hac vice app. forthcoming*
     Daniel I. Keiser (KY Bar No. 100264),
8    *Pro hac vice*
     Matthew Cocanougher (KY Bar No. 94292),
9    *Pro hac vice*
     Assistant Attorneys General
10   1024 Capital Center Drive, Suite 200
     Frankfort, KY 40601
11   CHRISTIAN.LEWIS@KY.GOV
     PHILIP.HELERINGER@KY.GOV
12   ZACH.RICHARDS@KY.GOV
     DANIEL.KEISER@KY.GOV
13   MATTHEW.COCANOUGHER@KY.GOV
     Phone: (502) 696-5300
14   Fax: (502) 564-2698

15   *Attorneys for Plaintiff the Commonwealth of*
16   *Kentucky*

17

18

19

20

21

22

23

24

25

26

27

28

1                             COVINGTON & BURLING LLP

2                             By:  */s/ Ashley M. Simonsen*

3                             Ashley M. Simonsen, SBN 275203
                            COVINGTON & BURLING LLP

4                             1999 Avenue of the Stars
                            Los Angeles, CA 90067

5                             Telephone: (424) 332-4800
                            Facsimile: + 1 (424) 332-4749

6                             Email: asimonsen@cov.com

7

8                             Phyllis A. Jones, *pro hac vice*
                            Paul W. Schmidt, *pro hac vice*

9                             COVINGTON & BURLING LLP
                            One City Center

10                           850 Tenth Street, NW
                            Washington, DC 20001-4956

11                           Telephone: + 1 (202) 662-6000
                            Facsimile: + 1 (202) 662-6291

12                           Email: pajones@cov.com

13                           *Attorney for Defendants Meta Platforms, Inc.*

14                           *f/k/a Facebook, Inc.; Facebook Holdings,*
                          *LLC; Facebook Operations, LLC; Facebook*

15                           *Payments, Inc.; Facebook Technologies, LLC;*
                          *Instagram, LLC; Siculus, Inc.; and Mark Elliot*

16                           *Zuckerberg*

17                           FAEGRE DRINKER LLP

18                           *By: /s/ Andrea Roberts Pierson*
                          Andrea Roberts Pierson, pro hac vice

19                           FAEGRE DRINKER LLP
                          300 N. Meridian Street, Suite 2500

20                           Indianapolis, IN 46204
                          Telephone: + 1 (317) 237-0300

21                           Facsimile: + 1 (317) 237-1000
                          Email: andrea.pierson@faegredrinker.com

22

23                           Amy R. Fiterman, pro hac vice
                          FAEGRE DRINKER LLP

24                           2200 Wells Fargo Center
                          90 South Seventh Street

25                           Minneapolis MN 55402
                          Telephone: +1 (612) 766 7768

26                           Facsimile: + 1 (612) 766 1600
                          Email: amy.fiterman@faegredrinker.com

27

28                           Geoffrey M. Drake, pro hac vice

KING & SPALDING LLP
1180 Peachtree Street, NE, Suite 1600
Atlanta, GA 30309
Telephone: +1 (404) 572 4726
Email: gdrake@kslaw.com

David P. Mattern, pro hac vice
KING & SPALDING LLP
1700 Pennsylvania Avenue, NW, Suite 900
Washington, D.C. 20006
Telephone: +1 (202) 626 2946
Email: dmattern@kslaw.com

*Attorneys for Defendants TikTok Inc. and
ByteDance Inc.*

MUNGER, TOLLES & OLSEN LLP
By: */s/ Jonathan H. Blavin*
Jonathan H. Blavin, SBN 230269
MUNGER, TOLLES & OLSON LLP
560 Mission Street, 27th Floor
San Francisco, CA 94105-3089
Telephone: (415) 512-4000
Facsimile: (415) 512-4077
Email: jonathan.blavin@mto.com

Rose L. Ehler (SBN 29652)
Victoria A. Degtyareva (SBN 284199)
Laura M. Lopez, (SBN 313450)
Ariel T. Teshuva (SBN 324238)
MUNGER, TOLLES & OLSON LLP
350 South Grand Avenue, 50th Floor
Los Angeles, CA 90071-3426
Telephone: (213) 683-9100
Facsimile: (213) 687-3702
Email: rose.ehler@mto.com
Email: victoria.degtyareva@mto.com
Email: Ariel.Teshuva@mto.com

Lauren A. Bell (*pro hac vice forthcoming*)
MUNGER, TOLLES & OLSON LLP
601 Massachusetts Ave., NW St.,
Suite 500 E
Washington, D.C. 20001-5369
Telephone: (202) 220-1100
Facsimile: (202) 220-2300
Email: lauren.bell@mto.com

1    *Attorneys for Defendant Snap Inc.*

2    WILSON SONSINI GOODRICH & ROSATI

3    Professional Corporation
     By: */s/ Brian M. Willen*

4    Brian M. Willen (*pro hac vice*)
     WILSON SONSINI GOODRICH & ROSATI

5    1301 Avenue of the Americas, 40th Floor
     New York, New York 10019

6    Telephone: (212) 999-5800
     Facsimile: (212) 999-5899

7    Email: bwillen@wsgr.com

8

9    Lauren Gallo White
     Samantha A. Machock

10   WILSON SONSINI GOODRICH & ROSATI
     One Market Plaza, Spear Tower, Suite 3300

11   San Francisco, CA 94105
     Telephone: (415) 947-2000

12   Facsimile: (415) 947-2099
     Email: lwhite@wsgr.com

13   Email: smachock@wsgr.com

14

15   Christopher Chiou
     WILSON SONSINI GOODRICH & ROSATI

16   953 East Third Street, Suite 100
     Los Angeles, CA 90013

17   Telephone:  (323) 210-2900
     Facsimile:  (866) 974-7329

18   Email: cchiou@wsgr.com

19   *Attorneys for Defendants YouTube, LLC, Google*
     *LLC, and Alphabet Inc.*

20

21   WILLIAMS & CONNOLLY LLP
     By: */s/ Joseph G. Petrosinelli*

22   Joseph G. Petrosinelli (*pro hac vice*)
     jpetrosinelli@wc.com

23   Ashley W. Hardin (*pro hac vice*)
     ahardin@wc.com

24   680 Maine Avenue, SW
     Washington, DC 20024

25   Telephone.: 202-434-5000
     Fax: 202-434-5029

26

27   *Attorneys for Defendants YouTube, LLC, Google*
     *LLC, and Alphabet Inc.*

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MORGAN, LEWIS & BOCKIUS LLP
By: */s/ Stephanie Schuster*
Stephanie Schuster (*pro hac vice*)
stephanie.schuster@morganlewis.com
1111 Pennsylvania Avenue NW
NW Washington, DC 20004-2541
Tel.: 202.373.6595

Yardena R. Zwang-Weissman (SBN 247111)
yardena.zwang-weissman@morganlewis.com
300 South Grand Avenue, 22nd Floor
Los Angeles, CA 90071-3132
Tel.: 213.612.7238

Brian Ercole (*pro hac vice*)
brian.ercole@morganlewis.com
600 Brickell Avenue, Suite 1600
Miami, FL 33131-3075
Tel.: 305.415.3416

*Attorneys for Defendants YouTube, LLC and
Google LLC*

**IT IS ORDERED** that the foregoing Agreement is approved.

Dated: _____ March 18, 2024 _____

_____
MAGISTRATE JUDGE PETER H. KANG

**APPENDIX 1: PRODUCTION FORMAT**

1) **Production Components.** Except as otherwise provided below, ESI must be produced in accordance with the following specifications:

    a) an ASCII delimited data file (.DAT) using standard delimiters;

    b) an image load file (.OPT) that can be loaded into commercially acceptable production software (*e.g.* Concordance);

    c) single page black-and-white TIFF images, or JPEG images when color is specified herein, or native files with single page placeholder TIFF images depending on the applicable production format for each type of file;

    d) and document level .TXT files for all documents containing extracted full text or OCR text.

    e) Family relationships between emails and their attachments, embedded files and their source document, and connected hardcopy documents will be maintained in production. Attachments should be consecutively produced with their parent.

    f) If a particular document warrants a different production format, the Parties will cooperate in good faith to arrange for a mutually acceptable production format.

2) **Production Media and Access Controls.** Productions must be encrypted and produced through secure electronic means, such as secure file sharing methods (*e.g.* FTP), or on CD, DVD, flash drive or external hard drive ("Production Media"). Each piece of Production Media must identify a production number corresponding to the production volume (*e.g.* "VOL001"). Each piece of Production Media must also identify: (a) the case caption; (b) the following label: "This media contains material subject to Court Ordered security measures"; (c) the Producing Party's name; (d) the production date; (e) the Bates Number range of the materials contained on the Production Media.

Nothing in this ESI Order will preclude or impair any and all protections provided the Parties by any Protective Order(s) agreed and entered into by the Parties. Parties will use best efforts to avoid the unnecessary copying or transmittal of produced documents. If questions arise, the Parties will meet and confer to ensure security concerns are addressed prior to the exchange of

any documents.

**3)** **Data Load Files/Image Load Files.** Each TIFF in a production must be referenced in the corresponding image load file. The total number of documents referenced in a production's data load file should match the total number of designated document breaks in the image load file(s) in the production. The total number of pages referenced in a production's image load file should match the total number of TIFF files in the production. All images must be assigned a unique Bates number that is sequential within a given document and across the production sets. The Bates Numbers in the image load file must match the corresponding documents' beginning Bates numbers in the data load file. The total number of documents in a production should match the total number of records in the data load file. Load files must not vary in format or structure within a production, or from one production to another except by agreement of the Parties.

**4)** **Metadata Fields.** Each of the metadata and coding fields set forth below that can be extracted should be produced for each document, except that if the field contains privileged information, that privileged information may be redacted. However, to the extent that metadata does not exist, is not available for any documents produced, this provision shall not be read to require any Party to extract, capture, collect, manually populate, or produce such metadata, with the exception of the following: (a) BEGBATES, (b) ENDBATES, (c) BEGATTACH, (d) ENDATTACH, (e) PRODVOL, (f) ALL CUSTODIANS, (g) CONFIDENTIALITY, (h) REDACTIONS, (i) REDACTION TYPE, (j) HASHVALUE, (k) NATIVEFILEPATH, and (l) TEXTFILEPATH, which should be populated by the Party or the Party's vendor. The Parties will make reasonable efforts to ensure that metadata fields automatically extracted from the documents correspond directly to the information that exists in the original documents.

| Field Name | Field Description |
| --- | --- |
| BEGBATES | Beginning Bates number for a particular document as stamped on the first production image for that document |
| ENDBATES | Ending Bates number as stamped on the last |

| Field Name | Field Description |
|---|---|
| | production image for a particular document |
| BEGATTACH | First production Bates number of the first document in a family |
| ENDATTACH | Last production Bates number of the last document in a family |
| ATTACHCOUNT | Number of attachments to an e-mail or embedded parent, as generated by commercially available discovery processing tools. |
| ATTACHNAMES | Names of each individual Attachment, separated by semicolons. |
| PRODVOL | Production volume |
| ALLCUSTODIANS | List of all custodians associated with Document, i.e. "Custodian" + "Other Custodian" values delimited by semicolon. |
| ALLFILEPATHS | All original path(s) to the individual source file(s) when available in the ordinary course of business to and processable by the parties and their ESI vendors of choice. Includes path up to and including internal path of containers. |
| CONFIDENTIALITY | Confidentiality designation assigned to the document consistent with the Stipulated Protective Order governing this Litigation |
| NATIVEFILEPATH | Native File Link (Native Files only) |
| TEXTFILEPATH | Path to extracted text/OCR file for the document |
| HASHVALUE | MD5 hash value of the document |
| DOCUMENT TYPE | Descriptor for the type of document: "E-document" for electronic documents not attached to e-mails; "E-mail" for all e-mails; "E-attachment" for files that were attachments to e-mails; and "Physical" for hard copy physical documents that have been scanned and converted to an electronic image. |
| AUTHOR | Any value populated in the Author field of the |

| Field Name | Field Description |
|---|---|
| | document properties |
| DOCDATE | Date the document was created according to filesystem information (format: MM/DD/YYYY) |
| DATELASTMODIFIED | Date when document was last modified according to filesystem information (format: MM/DD/YYYY) |
| LAST MODIFIED BY | Last person who modified (saved) a document, as generated by commercially available discovery processing tools. |
| TRACK CHANGES | Y if a document with track changes value, otherwise N or empty, if available separately from the HASHIDDENDATA flag |
| COMMENTS | Y if a document with comments, otherwise N or empty, if available separately from the HASHIDDENDATA flag |
| HASHIDDENDATA | Y if a document with hidden content value, otherwise N or empty |
| FILENAME | Filename of an electronic document |
| TITLE | Any value populated in the Title field of the document properties |
| DOCEXT | File extension of document pulled from the document properties |
| FROM | The sender of the email |
| TO | All recipients that were included on the "To" line of the email |
| CC | All recipients that were included on the "CC" line of the email |
| BCC | All recipients that were included on the "BCC" line of the email |
| DATETIMERECEIVED | Date and time email was received (format: MM/DD/YYYY HH:MM) |
| DATETIMESENT | Date and time email was sent (format: MM/DD/YYYY HH:MM) |

| Field Name | Field Description |
|---|---|
| TIMEZONE | The timezone used to process the document |
| EMAILSUBJECT | Subject line of email pulled from the document properties |
| THREADID | If a threading tool is used for emails, the thread id generated by the threading tool. |
| REDACTION TYPE[1] | General category of redaction reason as agreed to by the parties. For example, PII, SCA, CODE, and/or PRIV. If more than one, separate reasons by semicolons. |
| REDACTIONS | Y if a document is redacted, otherwise N or empty |

5) **TIFFs.** Unless excepted below, single page, black and white, Group IV TIFFs should be provided, at least 300 dots per inch (dpi) for all documents. Each TIFF image must be named according to a unique corresponding Bates number associated with the document. Each image must be branded according to the Bates number and the agreed upon confidentiality designation. Original document orientation should be maintained (i.e., portrait to portrait and landscape to landscape). Where the TIFF image is unreadable or has materially degraded the quality of the original, the Producing Party shall provide a higher quality TIFF image or the native or original file. In addition, the Parties shall take reasonable efforts to process word processing documents (*e.g.*, MS Word) with track changes and/or comments unhidden on the TIFF image.

6) **Color.** Word processing documents containing tracked changes shall be produced in color, as single-page, 300 dpi JPG images with JPG compression and a high quality setting as to not degrade the original image. The Producing Party shall comply with good faith by the Requesting Party to provide replacement color images for documents originally produced in black and white. A Party making such a request shall make the request by individual Bates

---

[1] The Parties will provide specific information on any privilege(s) asserted in their privilege logs, in an overlay, or the redaction boxes. The "Redaction Reason" field is informational only for redaction type and shall not in any way limit a party's right to assert attorney-client privilege, attorney-work product privilege, and/or any other applicable privilege or protection.

number(s) and shall limit requests made pursuant to this paragraph to a reasonable number of documents.

**7)** **Text Files.** A single multi-page text file must be provided for each document, and the filename should match its respective TIFF filename for the first page of that document. Extracted text shall be generated with commercially acceptable technology set to include all comments, revisions, tracked changes, speaker's notes and text from documents with comments or tracked changes, and hidden and very hidden worksheets, slides, columns and rows. When possible, the text of native files should be extracted directly from the native file. Parties will perform optical character recognition ("OCR") on foreign language documents using the appropriate settings for languages reasonably anticipated to be in the production following a meet and confer with the Requesting Party to identify those languages. Text files will not contain the redacted portions of the documents. A commercially acceptable technology for OCR should be used for all scanned, hard copy documents and for documents with redactions other than Excel files and other spreadsheets which shall be redacted in native format. Text extracted from emails should include the following header information where available: (1) the individuals to whom the communication was directed ("To"), (2) the author of the email communication ("From"), (3) who was copied and blind copied on such email ("CC" and "BCC"), (4) the subject line of the email ("RE" or "Subject"), and (5) the date and time of the email. To the extent the text extraction technology the Parties are using can be configured to include the text of any URLs or links, the Parties shall utilize that setting.

**8)** **Native files.** Spreadsheets (*e.g.* MS Excel), and un-redacted presentations (e.g. Microsoft PowerPoint,) will be produced in native format to the extent that they are produced in this Litigation, audio, video, and multi-media files will be produced in native format. The Parties will meet and confer on the production of other file types, such as proprietary files, etc. Native files will be produced with a link in the NATIVEFILEPATH field, along with extracted text (where extracted text is available) and applicable metadata fields set forth in paragraph 4 above. A Bates numbered TIFF placeholder indicating that the document was provided in native format must accompany every native file. Where redaction makes production of native-format

files other than spreadsheets or presentations infeasible, the Parties will confer to determine a reasonably usable form for the production, but spreadsheets shall presumptively be redacted in native, and presentations presumptively redacted in image form, in these cases without the need for further conferring.

      **9)**      **Production Format for Hard Copy Documents.** Documents that exist in hardcopy will be scanned to *.tiff image format and produced in accordance with the specifications set forth herein. Hard copy documents that are not text-searchable shall be made searchable by OCR prior to production.  In scanning paper documents, distinct documents should not be merged into a single record, and single documents should not be split into multiple records (i.e., paper documents should be logically unitized). In the case of an organized compilation of separate documents (for example, a binder containing several separate documents behind numbered tabs), the document behind each tab should be scanned separately, but the relationship among the documents in the compilation should be reflected in the proper coding of the beginning and ending document and attachment fields. The Parties will make their best efforts to unitize the documents correctly. If relevant documents are maintained in a file, folder, envelope, binder, notebook or similar container used to store documents, all contents therein shall be reviewed for production and privilege. Document pages which have affixed notes, such as Post-it notes, should be imaged with and without the note attached.

      **10)**      **Confidentiality Designation.** All images will be stamped with the appropriate confidentiality designations in accordance with the Stipulated Protective Order entered in this Litigation. Each document produced in native format will have its confidentiality designation identified in the filename of the native file and indicated on its corresponding TIFF placeholder.

      **11)**      **Bates Numbering**.  Bates numbering should be a consistent length across the production, contain no special characters, and be numerically sequential within a given document.  If a Bates number or set of Bates numbers is skipped, the skipped number or set of numbers should be noted with a placeholder.  Attachments to documents will be assigned Bates numbers that directly follow the Bates numbers on the documents to which they were attached.

In addition, wherever possible, each image will have its assigned Bates number electronically "burned" onto the image.

