No. 25-

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

————————————

*In re* THE PEOPLE OF THE STATE OF CALIFORNIA,
*Petitioner.*

————————————

THE PEOPLE OF THE STATE OF CALIFORNIA,
*Petitioner–Plaintiff,*

v.

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA,
*Respondent,*

THE PEOPLE OF THE STATE OF CALIFORNIA, et al.,
*Real-Parties-in-Interest–Plaintiffs,*

v.

META PLATFORMS, INC., et al.,
*Real-Parties-in-Interest–Defendants.*

————————————

## PETITION FOR A WRIT OF MANDAMUS TO THE UNITED STATES
## DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA

————————————

ROB BONTA
  *Attorney General of California*
NICKLAS A. AKERS
  *Senior Assistant Attorney General*
BERNARD A. ESKANDARI
  *Supervising Deputy Attorney General*
MEGAN M. O'NEILL
JOSHUA E. OLSZEWSKI-JUBELIRER
  *Deputy Attorneys General*
CALIFORNIA DEPARTMENT OF JUSTICE
300 South Spring Street, Suite 1702
Los Angeles, CA 90013-1230
Telephone: (213) 269-6348
bernard.eskandari@doj.ca.gov
  *Attorneys for Petitioner the People of the*
  *State of California*

January 28, 2025

## TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................. 1

BACKGROUND ................................................................................. 6

ARGUMENT ..................................................................................... 15

    I.    This Court Should Exercise Its Mandamus Authority to
        Block Party Discovery of Independent Third-Party State
        Agencies .................................................................................. 15

        A.    The Magistrate Judge Clearly Erred, Disregarding
            State Sovereignty, in Holding that the Attorney
            General Has "Legal Control" Over the Documents
            of Independent Third-Party State Agencies.................. 16

        B.    The Attorney General Is Manifestly Prejudiced by
            the Magistrate Judge's Order, Including by
            Threatened Sanctions ..................................................... 22

        C.    There Are No Other Adequate Means for Relief,
            As Requiring the Attorney General to Appeal a
            Contempt Order Would Be Inappropriate and
            "Unseemly" .................................................................... 26

        D.    The Petition Raises Important Constitutional and
            State-Sovereignty Principles for Which Circuit
            Guidance Is Necessary ................................................... 28

    II.    A Stay Pending Mandamus Review Is Necessary to
        Avoid Continued Prejudice .................................................... 30

CONCLUSION .................................................................................. 30

STATEMENT OF RELATED CASES .................................................... 31

CERTIFICATE OF COMPLIANCE ....................................................... 32

CERTIFICATE OF SERVICE .............................................................. 33

i

# TABLE OF AUTHORITIES

**Page**

**CASES**

*Ariz. State Legis. v. Ariz. Indep. Redistricting Comm'n*
  576 U.S. 787 (2015) .................................................................. 20

*Bauman v. U.S. District Court*
  557 F.2d 650 (9th Cir. 1977) ............................................. 16, 28

*Berger v. N.C. State Conf. of the NAACP*
  597 U.S. 179 (2022) ............................................................ 1, 19

*Butner v. United States*
  440 U.S. 48 (1979) ..................................................................... 19

*Cameron v. EMW Women's Surgical Ctr., P.S.C.*
  595 U.S. 267 (2022) ..................................................................... 1

*Cole v. U.S. District Court*
  366 F.3d 813 (9th Cir. 2004) ................................................... 27

*Colorado v. Warner Chilcott Holdings Co.*
  No. 05-2182, 2007 WL 9813287 (D.D.C. May 8, 2007) ....................... 29

*D'Amico v. Bd. of Med. Exs.*
  520 P.2d 10 (Cal. 1974) ........................................................... 21

*Daedalus Prime LLC v. MediaTek USA Inc.*
  No. 24-80208, 2024 WL 4220000 (N.D. Cal. Sept. 16, 2024) ......... 26, 29

*Dist. of Columbia v. Meta Platforms*
  No. 2023-CAB-006550 (D.C. Sup. Ct. Dec. 18, 2024) ...................... 29

*Eitel v. McCool*
  782 F.2d 1470 (9th Cir. 1986) ................................................. 25

*Gregory v. Ashcroft*
  501 U.S. 452 (1991) ............................................................ 1, 20

**TABLE OF AUTHORITIES**
**(continued)**

**Page**

*Hernandez v. Tanninen*
604 F.3d 1095 (9th Cir. 2010) .................................................................. 16

*In re Citric Acid Litig.*
191 F.3d 1090 (9th Cir. 1999) ........................................................ *passim*

*In re The City of New York*
607 F.3d 923 (2d Cir. 2010) ..................................................................... 27

*In re Kellogg Brown & Root, Inc.*
756 F.3d 754 (D.C. Cir. 2014) ................................................................. 27

*In re Perez*
749 F.3d 849 (9th Cir. 2014) .................................................................... 22

*In re Showa Denko K.K. L-Tryptophan Prods. Liab. Litig.*
953 F.2d 162 (4th Cir. 1992) ................................................................... 28

*In re U.S. Dep't of Educ.*
25 F.4th 692 (9th Cir. 2022) .................................................... 5, 22, 27, 28

*Karnoski v. Trump*
926 F.3d 1180 (9th Cir. 2019) (per curiam) .................................. 5, 16, 29

*Marine Forests Soc'y v. Cal. Coastal Com.*
113 P.3d 1062 (Cal. 2005) ....................................................................... 17

*Mohawk Indus. v. Carpenter*
558 U.S. 100 (2009) ................................................................................. 27

*Nugent v. Secretlab US*
No. 22-08944, 2024 WL 4331812 (N.D. Cal. Sept. 27, 2024) ..... 4, 26, 29

*People ex rel. Lockyer v. Superior Court*
19 Cal. Rptr. 3d 324 (Cal. Ct. App. 2004) ................................. 2, 8, 18, 20

## TABLE OF AUTHORITIES
### (continued)

Page

*People v. Ashford Univ., LLC*
   319 Cal. Rptr. 3d 132 (Cal. Ct. App. 2024) ............................................. 18

*Uniden Am. Corp. v. Ericsson Inc.*
   181 F.R.D. 302 (M.D.N.C. 1998) ............................................................. 22

*United States v. Am. Express Co.*
   No. 10-04496, 2011 WL 13073683
   (E.D.N.Y. July 29, 2011) ................................................................ *passim*

