UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: SOCIAL MEDIA ADOLESCENT ADDICTION/PERSONAL INJURY PRODUCTS LIABILITY LITIGATION | MDL No. 3047<br><br>Case Nos.:  4:22-md-03047-YGR-PHK<br>             4:23-cv-05448-YGR |
| This Filing Relates to:<br><br>*People of the State of California, et al. v. Meta Platforms, Inc., et al.* | **JOINT LETTER BRIEF ON THE TIME PERIOD TO BE COVERED IN STATE AGS' RULE 30(B)(6) DEPOSITION OF THE META DEFENDANTS**<br><br>Judge: Hon. Yvonne Gonzalez Rogers<br>Magistrate Judge: Hon. Peter H. Kang |

Dear Judge Kang:

The State AGs and Defendants Meta Platforms, Inc.; Instagram, LLC; Meta Payments, Inc.; and Meta Platforms Technologies, LLC (collectively, "Meta") respectfully submit this letter brief regarding disputes over the time period to be covered in the testimony of Meta's designees for the State AGs' Amended Rule 30(b)(6) Deposition Notice of the Meta Defendants (the "Notice"). The Notice to Defendant Meta Platforms, Inc. is attached as Exhibit A.[1]

Yesterday, the Parties filed a stipulated request to extend deadlines for certain expert reports in the State AGs' case, including experts who may rely on Meta's testimony pursuant to the Notice. ECF 1953. Additionally, the previous date for this deposition has been rescheduled. Meta has proposed June 5, 2025 for the first deposition of a Rule 30(b)(6) designee. To expedite the resolution of this dispute, the Parties have agreed not to request oral argument on this letter brief. If the Court desires to hear argument, the Parties are prepared to appear at the Court's convenience.

Pursuant to the Discovery Standing Order and Civil Local Rule 37-1, the Parties attest that they repeatedly met and conferred by video conference, email, and correspondence before filing this brief. Because all lead counsel were not located in the geographic region of the Northern District of California or otherwise located within 100 miles of each other, they met via videoconference, with the final conferral occurring on May 7, 2025.  Lead trial counsel have concluded that no agreement or negotiated resolution can be reached.

---

[1] In the joint letter brief, the parties cite certain materials produced in discovery. As required by the Court's Discovery Standing Order's general prohibition on attachments to letter briefs, Order § H.3, the cited materials are not attached. The parties are prepared to file the cited materials or otherwise provide them to the Court, at the Court's request.

1

Dated: May 13, 2025                    Respectfully submitted,

                            **ROB BONTA**
                            Attorney General
                            State of California

                            */s/ Joshua Olszewski-Jubelirer*
                            Nicklas A. Akers (CA SBN 211222)
                            Senior Assistant Attorney General
                            Bernard Eskandari (SBN 244395)
                            Emily Kalanithi (SBN 256972)
                            Supervising Deputy Attorneys General
                            Nayha Arora (CA SBN 350467)
                            David Beglin (CA SBN 356401)
                            Megan O'Neill (CA SBN 343535)
                            Joshua Olszewski-Jubelirer (CA SBN 336428)
                            Marissa Roy (CA SBN 318773)
                            Brendan Ruddy (CA SBN 297896)
                            Deputy Attorneys General
                            California Department of Justice
                            Office of the Attorney General
                            455 Golden Gate Ave., Suite 11000
                            San Francisco, CA 94102-7004
                            Phone: (415) 510-4400
                            Fax: (415) 703-5480
                            Joshua.OlszewskiJubelirer@doj.ca.gov

                            *Attorneys for Plaintiff the People of the State of California*

                            **PHILIP J. WEISER**
                            Attorney General
                            State of Colorado

                            */s/ Krista Batchelder*
                            Krista Batchelder, CO Reg. No. 45066, *pro hac vice*
                            Deputy Solicitor General
                            Shannon Stevenson, CO Reg. No. 35542, *pro hac vice*
                            Solicitor General
                            Elizabeth Orem, CO Reg. No. 58309, *pro hac vice*
                            Assistant Attorney General
                            Colorado Department of Law
                            Ralph L. Carr Judicial Center
                            Consumer Protection Section
                            1300 Broadway, 7th Floor

