James P. Rouhandeh (*pro hac vice*)
rouhandeh@davispolk.com
DAVIS POLK & WARDWELL LLP
450 Lexington Avenue
New York, New York 10017
Telephone: (212) 450-4000
Facsimile: (212) 701-5800

Paul W. Schmidt (*pro hac vice*)
pschmidt@cov.com
COVINGTON & BURLING LLP
One CityCenter
850 Tenth Street, NW
Washington, DC 20001-4956
Telephone: (202) 662-6000
Facsimile: (202) 662-6291

*Attorneys for Defendants Meta Platforms, Inc. and
Instagram, LLC*

*Additional counsel listed on signature pages*

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## OAKLAND DIVISION

| | |
|---|---|
| IN RE: SOCIAL MEDIA ADOLESCENT ADDICTION/PERSONAL INJURY PRODUCTS LIABILITY LITIGATION<br><br>THIS DOCUMENT RELATES TO:<br><br>*People of the State of California, et al. v. Meta Platforms, Inc., et al.* | MDL No. 3047<br><br>Case Nos. 4:22-md-03047-YGR-PHK<br>4:23-cv-05448-YGR<br><br>**META'S RESPONSE TO LETTER BRIEF BY STATE ATTORNEYS GENERAL REGARDING TRIAL STRATEGY**<br><br>Judge: Hon. Yvonne Gonzalez Rogers<br>Magistrate Judge: Hon. Peter H. Kang |

## I.    **INTRODUCTION**

Pursuant to the Court's guidance and directive to the parties to propose a workable trial plan, Meta proposes that any initial trial of the claims brought by the State Attorneys General (the "AGs") consist of the consumer protection claims of three states.[1]  Specifically, Meta proposes beginning with a three-state trial of Colorado, Kansas, and Kentucky—states that have similar evidentiary requirements for key aspects of the claims, which would mitigate juror confusion, reduce prejudice to Meta, and promote efficiency.  Meta understands that the Court is interested in a proposal that considers dividing lines among the states.  *See* Nov. 19, 2025 Case Management Conference Tr. at 55:14-17.  Material differences among the laws of the 18 states bringing consumer protection claims will make it exceedingly difficult for a single jury to apply the evidence to 37 counts consisting of one COPPA claim, 18 states' deception claims, and 16 states' unfairness claims.  Juror confusion and prejudice to Meta can be minimized by trying a subset of the consumer protection claims in a first trial.

Unlike the AGs' submission, Meta's submission provides the Court with a workable proposal for an initial AG trial.  The letter brief submitted by the AGs, *see* ECF 2541 ("AG Letter Br."), is not a "trial plan[]," as requested by this Court.  *See* Nov. 19, 2025 Case Management Conference Tr. at 62:15.  The AGs refuse to modify their extreme and unprecedented position that this Court should conduct a single joint trial of all the AGs' claims under the laws of 18 states.  They also use their submission as an opportunity to argue the merits of their case, devoting nearly four pages to storytelling about Meta's alleged misconduct (all of which Meta disputes).  *See* AG Letter Br. at 5-9.  The AGs also assert that a single trial would be most efficient because they have "litigate[d] a single case," *see* AG Letter Br. at 2, ignoring that they represent separate state parties.  The fact that the AGs decided to plead all their claims in one complaint does not change the fact that they must prove their claims under *each state's* laws, and that Meta will oppose *each state's* claims separately.

---

[1] Meta objects to any AG trial consisting of more than one state's consumer protection claims, but proposes a grouping of three states' consumer protection claims for the purpose of this trial planning submission.

Despite multiple opportunities to do so, the AGs also remain unable to identify a *single* analogous precedent for the type of massive, multistate trial they propose. In their November 12 "mapping submission," the AGs failed to come forward with *any* such example. *See* ECF 2434 (Supplemental Materials to State Attorneys General Jury Instructions). The only case identified in that submission that actually went to trial was an action brought by private consumer class action plaintiffs, not state attorneys general. *Id.* at 2. But that case only undermines their position: the district court there conducted a single bellwether bench trial under the law of just *one* of the 39 jurisdictions whose statutes were at issue. *In re Pharmaceutical Industry Average Wholesale Price Litig.*, 252 F.R.D. 83, 86-87 (D. Mass 2008). And it acknowledged that doing so "gave the Court the opportunity to understand the complex factual and legal disputes" in the case. *Id.* at 87.

The only new case that the AGs identify now, *United States v. Dish Network L.L.C.*, 954 F.3d 970 (7th Cir. 2020), is likewise of no help to them, because the trial court in that case had made pre-trial liability determinations that effectively mitigated variations between the different state laws. *See United States v. Dish Network, LLC*, 2015 WL 682876, at *1 (C.D. Ill. Feb. 17, 2015). The trial court then ordered a single *bench trial*, noting that "[a] bifurcated bench trial might have been a consideration if some issues of liability had not yet been determined." *Id.* Even putting aside the pre-trial resolution in that case, the state-law claims there were far more similar to each other than the claims in this case. *See United States v. Dish Network, L.L.C.*, 75 F. Supp. 3d 942, 1026-30 (C.D. Ill. 2014). Four of the six state-law claims were brought under the states' respective Do-Not-Call laws, all of which are virtually identical to each other, *see id.* at 1026-29, and violations of the two remaining state statutes at issue there could both be established by proof of a violation of the federal Do-Not-Call Laws, *id.* at 1027, 1029-30, which were also claims in that case.

It is not surprising that the AGs cannot put forth a single example of a trial like the one they propose here. A single joint trial in this case, which would involve a federal COPPA claim, 18 states' deception claims, and 16 states' unfairness or unconscionable acts or practices claims, all premised on numerous, complex theories of liability, is simply not workable, would result in

juror confusion, and would prejudice Meta.  Having a single jury evaluate 18 different states'

consumer protection laws is inappropriate given the inevitable risk of juror confusion and

resulting prejudice to Meta.  *See Quint v. Vail Resorts, Inc.*, 2023 WL 5564724, at *2 (D. Colo.

July 11, 2023) ("A trial implicating claims under nine state laws and federal law could require

nine sets of overlapping, and possibly contradictory, evidence, subjecting the jury to confusion

and the defendants to potential prejudice.").  These risks outweigh any efficiency benefit of a

single joint trial.

These risks are, moreover, unnecessary.  As set forth below (*see infra* Section III), in

contrast to the AGs, Meta has identified a workable proposal for the Court that would mitigate

juror confusion, reduce prejudice to Meta, and promote efficiency in several key respects.

Assuming for the purposes of this submission that the AGs are entitled to a jury trial as to some

of their claims,[2] Meta proposes that any initial AG jury trial consist of the consumer protection

claims of Colorado, Kansas, and Kentucky.[3]  These three states have common elements for

proving deception, all require a showing of intent for liability, and the grouping would avoid

outlier legal issues and elements.[4]

Finally, Meta maintains that setting a trial date and determining the structure or scope of

any AG trial remain premature.  Cross-motions for summary judgment, which are currently

being briefed, and unresolved issues regarding the claims on appeal in the Ninth Circuit, may

each significantly impact the issues for trial.  The parties will also soon have much more

---

[2] Liability issues should be tried to the bench instead of a jury.  The AGs, as state governments, have no right to a jury trial under the Seventh Amendment on their COPPA claims or their consumer protection claims and have acknowledged that they seek only equitable relief.  Even if they had a right to a jury trial on other claims, their COPPA claims would still belong before the bench because the AGs seek only equitable remedies that would not entitle them to a jury trial on COPPA issues.

[3] Meta disputes that any of the AGs' claims should be tried to a jury.  However, for purposes of facilitating trial planning, Meta's proposal assumes a scenario where at least some of the AGs' claims are tried to a jury.  In the event the Court agrees that all claims should be tried to the bench, Meta reserves the right to address at the appropriate time what any such trial would look like.

[4] Under this approach, at a minimum, the remedies phase of the case—including the calculation of civil penalties (if any) and any disgorgement, as well as any injunctive relief—would need to be separated from liability for a later bench trial.

META'S RESPONSE TO LETTER BRIEF BY STATE AGS REGARDING TRIAL STRATEGY
4:22-MD-03047-YGR-PHK; 4:23-CV-05448-YGR

information about what an AG trial might look like following two state-court AG cases set for trial in February and July of this year.

## II. THE AGS' PROPOSAL OF A SINGLE JOINT TRIAL IS UNWORKABLE

A workable trial plan should aim to minimize juror confusion and prejudice and maximize efficiency.  Principles governing bifurcation under Rule 42(b) are instructive to evaluate the workability of the AGs' proposed trial plan, although Meta reserves the right to formally request bifurcation at the appropriate stage in the litigation when the parties can fully brief the issue.[5]  Under that Rule, a district judge can "order a separate trial of one or more issues" or "claims" for: (1) "convenience;" (2) "to avoid prejudice;" or (3) "to expedite and economize."  Fed. R. Civ. P. 42(b).  "Convenience" and "economy" are functionally the same concern.  *See Wooten v. BNSF Ry. Co.*, 819 F. App'x 483, 485 (9th Cir. 2020) (recognizing that Rule 42(b) allows courts to bifurcate "in furtherance of convenience or to avoid prejudice"); *see also AAA Max 1 Ltd. v. Boeing Co.*, 2025 WL 2599927 (W.D. Wash. Aug. 13, 2025) ("Bifurcation to avoid prejudice or to expedite and economize are independent reasons, any one of which is enough to order bifurcation." (internal citation and quotations omitted)).  Bifurcation to avoid prejudice is appropriate if "no jury could properly compartmentalize" evidence to its admissible purposes.  *Estate of Diaz v. City of Anaheim*, 840 F.3d 592, 602-03 (9th Cir. 2016) (reversing judgment and remanding for new trial); *see also Palm Springs Med. Clinic, Inc. v. Desert Hosp.*, 628 F. Supp. 454 (C.D. Cal. 1986) (declining to exercise pendent jurisdiction over state-law claims because "there is a very strong likelihood that jury confusion will result from what would be a long and complex trial and set of jury instructions").

