*[Counsel listed on signature page]*

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: SOCIAL MEDIA ADOLESCENT ADDICTION/PERSONAL INJURY PRODUCTS LIABILITY LITIGATION | MDL No. 3047<br><br>Case Nos. 4:22-md-03047-YGR-PHK<br>4:23-cv-05448-YGR |
| This Filing Relates to:<br><br>*People of the State of California, et al. v. Meta Platforms, Inc., et al.* | **META'S RESPONSE TO STATE ATTORNEYS GENERAL'S AFFIRMATIVE LETTER BRIEF EXPLAINING GROUNDS FOR ANTICIPATED *DAUBERT* MOTIONS**<br><br>Judge: Hon. Yvonne Gonzalez Rogers<br>Magistrate Judge: Hon. Peter H. Kang |

Meta responds to the State AGs' letter (ECF Nos. 2658 and 2692) on their anticipated Rule 702 motions.

**Response to Anticipated Motion #1**: Meta's experts are not offering legal opinions. In responding to the AGs' expert Patrick McDaniel (a computer scientist who applies *inapposite* standards in opining that Meta's U13 detection practices are insufficient), Wirth (a trust and safety practitioner with expertise in age assurance programs) opines on how Meta meets or exceeds the *applicable* industry standards and best practices. "Expert witnesses are allowed to testify about industry standards." *Johnson v. Nat. Gas Fuel Sys., Inc.*, 2024 WL 3718097, at *6 (E.D. Cal. Aug. 8, 2024). Feamster, a computer scientist, opines on the viability and trade-offs of various approaches to identifying U13s discussed by McDaniel, including, for example, the privacy implications of technologies like facial recognition. That Wirth and Feamster support their opinions with references to FTC guidance and the existence of laws like the GDPR and COPPA does not mean that they are offering impermissible legal opinions. *E.g.*, *Hangarter v. Provident Life & Acc. Ins. Co.*, 373 F.3d 998, 1017 (9th Cir. 2004) (experts "may refer to the law in expressing an opinion without that reference rendering the testimony inadmissible").

**Response to Anticipated Motion #2**: McCrary is an economist with nearly three decades of experience. In responding to the AGs' damages expert, he opines that Saba's quantifications of "violations" of consumer protection statutes are illogical and inconsistent with the AGs' own theories of harm—including based on public health indicators and available data on screen time—and that Saba's quantifications fail to disaggregate the impact of immunized features or content. McCrary's analysis of reliable data relevant to the strength of Saba's opinions is well within his expertise as an economist. That Saba merely assumes (or fails to analyze) the existence of a link between his quantifications of "violations" and associated consumer harm does not preclude a rebuttal expert from questioning that link, as McCrary does here.[1] As to disgorgement, McCrary's opinion that Saba's analysis erroneously assumes an improbable but-for world (in which teen users would not generate *any* revenue absent the alleged misconduct) is proper and consistent with the law. McCrary's opinions are timely because they are a direct response to Saba's computations and the damages theories reflected in his report.

**Response to Anticipated Motion #3:** None of the purported issues identified by the AGs defeat the *admissibility* of the relevant expert opinions; at best, they go to weight. *First*, Feamster's opinion that McDaniel failed to consider relevant facts in opining that certain reports of U13s were not the result of bot attacks is proper. *Second*, the unsubstantiated assertion that "many" of Wirth's opinions are "unsupported" is meritless. *Third*, Isaacson (a survey expert) opines, among other things, that the surveys on which Saba relies to quantify the number of "bad experiences" reported by teens on Instagram and the number of U13s on the platforms are not representative and cannot be reliably extrapolated to the user base as a whole. Unlike Saba—who assumed or failed to analyze whether the populations of survey respondents were representative—Isaacson's analysis is not "speculative" or "unsupported;" it is rooted in his expertise, literature in the field of survey design, and evidence. *Finally*, McCrary's critiques of Saba's computations of Monthly Active Persons properly identifies limitations of that analysis.

---

[1] The AGs are also wrong to suggest that Saba's quantifications of potential consumer protection violations need not be associated with harm. *See, e.g.*, *Woodard v. May Dep't Stores Co.*, 863 P.2d 967, 973-74 (Colo. 1993) (when calculating violations for civil penalties on a per-consumer basis, the determination of each "'consumer . . . involved' almost necessarily involves an actual injury").

Dated:  January 30, 2026                        Respectfully submitted,

**DAVIS POLK & WARDWELL LLP**

  /s/ James P. Rouhandeh
James P. Rouhandeh (*pro hac vice*)
rouhandeh@davispolk.com
Antonio J. Perez-Marques (*pro hac vice*)
antonio.perez@davispolk.com
Caroline Stern (*pro hac vice*)
caroline.stern@davispolk.com
Corey M. Meyer (*pro hac vice*)
corey.meyer@davispolk.com
450 Lexington Avenue
New York, New York 10017
Telephone: (212) 450-4000
Facsimile: (212) 701-5800

**COVINGTON & BURLING LLP**

  /s/ Ashley M. Simonsen
Ashley M. Simonsen (State Bar. No. 275203)
asimonsen@cov.com
1999 Avenue of the Stars
Los Angeles, CA 90067
Telephone: (424) 332-4800
Facsimile: (650) 632-4800

Phyllis A. Jones (*pro hac vice*)
pajones@cov.com
Paul W. Schmidt (*pro hac vice*)
pschmidt@cov.com
One CityCenter
850 Tenth Street, NW
Washington, DC 20001-4956
Telephone: (202) 662-6000
Facsimile: (202) 662-6291


*Attorneys for Defendants Meta Platforms, Inc.
and Instagram, LLC*