James P. Rouhandeh, *pro hac vice*
Antonio J. Perez-Marques, *pro hac vice*
Caroline Stern, *pro hac vice*
Corey M. Meyer, *pro hac vice*
DAVIS POLK & WARDWELL LLP
450 Lexington Avenue
New York, New York 10017
Telephone: (212) 450-4000
Facsimile: (212) 701-5800
Email:    rouhandeh@davispolk.com
            antonio.perez@davispolk.com
            caroline.stern@davispolk.com
            corey.meyer@davispolk.com

*Attorneys for Defendants Meta Platforms, Inc. and Instagram, LLC*

*Additional counsel listed on signature pages*

**UNITED STATES DISTRICT COURT**

**FOR THE NORTHERN DISTRICT OF CALIFORNIA**

**OAKLAND DIVISION**

| | |
|---|---|
| IN RE: SOCIAL MEDIA ADOLESCENT ADDICTION/PERSONAL INJURY PRODUCTS LIABILITY LITIGATION<br><br>THIS DOCUMENT RELATES TO:<br><br>*People of the State of California, et al. v. Meta Platforms, Inc., et al.* | MDL No. 3047<br><br>Case Nos. 4:22-md-03047-YGR-PHK<br>4:23-cv-05448-YGR<br><br>**META'S REPLY IN SUPPORT OF MOTION TO EXCLUDE EXPERT TESTIMONY OF ADAM ALTER AND RAVI IYER**<br><br>Judge: Hon. Yvonne Gonzalez Rogers<br>Magistrate Judge: Hon. Peter H. Kang |

**TABLE OF CONTENTS**

PAGE

I.      Alter's Deception Opinions Should Be Excluded (Ops. A-H) ..................................................1

II.     Alter's COPPA Opinions Should Be Excluded (Ops. L-P)......................................................4

III.    Iyer's Opinions Are Unreliable and Unhelpful........................................................................5

CONCLUSION.................................................................................................................................5

As established in Meta's opening brief ("Mem.") (ECF 2701), many of Dr. Adam Alter's opinions merely summarize the factual record and opine on state of mind. The AGs' opposition ("Opp.") (ECF 2774) simply disregards this Court's repeated instructions that experts cannot do so.

The AGs also fail to rebut that Alter's other opinions and all of Dr. Ravi Iyer's opinions are inadmissible, as they lack reliable bases, are unhelpful to the factfinder, opine on ultimate issues, apply incorrect legal standards, and/or are outside the expert's expertise. Those issues, which challenge the "sufficiency of an expert's basis" and "the application of [their] methodology," go to admissibility, not weight. *Engilis v. Monsanto Co.*, 151 F.4th 1040, 1049 (9th Cir. 2025).

## I.   Alter's Deception Opinions Should Be Excluded (Ops. A-H)

***Opinion that Meta Intended to Shape Consumer Perception (Op. D).*** Alter's opinion that Meta intended to shape consumer perception is improper state of mind testimony. Mem. at 2-3. Alter does not only opine on "advertising methodologies," Opp. at 5, but instead he opines on what Meta ████████████████████████████ Mem. Ex. 1 (Alter Rep.) ¶ 102. "No expert may testify [on] intent." *Rodriguez v. Google LLC*, 2025 WL 1569361, at *3 (N.D. Cal. June 2, 2025). That Alter purports to opine on *corporate* intent, Opp. at 5 n.2, is both wrong and irrelevant. Courts "regularly exclude" corporate state of mind opinions. *Courkamp v. Fisher-Price Inc.*, 2022 WL 4448323, at *7 (D. Ariz. Sept. 23, 2022); *see* ECF 2857 at 6 (excluding opinion on Meta's motivation).[1]

Opinion D is also impermissible factual narrative. Mem. at 3. The AGs argue that Alter can "discuss facts apropos to [his] opinions," Opp. at 3-5, but Alter's regurgitation of facts *is* his opinion, Mem. at 3; *see* Alter Rep. Section IX. The AGs concede that Alter will "synthesize" documents for the factfinder, Opp. at 3, 5, 6, which is precisely what Rule 702 prohibits. *See* Mem. at 3.[2]

***Opinion that Social Media Is a "Credence Good" (Op. A).*** Alter's "credence good" opinion is inadmissible because (i) Alter is unqualified to offer it, (ii) it lacks a reliable basis, and (iii) there is an "analytical gap" in his method. *See* Mem. at 3-5. The AGs' response that (ii) and (iii) go to weight, Opp. at 4, is wrong. The Supreme Court has held both issues go to admissibility. *See Engilis*, 151

---

[1] In neither *Montera v. Premier Nutrition Corp.* nor *Schwab v. Philip Morris USA, Inc.*, *see* Opp. at 5, did the movant move to exclude state of mind testimony. 2022 WL 1225031, at *5 (N.D. Cal. Apr. 26, 2022); 2005 WL 2401647, at *5 (E.D.N.Y. September 29, 2005).

