# Exhibit 171

[*Submitting Counsel on Signature Page*]

# IN THE UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| People of the State of California, et al.<br><br>    v.<br><br>Meta Platforms, Inc., Instagram, LLC, Meta Payments, Inc., Meta Platforms Technologies, LLC<br><br>------------------------------------------------------<br><br>Office of the Attorney General, State of Florida, Department of Legal Affairs<br><br>    v.<br><br>Meta Platforms, Inc., Instagram, LLC, Meta Payments, Inc.<br><br>------------------------------------------------------<br><br>State of Montana, ex rel. Austin Knudsen, Attorney General<br><br>    v.<br><br>Meta Platforms, Inc., Instagram, LLC, Facebook Holdings, LLC, Facebook Operations, LLC, Meta Payments, Inc., Meta Platforms Technologies, LLC, Siculus, Inc.<br><br>------------------------------------------------------<br><br>IN RE: SOCIAL MEDIA ADOLESCENT ADDICTION/PERSONAL INJURY PRODUCTS LIABILITY LITIGATION<br><br>THIS DOCUMENT RELATES TO:<br><br>4:23-cv-05448, 4:23-cv-05885. | MDL No. 3047<br><br><br>Case Nos.: 4:23-cv-05448-YGR<br>4:23-cv-05885-YGR<br><br>**STATE ATTORNEYS GENERAL'S RESPONSE TO META DEFENDANTS' FIRST SET OF INTERROGATORIES**<br><br>Judge: Hon. Yvonne Gonzalez Rogers<br><br>Magistrate Judge: Hon. Peter H. Kang |

harmful experiences on its Platforms;

- Meta's public statement that "[p]rotecting our community is more important than maximizing profits," when in fact Meta has rejected safety features that would impact engagement, such as Project Daisy or removing cosmetic surgery filters;

- Meta's representations that "[w]e will delete the account if we can't verify the account is managed by someone over 13 years old," when in fact Meta employees do not follow this policy; and

- Statements by a Meta executive that the goal of its Platforms' algorithms is "not to keep you glued to your smartphone for hours on end," when in fact the algorithm collects data from users to fuel "preference amplification" so that users engage with the Platforms for longer periods.

Additional examples of the express and implied misrepresentations and omissions relating to Defendants' Platforms for which Plaintiff seeks relief include, but are not limited to, those described in the following paragraphs of the Complaint filed in this action: 85, 122-23, 125-28, 137, 167, 169, 173-74, 187-88, 191-92, 222-23, 265, 287, 294, 331, 334-36, 414, 419, 425, 427, 448, 465, 473, 499, 562, 565, 571, 592-93, 597, 604, 643, 648, 664, 669, 685, 712, 729, 743, 792, 829.

State AGs reserve the right to supplement their response to this Interrogatory.

**Interrogatory No. 4:**

Identify all "unfair," "deceptive," and/or "unconscionable" practices or acts Plaintiff alleges Defendants engaged in that Plaintiff alleges violated the Consumer Protection Act and any State law under which Plaintiff seeks to recover.

**Response:**

State AGs object to Interrogatory No. 4 as premature to the extent it purports to require

Plaintiffs to marshal all proof Plaintiffs intend to offer at trial well before the parties' discovery cutoff in this case. *See, e.g., Loeber*, 2023 WL 4703329, at *2. State AGs further object to the extent Interrogatory No. 4 would require State AGs to provide information relating to expert opinion or testimony that is not due to be disclosed until the parties' exchange of expert disclosures.

Subject to and without waiving their general and specific objections to this Interrogatory, State AGs respond as follows.

Meta engaged in deceptive acts and practices by deceiving consumers, including young users and parents, about the design, safety, and harmful impact of its Platforms through many statements made in different forums over the course of several years. State AGs incorporate by reference the Response to Interrogatory No. 3 above.

Meta engaged in unfair and unconscionable acts and practices by capitalizing on young users' vulnerabilities and encouraging their compulsive and harmful use of its Platforms. For example:

*First*, Meta targets its Platforms to young users while knowingly designing its Platforms to include features that Meta knows to be psychologically and physically harmful to young users—including features known to promote compulsive, prolonged, and unhealthy use by young users. (*See, e.g.*, Complaint Paragraphs 68-85.) In addition, Meta incentivizes its employees to develop ways to increase the time that young users spend on its Platforms.

*Second*, Meta utilizes Platform features that unfairly and/or unconscionably harm young users. These features include infinite scroll, ephemeral content features, autoplay, quantification and display of "Likes," and disruptive alerts, all of which are unfairly and/or unconscionably utilized by Meta to extract additional time and attention from young users whose developing brains are not equipped to resist those manipulative tactics. Meta designed content-presentation formats, such as infinite scroll, to discourage young users' attempts to self-regulate and disengage

from its Platforms. (*See, e.g.*, Complaint Paragraphs 91-94.)

Meta is aware both that young users have a propensity to compare themselves to peers, and that quantification and public display of Like counts on its Platforms are harmful to young users' mental health. (*See, e.g.*, Complaint Paragraphs 226-298.) Social comparison through features such as Likes, however, is also associated with greater time spent on Meta's Platforms. Although Meta studied the effects of Like counts in Project Daisy, including receiving continual advice from experts that Daisy should be on by default for teens, Meta declined to remove Like count visibility by default for any users.

*Third*, Meta designed, developed, and deployed disruptive audiovisual and vibration notifications and alerts and ephemeral content features in a way that unfairly and/or unconscionably exploits young users' psychological vulnerabilities and cultivates a sense of "fear of missing out" in order to induce young users to spend more time than they would otherwise choose on Meta's Platforms. Meta designed ephemeral content so that young users open Meta's Platforms more frequently in order to not "miss out" on any new content. (*See, e.g.*, Complaint Paragraphs 97-101.)

