[*Parties and Counsel Listed on Signature Pages*]

## IN THE UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: SOCIAL MEDIA ADOLESCENT ADDICTION/PERSONAL INJURY PRODUCTS LIABILITY LITIGATION <br><br> THIS DOCUMENT RELATES TO: <br><br> *People of the State of California, et al. v. Meta Platforms, Inc., et al.* | MDL No. 3047 <br><br> Case Nos. 4:22-md-03047-YGR-PHK <br> 4:23-cv-05448-YGR <br><br> **STATE AGS' OPPOSITION TO META'S AMENDED OMNIBUS MOTION TO SEAL (META'S AND STATE AGS' MOTIONS FOR SUMMARY JUDGMENT)** <br><br> Judge: Hon. Yvonne Gonzalez Rogers <br><br> Magistrate Judge: Hon. Peter H. Kang |

## I.    INTRODUCTION

Meta's sealing proposals are not based on legitimate legal grounds, but are instead intended to influence public perception of the company. No compelling reasons exist to seal these materials, and any such reasons are outweighed by the public's interest in accessing information that goes to the heart of the merits of this government enforcement action that could significantly impact children's public health. Unsealing this material now will also prevent unnecessary sealing disputes leading up to trial.

## II.    ARGUMENT

### A.    Meta Must Present Compelling Reasons for Sealing that Outweigh the Public Interest in Disclosure.

The "strong presumption in favor of access" to judicial records exists to "ensur[e] the public's understanding of the judicial process and of significant public events." *Kamakana v. City and Cnty. of Honolulu*, 447 F.3d 1172, 1177–79 (9th Cir. 2006) (internal citations and quotations omitted). Parties seeking to seal materials attached to dispositive motions must present "compelling reasons" for sealing that outweigh the public's interest in disclosure. *Id.* at 1179–80. This "high threshold" requires a showing of harm supported by specific factual findings, "without relying on hypothesis or conjecture." *Id.* at 1178–80. Sealing requests must also be narrowly tailored to only seek sealing of sealable material. Civil L.R. 79-5.

### B.    Meta Fails to Meet the High Threshold for Sealing Information about its Business.

<u>Exhibits 71 and 84 to Meta's MSJ and Exhibit 1 to the State AGs' Opposition to Meta's MSJ:</u> These exhibits contain two statistics showing the ▮▮▮▮▮▮▮▮▮▮ by U.S. youth and teens of certain safety features, including for the Daily Limit tool on Instagram and supervision through Family Center on Facebook. *See* ECF 2705-74 at PDF p. 4; 2705-87 at PDF p. 42; 2783-3 at PDF p. 158. Meta mischaracterizes these statistics, which are not "assessments of its content moderation tools" (*see* Mot. at 5), but rather are internal acknowledgements of the ▮▮▮▮▮▮▮▮▮▮ of youth who ▮▮▮▮ use the safety tools that Meta vaunts publicly as making the platforms safe for them. *See, e.g.*, ECF 2783-3, Alter Rep. ¶ 224.

Meta's claims of competitive risk are unpersuasive. It defies logic that competitors would use Meta's findings on the ▮▮▮▮▮ of its tools to gain a competitive advantage for their own versions. *Cf.*

1

*Apple v. Samsung Electronics Co.*, 727 F.3d 1214, 1128 (Fed. Cir. 2013) (Apple's disclosure of its research of new features would give "Apple's competitors a head-start"). Moreover, the State AGs claim that Meta designed its safety features as to not meaningfully impact metrics such as time spent. *See, e.g.*, ECF 2784-20, Narayanan Rep. ¶ 99. Therefore, these findings do not reveal any critical business insight.

Meta's assertions of competitive harm are further belied by the fact that many similar research findings for the same tools for slightly different time periods have already been made public. *See Kamakana*, 447 F.3d at 1184 (holding that public records should be unsealed because, among other reasons, some of the information sought to be sealed was "already publicly available" or publicly disclosed during the course of the lawsuit). Similar findings for both safety features were made public in Plaintiff's Exhibit 03559 in the *State of New Mexico v. Meta Platforms Inc*. trial and are now available online. *See* Beckett Decl., Ex. 1. For example, the exhibit includes the uptake of the Daily Limit tool by Instagram users aged 13-17 predicted to reside in the United States between January 8, 2023 and March 23, 2025. *Id.* at PDF p.12. Meta now seeks to seal the same statistic about the uptake through April 2024, despite the significant time overlap. *See* ECF 2783-3 at PDF p. 158; 2705-87 at PDF p. 42. Meta also seeks to seal the finding of youths' uptake of supervision through Family Center on Facebook from November 2024 through May 2025, when the same statistic for a slightly different time period on Instagram has already been made public. Exhibit 1 at PDF pp. 13, 15 (covering November 9, 2023 through March 22, 2025). Meta has not asserted any harm stemming from the publicly available research findings or explained why the findings at issue here would be any more likely to cause competitive harm. Meta's vague assertions of potential harm are far too attenuated and fail to sufficiently explain exactly how a competitor would use the information to obtain an unfair advantage in light of what has already been publicly disclosed. *See Hodges v. Apple, Inc.*, 2013 WL 6070408, at *2 (N.D. Cal. Nov. 18, 2013) (denying motion to seal because Apple failed to explain "how a competitor would use th[e] information to obtain an unfair advantage").

