# Exhibit E

CONFIDENTIAL

Page 1

SUPERIOR COURT OF THE STATE OF CALIFORNIA
FOR THE COUNTY OF LOS ANGELES

_____ |
COORDINATION PROCEEDING          | JUDICIAL COUNCIL
SPECIAL TITLE [RULE 3.400]       | COORDINATION PROCEEDING
                                 | NO. 5255
IN RE: SOCIAL MEDIA              |
ADOLESCENT ADDICTION             | Lead Case Number For
(JCCP No. 5255)                  | Filing Purposes:
_____ | 22STCV21355
                                 |
THIS DOCUMENT RELATES TO:        | Assigned Coordination
                                 | Hon. Carolyn B. Kuhl
Christina Arlington Smith,       | SSC-12
et al., v. TikTok Inc.,          |
et al.,                          |
Case No. 22STCV21355,            |
Los Angeles Superior Court       |
_____ |

          The VIDEOTAPED DEPOSITION of COLIN GRAY,
Ph.D., VOLUME I, taken before BARBARA A. PERKOVICH,
CSR Number 084-004070, Certified Shorthand Reporter
within and for the State of Illinois, at 10 North
Dearborn Street, 7th Floor, Chicago, Illinois, on
August 13, 2025, at 9:00 a.m.

Page 244

A. I do.

Q. And is that a true statement; you're not proposing any specific age verification method that you say meta should have been using?

A. What I'm saying there is Meta has a demonstrable failure of age verification that have millions of under 13 users on the platform, and millions of users under the age of 18 on their platform that are presenting as adults via the metadata that's assigned to their accounts and that some methods should be used to address that threat and that there are many different mechanisms that should have been pursued with vigor by Meta that were just not.

MR. SCHMIDT: Move to strike as nonresponsive.

BY MR. SCHMIDT:

Q. Are you saying, "Here is the specific method Meta should be using to undertake age verification but is not"? Is that an opinion you're giving?

A. I'm giving an opinion that there are many different mechanisms that can be used for age verification, and that Meta did not pursue any of them with enough -- enough vigor to actually make

CONFIDENTIAL

Page 245

an impact on the numbers of underage users that were on the platform.

Q.    What method should Meta have used?  Are you giving -- in your opinion?

A.    So my opening report is focusing on the -- found that Meta's platform was unsafe for teenagers and child users and that age verification is one key component of that failure, not only having them on the platform, but if somebody has a different age -- real age than what they're impersonating as on the platform, then all of the other features used to -- what Meta called safety features also tend to fail, because then the opt-in ages or default ages are -- are also incorrect.

I'm arguing in my report, and in this statement right here, that there are a number of specific methods that should have been pursued in a much more substantial way by Meta to ensure the safety of the platform.

MR. SCHMIDT:  Move to strike as completely nonresponsive.

BY MR. SCHMIDT:

Q.    Are you giving an opinion that Meta should have adopted a specific means of age

CONFIDENTIAL

Page 255

A.      Yes, I see that.

Q.      Couple questions on that point.  First, do you know whether the FTC has said that companies may accept the accuracy of self-reported age?

A.      I did not reference any of these specific FTC guidelines that you are referring to in preparation for this report.

Q.      Do you know outside of this report whether the FTC has said that companies may assume the accuracy of self-reported age?

A.      I can't comment on that.

Q.      Are you aware that there are people who, with all kinds of services that ask for age, put in erroneous ages when they sign up for accounts?

A.      I'm sure that that behavior happens.

Q.      Have you done any analysis to see whether for any of the companies at issue here, the percentage of their users who report false ages is higher or lower than the average in the industry?

A.      It's not a question I pursued in my opening report.  I was focused quite narrowly on whether the platform was producing harms, and

CONFIDENTIAL

Page 256

having people who are misrepresenting their age is a substantial harm to users that are under the age of 13 and under the age of 18.

And as I mentioned previously, it impacts the efficacy of all these other safety features that Meta has incorporated in their platform over this period of years, either as opt-in or opt-out.

MR. SCHMIDT:  Move to strike the speech beginning, "It's not a question I pursued in my opening report."

BY MR. SCHMIDT:

Q.   Did you analyze any data that lets you say whether Meta has a higher percentage of under-13 users than the average website that tries to keep 13-year-olds off their websites?

A.   That is not a question that I evaluated in my opening report.

Q.   Did you evaluate that anywhere else?

A.   Did I evaluate what anywhere else?

Q.   That question I just asked you.

A.   As I mentioned, it's not a question that I pursued.

Q.   Have you done that for TikTok, Snapchat, or YouTube?

CONFIDENTIAL

Page 258

A.      I would have to look at the specific document to see what the specific causation factors are.

Q.      Do you know whether that backlog was resolved?

A.      I cannot speak to whether the backlog was resolved or not.

Q.      Did you make an effort to look to see, there's a backlog here, did they fix it, and how quickly did they fix it?

A.      I think I addressed this point in a little bit more detail in my rebuttal report.

Q.      Where -- where do you do that?  And I'm asking specifically about the backlog that you cite being resolved.

A.      Oh, I don't think I addressed the backlog specifically.  My understanding is that there -- there were lots of administrative hurdles internally at Meta that were keeping them from adequately resourcing the underage enforcement.

And certainly when I reviewed things about the underage reporting flow, there were also concerns about them getting too many requests for underage reporting, so they made it a more difficult process than this needed to be.