**12)     Databases and Other Structured Data.** To the extent that responsive information is stored in a database, or database management system, or proprietary system or application which has is directed to data storage as one of its primary functions, the Producing Party will identify the database and platform to the Requesting Party. The Producing Party shall produce exports and reports about such responsive information stored in such database, where such exports and reports shall be in a reasonably usable form, and information may be produced in CSV format, tab-delimited text format, Microsoft Excel format, or Microsoft Access format. If there are future disputes over the production of information from a database, the Parties shall meet and confer in good faith in an attempt to reach any further agreements (if needed) on the data to be produced and the format and scope of the production. The Producing Party will provide reasonable amounts of information about the databases to facilitate that discussion.

**13)     Hyperlinks.** Document(s) and/or folder(s) of documents that are hyperlinked inside a responsive document (including hyperlinked inside emails) within a Producing Party's custody, possession, or control, do not need to be produced in the first instance as part of the same family group as the Document residing at the location to which that hyperlink points. If there are particular hyperlinks identified by the Requesting Party in produced documents, the Requesting Party may submit a list of hyperlinks to a particular Producing Party for potentially relevant documents by identifying the Bates number and URL or link text for each requested link to the Producing Party, and the Producing Party will engage in reasonable efforts to locate the hyperlinked document at that location and either identify it by Bates number or provide any responsive, non-produced, and non-privileged documents. The number of hyperlinks a Requesting Party may identify to a Producing Party shall not be excessive and shall be reasonable, proportional to the needs of the case, and not unduly burdensome.

**14)     Embedded Objects.** The Parties agree non-substantive embedded objects, including, but not limited to, logos, icons, emoticons, and footers, may be culled from a document set (but not a document) and need not be produced as separate documents by a

Producing Party (i.e., such embedded objects will be produced within the document itself, rather than as separate documents). Embedded files, except for images (including but not limited to, logos, icons, emoticons), are to be produced as family groups. Embedded files should be assigned Bates numbers that directly follow the Bates numbers on the documents within which they are embedded.

     **15)**    **Production of Family Groups and Relationships**. If any member of a family group is produced, all members of that group must also be produced or else logged as privileged, and no such member shall be withheld from production as a duplicate.

     **16)**    **Dynamic Fields**.  Documents with dynamic fields for file names, dates, and times will be imaged to show the field code (e.g., "[FILENAME]") where possible, rather than the values for such fields existing at the time the file is processed.

     **17)**    **Time Zone**.  The time zone used to process a document, including its metadata, shall be disclosed in the TIMEZONE metadata field consistent with Appendix 1, and shall be standardized for each Defendant across productions.

     **18)**    **Redactions**.

     a)    A Producing Party may redact (i) information subject to the attorney client privilege or the work product protection (PRIV); (ii) information that cannot be disclosed pursuant to the Stored Communications Act (SCA); (iii) source code subject to separate agreement applicable to production of source code (CODE); (iv) personal identifying information (PII) including phone numbers, personal addresses, personal email addresses, the month and day of birth, driver's license numbers, and other PII agreed to by the Parties (for example, the Parties shall complete their meet and confer on whether or not to redact users' ages and years of birth). In any event, there shall be no redaction of illnesses, injuries, and medical diagnoses. To the extent a document or pleading contains PII, the Parties shall designate such documents at the appropriate Confidentiality level under the Protective Order and shall comply with Fed. R. Civ. P. 5.2 with regard to filings with the Court.

     b)    No redactions for relevance may be made within a produced document or ESI item. If, during the course of discovery, the Parties identify other kinds of information that any

Party has a reasonable basis for redacting, the Parties will meet and confer on a case-by-case basis regarding that information before such redactions are made. If the Parties cannot agree, they may seek resolution from the Court.

c)      The Producing Party will indicate, on the face of the redaction, the asserted reason(s) for the redaction (PII, SCA, CODE, and/or PRIV) and the REDACTION TYPE metadata field shall indicate that the document contains redactions and the reason(s) for the redaction.

d)      Notwithstanding the foregoing, this provision shall not be read to prohibit redactions permitted under any applicable U.S. law or Protective Order.

e)      Where a responsive document contains both redacted and non-redacted content, the Parties shall produce the non-redacted portions of the document and the OCR text corresponding to the non-redacted portions.

f)      Native Redactions. Spreadsheet files requiring redaction, including without limitation Microsoft Excel files, shall be redacted and produced natively (unless the Parties agree to production in some other format). In addition, a Producing Party may natively redact other files that cannot be properly imaged for redaction.

g)      All images of redacted files shall be processed to show all comments, revision marks, speaker notes, marks made in track changes, or other user-entered data which are visible in a normal view of the document in its native application, unless such material is redacted and marked as redacted in accordance with this section. Where possible, any occurrences of date/time auto-field items, including in headers and footers, will be removed and replaced with the term AUTODATE to prevent the current date from being printed. Email header information (e.g., date and/or subject line) shall not be redacted unless it is independently privileged. The Parties shall honor reasonable requests for the production of particular redacted documents in other formats where the image is not reasonably usable.

h)      Color.  Redacted versions of documents that would have been produced in color in their un-redacted form shall be produced in color as detailed herein.

**19)** **Exception Files**. The Parties will use reasonable efforts to address processing exceptions.

**20)** **Mobile and Handheld Device Documents and Data**. If responsive and unique data that can reasonably be extracted and produced in the formats described herein is identified on a mobile or handheld device, that data shall be produced in accordance with the generic provisions of this protocol. To the extent that responsive data identified on a mobile or handheld device is not susceptible to normal production protocols, the Parties will meet and confer to address the identification, production, and production format of any responsive documents and data contained on any mobile or handheld device.

# COVINGTON

BEIJING  BOSTON  BRUSSELS  DUBAI  FRANKFURT
JOHANNESBURG  LONDON  LOS ANGELES  NEW YORK
PALO ALTO  SAN FRANCISCO  SEOUL  SHANGHAI  WASHINGTON

Covington & Burling LLP
1999 Avenue of the Stars
Los Angeles, CA 90067-4643
T  +1 424 332 4800

July 24, 2024

DELIVERED VIA PROCESS SERVER

Louisiana Department of Education
1201 N. 3rd Street
Baton Rouge, LA 70208

Re: People of the State of California, et al. v. Meta Platforms, Inc. et al., 4:23-cv-05448

Dear Sir/Madam:

Enclosed please find a subpoena being served upon you in connection with the above-captioned litigation currently pending in the U.S. District Court for the Northern District of California. I represent Defendants Meta Platforms, Inc.; Instagram, LLC, Meta Payments, Inc. and Meta Platforms Technologies, LLC (collectively, the "Meta Defendants") in this matter.

The document subpoena requests the production of specific documents identified in the attached subpoena (see Attachment A to the subpoena), which are requested to be produced by 10 a.m. on August 23, 2024. We are willing to work with you on the time, date, location, method and manner of document production, as well as answer any questions or concerns you may have regarding subpoena compliance. It is sufficient compliance with this subpoena if you electronically transmit a copy of the requested documents to the undersigned. As such, please contact me at ceppich@cov.com and 424-332-4764, to discuss document production and subpoena compliance, unless you are already represented by counsel in connection with this matter.

The Court is currently considering whether the Louisiana Attorney General's Office has control over Louisiana Department of Education's information for the purposes of discovery in this action. If the Court rules that the Louisiana Attorney General's Office has control over the Louisiana Department of Education's information, the Louisiana Attorney General has pending discovery requests that seek this agency's documents. By serving this subpoena, Meta does not waive its position in the state agency dispute, nor does Meta in any way waive rights to compel the Louisiana Attorney General to produce Louisiana Department of Education information as part of discovery in this action. However, to avoid further delay in the production of information from the Louisiana Department of Education, Meta is serving the attached subpoena to request the timely production of this information.

**COVINGTON**

Your anticipated time and assistance with this matter is greatly appreciated.

Best regards,

*/s/  Christopher K. Eppich*

Christopher K. Eppich

Enclosed:  Subpoena, Attachment A, and Attachment B

AO 88B  (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT

for the

Northern District of California

| | |
|---|---|
| IN RE: SOCIAL MEDIA ADOLESCENT ADDICTION/PERSONAL INJURY  PRODUCTS LIABILITY LITIGATION | ) ) ) |
| THIS DOCUMENT RELATES TO: People of the State of California, et al. v. Meta Platforms, Inc. et al., Case No. 4:23-cv-05448 | ) ) ) ) |

Civil Action No. 4:22-MD-03047-YGR
MDL No. 3047

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS
## OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

To:  Louisiana Department of Education
1201 N. 3rd Street, Baton Rouge, LA 70802

*(Name of person to whom this subpoena is directed)*

✔ *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material: See Attachment A.

| Place: Veritext Legal Solutions 9522 Brookline Avenue, Suite 217 Baton Rouge, LA 70809 | Date and Time: August 23, 2024; 10:00 a.m. |
|---|---|

❐ *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|
| | |

        The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date:  07/24/2024

| CLERK OF COURT | OR | |
|---|---|---|
| _____ Signature of Clerk or Deputy Clerk | | /s/ Ashley Simonsen _____ Attorney's signature |

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)* _____
Meta Platforms, Inc. f/k/a Facebook, Inc.; Instagram, LLC, Meta Payments, Inc. and
Meta Platforms Technologies, LLC, _____  who issues or requests this subpoena, are:
Ashley Simonsen, Covington & Burling LLP, 1999 Avenue of the Stars, Los Angeles, CA 90067, 424-332-4782, asimonsen@cov.com

**Notice to the person who issues or requests this subpoena**
If this subpoena commands the production of documents, electronically stored information, or tangible things or the inspection of premises before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

AO 88B  (Rev.  02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (Page 2)

Civil Action No.  4:23-cv-05448

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____

on *(date)* _____ .

❒  I served the subpoena by delivering a copy to the named person as follows: _____

_____ on *(date)* _____ ; or

❒  I returned the subpoena unexecuted because: _____

_____ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also
tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $      0.00      .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc.:

Print       Save As...       Add Attachment              Reset

AO 88B  (Rev.  02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action(Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

  **(1)** *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
    **(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
    **(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person
      **(i)** is a party or a party's officer; or
      **(ii)** is commanded to attend a trial and would not incur substantial expense.

  **(2)** *For Other Discovery.* A subpoena may command:
    **(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
    **(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

  **(1)** *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

  **(2)** *Command to Produce Materials or Permit Inspection.*
    **(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
    **(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
      **(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
      **(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

  **(3)** *Quashing or Modifying a Subpoena.*
    **(A)** *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
      **(i)** fails to allow a reasonable time to comply;
      **(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);
      **(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
      **(iv)** subjects a person to undue burden.
    **(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
      **(i)** disclosing a trade secret or other confidential research, development, or commercial information; or

      **(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
    **(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
      **(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
      **(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

  **(1)** *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
    **(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
    **(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
    **(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
    **(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

  **(2)** *Claiming Privilege or Protection.*
    **(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
      **(i)** expressly make the claim; and
      **(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
    **(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

## <u>DEFINITIONS AND INSTRUCTIONS TO ATTACHMENT A</u>

### <u>DEFINITIONS</u>

1.      The term "communication" means the transmittal of information (in the form of facts, ideas, inquiries or otherwise).

2.      "Document" or "documents" shall have the broadest meaning ascribed to it by the Federal Rules of Civil Procedure, and includes, without limitation electronically stored information ("ESI") (including, without limitation, electronic databases and the data therein, all electronic messages or communications, electronic word processing documents, electronically stored voicemail, webpages, and social media posts) in accordance with any order in this case governing ESI at the time of production. Different versions of the same documents, including, but not limited to, drafts or documents with handwritten notations or marks not found in the original or on other copies are different documents.

3.      "You", "you", "Your" and "your" means the Louisiana Department of Education.

4.      "Relating" or "related to" means and includes referring to, concerning, referencing, mentioning, associated with, constituting, discussing, containing, embodying, recording, reflecting, identifying, summarizing, incorporating, and/or dealing with or pertaining to in any way.

5.      "And" includes "or", and vice versa.

6.      The singular form of a word or term includes the plural, and vice versa.

7.      The present tense of a verb includes the past tense, and vice versa.

8.      The use of the article "the" shall not be construed as limiting the scope of any request.

9.      "Including" means "including without limitation."

10.    "Any" includes "all", and vice versa.

11.    The capitalized version of a word or term includes the lower case version of a word or term, and vice versa.

12.    "Social Media Platforms" or "Platforms" means a digital service that facilitates interactions between two or more distinct but interdependent sets of users, including but not limited to Facebook, Instagram, Snapchat, TikTok, YouTube, Twitter (or "X"), Pinterest, LinkedIn, BeReal, Lapse, Reddit, Threads, VSCO, Goodreads, Quora, Discord, Twitch, and Tumblr.

13.    "Young Users" means users of Social Platforms who are under 18 years of age when using the Platform(s).

All words, terms, and phrases not specifically defined herein are to be given their normal and customary meaning in the context in which they are used in these Requests.

## INSTRUCTIONS

1.    These Requests are intended to cover any and all documents in your possession, custody, or control, to the extent not privileged.  Documents held by any office, department, board, commission, or instrumentality of the Louisiana Department of Education are within your possession, custody, or control.

2.    In accordance with ESI Protocol attached hereto as Attachment B, if you object to furnishing any of the documents or information requested by these Requests on the grounds of attorney-client privilege, work product, other privilege, or otherwise then, with respect to each such document:

      a.   state the nature of the privilege claimed;

      b.   state the date of each communication supporting the privilege claim;

      c.   identify all participants in the supporting communication;

      d.   state the specific grounds on which the objection is based; and

    e.   identify the specific request calling for such information;

2.     If you object to any Request on the grounds that it is vague or ambiguous, state: (i) the portions or terms of such Request that you claim to be vague or ambiguous; and (ii) the interpretation of the Request pursuant to which you provide a response.

3.     Each request shall be deemed continuing, so as to require supplemental or mandatory responses should you obtain additional responsive information subsequent to your initial responses.

4.     If you cannot fully respond to a particular Request after exercising due diligence to make inquiry and to secure the necessary information, provide a response to the extent possible, specifying your inability to respond to the remainder and providing whatever information or knowledge you have concerning the portion not responded to.

5.     Each page of a produced document shall have a legible, unique page identifier ("Bates Number") and confidentiality legend (where applicable) on the face of the image at a location that does not obliterate, conceal, or interfere with any information from the source document. Redactions should be clearly marked or stamped on the page in such a way that it is clear from review that a portion of the image has been redacted.

6.     All responsive and non-privileged electronic documents shall be produced in the format ordered by the Court in its ESI order.

7.     All responsive electronic documents shall be produced in a format agreed upon by the parties, to include at least native versions of Excel spreadsheets and presentation files, with a Bates-stamped placeholder image.

8.     Unless otherwise specified, the time period for these Requests is January 1, 2012 to the date of production of the Documents.

## **ATTACHMENT A**

1. Research, investigations, studies, surveys, reports, evaluations, or analyses concerning the mental, social, emotional, or behavioral health of persons ages 13 to 18.

2. Programs, initiatives, efforts, or actions proposed or taken by the Louisiana Department of Education to encourage or promote the use of Social Media Platforms.

3. Programs, initiatives, efforts, or actions proposed or taken by Louisiana Department of Education to address Young Users' use of Social Media Platforms, including any program, initiative, effort, or action to prevent, limit, encourage, or promote the use of Social Media Platforms by Young Users.

4. Studies, programs, initiatives, efforts, or actions proposed or taken by the Louisiana Department of Education that sought to provide or promote internet access or phones, computers, tablets, or other electronic devices to Young Users.

5. Policies proposed, recommended, or enacted by the Louisiana Department of Education regarding screen time and acceptable use of cell phones, computers, tablets, or other electronic devices by Young Users.

6. Complaints to the Louisiana Department of Education by teachers or school districts regarding social media or cell phone use by Young Users and/or the need for acceptable use or other policies to address Young Users' use of social media or cell phones.

7. Complaints to the Louisiana Department of Education by teachers or school districts regarding budget crises from inflation, underfunding, unfunded mandates, and other causes.

8. Documents related to state assessments in Louisiana, including reports and analyses regarding the history of K-12 state assessment or standardized testing scores, performance by schools and/or school districts, and any other measures of school performance.

9. Louisiana Department of Education's communications and/or collaboration with any Social Media Platform on any program, initiative or other action related to, or directed at, Young Users.

10. Louisiana Department of Education's communications with any third party related to Young Users and/or Social Media Platforms.

11. Policies, procedures, and practices applicable to Louisiana Department of Education and Louisiana Department of Education employees regarding the use of Social Media Platforms, including any changes to these policies during the Relevant Period.

12. Legislation or policies proposed by, proposed on behalf of, or testified on by the Louisiana Department of Education, regardless of whether such legislation or policies were enacted, regarding Young Users' use of Social Media Platforms.

13. Research, investigations, studies, surveys, reports, evaluations, or analyses related to Social Media Platforms, including the importance of Social Media Platforms and the use of Social Media Platforms by Young Users and the potential benefits and harms created by the use of Social Media Platforms.

14. Research, investigations, studies, surveys, reports, evaluations, or analyses related to Social Media Platforms regarding the impact of social media on the mental, social, emotional, or behavioral health of Young Users.

15. Research, investigations, studies, surveys, reports, evaluations, or analyses related to:
    a. Features of Social Media Platforms that are psychologically or physically harmful to Young Users;
    b. Features of Social Media Platforms that promote compulsive, prolonged, or unhealthy use by Young Users;
    c. The impact of features of Social Media Platforms, including:
        (1) Algorithmic recommendation and sequencing;
        (2) Image filters;
        (3) Use of multiple user accounts;
        (4) Infinite scroll;
        (5) Ephemeral content features;
        (6) Autoplay;
        (7) Quantification and display of likes; or
        (8) Audiovisual and haptic alerts.

16. Research, investigations, studies, surveys, reports, evaluations, or analyses concerning the mental, social, emotional, or behavioral health of Young Users, including those related to the effects of:
    a. Social Media Platforms usage;
    b. Video games usage;
    c. Cell phone usage;
    d. Messaging usage;
    e. Usage of other electronics apart from usage of Social Media Platforms;
    f. COVID-19 and/or remote learning;
    g. Use of drugs or alcohol;
    h. The opioid and fentanyl epidemic;
    i. Poverty, homelessness, lack of health insurance, and/or food insecurity;
    j. Physical health including nutrition, exercise, weight management, sleeping habits, and sexual activity;
    k. Family trauma or deaths;
    l. Academic pressure;
    m. Violence, including school violence, domestic violence, gun violence, gun control and/or mass shootings;

n.  Bullying or verbal abuse apart from usage of Social Media Platforms;
o.  Political polarization;
p.  Natural disasters;
q.  Climate change;
r.  Discrimination and inequity;
s.  Global warfare and conflict; and
t.  Any other potential causes of harms to the mental, social, emotional, or behavioral health of Young Users.