*United States v. Lustig*
   555 F.2d 737 (9th Cir. 1977) .................................................................... 19

*United States v. Novartis Pharms. Corp.*
   No. 11-8196, 2014 WL 6655703 (S.D.N.Y. Nov. 24, 2014) .................. 29

STATUTES

28 U.S.C. § 1292 ..................................................................................... 26, 27

28 U.S.C. § 1651 .......................................................................................... 15

California's False Advertising Law,
   Cal. Bus. & Prof. Code § 17500 .............................................................. 17

California's Unfair Competition Law,
   Cal. Bus. & Prof. Code § 17200 ........................................................ 6, 17

Children's Online Privacy Protection Act of 1998,
   15 U.S.C. § 6501 ..................................................................................... 6, 25

Consumer Safety Act,
   15 U.S.C. § 2073 .......................................................................................... 25

Dodd–Frank Wall Street Reform and Consumer Protection Act,
   12 U.S.C. § 5552 .......................................................................................... 25

## TABLE OF AUTHORITIES
### (continued)

Page

**CONSTITUTIONAL PROVISIONS**

Cal. Const., Article V, § 1...................................................................... 17, 18, 20

Cal. Const., Article V, § 13 .................................................................... 17, 20

**COURT RULES**

Circuit Advisory Committee Note to Rules 21-1 to 21-4......................... 6, 30

Federal Rule of Appellate Procedure 21.................................................. 2, 15

Federal Rule of Civil Procedure Rule 30.......................................... 15, 23, 29

Federal Rule of Civil Procedure Rule 34.................................................*passim*

Federal Rule of Civil Procedure Rule 45.................................................*passim*

**OTHER AUTHORITIES**

16 Fed. Prac. & Proc. Juris. § 3935 (3d ed.)........................................... 23, 28

## INTRODUCTION

The People of the State of California (People), through the California Attorney General, respectfully petition this Court to issue a writ of mandamus directing the district court to grant the People's objection to a discovery order that violates core principles of federalism by disregarding the constitutional structure of California's executive branch. *See, e.g.*, *Berger v. N.C. State Conf. of the NAACP*, 597 U.S. 179, 191 (2022) (cautioning federal courts against "disrespect for a State's chosen means of diffusing its sovereign powers among various branches and officials"); *Cameron v. EMW Women's Surgical Ctr., P.S.C.*, 595 U.S. 267, 277 (2022) ("Respect for state sovereignty must also take into account the authority of a State to structure its executive branch."); *Gregory v. Ashcroft*, 501 U.S. 452, 460 (1991) ("Through the structure of its government, and the character of those who exercise government authority, a State defines itself as a sovereign.").

Specifically, that order—issued by a magistrate judge and left in place by the district court—runs roughshod over California's structure of divided executive power among independently elected officials. It clearly errs as a matter of law in holding that the California Attorney General has "legal control," for purposes of responding to "party" discovery, over the documents of virtually the entire state's independent third-party agencies—agencies that are controlled by and report to the California Governor and other elected officials, not the independently elected

Attorney General. [Dkt. No. 1117 (Add. 49–58).[1]]

This holding squarely contravenes California's constitution and long-settled state law: "Each agency or department of the state is established as a separate entity, under various state laws or constitutional provisions"; accordingly, when the California Attorney General brings a civil law-enforcement action in the name of the People, "the People, by prosecuting [that] action, are not deemed to have possession, custody or control over documents of any state agency." *People ex rel. Lockyer v. Superior Court*, 19 Cal. Rptr. 3d 324, 337–38 (Cal. Ct. App. 2004).

Compliance with this clearly erroneous order presents both legal and practical impossibilities, requiring the California Attorney General to produce documents that he has no legal means to access. *In re Citric Acid Litig.*, 191 F.3d 1090, 1108 (9th Cir. 1999) (adopting "legal control" standard because "[o]rdering a party to produce documents that it does not have the legal right to obtain will oftentimes be futile, precisely because the party has no certain way of getting those documents"); *accord, e.g.*, *United States v. Am. Express Co.*, No. 10-04496, 2011 WL 13073683, at *3 (E.D.N.Y. July 29, 2011) ("Legally, the State Attorneys General have no more way of compelling production than [defendant] does if an agency refuses to

---

[1] Parts of the record and other documents "that may be essential to understand the matters set forth in the petition" are provided in the accompanying addendum. Fed. R. App. P. 21(a)(2)(C). "Add." citations refer to sequential page numbering in that addendum. Unless otherwise noted, docket numbers refer to entries in the underlying MDL case, N.D. Cal. No. 22-03047.

cooperate. I cannot order a party to produce that which it does not have, and that to which it does not have any right or recourse to acquire."). The order therefore has placed the California Attorney General at risk of sanctions and contempt because he cannot access or produce documents controlled by independent state officials.

This is not conjecture: The California Governor has declined to provide the California Attorney General with access to state-agency documents in this case. [*E.g.*, Dkt. No. 1170 (Add. 661–62).] And both the magistrate judge and the district court have repeatedly threatened severe sanctions, including sanctions that would bar the Attorney General from enforcing the law. [*E.g.*, Dkt. No. 1296 (Add. 673) ("[If] you do not get [the agency documents] or you do not produce them, then my option are sanctions, and those sanctions at the extreme are that . . . your allegations are stricken from the complaint.").] The district court has directed Meta[2] to report on appropriate sanctions. [Dkt. No. 1383 (Add. 373).] And the magistrate judge has employed public shaming by ordering the California Governor's Legal Affairs Secretary to post his bar number and contact information on the docket as the decisionmaker "responsible" for noncompliance with federal-court orders. [Dkt. No. 1380 (Add. 278–79).]

The underlying case is a bipartisan, multistate law-enforcement action—that

---

[2] As used in this petition, "Meta" collectively means the defendants in the underlying law-enforcement action: Meta Platforms, Inc.; Instagram, LLC; Meta Payments, Inc.; and Meta Platforms Technologies, LLC.

once included 35 State Attorneys General—seeking to hold Meta accountable for the widespread mental and physical harms inflicted on young users by its social-media platforms (e.g., Instagram and Facebook). Since the magistrate judge issued his state-agency discovery order on September 6, 2024, five State Attorneys General have already withdrawn from the MDL, at least one more is in the process of withdrawing, and others are teetering. [*E.g.*, Dkt Nos. 1515, 1612 (Add. 535–36).] And now the magistrate judge appears poised to extend his legally erroneous rationale to "party" depositions, again disregarding the divided-executive structure of California's state government. [*E.g.*, Dkt No. 1578 (Add. 765–66).] The order is already being cited in the Northern District of California, *e.g.*, *Nugent v. Secretlab US*, No. 22-08944, 2024 WL 4331812, at *14 (N.D. Cal. Sept. 27, 2024), and wielded by defendants in other State Attorney General enforcement actions around the country, *e.g.*, *United States v. Apple Inc.*, No. 24-04066 (D.N.J. Sept. 20, 2024) (Add. 632–33), for the specious proposition that all instrumentalities of state government are subject to party discovery when a State Attorney General prosecutes in federal court. These developments further underscore the immediate need for mandamus relief.