Denver, CO 80203
Phone: (720) 508-6651
krista.batchelder@coag.gov
Shannon.stevenson@coag.gov
Elizabeth.orem@coag.gov

*Attorneys for Plaintiff State of Colorado, ex rel.*
*Philip J. Weiser, Attorney General*

**RUSSELL COLEMAN**
Attorney General
Commonwealth of Kentucky

*/s/ Philip Heleringer*
J. Christian Lewis (KY Bar No. 87109),
*Pro hac vice*
Philip Heleringer (KY Bar No. 96748),
*Pro hac vice*
Zachary Richards (KY Bar No. 99209),
*Pro hac vice*
Daniel I. Keiser (KY Bar No. 100264),
*Pro hac vice*
Matthew Cocanougher (KY Bar No. 94292),
*Pro hac vice*
Assistant Attorneys General
1024 Capital Center Drive, Suite 200
Frankfort, KY 40601
CHRISTIAN.LEWIS@KY.GOV
PHILIP.HELERINGER@KY.GOV
ZACH.RICHARDS@KY.GOV
DANIEL.KEISER@KY.GOV
MATTHEW.COCANOUGHER@KY.GOV
Phone: (502) 696-5300
Fax: (502) 564-2698

*Attorneys for Plaintiff the Commonwealth of Kentucky*

**MATTHEW J. PLATKIN**
Attorney General
State of New Jersey

*/s/ Thomas Huynh*
Kashif T. Chand (NJ Bar No. 016752008),
*Pro hac vice*
Section Chief, Deputy Attorney General
Thomas Huynh (NJ Bar No. 200942017),

3

*Pro hac vice*
Assistant Section Chief, Deputy Attorney General
Verna J. Pradaxay (NJ Bar No. 335822021),
*Pro hac vice*
Mandy K. Wang (NJ Bar No. 373452021),
*Pro hac vice*
Deputy Attorneys General
New Jersey Office of the Attorney General,
Division of Law
124 Halsey Street, 5th Floor
Newark, NJ 07101
Tel: (973) 648-2052
Kashif.Chand@law.njoag.gov
Thomas.Huynh@law.njoag.gov
Verna.Pradaxay@law.njoag.gov
Mandy.Wang@law.njoag.gov

*Attorneys for Plaintiffs New Jersey Attorney General and the New Jersey Division of Consumer Affairs Matthew J. Platkin, Attorney General for the State of New Jersey, and Cari Fais, Director of the New Jersey Division of Consumer Affairs*

**COVINGTON & BURLING LLP**

/s/ Ashley M. Simonsen
Ashley M. Simonsen (State Bar. No. 275203)
COVINGTON & BURLING LLP
1999 Avenue of the Stars
Los Angeles, CA 90067
Telephone: + 1 (424) 332-4800
Facsimile: +1 (650) 632-4800
Email: asimonsen@cov.com

*Attorney for Defendants Meta Platforms, Inc.; Instagram, LLC; Meta Payments, Inc.; and Meta Platforms Technologies, LLC*

**State AGs' Position:** Meta improperly seeks to block its corporate designees from testifying about information in Meta's possession on 10 topics, simply because the information post-dates April 1, 2024. The 10 topics are clearly and concisely set forth in the State AGs' Amended 30(b)(6) notice of Meta (Exhibit A, originally served January 10, 2025), which requests testimony through the present. These topics, Nos. 1-6 and 15-18, which address Meta's data collection practices, efforts to remove Child users, and development of safety initiatives, among other conduct, necessarily go to the core of Meta's systematic, ongoing violations of the Children's Online Privacy Protection Act ("COPPA") and state consumer protection laws—violations that the State AGs' complaint plausibly alleges are continuing through today. After months of negotiations, Meta has refused to allow its corporate designees to testify regarding information after April 1, 2024, claiming that the Court's order on the "default" "Relevant Time Period" for "Meta's search, collection, and review of responsive *documents*," ECF 969 at 4 (emphasis added), somehow bars any *testimony* on events after that date (except for three discrete subjects that largely benefit Meta). Court intervention is needed to end Meta's intransigence and prevent prejudice to the State AGs in preparing their case. The Court should deny Meta's request to constrain the time period for its designees' testimony.