The AGs' proposal of a single joint trial fails under these principles for several key reasons.  *First*, it fails to acknowledge the different state standards among the 18 states' consumer protection claims that, combined with the complexity of the alleged theories of liability and the different evidence at issue, would result in juror confusion and prejudice to

---

[5] *See* Judge Yvonne Gonzalez Rogers's Standing Order Re: Pretrial Instructions in Civil Cases (last updated March 17, 2025) at 1-2 ("A statement of whether bifurcation or a separate trial of specific issues is feasible and desired" is to be included in the parties' joint Pretrial Conference Statement.).

Meta.  *Second*, it incorrectly assumes that Meta will not present state-specific evidence to oppose the AGs' case, which it is entitled and intends to do.  *Third*, it fails to account for the fact that, under any scenario, certain claims and issues should be tried to the bench, including any remedies phase.

> **A.  The AGs' proposal fails because trying all the claims together would result in juror confusion and prejudice to Meta.**

As set forth below, there are material differences among the requirements of the 18 states' consumer protection claims.[6]  Some states have overlapping deception requirements, but disparate unfairness requirements.  Some states require proof of a particular mental state, while others do not.  To make matters more challenging, many state standards are ostensibly similar, yet materially different when applied.  Grappling with these different state requirements would alone be reason enough to break the states up into manageable groups for trial.  But when that issue is combined with the complexity of the evidence and numerous theories of liability, juror confusion is inevitable, as is the risk of a verdict that—despite a jury's best efforts—fails to account for state-specific requirements and thus does not adhere to the law.  The AGs' proposal should be rejected because it fails to even acknowledge, much less mitigate, those serious risks.

> **1.  The AGs ignore material differences among the state consumer protection laws.**

>> **i.  Deception Standards**

The AGs ignore material differences among the states' deception standards in saying that at least 14 states "are entirely coterminous" in defining deception as conduct that "has the capacity, tendency, or likelihood to deceive reasonable consumers."  *See* AG Letter Br. at 12. For example, there are distinct falsity standards among the states' deception claims that will be exceedingly difficult for a jury to manage.  The AGs fail to recognize that some of the states within the group of 14 they identify, such as Colorado, have a deception standard that is materially more stringent than "tendency to mislead" by requiring that any allegedly deceptive

---

[6] Meta reserves the right to identify additional differences among the state law requirements for the AGs' consumer protection claims.

statement be *actually false* when made.[7]  Even more, as discussed below, *see infra* Section

II.A.1.iii, for certain of these states, the jury must consider Meta's *mental state* in connection

with falsity and determine, if there is falsity, whether Meta had actual or constructive knowledge

of it.[8]  Other states within the AGs' group of 14 do not require falsity for *all* of their claims, but

falsity *is* required for certain *theories* underlying the AGs' deception claims.  For example, the

Delaware AG brings a deception claim under 6 Del. Code Ann. § 2532(a)(5), which requires a

defendant to "[r]epresent[] that goods or services have sponsorship, approval, characteristics,

ingredients, uses, benefits, or quantities *that they do not have*" (emphasis added).  Even where

falsity is not required for their claims, some states among the 14 that the AGs identify as

"coterminous" consider falsity as an *alternate pathway* to proving a violation of the relevant

consumer protection statute, separate from tendency to deceive.  New Jersey, for example,

prohibits "any commercial practice that is unconscionable or abusive, deception, fraud, false

pretense, false promise, misrepresentation."  N.J. Stat. Ann. § 56:8-2.  And, as the AGs' own

November 12 submission highlights, there are at least *10 different definitions* among at least 14

states—not all of which overlap with the 14 states the AGs identify as having "coterminous"

definitions of deception—of what constitutes a false, untrue, or inaccurate statement for the

purpose of determining whether there was deceptive conduct.  *See* ECF 2434-2 at 2-1 (Exhibit 2

---

[7] *See Rhino Linings USA, Inc. v. Rocky Mountain Rhino Lining, Inc.*, 62 P.3d 142, 147 (Colo. 2003) (en banc) ("[T]he plaintiff must show that a defendant knowingly makes a false representation." (citation omitted)); *York v. InTrust Bank, N.A.*, 962 P.2d 405, 421 (Kan. 1998) ("[T]he question under [the KCPA] is . . . whether [the defendant] engaged in the willful use, in any oral or written representation, of a falsehood as to any material fact."); *Nelson v. Am. Fam. Mut. Ins. Co.*, 262 F. Supp. 3d 835, 861-62 (D. Minn. 2017) ("'The burden is upon a plaintiff to prove the falsity of the allegedly deceptive statements.' If there is no evidence that the statements at issue are 'provably false,' an MDTPA claim must be dismissed." (internal citation omitted) (quoting *McClure v. Am. Fam. Mut. Ins. Co.*, 223 F.3d 845, 855 (8th Cir. 2000))).

[8] *See State ex rel. Coffman v. Robert J. Hopp & Assocs., LLC*, 442 P.3d 986, 1001 (Colo. App. May 17, 2018), *as modified* (Nov. 1, 2018) (CCPA requires "an intent to mislead and deceive [another]" (alteration in original) (internal quotation marks and citation omitted)); *JTS Choice Enters., Inc. v. E.I. DuPont De Nemours & Co.*, 2014 WL 793525, at *7-8 (D. Colo. Feb. 26, 2014) (no intent to defraud, as required by common law fraud claim, where statements were not made "with knowledge or reckless indifference to their falsity"); *Gonzales v. Assocs. Fin. Serv. Co. of Kan., Inc.*, 967 P.2d 312, 328 (Kan. 1998) (no violation under the KCPA where there was "no showing in the record that [defendant] either purposely withheld relevant information or misstated facts with the intention of deceiving [plaintiff]").

META'S RESPONSE TO LETTER BRIEF BY STATE AGS REGARDING TRIAL STRATEGY
4:22-MD-03047-YGR-PHK; 4:23-CV-05448-YGR

to Supplemental Materials to State Attorneys General Jury Instructions).  A single trial of the 18

AGs' claims will therefore require the jury to consider multiple theories of liability (only some

of which overlap with each other) for deceptive conduct under the states' laws.

Additionally, although the AGs acknowledge that nearly half of the states must prove that

any allegedly deceptive statements pertain to characteristics, uses, benefits, sponsorship, or other

aspects of Meta's goods or services themselves, *see* AG Letter Br. at 13, they do not explain how

a jury would navigate applying the varying standards among the 18 states bringing deception

claims to the dozens of alleged misrepresentations at issue.[9]  Tasking a jury with applying

materially different elements for 18 states' deception claims—some of which also require a

showing of intent, the requirements for which also differ, *see infra* Section II.A.1.iii—will

involve complicated instructions, and the jury's confusion will be compounded by also managing

the states' differing elements for the unfairness claims.

### ii.    *Unfair or Unconscionable Acts or Practices Standards*

The AGs similarly minimize the significance of the important differences between the

states' unfairness standards and ignore that they will inevitably compound juror confusion.  The

AGs lump together at least seven states that they claim look to "some combination" of the factors

discussed in *Sperry*.  *See* AG Letter Br. at 10.  But even within this purported "group" that the

AGs claim follow *Sperry*, some states' standards involve distinct and sometimes conflicting

application of the *Sperry* factors.  For instance, Louisiana's unfairness standard requires proof

that conduct offends public policy *and* is immoral, unethical, oppressive, unscrupulous, or

substantially injurious to consumers.  *See Nola Spice Designs, LLC v. Haydel Enters. Inc.*, 969 F.

Supp. 2d 688, 700 (E.D. La. 2013) ("Louisiana courts have restrictively defined unfair practices

as conduct which offends established public policy *and* which is unethical, oppressive,

unscrupulous, or substantially injurious." (internal quotation marks omitted and emphasis

added)), *aff'd*, 783 F.3d 527 (5th Cir. 2015).  South Carolina's unfairness standard provides only

---

[9] *Compare* N.J. Stat. Ann. § 56:8-2 (requiring allegedly deceptive conduct be "in connection with the sale or advertisement of any merchandise or real estate"), *with* 815 ILCS 510/2(a) (requiring allegedly deceptive conduct be "in the course of . . . business, vocation, or occupation"), *with* N.C. Gen. Stat. § 75-1.1(a) (requiring allegedly deceptive conduct be "in or affecting commerce").

two of the three paths to liability under the traditional *Sperry* test. *See Adams v. G.J. Creel & Sons, Inc.*, 465 S.E.2d 84, 86 (S.C. 1995) (South Carolina requires proof that conduct is "offensive to public policy" or . . . "is immoral, unethical, or oppressive" (internal quotation marks omitted)). These are materially different, more difficult to satisfy standards than the disjunctive three-factor *Sperry* test applied in states like Connecticut, Illinois, Minnesota, and Pennsylvania.[10] By contrast, North Carolina's test, as an alternative to *Sperry*, allows for liability based on "conduct manifesting an inequitable assertion of power or position." *Gray v. N.C. Ins. Underwriting Ass'n*, 529 S.E.2d 676, 680 (N.C. 2000). Tasking a single jury with managing these different standards unnecessarily risks conflating states with different levels of stringency.