[2] The AGs' cases do not show otherwise. *Capri Sun GmbH v. Am. Beverage Corp.* permitted a summary of voluminous *data* that would "confuse" the jury. 595 F. Supp. 3d 83, 133-34 (S.D.N.Y. 2022). And in *In re Tylenol (Acetaminophen) Mktg., Sales Pracs. & Prods. Liab. Litig.*, whether the expert was a conduit for facts was not at issue. 2016 WL 807377, at *5 (E.D. Pa. Mar. 2, 2016).

F.4th at 1047; *General Electric Co. v. Joiner*, 522 U.S. 136, 146 (1997).

The AGs claim that Alter is qualified to opine on whether social media is a credence good because that is a "recognized concept" in marketing textbooks. Opp. at 4. But Alter (and the AGs' sources) cite to *economic research* to support the classification of products as credence goods. *See* Alter Rep. ¶¶ 52-53, 55; Ex. 9 at 37, 64 n.12; Ex. 10 at 21, 534, 540. Alter is not an economist, and nothing he cites suggest that social media can be classified as a credence good based on the type of cursory analysis—devoid of empirical or economic analysis—that he does here.

***Opinion on Consumer Understanding (Ops. B, C, F, G).*** The AGs do not dispute that, if Alter's opinions on Meta's intent or "credence goods" are excluded, *supra*, his consumer understanding opinion should also be excluded. *See* Mem. at 7. As established, Alter's opinion on consumer understanding is inadmissible for several additional reasons. Mem. at 5-7.

*First*, Alter's "social influence analysis" ("SIA") framework is unreliable because he did not conduct a survey or any empirical analysis to evaluate consumer understanding. The AGs argue such analysis is not required, Opp. at 7, but fail to demonstrate that the "testimony is *otherwise reliable*." *Brown v. Google, LLC*, 2022 WL 17961497, at *11, n.8 (N.D. Cal. Dec. 12, 2022) (emphasis added).[3] Vague descriptions, such as "triangulating data" to evaluate "generalizations or hypotheses," Opp. at 6, only underscore Alter's lack of objective criteria. Alter fails to explain how "triangulation" led to his conclusions, making them *ipse dixit*. That his SIA is based on "scientific principles," Opp. at 6, is insufficient. Alter's testimony must reflect a "reliable *application*" of those principles to the facts of this case. Fed. R. Evid. 702(d). It does not.

*Second*, Alter's specific conclusions underscore their unreliability. Alter opines that consumers would interpret ▬▬▬▬▬▬▬▬▬▬▬▬▬▬, but provides *no support*, whether based on the SIA or otherwise. Mem. at 6. The AGs do not dispute this. For other statements, Alter opines that ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬, *id.*, which the AGs again do not dispute. These arbitrary approaches are unreliable and do not aid the factfinder. Indeed, the AGs concede that "the trier of fact could independently [analyze a statement] from the evidence," for any that survive summary judgment. *See* ECF 2779 at 11.

---

[3] In *In re Juul Labs, Inc. Mktg., Sales Pracs. & Prods. Liab. Litig.*, the expert relied on the defendant's own market research, including a survey. 2022 WL 1814440, at *3 n.4 (N.D. Cal. June 2, 2022).

*Third*, Alter impermissibly opines on what Meta and others meant when they used the words "addiction" or "addictive."  The AGs claim that Alter does not "interpret the subjective beliefs of the individual speakers," Opp. at 7-8, but his report says otherwise.  For example, he claims ████ ████████████████████████████████████████████████████████████████████ ████████████████████████ Alter Rep. ¶ 207 (emphasis added); *see also id.* ¶ 208.

*Fourth*, Alter employs an incorrect "reasonable consumer" standard because he includes the perspectives of "deciders and influencers" such as educators, doctors, and senators, Mem. at 7, who are *not* consumers here.  The AGs claim that including "deciders and influencers" "is relevant" "even if young users themselves have limited or no direct exposure to th[e] public messages."  Opp. at 8.  But nowhere does Alter opine specifically on how young users, the "end recipient[s]" of Meta's statements, Opp. at 8, would have understood them; indeed, the AGs disclaim that Alter offers any opinion on how a statement was disseminated beyond its original audience.  *See infra* at 4.