Meta employs incessant notifications that recall young users' attention back to its Platforms when they are engaging in other activities, such as attending school. (*See, e.g.*, Complaint Paragraphs 299-332.) For example, the default notifications for Instagram include haptic alerts (vibrate or pulse), banner notifications, sounds notifications, badge notifications (persistently displayed red indicator encircling a number representing certain events that have not yet been viewed by the user), and email notifications. These notifications are especially intrusive and harmful for young users, who are particularly vulnerable to distraction and psychological manipulation.

Meta actively chooses to retain Platform features it knows promote eating disorders,

despite expert warnings about the resulting harms to young users. (*See, e.g.*, Complaint Paragraphs 333-368.) For example, Meta knows that the use of beautification and other camera filters on its Platforms is associated with body image issues, body dysmorphia, and a decrease in young users' well-being.  Nevertheless, Meta continues to provide young users on its Platforms with access to such features, including visual filters that simulate plastic surgery.

*Fourth*, Meta algorithmically serves content to young users according to "variable reinforcement schedules."  Meta thereby manipulates dopamine releases in young users, unfairly or unconscionably inducing them to repeatedly engage with its Platforms—much like a gambler at a slot machine. Meta knows its Recommendation Algorithms trigger intermittent dopamine releases in young users whose developing brains are especially susceptible to such tactics. (*See, e.g.*, Complaint Paragraphs 162-165.) Moreover, Meta uses data harvested from young users to target their engagement on an individual level via its Recommendation Algorithms—making continued engagement even more difficult for young users to resist. (*See, e.g.*, Complaint Paragraphs 166-175.)

*Fifth*, Meta collects the personal information of under-13 users of Instagram and Facebook without first obtaining verifiable parental consent, which violates the Children's Online Privacy Protection Act ("COPPA") and the COPPA Rule. Meta routinely obtains actual knowledge that users on Instagram and Facebook are under 13 years old, and it targets children as users of Instagram and Facebook, making the Platforms directed to children. (*See, e.g.*, Complaint Paragraphs 631-835.) Meta fails to first provide sufficient notice to parents of its data collection, use and disclosure practices, as well as parents' right to review or delete their children's information.

Meta has actual knowledge that children under the age of 13 are on Instagram. (*See, e.g.*, Complaint Paragraphs 646-745 and 814.)  This knowledge is demonstrated, for example, by

Meta's charts boasting Instagram's penetration into 11- and 12-year-old demographic cohorts, an internal report presented to Zuckerberg regarding the four million under-13 users on Instagram, emails and policies documenting Meta's mishandling of known under-13 user accounts, discussions among Meta's researchers taking pains to avoid uncovering Instagram's under-13 users through their studies, documents admitting that Instagram's registration process regularly elicits false self-reported ages from its under-13 users, and data from Meta's age-estimation algorithms confirming that millions of individual Instagram accounts belong to children under the age of 13.

Further, Meta directs Instagram and Facebook to children, in whole or in part, through the child-oriented design, content, and information appearing on its Platforms (*See, e.g.*, Complaint Paragraphs 794-805 and 828-31.) Examples include, but are not limited to, the thousands of child-oriented pages and accounts that Instagram and Facebook host and promote, advertisements that feature or are directed to children, such as children's television and movies, and child or child-oriented models and celebrities featured on the Platforms. Meta's account registration process, which did not include an age gate for many years, and then included a faulty system that was easily bypassed by children, further demonstrates Meta's targeting of children. (*See, e.g.*, Complaint Paragraphs 667-770.) Children are also an intended and actual audience of Instagram and Facebook, as demonstrated through, among other things, internal communications and research describing Meta's overt efforts to design its Platforms in ways that would reach and be appealing to children. (*See, e.g.*, Complaint Paragraphs 771-793, 823-827.)

*Sixth*, Meta engaged in the acts and practices discussed above despite research showing that young people's use of Meta's Platforms is associated with depression, anxiety, insomnia, eating disorders, suicide, interference with education and daily life, and many other negative outcomes. Internal studies that Meta commissioned (which were kept private until they were

leaked by a whistleblower) reveal that Meta has known for years about the serious harms associated with young users' time spent on its Platforms. These physical and mental harms are particularly acute for young users, who are less able than adults to self-regulate the time they spend on Meta's Platforms.

State AGs reserve the right to supplement their response to this Interrogatory.

**Interrogatory No. 5:**

State the number of violations of the Consumer Protection Act Plaintiff alleges Defendants committed and explain how this number was determined.

**Response:**

State AGs object to Interrogatory No. 5 as premature, as it purports to require Plaintiffs to marshal all proof Plaintiffs intend to offer at trial well before the parties' discovery cutoff in this case. *See, e.g.*, *Loeber*, 2023 WL 4703329, at *2. State AGs further object to the extent Interrogatory No. 5 would require State AGs to provide information relating to expert opinion or testimony that is not due to be disclosed until the parties' exchange of expert disclosures.

Subject to and without waiving their general and specific objections to this Interrogatory, State AGs will not agree to provide a further response to this Interrogatory at this time. Potentially responsive information is the subject of ongoing fact and testimonial discovery, research, and/or expert analysis. State AGs reserve the right to supplement their response to this Interrogatory.

**Interrogatory No. 6:**

Specify each category of cost, expenditure, damage, loss, harm, penalty, or relief for which Plaintiff seeks equitable or monetary relief. For each category, identify and fully describe the dollar amount and how it was calculated and all Persons with knowledge about the cost, expenditure, damage, loss, penalty, or harm and/or its computation.

**Response:**