Most importantly, any competitive risks are vastly outweighed by the public's interest in these findings. Unlike in *Apple v. Samsung Electronics Co.*, where information sought to be sealed was not cited by the parties or the lower court, *see* 727 F.3d at 1228, both parties cite uptake statistics about

Instagram's Daily Limit tool in their papers, and the State AGs specifically rely on the same statistic at issue here. *See* ECF 2704 at 25; ECF 2779 at 21 n.2. The statistics about the uptake of the Family Supervision tool were included by Meta in Exhibit 71 to their MSJ and provide important context to the State AGs' claims regarding Meta's misrepresentations as to the safety of its platforms. *See* ECF 2705-74. The balancing of interests favors unsealing these statistics.

Exhibit 30 to the State AGs' Opposition to Meta's MSJ: Meta also seeks to seal its research findings relating to problematic use for youth and adults on Facebook and Instagram and graphs that make it easy for the public to understand the findings. *See* ECF 2784-7.

Meta's cursory claims of potential competitive harm are undermined by the fact that a portion of the findings in the presentation, including the rates of low attentiveness and higher life interference from teens' use of Instagram, are already publicly available in the State AGs' Opposition to Meta's MSJ and Meta did not seek to seal the same information in Exhibit 24 to the State AGs' Opposition to Meta's MSJ. *See* ECF 2832 at 27; ECF 3006 at 2. Meta has not sufficiently asserted why the additional findings should be treated differently, when all of the findings are highly material to the public's understanding of the State AGs' claims. Although the Court granted an ultimately unopposed request to seal the same material in the School District cases, the sealing request here *is* opposed. Moreover, the public interest is greater in this case brought by 29 State AGs and clearly outweighs any potential competitive harm. The exhibit must be unsealed entirely.

Exhibit 39 to the State AGs' Opposition to Meta's MSJ: Meta seeks to redact certain 2023–2026 milestones for Facebook, Messenger, Meta's Discovery Engine, and Reels that Meta set in 2022 (and are thus almost four years outdated). *See* ECF 2784-16. Given that the document was created and modified in 2022, the Court's guidance to Meta and other plaintiffs about certain business information within the last three years being more likely to be sealable does not support Meta's sealing position here. *See* ECF 2757-3 at 5; Jan. 26, 2026 CMC Tr. 235:3-8. Contrary to Meta's assertions, most of these milestones reveal higher-level goals, such as goals that ███████████████████, that a competitor could likely guess. All milestones are highly relevant to the State AGs' claims that Meta prioritizes teen

engagement. Moreover, Judge Kuhl rejected the same arguments about competitive harm brought here by Meta in the JCCP. *See* ECF 3014-2 at 17. The balancing of interests favors unsealing.

Exhibit 8 to the AGs' Reply ISO Motion for Partial Summary Judgment: Meta seeks to seal information showing a handful of ███████████████████████████████████████████████, and vice versa. The State AGs' reply cites this information to show how Meta ██████████████████████████████████ . *See* ECF 2899-1 at 39. Meta's cursory rationale that public disclosure of this information would give competitors a "roadmap" to undercut Meta competitively is incorrect. The information contained in this exhibit provides only a high-level understanding of the ████████████ of certain information, unlike the information at issue in the patent case cited by Meta that contained an architecture of the relevant technology. *See Synchronoss Techs., Inc. v. Dropbox, Inc.*, 2017 WL 11527607, at*2 (N.D. Cal. Dec. 27, 2017). Furthermore, Meta's request is not narrowly tailored. The State AGs already stipulated to certain redactions that could potentially be commercially sensitive. Meta insists on sealing the evidence that the State AGs rely on to illustrate Meta's knowledge and use of U13 user data, a material element of the State AGs' COPPA claims. That information must be unsealed.

Exhibit 43 to the State AGs' Opposition to Meta's MSJ: Meta seeks broad redactions that encompass non-specific overviews of how its algorithm works and employee admissions as to Meta's efforts to maximize engagement for teens. *See* ECF 2784-20 at PDF pp. 7, 9, 12, 22, 24, 26-27. None are justified by Meta's assertions of potential harm. For example, Meta's claim that competitors can use the information to "improve, refine, and create" their own algorithms that they wouldn't otherwise be able to is not actually supported in its declaration (*see* Eulenstein Decl. ¶ 4). Meta's claim also falls apart in the context of what is revealed in the rest of the report, including other employee admissions and general descriptions about how the algorithm works, which the parties agreed will be public. *See, e.g.*, ECF 2784-20 at PDF pp. 4-6, 9, 12; ECF 3163 at 35. Moreover, Meta seeks to redact information about the high-level workings of and signals used in its algorithm that are publicly available on Meta's website. *See, e.g.*, Beckett Decl., Ex. 2. The State AGs already stipulated to certain redactions that could potentially be commercially sensitive. Meta's proposed redactions are not narrowly tailored, cannot

4

meet the "compelling reasons" standard, and the significant public interest in accessing this information outweighs any risk of competitive harm.  That the Court previously granted an unopposed request to seal the exhibit as to other plaintiffs does not change the analysis.