17. Youth Risk Behavior Surveys conducted by the Louisiana Department of Education or on its behalf.

18. Public or non-public meetings held by the Louisiana Department of Education related to Social Media Platforms and use of Social Media Platforms by Young Users, including notices, meeting notes, PowerPoint presentations, internal memoranda, summaries, personal notes, or attendee lists.

19. Mental, social, emotional, or behavioral health services provided by the Louisiana Department of Education to Young Users during the Relevant Period.

20. Budgeted and actual expenditures by the Louisiana Department of Education during the Relevant Period related to Young Users' use of Social Media Platforms.

21. Policies, procedures, and practices related to the Louisiana Department of Education's use of Social Media Platforms, including communication of information or promotion of Louisiana Department of Education programs, initiatives, efforts, or actions on Social Media Platforms.

22. Louisiana Department of Education's budget and actual expenditures during the Relevant Period, including expenditures on:
a.  Digital advertisements by the Louisiana Department of Education on Social Media Platforms
b.  Digital advertisements by the Louisiana Department of Education purchased through Social Media Platforms.

**ATTACHMENT B**

# IN THE UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: *Social Media Adolescent Addiction/Personal Injury Products Liability Litigation*<br><br>This document relates to:<br>ALL ACTIONS | MDL No. 3047<br>Case No. 4:22-md-03047-YGR<br><br>Honorable Yvonne Gonzalez Rogers<br>Honorable Peter H. Kang<br><br>**STIPULATION AND [PROPOSED] ORDER GOVERNING THE PRODUCTION OF ELECTRONICALLY STORED INFORMATION AND HARD COPY DOCUMENTS** |

1. **PURPOSE**

This Order Governing the Production of Electronically Stored Information and Hard Copy Documents ("ESI Order") will govern discovery of electronically stored information and any hard copy documents in this Litigation as a supplement to the Federal Rules of Civil Procedure, this District's Guidelines for the Discovery of Electronically Stored Information, and any other applicable orders and rules. "This Litigation" includes all actions currently in MDL No. 3047, *In Re: Social Media Adolescent Addiction/Personal Injury Products Liability*, or hereafter added or transferred to MDL No. 3047, and all actions later remanded to their respective transferor courts.

2. **DEFINITIONS**

a) "Document" is defined to be synonymous in meaning and equal in scope to the usage of this term in Rules 26 and 34 of the Federal Rules of Civil Procedure and shall include Hard-Copy Documents and ESI.

b) "Electronically stored information" or "ESI," as used herein has the same meaning as in Federal Rules of Civil Procedure 26 and 34.

c) "Hard-Copy Document" means Documents existing in paper form at the time of collection.

d) "Searchable Text" means the native text extracted from an Electronic Document and any Optical Character Recognition text ("OCR text") generated from a Hard-Copy Document or electronic image.

**3.     COOPERATION**

The Parties are aware of the importance the Court places on cooperation and commit to cooperate in good faith throughout this Litigation consistent with this Court's Guidelines for the Discovery of ESI and this Court's Rules of Professional Conduct. The Parties will endeavor to cooperate in good faith and be reasonably transparent in all aspects of the discovery process.

**4.     LIAISON**

The Parties will identify Discovery Liaisons to each other who are and will be knowledgeable about and responsible for discussing their respective ESI.  Any Party is free to change their designated Discovery Liaison by providing written notice to the other Parties. Each Party's Discovery Liaison must: (a) be prepared to meet and confer on discovery-related matters and to participate in discovery dispute resolution; (b) be knowledgeable about the Party's discovery efforts; (c) be, or have reasonable access to those who are, familiar with the Party's electronic systems and capabilities in order to explain those systems and answer relevant questions; and (d) be, or have reasonable access to those who are knowledgeable about the technical aspects of discovery, including electronic document storage, organization, and format issues, and relevant information retrieval technology, including search methodology.

**5.     IDENTIFICATION OF CUSTODIANS AND DATA SOURCES**

The parties will disclose information about custodians and custodial and non-custodial data sources likely to possess relevant or responsive information in accordance with Fed. R. Civ. P. 26 and this District's ESI Guidelines. The Parties will participate in Rule 26(f) discussions guided by this District's Checklist for Rule 26(f) Meet and Confer Regarding Electronically

1   Stored Information. After responses to Requests for Production under Fed. R. Civ. P. 34 have

2   been served, the parties will meet and confer regarding those custodians and custodial and non-

3   custodial data sources from which Documents and ESI will be collected for search and review for

4   potential production in this litigation. The custodian and data source exchanges will include brief

5   explanations of the rationale for their selections; for example, for custodians, their current job

6   titles and descriptions of their work, and for data sources, location information and description.

7   **6.    INACCESSIBLE OR UNUSABLE ESI**

8          If a Producing Party asserts that certain requested ESI is inaccessible or not "reasonably

9   accessible," otherwise unnecessary, or if the Receiving Party asserts that, following production,

10  certain ESI is not reasonably useable, the parties shall meet and confer to discuss resolving such

11  assertions. The parties will exchange sufficient information to enable the parties to confer in good

12  faith. If the parties cannot resolve any such disputes after such a meet and confer has taken place,

13  the issue shall be presented to the Court for resolution.

14  **7.    KNOWN RESPONSIVE DOCUMENTS**

15         Documents or ESI identified in a custodial or non-custodial file, or in a discrete folder or

16  collection, that are known to a Producing Party through reasonable investigation to be responsive

17  to a discovery request shall be collected for review without regard to whether the responsive

18  content was located via any search methodology developed in accordance with this Order, and

19  nothing about such review shall prevent the Producing Party from redacting or withholding and

20  logging such documents for applicable privileges.

21  **8.    SEARCH METHODOLOGIES**

22         The Parties shall adopt reasonable and proportionate methodologies to identify, search,

23  collect, cull, review, and produce ESI as required under applicable legal standards. The Parties

24  recognize and agree that each Party may use one or more methodologies to identify, search,

25  collect, cull, review, and produce responsive and non-privileged ESI, including the use of

26  keyword search terms and/or the use of technology assisted review ("TAR") as discussed further

27  herein. The Parties further recognize that different data sets may implicate different

28  methodologies to identify, search, collect, cull, review, and produce responsive and non-

privileged ESI. The Parties therefore agree to meet and confer in good faith regarding any

potential disputes over their respective ESI productions.

## 9.    HIT REPORTS AND SEARCH TERMS

If a Producing Party uses search terms to identify, search, or cull potentially responsive

ESI, the Producing Party shall disclose the search terms to the Requesting Party. The Parties shall

meet and confer regarding any disputes over the disclosed search terms. In the event that a

Producing Party claims burden with respect to modified and/or additional search terms proposed

by a Requesting Party, the Producing Party shall provide a hit report for the terms at issue using

industry-standard processing tools, such as NUIX or other similar tools. The Producing Party

shall provide a hit report for the document collection where the terms were applied, including the

following with respect to each proposed or modified search term in the collection:

    a)   The number of documents with hits for that term; and

    b)   The number of unique documents, i.e., documents which do not have hits for any other
        term.

If, after reviewing a hit report from a Producing Party, a Requesting Party so chooses, it

may reasonably request a further hit report which includes:

    c)   The number of family members, including the documents with hits, of the documents
        with hits for that term; and

    d)   The number of unique family members of the documents with hits for that term.

If the ESI tool for the Producing Party is capable without undue burden of providing the

number of family members and unique family members, then the Producing Party shall provide

such further hit report. The Parties (including the person most knowledgeable about the

capabilities of the Producing Party's ESI tool and the Requesting Party's person most

knowledgeable about technical issues from its ESI service provider) shall meet and confer

regarding any disputes over whether the Producing Party's ESI tool has the capability or not to

provider either number of family members or number of unique family members.

The Parties shall meet and confer to resolve disagreements over the search terms or their

application. To the extent the Parties are unable to reach agreement on the application of, or

1 procedures for, any search or filtering processes, the Parties shall fully comply with the

2 provisions of this Court's Discovery Standing Order regarding the procedure for raising discovery

3 disputes with the Court, including the meet and confer and certification requirements therein.

### 10.  TECHNOLOGY ASSISTED REVIEW (TAR)

5 A Producing Party may use TAR (technology-assisted review) during the culling and

6 review process of ESI, which may be applied in addition to search terms. If a Producing Party

7 uses TAR to cull, filter out, or exclude documents from that Party's production, that Producing

8 Party shall do the following:

9 • If a Producing Party chooses to apply both search terms and TAR to a review set,

10 the Producing Party will disclose the search terms to all other Party/Parties.

11 • Disclose the name of the TAR tool or service used to all other Party/Parties.

### 11.  VALIDATION

13 Each Producing Party shall take reasonable steps to validate its review process (i.e., using

14 quality control measures to determine whether its production is missing relevant ESI or contains

15 substantial amounts of irrelevant ESI) and make any necessary adjustments or corrections to its

16 process. If, after reviewing a Producing Party's production, a Requesting Party reasonably

17 requests additional information regarding the validation method(s) used by the Producing Party,

18 the Producing Party will disclose the level of end-to-end recall (the percentage of responsive

19 Documents in the collection which were identified as responsive by that Producing Party's

20 methodology). If there remain disputes between the Parties regarding validation, the Parties shall

21 meet and confer to resolve such disputes in good faith, including a reasonable discussion

22 regarding the tool used and the parameters used to obtain or calculate the level of recall.

### 12.  UNSEARCHABLE DOCUMENTS

24 The Producing Party shall use reasonable efforts to identify and review potentially

25 responsive documents for which text-based search technologies are fundamentally ineffective.

### 13.  SYSTEM FILES

27 Each Party will use its best efforts to filter out common system files and application

28 executable files using the national software reference library ("NSRL") NIST hash set list. The

Parties also may filter out stand-alone files identified as zero bytes in size. Additional culling of file types based on file header information may be applied to the following, provided these files are not known to be otherwise attached, embedded in, or included with an otherwise responsive document, or are not themselves reasonably known to contain information responsive or contain responsive data or are used to interface with users or interact with or access individual or aggregated user data: Application Package File, Backup Files, Batch Files, Binary Disc Image, C++ File Formats, Cascading Style Sheet, Configuration File, Database File, Dictionary Files, Dynamic Link Library, Event Log Files, Executable Files, Hypertext Cascading Stylesheet, Java Archive Files, JavaScript Files, JavaScript Source Code and Class Files, Macintosh Resource Fork Files, Package Manager Files, Program Files, Program Installers, Python Script Files, Shell Script Files, System or Temporary Files, Thumbnail Cache Files, Troff Files, Truetype Font Files, Windows Cabinet File, Windows Command Files, Windows File Shortcut, Windows Help Files, Windows Metafiles and Enhanced Metafiles, Windows Spool Files, Windows System File.

## 14.   DEDUPLICATION

Each Producing Party shall make reasonable efforts to globally deduplicate exact duplicate Documents within that Producing Party's ESI data set across all custodial and non-custodial sources at the family level using either MD5 hash values or SHA hash values or any other agreed-upon (and disclosed) industry-standard deduplication technology. The Parties shall reach agreement on such other deduplication technology and shall reach agreement on how their deduplication tools shall identify exact duplicates of documents in a manner that is consistent with the disclosed tools and technologies a Producing Party is using. The Parties shall reach agreement on how to identify exact duplicates of emails using industry-standard commercially available software tools or services, which may for example calculate hash values of emails based on concatenated values of agreed-upon email fields and/or hash values of attachments, or which may use any other method the Parties agree upon. Having further met and conferred in keeping with the previous sentence, the Parties shall calculate deduplication hash values for emails on the concatenated values set forth in and in accordance with the documentation specifications of the disclosed deduplication tools to be used in this Litigation (i.e., RelativityOne, Relativity Server,

and Nuix); however, if Nuix is used, the Producing Party shall select the optional field "Include Bcc" as an additional field to add to the default ones.

The Parties shall not withhold from production near-duplicates without meeting and conferring on this issue.

The names of all custodians who were either identified as custodians for purposes of collection for this matter (or otherwise known by the Producing Party to have been in possession or custody of a document prior to deduplication) will be populated in the ALL CUSTODIANS metadata field for the produced version of a document that has duplicates removed from production. The original file paths (if any exist) of a document prior to deduplication will be populated in the ALL FILE PATHS metadata field of the produced document.

## 15.   EMAIL THREADING

The Parties may use analytics technology to identify email threads and shall produce the unique most inclusive copy and related family members. Where multiple email messages are part of a single chain or "thread," a Party is only required to produce the most inclusive copy of an email message(s) ("Last In Time Email(s)") and need not produce earlier, lesser inclusive email messages or "thread members," provided that the tool or software service being used to perform threading is disclosed. A Producing Party may exclude from production lesser inclusive copies of the most inclusive email message in the thread, where the entire body of each of those lesser inclusive copies is included within the Last in Time Email. The Producing Party will honor reasonable requests to produce lesser inclusive copies of a Last In Time Email or other earlier chains of emails otherwise excluded by email thread suppression.

The Parties shall treat new or different email chains or threads pursuant to further agreement on safeguards or guidelines for defining emails threads which reasonably take into account the capabilities of the email threading/dethreading/hyperthreading tools used by each Defendant (which shall be disclosed to Plaintiffs).

## 16.   SOURCE CODE

The Parties will meet and confer to address the production and/or inspection of source code and entering into a separate order governing the same if needed.

## 17.   PRODUCTION FORMATS

The Parties agree to produce documents and data in the formats described in **Appendix 1** to this ESI Order. If particular documents or categories of documents identified in response to document requests warrant a different format, the Parties will cooperate to arrange for the mutually acceptable production of such documents. The Parties further agree not to degrade the searchability of documents as part of the document production process.

In addition, the Parties agree that the production and production format of social media and/or user account information is not covered by this agreement and to meet and confer on the production and production format, including metadata, for social media and/or user account information.

## 18.   PHASING

Once the Parties begin propounding discovery requests pursuant to Fed. R. Civ. P. 34, the Parties agree to meet and confer regarding appropriate phasing for the production of ESI.

## 19.   MISCELLANEOUS PROVISIONS

a)  **Production of Plaintiffs ESI and Case-Specific Materials**.  Subject to any further agreement among the Parties or Order of the Court, the Parties shall produce case-specific documents (i.e., documents specific to the claim of a given Plaintiff, produced by Plaintiffs or Defendants) for any Plaintiff in discovery pools or other selections designed to inform bellwether selection, including those selected for a bellwether trial, in accordance with the production format specified herein, provided, however, that the Producing Party may elect to produce such materials in their native format. To the extent production of case-specific documents for any Plaintiff selected for a bellwether trial presents an issue for any Party, the Parties shall reasonably confer, and may present any disputes to the Court or its designee.  The Parties shall further agree to confer concerning the production format and associated matters (*e.g.*, hosting platform) for case-specific documents produced in the cases of other Plaintiffs. Nothing herein shall limit Defendant's right to seek discovery from any Plaintiff.

b)  **Translations Of Produced Materials**.  The Producing Party has no obligation to

1   create a translation of the Documents or any portion thereof. For any foreign-language

2   documents responsive to document requests that a Party reasonably knows as the

3   result of a reasonable investigation have been translated into the English language

4   using human translators or through machine translation for its own purposes, except to

5   the extent such translation is protected by attorney-client or work-product privileges,

6   the Producing Party shall produce the translation of the original document with the

7   original. The parties will meet and confer as necessary concerning procedures for

8   using translations at depositions and at trial. In the event the Parties cannot reach

9   agreement, the matter may be submitted to the Court for determination.

10   c)   **Third-Party Documents**.  A Party that issues a Non-Party subpoena ("Issuing Party")

11   shall include a copy of this Order with the subpoena and state that (1) the subpoenaed

12   Non-Party should produce Documents in response to the subpoena to all Parties; and

13   (2) the Parties to this Litigation have requested that Third Parties produce Documents

14   in accordance with the specifications set forth herein. If the subpoenaed Non-Party

15   produces Documents to the Issuing Party but does not produce those Documents to

16   other Parties, the Issuing Party shall produce such Documents to those other Parties

17   within 14 days of receiving the Documents, except where the Documents are to be

18   used in a deposition, in which case the Issuing Party shall produce such Documents to

19   all other Parties no later than three (3) days prior to the deposition, or as soon as

20   reasonably practicable if such production occurs thereafter. Nothing in this Order is

21   intended or may be interpreted to narrow, expand, or otherwise affect the rights of the

22   Parties or Third Parties to object to a subpoena. If the Non-Party production is not

23   Bates-stamped, the Parties will meet and confer to agree upon a format for designating

24   the documents with a unique Bates Number prefix.

25   d)   **Documents Produced by Parties – Presumption of Authenticity**.  In order to reduce

26   the number of requests for admission, this Order establishes a rebuttable presumption

27   that documents produced by the Parties are authentic, if said documents were either

28   created or authored by the producing Party, or any of its employees, agents, or

contractors, so long as the employees', agents', or contractors' work was performed in connection with a project or assignment sponsored by the producing Party.  No further evidence to establish authenticity need be provided.  Nothing in this paragraph shall be deemed to waive any other evidentiary objection a party may have, including but not limited to hearsay, foundation/personal knowledge, or relevance.

e) **Re-productions.** Notwithstanding any provisions to the contrary, re-production of discrete sets of documents from another litigation, arbitration, government inquiry, or other matter may be re-produced in the same manner and form as originally produced in the other matter, provided however that a party will re-produce documents in a different format for good cause shown. This provision does not waive the right of a party to object to any requests for reproduction of production files from another litigation, arbitration, government inquiry, or other matter.

f) **Modification**.  This ESI Order may be modified by a Stipulated Order of the Parties or by the Court for good cause shown.

g) **Good Faith**.  The Parties will act in good faith as required by law and use these procedures to identify and reduce the potential for disputes.

h) **Continuing Obligations**. The Parties recognize that discovery shall be an iterative and cooperative process. The Parties will continue to meet and confer regarding any issues as reasonably necessary and appropriate. This Order does not address or resolve any objections to the Parties' respective discovery requests.

i) **Reservation of Rights**.  The Parties agree that any topic not addressed herein is neither a waiver nor acknowledgement of agreement by either Party.