    On September 20, 2024, the State Attorneys General, including the California Attorney General on behalf of the People, timely filed an objection to the magistrate judge's discovery order in the district court and moved to stay that

order. The magistrate judge denied the motion to stay, and the district court has so far declined to rule on the objection, expressly keeping the magistrate judge's order "in full effect." [Dkt. No. 1174 (Add. 249).] The California Attorney General (as well as the other State Attorneys General in the MDL) are left with mandamus as the only adequate means to challenge the clearly erroneous, prejudicial order, with which compliance is impossible, and for which the California Attorney General and other public state officials are presently threatened with serious sanctions.

This Court has recognized that it is appropriate to exercise its mandamus authority to review discovery orders, like here, that raise significant constitutional concerns. *See, e.g.*, *Karnoski v. Trump*, 926 F.3d 1180, 1207 (9th Cir. 2019) (per curiam). This Court has further recognized that mandamus review is particularly appropriate where, as here, sanctions are threatened against a high-ranking public official. *See, e.g.*, *In re U.S. Dep't of Educ.*, 25 F.4th 692, 705 (9th Cir. 2022) ("[I]n cases involving high-level government officials, there are no other means of relief beyond mandamus because to disobey the [discovery order], face contempt charges, and then appeal would not be appropriate for a high-ranking government official.").

The California Attorney General, on behalf of the People, thus requests that the Court issue a writ of mandamus directing the district court to grant the State Attorneys General's objection to the state-agency discovery order. [Dkt. No. 1168

(Add. 305).] Immediate issuance of the writ is necessary to correct this clearly erroneous lower-court decision—one that violates bedrock principles of state sovereignty and presents ongoing threats of sanctions against the California Attorney General and other elected officials.[3]

## BACKGROUND

In October 2023, a bipartisan coalition of 33 State Attorneys General[4] filed the underlying multistate civil law-enforcement action in the Northern District of California under state and federal law, alleging, among other things, that Meta deceived the public and misused children's data while engaging in a decades-long scheme to deploy addictive features on Facebook and Instagram that ensnare young users to their mental, emotional, and physical detriment, including death.[5]

---

[3] To minimize continued prejudice, the California Attorney General also requests that this Court exercise its inherent authority to stay the magistrate judge's discovery order pending this petition's consideration. Cir. Advisory Comm. Note to Rules 21-1 to 21-4 ("The panel may also issue a stay or injunction pending further consideration of the petition."). *See infra* Sec. II.

[4] These 33 State Attorneys General included the following: Arizona, California, Colorado, Connecticut, Delaware, Georgia, Hawaii, Idaho, Illinois, Indiana, Kansas, Kentucky, Louisiana, Maine, Maryland, Michigan, Minnesota, Missouri, Nebraska, New Jersey, New York, North Carolina, North Dakota, Ohio, Oregon, Pennsylvania, Rhode Island, South Carolina, South Dakota, Virginia, Washington, West Virginia, and Wisconsin.

[5] The State Attorneys General bring this enforcement action under various state consumer-protection statutes (e.g., California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200, et seq.,) and the federal Children's Online Privacy Protection Act of 1998, 15 U.S.C. § 6501, et seq., which may be enforced directly by State Attorneys General in federal court, *id.* § 6504(a), (e).

This enforcement action was associated with the underlying Social Media Harms Multi-District Litigation (MDL). *In re: Soc. Media Adolescent Addiction/Pers. Injury Prod. Liab. Litig.* (N.D. Cal. MDL No. 3047). Shortly after, similar enforcement actions filed by the Florida and Montana Attorneys General in their respective home-state federal courts were transferred for coordination with the MDL, bringing the total number of State Attorneys General in the MDL to 35. As discussed below, since issuance of the magistrate judge's discovery order in September 2024, five State Attorneys General have dismissed their MDL law-enforcement actions and another is in the process of dismissing, which will leave 29 State Attorneys General in the MDL, with others teetering or on the verge of dismissing claims. [*E.g.*, Dkt No. 1515, 1612 (Add. 535–36).]

In February 2024, Meta issued sweeping party discovery, in the form of document requests under Rule 34 of the Federal Rules of Civil Procedure, on each of the State Attorneys General. The requests purported to seek information not only from the State Attorneys General themselves, but also from virtually every instrumentality of their respective states: "the executive and legislative branches, agencies, offices, departments, divisions, commissions, committees, agents, employees, boards, . . . [and] administrators, . . . including but not limited to [certain enumerated agencies]." (Add. 559). The State Attorneys General objected to this overbreadth, and after a number of meet-and-confers, discovery conferences

7

with the magistrate judge, and rounds of briefing, Meta clarified that it sought

party discovery from more than 250 specifically identified state agencies. [*See,

e.g.*, Dkt No. 1117 (App. 40).]

 Throughout, the State Attorneys General maintained a number of legal

objections, including that when State Attorneys General exercise their sovereign

law-enforcement authority, they do not have legal control over independent state

agencies' documents, in accordance with binding Ninth Circuit authority, *Citric*

*Acid*, 191 F.3d at 1108, and controlling state law, *e.g.*, *Lockyer*, 19 Cal. Rptr. 3d at

337–38. The State Attorneys General also encouraged Meta to seek the same

materials through Rule 45 subpoenas issued directly to the state agencies—the

proper discovery mechanism when seeking information from non-parties, which

would appropriately avoid entangling the Attorneys General in the process. In July

2024, Meta issued Rule 45 subpoenas to a subset of agencies but expressly

reserved its right to proceed under Rule 34 (i.e., party discovery) in the event that

the magistrate judge disagreed with the State Attorneys General's legal position.

(*E.g.*, Add. 574).