Injunctive relief is one of the primary remedies sought by the State AGs in this civil law-enforcement action. The State AGs' complaint plausibly alleges that Meta's violations of numerous state consumer-protection laws and COPPA are ongoing. Accordingly, testimony post-dating April 1, 2024, is directly relevant in establishing the appropriateness and scope of injunctive relief in this action. *See, e.g.*, *Medina v. Two Jinn, Inc.*, No. 22-02540, 2023 WL 11956374, at *6 (N.D. Cal. Feb. 22, 2023). And recent evidence of Meta's misconduct is probative of its "likelihood of recurrence." *F.T.C. v. Evans Prods. Co.*, 775 F.2d 1084, 1088 (9th Cir. 1985). Topics 1-6, for example, largely focus on Meta's conduct and policies related to compliance with COPPA, including Meta's collection and use of users' personal data (Topic 2(a)), Meta's written policies for COPPA compliance (if any) (Topic 3), and Meta's capabilities and practices for identifying child users under the age of 13 (Topics 4 and 6). However, Meta refuses to offer any testimony on these topics after April 1, 2024.

Similarly, Topics 15-18 go to the heart of Meta's current safety measures relevant to injunctive relief, and past misrepresentations as to the safety of Meta's products. Picking post-April 2024 actions that it finds helpful, Meta itself has asked fact witnesses to testify about select safety initiatives (e.g., the "Teen Accounts" feature). But Meta seeks to stop the State AGs from enquiring about the what and why of other safety measures that Meta has undertaken or, more importantly, decided to not undertake after April 2024 (e.g., algorithm changes to reduce excessive use) (Topic 18). Meta should not be permitted to cherry pick the initiatives post-dating April 2024 on which it will testify while blocking inquiry into areas contrary to Meta's preferred narrative.[2]

Meta has proposed no compromises in meet and confer. Meta likewise refuses to forgo later attacking the State AGs' case if the State AGs do not present evidence of Meta's ongoing misconduct after April 2024. And Meta refuses to commit to not present its own evidence on the

---

[2] The State AGs have agreed that Topics 8-14 on Meta's financial and user metrics and information need not extend beyond April 1, 2024, except for any recent data produced (if any) or certain adjustments to its metrics and financial reporting methodologies (which appear to have occurred around Q1 2024). Because these topics relate to monetary relief, testimony on events after April 1, 2024 is less critical than for the other topics which relate to injunctive remedies and liability.

noticed topics, including testimony of its employees, post-dating April 2024, despite withholding 30(b)(6) deposition testimony on such recent conduct. *Cf. Guifu Li v. A Perfect Day Franchise, Inc.*, No. 10-CV-01189-LHK, 2011 WL 3895118, at *4 (N.D. Cal. Aug. 29, 2011) (prohibiting defendant from relying on declarations regarding 30(b)(6) topic "until it produces a corporate deponent on this topic"). Meta's one-sided approach to discovery should not be endorsed.

Troublingly, Meta has even refused to provide testimony about recent conduct described in documents it produced, or even information Meta has provided publicly, unless the conduct falls into one of the three "topic areas" for which Meta previously chose to provide more recent documents in response to RFPs. For example, despite touting in July 2021 that it was developing models to "find and remove accounts belonging to people under the age of 13," https://about.fb.com/news/2021/07/age-verification/, Meta's documents indicate it never actually used any of its models to do so, until October 2024, when it began using a "heuristic" model "to proactively find u13 accounts." META3047MDL-186-00000825. Because this document was produced in response to an RFP seeking documents on Meta's launch of Teen Accounts, Meta has refused to testify regarding this age model after April 2024, its efficacy compared to Meta's other u13 models it chose not to deploy, and whether Meta deletes children's accounts the model detects (see Topics 4(b), 6).[3] Meta must provide this testimony, which would be highly probative of the feasibility of an injunction requiring Meta to deploy such a model to keep children off its platform.