Further, even within the group of states that consider "some combination" of the *Sperry* factors and allow for liability based on a finding that alleged unfair conduct offended public policy, statutes, or common law—those factors differ from one state to another. *See, e.g.*, *Edmands v. CUNO, Inc.*, 892 A.2d 938, 954 n.16 (Conn. 2006) (enumerating factors for "determining when a practice is unfair" that include when the practice "offends public policy as it has been established by statutes, the common law, or otherwise" (internal quotation marks and citation omitted)); *State ex rel. Stenberg v. Consumer's Choice Foods, Inc.*, 755 N.W.2d 583, 590-91 (Neb. 2008) ("[T]he plaintiff must prove that the practice . . . 'fell within some common-law, statutory, or other established concept of unfairness . . . .'"). Such a task would confuse even the most careful jury, as even for states that do identify a specific public policy, there are variations among the public policies identified. *See, e.g.*, Compl. ¶ 896 (alleging for Connecticut claim a freestanding "public policy pertaining to the protection of minors from the harms of addiction"); *id.* ¶ 954 (alleging for Illinois claim "public policy goal[s]" including "reducing juvenile addiction to drugs" and "prohibiting minors from casino gambling"); *see also* ECF 2313-1 (Preliminary Joint Jury Instructions) at 91 n.321 (arguing that "we are not required to

---

[10] *See Ulbrich v. Groth*, 78 A.3d 76, 100 (Conn. 2013); *Robinson v. Toyota Motor Credit Corp.*, 775 N.E.2d 951, 960-61 (Ill. 2002); Minn. Stat. § 325D.44, subd. 1(13), 2(b); *id.* § 325F.69, subd. 8; *Marshall v. Miller*, 276 S.E.2d 397, 403 (N.C. 1981); *Commonwealth ex rel. Zimmerman v. Nickel*, 26 Pa. D & C 3d 115, 120-21 (Pa. C.P. 1983) (citing *Fed. Trade Comm'n v. Sperry & Hutchinson Co.*, 405 U.S. 233, 244-45 n.5 (1972)).

name a specific public policy" for Louisiana unfairness claim); *id.* at 133 n.444 (arguing that "it is [not] necessary to specify particular public policies in the jury instructions" for North Carolina claim). The AGs' trial plan would task the finder of fact with evaluating such questions against entirely different bodies of law and policy for each state, requiring them to assess alleged conduct against distinct, state-specific "policy" allegations such as Connecticut's alleged policy on protecting minors from "addiction" and Illinois' alleged policy against gambling, as well as unspecified "public policies" for states like Louisiana and North Carolina. The AGs should not be permitted to erase these distinctions, or to excuse a jury from grappling with these state-specific tests, by lumping states together as if this statutory language was entitled to no weight.

Among the states that do not follow *Sperry*, two bring unfairness claims evaluated under the standard set forth in Section 5 of the FTC Act, which requires proof that the allegedly unfair conduct causes or is likely to cause substantial injury to consumers, that consumers could not reasonably avoid that harm, *and* that any harm is not outweighed by countervailing benefits. *See* 6 Del. Code § 2511(9); Compl. ¶ 1080 (citing, in relation to N.Y. Exec. Law. § 63(12) claim, 15 U.S.C. § 45(n)). Still other states apply bespoke standards. For instance, California applies a harm-to-utility balancing test, while North Carolina permits an unfairness finding based on the assertion of "an inequitable assertion of power" (which amounts to yet another unique factual finding).[11] Finally, unfairness is left without any formal definition in both Colorado and Indiana. *See* AG Letter Br. at 10-12 (failing to provide any definition for "unfairness" under Colorado or Indiana law); ECF 2313-1 at 67 n.242 (arguing that "[t]here is no statutory definition for unfair, abusive or deceptive in Indiana law"). The AGs fail to explain how a jury could possibly grasp and correctly apply all the differences among these competing standards, and this is before even accounting for the various pieces of state-specific evidence and complex theories of liability the jurors will simultaneously need to juggle.

---

[11] *See Progressive W. Ins. Co. v. Super. Ct.*, 135 Cal. App. 4th 263, 285 (2005) ("[T]he court must weigh the utility of the defendant's conduct against the gravity of the harm against the alleged victim."); *Gray v. N.C. Ins. Underwriting Ass'n*, 529 S.E.2d 676, 681 (N.C. 2000) ("[W]here a party engages in conduct manifesting an inequitable assertion of power or position, such conduct constitutes an unfair act or practice.").

There are additional differences among the states' unfairness or unconscionability standards that the AGs ignore. First, some states have a substantial injury requirement, while others do not.[12] Second, among the five states that allow for unfairness claims based on "unconscionable" conduct, there are at least three different standards that have little overlap with one another. For instance, Kansas and Kentucky define unconscionable conduct as unequal bargaining power, while New Jersey looks to whether conduct materially departed from standards of good faith.[13] And where the defendant and consumers are parties to a contract, as with Meta and users of its platforms, Nebraska requires that the conduct be so one-sided as to be unconscionable.[14]

Finally, the 16 states employ differing tests relating to the alleged conduct's relation to trade or commerce, ranging from course-of-business requirements to assessing whether the defendant is a particular kind of supplier or engaged in a particular kind of transaction. *See* Minn. Stat. § 325D.44, subd. 1 ("in the course of business, vocation, or occupation"); Ind. Code § 24-5-0.5-3 (enumerating acts that "[a] supplier may not commit"); 6 Del. Code § 2513(a) ("in connection with the sale, lease, receipt, or advertisement of any merchandise").

---

[12] *Compare* 6 Del. Code 2511(9) ("'Unfair practice' means any act or practice that causes or is likely to cause substantial injury to consumers . . . ."), *with People ex rel. Spitzer v. Applied Card Sys., Inc.*, 805 N.Y.S.2d 175, 177 (N.Y. App. Div. 2005) ("As to the claims alleging deceptive business practices or false advertising under General Business Law §§ 349 and 350, the Attorney General was required to establish . . . that [the consumer] has been injured by reason thereof." (alteration in original) (internal quotation marks and citation omitted)).

[13] *Compare Watson v. Progressive Direct Ins. Co.*, 2022 WL 18027628, at *6 (E.D. Ky. Dec. 30, 2022) ("While Kentucky courts have not provided a precise definition of unconscionability under the KCPA, the Western District of Kentucky defined the term as any business practice 'that misuses a seller's superior resources or bargaining power to enforce grossly unfair terms or conditions on a buyer after formation of a contract.'" (quoting *Garrett v. State Auto Prop. & Cas. Ins. Co.*, 2009 WL 5125812, at *5 (W.D. Ky. Dec. 21, 2009))), *and State ex rel. Stovall v. DVM Enters., Inc.*, 62 P.3d 653, 658-59 (Kan. 2003) (assessing "Kansas case law and the concept of unconscionability" to determine that "the State needed to prove some element of deceptive bargaining conduct and unequal bargaining power to prove unconscionability"), *with D'Ercole Sales, Inc. v. Fruehauf Corp.*, 501 A.2d 990, 998 (N.J. Super. Ct. App. Div. 1985) ("[T]he standard of conduct contemplated by the unconscionability clause is good faith, honesty in fact and observance of fair dealing." (quoting *Kugler v. Romain*, 279 A.2d 640, 652 (N.J. 1971))).

[14] *See Fuentes v. Woodhouse Ford, Inc.*, 2004 WL 1243589, at *10 (Neb. Ct. App. June 8, 2004) (finding "no cases specifically discussing unconscionability in the context of the UDTPA but noting that the default test is "whether . . . . the clauses involved are so one-sided as to be unconscionable under the circumstances existing at the time of the making of the contract . . . ." (internal quotation marks omitted)).

In sum, in their effort to artificially minimize the differences between the various unfairness standards, the AGs fail to explain how any single jury could conceivably effectively navigate and delineate across the various states the different unfairness tests at issue.

### iii.   Mental State Standards

There are also meaningful differences among the states in terms of required mental state, including intent.  The AGs' simplification of these differences ignores that they will compound to confuse jurors and avoids providing the Court with the clarity on intent standards that it specifically requested.  *See* Nov. 19, 2025 Case Management Conference Tr. at 58:19-22. Trying all the AGs' claims together will require the jury to distinguish among the following, which is not an exhaustive list of the *mens rea* standards at issue in this case:

- negligence,
- gross negligence,
- recklessness,
- general intent,
- specific intent,
- wantonness, and
- willfulness.