**Opinion that Statements Have a Tendency to Mislead (Ops. E, G).**  Alter cannot opine on whether Meta's statements are "false" or have the "tendency to mislead" because (i) those are judicially defined terms and (ii) Alter's comparative analysis would not help the factfinder.  Mem. at 7-8.  Contrary to the AGs' assertion, Opp. at 9-10, whether a statement is false or misleading is the *central* determination of a deception claim.  By using "judicially defined terms" like "false and deceptive," Alter draws "an improper legal opinion that usurps the role of the court."  *In re ConAgra Foods, Inc.*, 302 F.R.D. 537, 558 (C.D. Cal. 2014).[4]  Nor is Alter offering a "marketing or consumer psychology" opinion.  Opp. at 9-10.  He merely █████████████████████████ ████████████████████████████████████████.  *See, e.g.*, Alter Rep. Op. G, ¶ 167-68.  A factfinder can make that comparison themselves for any statements proceeding to trial.  *See* Mem. at 8.  Alter's extended factual narrative confirming the AGs' assumptions is also inadmissible.  *Id.*

**Opinion on Consumer Exposure to Statements (Op. H).**  Meta also demonstrated the inadmissibility of Alter's exposure opinion.  Mem. at 8-9.  The AGs do not dispute that Alter offers no support for the ██████████ he used to measure dissemination or that he fails to quantify exposure.

---

[4] The AGs' cases are unavailing.  In *In re JUUL Labs, Inc., Mktg. Sales Pracs. & Prods. Liab. Litig.*, the admissibility of testimony on legal issues was not before the court.  609 F. Supp. 3d 942, 1007-10 (N.D. Cal. 2022).  And *Vizcarra v. Michaels Stores, Inc.*, 2025 WL 1561530 (N.D. Cal. June 2, 2025) is contrary to the weight of authority in this Circuit prohibiting opinions like Alter's.  *See* Mem. at 8.

Mem. at 8-9.  Instead, they narrowly construe the opinion to consist only of "informal" research and discussions to "identify[] illustrative examples" of message dissemination, Opp. at 8-9, an unreliable approach that contains no meaningful substance that could assist a factfinder, *id.* at 9.

## II.    Alter's COPPA Opinions Should Be Excluded (Ops. L-P)

***Opinion that Meta Intended to Attract U13s (Ops. L, M, O).***  As demonstrated, Alter's opinion that Meta ███████████████████████████████ is inadmissible intent testimony.  Mem. at 9-10.  The AGs' response that Alter merely "focus[es] on Meta's strategic decisions," Opp. at 10, fails for the reasons above.  *See supra* at 1.  Alter also disregarded countervailing evidence of Meta's *ban* on U13s.  Mem. at 10.  The AGs' response that Alter considered the existence of U13 *users*, Opp. at 10, fails to address the point.  The AGs do not dispute that if this opinion is excluded, his child-directedness opinions must be as well.  *See* Mem. at 11.

***Opinion that Meta's Platforms Are Directed to Children (Ops. M-P).***  Alter's opinions that the platforms are "directed to children" are impermissible legal conclusions.  Mem. at 10.[5]  Despite the AGs' assertion, Alter is not using "language common in his industry."  Opp. at 10-11.  He simply copies the standards from COPPA.  *Compare* Alter Rep. at 395 (███████████████████ ██████████████████████████) *with* 16 C.F.R. § 312.2 (███████████████).  Alter also draws the improper legal conclusion that one user page is a "portion" of a platform.  Mem. at 10.  Contrary to the AGs' assertion, Opp. at 11, this Court never held as much, *see* ECF 1214 at 21.

Alter's child-directedness opinions are also unreliable.  *First*, Alter concludes that anything that appeals to teens *automatically* appeals to U13s, which imposes liability for facially lawful conduct.  Mem. at 11.  The AGs respond that COPPA guidance "warns" that teen services "may be considered" child-directed.  Opp. at 11; Opp. Ex. 7 at 29.  But the guidance only states that a teen website may be "directed to children" if it "attract[s] a substantial number" of U13s.  Opp. Ex. 7 at 29.  It does *not* state that appealing to teens automatically appeals to U13s.  *Second*, Alter bases his opinion on a  cherry-picked sample of just 10 user accounts.  Mem. at 11.  The AGs assert these accounts "illustrate[] how the platform appeals" to U13s, Opp. at 11, but they cannot reliably do so because they are not representative of all user accounts.  Nor, in analyzing them, does Alter apply the "totality of the circumstances" analysis COPPA requires.  *See* Opp. Ex. 7 at 31.  *Third*, the AGs do

---

[5] That Meta's rebuttal expert also opines on child-directedness, Opp. at 11 n.4, does not render Alter's opinion admissible.  If Alter is permitted to testify, Meta should have the opportunity to respond.