## III.    CONCLUSION

The public's interest in accessing the information contained in these exhibits and the corresponding filings significantly outweighs any reasons that Meta identified to seal them. Meta's motion must be denied.

Dated: June 24, 2026                                    Respectfully submitted,

                                                        By:  */s/ Samantha Beckett*

                                                        **ROB BONTA**
                                                        Attorney General
                                                        State of California

                                                        Nicklas A. Akers (CA SBN 211222)
                                                        Senior Assistant Attorney General
                                                        Bernard Eskandari (SBN 244395)
                                                        Emily Kalanithi (SBN 256972)
                                                        Supervising Deputy Attorneys General
                                                        Nayha Arora (CA SBN 350467)
                                                        Megan O'Neill (CA SBN 343535)
                                                        Joshua Olszewski-Jubelirer (CA SBN 336428)
                                                        Brendan Ruddy (CA SBN 297896)
                                                        Samantha Beckett (CA SBN 308456)
                                                        Katherine Read (CA SBN 341463)
                                                        Deputy Attorneys General
                                                        California Department of Justice
                                                        Office of the Attorney General
                                                        455 Golden Gate Ave., Suite 11000
                                                        San Francisco, CA 94102-7004
                                                        Phone: (415) 510-4400
                                                        Fax: (415) 703-5480
                                                        Megan.Oneill@doj.ca.gov

                                                        *Attorneys for Plaintiff the People of the State of California*

**PHILIP J. WEISER**
Attorney General
State of Colorado

*/s/ Krista Batchelder*
Krista Batchelder, CO Reg. No. 45066,
*pro hac vice*
Deputy Solicitor General
Shannon Stevenson, CO Reg. No. 35542, *pro hac vice*
Solicitor General
Elizabeth Orem, CO Reg. No. 58309, *pro hac vice*
Assistant Attorney General
Colorado Department of Law
Ralph L. Carr Judicial Center
Consumer Protection Section
1300 Broadway, 7th Floor
Denver, CO 80203
Phone: (720) 508-6651
krista.batchelder@coag.gov
Shannon.stevenson@coag.gov
Elizabeth.orem@coag.gov

*Attorneys for Plaintiff State of Colorado, ex rel.*
*Philip J. Weiser, Attorney General*

**RUSSELL COLEMAN**
Attorney General
Commonwealth of Kentucky

*/s/ Philip Heleringer*
J. Christian Lewis (KY Bar No. 87109),
*Pro hac vice*
Philip Heleringer (KY Bar No. 96748),
*Pro hac vice*
Zachary Richards (KY Bar No. 99209),
*Pro hac vice*
Daniel I. Keiser (KY Bar No. 100264),
*Pro hac vice*
Matthew Cocanougher (KY Bar No. 94292),
*Pro hac vice*
Assistant Attorneys General
1024 Capital Center Drive, Suite 200
Frankfort, KY 40601
CHRISTIAN.LEWIS@KY.GOV
PHILIP.HELERINGER@KY.GOV
ZACH.RICHARDS@KY.GOV

6

DANIEL.KEISER@KY.GOV
MATTHEW.COCANOUGHER@KY.GOV
Phone: (502) 696-5300
Fax: (502) 564-2698

*Attorneys for Plaintiff the Commonwealth of Kentucky*

**JENNIFER DAVENPORT**
Attorney General
State of New Jersey

*/s/ Kashif T. Chand*
Kashif T. Chand (NJ Bar No. 016752008),
*Pro hac vice*
Assistant Attorney General
Thomas Huynh (NJ Bar No. 200942017),
*Pro hac vice*
Section Chief, Deputy Attorney General
Verna J. Pradaxay (NJ Bar No. 335822021),
*Pro hac vice*
Mandy K. Wang (NJ Bar No. 373452021),
*Pro hac vice*
Deputy Attorneys General
New Jersey Office of the Attorney General,
Division of Law
124 Halsey Street, 5th Floor
Newark, NJ 07101
Tel: (973) 648-2052
Kashif.Chand@law.njoag.gov
Thomas.Huynh@law.njoag.gov
Verna.Pradaxay@law.njoag.gov
Mandy.Wang@law.njoag.gov

*Attorneys for Plaintiffs New Jersey Attorney General
and the New Jersey Division of Consumer Affairs
Jennifer Davenport, Attorney General for the State of
New Jersey, and Jeremy E. Hollander, Acting Director
of the New Jersey Division of Consumer Affairs*

7

**SIGNATURE CERTIFICATION**

Under Civ. L.R. 5-1(i)(3),  I, Samantha Beckett, hereby attest that all signatories listed, and on whose behalf the filing is submitted, concur in this filing's content and have authorized this filing.

DATED: June 24, 2026                                    */s/ Samantha Beckett*

STATE AGS' OPPOSITION TO META'S AMENDED OMNIBUS MOTION TO SEAL
Case Nos. 4:22-md-03047-YGR-PHK; 4:23-cv-05448-YGR