**IT IS SO STIPULATED**, through Counsel of Record.

| | |
|---|---|
| 1 | DATED: March 15, 2024 |
| 2 | |
| 3 | |
| 4 | |
| 5 | |
| 6 | |
| 7 | |
| 8 | |
| 9 | |
| 10 | |
| 11 | |
| 12 | |
| 13 | |
| 14 | |
| 15 | |
| 16 | |
| 17 | |
| 18 | |
| 19 | |
| 20 | |
| 21 | |
| 22 | |
| 23 | |
| 24 | |
| 25 | |
| 26 | |
| 27 | |
| 28 | |

DATED: March 15, 2024

Respectfully submitted,

*/s/ Lexi J. Hazam*
LEXI J. HAZAM
**LIEFF CABRASER HEIMANN &
BERNSTEIN, LLP**
275 BATTERY STREET, 29TH FLOOR
SAN FRANCISCO, CA 94111-3339
Telephone: 415-956-1000
lhazam@lchb.com

PREVIN WARREN
**MOTLEY RICE LLC**
401 9th Street NW Suite 630
Washington DC 20004
T: 202-386-9610
pwarren@motleyrice.com

Co-Lead Counsel

CHRISTOPHER A. SEEGER
**SEEGER WEISS, LLP**
55 CHALLENGER ROAD, 6TH FLOOR
RIDGEFIELD PARK, NJ 07660
Telephone: 973-639-9100
Facsimile: 973-679-8656
cseeger@seegerweiss.com

Counsel to Co-Lead Counsel

JENNIE LEE ANDERSON
**ANDRUS ANDERSON, LLP**
155 MONTGOMERY STREET, SUITE 900
SAN FRANCISCO, CA 94104
Telephone: 415-986-1400
jennie@andrusanderson.com

Liaison Counsel

MATTHEW BERGMAN
GLENN DRAPER
**SOCIAL MEDIA VICTIMS LAW CENTER**
821 SECOND AVENUE, SUITE 2100
SEATTLE, WA 98104
Telephone: 206-741-4862
matt@socialmediavictims.org
glenn@socialmediavictims.org

JAMES J. BILSBORROW
**WEITZ & LUXENBERG, PC**
700 BROADWAY
NEW YORK, NY 10003
Telephone: 212-558-5500
Facsimile: 212-344-5461
jbilsborrow@weitzlux.com

PAIGE BOLDT
**WATTS GUERRA LLP**
4 Dominion Drive, Bldg. 3, Suite 100
San Antonio, TX 78257
T: 210-448-0500
PBoldt@WattsGuerra.com

THOMAS P. CARTMELL
**WAGSTAFF & CARTMELL LLP**
4740 Grand Avenue, Suite 300
Kansas City, MO 64112
T: 816-701 1100
tcartmell@wcllp.com

JAYNE CONROY
**SIMMONS HANLY CONROY, LLC**
112 MADISON AVE, 7TH FLOOR
NEW YORK, NY 10016
Telephone: 917-882-5522
jconroy@simmonsfirm.com

CARRIE GOLDBERG
**C.A. GOLDBERG, PLLC**
16 Court St.
Brooklyn, NY 11241
T: (646) 666-8908
carrie@cagoldberglaw.com

SIN-TING MARY LIU
**AYLSTOCK WITKIN KREIS &**
**OVERHOLTZ, PLLC**
17 EAST MAIN STREET, SUITE 200
PENSACOLA, FL 32502
Telephone: 510-698-9566
mliu@awkolaw.com

ANDRE MURA
**GIBBS LAW GROUP, LLP**
1111 BROADWAY, SUITE 2100
OAKLAND, CA 94607
Telephone: 510-350-9717
amm@classlawgroup.com

1

2

3
EMMIE PAULOS
**LEVIN PAPANTONIO RAFFERTY**

4
316 SOUTH BAYLEN STREET, SUITE 600
PENSACOLA, FL 32502

5
Telephone: 850-435-7107
epaulos@levinlaw.com

6

7
ROLAND TELLIS
DAVID FERNANDES

8
**BARON & BUDD, P.C.**
15910 Ventura Boulevard, Suite 1600

9
Encino, CA 91436
Telephone: (818) 839-2333

10
Facsimile: (818) 986-9698
rtellis@baronbudd.com

11
dfernandes@baronbudd.com

12

13
ALEXANDRA WALSH
**WALSH LAW**

14
1050 Connecticut Ave, NW, Suite 500
Washington D.C. 20036

15
T: 202-780-3014
awalsh@alexwalshlaw.com

16

17
MICHAEL M. WEINKOWITZ
**LEVIN SEDRAN & BERMAN, LLP**

18
510 WALNUT STREET
SUITE 500

19
PHILADELPHIA, PA 19106
Telephone: 215-592-1500

20
mweinkowitz@lfsbalw.com

21
DIANDRA "FU" DEBROSSE ZIMMERMANN

22
**DICELLO LEVITT**
505 20th St North

23
Suite 1500
Birmingham, Alabama 35203

24
Telephone: 205.855.5700
fu@dicellolevitt.com

25

26

27

28

HILLARY NAPPI
**HACH & ROSE LLP**
112 Madison Avenue, 10th Floor
New York, New York 10016
Tel: 212.213.8311
hnappi@hrsclaw.com

JAMES MARSH
**MARSH LAW FIRM PLLC**
31 HUDSON YARDS, 11TH FLOOR
NEW YORK, NY 10001-2170
Telephone: 212-372-3030
jamesmarsh@marshlaw.com

*Attorneys for Individual Plaintiffs*

**ROB BONTA**
Attorney General
State of California

  */s/ Megan O'Neill*
Nick A. Akers (CA SBN 211222)
Senior Assistant Attorney General
Bernard Eskandari (SBN 244395)
Supervising Deputy Attorney General
Megan O'Neill (CA SBN 343535)
Joshua Olszewski-Jubelirer
(CA SBN 336428)
Marissa Roy (CA SBN 318773)
Deputy Attorneys General
California Department of Justice
Office of the Attorney General
455 Golden Gate Ave., Suite 11000
San Francisco, CA 94102-7004
Phone: (415) 510-4400
Fax: (415) 703-5480
Bernard.Eskandari@doj.ca.gov

*Attorneys for Plaintiff the People of the State of California*

**RUSSELL COLEMAN**
Attorney General
Commonwealth of Kentucky

*/s/ J. Christian Lewis*
J. Christian Lewis (KY Bar No. 87109),
*Pro hac vice*
Philip Heleringer (KY Bar No. 96748),
*Pro hac vice*
Zachary Richards (KY Bar No. 99209),
*Pro hac vice app. forthcoming*
Daniel I. Keiser (KY Bar No. 100264),
*Pro hac vice*
Matthew Cocanougher (KY Bar No. 94292),
*Pro hac vice*
Assistant Attorneys General
1024 Capital Center Drive, Suite 200
Frankfort, KY 40601
CHRISTIAN.LEWIS@KY.GOV
PHILIP.HELERINGER@KY.GOV
ZACH.RICHARDS@KY.GOV
DANIEL.KEISER@KY.GOV
MATTHEW.COCANOUGHER@KY.GOV
Phone: (502) 696-5300
Fax: (502) 564-2698

*Attorneys for Plaintiff the Commonwealth of
Kentucky*

1
COVINGTON & BURLING LLP

2
By: /s/ Ashley M. Simonsen

3
Ashley M. Simonsen, SBN 275203
COVINGTON & BURLING LLP

4
1999 Avenue of the Stars
Los Angeles, CA 90067

5
Telephone: (424) 332-4800
Facsimile: + 1 (424) 332-4749

6
Email: asimonsen@cov.com

7

8
Phyllis A. Jones, *pro hac vice*
Paul W. Schmidt, *pro hac vice*

9
COVINGTON & BURLING LLP
One City Center

10
850 Tenth Street, NW
Washington, DC 20001-4956

11
Telephone: + 1 (202) 662-6000
Facsimile: + 1 (202) 662-6291

12
Email: pajones@cov.com

13
*Attorney for Defendants Meta Platforms, Inc.*
*f/k/a Facebook, Inc.; Facebook Holdings,*

14
*LLC; Facebook Operations, LLC; Facebook*
*Payments, Inc.; Facebook Technologies, LLC;*

15
*Instagram, LLC; Siculus, Inc.; and Mark Elliot*
*Zuckerberg*

16

17
FAEGRE DRINKER LLP

18
*By: /s/ Andrea Roberts Pierson*
Andrea Roberts Pierson, pro hac vice

19
FAEGRE DRINKER LLP
300 N. Meridian Street, Suite 2500

20
Indianapolis, IN 46204
Telephone: + 1 (317) 237-0300

21
Facsimile: + 1 (317) 237-1000
Email: andrea.pierson@faegredrinker.com

22

23
Amy R. Fiterman, pro hac vice
FAEGRE DRINKER LLP

24
2200 Wells Fargo Center
90 South Seventh Street

25
Minneapolis MN 55402
Telephone: +1 (612) 766 7768

26
Facsimile: + 1 (612) 766 1600
Email: amy.fiterman@faegredrinker.com

27

28
Geoffrey M. Drake, pro hac vice

1    KING & SPALDING LLP
     1180 Peachtree Street, NE, Suite 1600
2    Atlanta, GA  30309
     Telephone: +1 (404) 572 4726
3    Email: gdrake@kslaw.com

4
     David P. Mattern, pro hac vice
5    KING & SPALDING LLP
     1700 Pennsylvania Avenue, NW, Suite 900
6    Washington, D.C.  20006
     Telephone: +1 (202) 626 2946
7    Email: dmattern@kslaw.com

8
     *Attorneys for Defendants TikTok Inc. and*
9    *ByteDance Inc.*

10
     MUNGER, TOLLES & OLSEN LLP
11   By: */s/ Jonathan H. Blavin*
     Jonathan H. Blavin, SBN 230269
12   MUNGER, TOLLES & OLSON LLP
     560 Mission Street, 27th Floor
13   San Francisco, CA 94105-3089
     Telephone: (415) 512-4000
14   Facsimile: (415) 512-4077
     Email: jonathan.blavin@mto.com
15

16   Rose L. Ehler (SBN 29652)
     Victoria A. Degtyareva (SBN 284199)
17   Laura M. Lopez, (SBN 313450)
     Ariel T. Teshuva (SBN 324238)
18   MUNGER, TOLLES & OLSON LLP
     350 South Grand Avenue, 50th Floor
19   Los Angeles, CA 90071-3426
     Telephone: (213) 683-9100
20   Facsimile: (213) 687-3702
     Email: rose.ehler@mto.com
21   Email: victoria.degtyareva@mto.com
     Email: Ariel.Teshuva@mto.com
22

23   Lauren A. Bell (*pro hac vice forthcoming*)
24   MUNGER, TOLLES & OLSON LLP
     601 Massachusetts Ave., NW St.,
25   Suite 500 E
     Washington, D.C. 20001-5369
26   Telephone: (202) 220-1100
     Facsimile: (202) 220-2300
27   Email: lauren.bell@mto.com

28

*Attorneys for Defendant Snap Inc.*

WILSON SONSINI GOODRICH & ROSATI
Professional Corporation
By: */s/ Brian M. Willen*
Brian M. Willen (*pro hac vice*)
WILSON SONSINI GOODRICH & ROSATI
1301 Avenue of the Americas, 40th Floor
New York, New York 10019
Telephone: (212) 999-5800
Facsimile: (212) 999-5899
Email: bwillen@wsgr.com

Lauren Gallo White
Samantha A. Machock
WILSON SONSINI GOODRICH & ROSATI
One Market Plaza, Spear Tower, Suite 3300
San Francisco, CA 94105
Telephone: (415) 947-2000
Facsimile: (415) 947-2099
Email: lwhite@wsgr.com
Email: smachock@wsgr.com

Christopher Chiou
WILSON SONSINI GOODRICH & ROSATI
953 East Third Street, Suite 100
Los Angeles, CA 90013
Telephone:  (323) 210-2900
Facsimile:  (866) 974-7329
Email: cchiou@wsgr.com

*Attorneys for Defendants YouTube, LLC, Google
LLC, and Alphabet Inc.*

WILLIAMS & CONNOLLY LLP
By: */s/ Joseph G. Petrosinelli*
Joseph G. Petrosinelli (*pro hac vice*)
jpetrosinelli@wc.com
Ashley W. Hardin (*pro hac vice*)
ahardin@wc.com
680 Maine Avenue, SW
Washington, DC 20024
Telephone.: 202-434-5000
Fax: 202-434-5029

*Attorneys for Defendants YouTube, LLC, Google
LLC, and Alphabet Inc.*

MORGAN, LEWIS & BOCKIUS LLP
By: */s/ Stephanie Schuster*
Stephanie Schuster (*pro hac vice*)
stephanie.schuster@morganlewis.com
1111 Pennsylvania Avenue NW
NW Washington, DC 20004-2541
Tel.: 202.373.6595

Yardena R. Zwang-Weissman (SBN 247111)
yardena.zwang-weissman@morganlewis.com
300 South Grand Avenue, 22nd Floor
Los Angeles, CA 90071-3132
Tel.: 213.612.7238

Brian Ercole (*pro hac vice*)
brian.ercole@morganlewis.com
600 Brickell Avenue, Suite 1600
Miami, FL 33131-3075
Tel.: 305.415.3416

*Attorneys for Defendants YouTube, LLC and Google LLC*

**IT IS ORDERED** that the foregoing Agreement is approved.

Dated: _____March 18, 2024_____      _____

MAGISTRATE JUDGE PETER H.  KANG

**APPENDIX 1: PRODUCTION FORMAT**

1) **Production Components.** Except as otherwise provided below, ESI must be produced in accordance with the following specifications:

    a) an ASCII delimited data file (.DAT) using standard delimiters;

    b) an image load file (.OPT) that can be loaded into commercially acceptable production software (*e.g.* Concordance);

    c) single page black-and-white TIFF images, or JPEG images when color is specified herein, or native files with single page placeholder TIFF images depending on the applicable production format for each type of file;

    d) and document level .TXT files for all documents containing extracted full text or OCR text.

    e) Family relationships between emails and their attachments, embedded files and their source document, and connected hardcopy documents will be maintained in production. Attachments should be consecutively produced with their parent.

    f) If a particular document warrants a different production format, the Parties will cooperate in good faith to arrange for a mutually acceptable production format.

2) **Production Media and Access Controls.** Productions must be encrypted and produced through secure electronic means, such as secure file sharing methods (*e.g.* FTP), or on CD, DVD, flash drive or external hard drive ("Production Media"). Each piece of Production Media must identify a production number corresponding to the production volume (*e.g.* "VOL001"). Each piece of Production Media must also identify: (a) the case caption; (b) the following label: "This media contains material subject to Court Ordered security measures"; (c) the Producing Party's name; (d) the production date; (e) the Bates Number range of the materials contained on the Production Media.

Nothing in this ESI Order will preclude or impair any and all protections provided the Parties by any Protective Order(s) agreed and entered into by the Parties. Parties will use best efforts to avoid the unnecessary copying or transmittal of produced documents. If questions arise, the Parties will meet and confer to ensure security concerns are addressed prior to the exchange of

any documents.

    **3)**      **Data Load Files/Image Load Files.** Each TIFF in a production must be referenced in the corresponding image load file. The total number of documents referenced in a production's data load file should match the total number of designated document breaks in the image load file(s) in the production. The total number of pages referenced in a production's image load file should match the total number of TIFF files in the production. All images must be assigned a unique Bates number that is sequential within a given document and across the production sets. The Bates Numbers in the image load file must match the corresponding documents' beginning Bates numbers in the data load file. The total number of documents in a production should match the total number of records in the data load file. Load files must not vary in format or structure within a production, or from one production to another except by agreement of the Parties.

    **4)**      **Metadata Fields.** Each of the metadata and coding fields set forth below that can be extracted should be produced for each document, except that if the field contains privileged information, that privileged information may be redacted. However, to the extent that metadata does not exist, is not available for any documents produced, this provision shall not be read to require any Party to extract, capture, collect, manually populate, or produce such metadata, with the exception of the following: (a) BEGBATES, (b) ENDBATES, (c) BEGATTACH, (d) ENDATTACH, (e) PRODVOL, (f) ALL CUSTODIANS, (g) CONFIDENTIALITY, (h) REDACTIONS, (i) REDACTION TYPE, (j) HASHVALUE, (k) NATIVEFILEPATH, and (l) TEXTFILEPATH, which should be populated by the Party or the Party's vendor. The Parties will make reasonable efforts to ensure that metadata fields automatically extracted from the documents correspond directly to the information that exists in the original documents.

| Field Name | Field Description |
| --- | --- |
| BEGBATES | Beginning Bates number for a particular document as stamped on the first production image for that document |
| ENDBATES | Ending Bates number as stamped on the last |

| Field Name | Field Description |
|---|---|
| | production image for a particular document |
| BEGATTACH | First production Bates number of the first document in a family |
| ENDATTACH | Last production Bates number of the last document in a family |
| ATTACHCOUNT | Number of attachments to an e-mail or embedded parent, as generated by commercially available discovery processing tools. |
| ATTACHNAMES | Names of each individual Attachment, separated by semicolons. |
| PRODVOL | Production volume |
| ALLCUSTODIANS | List of all custodians associated with Document, i.e. "Custodian" + "Other Custodian" values delimited by semicolon. |
| ALLFILEPATHS | All original path(s) to the individual source file(s) when available in the ordinary course of business to and processable by the parties and their ESI vendors of choice. Includes path up to and including internal path of containers. |
| CONFIDENTIALITY | Confidentiality designation assigned to the document consistent with the Stipulated Protective Order governing this Litigation |
| NATIVEFILEPATH | Native File Link (Native Files only) |
| TEXTFILEPATH | Path to extracted text/OCR file for the document |
| HASHVALUE | MD5 hash value of the document |
| DOCUMENT TYPE | Descriptor for the type of document: "E-document" for electronic documents not attached to e-mails; "E-mail" for all e-mails; "E-attachment" for files that were attachments to e-mails; and "Physical" for hard copy physical documents that have been scanned and converted to an electronic image. |
| AUTHOR | Any value populated in the Author field of the |

| Field Name | Field Description |
|---|---|
|  | document properties |
| DOCDATE | Date the document was created according to filesystem information (format: MM/DD/YYYY) |
| DATELASTMODIFIED | Date when document was last modified according to filesystem information (format: MM/DD/YYYY) |
| LAST MODIFIED BY | Last person who modified (saved) a document, as generated by commercially available discovery processing tools. |
| TRACK CHANGES | Y if a document with track changes value, otherwise N or empty, if available separately from the HASHIDDENDATA flag |
| COMMENTS | Y if a document with comments, otherwise N or empty, if available separately from the HASHIDDENDATA flag |
| HASHIDDENDATA | Y if a document with hidden content value, otherwise N or empty |
| FILENAME | Filename of an electronic document |
| TITLE | Any value populated in the Title field of the document properties |
| DOCEXT | File extension of document pulled from the document properties |
| FROM | The sender of the email |
| TO | All recipients that were included on the "To" line of the email |
| CC | All recipients that were included on the "CC" line of the email |
| BCC | All recipients that were included on the "BCC" line of the email |
| DATETIMERECEIVED | Date and time email was received (format: MM/DD/YYYY HH:MM) |
| DATETIMESENT | Date and time email was sent (format: MM/DD/YYYY HH:MM) |

| Field Name | Field Description |
|---|---|
| TIMEZONE | The timezone used to process the document |
| EMAILSUBJECT | Subject line of email pulled from the document properties |
| THREADID | If a threading tool is used for emails, the thread id generated by the threading tool. |
| REDACTION TYPE[1] | General category of redaction reason as agreed to by the parties. For example,  PII, SCA, CODE, and/or PRIV.  If more than one, separate reasons by semicolons. |
| REDACTIONS | Y if a document is redacted, otherwise N or empty |

5)      **TIFFs.** Unless excepted below, single page, black and white, Group IV TIFFs should be provided, at least 300 dots per inch (dpi) for all documents. Each TIFF image must be named according to a unique corresponding Bates number associated with the document. Each image must be branded according to the Bates number and the agreed upon confidentiality designation. Original document orientation should be maintained (i.e., portrait to portrait and landscape to landscape). Where the TIFF image is unreadable or has materially degraded the quality of the original, the Producing Party shall provide a higher quality TIFF image or the native or original file.  In addition, the Parties shall take reasonable efforts to process word processing documents (*e.g.*, MS Word) with track changes and/or comments unhidden on the TIFF image.