 On September 6, 2024, the magistrate judge issued the state-agency

discovery order that is the subject of this petition ("Order"), in which he

substantially disagreed with the State Attorneys General's legal position regarding

"legal control" under *Citric Acid*. [Dkt. No. 1117 (Add. 1).] In that Order, the

magistrate judge erroneously held that State Attorneys General have "control" over the documents of other, independent state agencies in their respective states because the Attorney General may sometimes act as outside counsel to those agencies, and because—in the judge's view—a lawyer's ethical duties with respect to her client's document production inherently creates a legal right to obtain her client's documents on demand. [*Id.* (Add. 49–58).] The Order erroneously rejected on-point, contrary state law as "comity-based arguments" that "d[o] not apply Rule 34." [*Id.* (Add. 12, 14).] The State Attorneys General filed a motion to stay the Order [Dkt. No. 1167 (Add. 285)], which was denied. [Dkt. No. 1213 (Add. 267).]

On September 20, 2024, the California Attorney General, together with the broader coalition of State Attorneys General, filed an objection to the Order in the district court. [Dkt. No. 1168 (Add. 305).] That objection raised a number of manifest legal errors, including that the Order violated principles of federalism and state sovereignty by disregarding the states' dual- and divided-executive structures. [*See, e.g.*, *id*. (Add. 313–15, 319–20).] On October 25, 2024, the district court heard argument on the objection. As of the date of this petition, the district court has not ruled on the objection but has expressly left the Order "in full effect." [Dkt No. 1174 (Add. 249).]

The State Attorneys General have made significant, good-faith efforts to comply with the un-stayed Order, including by attempting to facilitate the

9

coordination of document production between various state agencies and Meta. However, the legal and practical impossibility of this task has become evident. Critically, as argued extensively to both the magistrate judge and the district court, the State Attorneys General do not legally control independent third-party agencies or their documents. A number of executive offices from around the country have predictably refused to provide their state's Attorney General access to documents. [*E.g.*, Dkt No. 1485 (Add. 409) ("Certain agencies from New York, California, and Kansas continue to take the position that they are not bound by [the Order] at all."); Dkt No. 1441 (Add. 387) ("The [Order] may impose a legal fiction on the [Kansas] Attorney General as to its document control capabilities, but it does not, with respect, impose a legal obligation for production on a non-party such as the Kansas Governor.").]

With respect to this petition in particular, the California Governor—who has made an appearance in the underlying case through outside, private counsel [Dkt. No. 1429 (Add. 378)]—has declined to provide the California Attorney General with access to documents from his office and the agencies under his control. [Dkt. No. 1170 (App. 662); Dkt. No. 1372 (App. 693).] In response to hearing this position, the magistrate judge rhetorically exclaimed, "what happened to the rule of law?" [Dkt. No. 1372 (App. 695).] The magistrate judge ordered the California Attorney General to publicly file on the case docket the name, contact information,

and bar number of the Governor's Legal Affairs Secretary, as the "counsel responsible for and representing the[] . . . state agencies who have taken the position that they are entitled to refuse to comply with the Orders issued in this case and that they are not subject to this Court's jurisdiction in this action for purposes of discovery." [Dkt. No. 1380 (Add. 278 –79).] On December 2, 2024, the Governor's Legal Affairs Secretary complied with this demand, authorizing the public posting of his bar number and contact information on the MDL docket. [Dkt No. 1393 (Add. 375).]

The district court and the magistrate judge have each repeatedly threatened to sanction the California Attorney General and other elected officials for failing to comply with the Order. On October 23, 2024, after hearing counsel from the Colorado Attorney General explaining his lack of ability to force agencies to provide documents, the magistrate judge stated, "I think Meta knows well enough what steps, hopefully, don't need to be taken but could be taken if there's a failure to comply with a court order." [Dkt. No. 1302 (Add. 683).] In response to the California Attorney General's representation that California state agencies had declined to provide the California Attorney General with access to agency documents for party discovery on October 24, 2024, the district court stated that if the court declined to grant the State Attorneys General's objection, "and you do not get [the agency documents] or you do not produce them, then my option are

sanctions, and those sanctions at the extreme are that you are—your allegations are stricken from the complaint." [Dkt. No. 1296 (Add. 673).] As discussed above, on November 21, 2024, the magistrate judge demanded the names and contact information for counsel responsible for taking the position that agencies would not provide documents for party discovery and stated that both the magistrate judge and the district court would "be considering sanctions." [Dkt. No. 1372 (App. 695).] On November 22, 2024, the district court stated that California agency counsel should "expect that they will be ordered into court" and that "if necessary, contempt proceedings will begin." [Dkt. No. 1431 (App. 706).] The court further threatened the California Attorney General that the court would "throw you out of the case. Or I'll issue contempt. There are—I have lots of options available to me, and I will not hesitate to use them." [*Id*. (App. 709); *see also id.* (App. 710) ("[I]f that's the decision that's made [to not provide documents for party discovery], there will be consequences, period.").] The district court then directed Meta "to submit a brief as to what relief it was seeking," explaining that "one cannot refuse compliance because they disagree with a court's decision and consequences will flow." [Dkt. No. 1383 (App. 373).] Again, on December 11, 2024, the magistrate judge stated that if the State Attorneys General failed to timely produce state-agency documents, he would consider discovery sanctions, and reminded Meta that it should approach the district court with requests for sanctions. [Dkt. No. 1457

(App. 724, 743–45, 749).][6]

Meta has seized this invitation. On December 23, 2024, Meta moved the magistrate judge for sanctions against dozens of State Attorneys General and state agencies, seeking orders for (a) agencies to run Meta's chosen search terms (some of which are facially ridiculous, like "covid," resulting in millions of document "hits" per agency); (b) daily monetary sanctions on the "States" (i.e., the State Attorneys General representing their sovereigns in the underlying law-enforcement action) for their agencies' lack of compliance with Meta's proposed order, starting at $200 per day and doubling every week; and (c) Meta's unspecified fees and costs incurred in negotiating the production of state-agency documents through party discovery on the State Attorneys General. [Dkt No. 1485 (Add. 400).] The magistrate judge did not deny this motion on the merits, but only as premature. [Dkt No. 1489 (Add. 284).] Meta will no doubt renew its motion in due course if the Order stands.