**Meta's Position:** Nearly a year ago, as the Parties litigated over the parameters of various forms of discovery—including depositions—the Court issued an order stating that the "default end date" applicable to "Plaintiffs' discovery requests directed at Meta" would be April 1, 2024. ECF No. 969 (June 24, 2024) ("DMO No. 7"). Nowhere did the Court state that the default end date applied only to certain forms of discovery. Nor did the Court exempt 30(b)(6) deposition topics from the "default end date." Nonetheless, Plaintiffs now argue that the April 1, 2024 end date does not apply to 30(b)(6) deposition topics, and so they are free to seek 30(b)(6) testimony on events extending up to the date of the deposition itself. Plaintiffs are wrong. Their position not only flouts the clear terms of the Court's order, but also creates a host of burdens and practical issues.

To start, DMO No. 7 was unambiguous: it set the "default end date" for "*discovery requests* directed at Meta." 30(b)(6) depositions are, of course, one form of a discovery request, for testimony on specified topics. *See, e.g.*, F.R.C.P. Advisory Cmte. Notes for 1970 Amend. (30(b)(6) deposition is "facility for discovery" whereby party can "designate the matters on which he requests examination"); *S.H. Silver Co. Inc. v. Sentinel Ins. Co., Ltd.*, 2025 WL 517741, at *5 (N.D. Cal. Feb. 18, 2025) (Kang, J.) (taking issue with certain "discovery requests" that were "unlimited as to time period," which included a "30(b)(6) deposition notice"). And, for almost a year, the Parties have operated under the common view that the "default end date" in DMO No. 7 applied to all defensive discovery in this matter, unless it was specifically extended by either agreement or Court order for limited and defined post-end date developments. For example, Meta applied the default end date to the 30(b)(6) deposition noticed by the SD Plaintiffs, and they did not ask the Court to expand the Relevant Time Period ("RTP") for that deposition. By contrast, in response to document requests seeking information on Instagram Teen Accounts, Meta agreed, for

---

[3] Similarly, while Meta has agreed to testify as to the "interpretation and meaning" of recent datasets (Topic 7), it refuses to testify to anything "outside the datasets themselves" such as the techniques used to create the data or the purposes for which they were used (e.g., Topics 4(i), 6).

those topics only, to an end-date beyond April 1, 2024. Consistent with this history, Meta's position has been that, for the 30(b)(6) deposition, the RTP is the period ordered in DMO No. 7 (*i.e.*, January 1, 2012 – April 1, 2024 generally, with earlier time periods for specific features), with later time periods solely for questions relating to Teen Accounts (April 2, 2024 – October 30, 2024), Reset Recommendations (April 2, 2024 – January 17, 2025), or the interpretation of certain post-April 1, 2024 data produced to Plaintiffs and covered by a 30(b)(6) topic.

Plaintiffs, in response, try to cabin the scope of DMO No. 7 by noting that it was issued in response to a dispute regarding document discovery. But that does not mean the Parties sought (or the Court intended to impose) an end date that applied only to document discovery. The Court's written order unequivocally states that the default end date applies broadly to "discovery requests," not "document discovery." Plaintiffs also quote, out of context, a segment of the June DMC where the Court stated that it was "not putting any limits on time frame . . . that [Plaintiffs] can ask questions on." 6/20/24 DMC Tr. at 80. But the Court's comment was clearly addressing the scope of a non-30(b)(6) fact deposition of a non-party. *See id.* (noting that the RTP applies to "party discovery" and would not affect fact depositions of non-parties). Here, a 30(b)(6) deposition of Meta is "party discovery" on specified topics, and thus it is subject to the default end date.

There are also practical reasons for applying the default end date to the 30(b)(6) deposition. Under Rule 30(b)(6), a corporation must take reasonable steps to prepare a witness for the noticed topics, which could include educating the witness using relevant documents already produced during discovery. Based on extensive negotiations with Plaintiffs and the agreed-upon scope of discovery, Meta has produced over 2.5 million documents. However, with very limited exceptions, those documents precede April 1, 2024. Requiring Meta to prepare a witness without relevant, produced documents would be extremely prejudicial; likewise, potentially requiring Meta to prepare a witness with new documents would be unfair and burdensome, and would permit Plaintiffs to evade the discovery period set by the Court. That is because, to the extent Meta must prepare a witness on post-April 2024 events utilizing post-April 2024 documents, Meta would be required to undertake the enormous burden of additional identification, collection, review, and potentially production for the time period from April 1, 2024 to the present for the topics encompassed by the 30(b)(6) Notice. Plaintiffs cannot use a 30(b)(6) deposition to re-open the whole of document discovery through to the present. And that is certainly not what this Court contemplated in entering DMO No. 7.