There are numerous kinds of specific intent at issue, including:

- to violate a statute,
- to defraud,
- to induce use,
- to induce reliance,
- to mislead or deceive,
- to mislead and deceive,
- and to "do wrong" or to "cause injury."[15]

---

[15]  Six states, California, Delaware, Illinois, Louisiana, New Jersey, and Wisconsin, have requirements to prove that allegedly deceptive statements or omissions were for purposes of or with intent to induce consumers to use Meta's platforms or obtain some other kind of reliance. *See* ECF 2313-1 at 17 (California FAL); *Stephenson v. Capano Dev., Inc.*, 462 A.2d 1069, 1074 (Del. 1983) ("[In] omitting or concealing a material fact, the defendant must have intended that

Not only would the jury need to understand the range of mental states in play, it would also need to understand how the mental state requirements vary from state to state, from simple negligence to willfulness.[16] Some states also have multipronged *mens rea* requirements that differ from one another.[17] Even where different states ostensibly require the same degree of "intent," the nature of the intent required is different. For example, Kansas requires proof that an

---

others rely on the omission or concealment."); *People ex rel. Madigan v. United Const. of Am., Inc.*, 981 N.E.2d 404, 411 (Ill. App. Ct. 2012) ("[T]he Attorney General must allege that . . . defendants intended for customers to rely on that deceptive act or practice . . . ."); *see Target Const., Inc. v. Baker Pile Driving & Site Work, L.L.C.*, 2012 WL 5878855, at *4 (E.D. La. Nov. 20, 2012) ("[Plaintiff's] LUTPA claims fail" because "it has not adequately pled [defendant]'s intent to deceive as distinguished from mere mistake or negligence."); *Pikaluk v. Horseshoe Ent., LP*, 2021 WL 3666856, at *3 (W.D. La. Aug. 17, 2021) ("LUTPA necessarily entails a finding of immoral, unethical, oppressive, or unscrupulous conduct with an intent to deceive and or defraud."); N.J. Stat. Ann. § 56:8-2; *Novell v. Migliaccio*, 749 N.W.2d 544, 552 (Wis. 2008) ("We stated that to prevail on a § 100.18 claim, the plaintiff must prove . . . the defendant made a representation to the public with the intent to induce an obligation . . . ."). Minnesota and Nebraska have no intent requirement at all, for either liability or civil penalties, on both unfairness and deception claims. *See* Minn. Stat. § 325D.44, subd. 1; Neb. Rev. Stat. §§ 59-1602, 59-1614, 87-302, 87-303.01, 87.303.11. Colorado requires knowledge or recklessness for liability on its unfairness and deception claims, *see* Colo. Rev. Stat. § 6-1-105(1)(rrr), and also requires the "intent to mislead and deceive" for its deception claims. *See Coffman*, 442 P.3d at 1001. Finally, California, Colorado, Kansas, New Jersey, and Wisconsin require intent for finding a violation under their consumer protection laws, but have no additional *mens rea* requirement for entitlement to civil penalties. *See* Cal. Bus. & Prof. Code §§ 17206, 17536; Colo. Rev. Stat. § 6-1-112; Kan. Stat. §§ 50-626, 627; N.J. Stat. Ann. § 56:8-2; Wis. Stat. § 100.26.

[16] Connecticut and South Carolina allow for liability and civil penalties, respectively, based on what the defendant "knew or should have known." *See* Conn. Gen. Stat. § 42-110o(b); S.C. Code § 39-5-110(c). Colorado requires proof of actual intent, defined as the "intent to mislead and deceive," for liability. *Coffman*, 442 P.3d at 1001. Kansas requires even more for liability, "willfulness", which it defines as "intentionally or purposefully doing wrong or causing injury to another." Kan. Stat. § 50-626(b); Pattern Inst. Kan. Civil 103.04. Kentucky uses "gross negligence" that incorporates a bespoke "wanton" finding. *Capitol Cadillac Olds, Inc. v. Roberts*, 813 S.W.2d 287, 291 (Ky. 1991) (requiring "intentional or grossly negligent conduct"); *Ali v. Allstate Northbrook Indem., Co.*, 2024 WL 1199023, at *4 (W.D. Ky. Mar. 20, 2024) (defining gross negligence as "wanton or reckless disregard for the safety of other persons" (internal quotation marks and citation omitted)).

[17] Colorado's standard has multiple, different *mens rea* requirements: it must prove knowledge or recklessness as to the falsity of a statement or advertisement, but it must also prove the statement was made with the specific intent to mislead *and* deceive. *See* Colo Rev. Stat. § 6-1-105; *Coffman*, 442 P.3d at 1001. New Jersey also has a multipronged test, and it differs from Colorado's: the defendant must make the omission with knowledge *and* with the intent for consumers to rely upon it. *See* N.J. Stat. Ann. § 56:8-2; ECF 2313-1 at 111.

omission was made with the intent to cause wrong or injury to another, while Delaware and Illinois require proof of the intent that consumers rely upon an omission.[18]

In addition to disregarding the material differences as to the mental state required for *liability* outlined above, the AGs further contend that "the relevance of knowledge and intent in [the *civil penalties*] context demonstrates how a single trial examining the same body of evidence as to all states would further efficient resolution of this dispute." AG Letter Br. at 16. This assertion ignores that remedies should be tried separately, as set forth below. *See infra* Section III.A. Accordingly, the fact that many states consider intent for determining civil penalties has no bearing on the fact that only some states require intent for liability, which is what the jury would be considering. And even if the jury were charged with deciding whether the AGs are entitled to civil penalties, the AGs ignore material differences among the intent requirements across the claims. For example, North Carolina allows for civil penalties only if the AGs prove that Meta knowingly violated "a statute," while Indiana (for one of its civil penalties theories) and Virginia require knowing violation of a *particular* statutory provision.[19] Illinois, Indiana (on one theory), Louisiana, and Pennsylvania require an intent to deceive or defraud to impose civil penalties.[20] Kentucky's standard allows for civil penalties for unintentional, reckless conduct, as well as for conduct that meets a bespoke "wanton" standard.[21] Connecticut and South Carolina require proof that Meta "knew or should have known" that its conduct violated a particular statutory provision of the respective state, while Delaware requires proof that Meta "knew or should have known" that its conduct was "of the nature" prohibited by the Delaware consumer

---

[18] *See* Kan. Stat. § 50-626(b)(2)-(3); Pattern Inst. Kan. Civil 103.04; *Stephenson*, 462 A.2d at 1074; *Madigan*, 981 N.E.2d at 411.

[19] N.C. Gen. Stat. § 75-15.2; Ind. Code 24-5-0.5-4(g); Va. Code § 59.1-206.

[20] 815 ILCS 505/7(b); Ind. Code § 24-5-0.5-2(a)(8); La. Stat. § 51:1407(B); 73 Pa. Stat. § 201-8(b); *see also In re Styer*, 2013 WL 6234621, at *8 (Bankr. E.D. Pa. Dec. 2, 2013) ("The question whether Debtor acted 'willfully' under the Pa. Unfair Trade Practices Act when she engaged in deceptive conduct, as that phrase is used therein, is identical to the issue whether Debtor acted with intent to deceive . . . .").

[21] *Roberts*, 813 S.W.2d at 291; *Ali*, 2024 WL 1199023, at *4.

protection statute.[22]  Even states that ostensibly require the same inquiry into whether Meta knew its conduct violated a statute will ask the jury for entirely different factual findings.  For example, whether Meta knew its conduct violated a particular Connecticut statute is an entirely separate question than whether Meta knew its conduct violated a particular Delaware statute.

Further, certain states' claims ostensibly require the *same* mental state but have different definitions of it.  For example, Delaware is entitled to civil penalties if it proves "willfulness," or "when the party committing the violation knew or should have known that the conduct was of the nature prohibited by the" Delaware Consumer Fraud Act.  *See* ECF 2313-1 at 45-46.  Kentucky also requires "willfulness" for civil penalties, but defines "willful" conduct as "intentional, wanton, or reckless."  *See id.* at 88.

These material differences will make a single joint trial of all the states' consumer protection claims unworkable and prejudicial to Meta.

### 2. The AGs' proposal would result in juror confusion and prejudice to Meta.

Contrary to the AGs' assertion, given differences among the 18 states' consumer protection laws, a single joint trial would pose an unacceptably high risk of juror confusion and a verdict that elides state-specific requirements and thus does not adhere to the law.  The AGs essentially argue that, because they believe the gist of the states' consumer protection laws is the same (prohibiting unlawful deceptive or unfair practices), tasking a jury with applying the law to the evidence will be straightforward.  *See* AG Letter Br. at 9 ("While the precise language may vary across these laws, at their base, these statutes prohibit Meta from engaging in unfair or deceptive business practices . . . .").  In other words, under the AGs' approach:

> [T]he Court has essentially two options.  On the one hand, craft complex jury instructions which account for the differences in state laws but are exceedingly difficult for a jury to apply (if it is possible to craft such instructions).  On the other hand, oversimplify the law, thereby depriving Defendant of the benefit of the appropriate substantive law applicable to their claims.

*Banh v. Am. Honda Motor Co, Inc.*, 2020 WL 4390371, at *8 (C.D. Cal. July 28, 2020) (internal quotation marks and citation omitted).

---

[22] Conn. Gen. Stat. § 42-110o(b); S.C. Code § 39-5-110(c); 6 Del. Code §§ 2522(b), 2533(e).

In class actions, courts have repeatedly recognized the difficulty in grouping many states' consumer protection laws together in one trial and have rejected approaches like the AGs' that oversimplify the differences between the state laws.  In *In re Zyprexa Prods. Liability Litigation*, 2008 WL 2696916 (E.D.N.Y. July 2, 2008), *opinion clarified*, 2008 WL 2705475 (E.D.N.Y. July 9, 2008), the court denied plaintiffs' motion to certify a class asserting violations of 45 state consumer protection statutes.  The court was unpersuaded by plaintiffs' argument that "most state consumer fraud statutes draw on language from the Federal Trade Commission, so that nearly all of them proscribe conduct in *somewhat the same terms*: 'unfair practices,' 'deceptive practices,' 'unconscionable practices,' and that they generally use the same definitions for these common terms." *Id.* at *137 (emphasis added).  As the court put it, "[s]tate consumer protection laws vary on a range of fundamental substantive and procedural issues," so "[p]laintiffs' attempt to group them into four general categories is 'overly simplistic in light of the nuances and differences presented by the consumer fraud acts.'" *Id.* (internal citations omitted).  The court further explained that, "[e]ven if the various states recognize *similar* cases [sic] of action with *similar* elements, it does not follow that the laws are in fact *the same*, especially in regard to novel claims with novel proofs." *Id.* at *138 (emphases added).  *See also In re McCormick & Co., Inc., Pepper Prods. Mktg. & Sales Pracs. Litig.*, 422 F. Supp. 3d 194, 224-30 (D.D.C. 2019) (rejecting plaintiffs' proposed multistate consumer protection class of 20 because "there are material variations among the 20 consumer protection statutes," the "most significant" of which included differences in "scienter requirements" and "definitions of deception."); *In re Paxil Litig.*, 212 F.R.D. 539, 544, 551 (C.D. Cal. 2003) (denying plaintiffs' proposal "to group the various states with similar, though not necessarily identical, laws together for class certification and trial purposes" where "[t]he risk of jury confusion, when taken together with the risk of improperly grouping different states' laws, outweighs any possible advantages to be gained from certification of so many different classes in one nationwide case").