4

not dispute that Alter's "estimate" of audience composition is unreliable because it merely "report[s]" preexisting studies' results. *In re ConAgra*, 302 F.R.D. at 555-56; Mem. at 11-12.

### III.    Iyer's Opinions Are Unreliable and Unhelpful

Iyer opines that Meta's safety tools "insufficient[ly]" mitigate harm and proposes a "feasible" alternative of removing any allegedly harmful features to achieve "sufficient" mitigation. Mem. at 12-14. Those opinions are unreliable and thus unhelpful.[6] *Id.* Contrary to the AG's position, Opp. at 13, these flaws go to admissibility, not weight. *See supra* at 1-2.

*First*, as demonstrated, Iyer's method was unreliable. He conducted no proper literature review and cherry-picked his sources. Mem. at 13. Regardless of his "extensive knowledge of the literature," Opp. at 12, the bulk of the materials he considered comprised ███████████████████████ ██████████████████████████, Mem. at 13; Mem. Ex. 2 (Iyer Rep.) App. A. The AGs claim that Iyer did not cherry-pick sources, Opp. at 12, but Iyer conceded that ██████████████ ██████████████████████████, Ex. 11 (Iyer Dep.) 392:23-393:10.

*Second*, as Meta showed, Iyer's methodology, if any, is unreliable: He conducted no testing and provided no error rate, quantification, or benchmark to ground his opinions. Mem. at 13-14. The AGs' claim that Iyer is not required to do so because his testimony is experience-based, Opp. at 13 (citing *United States v. Hankey*, 203 F.3d 1160, 1169 (9th Cir. 2000)), but unlike the expert in *Hankey,* Iyer's opinions are plainly scientific. Even so, Iyer also fails the relevant reliability inquiry for experience-based testimony, which requires considering, e.g., if "the expert's reasoning is circular, speculative, or otherwise flawed; or whether [it] is adequately explained." *United States v. Holguin*, 51 F.4th 841, 855 (9th Cir. 2022) (citations omitted). Iyer could not explain what "sufficient mitigation" meant, just that ████████████████████████████████ Mem. at 12. Nor could he define "feasible" or explain what it required. *Id.* at 14. Iyer's opinions are mere *ipse dixit*—"a black box into which data is fed at one end and from which an answer emerges at the other." *Open Text S.A. v. Box, Inc.*, 2015 WL 349197, at *6 (N.D. Cal. Jan. 23, 2015).

### CONCLUSION

Meta respectfully requests that the Court exclude the opinions of Dr. Alter and Dr. Iyer.

---

[6] Meta has not waived any arguments and maintains that all of Iyer's opinions lack a reliable method and are thus unhelpful to the factfinder. *See* Mem. at 14 ("Iyer provides no benchmark, definition, test, or framework for his determination of what is, or is not, 'feasible.'").

Dated:  March 27, 2026

Respectfully submitted,

DAVIS POLK & WARDWELL LLP

*/s/ Antonio J. Perez-Marques*

James P. Rouhandeh, *pro hac vice*
Antonio J. Perez-Marques, *pro hac vice*
Caroline Stern, *pro hac vice*
Corey M. Meyer, *pro hac vice*
450 Lexington Avenue
New York, New York 10017
Telephone: (212) 450-4000
Facsimile: (212) 701-5800
rouhandeh@davispolk.com
antonio.perez@davispolk.com
caroline.stern@davispolk.com
corey.meyer@davispolk.com

COVINGTON & BURLING LLP

Ashley M. Simonsen, SBN 275203
COVINGTON & BURLING LLP
1999 Avenue of the Stars
Los Angeles, California 90067
Telephone: (424) 332-4800
Facsimile: (424) 332-2749
asimonsen@cov.com

Paul W. Schmidt, *pro hac vice*
Phyllis A. Jones, *pro hac vice*
One CityCenter
850 Tenth Street, NW
Washington, DC 20001-4956
Telephone: (202) 662-6000
Facsimile: (202) 662-6291
pschmidt@cov.com
pajones@cov.com

*Attorneys for Defendants Meta Platforms, Inc. and Instagram, LLC.*