6)      **Color.** Word processing documents containing tracked changes shall be produced in color, as single-page, 300 dpi JPG images with JPG compression and a high quality setting as to not degrade the original image.  The Producing Party shall comply with good faith by the Requesting Party to provide replacement color images for documents originally produced in black and white.  A Party making such a request shall make the request by individual Bates

---

[1] The Parties will provide specific information on any privilege(s) asserted in their privilege logs, in an overlay, or the redaction boxes.  The "Redaction Reason" field is informational only for redaction type and shall not in any way limit a party's right to assert attorney-client privilege, attorney-work product privilege, and/or any other applicable privilege or protection.

number(s) and shall limit requests made pursuant to this paragraph to a reasonable number of documents.

**7)** **Text Files.** A single multi-page text file must be provided for each document, and the filename should match its respective TIFF filename for the first page of that document. Extracted text shall be generated with commercially acceptable technology set to include all comments, revisions, tracked changes, speaker's notes and text from documents with comments or tracked changes, and hidden and very hidden worksheets, slides, columns and rows. When possible, the text of native files should be extracted directly from the native file. Parties will perform optical character recognition ("OCR") on foreign language documents using the appropriate settings for languages reasonably anticipated to be in the production following a meet and confer with the Requesting Party to identify those languages. Text files will not contain the redacted portions of the documents. A commercially acceptable technology for OCR should be used for all scanned, hard copy documents and for documents with redactions other than Excel files and other spreadsheets which shall be redacted in native format. Text extracted from emails should include the following header information where available: (1) the individuals to whom the communication was directed ("To"), (2) the author of the email communication ("From"), (3) who was copied and blind copied on such email ("CC" and "BCC"), (4) the subject line of the email ("RE" or "Subject"), and (5) the date and time of the email. To the extent the text extraction technology the Parties are using can be configured to include the text of any URLs or links, the Parties shall utilize that setting.

**8)** **Native files.** Spreadsheets (*e.g.* MS Excel), and un-redacted presentations (e.g. Microsoft PowerPoint,) will be produced in native format to the extent that they are produced in this Litigation, audio, video, and multi-media files will be produced in native format. The Parties will meet and confer on the production of other file types, such as proprietary files, etc. Native files will be produced with a link in the NATIVEFILEPATH field, along with extracted text (where extracted text is available) and applicable metadata fields set forth in paragraph 4 above. A Bates numbered TIFF placeholder indicating that the document was provided in native format must accompany every native file. Where redaction makes production of native-format

files other than spreadsheets or presentations infeasible, the Parties will confer to determine a reasonably usable form for the production, but spreadsheets shall presumptively be redacted in native, and presentations presumptively redacted in image form, in these cases without the need for further conferring.

     **9)**     **Production Format for Hard Copy Documents.** Documents that exist in hardcopy will be scanned to *.tiff image format and produced in accordance with the specifications set forth herein. Hard copy documents that are not text-searchable shall be made searchable by OCR prior to production.  In scanning paper documents, distinct documents should not be merged into a single record, and single documents should not be split into multiple records (i.e., paper documents should be logically unitized). In the case of an organized compilation of separate documents (for example, a binder containing several separate documents behind numbered tabs), the document behind each tab should be scanned separately, but the relationship among the documents in the compilation should be reflected in the proper coding of the beginning and ending document and attachment fields. The Parties will make their best efforts to unitize the documents correctly. If relevant documents are maintained in a file, folder, envelope, binder, notebook or similar container used to store documents, all contents therein shall be reviewed for production and privilege. Document pages which have affixed notes, such as Post-it notes, should be imaged with and without the note attached.

     **10)**     **Confidentiality Designation.** All images will be stamped with the appropriate confidentiality designations in accordance with the Stipulated Protective Order entered in this Litigation. Each document produced in native format will have its confidentiality designation identified in the filename of the native file and indicated on its corresponding TIFF placeholder.

     **11)**     **Bates Numbering**.  Bates numbering should be a consistent length across the production, contain no special characters, and be numerically sequential within a given document.  If a Bates number or set of Bates numbers is skipped, the skipped number or set of numbers should be noted with a placeholder.  Attachments to documents will be assigned Bates numbers that directly follow the Bates numbers on the documents to which they were attached.

In addition, wherever possible, each image will have its assigned Bates number electronically "burned" onto the image.

**12)     Databases and Other Structured Data.** To the extent that responsive information is stored in a database, or database management system, or proprietary system or application which has is directed to data storage as one of its primary functions, the Producing Party will identify the database and platform to the Requesting Party. The Producing Party shall produce exports and reports about such responsive information stored in such database, where such exports and reports shall be in a reasonably usable form, and information may be produced in CSV format, tab-delimited text format, Microsoft Excel format, or Microsoft Access format. If there are future disputes over the production of information from a database, the Parties shall meet and confer in good faith in an attempt to reach any further agreements (if needed) on the data to be produced and the format and scope of the production. The Producing Party will provide reasonable amounts of information about the databases to facilitate that discussion.

**13)     Hyperlinks.** Document(s) and/or folder(s) of documents that are hyperlinked inside a responsive document (including hyperlinked inside emails) within a Producing Party's custody, possession, or control, do not need to be produced in the first instance as part of the same family group as the Document residing at the location to which that hyperlink points. If there are particular hyperlinks identified by the Requesting Party in produced documents, the Requesting Party may submit a list of hyperlinks to a particular Producing Party for potentially relevant documents by identifying the Bates number and URL or link text for each requested link to the Producing Party, and the Producing Party will engage in reasonable efforts to locate the hyperlinked document at that location and either identify it by Bates number or provide any responsive, non-produced, and non-privileged documents. The number of hyperlinks a Requesting Party may identify to a Producing Party shall not be excessive and shall be reasonable, proportional to the needs of the case, and not unduly burdensome.

**14)     Embedded Objects.** The Parties agree non-substantive embedded objects, including, but not limited to, logos, icons, emoticons, and footers, may be culled from a document set (but not a document) and need not be produced as separate documents by a

Producing Party (i.e., such embedded objects will be produced within the document itself, rather than as separate documents). Embedded files, except for images (including but not limited to, logos, icons, emoticons), are to be produced as family groups. Embedded files should be assigned Bates numbers that directly follow the Bates numbers on the documents within which they are embedded.

15) **Production of Family Groups and Relationships**. If any member of a family group is produced, all members of that group must also be produced or else logged as privileged, and no such member shall be withheld from production as a duplicate.

16) **Dynamic Fields**.  Documents with dynamic fields for file names, dates, and times will be imaged to show the field code (e.g., "[FILENAME]") where possible, rather than the values for such fields existing at the time the file is processed.

17) **Time Zone**.  The time zone used to process a document, including its metadata, shall be disclosed in the TIMEZONE metadata field consistent with Appendix 1, and shall be standardized for each Defendant across productions.

18) **Redactions**.

a) A Producing Party may redact (i) information subject to the attorney client privilege or the work product protection (PRIV); (ii) information that cannot be disclosed pursuant to the Stored Communications Act (SCA); (iii) source code subject to separate agreement applicable to production of source code (CODE); (iv) personal identifying information (PII) including phone numbers, personal addresses, personal email addresses, the month and day of birth, driver's license numbers, and other PII agreed to by the Parties (for example, the Parties shall complete their meet and confer on whether or not to redact users' ages and years of birth). In any event, there shall be no redaction of illnesses, injuries, and medical diagnoses. To the extent a document or pleading contains PII, the Parties shall designate such documents at the appropriate Confidentiality level under the Protective Order and shall comply with Fed. R. Civ. P. 5.2 with regard to filings with the Court.

b) No redactions for relevance may be made within a produced document or ESI item. If, during the course of discovery, the Parties identify other kinds of information that any

Party has a reasonable basis for redacting, the Parties will meet and confer on a case-by-case basis regarding that information before such redactions are made. If the Parties cannot agree, they may seek resolution from the Court.

c)      The Producing Party will indicate, on the face of the redaction, the asserted reason(s) for the redaction (PII, SCA, CODE, and/or PRIV) and the REDACTION TYPE metadata field shall indicate that the document contains redactions and the reason(s) for the redaction.

d)      Notwithstanding the foregoing, this provision shall not be read to prohibit redactions permitted under any applicable U.S. law or Protective Order.

e)      Where a responsive document contains both redacted and non-redacted content, the Parties shall produce the non-redacted portions of the document and the OCR text corresponding to the non-redacted portions.

f)      Native Redactions. Spreadsheet files requiring redaction, including without limitation Microsoft Excel files, shall be redacted and produced natively (unless the Parties agree to production in some other format). In addition, a Producing Party may natively redact other files that cannot be properly imaged for redaction.

g)      All images of redacted files shall be processed to show all comments, revision marks, speaker notes, marks made in track changes, or other user-entered data which are visible in a normal view of the document in its native application, unless such material is redacted and marked as redacted in accordance with this section. Where possible, any occurrences of date/time auto-field items, including in headers and footers, will be removed and replaced with the term AUTODATE to prevent the current date from being printed. Email header information (e.g., date and/or subject line) shall not be redacted unless it is independently privileged. The Parties shall honor reasonable requests for the production of particular redacted documents in other formats where the image is not reasonably usable.

h)      Color.  Redacted versions of documents that would have been produced in color in their un-redacted form shall be produced in color as detailed herein.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

     **19)**     **Exception Files**. The Parties will use reasonable efforts to address processing exceptions.

     **20)**     **Mobile and Handheld Device Documents and Data**. If responsive and unique data that can reasonably be extracted and produced in the formats described herein is identified on a mobile or handheld device, that data shall be produced in accordance with the generic provisions of this protocol. To the extent that responsive data identified on a mobile or handheld device is not susceptible to normal production protocols, the Parties will meet and confer to address the identification, production, and production format of any responsive documents and data contained on any mobile or handheld device.

# COVINGTON

BEIJING  BOSTON  BRUSSELS  DUBAI  FRANKFURT
JOHANNESBURG  LONDON  LOS ANGELES  NEW YORK
PALO ALTO  SAN FRANCISCO  SEOUL  SHANGHAI  WASHINGTON

Covington & Burling LLP
1999 Avenue of the Stars
Los Angeles, CA 90067-4643
T  +1 424 332 4800

July 24, 2024

DELIVERED VIA PROCESS SERVER

Louisiana Department of Health
628 N. 4th Street
Baton Rouge, LA 70208

Re: <u>People of the State of California et al. v. Meta Platforms, Inc. et al., 4:23-
cv-05448</u>

Dear Sir/Madam:

Enclosed please find a subpoena being served upon you in connection with
the above-captioned litigation currently pending in the U.S. District Court for
the Northern District of California. I represent Defendants Meta Platforms,
Inc.; Instagram, LLC, Meta Payments, Inc., and Meta Platforms Technologies,
LLC (collectively, the "Meta Defendants") in this matter.

The document subpoena requests the production of specific documents
identified in the attached subpoena (see Attachment A to the
subpoena), which are requested to be produced by 10 a.m. on August 23,
2024. We are willing to work with you on the time, date, location, method
and manner of document production, as well as answer any questions or
concerns you may have regarding subpoena compliance. It is
sufficient compliance with this subpoena if you electronically transmit a
copy of the requested documents to the undersigned. As such, please
contact me at [ceppich@cov.com](mailto:ceppich@cov.com) and 424-332-4764, to discuss document
production and subpoena compliance, unless you are already
represented by counsel in connection with this matter.

The Court is currently considering whether the Louisiana Attorney General's
Office has control over Louisiana Department of Health's information for the
purposes of discovery in this action. If the Court rules that the Louisiana
Attorney General's Office has control over the Louisiana Department of
Health's information, the Louisiana Attorney General has pending discovery
requests that seek this agency's documents. By serving this subpoena, Meta
does not waive its position in the state agency dispute, nor does Meta in any
way waive rights to compel the Louisiana Attorney General to produce
Louisiana Department of Health information as part of discovery in this
action. However, to avoid further delay in the production of information
from the Louisiana Department of Health, Meta is serving the attached
subpoena to request the timely production of this information.

**COVINGTON**

Your anticipated time and assistance with this matter is greatly appreciated.

Best regards,

*/s/  Christopher K. Eppich*

Christopher K. Eppich

Enclosed:  Subpoena, Attachment A, and Attachment B

AO 88B  (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT
for the

Northern District of California

IN RE: SOCIAL MEDIA ADOLESCENT ADDICTION/PERSONAL INJURY  PRODUCTS LIABILITY LITIGATION

THIS DOCUMENT RELATES TO: People of the State of California, et al. *v.* Meta Platforms, Inc. et al., Case No. 4:23-cv-05448

Civil Action No. 4:22-MD-03047-YGR
MDL No. 3047

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS
## OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

To:  Louisiana Department of Health
628 N 4th St, Baton Rouge, LA 70802

*(Name of person to whom this subpoena is directed)*

✔ *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material: See Attachment A.

| Place: Veritext Legal Solutions 9522 Brookline Avenue, Suite 217 Baton Rouge, LA 70809 | Date and Time: August 23, 2024; 10:00 a.m. |
|---|---|

❑ *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date:  07/24/2024

CLERK OF COURT

OR

_____          /s/ Ashley Simonsen
*Signature of Clerk or Deputy Clerk*          *Attorney's signature*

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)* Meta Platforms, Inc. f/k/a Facebook, Inc.; Instagram, LLC, Meta Payments, Inc. and Meta Platforms Technologies, LLC, who issues or requests this subpoena, are:
Ashley Simonsen, Covington & Burling LLP, 1999 Avenue of the Stars, Los Angeles, CA 90067, 424-332-4782, asimonsen@cov.com

## Notice to the person who issues or requests this subpoena
If this subpoena commands the production of documents, electronically stored information, or tangible things or the inspection of premises before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

AO 88B  (Rev.  02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (Page 2)

Civil Action No.    4:23-cv-05448

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____

on *(date)* _____ .

❏  I served the subpoena by delivering a copy to the named person as follows: _____

_____  on *(date)* _____ ; or

❏  I returned the subpoena unexecuted because: _____ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $    0.00    .

I declare under penalty of perjury that this information is true.

Date: _____                     _____
                                                                         *Server's signature*

                                                                _____
                                                                         *Printed name and title*

                                                                _____
                                                                         *Server's address*

Additional information regarding attempted service, etc.:

| Print | Save As... | Add Attachment | | Reset |

AO 88B  (Rev.  02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action(Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

  **(1) *For a Trial, Hearing, or Deposition.*** A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
    **(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
    **(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person
      **(i)** is a party or a party's officer; or
      **(ii)** is commanded to attend a trial and would not incur substantial expense.

  **(2) *For Other Discovery.*** A subpoena may command:
    **(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
    **(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

  **(1) *Avoiding Undue Burden or Expense; Sanctions.*** A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

  **(2) *Command to Produce Materials or Permit Inspection.***
    **(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
    **(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
      **(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
      **(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

  **(3) *Quashing or Modifying a Subpoena.***
    **(A)** *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
      **(i)** fails to allow a reasonable time to comply;
      **(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);
      **(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
      **(iv)** subjects a person to undue burden.
    **(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
      **(i)** disclosing a trade secret or other confidential research, development, or commercial information; or

      **(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
    **(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
      **(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
      **(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

  **(1) *Producing Documents or Electronically Stored Information.*** These procedures apply to producing documents or electronically stored information:
    **(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
    **(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
    **(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
    **(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

  **(2) *Claiming Privilege or Protection.***
    **(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
      **(i)** expressly make the claim; and
      **(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
    **(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

## DEFINITIONS AND INSTRUCTIONS TO ATTACHMENT A

## DEFINITIONS

1.      The term "communication" means the transmittal of information (in the form of facts, ideas, inquiries or otherwise).

2.      "Document" or "documents" shall have the broadest meaning ascribed to it by the Federal Rules of Civil Procedure, and includes, without limitation electronically stored information ("ESI") (including, without limitation, electronic databases and the data therein, all electronic messages or communications, electronic word processing documents, electronically stored voicemail, webpages, and social media posts) in accordance with any order in this case governing ESI at the time of production. Different versions of the same documents, including, but not limited to, drafts or documents with handwritten notations or marks not found in the original or on other copies are different documents.

3.      "You", "you", "Your" and "your" means the Louisiana Department of Health.