The affront to state sovereignty and extreme burdens imposed by the Order

---

[6] On December 18, 2024, Meta issued additional Rule 45 subpoenas to various California agencies controlled by the California Governor but did so "as a courtesy only," while expressly maintaining the position that third-party agencies are "subject to party discovery" and reserving "the right to revert back to seeking Rule 34 discovery from the listed agencies in accordance with [the O]rder should our negotiations fail to yield an agreement." (Add. 577). Far from resolving the issue, shortly thereafter, Meta moved for sanctions against the "State" (i.e., the People) and others for supposed agency noncompliance. [*See, e.g.*, Dkt No. 1485 (App. 400).]

cannot be overstated. Since its issuance on September 6, 2024, five State Attorneys General (of the 35 that were once part of the underlying enforcement action) have already withdrawn from the MDL—the Attorneys General of Florida (Add. 552), Georgia (Add. 368), Michigan (Dkt No. 1612), Montana (Add. 555), and North Dakota (Add. 366). And at least one more—Missouri—is in the process of dismissing. [Dkt No. 1503 (Add. 514).] Some may refile their enforcement actions in state court where they are not subject to the Order, as Montana recently did. *Montana v. Meta Platforms*, No. DV-25-2024-0000797-OC (Mont. Dist. Ct. Dec. 17, 2024). Others may dismiss "with prejudice," as the Georgia Attorney General did here. [Dkt No. 1359 (Add. 368).] If the Order is left in place, more State Attorneys General are poised to withdraw or dismiss critical state-law claims, in return for Meta standing down on infeasible agency discovery directed at those states. [*See, e.g.*, Dkt Nos. 1612, 1613 (App. 779–80).] The present circumstances more than warrant mandamus relief.

Further compounding the legal error and prejudice, the Order's clearly erroneous holding was recently extended by the magistrate judge to other types of discovery on the State Attorneys General. At the most recent discovery-management conference, on January 16, 2025, the magistrate judge stated that he would apply the Order's rationale to "party" depositions under Rule 30(b)(6) of the Federal Rules of Civil Procedure. [*E.g.*, Dkt No. 1578 (Add. 765).] In doing so, he

again disregarded the divided-executive structure of state government, viewing the states' executives as monoliths and burdening the State Attorneys General with the potential impossibility of presenting independent state-agency deponents (or designees educated on the knowledge possessed by independent state agencies) as "party" witnesses, under the continued threat of sanctions. [*E.g.*, Dkt No. 1578 (Add. 762) ("[T]he state is the party . . . . And the state has a responsibility as a party to identify a person to testify on behalf of that party with regard to that issue."); *id*. (Add. 765) ("[T]hat argument has been rejected in the previous motion. I know it's under Rule 34, but that concept was previously rejected.").] The immediate and continuing need for mandamus relief is manifest.

## ARGUMENT

### I. THIS COURT SHOULD EXERCISE ITS MANDAMUS AUTHORITY TO BLOCK PARTY DISCOVERY OF INDEPENDENT THIRD-PARTY STATE AGENCIES

This Court has jurisdiction to issue a writ of mandamus under the All Writs Act, 28 U.S.C. § 1651, and Federal Rule of Appellate Procedure 21. Mandamus relief is appropriate where, as here, the petitioner has "no other adequate means to attain the relief desired," where "the right to the writ is clear and indisputable," and where "'the writ is appropriate under the circumstances.'" *Karnoski*, 926 F.3d at 1203 (quoting *Cheney v. U.S. District Court*, 542 U.S. 367, 381 (2004)). This Court considers five factors outlined in *Bauman v. U.S. District Court*: (1) whether

the district court's order is clearly erroneous as a matter of law; (2) whether the

petitioner has no other means, such as a direct appeal, to obtain the desired relief;

(3) whether the petitioner will be damaged or prejudiced in any way not

correctable on appeal; (4) whether the district court's order is an oft repeated error

or manifests a persistent disregard of the federal rules; and (5) whether the district

court's order raises new and important problems or issues of first impression.

*Karnoski*, 926 F.3d at 1203 (citing *Bauman v. U.S. District Court*, 557 F.2d 650,

654–55 (9th Cir. 1977)). These factors "serve as guidelines," and "[n]ot every

factor need be present at once" or even "point in the same direction" for a writ of

mandamus to issue. *Hernandez v. Tanninen*, 604 F.3d 1095, 1099 (9th Cir. 2010)

(quotations omitted).

    Here, all applicable *Bauman* factors weigh sharply in favor of mandamus.

### A. The Magistrate Judge Clearly Erred, Disregarding State Sovereignty, in Holding that the Attorney General Has "Legal Control" Over the Documents of Independent Third-Party State Agencies

    The magistrate judge's Order (which the district court has left in place)

clearly errs—as a matter of law—in holding that the California Attorney General

has "legal control" over the documents of other executive third-party state

agencies. [Dkt No. 1117 (Add. 49–58).] In *Citric Acid*, this Court expressly

rejected the "practical-ability-to-obtain-documents test" in favor of the "legal

control" test, explaining that "[o]rdering a party to produce documents that it does

16

not have the legal right to obtain will oftentimes be futile, precisely because the party has no certain way of getting those documents." 191 F.3d at 1108. Here, the Order's holding that the California Attorney General has legal control over the documents of other independent executive agencies is a plain misapplication of *Citric Acid*'s legal-control test, inconsistent with the constitutional structure of California's state government, and thus clearly erroneous as a matter of law.

"Unlike the federal Constitution, the California Constitution—like many state constitutions—embodies a structure of divided executive power . . . ." *Marine Forests Soc'y v. Cal. Coastal Com.*, 113 P.3d 1062, 1077 (Cal. 2005). Article V, Section 1 of the California Constitution states that "the supreme executive power of this State is vested in the Governor." The California Attorney General, on the other hand, is the "chief law officer of the State," a separate and independently elected constitutional officer. Cal. Const., art. V, § 13. The California Attorney General is statutorily authorized to bring civil actions to enforce various state laws, as he has done here. *See, e.g.*, Cal. Bus. & Prof. Code §§ 17200, 17204, 17500. The California Attorney General typically brings these actions in the name of "the People of the State of California," Cal. Bus. & Prof. Code §§ 17206(a), 17536(a), but that in no way means that the California Attorney General can commandeer California's other independent constitutional officers or agencies. *See, e.g.*, *People v. Ashford Univ., LLC*, 319 Cal. Rptr. 3d 132, 165–66 (Cal. Ct. App. 2024)

17

(explaining that the styling of "the People" reflects the concept that "the sovereignty of the state resides in the people thereof" and therefore "all writs and processes shall issue in their name") (quoting Cal. Gov. Code § 100(a)). Unless specifically named—and no California state agencies are named as plaintiffs in this law-enforcement action—those independent officers and agencies are not parties to litigation brought on behalf of the People.