Fact discovery closed on April 4, 2025. Meta has engaged in significant time and cost to complete its document productions to Plaintiffs based on the ordered and agreed-upon discovery parameters. It would be fundamentally unfair to restart that process. Meta therefore requests that the Court enter a protective order applying the RTP set forth in DMO No. 7 to the 30(b)(6) deposition of Meta. *See Apple Inc. v. Samsung Elecs. Co.*, 2012 WL 1511901, at *2 (N.D. Cal. Jan. 27, 2012) (a court may issue a protective order "limit[ing] the extent of otherwise relevant" 30(b)(6) testimony "where the benefit to and need of the propounding party is outdone by the burden . . . imposed on the other side"). Under that RTP, the default end date would apply to all 30(b)(6) topics, except to the extent that any of those topics seeks testimony concerning Teen Accounts, Reset Recommendations, or the interpretation of post-April 1, 2024 data produced by Meta.

**State AGs' Response:** Meta has no basis to constrain its witnesses' testimony. Indeed, Meta concedes that its post-April 2024 conduct is discoverable, but apparently only if Meta benefits. Meta misrepresents the Court's order and ignores that Meta itself sought and obtained discovery from the State AGs post-April 2024. Meta's speculative assertions of burden are insufficient. The Court should reject Meta's attempts to block testimony regarding its recent conduct.

As discussed, Meta's defense appears to rely on its Teen Accounts feature, released in fall 2024, which Meta suggests protects teens from a variety of harms. Meta has repeatedly elicited testimony from its employees about that feature. *See, e.g.*, M.B. Dep. 522:8–18; L.C. Dep. 489:15–491:12. Meta has also agreed to provide testimony on tools and features it considered, but did not adopt, to protect young users from harm. If Meta wishes to defend itself based on recent developments, fairness dictates that the State AGs be permitted to develop evidence that rebuts that defense.

Meta relies on DMO 7 but misrepresents the record. DMO 7 resolved a letter brief that, by its title, was limited to the "relevant time period applicable to Meta document search and production," ECF 888 at 1. As the Court reminded the Parties: "**This is just document discovery.** You're certainly free to depose whoever you want to depose and get testimony. I'm not putting any limits on time frame -- for the subject matter time frame that you can ask questions on." ECF 967 at 80:16-19 (emphasis added). The Court's reference to "party discovery," on which Meta relies, simply noted that Plaintiffs may serve third-party subpoenas (presumably for documents) beyond the period for *Meta*'s document collections. *Id.* at 80:10-11. Meta misleadingly omits the Court's key guidance.

Nor have the Parties operated under a "common view" that DMO 7 applied to all discovery beyond RFPs. Meta neglects to mention that it itself sought discovery of the State AG Plaintiffs through the present. Nearly five months after DMO 7, Meta served interrogatories seeking "information relating to the time period from January 1, 2012 through the present, in light of *inter alia* the alleged continuing nature of Plaintiff's COPPA claims," which the State AGs provided. Meta must provide testimony for the same period it demanded discovery of the State AGs.

Meta's conclusory burden argument fails to meet its "heavy burden" to preclude the State AGs from obtaining relevant testimony on issues core to their case. *See S.H. Silver Co.*, 2025 WL 517741, at *2 (citations omitted). Contrary to Meta's assertions, the State AGs are not asking Meta to restart its custodial document collections for an additional year. Meta makes no attempt to explain why such a comprehensive collection is necessary to prepare its designees.[4] And Meta ignores its ability to simply talk to its own employees. Information about Meta's recent conduct and decision-making is likely to be the most "reasonably available" from current employees. Indeed, for some topics, there is no conceivable burden of providing the testimony. For example, on Topic 3 (written COPPA compliance policies), Meta has confirmed that aside from its ban on users under 13 in its terms of service and terms of use, such written policies "do not exist." No comprehensive collection is needed for Meta to testify that it also had no written COPPA policies after April 2024. The Court should decline Meta's unjustified request to limit its testimony.