It is not surprising that courts reject proposals like the AGs' in the class certification context—"'the potential for juror confusion has persuaded most courts that it is unwise' to do so." *In re Celexa & Lexapro Mktg. & Sales Pracs. Litig.*, 291 F.R.D. 13, 19 (D. Mass. 2013)

(quoting *Faherty v. CVS Pharmacy, Inc.*, 2011 WL 810178 (D. Mass. Mar. 9, 2011)). The fact that two of California's consumer protection statutes are often pleaded together, *see* AG Letter Br. at 17-18, is beside the point—whether it would be manageable for a jury to apply two different legal standards under California law to the evidence pales in comparison to what the AGs propose here.

Moreover, the AGs incorrectly contend that Meta's claims of prejudice are "vague" and "[un]substantiated." *See* AG Letter Br. at 17. The AGs' proposal ignores that a single trial of all the AGs' claims would require the jury to apply 18 states' standards to various theories of liability for which different permutations of evidence will be relevant. Unlike in the cases they cite weighing evidence under Rule 403, *see* AG Letter Br. at 18-19, a single trial here would necessarily involve the introduction of evidence for elements required for certain claims that has *no independent relevance* to other claims.

For example, the introduction of intent evidence with no independent relevance to certain of the AGs' claims will confuse the jury and prejudice Meta. *See Quint*, 2023 WL 5564724, at *2-3 (denying class certification because "[a] trial implicating claims under nine state laws and federal law could require nine sets of overlapping, and possibly contradictory, evidence, subjecting the jury to confusion and the defendants to potential prejudice," and plaintiffs failed to explain how the court would "avoid confusing the jury with a parade of different jury instructions and witnesses whose testimony is relevant to some claims but forbidden from consideration in others."); *Boeing*, 2025 WL 2599927, at *2 (granting bifurcation of claims involving fraud allegations from claims not involving fraud allegations where, even though "there may be an overlap of witnesses, the allegations . . . are sufficiently distinct as to lead to a high likelihood of juror confusion or even prejudice").[23] Kansas requires the AGs to prove that Meta "willfully" violated its consumer protection law, with "willful" being defined as

---

[23] *See also Burns v. Vill. of Crestwood*, 2017 WL 11889309, at *4 n.3 (N.D. Ill. Jan. 12, 2017) (intent is "legally irrelevant" to an excessive force claim, so "any attempt to stress the officers' intent creates a risk of juror confusion, as their instructions on the elements of the claims in this case are designed to steer them away from considering intent").

"intentionally or purposefully doing wrong or causing injury to another." *See* ECF 2313-1 at 76.

Evidence purporting to show that Meta was "purposefully doing wrong" is not "highly

probative," *see* AG Letter Br. at 18, of California's unfairness claim, for example, which has no

intent requirement and asks the jury to "weigh the utility of the defendant's conduct against the

gravity of the harm." *See Progressive W. Ins. Co.*, 135 Cal. App. 4th at 285 (internal quotation

marks and citation omitted).

In a single trial of all the consumer protection claims, there is a serious risk that evidence

relating to Meta's alleged intent—which will have no independent relevance to claims that do

not require a showing of intent—will have outsize importance. Because evidence of intent can

be inflammatory, a jury that hears intent evidence relevant to certain claims may be more likely

to find a violation of a claim for which intent is irrelevant. Additionally, the introduction of

intent evidence for some claims that require it may, by comparison, make claims without an

intent requirement seem like they have a lower bar and unfairly result in a more likely finding of

liability for the claims that do not require intent.

These risks of prejudice and juror confusion far outweigh any efficiency benefit the AGs

may cite. *See* AG Letter Br. at 2-4. Moreover, the AGs suggest that the only alternative to a

single joint trial would be 19 separate trials and fail to address the possibility of a smaller

grouping of states. *See id.* at 19. The more efficient alternative to a single trial is not 19 single-

state trials, but rather trying a small subset of states with substantially similar legal standards,

which could provide the parties with valuable information going forward—a middle ground the

AGs fail to acknowledge or address.

Meta has proposed—and drafted—a preliminary special verdict form to help mitigate

juror confusion and prejudice, but the AGs have rejected even that. *See* ECF 2313 at 5-6; *see*

*generally* ECF 2313-2. Instead, the AGs double down on their proposal of a single-question

verdict form, asking simply whether Meta violated the law at issue: yes or no. *See* ECF 2541-1

(Attachment A to AG Letter Br. (Sample Jury Instruction Packet)). Their additional proposals

that a "transition instruction" be delivered and that the jury receive individual "jury instruction

packets," *see* AG Letter Br. at 4-5, are woefully inadequate because they do not provide the

clarity and structure of an element-by-element special verdict form required for this kind of massive and complex case. *See, e.g.*, *In re Lidoderm Antitrust Litig.*, 2017 WL 679367, at \*27 (N.D. Cal. Feb. 21, 2017) (noting that "material" or "significant" differences in state antitrust laws can be "accommodated on a special verdict form[, a] mechanism[] routinely employed in complex litigations like this one").

### B. The AGs' proposal fails to account for the presentation of state-specific evidence at trial.

The AGs' trial planning proposal also ignores that Meta intends to oppose the AGs' case in a manner that will require state-specific evidence. The AGs assert that trying all their claims together is workable because they have "litigate[d] a single case," *see* AG Letter Br. at 2, but Meta intends to submit evidence to oppose *each state's* claims, as it is entitled to do. *See Geurin v. Winston Indus., Inc.*, 316 F.3d 879, 885 (9th Cir. 2002) (holding defendant was entitled to introduce all relevant evidence that "goes to negate an essential element of plaintiff's case"); *Zamora v. BMW of N. Am., LLC*, 2022 WL 17061082, at \*2 (C.D. Cal. Sept. 13, 2022) ("Defendant, who has the burden of proof on its affirmative defenses, is entitled to put on evidence and argument to meet its burden to establish this defense."). To oppose the AGs' case, Meta anticipates using state-specific evidence to demonstrate that the AGs cannot prove the elements of their respective claims. Because of the material differences among the states' consumer protection laws, a significant amount of evidence will differ depending on the state claim at issue. Contrary to the AGs' contentions, presentation of state-specific evidence, including testimony from among 137 state witnesses on Meta's preliminary witness list that Meta deposed in this case, would make the AGs' proposal of a single joint trial far *less* efficient than trying a subset of states.

The AGs incorrectly assert that Meta "manufacture[s] complexity" by suggesting that such state-specific evidence is required. *See* AG Letter Br. at 21. They predict that much of Meta's state-specific evidence will relate to "the State AGs' motives," and surmise that, because such evidence is not relevant, Meta's position that state-specific evidence is necessary is a "red herring." *See* AG Letter Br. at 19-20. The AGs contend that only the defendant's conduct is at

issue in consumer protection cases, and therefore Meta need not present state-specific evidence, *see id.*, but they mischaracterize the case law they cite for this proposition.[24]   Moreover, there is a host of reasons for Meta to introduce state-specific evidence to defend against the AGs' claims, none of which relate to the types of evidence defendants sought to introduce in the cases the AGs cite.  For example, to defend against the AGs' claims that Meta's platforms caused harm, Meta will put forth state witness testimony conceding the states have no evidence of any such harm within their respective states.  The AGs further assert that "most of Meta's affirmative defenses are not cognizable." *See id.* at 20.  As an initial matter, this is not the appropriate juncture to determine the merits of Meta's affirmative defenses.  More importantly, not only will Meta use state-specific evidence to support its affirmative defenses, but it will also use state-specific evidence to show that the AGs cannot prove their claims.

Although the AGs emphasize their "coordinated approach," *see* AG Letter Br. at 3, they ignore that this case consists of 18 *separate states'* consumer protection claims.  Meta intends to introduce evidence to oppose *each state's* claims.  The state witnesses on Meta's witness list have provided key concessions on a number of issues.  For example, state witnesses have testified that the states have not conducted research concerning the alleged harms of social media for teen users, and that they are not aware of any data linking social media and negative mental health harms for teen users in their states.  These concessions directly negate elements the AGs must prove at trial.  The Chief Administrator of Connecticut's Department of Children and Families admitted that she ██████████████████████████████████████████████

---

[24] The AGs selectively quote *In re California*, No. 25-584, 2025 WL 2427608, at *1 (9th Cir. Aug. 22, 2025), in which the Ninth Circuit classified the agencies as "nonparty state agencies" in passing but nowhere addressed whether testimony from representatives of such agencies bear on the lawfulness of Meta's conduct. *See* AG Letter Br. at 19.  Next, the AGs cite *G & G Closed Circuit Events, LLC v. Alfaro*, 2023 WL 1803399, at *4 (E.D. Cal. Feb. 7, 2023), for the proposition that "in a consumer protection case 'the conduct of the plaintiff is immaterial to the claims.'"  AG Letter Br. at 20.  But the AGs overgeneralize the holding of *G&G*, where the court granted plaintiff's motion to strike defendants' bad faith defense, noting—under the circumstances of that particular case, not as a general rule—that "the conduct of the plaintiff [was] immaterial to the claims raised in the complaint."  2023 WL 1803399, at *3-4 (E.D. Cal. Feb. 7, 2023).  The *Monster Energy & Co. v. Vital Pharmaceuticals, Inc.* case is also inapposite. There, the court was ruling on a discovery request, not trial evidence, and held in any event that "in limited circumstances, opposing counsel's motivations for bringing suit *may* be relevant." 2020 WL 2405295, at *12 (C.D. Cal. Mar. 10, 2020).