4.      "Relating" or "related to" means and includes referring to, concerning, referencing, mentioning, associated with, constituting, discussing, containing, embodying, recording, reflecting, identifying, summarizing, incorporating, and/or dealing with or pertaining to in any way.

5.      "And" includes "or", and vice versa.

6.      The singular form of a word or term includes the plural, and vice versa.

7.      The present tense of a verb includes the past tense, and vice versa.

8.      The use of the article "the" shall not be construed as limiting the scope of any request.

9.      "Including" means "including without limitation."

1

10.    "Any" includes "all", and vice versa.

11.    The capitalized version of a word or term includes the lower case version of a word or term, and vice versa.

12.    "Social Media Platforms" or "Platforms" means a digital service that facilitates interactions between two or more distinct but interdependent sets of users, including but not limited to Facebook, Instagram, Snapchat, TikTok, YouTube, Twitter (or "X"), Pinterest, LinkedIn, BeReal, Lapse, Reddit, Threads, VSCO, Goodreads, Quora, Discord, Twitch, and Tumblr.

13.    "Young Users" means users of Social Platforms who are under 18 years of age when using the Platform(s).

All words, terms, and phrases not specifically defined herein are to be given their normal and customary meaning in the context in which they are used in these Requests.

## INSTRUCTIONS

1.    These Requests are intended to cover any and all documents in your possession, custody, or control, to the extent not privileged.  Documents held by any office, department, board, commission, or instrumentality of the Louisiana Department of Health are within your possession, custody, or control.

2.    In accordance with ESI Protocol attached hereto as Attachment B, if you object to furnishing any of the documents or information requested by these Requests on the grounds of attorney-client privilege, work product, other privilege, or otherwise then, with respect to each such document:

      a.  state the nature of the privilege claimed;

      b.  state the date of each communication supporting the privilege claim;

      c.  identify all participants in the supporting communication;

      d.  state the specific grounds on which the objection is based; and

   e.   identify the specific request calling for such information;

2.      If you object to any Request on the grounds that it is vague or ambiguous, state: (i) the portions or terms of such Request that you claim to be vague or ambiguous; and (ii) the interpretation of the Request pursuant to which you provide a response.

3.      Each request shall be deemed continuing, so as to require supplemental or mandatory responses should you obtain additional responsive information subsequent to your initial responses.

4.      If you cannot fully respond to a particular Request after exercising due diligence to make inquiry and to secure the necessary information, provide a response to the extent possible, specifying your inability to respond to the remainder and providing whatever information or knowledge you have concerning the portion not responded to.

5.      Each page of a produced document shall have a legible, unique page identifier ("Bates Number") and confidentiality legend (where applicable) on the face of the image at a location that does not obliterate, conceal, or interfere with any information from the source document.  Redactions should be clearly marked or stamped on the page in such a way that it is clear from review that a portion of the image has been redacted.

6.      All responsive and non-privileged electronic documents shall be produced in the format ordered by the Court in its ESI order.

7.      All responsive electronic documents shall be produced in a format agreed upon by the parties, to include at least native versions of Excel spreadsheets and presentation files, with a Bates-stamped placeholder image.

8.      Unless otherwise specified, the time period for these Requests is January 1, 2012 to the date of production of the Documents.


## ATTACHMENT A

1.  Research, investigations, studies, surveys, reports, evaluations, or analyses concerning the mental, social, emotional, or behavioral health of persons ages 13 to 18.

2. Research, investigations, studies, surveys, reports, evaluations, or analyses related to Social Media Platforms, including the importance of Social Media Platforms and the use of Social Media Platforms by Young Users and the potential benefits and harms created by the use of Social Media Platforms.

3. Research, investigations, studies, surveys, reports, evaluations, or analyses concerning the mental, social, emotional, or behavioral health of Young Users, including those related to the effects of:
   a. Social Media Platforms usage;
   b. Video games usage;
   c. Cell phone usage;
   d. Messaging usage;
   e. Usage of other electronics apart from usage of Social Media Platforms;
   f. COVID-19 and/or remote learning;
   g. Use of drugs or alcohol;
   h. The opioid and fentanyl epidemic;
   i. Poverty, homelessness, lack of health insurance, and/or food insecurity;
   j. Physical health including nutrition, exercise, weight management, sleeping habits, and sexual activity;
   k. Family trauma or deaths;
   l. Academic pressure;
   m. Violence, including school violence, domestic violence, gun violence, gun control and/or mass shootings;
   n. Bullying or verbal abuse apart from usage of Social Media Platforms;
   o. Political polarization;
   p. Natural disasters;
   q. Climate change;
   r. Discrimination and inequity;
   s. Global warfare and conflict; and
   t. Any other potential causes of harms to the mental, social, emotional, or behavioral health of Young Users.

4. Youth Risk Behavior Surveys conducted by the Louisiana Department of Health or on its behalf.

5. Research, investigations, studies, surveys, reports, evaluations, or analyses related to:
   a. Features of Social Media Platforms that are psychologically or physically harmful to Young Users;
   b. Features of Social Media Platforms that promote compulsive, prolonged, or unhealthy use by Young Users;
   c. The impact of features of Social Media Platforms, including:
      (1) Algorithmic recommendation and sequencing;
      (2) Image filters;
      (3) Use of multiple user accounts;
      (4) Infinite scroll;
      (5) Ephemeral content features;

(6) Autoplay;
(7) Quantification and display of likes; or
(8) Audiovisual and haptic alerts.

6. Programs, initiatives, efforts, or actions proposed or taken by the Louisiana Department of Health to address Young Users' use of Social Media Platforms, including any program, initiative, effort, or action to prevent, limit, encourage, or promote the use of Social Media Platforms by Young Users.

7. Policies proposed, recommended, or enacted by the Louisiana Department of Health regarding screen time and acceptable use of cell phones, computers, tablets, or other electronic devices by Young Users.

8. Complaints to the Louisiana Department of Health by teachers or school districts regarding social media or cell phone use by Young Users and/or the need for acceptable use or other policies to address Young Users' use of social media or cell phones.

9. Complaints to the Louisiana Department of Health by teachers or school districts regarding budget crises from inflation, underfunding, unfunded mandates, and other causes.

10. Documents related to state assessments in Louisiana, including reports and analyses regarding the history of K-12 state assessment or standardized testing scores, performance by schools and/or school districts, and any other measures of school performance.

11. Legislation or policies proposed by, proposed on behalf of, or testified on by the Louisiana Department of Health, regardless of whether such legislation or policies were enacted, regarding Young Users' use of Social Media Platforms.

12. Mental, social, emotional, or behavioral health services provided by the Louisiana Department of Health to Young Users during the Relevant Period, including:
    a. Counseling or therapy;
    b. Psychiatric services;
    c. Crisis intervention;
    d. Inpatient short-term and long-term programs;
    e. Resource centers; and
    f. Services for Young Users dealing with substance abuse or addiction issues.

13. Any and all Louisiana Department of Health grants to address Young Users' mental health, including information about when, where, why, and how any disbursements were paid, any schedules or plans for future disbursements, policies governing evaluation or approval of such disbursements, records of how the disbursements were used, and all agendas, minutes, notes, or recordings from meetings related to such grant.

14. Public or non-public meetings held by the Louisiana Department of Health related to Social Media Platforms and use of Social Media Platforms by Young Users, including but not limited to, notices, meeting notes, PowerPoint presentations, internal memoranda, summaries, personal notes, or attendee lists.

15. Policies, procedures, and practices related to the Louisiana Department of Health's use of Social Media Platforms, including communication of information or promotion of Louisiana Department of Health's programs, initiatives, efforts, or actions on Social Media Platforms.

16. Louisiana Department of Health's communications and/or collaboration with any Social Media Platform on any program, initiative or other action related to, or directed at, Young Users.

17. Louisiana Department of Health's communications with any third party related to Young Users and/or Social Media Platforms.

18. Budgeted and actual expenditures by the Louisiana Department of Health during the Relevant Period related to Young Users' use of Social Media Platforms.

19. Budgeted and actual expenditures by the Louisiana Department of Health during the Relevant Period related to treatment of teen mental, social, emotional, or behavioral health issues.

20. Policies, procedures, and practices applicable to the Louisiana Department of Health and Louisiana Department of Health employees regarding the use of Social Media Platforms, including any changes to these policies during the Relevant Period.

21. Studies, programs, initiatives, efforts, or actions proposed or taken by the Louisiana Department of Health that sought to provide or promote internet access or phones, computers, tablets, or other electronic devices to Young Users.

22. Louisiana Department of Health's budget and actual expenditures during the Relevant Period, including expenditures on:
    a. Digital advertisements by the Louisiana Department of Health on Social Media Platforms;
    b. Digital advertisements by the Louisiana Department of Health purchased through Social Media Platforms.

**ATTACHMENT B**

# IN THE UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: *Social Media Adolescent Addiction/Personal Injury Products Liability Litigation*<br><br>This document relates to:<br>ALL ACTIONS | MDL No. 3047<br>Case No. 4:22-md-03047-YGR<br><br>Honorable Yvonne Gonzalez Rogers<br>Honorable Peter H. Kang<br><br>**STIPULATION AND [PROPOSED] ORDER GOVERNING THE PRODUCTION OF ELECTRONICALLY STORED INFORMATION AND HARD COPY DOCUMENTS** |

1. **PURPOSE**

This Order Governing the Production of Electronically Stored Information and Hard Copy Documents ("ESI Order") will govern discovery of electronically stored information and any hard copy documents in this Litigation as a supplement to the Federal Rules of Civil Procedure, this District's Guidelines for the Discovery of Electronically Stored Information, and any other applicable orders and rules. "This Litigation" includes all actions currently in MDL No. 3047, *In Re: Social Media Adolescent Addiction/Personal Injury Products Liability*, or hereafter added or transferred to MDL No. 3047, and all actions later remanded to their respective transferor courts.

2. **DEFINITIONS**

a) "Document" is defined to be synonymous in meaning and equal in scope to the usage of this term in Rules 26 and 34 of the Federal Rules of Civil Procedure and shall include Hard-Copy Documents and ESI.

b) "Electronically stored information" or "ESI," as used herein has the same meaning as in Federal Rules of Civil Procedure 26 and 34.

c) "Hard-Copy Document" means Documents existing in paper form at the time of collection.

d) "Searchable Text" means the native text extracted from an Electronic Document and any Optical Character Recognition text ("OCR text") generated from a Hard-Copy Document or electronic image.

**3.     COOPERATION**

The Parties are aware of the importance the Court places on cooperation and commit to cooperate in good faith throughout this Litigation consistent with this Court's Guidelines for the Discovery of ESI and this Court's Rules of Professional Conduct. The Parties will endeavor to cooperate in good faith and be reasonably transparent in all aspects of the discovery process.

**4.     LIAISON**

The Parties will identify Discovery Liaisons to each other who are and will be knowledgeable about and responsible for discussing their respective ESI.  Any Party is free to change their designated Discovery Liaison by providing written notice to the other Parties. Each Party's Discovery Liaison must: (a) be prepared to meet and confer on discovery-related matters and to participate in discovery dispute resolution; (b) be knowledgeable about the Party's discovery efforts; (c) be, or have reasonable access to those who are, familiar with the Party's electronic systems and capabilities in order to explain those systems and answer relevant questions; and (d) be, or have reasonable access to those who are knowledgeable about the technical aspects of discovery, including electronic document storage, organization, and format issues, and relevant information retrieval technology, including search methodology.

**5.     IDENTIFICATION OF CUSTODIANS AND DATA SOURCES**

The parties will disclose information about custodians and custodial and non-custodial data sources likely to possess relevant or responsive information in accordance with Fed. R. Civ. P. 26 and this District's ESI Guidelines. The Parties will participate in Rule 26(f) discussions guided by this District's Checklist for Rule 26(f) Meet and Confer Regarding Electronically

Stored Information. After responses to Requests for Production under Fed. R. Civ. P. 34 have been served, the parties will meet and confer regarding those custodians and custodial and non-custodial data sources from which Documents and ESI will be collected for search and review for potential production in this litigation. The custodian and data source exchanges will include brief explanations of the rationale for their selections; for example, for custodians, their current job titles and descriptions of their work, and for data sources, location information and description.

### 6. INACCESSIBLE OR UNUSABLE ESI

If a Producing Party asserts that certain requested ESI is inaccessible or not "reasonably accessible," otherwise unnecessary, or if the Receiving Party asserts that, following production, certain ESI is not reasonably useable, the parties shall meet and confer to discuss resolving such assertions. The parties will exchange sufficient information to enable the parties to confer in good faith. If the parties cannot resolve any such disputes after such a meet and confer has taken place, the issue shall be presented to the Court for resolution.

### 7. KNOWN RESPONSIVE DOCUMENTS

Documents or ESI identified in a custodial or non-custodial file, or in a discrete folder or collection, that are known to a Producing Party through reasonable investigation to be responsive to a discovery request shall be collected for review without regard to whether the responsive content was located via any search methodology developed in accordance with this Order, and nothing about such review shall prevent the Producing Party from redacting or withholding and logging such documents for applicable privileges.

### 8. SEARCH METHODOLOGIES

The Parties shall adopt reasonable and proportionate methodologies to identify, search, collect, cull, review, and produce ESI as required under applicable legal standards. The Parties recognize and agree that each Party may use one or more methodologies to identify, search, collect, cull, review, and produce responsive and non-privileged ESI, including the use of keyword search terms and/or the use of technology assisted review ("TAR") as discussed further herein. The Parties further recognize that different data sets may implicate different methodologies to identify, search, collect, cull, review, and produce responsive and non-

privileged ESI. The Parties therefore agree to meet and confer in good faith regarding any potential disputes over their respective ESI productions.

## 9.   HIT REPORTS AND SEARCH TERMS

If a Producing Party uses search terms to identify, search, or cull potentially responsive ESI, the Producing Party shall disclose the search terms to the Requesting Party. The Parties shall meet and confer regarding any disputes over the disclosed search terms. In the event that a Producing Party claims burden with respect to modified and/or additional search terms proposed by a Requesting Party, the Producing Party shall provide a hit report for the terms at issue using industry-standard processing tools, such as NUIX or other similar tools. The Producing Party shall provide a hit report for the document collection where the terms were applied, including the following with respect to each proposed or modified search term in the collection:

a)   The number of documents with hits for that term; and

b)   The number of unique documents, i.e., documents which do not have hits for any other term.

If, after reviewing a hit report from a Producing Party, a Requesting Party so chooses, it may reasonably request a further hit report which includes:

c)   The number of family members, including the documents with hits, of the documents with hits for that term; and

d)   The number of unique family members of the documents with hits for that term.

If the ESI tool for the Producing Party is capable without undue burden of providing the number of family members and unique family members, then the Producing Party shall provide such further hit report. The Parties (including the person most knowledgeable about the capabilities of the Producing Party's ESI tool and the Requesting Party's person most knowledgeable about technical issues from its ESI service provider) shall meet and confer regarding any disputes over whether the Producing Party's ESI tool has the capability or not to provider either number of family members or number of unique family members.

The Parties shall meet and confer to resolve disagreements over the search terms or their application. To the extent the Parties are unable to reach agreement on the application of, or

1   procedures for, any search or filtering processes, the Parties shall fully comply with the

2   provisions of this Court's Discovery Standing Order regarding the procedure for raising discovery

3   disputes with the Court, including the meet and confer and certification requirements therein.

4   **10.   TECHNOLOGY ASSISTED REVIEW (TAR)**

5   A Producing Party may use TAR (technology-assisted review) during the culling and

6   review process of ESI, which may be applied in addition to search terms. If a Producing Party

7   uses TAR to cull, filter out, or exclude documents from that Party's production, that Producing

8   Party shall do the following:

9   • If a Producing Party chooses to apply both search terms and TAR to a review set,

10   the Producing Party will disclose the search terms to all other Party/Parties.

11   • Disclose the name of the TAR tool or service used to all other Party/Parties.

12   **11.   VALIDATION**

13   Each Producing Party shall take reasonable steps to validate its review process (i.e., using

14   quality control measures to determine whether its production is missing relevant ESI or contains

15   substantial amounts of irrelevant ESI) and make any necessary adjustments or corrections to its

16   process. If, after reviewing a Producing Party's production, a Requesting Party reasonably

17   requests additional information regarding the validation method(s) used by the Producing Party,

18   the Producing Party will disclose the level of end-to-end recall (the percentage of responsive

19   Documents in the collection which were identified as responsive by that Producing Party's

20   methodology). If there remain disputes between the Parties regarding validation, the Parties shall

21   meet and confer to resolve such disputes in good faith, including a reasonable discussion

22   regarding the tool used and the parameters used to obtain or calculate the level of recall.

23   **12.   UNSEARCHABLE DOCUMENTS**

24   The Producing Party shall use reasonable efforts to identify and review potentially

25   responsive documents for which text-based search technologies are fundamentally ineffective.

26   **13.   SYSTEM FILES**

27   Each Party will use its best efforts to filter out common system files and application

28   executable files using the national software reference library ("NSRL") NIST hash set list. The

Parties also may filter out stand-alone files identified as zero bytes in size. Additional culling of file types based on file header information may be applied to the following, provided these files are not known to be otherwise attached, embedded in, or included with an otherwise responsive document, or are not themselves reasonably known to contain information responsive or contain responsive data or are used to interface with users or interact with or access individual or aggregated user data: Application Package File, Backup Files, Batch Files, Binary Disc Image, C++ File Formats, Cascading Style Sheet, Configuration File, Database File, Dictionary Files, Dynamic Link Library, Event Log Files, Executable Files, Hypertext Cascading Stylesheet, Java Archive Files, JavaScript Files, JavaScript Source Code and Class Files, Macintosh Resource Fork Files, Package Manager Files, Program Files, Program Installers, Python Script Files, Shell Script Files, System or Temporary Files, Thumbnail Cache Files, Troff Files, Truetype Font Files, Windows Cabinet File, Windows Command Files, Windows File Shortcut, Windows Help Files, Windows Metafiles and Enhanced Metafiles, Windows Spool Files, Windows System File.