California case law interpreting the California constitution and applicable state statutes could not be clearer on this point. In *People ex rel. Lockyer v. Superior Court*, the California Court of Appeal specifically held that when the California Attorney General brings an independent enforcement action like this one, the California Attorney General may not be ordered "to produce documents from nonparty state agencies." 19 Cal. Rptr. 3d at 337. The Court of Appeal explained that Californians and their elected representatives have drawn divisions among various executive-branch officers and agencies to define the structure of their government and that, according to those divisions, the California Attorney General is not "in possession, custody or control of documents created or possessed by nonparty state agencies." *Id.* at 337–38. This conclusion flows both legally and practically from the constitutional independence of the California Attorney General: the California Attorney General has no legal means to directly obtain records from independent executive-branch agencies.

The Order, which allows defendants to obtain records of those nonparty agencies through party discovery on the California Attorney General under Rule 34, makes each of those officers and agencies effectively a party to every law-enforcement action brought by the California Attorney General, whether or not they played any part in the California Attorney General's investigation or prosecution (and here, they did not), or even agreed with the California Attorney General's decision to bring suit. The Order thus puts the federal courts in conflict with California courts' own interpretation of California law, which does not permit the California Attorney General to compel nonparty agencies to produce records in response to party discovery. That federal courts must defer to state law in this context is not anomalous. "[A] federal court must respect that kind of sovereign choice, not assemble presumptions against it." *Berger*, 597 U.S. at 200; *see also Am. Express Co.*, 2011 WL 13073683, at *2 (looking to state law to determine "possession, custody, or control over the documents sought"); *cf., e.g.*, *Butner v. United States*, 440 U.S. 48, 55 (1979) ("Property interests are created and defined by state law."); *United States v. Lustig*, 555 F.2d 737, 747 (9th Cir. 1977) ("[Marital] privileges depend on the existence of a valid marriage, as determined by state law.").

Indeed, here, principles of federalism dictate that federal courts must respect the manner in which states structure themselves, as that structure is a core attribute

of each state's sovereignty: "[I]t is characteristic of our federal system that States retain autonomy to establish their own governmental processes." *Ariz. State Legis. v. Ariz. Indep. Redistricting Comm'n*, 576 U.S. 787, 816 (2015). California has structured its government by establishing a divided executive branch, in which the Attorney General, an independently elected statewide official, has independent authority to enforce state laws while having no power to directly compel the production of documents from other state agencies.

Again, this is clear as a matter of not only the California constitution, Cal. Const., art. V, 1, § 13, but also directly applicable California case law. *Lockyer*, 19 Cal. Rptr. 3d at 338–39. Any contrary outcome in federal court is at odds with the U.S. Supreme Court's recognition of a state's right to define its governmental structure and authority:

> Through the structure of its government, and the character of those who exercise government authority, a State defines itself as a sovereign. It is obviously essential to the independence of the States, and to their peace and tranquility, that their power to prescribe the qualifications of their own officers should be exclusive, and free from external interference, except so far as plainly provided by the Constitution of the United States.

*Gregory*, 501 U.S. at 460 (quoting *Taylor v. Beckham*, 178 U.S. 548, 570–571 (1900)) (quotations and alterations omitted).

Dismissing concerns of federalism and state sovereignty as mere "comity-based arguments" [Dkt. No. 1117 (Add. 12)], the Order instead focuses on the fact

that, under certain circumstances, some State Attorneys General may represent various state agencies as outside counsel. [*E.g.*, *id.* (Add. 50) (citing Cal. Gov. Code §§ 11040, 11041).] Setting aside the fact that state agencies can and do routinely retain private counsel, *see, e.g.*, *D'Amico v. Bd. of Med. Exs.*, 520 P.2d 10, 17 n.5 (Cal. 1974), as the California Governor has done here [Dkt. No. 1429 (Add. 378)], identity of counsel has no bearing on the *Citric Acid* legal-control analysis. For one thing, it is axiomatic that attorneys do not have "legal control" of their clients' documents. *See, e.g.*, *Am. Express Co.*, 2011 WL 13073683, at *3 ("[T]he State Attorneys General have no more power to acquire documents from the non-party agencies than any law firm representing a client. [T]he private firms here would strenuously object if in bringing a law suit on behalf of one client . . . their adversary sought documents belonging to another client as party discovery."). And even assuming, for the sake of argument, that counsel may practically (or even theoretically) access their clients' documents, this would at most be relevant to the "practical-ability-to-obtain-documents test," which this Court expressly rejected in *Citric Acid*. 191 F.3d at 1107; *see also id.* ("theoretical control is insufficient"). Indeed, much of the Order's analysis seems to have improperly relied on this rejected practical-ability test, guided instead by the supposed "simple and pragmatic realities involved in these circumstances," as the magistrate judge

21

put it.[7] [Dkt. No. 1117 (Add. 51).] To the extent the magistrate judge applied the wrong legal standard, this too would be a gross abuse of discretion further necessitating mandamus relief. *See, e.g.*, *In re U.S. Dep't of Educ.*, 25 F.4th at 698.

Accordingly, the Order clearly errs in its application of *Citric Acid*'s legal-control test by disregarding the structure of California's divided executive. This clear legal error—in addition to the reasons below—should provide this Court with the requisite "firm conviction" supporting mandamus relief. *In re Perez*, 749 F.3d 849, 855 (9th Cir. 2014).