---

[4] Meta improperly points to the close of fact discovery. The State AGs first served their notice on January 10, 2025, proposing a date in late February. Meta objected, but offered no dates, in violation of applicable orders, *see* ECF 742 at 7, until after fact discovery closed, when it proposed May 9. Meta's defiance of court orders cannot justify its refusal to provide relevant testimony.

**Meta's Response:** Plaintiffs' arguments for expanding the RTP are unpersuasive. Plaintiffs primarily argue that they need 30(b)(6) testimony concerning post-April 1, 2024 policies and features in order to establish the necessity and feasibility of any permanent injunction they might request at trial. But Plaintiffs have to clear several hurdles before any discovery over the scope of injunctive relief is appropriate. First, Plaintiffs must specify the precise terms of their proposed permanent injunction. The Complaint, however, describes the requested injunction only in general terms, *see*, *e.g.*, Compl. at 199-200, which falls short of satisfying F.R.C.P. 65's requirement that any injunction "describe in reasonable detail" the "acts restrained or required." Once Plaintiffs outline the injunctive relief sought in sufficient detail, the Court can then decide upon the scope of additional discovery (if any) needed for the requested injunction. There is a further threshold question of whether Plaintiffs are entitled to *any* injunction. And even if they were to establish that some injunction is justified, the Court could conclude that they are entitled to an injunction for only a subset of their claims or against a subset of the challenged Meta practices. *Cf. San Bruno Mountain Watch v. Cypress Amloc Land Co.*, 2005 WL 8177591, at *1 (N.D. Cal. Nov. 3, 2005) (If "Defendants have no liability, there will be no need to conduct discovery" on "purely remedial issues" but if "Defendants are found liable for any of the claims, discovery . . . as to injunctive relief . . . can be focused on remediation of the liability that was actually found."). Additionally, it is unclear why *30(b)(6) testimony* in particular, from April 1, 2024 to the present, will be uniquely necessary or relevant for any remedial analysis.

As the Court aptly noted, "for practical reasons, discovery time periods cannot be extended indefinitely." ECF No. 953 at 9. The potential, future need for discovery regarding the scope of Plaintiffs' unspecified, requested injunction does not justify expanding the RTP for a 30(b)(6) deposition today. *See Nuskey v. Lambright*, 251 F.R.D. 3, 9 (D.D.C. 2008) (the possibility that discovery "through the present time may yield [relevant] evidence" is "too speculative to justify extending the relevant time period to the present day," since "in every case there 'could be' relevant [information]" outside of the RTP).

Plaintiffs also accuse Meta of "cherry pick[ing]" the areas for which it has agreed to provide post-April 1, 2024 30(b)(6) testimony. That is plainly false. The targeted areas for which Meta has agreed to provide post-April 1, 2024 30(b)(6) testimony were those for which *Plaintiffs* previously requested post-April 1, 2024 documents. Meta's position is simply that the temporal scope of 30(b)(6) testimony should match the temporal scope of document productions. *See* DMO 7 at 2-3 (prohibiting further RFPs outside of "follow-up RFPs on Meta to obtain materials concerning new developments, facts, or issues that may come to light," including those "fall[ing] outside the [RTP]"). Further, Plaintiffs suggest that DMO No. 7 set the RTP only for "Meta's search, collection, and review of responsive documents." Plaintiffs, however, fail to quote the full sentence, which states that the RTP applies to "Plaintiffs' *discovery requests* directed at Meta *and* Meta's search, collection, and review of responsive documents." DMO No. 7 (emphasis added). The reference to both "discovery requests" *and* document discovery confirms that, contrary to Plaintiffs' assertion, "discovery requests" cannot be limited to just document discovery, and it confirms that the Court subjected both to the RTP. The RTP thus applies to 30(b)(6) depositions.

Accordingly, the default end date should apply to 30(b)(6) topics to mirror the general document discovery end date, except to the extent those topics seek testimony concerning Teen Accounts, Reset Recommendations, or the interpretation of post-April 1, 2024 data produced by Meta.

## ATTESTATION

I, Joshua Olszewski-Jubelirer, hereby attest, pursuant to N.D. Cal. Civil L.R. 5-1, that the concurrence to the filing of this document has been obtained from each signatory hereto.

Dated: May 13, 2025

By: <u>/s/ *Joshua Olszewski-Jubelirer*</u>

Joshua Olszewski-Jubelirer