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████ (Ex. 1 at 49:18-25.)  Connecticut even funded a study during the course of this litigation that found that "general social media use by seventh graders *may not lead to concerning outcomes*."  *See* Adam McCready and Kathryn Rohn, Testimony before the Committee on Children, (February 6, 2025), https://www.cga.ct.gov/2025/kiddata/TMY/2025HB-05474-R000206-Dept%20Ed%20Leader,%20UConn,%20Assistant%20Professors-University%20of%20Connecticut--TMY.PDF (emphasis added).  Testimony from these witnesses will show, at a minimum, that the alleged conduct did not "cause substantial injury" to residents of Connecticut.  *Ulbrich v. Groth*, 78 A.3d 76, 100 (Conn. 2013).  Delaware's 30(b)(6) witness, a Deputy Attorney General, admitted that she ██████████████████████ ███████████████████████████████████████████████████████ ████████ (Ex. 2 at 270:6-15.)  That testimony will show, for instance, that the alleged conduct was not "likely to cause substantial injury to consumers."  6 Del. Code § 2511(9).  The Commissioner of the Kentucky Department of Education admitted at deposition that he ███████ ████████████████████████████████████████████████████████ ████████████████████ (Ex. 3 at 48:2-11.)  That testimony will show, at least, that the alleged conduct was not "unconscionable."  Ky. Rev. Stat. § 367.170(2).  Finally, the Senior Education Advisor in the South Carolina Office of the Governor admitted that she █████████████ ████████████████████████████████████████████████████████ ██████████████████████████████████ (Ex. 4 at 55:15-23.)  That testimony will show, among other things, that alleged misstatements were not false and thus had no "capacity to deceive."  *Oakwood Prods., Inc. v. SWK Techs., Inc.*, 774 F. Supp. 3d 734, 747 (D.S.C. 2025).

Therefore, far from a "distraction," *see* AG. Letter Br. at 19, Meta's argument that it intends to present state-specific evidence to oppose the AGs' claims is a key consideration in trial planning.

**C.** **The AGs' submission fails to account for liability issues that should be tried to the bench.**

**1.** *The Seventh Amendment does not create a right to jury trial for state governments in civil cases.*

As an initial matter, it is unsettled whether the AGs have a right to a jury trial at all.[25] The Seventh Amendment right to jury trial does not extend to the AGs. The Seventh Amendment protects the right to jury trial only as it existed at the time of its ratification in 1791. *See Balt. & Carolina Line v. Redman*, 295 U.S. 654, 657 (1935) ("The right of trial by jury thus preserved is the right which existed under the English common law when the Amendment was adopted."). "In order to ascertain the scope and meaning of the Seventh Amendment," the Court must look to "the appropriate rules of the common law established at the time of the adoption of that constitutional provision in 1791." *Standard Oil Co. of Cal. v. Arizona*, 738 F.2d 1021, 1026 (9th Cir. 1984) (internal citation omitted). Although the historical record shows that the English king *participated* in cases involving a jury, it does not show that the king had a *right* to trial by jury in a civil case. "[I]t is not clear that the Crown actually had a right to demand a jury trial in 1791." Julia A. Dahlberg, Note, *States as Litigants in Federal Court: Whether the Seventh Amendment Right to Jury Trial Applies to the States*, 37 HASTINGS L.J. 637, 650-654 (1986). By the time of ratification of the Seventh Amendment, "*jury trial was a right afforded the individual against abuses by the Crown*," a sharp departure from the jury's origins as an administrative factfinder for the king. *Id.* at 651 (emphasis added). The AGs have no Seventh Amendment right to demand a jury trial in federal court on any of their claims.

**2.** *The AGs have no right to a jury trial on liability issues related to only their COPPA claims.*

Regardless of the AGs' jury trial right, the COPPA claim should be tried to the bench. The AGs' proposed trial plan would put "the COPPA claims of all 29 State AGs" to the jury. AG Letter Br. at 4. But they provide no authority to support that proposal, and the remedies they seek require a bench trial.

---

[25] Meta reserves the right to request that this issue be fully briefed at the appropriate stage of the litigation.

META'S RESPONSE TO LETTER BRIEF BY STATE AGS REGARDING TRIAL STRATEGY
4:22-MD-03047-YGR-PHK; 4:23-CV-05448-YGR

Specifically, the AGs assert ████████████████████████████████████

████████████████████ Ex. 5 (AGs' December 23, 2024 R&Os to Meta's Second Set of

ROGs) at 22-23.  COPPA does not allow state attorneys general to recover civil penalties or

disgorgement of profits.  It allows for monetary relief only when limited to "damage[s],

restitution or other compensation on behalf of residents."  *See* 15 U.S.C. § 6504(a)(1).  The AGs

have abandoned any claim to "damages" and "restitution" through written discovery.  Ex. 5 at

22-23 (████████████████████████████████).  And their proposed trial

plan confirms that "[d]amages are not sought on behalf of any state, state agency, *or individual*."

AG Letter Br. at 2 (emphasis added).  Accordingly, even if the AGs' COPPA claim were to

survive summary judgment, their only permissible claim for relief under COPPA is equitable: an

injunction.  As a claim "seeking only injunctive relief," it would be properly tried to the bench.

*City of Monterey v. Del Monte Dunes at Monterey, Ltd.*, 526 U.S. 687, 719 (1999); *see also* U.S.

Const. amend. VII (preserving the right to jury trial "where the value in controversy shall exceed

twenty dollars").

## III. AS AN ALTERNATIVE TO THE AGS' UNWORKABLE PROPOSAL, META WOULD PROPOSE THAT ANY INITIAL AG TRIAL CONSIST OF THE CONSUMER PROTECTION CLAIMS OF COLORADO, KANSAS, AND KENTUCKY

Because the AGs' proposal of a single joint trial is unworkable for the reasons set forth

above, Meta proposes that an initial AG jury trial, if any, should consist of a subset of states'

consumer protection claims, with a separate remedies phase.

### A. The remedies phase of the case must be separate.

As an initial matter, when setting a trial and assuming a jury trial, the Court should sever

the remedies phase of the trial from liability.  The AGs took no "position on the severability of

any remedies phase" in their proposed trial plan, AG Letter Br. at 16, and their proposal ignores

that they seek only remedies for which there is also no right to trial by jury: disgorgement, civil

penalties, and injunctive relief.[26]  AG Letter Br. at 21.  Putting issues relevant only to equitable

---

[26] Injunctive relief is plainly equitable and is always decided by the Court.  *See Miller ex rel. N.L.R.B. v. Cal. Pac. Med. Ctr.*, 991 F.2d 536, 540 (9th Cir. 1993) (discussing "the fundamental principle that injunctions are equitable in nature").  Nor is there overlap between the factual

relief or the amount of civil penalties before the jury risks prejudice and confusion. The Court should sever remedies from liability in any trial plan.[27]

### 1. The AGs have no right to a jury trial on the amount of civil penalties or profits to disgorge.

As the AGs acknowledge, the relief they seek largely consists of "civil penalties and disgorgement." AG Letter Br. at 21; *see also* Ex. 6 (AGs' April 10, 2025 Second Supplemental R&Os to Meta's First Set of ROGs) at 18-20. There is no right to a jury trial in federal court on the proper quantum of either remedy.

The Seventh Amendment does not create any right for a jury to calculate the proper amount of civil penalties. "[T]he determination of a civil penalty is not an essential function of a jury trial, and [] the Seventh Amendment does not require a jury trial for that purpose in a civil action." *Tull v. United States*, 481 U.S. 412, 427 (1987). Should the AGs prove liability and an entitlement to civil penalties, determining the amount will require the court to apply a number of multifactor tests, including some that allow for discretion. *See, e.g.*, *State ex rel. Humphrey v. Alpine Air Prods., Inc.*, 490 N.W.2d 888, 896-97 (Minn. Ct. App. 1992) (describing Minnesota's four-factor test for determining the proper size of a civil penalties award); Cal. Bus. & Prof. Code 17206(b) (providing that the court consider "any one or more of the relevant circumstances . . . including, but not limited to" six enumerated factors); N.C. Gen. Stat. § 75-15.2 (directing that "the court shall consider all relevant circumstances, including, but not limited to" five enumerated factors). These are "the kinds of calculations traditionally performed by judges," and the AGs have no Seventh Amendment right for a jury to perform them. *Tull*, 481 U.S. at 426-27.

Nor—as set forth above—do the AGs have a right to a jury trial here. The Seventh Amendment creates no right to trial by jury on issues related only to equitable remedies. *Branch Banking & Tr. Co. v. D.M.S.I., LLC*, 871 F.3d 751, 765-66 (9th Cir. 2017) (holding defendants

---

issues relevant to the AGs' claims on the merits and the standard for an injunction. *See Sierra Forest Legacy v. Sherman*, 646 F.3d 1161, 1184 (9th Cir. 2011) (articulating four-factor test for a permanent injunction). Accordingly, Meta's proposal allocates injunctive relief to a later bench trial.