## 14.     DEDUPLICATION

Each Producing Party shall make reasonable efforts to globally deduplicate exact duplicate Documents within that Producing Party's ESI data set across all custodial and non-custodial sources at the family level using either MD5 hash values or SHA hash values or any other agreed-upon (and disclosed) industry-standard deduplication technology. The Parties shall reach agreement on such other deduplication technology and shall reach agreement on how their deduplication tools shall identify exact duplicates of documents in a manner that is consistent with the disclosed tools and technologies a Producing Party is using. The Parties shall reach agreement on how to identify exact duplicates of emails using industry-standard commercially available software tools or services, which may for example calculate hash values of emails based on concatenated values of agreed-upon email fields and/or hash values of attachments, or which may use any other method the Parties agree upon. Having further met and conferred in keeping with the previous sentence, the Parties shall calculate deduplication hash values for emails on the concatenated values set forth in and in accordance with the documentation specifications of the disclosed deduplication tools to be used in this Litigation (i.e., RelativityOne, Relativity Server,

and Nuix); however, if Nuix is used, the Producing Party shall select the optional field "Include Bcc" as an additional field to add to the default ones.

The Parties shall not withhold from production near-duplicates without meeting and conferring on this issue.

The names of all custodians who were either identified as custodians for purposes of collection for this matter (or otherwise known by the Producing Party to have been in possession or custody of a document prior to deduplication) will be populated in the ALL CUSTODIANS metadata field for the produced version of a document that has duplicates removed from production. The original file paths (if any exist) of a document prior to deduplication will be populated in the ALL FILE PATHS metadata field of the produced document.

## 15. EMAIL THREADING

The Parties may use analytics technology to identify email threads and shall produce the unique most inclusive copy and related family members. Where multiple email messages are part of a single chain or "thread," a Party is only required to produce the most inclusive copy of an email message(s) ("Last In Time Email(s)") and need not produce earlier, lesser inclusive email messages or "thread members," provided that the tool or software service being used to perform threading is disclosed. A Producing Party may exclude from production lesser inclusive copies of the most inclusive email message in the thread, where the entire body of each of those lesser inclusive copies is included within the Last in Time Email. The Producing Party will honor reasonable requests to produce lesser inclusive copies of a Last In Time Email or other earlier chains of emails otherwise excluded by email thread suppression.

The Parties shall treat new or different email chains or threads pursuant to further agreement on safeguards or guidelines for defining emails threads which reasonably take into account the capabilities of the email threading/dethreading/hyperthreading tools used by each Defendant (which shall be disclosed to Plaintiffs).

## 16. SOURCE CODE

The Parties will meet and confer to address the production and/or inspection of source code and entering into a separate order governing the same if needed.

## 17. PRODUCTION FORMATS

The Parties agree to produce documents and data in the formats described in **Appendix 1** to this ESI Order. If particular documents or categories of documents identified in response to document requests warrant a different format, the Parties will cooperate to arrange for the mutually acceptable production of such documents. The Parties further agree not to degrade the searchability of documents as part of the document production process.

In addition, the Parties agree that the production and production format of social media and/or user account information is not covered by this agreement and to meet and confer on the production and production format, including metadata, for social media and/or user account information.

## 18. PHASING

Once the Parties begin propounding discovery requests pursuant to Fed. R. Civ. P. 34, the Parties agree to meet and confer regarding appropriate phasing for the production of ESI.

## 19. MISCELLANEOUS PROVISIONS

a) **Production of Plaintiffs ESI and Case-Specific Materials**.  Subject to any further agreement among the Parties or Order of the Court, the Parties shall produce case-specific documents (i.e., documents specific to the claim of a given Plaintiff, produced by Plaintiffs or Defendants) for any Plaintiff in discovery pools or other selections designed to inform bellwether selection, including those selected for a bellwether trial, in accordance with the production format specified herein, provided, however, that the Producing Party may elect to produce such materials in their native format. To the extent production of case-specific documents for any Plaintiff selected for a bellwether trial presents an issue for any Party, the Parties shall reasonably confer, and may present any disputes to the Court or its designee.  The Parties shall further agree to confer concerning the production format and associated matters (*e.g.*, hosting platform) for case-specific documents produced in the cases of other Plaintiffs. Nothing herein shall limit Defendant's right to seek discovery from any Plaintiff.

b) **Translations Of Produced Materials**.  The Producing Party has no obligation to

create a translation of the Documents or any portion thereof. For any foreign-language

documents responsive to document requests that a Party reasonably knows as the

result of a reasonable investigation have been translated into the English language

using human translators or through machine translation for its own purposes, except to

the extent such translation is protected by attorney-client or work-product privileges,

the Producing Party shall produce the translation of the original document with the

original. The parties will meet and confer as necessary concerning procedures for

using translations at depositions and at trial. In the event the Parties cannot reach

agreement, the matter may be submitted to the Court for determination.

c) **Third-Party Documents**.  A Party that issues a Non-Party subpoena ("Issuing Party")

shall include a copy of this Order with the subpoena and state that (1) the subpoenaed

Non-Party should produce Documents in response to the subpoena to all Parties; and

(2) the Parties to this Litigation have requested that Third Parties produce Documents

in accordance with the specifications set forth herein. If the subpoenaed Non-Party

produces Documents to the Issuing Party but does not produce those Documents to

other Parties, the Issuing Party shall produce such Documents to those other Parties

within 14 days of receiving the Documents, except where the Documents are to be

used in a deposition, in which case the Issuing Party shall produce such Documents to

all other Parties no later than three (3) days prior to the deposition, or as soon as

reasonably practicable if such production occurs thereafter. Nothing in this Order is

intended or may be interpreted to narrow, expand, or otherwise affect the rights of the

Parties or Third Parties to object to a subpoena. If the Non-Party production is not

Bates-stamped, the Parties will meet and confer to agree upon a format for designating

the documents with a unique Bates Number prefix.

d) **Documents Produced by Parties – Presumption of Authenticity**.  In order to reduce

the number of requests for admission, this Order establishes a rebuttable presumption

that documents produced by the Parties are authentic, if said documents were either

created or authored by the producing Party, or any of its employees, agents, or

contractors, so long as the employees', agents', or contractors' work was performed in connection with a project or assignment sponsored by the producing Party.  No further evidence to establish authenticity need be provided.  Nothing in this paragraph shall be deemed to waive any other evidentiary objection a party may have, including but not limited to hearsay, foundation/personal knowledge, or relevance.

e) **Re-productions.** Notwithstanding any provisions to the contrary, re-production of discrete sets of documents from another litigation, arbitration, government inquiry, or other matter may be re-produced in the same manner and form as originally produced in the other matter, provided however that a party will re-produce documents in a different format for good cause shown. This provision does not waive the right of a party to object to any requests for reproduction of production files from another litigation, arbitration, government inquiry, or other matter.

f) **Modification**.  This ESI Order may be modified by a Stipulated Order of the Parties or by the Court for good cause shown.

g) **Good Faith**.  The Parties will act in good faith as required by law and use these procedures to identify and reduce the potential for disputes.

h) **Continuing Obligations**. The Parties recognize that discovery shall be an iterative and cooperative process. The Parties will continue to meet and confer regarding any issues as reasonably necessary and appropriate. This Order does not address or resolve any objections to the Parties' respective discovery requests.

i) **Reservation of Rights**.  The Parties agree that any topic not addressed herein is neither a waiver nor acknowledgement of agreement by either Party.

**IT IS SO STIPULATED**, through Counsel of Record.

| | |
|---|---|
| 1 | DATED: March 15, 2024 |

Respectfully submitted,

*/s/ Lexi J. Hazam*
LEXI J. HAZAM
**LIEFF CABRASER HEIMANN &**
**BERNSTEIN, LLP**
275 BATTERY STREET, 29TH FLOOR
SAN FRANCISCO, CA 94111-3339
Telephone: 415-956-1000
lhazam@lchb.com

PREVIN WARREN
**MOTLEY RICE LLC**
401 9th Street NW Suite 630
Washington DC 20004
T: 202-386-9610
pwarren@motleyrice.com

Co-Lead Counsel

CHRISTOPHER A. SEEGER
**SEEGER WEISS, LLP**
55 CHALLENGER ROAD, 6TH FLOOR
RIDGEFIELD PARK, NJ 07660
Telephone: 973-639-9100
Facsimile: 973-679-8656
cseeger@seegerweiss.com

Counsel to Co-Lead Counsel

JENNIE LEE ANDERSON
**ANDRUS ANDERSON, LLP**
155 MONTGOMERY STREET, SUITE 900
SAN FRANCISCO, CA 94104
Telephone: 415-986-1400
jennie@andrusanderson.com

Liaison Counsel

MATTHEW BERGMAN
GLENN DRAPER
**SOCIAL MEDIA VICTIMS LAW CENTER**
821 SECOND AVENUE, SUITE 2100
SEATTLE, WA 98104
Telephone: 206-741-4862
matt@socialmediavictims.org
glenn@socialmediavictims.org

1    JAMES J. BILSBORROW
2    **WEITZ & LUXENBERG, PC**
     700 BROADWAY
3    NEW YORK, NY 10003
     Telephone: 212-558-5500
4    Facsimile: 212-344-5461
     jbilsborrow@weitzlux.com
5    PAIGE BOLDT
6    **WATTS GUERRA LLP**
     4 Dominion Drive, Bldg. 3, Suite 100
7    San Antonio, TX 78257
     T: 210-448-0500
8    PBoldt@WattsGuerra.com

9    THOMAS P. CARTMELL
10   **WAGSTAFF & CARTMELL LLP**
     4740 Grand Avenue, Suite 300
11   Kansas City, MO 64112
     T: 816-701 1100
12   tcartmell@wcllp.com

13   JAYNE CONROY
14   **SIMMONS HANLY CONROY, LLC**
     112 MADISON AVE, 7TH FLOOR
15   NEW YORK, NY 10016
     Telephone: 917-882-5522
16   jconroy@simmonsfirm.com
     CARRIE GOLDBERG
17   **C.A. GOLDBERG, PLLC**
18   16 Court St.
     Brooklyn, NY 11241
19   T: (646) 666-8908
     carrie@cagoldberglaw.com
20
     SIN-TING MARY LIU
21   **AYLSTOCK WITKIN KREIS &**
22   **OVERHOLTZ, PLLC**
     17 EAST MAIN STREET, SUITE 200
23   PENSACOLA, FL 32502
     Telephone: 510-698-9566
24   mliu@awkolaw.com
25
     ANDRE MURA
26   **GIBBS LAW GROUP, LLP**
     1111 BROADWAY, SUITE 2100
27   OAKLAND, CA 94607
     Telephone: 510-350-9717
28   amm@classlawgroup.com

1

2

3 EMMIE PAULOS
**LEVIN PAPANTONIO RAFFERTY**
4 316 SOUTH BAYLEN STREET, SUITE 600
PENSACOLA, FL 32502
5 Telephone: 850-435-7107
epaulos@levinlaw.com
6

7 ROLAND TELLIS
DAVID FERNANDES
8 **BARON & BUDD, P.C.**
15910 Ventura Boulevard, Suite 1600
9 Encino, CA 91436
Telephone: (818) 839-2333
10 Facsimile: (818) 986-9698
rtellis@baronbudd.com
11 dfernandes@baronbudd.com

12
ALEXANDRA WALSH
13 **WALSH LAW**
1050 Connecticut Ave, NW, Suite 500
14 Washington D.C. 20036
T: 202-780-3014
15 awalsh@alexwalshlaw.com

16
MICHAEL M. WEINKOWITZ
17 **LEVIN SEDRAN & BERMAN, LLP**
510 WALNUT STREET
18 SUITE 500
PHILADELPHIA, PA 19106
19 Telephone: 215-592-1500
mweinkowitz@lfsbalw.com
20

21 DIANDRA "FU" DEBROSSE ZIMMERMANN
**DICELLO LEVITT**
22 505 20th St North
Suite 1500
23 Birmingham, Alabama 35203
Telephone: 205.855.5700
24 fu@dicellolevitt.com

25

26

27

28

HILLARY NAPPI
**HACH & ROSE LLP**
112 Madison Avenue, 10th Floor
New York, New York 10016
Tel: 212.213.8311
hnappi@hrsclaw.com

JAMES MARSH
**MARSH LAW FIRM PLLC**
31 HUDSON YARDS, 11TH FLOOR
NEW YORK, NY 10001-2170
Telephone: 212-372-3030
jamesmarsh@marshlaw.com

*Attorneys for Individual Plaintiffs*

**ROB BONTA**
Attorney General
State of California

   */s/ Megan O'Neill*
Nick A. Akers (CA SBN 211222)
Senior Assistant Attorney General
Bernard Eskandari (SBN 244395)
Supervising Deputy Attorney General
Megan O'Neill (CA SBN 343535)
Joshua Olszewski-Jubelirer
(CA SBN 336428)
Marissa Roy (CA SBN 318773)
Deputy Attorneys General
California Department of Justice
Office of the Attorney General
455 Golden Gate Ave., Suite 11000
San Francisco, CA 94102-7004
Phone: (415) 510-4400
Fax: (415) 703-5480
Bernard.Eskandari@doj.ca.gov

*Attorneys for Plaintiff the People of the State of
California*

1

2 **RUSSELL COLEMAN**
Attorney General
3 Commonwealth of Kentucky

4 */s/ J. Christian Lewis*
J. Christian Lewis (KY Bar No. 87109),
5 *Pro hac vice*
Philip Heleringer (KY Bar No. 96748),
6 *Pro hac vice*
Zachary Richards (KY Bar No. 99209),
7 *Pro hac vice app. forthcoming*
Daniel I. Keiser (KY Bar No. 100264),
8 *Pro hac vice*
Matthew Cocanougher (KY Bar No. 94292),
9 *Pro hac vice*
Assistant Attorneys General
10 1024 Capital Center Drive, Suite 200
Frankfort, KY 40601
11 CHRISTIAN.LEWIS@KY.GOV
PHILIP.HELERINGER@KY.GOV
12 ZACH.RICHARDS@KY.GOV
DANIEL.KEISER@KY.GOV
13 MATTHEW.COCANOUGHER@KY.GOV
Phone: (502) 696-5300
14 Fax: (502) 564-2698

15 *Attorneys for Plaintiff the Commonwealth of*
*Kentucky*

16

17

18

19

20

21

22

23

24

25

26

27

28

1     COVINGTON & BURLING LLP

2     By:  */s/ Ashley M. Simonsen*
3     Ashley M. Simonsen, SBN 275203
      COVINGTON & BURLING LLP
4     1999 Avenue of the Stars
      Los Angeles, CA 90067
5     Telephone: (424) 332-4800
      Facsimile: + 1 (424) 332-4749
6     Email: asimonsen@cov.com

7
      Phyllis A. Jones, *pro hac vice*
8     Paul W. Schmidt, *pro hac vice*
      COVINGTON & BURLING LLP
9     One City Center
      850 Tenth Street, NW
10    Washington, DC 20001-4956
      Telephone: + 1 (202) 662-6000
11    Facsimile: + 1 (202) 662-6291
      Email: pajones@cov.com
12

13    *Attorney for Defendants Meta Platforms, Inc.*
      *f/k/a Facebook, Inc.; Facebook Holdings,*
14    *LLC; Facebook Operations, LLC; Facebook*
      *Payments, Inc.; Facebook Technologies, LLC;*
15    *Instagram, LLC; Siculus, Inc.; and Mark Elliot*
      *Zuckerberg*
16

17    FAEGRE DRINKER LLP
      *By: /s/ Andrea Roberts Pierson*
18    Andrea Roberts Pierson, pro hac vice
      FAEGRE DRINKER LLP
19    300 N. Meridian Street, Suite 2500
      Indianapolis, IN 46204
20    Telephone: + 1 (317) 237-0300
      Facsimile: + 1 (317) 237-1000
21    Email: andrea.pierson@faegredrinker.com
22

23    Amy R. Fiterman, pro hac vice
      FAEGRE DRINKER LLP
24    2200 Wells Fargo Center
      90 South Seventh Street
25    Minneapolis MN 55402
      Telephone: +1 (612) 766 7768
26    Facsimile: + 1 (612) 766 1600
      Email: amy.fiterman@faegredrinker.com
27

28    Geoffrey M. Drake, pro hac vice

KING & SPALDING LLP
1180 Peachtree Street, NE, Suite 1600
Atlanta, GA  30309
Telephone: +1 (404) 572 4726
Email: gdrake@kslaw.com

David P. Mattern, pro hac vice
KING & SPALDING LLP
1700 Pennsylvania Avenue, NW, Suite 900
Washington, D.C.  20006
Telephone: +1 (202) 626 2946
Email: dmattern@kslaw.com

*Attorneys for Defendants TikTok Inc. and
ByteDance Inc.*

MUNGER, TOLLES & OLSEN LLP
By: */s/ Jonathan H. Blavin*
Jonathan H. Blavin, SBN 230269
MUNGER, TOLLES & OLSON LLP
560 Mission Street, 27th Floor
San Francisco, CA 94105-3089
Telephone: (415) 512-4000
Facsimile: (415) 512-4077
Email: jonathan.blavin@mto.com

Rose L. Ehler (SBN 29652)
Victoria A. Degtyareva (SBN 284199)
Laura M. Lopez, (SBN 313450)
Ariel T. Teshuva (SBN 324238)
MUNGER, TOLLES & OLSON LLP
350 South Grand Avenue, 50th Floor
Los Angeles, CA 90071-3426
Telephone: (213) 683-9100
Facsimile: (213) 687-3702
Email: rose.ehler@mto.com
Email: victoria.degtyareva@mto.com
Email: Ariel.Teshuva@mto.com

Lauren A. Bell (*pro hac vice forthcoming*)
MUNGER, TOLLES & OLSON LLP
601 Massachusetts Ave., NW St.,
Suite 500 E
Washington, D.C. 20001-5369
Telephone: (202) 220-1100
Facsimile: (202) 220-2300
Email: lauren.bell@mto.com

1    *Attorneys for Defendant Snap Inc.*

2    WILSON SONSINI GOODRICH & ROSATI
3    Professional Corporation
     By: */s/ Brian M. Willen*
4    Brian M. Willen (*pro hac vice*)
     WILSON SONSINI GOODRICH & ROSATI
5    1301 Avenue of the Americas, 40th Floor
     New York, New York 10019
6    Telephone: (212) 999-5800
     Facsimile: (212) 999-5899
7    Email: bwillen@wsgr.com

8
     Lauren Gallo White
9    Samantha A. Machock
     WILSON SONSINI GOODRICH & ROSATI
10   One Market Plaza, Spear Tower, Suite 3300
     San Francisco, CA 94105
11   Telephone: (415) 947-2000
     Facsimile: (415) 947-2099
12   Email: lwhite@wsgr.com
     Email: smachock@wsgr.com
13

14
     Christopher Chiou
15   WILSON SONSINI GOODRICH & ROSATI
     953 East Third Street, Suite 100
16   Los Angeles, CA 90013
     Telephone:  (323) 210-2900
17   Facsimile:  (866) 974-7329
     Email: cchiou@wsgr.com
18

19   *Attorneys for Defendants YouTube, LLC, Google*
     *LLC, and Alphabet Inc.*
20
     WILLIAMS & CONNOLLY LLP
21   By: */s/ Joseph G. Petrosinelli*
     Joseph G. Petrosinelli (*pro hac vice*)
22   jpetrosinelli@wc.com
     Ashley W. Hardin (*pro hac vice*)
23   ahardin@wc.com
     680 Maine Avenue, SW
24   Washington, DC 20024
     Telephone.: 202-434-5000
25   Fax: 202-434-5029
26

27   *Attorneys for Defendants YouTube, LLC, Google*
     *LLC, and Alphabet Inc.*
28

MORGAN, LEWIS & BOCKIUS LLP
By: */s/ Stephanie Schuster*
Stephanie Schuster (*pro hac vice*)
stephanie.schuster@morganlewis.com
1111 Pennsylvania Avenue NW
NW Washington, DC 20004-2541
Tel.: 202.373.6595

Yardena R. Zwang-Weissman (SBN 247111)
yardena.zwang-weissman@morganlewis.com
300 South Grand Avenue, 22nd Floor
Los Angeles, CA 90071-3132
Tel.: 213.612.7238

Brian Ercole (*pro hac vice*)
brian.ercole@morganlewis.com
600 Brickell Avenue, Suite 1600
Miami, FL 33131-3075
Tel.: 305.415.3416

*Attorneys for Defendants YouTube, LLC and Google LLC*

**IT IS ORDERED** that the foregoing Agreement is approved.

Dated: _____March 18, 2024_____     _____

MAGISTRATE JUDGE PETER H.  KANG

# APPENDIX 1: PRODUCTION FORMAT

1)  **Production Components.** Except as otherwise provided below, ESI must be produced in accordance with the following specifications:

   a)  an ASCII delimited data file (.DAT) using standard delimiters;

   b)  an image load file (.OPT) that can be loaded into commercially acceptable production software (*e.g.* Concordance);

   c)  single page black-and-white TIFF images, or JPEG images when color is specified herein, or native files with single page placeholder TIFF images depending on the applicable production format for each type of file;

   d)  and document level .TXT files for all documents containing extracted full text or OCR text.

   e)  Family relationships between emails and their attachments, embedded files and their source document, and connected hardcopy documents will be maintained in production. Attachments should be consecutively produced with their parent.

   f)  If a particular document warrants a different production format, the Parties will cooperate in good faith to arrange for a mutually acceptable production format.