### B. The Attorney General Is Manifestly Prejudiced by the Magistrate Judge's Order, Including by Threatened Sanctions

The Order has and will continue to manifestly prejudice the California Attorney General. The Order puts the California Attorney General in the impossible position of responding to discovery requests seeking documents that he has no legal right to access. Meta's issuance of Rule 45 subpoenas has done nothing to obviate this because, as discussed, the Order allows state-agency

---

[7] The Order relies extensively on the "practical ability" test rejected by the Ninth Circuit. For example, the Order cites the same out-of-circuit trial-court case nearly 70 times for the proposition that lawyers control their clients' documents. [*E.g.*, Dkt No. 1117 (App. 28) (citing *Perez v. Perry*, No. 11-00360, 2014 WL 1796661, at *2 (W.D. Tex. May 6, 2014).] The Order also erroneously draws at length on *Uniden Am. Corp. v. Ericsson Inc.*, 181 F.R.D. 302, 306–07 (M.D.N.C. 1998) [Dkt No. 1117 (App. 7)], which found "control" even where "actual legal ability to control is not present." The Order similarly errs throughout, reasoning "that 'practical ability' is a factor for the 'legal control' test," despite the Ninth Circuit's contrary guidance. [*E.g.*, Dkt No. 1117 (App. 37–38).]

discovery to proceed as party discovery under threat of sanctions on the Attorney General. Deputies in the California Attorney General's office—just like lawyers in State Attorneys General's offices from around the country—have spent significant time and resources attempting to facilitate the Order. However, the requirement to access and produce documents from agencies over which the California Attorney General exerts no control has, predictably, imposed extreme burdens. *See, e.g.*, 16 Fed. Prac. & Proc. Juris. § 3935.3 (3d ed.) (mandamus relief appropriate "to protect against the overwhelming burdens that can be imposed by unfettered discovery"). And in other states, it has led to absurdities, like an Attorney General issuing subpoenas to his own state's Governor's Office. [*E.g.*, Dkt No. 1441 (Add. 384-86) (reporting that Kansas Attorney General issued administrative subpoenas to Kansas Governor's Office to obtain state-agency documents sought by Meta).]

That the California Attorney General faces this intractable predicament under the specter of sanctions makes the prejudice even clearer. As discussed, both the district court and the magistrate judge have repeatedly threatened sanctions and have invited Meta to seek them. Further, as discussed, the Order's clearly erroneous holding is also already being extended by the magistrate judge to other issues in this case, including most recently Rule 30(b)(6) "party" depositions, further compounding the Order's error and prejudice.

The California Attorney General also faces another threat for as long as the

Order stands: the "virtual veto" that the Order gives to state agencies and other state executives. The Order allows state agencies to interfere with the California Attorney General's ability to successfully bring enforcement actions, by refusing to provide documents that the California Attorney General is required to produce under threat of sanctions or contempt. As other courts have rightly recognized, if this Order stands, those agencies, including the independently elected officials that preside over them, have a "'virtual veto' over the policy decision to bring an enforcement action," a decision "that rightfully lies with the [Attorney General]." *Am. Express Co.*, 2011 WL 13073683, at *3.

The California Attorney General is prejudiced not only by the immediate effect the Order has on his ability to prosecute the People's claims in the underlying enforcement action, but also by the effect of the Order on other State Attorneys General in this action, and on future consumer-protection enforcement actions in federal court more broadly. The California Attorney General often collaborates and coordinates with other State Attorneys General across the country to more effectively protect California consumers impacted by companies operating nationwide. He thus has an interest in ensuring that his fellow State Attorneys General are not unduly limited in enforcing their respective state laws.

However, the Order has done just that. As discussed, since the issuance of Order, already five Attorneys General have dismissed their claims against Meta in

the underlying MDL; another is in the process of dismissing. If the Order remains in place, more will follow. Not only does this outcome prejudice the California Attorney General, but it is also unjust, undercutting the "the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits," specifically the policy that "[c]ases should be decided upon their merits whenever reasonably possible." *Eitel v. McCool*, 782 F.2d 1470, 1472 (9th Cir. 1986).

Further, application of the Order beyond the underlying enforcement action will place similarly extraordinary burdens on both the California Attorney General and other State Attorneys General pursuing consumer-protection enforcement actions in federal court in the future, impeding their ability to prosecute wrongdoing. Congress has expressly empowered State Attorneys General to directly enforce various federal consumer-protection laws, including, for example, the Children's Online Privacy Protection Act of 1998, 15 U.S.C. § 6504(a), (e); the Dodd–Frank Wall Street Reform and Consumer Protection Act, 12 U.S.C. § 5552; and the Consumer Safety Act, 15 U.S.C. § 2073(b). The Order impedes the ability of State Attorneys General to maintain these and other federal actions in federal court. As of the date of this petition, the Order has already been cited repeatedly (and approvingly) in the Northern District of California. *See Nugent*, 2024 WL 4331812, at *14; *Daedalus Prime LLC v. MediaTek USA Inc.*, No. 24-80208, 2024 WL 4220000, at *7 (N.D. Cal. Sept. 16, 2024). And, as discussed, it has also been

25

cited by defendants in other pending enforcement actions brought by State Attorneys General across the country. Unsurprisingly, defendants in these other cases are wielding the Order as a sledgehammer in an attempt to thwart State Attorney General enforcement actions in federal court by bogging down the Attorney General with sweeping state-agency "party" discovery. To say the least, as in the underlying MDL in which six State Attorneys General have already dismissed or are about to, this will grossly frustrate State Attorneys General's ability to enforce the law in federal court.

### C. There Are No Other Adequate Means for Relief, As Requiring the Attorney General to Appeal a Contempt Order Would Be Inappropriate and "Unseemly"

Mandamus review is further necessary because it is the only adequate means for the California Attorney General to challenge the Order. The district court has not resolved the pending objection to the Order, leaving the Order in place. The State Attorneys General's attempt to stay that Order was denied. And as discussed, the California Attorney General is facing repeated and continued threats of sanctions from the district court, the magistrate judge, and Meta.

There is no district court order of which the California Attorney General may seek interlocutory review under 28 U.S.C. § 1292(b). Even if there were, certification is entirely within the district court's discretion, and courts rightly recognize that certification "under 28 U.S.C. § 1292(b) is not an 'adequate means'

for [parties] to challenge [a discovery] order." *In re The City of New York*, 607 F.3d 923, 933 (2d Cir. 2010) (explaining that discovery orders rarely meet the requirements for interlocutory appeal under § 1292(b) because review of such orders does "not speed the District Court's consideration of the merits of the parties' claims or defenses"). Indeed, the mere possibility of interlocutory review of a discovery order does not defeat the availability of mandamus relief. *See, e.g.*, *Cole v. U.S. District Court*, 366 F.3d 813, 817 n.4 (9th Cir. 2004). Further, appeal after a distant final judgment would be "too late" to remedy the prejudice that the Order has and will impose. *In re Kellogg Brown & Root, Inc.*, 756 F.3d 754, 761 (D.C. Cir. 2014); *see also, e.g.*, *Mohawk Indus. v. Carpenter*, 558 U.S. 100, 110–11 (2009).