[27] As noted above, Meta reserves all rights with respect to this issue. *See supra* n.2.

are not entitled to a jury trial on factual issues related only to equitable monetary relief). Under *Tull*, the question of a jury trial right depends, in part, on whether the claims are legal or equitable. 481 U.S. at 417-18. Remedies that are "equitable in nature" do not create a right to trial by jury. *See id.* at 417. And the disgorgement the AGs seek is an equitable remedy. *See In re First Alliance Mortg. Co.*, 471 F.3d 977, 997 (9th Cir. 2006) (claim for "nonrestitutionary disgorgement" was a "prayer for equitable relief"); *see also Fed. Trade Cmm'n v. Silueta Distribs., Inc.*, 1995 WL 215313, at *8 (N.D. Cal. Feb. 24, 1995) ("Disgorgement is an equitable remedy used to avoid unjust enrichment."). Moreover, the AGs have conceded that *all of their claims are equitable in nature.* *See* ECF 669 (Feb. 23, 2024 Case Management Conference Tr.) at 78:14-17 ("MS. MIYATA: It's the states' position that this action is equitable and that our request for relief is equitable. And as such, the right for a jury trial – you know, the states have agreed to waive any right under state law that may attach."). Therefore, there is no "federal right to a jury trial" to preserve as to the AGs' claims seeking equitable relief. Fed. R. Civ. P. 42(b).

### 2. The Court should bifurcate remedies from liability to mitigate juror confusion and prejudice.

The Court should exercise its discretion to hold a separate bench trial on the amount of civil penalties and profits to disgorge (if any).

Here, the proper amount of civil penalties (if any) will be resolved under a number of different state-law tests, none of which overlaps with questions of liability. The Supreme Court has recognized that determining civil penalties involves "highly discretionary calculations that take into account multiple factors" and that those claims are properly tried to the bench. *Tull*, 481 U.S. at 426; *see also Feltner v. Columbia Pictures Television, Inc.*, 523 U.S. 340, 355 (1998) ("Moreover, the awarding of civil penalties to the Government could be viewed as analogous to sentencing in a criminal proceeding."). The AGs provide no authority to the contrary.[28]

---

[28] The AGs' respective state statutes clearly dictate that the judge, not a jury, determines the proper amount (if any) of civil penalties. *See, e.g.*, Conn. Gen. Stat. § 42-110o(b) (providing that "if the *court* finds" a willful violation, "the Attorney General, upon petition to the court, may recover, on behalf of the state, a civil penalty . . . ." (emphasis added)); Kan. Stat. § 50-636(a) (providing that the state may recover penalties "in a sum set by the *court* of not more than $10,000 for each violation" (emphasis added)); Minn. Stat. § 8.31 (allowing for civil penalties "in an amount to be determined by the *court*" (emphasis added)). Although those statutes do not

The Court should also try the amount of any profits to be disgorged in a later bench trial phase. Courts regularly bifurcate issues relevant only to equitable claims. *See, e.g.*, *Openwave Sys. Inc. v. Myraid France S.A.S.*, 2011 WL 2580991, at *2, 5 (N.D. Cal. June 29, 2011) (holding that an issue "not relevant" to a legal claim "will be tried to the bench rather than to a jury"); *Plymouth Gran Terminals, LLC v. Lansing Grain Co., LLC*, 2013 WL 12177037, at *7-8 (E.D. Wash. Dec. 20, 2013) (bifurcating equitable accounting "from the claims at law" to hold "a bench trial for the accounting"). And courts often bifurcate remedies from liability to avoid prejudice and confusion. *See, e.g.*, *M2 Software, Inc. v. Madacy Ent.*, 421 F.3d 1073, 1088 (9th Cir. 2005) (affirming the bifurcation of liability and damages "for judicial economy and to avoid prejudice and confusion"); *Trejo v. Cal. Forensic Med. Grp.*, 2024 WL 4175120, at *2 (S.D. Cal. Sept. 12, 2024) (concluding that "bifurcation of liability and damages is appropriate to avoid any unfair prejudice").

Evidence of the defendant's finances, in particular, poses a great risk of unfair prejudice. *See Sturm v. Davlyn Invs., Inc.*, 2013 WL 8604661, at *6 (C.D. Cal. Nov. 6, 2013) (bifurcating remedies phase when "[e]vidence of Defendants' financial condition is irrelevant to liability"). Even where evidence of the defendant's finances "*may* be relevant" to some issue on liability, where there is not "substantial overlap" that evidence carries "a risk of undue prejudice and confusion." *Vieste, LLC v. Hill Redwood Dev.*, 2011 WL 13153235, at *1 (N.D. Cal. Nov. 30, 2011). As the AGs admit, their claim for disgorgement "will be calculated with formulas . . . based on Meta's user and revenue data." AG Letter Br. at 21. This revenue data has no bearing on liability issues like whether a given statement had the tendency to deceive or whether a given practice was substantially injurious to consumers. Putting that evidence before the jury would serve only to prejudice Meta. *See High Tech. Careers v. San Jose Mercury News*, 1995 WL 115480, at *3-4 (N.D. Cal. Mar. 14, 1995) (finding "the danger of prejudice, unfair confusion, and misleading the jury" from "profit evidence was high" because the plaintiff "could have used the evidence . . . to play on 'David versus Goliath' sympathies").

___

control the issue in federal court, the AGs would not be prejudiced by trying civil penalties to the bench as they would in their own courts.

META'S RESPONSE TO LETTER BRIEF BY STATE AGS REGARDING TRIAL STRATEGY
4:22-MD-03047-YGR-PHK; 4:23-CV-05448-YGR

Further, bifurcating the remedies phase to a later bench trial will not harm judicial economy where a bench trial is necessary to resolve the COPPA claim anyway, *see supra* Section II.C.2, and to decide injunctive relief should the AGs prevail on liability.

**B.     An initial AG jury trial, if any, should determine liability on the consumer protection claims of Colorado, Kansas, and Kentucky.[29]**

Given the material differences among the states' consumer protection laws, trying a subset of states with substantially similar legal standards, which could provide the parties with valuable information going forward, will maximize efficiency.  For the subset of states' consumer protection claims to be tried first, for several key reasons Meta would propose Colorado, Kansas, and Kentucky, which collectively assert seven different state-law claims and eight distinct theories of liability.[30]  Compl. ¶¶ 878-92, 974-87.

First, these three states' consumer protection claims pose a reduced risk of juror confusion and prejudice.  For example, they all either require or consider actual falsity for deception.  *See* Colo. Rev. Stat. § 6-1-105(1)(e); Kan. Stat. § 50-626(b); Ky. Rev. Stat. Ann. § 367.170(1).  They all apply course of business, consumer transaction, and trade or commerce requirements, even though each uses a different standard.  *See* Colo. Rev. Stat. § 6-1-105(1) ("in the course of the person's business, vocation, or occupation"); Kan. Stat. § 50-626(a) ("in connection with a consumer transaction"); Ky. Rev. Stat. §§ 367-170(1) ("in the conduct of any trade or commerce").  And all three require materiality and/or otherwise assess the tendency to deceive against the reasonable consumer.  *See* Colo. Rev. Stat. § 6-1-105(1)(u); Kan. Stat. § 50-626(b)(3); *Johnson v. Taylor Auto Sales, Inc.*, 2024 WL 116310, at *2 (W.D. Ky. Jan. 10, 2024) (denying summary judgment motion because there was "a genuine issue of material fact as to whether a 'reasonably prudent person of common intelligence' would have understood" defendant's conduct to be "'false, misleading, [or] deceptive'") (quoting *Maynard v. Am. Med. & Life Ins. Co.,* 2012 WL 2571160, at *3 (W.D. Ky. July 2, 2012)).

---

[29] Meta reserves all rights to amend this proposal.
[30] Although Kentucky brings only a single count, that count alleges both deceptive and unfair practices.  *See* Compl. ¶ 984.

Meta's proposed grouping also avoids outlier elements, like proof of actual injury to consumers, as required for New York's General Business Law claims. *See People ex rel. Spitzer v. Applied Card Sys., Inc.*, 805 N.Y.S.2d 175, 177 (N.Y. App. Div. 2005) ("As to the claims alleging deceptive business practices or false advertising under General Business Law §§ 349 and 350, the Attorney General was required to establish . . . that [the consumer] has been injured by reason thereof." (internal quotation omitted) (alteration in original)).

Moreover, Meta's proposed grouping excludes those that are most likely to cause confusion and prejudice if grouped with all other states. For example, Colorado, Kansas, and Kentucky all require intent for liability on their consumer protection claims. *See* Colo. Rev. Stat. § 6-1-105(1)(e); Kan. Stat. § 50-626(b)(1); Ky. Rev. Stat. § 367.990(2). Therefore, unlike the AGs' proposal, Meta's proposal mitigates the risk of prejudice by not trying states that do not require any mental state alongside those for which intent is irrelevant.