2)  **Production Media and Access Controls.** Productions must be encrypted and produced through secure electronic means, such as secure file sharing methods (*e.g.* FTP), or on CD, DVD, flash drive or external hard drive ("Production Media"). Each piece of Production Media must identify a production number corresponding to the production volume (*e.g.* "VOL001"). Each piece of Production Media must also identify: (a) the case caption; (b) the following label: "This media contains material subject to Court Ordered security measures"; (c) the Producing Party's name; (d) the production date; (e) the Bates Number range of the materials contained on the Production Media.

   Nothing in this ESI Order will preclude or impair any and all protections provided the Parties by any Protective Order(s) agreed and entered into by the Parties. Parties will use best efforts to avoid the unnecessary copying or transmittal of produced documents. If questions arise, the Parties will meet and confer to ensure security concerns are addressed prior to the exchange of

any documents.

    **3)**    **Data Load Files/Image Load Files.** Each TIFF in a production must be referenced in the corresponding image load file. The total number of documents referenced in a production's data load file should match the total number of designated document breaks in the image load file(s) in the production. The total number of pages referenced in a production's image load file should match the total number of TIFF files in the production. All images must be assigned a unique Bates number that is sequential within a given document and across the production sets. The Bates Numbers in the image load file must match the corresponding documents' beginning Bates numbers in the data load file. The total number of documents in a production should match the total number of records in the data load file. Load files must not vary in format or structure within a production, or from one production to another except by agreement of the Parties.

    **4)**    **Metadata Fields.** Each of the metadata and coding fields set forth below that can be extracted should be produced for each document, except that if the field contains privileged information, that privileged information may be redacted. However, to the extent that metadata does not exist, is not available for any documents produced, this provision shall not be read to require any Party to extract, capture, collect, manually populate, or produce such metadata, with the exception of the following: (a) BEGBATES, (b) ENDBATES, (c) BEGATTACH, (d) ENDATTACH, (e) PRODVOL, (f) ALL CUSTODIANS, (g) CONFIDENTIALITY, (h) REDACTIONS, (i) REDACTION TYPE, (j) HASHVALUE, (k) NATIVEFILEPATH, and (l) TEXTFILEPATH, which should be populated by the Party or the Party's vendor. The Parties will make reasonable efforts to ensure that metadata fields automatically extracted from the documents correspond directly to the information that exists in the original documents.

| Field Name | Field Description |
|---|---|
| BEGBATES | Beginning Bates number for a particular document as stamped on the first production image for that document |
| ENDBATES | Ending Bates number as stamped on the last |

| Field Name | Field Description |
|---|---|
| | production image for a particular document |
| BEGATTACH | First production Bates number of the first document in a family |
| ENDATTACH | Last production Bates number of the last document in a family |
| ATTACHCOUNT | Number of attachments to an e-mail or embedded parent, as generated by commercially available discovery processing tools. |
| ATTACHNAMES | Names of each individual Attachment, separated by semicolons. |
| PRODVOL | Production volume |
| ALLCUSTODIANS | List of all custodians associated with Document, i.e. "Custodian" + "Other Custodian" values delimited by semicolon. |
| ALLFILEPATHS | All original path(s) to the individual source file(s) when available in the ordinary course of business to and processable by the parties and their ESI vendors of choice. Includes path up to and including internal path of containers. |
| CONFIDENTIALITY | Confidentiality designation assigned to the document consistent with the Stipulated Protective Order governing this Litigation |
| NATIVEFILEPATH | Native File Link (Native Files only) |
| TEXTFILEPATH | Path to extracted text/OCR file for the document |
| HASHVALUE | MD5 hash value of the document |
| DOCUMENT TYPE | Descriptor for the type of document: "E-document" for electronic documents not attached to e-mails; "E-mail" for all e-mails; "E-attachment" for files that were attachments to e-mails; and "Physical" for hard copy physical documents that have been scanned and converted to an electronic image. |
| AUTHOR | Any value populated in the Author field of the |

| Field Name | Field Description |
|---|---|
| | document properties |
| DOCDATE | Date the document was created according to filesystem information (format: MM/DD/YYYY) |
| DATELASTMODIFIED | Date when document was last modified according to filesystem information (format: MM/DD/YYYY) |
| LAST MODIFIED BY | Last person who modified (saved) a document, as generated by commercially available discovery processing tools. |
| TRACK CHANGES | Y if a document with track changes value, otherwise N or empty, if available separately from the HASHIDDENDATA flag |
| COMMENTS | Y if a document with comments, otherwise N or empty, if available separately from the HASHIDDENDATA flag |
| HASHIDDENDATA | Y if a document with hidden content value, otherwise N or empty |
| FILENAME | Filename of an electronic document |
| TITLE | Any value populated in the Title field of the document properties |
| DOCEXT | File extension of document pulled from the document properties |
| FROM | The sender of the email |
| TO | All recipients that were included on the "To" line of the email |
| CC | All recipients that were included on the "CC" line of the email |
| BCC | All recipients that were included on the "BCC" line of the email |
| DATETIMERECEIVED | Date and time email was received (format: MM/DD/YYYY HH:MM) |
| DATETIMESENT | Date and time email was sent (format: MM/DD/YYYY HH:MM) |

| Field Name | Field Description |
|---|---|
| TIMEZONE | The timezone used to process the document |
| EMAILSUBJECT | Subject line of email pulled from the document properties |
| THREADID | If a threading tool is used for emails, the thread id generated by the threading tool. |
| REDACTION TYPE[1] | General category of redaction reason as agreed to by the parties. For example, PII, SCA, CODE, and/or PRIV. If more than one, separate reasons by semicolons. |
| REDACTIONS | Y if a document is redacted, otherwise N or empty |

**5)** **TIFFs.** Unless excepted below, single page, black and white, Group IV TIFFs should be provided, at least 300 dots per inch (dpi) for all documents. Each TIFF image must be named according to a unique corresponding Bates number associated with the document. Each image must be branded according to the Bates number and the agreed upon confidentiality designation. Original document orientation should be maintained (i.e., portrait to portrait and landscape to landscape). Where the TIFF image is unreadable or has materially degraded the quality of the original, the Producing Party shall provide a higher quality TIFF image or the native or original file. In addition, the Parties shall take reasonable efforts to process word processing documents (*e.g.*, MS Word) with track changes and/or comments unhidden on the TIFF image.

**6)** **Color.** Word processing documents containing tracked changes shall be produced in color, as single-page, 300 dpi JPG images with JPG compression and a high quality setting as to not degrade the original image. The Producing Party shall comply with good faith by the Requesting Party to provide replacement color images for documents originally produced in black and white. A Party making such a request shall make the request by individual Bates

---

[1] The Parties will provide specific information on any privilege(s) asserted in their privilege logs, in an overlay, or the redaction boxes. The "Redaction Reason" field is informational only for redaction type and shall not in any way limit a party's right to assert attorney-client privilege, attorney-work product privilege, and/or any other applicable privilege or protection.

number(s) and shall limit requests made pursuant to this paragraph to a reasonable number of documents.

**7) Text Files.** A single multi-page text file must be provided for each document, and the filename should match its respective TIFF filename for the first page of that document. Extracted text shall be generated with commercially acceptable technology set to include all comments, revisions, tracked changes, speaker's notes and text from documents with comments or tracked changes, and hidden and very hidden worksheets, slides, columns and rows. When possible, the text of native files should be extracted directly from the native file. Parties will perform optical character recognition ("OCR") on foreign language documents using the appropriate settings for languages reasonably anticipated to be in the production following a meet and confer with the Requesting Party to identify those languages. Text files will not contain the redacted portions of the documents. A commercially acceptable technology for OCR should be used for all scanned, hard copy documents and for documents with redactions other than Excel files and other spreadsheets which shall be redacted in native format. Text extracted from emails should include the following header information where available: (1) the individuals to whom the communication was directed ("To"), (2) the author of the email communication ("From"), (3) who was copied and blind copied on such email ("CC" and "BCC"), (4) the subject line of the email ("RE or "Subject"), and (5) the date and time of the email. To the extent the text extraction technology the Parties are using can be configured to include the text of any URLs or links, the Parties shall utilize that setting.

**8) Native files.** Spreadsheets (*e.g.* MS Excel), and un-redacted presentations (e.g. Microsoft PowerPoint,) will be produced in native format to the extent that they are produced in this Litigation, audio, video, and multi-media files will be produced in native format. The Parties will meet and confer on the production of other file types, such as proprietary files, etc. Native files will be produced with a link in the NATIVEFILEPATH field, along with extracted text (where extracted text is available) and applicable metadata fields set forth in paragraph 4 above. A Bates numbered TIFF placeholder indicating that the document was provided in native format must accompany every native file. Where redaction makes production of native-format

files other than spreadsheets or presentations infeasible, the Parties will confer to determine a reasonably usable form for the production, but spreadsheets shall presumptively be redacted in native, and presentations presumptively redacted in image form, in these cases without the need for further conferring.

     **9)**     **Production Format for Hard Copy Documents.** Documents that exist in hardcopy will be scanned to *.tiff image format and produced in accordance with the specifications set forth herein. Hard copy documents that are not text-searchable shall be made searchable by OCR prior to production.  In scanning paper documents, distinct documents should not be merged into a single record, and single documents should not be split into multiple records (i.e., paper documents should be logically unitized). In the case of an organized compilation of separate documents (for example, a binder containing several separate documents behind numbered tabs), the document behind each tab should be scanned separately, but the relationship among the documents in the compilation should be reflected in the proper coding of the beginning and ending document and attachment fields. The Parties will make their best efforts to unitize the documents correctly. If relevant documents are maintained in a file, folder, envelope, binder, notebook or similar container used to store documents, all contents therein shall be reviewed for production and privilege. Document pages which have affixed notes, such as Post-it notes, should be imaged with and without the note attached.

     **10)**     **Confidentiality Designation.** All images will be stamped with the appropriate confidentiality designations in accordance with the Stipulated Protective Order entered in this Litigation. Each document produced in native format will have its confidentiality designation identified in the filename of the native file and indicated on its corresponding TIFF placeholder.

     **11)**     **Bates Numbering**. Bates numbering should be a consistent length across the production, contain no special characters, and be numerically sequential within a given document.  If a Bates number or set of Bates numbers is skipped, the skipped number or set of numbers should be noted with a placeholder.  Attachments to documents will be assigned Bates numbers that directly follow the Bates numbers on the documents to which they were attached.

In addition, wherever possible, each image will have its assigned Bates number electronically "burned" onto the image.

**12)** **Databases and Other Structured Data.** To the extent that responsive information is stored in a database, or database management system, or proprietary system or application which has is directed to data storage as one of its primary functions, the Producing Party will identify the database and platform to the Requesting Party. The Producing Party shall produce exports and reports about such responsive information stored in such database, where such exports and reports shall be in a reasonably usable form, and information may be produced in CSV format, tab-delimited text format, Microsoft Excel format, or Microsoft Access format. If there are future disputes over the production of information from a database, the Parties shall meet and confer in good faith in an attempt to reach any further agreements (if needed) on the data to be produced and the format and scope of the production. The Producing Party will provide reasonable amounts of information about the databases to facilitate that discussion.

**13)** **Hyperlinks.** Document(s) and/or folder(s) of documents that are hyperlinked inside a responsive document (including hyperlinked inside emails) within a Producing Party's custody, possession, or control, do not need to be produced in the first instance as part of the same family group as the Document residing at the location to which that hyperlink points. If there are particular hyperlinks identified by the Requesting Party in produced documents, the Requesting Party may submit a list of hyperlinks to a particular Producing Party for potentially relevant documents by identifying the Bates number and URL or link text for each requested link to the Producing Party, and the Producing Party will engage in reasonable efforts to locate the hyperlinked document at that location and either identify it by Bates number or provide any responsive, non-produced, and non-privileged documents. The number of hyperlinks a Requesting Party may identify to a Producing Party shall not be excessive and shall be reasonable, proportional to the needs of the case, and not unduly burdensome.

**14)** **Embedded Objects.** The Parties agree non-substantive embedded objects, including, but not limited to, logos, icons, emoticons, and footers, may be culled from a document set (but not a document) and need not be produced as separate documents by a

Producing Party (i.e., such embedded objects will be produced within the document itself, rather than as separate documents). Embedded files, except for images (including but not limited to, logos, icons, emoticons), are to be produced as family groups. Embedded files should be assigned Bates numbers that directly follow the Bates numbers on the documents within which they are embedded.

15) **Production of Family Groups and Relationships**. If any member of a family group is produced, all members of that group must also be produced or else logged as privileged, and no such member shall be withheld from production as a duplicate.

16) **Dynamic Fields**. Documents with dynamic fields for file names, dates, and times will be imaged to show the field code (e.g., "[FILENAME]") where possible, rather than the values for such fields existing at the time the file is processed.

17) **Time Zone**. The time zone used to process a document, including its metadata, shall be disclosed in the TIMEZONE metadata field consistent with Appendix 1, and shall be standardized for each Defendant across productions.

18) **Redactions**.

a)      A Producing Party may redact (i) information subject to the attorney client privilege or the work product protection (PRIV); (ii) information that cannot be disclosed pursuant to the Stored Communications Act (SCA); (iii) source code subject to separate agreement applicable to production of source code (CODE); (iv) personal identifying information (PII) including phone numbers, personal addresses, personal email addresses, the month and day of birth, driver's license numbers, and other PII agreed to by the Parties (for example, the Parties shall complete their meet and confer on whether or not to redact users' ages and years of birth). In any event, there shall be no redaction of illnesses, injuries, and medical diagnoses. To the extent a document or pleading contains PII, the Parties shall designate such documents at the appropriate Confidentiality level under the Protective Order and shall comply with Fed. R. Civ. P. 5.2 with regard to filings with the Court.

b)      No redactions for relevance may be made within a produced document or ESI item. If, during the course of discovery, the Parties identify other kinds of information that any

Party has a reasonable basis for redacting, the Parties will meet and confer on a case-by-case basis regarding that information before such redactions are made. If the Parties cannot agree, they may seek resolution from the Court.

c)     The Producing Party will indicate, on the face of the redaction, the asserted reason(s) for the redaction (PII, SCA, CODE, and/or PRIV) and the REDACTION TYPE metadata field shall indicate that the document contains redactions and the reason(s) for the redaction.

d)     Notwithstanding the foregoing, this provision shall not be read to prohibit redactions permitted under any applicable U.S. law or Protective Order.

e)     Where a responsive document contains both redacted and non-redacted content, the Parties shall produce the non-redacted portions of the document and the OCR text corresponding to the non-redacted portions.

f)     Native Redactions. Spreadsheet files requiring redaction, including without limitation Microsoft Excel files, shall be redacted and produced natively (unless the Parties agree to production in some other format). In addition, a Producing Party may natively redact other files that cannot be properly imaged for redaction.

g)     All images of redacted files shall be processed to show all comments, revision marks, speaker notes, marks made in track changes, or other user-entered data which are visible in a normal view of the document in its native application, unless such material is redacted and marked as redacted in accordance with this section. Where possible, any occurrences of date/time auto-field items, including in headers and footers, will be removed and replaced with the term AUTODATE to prevent the current date from being printed. Email header information (e.g., date and/or subject line) shall not be redacted unless it is independently privileged. The Parties shall honor reasonable requests for the production of particular redacted documents in other formats where the image is not reasonably usable.

h)     Color.  Redacted versions of documents that would have been produced in color in their un-redacted form shall be produced in color as detailed herein.

1  **19)**  **Exception Files**. The Parties will use reasonable efforts to address processing

2  exceptions.

3  **20)**  **Mobile and Handheld Device Documents and Data**. If responsive and unique

4  data that can reasonably be extracted and produced in the formats described herein is identified

5  on a mobile or handheld device, that data shall be produced in accordance with the generic

6  provisions of this protocol. To the extent that responsive data identified on a mobile or handheld

7  device is not susceptible to normal production protocols, the Parties will meet and confer to

8  address the identification, production, and production format of any responsive documents and

9  data contained on any mobile or handheld device.

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28