Particularly relevant, this Court has specifically held that when a public official is threatened with discovery sanctions, like the California Attorney General and other state officers are here, that official "has no other adequate way besides the writ of mandamus to obtain the relief she seeks." *In re U.S. Dep't of Educ.*, 25 F.4th at 705 n.4. In so holding, this Court explained that "courts have routinely found that, in cases involving high-level government officials, there are no other means of relief beyond mandamus because to disobey the [discovery order], face contempt charges, and then appeal would not be appropriate for a high-ranking government official." *Id*. at 705. The leading treatise concurs: "Writ review,

27

indeed, may be specifically justified on the ground that the alternative of

disobedience and contempt is not a suitable or adequate remedy, or even that it is

unseemly to force contempt sanctions on a high public official." 16 Fed. Prac. &

Proc. Juris. § 3935.3 (3d ed.) (collecting cases). Under these circumstances,

mandamus is the only adequate means for the California Attorney General to

challenge the Order.

### D.    The Petition Raises Important Constitutional and State-Sovereignty Principles for Which Circuit Guidance Is Necessary

Both the fourth and fifth *Bauman* factors support granting the Attorney

General's petition. First, the petition raises a new and important issue of first

impression in this Court—the application of Rule 34 to State Attorney General

enforcement actions brought in federal court. *Cf. In re Showa Denko K.K. L-*

*Tryptophan Prods. Liab. Litig.*, 953 F.2d 162, 165 (4th Cir. 1992) (granting

interlocutory review where administrative order raised "serious question" about

"the power of a district court overseeing multi-district litigation to enter an order

reaching nonparties"). Indeed, this petition raises "an important issue implicating

constitutional concerns," which this Court has held supports mandamus review

even if the "error is not new." *In re U.S. Dep't of Educ.*, 25 F.4th at 706.

Second, the errors just discussed are fast becoming "oft repeated," including

within the Northern District of California. *Karnoski*, 926 F.3d at 1203. As noted

28

above, the Order is already being cited by courts and defendants in other actions. *See, e.g., Nugent*, 2024 WL 4331812, at *14; *Daedalus*, 2024 WL 4220000, at *7. Indeed, the magistrate judge himself is poised to extend and compound this clear legal error by applying it to Rule 30(b)(6) "party" depositions.

Further supporting review, the Order appears to be an outlier among various federal courts to have addressed the issue. *See, e.g.*, *Dist. of Columbia v. Meta Platforms*, No. 2023-CAB-006550 (D.C. Sup. Ct. Dec. 18, 2024) (Add. 65) ("The court therefore does not find that OAG has 'control' of the agencies' records within the meaning of Rule 34(a)(1) . . . ."); *United States v. Novartis Pharms. Corp.*, No. 11-8196, 2014 WL 6655703, at *9 (S.D.N.Y. Nov. 24, 2014) ("[T]he mere fact that a state or a state agency sues does not mean that the records of all state agencies may be discovered using Rule 34's tools"); *Am. Express*, 2011 WL 13073683, at *2 ("[S]tate agencies—even those that are part of the executive branch—are neither subject to common executive control nor interrelated with the State Attorneys General, and so should not be aggregated together for discovery purposes."); *Colorado v. Warner Chilcott Holdings Co.*, No. 05-2182, 2007 WL 9813287, at *4 (D.D.C. May 8, 2007) ("[W]here two government agencies are neither interrelated nor subject to common executive control, they will not be aggregated together for purposes of discovery.").

## II.    A STAY PENDING MANDAMUS REVIEW IS NECESSARY TO AVOID CONTINUED PREJUDICE

Given the ongoing injustice and extreme burden caused by the Order, in addition to the fact that Order's clear legal error is already being extended in this case to apply to other discovery contexts, the California Attorney General requests that this Court exercise its inherent authority to stay the Order to prevent continued prejudice. *See* Cir. Advisory Comm. Note to Rules 21-1 to 21-4 ("The panel may also issue a stay or injunction pending further consideration of the petition."). Significantly, as discussed, the Order's legally flawed rationale is being extended to other forms of "party" discovery on the State Attorneys General, furthering the Order's prejudice and compounding its clear legal error.

## CONCLUSION

For these reasons, the Court should grant the petition for a writ of mandamus and direct the district court to grant the objection to the Order. Further, pending this Court's review, the Order should be stayed.

DATED: January 28, 2025                    Respectfully submitted,

                                           */s/ Bernard A. Eskandari*
                                           Bernard A. Eskandari

                                           *Attorney for Petitioner the People of the State of California*

## STATEMENT OF RELATED CASES

The following related cases are pending in this Court, which "arise out of the same or consolidated cases in the district court," 9th Cir. R. 28-2.6:

*People of the State of California v. Meta Platforms, Inc.*, 24-07032

*Personal Injury Plaintiffs v. Meta Platforms, Inc.*, 24-07037

*State of Colorado v. Meta Platforms, Inc.*, 24-07265

*Multistate Attorney General Plaintiffs v. Meta Platforms, Inc.*, 24-07300

*Personal Injury Plaintiffs v. Meta Platforms, Inc.*, 24-07304

*Personal Injury Plaintiffs v. TikTok LLC*, 24-07312

## CERTIFICATE OF COMPLIANCE

I hereby certify that this petition complies with the limits of Federal Rule of Appellate Procedure 21(d)(1) and Ninth Circuit Rules 21-2(c) and 32-3(2) because it totals 7,289 words, excluding the parts exempted by Federal Rule of Appellate Procedure 32(f). I further certify that this petition complies with the typeface and type-style requirements of Federal Rules of Appellate Procedure 27(d)(1)(E), 32(a)(5), and 32(a)(6) because it has been prepared using "Microsoft® Word for Microsoft 365 MSO (Version 2408 Build 16.0.17928.20336) 64-bit" in a proportionally spaced typeface, 14-point Times New Roman font.

/s/ Bernard A. Eskandari
Bernard A. Eskandari

## CERTIFICATE OF SERVICE

I hereby certify that on January 28, 2025, I electronically filed the foregoing with the Clerk of the Court by using the appellate CM/ECF system. The trial-court judge (and magistrate judge) will be provided with a copy of this petition for writ of mandamus in accordance with Federal Rule of Appellate Procedure 21(a).

/s/ Bernard A. Eskandari
Bernard A. Eskandari