The combination of Colorado, Kansas, and Kentucky will also mitigate the risk that jurors might find Meta liable for omissions under state laws in which omissions are not actionable. Despite the fact that some of the AGs cannot recover for omissions as a matter of law, the AGs insist that "the same deceptive statements *and omissions* apply to all states' claims," AG Letter Br. at 5 (emphasis added). *See, e.g.*, *Tietsworth v. Harley-Davidson, Inc.*, 677 N.W.2d 233, 246 (Wis. 2004) ("To permit a nondisclosure to qualify as an actionable 'assertion, representation or statement of fact' under Wis. Stat. § 100.18(1) would expand the statute far beyond its terms."). They also cite case law on the intent requirements of omissions theories in their attempt to reconcile the variety in their consumer protection laws.[31] To the extent the AGs highlight purported similarities between states that *do* allow for liability on pure

---

[31] *See* AG Letter Br. at 15 n.11 (discussing New Jersey intent requirement for omission-based theories, which requires "the intention that the consumer rely upon the concealment" (quoting *Mickens v. Ford Motor Co.*, 900 F. Supp. 2d 427, 441 (D.N.J. 2012))). The relevant section in *Mickens* concerns a "[k]nowing [o]mission" claim that requires, among other things, an "underlying duty on the part of the defendant to disclose what he concealed to induce the purchase." *Mickens*, 900 F. Supp. 2d at 441. The court distinguished the claim at bar that "Ford knowingly omitted to disclose a known defect" from another case in which the plaintiffs "claimed that the express warranty constituted an actionable 'representation' by the manufacturer." *Id.* at 442.

META'S RESPONSE TO LETTER BRIEF BY STATE AGS REGARDING TRIAL STRATEGY
4:22-MD-03047-YGR-PHK; 4:23-CV-05448-YGR

omissions, this characterization is misleading because the intent requirements are materially different across the states.[32]  It is also irrelevant because the AGs have repeatedly disclaimed any pure omissions theories, including in their responsive summary judgment pre-motion letter (ECF 2550 at 3 ("The AGs' deception claims do not impose a duty to disclose or compel speech[.]")), and as recently represented to the Ninth Circuit.[33]  In any event, the vastly disparate treatment of omissions across the states' consumer protection laws—from inactionable to actionable, and with different requirements for intent—means that trying all the state consumer protection claims together would risk "jury confusion as to what facts can prove [one claim] and what facts can prove [another]."  *KB Home v. Ill. Union Ins. Co.*, 2023 WL 3433556, at *8 (C.D. Cal. Mar. 30, 2023) (finding that "the likelihood of jury confusion and undue prejudice to [the defendant] alone are sufficient to warrant bifurcated adjudication").  Unlike the AGs' proposal, Meta's proposal mitigates this risk by not simultaneously trying states that make omissions actionable with states that do not.

Meta's proposal will also reduce confusion and prejudice in the jury's consideration of whether any alleged acts or practices are unfair or unconscionable.  Together, the three states represent both the majority test (*Sperry*) (Kansas and Kentucky's), as well as one standard (Colorado's) that is clearly distinguishable from *Sperry*.  Specifically, Colorado law imposes liability for unfair acts or practices, Colo. Rev. Stat. § 6-1-105, while Kansas's and Kentucky's claims turn on "unconscionab[ility]," Ky. Rev. Stat. § 367.170(2); *State ex rel. Stovall v. DVM Enters., Inc.*, 62 P.3d 653, 657 (Kan. 2003); and use similar standards that consider the strength

---

[32] *Compare* N.J. Stat. Ann. § 56:8-2 (prohibiting "the knowing concealment, suppression, or omission of any material fact *with intent that others rely upon such concealment*" (emphasis added)), *with Gonzales v. Assocs. Fin. Serv. Co. of Kan.*, 967 P.2d 312, 328 (Kan. 1998) (finding no violation of the KCPA where there was "no showing in the record that [defendants] either purposefully withheld relevant information or misstated facts *with the intention of deceiving* [plaintiff]" (emphasis added)).

[33] In their briefing on appeal, the AGs conceded that they "did not advance a failure-to-warn cause of action."  Opening-Answer Brief of the State Attorneys General at 23, *California v. Meta Platforms Inc.*, No. 24-7032 (9th Cir. June 23, 2025).  At oral argument, they confirmed that they are not advancing any claims based on omission theories.  *See California v. Meta Platforms Inc.*, No. 24-7032 (9th Cir. Jan. 6, 2025) Oral Argument at 31:07-31:52; 36:26-36:39, https://www.ca9.uscourts.gov/media/video/?20260106/24-7032/.

META'S RESPONSE TO LETTER BRIEF BY STATE AGS REGARDING TRIAL STRATEGY
4:22-MD-03047-YGR-PHK; 4:23-CV-05448-YGR

of bargaining power between the parties.  This combination mitigates the risk of confusion and prejudice that will result if jurors are tasked with simultaneously trying multiple standards that are ostensibly similar, yet materially different in application.  Although jurors are presumed to follow instructions, "consideration should be given to the probable effectiveness or lack of effectiveness of a limiting instruction." *Estate of Diaz*, 840 F.3d at 603 (internal quotation marks omitted).  This is a concern with Louisiana, for example, which uses a test deceptively similar to (yet more difficult to satisfy than) *Sperry*.[34]  It is also a serious flaw with the AGs' proposal, which would require the jury to make 16 findings distinguishing between confusingly similar, yet legally distinct, standards like "caus[ing] or is likely to cause substantial injury to consumers" and "substantially injurious."  AG Letter Br. at 10-11.

Moreover, in the *CVS* case in which this Court concluded that the differences among six states' consumer protection laws would be manageable, there was a central theory of liability involving a pricing scheme.  *See Corcoran v. CVS Health*, 2019 WL 6250972, at *1 (N.D. Cal. Nov. 22, 2019) ("Plaintiffs bring this putative class action against defendants alleging that they knowingly overcharged millions of insured patients by submitting falsely inflated drug prices . . . which resulted in higher copayment obligations for plaintiffs.").  Unlike in that case, a jury here would have to run numerous, distinct theories of liability—*e.g.*, alleged deceptive conduct relating to misrepresentations about addictiveness, alleged deceptive conduct relating to misrepresentations about company profits and growth, alleged unfair or unconscionable practices about three categories of Meta's product features—through 18 different states' laws.  Therefore, while the Court determined that six states was reasonable and workable in that case, *see id.* at *10, any trial here should consist of fewer states.

---

[34] Louisiana requires a finding that the challenged conduct offends public policy *and* is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers.  *See* 1 Louisiana Jury Instructions – Civil and Criminal § 18.05 (2025); *Nola Spice Designs, LLC v. Haydel Enters. Inc.*, 969 F. Supp. 2d 688, 700 (E.D. La. 2013) ("Louisiana courts have restrictively defined unfair practices as conduct which offends established public policy *and* which is unethical, oppressive, unscrupulous, or substantially injurious." (internal quotation marks omitted)), *aff'd sub nom. Nola Spice Designs L.L.C. v. Haydel Enters., Inc.*, 783 F.3d 527 (5th Cir. 2015).

## IV.  SETTING A TRIAL DATE REMAINS PREMATURE

While the Court should reject the AGs' proposal in favor of Meta's if it chooses to set any AG trial at this juncture, Meta submits that it remains premature to set any AG trial for several key reasons.

*First*, it would be premature to determine a formal trial plan before summary judgment has been decided or even briefed, which has the potential to significantly streamline the issues in the case.  Opening briefs on the parties' cross-motions are due January 30, 2026, and briefing will be completed by the end of March 2026.  *See* ECF 2249.  The Court and the parties will be in a position to make a far more informed decision about what any AG trial would look like after the Court rules on the motions.  It is premature to set a formal trial plan for an AG trial at this juncture when much could change following summary judgment that would affect not only when a trial realistically could start but also how to structure any trial(s) of the remaining claims, if any.

*Second*, the Ninth Circuit collateral order appeal regarding Section 230 issues may affect the scope of the case.  While the appeal is pending, there remains uncertainty as to the scope of the claims that will remain in the case for trial.  It does not make sense to schedule or structure a trial until there is further clarity.

*Third*, two of the 14 state-court AG cases that Meta is facing outside this MDL are already set for trial in 2026: New Mexico's case in February 2026 and Tennessee's case in July 2026.  Even accepting the premise that a single joint AG trial would be informative of a "potential global settlement," as the AGs assert, *see* ECF 2434, two such trials will likely have concluded before any State AG case could realistically conclude in the MDL.  The AGs offer no reason why a massive 29-state trial would be a more efficient "bellwether" than the two AG cases already scheduled for trial.

*Fourth*, as explained above, *see* Section II.C, *supra*, the scope of a jury trial, if any, remains unsettled.  No trial should be set until the Court has determined which issues, if any, will be tried to a jury and which issues will be tried to the bench.

Dated: January 16, 2026

Respectfully submitted,

DAVIS POLK & WARDWELL LLP

*/s/ James P. Rouhandeh*
James P. Rouhandeh (*pro hac vice*)
rouhandeh@davispolk.com
Antonio J. Perez-Marques (*pro hac vice*)
antonio.perez@davispolk.com
Caroline Stern (*pro hac vice*)
caroline.stern@davispolk.com
Corey M. Meyer (*pro hac vice*)
corey.meyer@davispolk.com
450 Lexington Avenue
New York, New York 10017
Telephone: (212) 450-4000
Facsimile: (212) 701-5800

COVINGTON & BURLING LLP

*/s/ Paul W. Schmidt*
Paul W. Schmidt (*pro hac vice*)
pschmidt@cov.com
Phyllis A. Jones (*pro hac vice*)
pajones@cov.com
Mark W. Mosier (*pro hac vice*)
mmosier@cov.com
One CityCenter
850 Tenth Street, NW
Washington, DC 20001-4956
Telephone: (202) 662-6000
Facsimile: (202) 662-6291

*Attorneys for Defendants Meta Platforms, Inc. and Instagram, LLC*

## **ATTESTATION**

I, James P. Rouhandeh, hereby attest, pursuant to N.D. Cal. Civil L.R. 5-1, that the concurrence to the filing of this document has been obtained from each signatory hereto.


Dated:  January 16, 2026                                      By:  _/s/ James P. Rouhandeh_

                                                                        James P. Rouhandeh