# Exhibit I

Highly Confidential

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| *PEOPLE OF THE STATE OF CALIFORNIA, et al.,*<br>Plaintiffs,<br><br>v.<br><br>*META PLATFORMS, INC, Instagram, LLC, Meta Payments, Inc., Meta Platforms Technologies, LLC., et al.,*<br>Defendants<br><br><br>IN RE: SOCIAL MEDIA ADOLESCENT ADDICTION/PERSONAL INJURY PRODUCTS LIABILITY LITIGATION<br><br>THIS DOCUMENT RELATES TO:<br>4:23-cv-05448 | MDL No. 3047<br><br>Case No. 4:23-cv-05448-YGR<br><br>Judge: Hon. Yvonne Gonzalez Rogers<br><br>Magistrate Judge: Hon. Peter H. Kang |

**TRIAL REPORT OF ADAM L. ALTER, PH.D.**
**August 1, 2025**

Highly Confidential

     i.     Meta identified and promoted content and influencer accounts that appealed to tweens ................................................................................................ 295

       ii. Advertisements on Instagram target children and promote child-oriented content..... ........................................................................................................... 302

D. Evidence from internal and external sources confirm children under the age of 13 use Instagram................................................................................................ 309

**XVIII.  EVALUATION OF THE CHILD-DIRECTEDNESS OF PORTIONS OF INSTAGRAM.......................................................................................... 312**

A. Piper Rockelle................................................................................... 312

B. Tydus Talbott.................................................................................... 320

C. Kids Diana Show .............................................................................. 324

D. Faye Knightly................................................................................... 328

E. Evelyn GRWM ................................................................................. 332

**XIX.  EVALUATION OF FACEBOOK'S CHILD-DIRECTEDNESS............................. 336**

A. Facebook has always targeted younger users ................................... 337

     i.     Meta began targeting younger users shortly after it was launched ...................... 337

     ii.    Introduction of Messenger Kids as a gateway for young users ............................ 340

     iii.   Attracting tweens in order to grow the teen user base ......................................... 340

     iv.   Difficulty in engagement of tweens...................................................................... 341

     v.     Meta's effort to overcome tween lack of engagement.......................................... 343

B. Facebook incorporated features and content that appeal to teens and tweens................ 345

     i.     Facebook added tools that appealed to tweens, including video functionality and creative tools .................................................................................................... 345

     ii.    Facebook sought to introduce and promote content and games that appeal to tweens ..................................................................................................... 354

C. Evidence from internal and external sources confirm children under the age of 13 use Facebook ................................................................................................ 363

**XX. EVALUATION OF THE CHILD-DIRECTEDNESS OF PORTIONS OF FACEBOOK............................................................................................ 366**

A. Salish Matter .................................................................................... 366

B. Adley McBride.................................................................................. 371

C. Ninja Kidz Fan Club ........................................................................ 377

D. Roblox.............................................................................................. 383

E. LankyBox.......................................................................................... 389

Expert Report of Adam L. Alter, Ph.D.

Highly Confidential

statements, Meta employees implemented social influence tactics, including omitting research findings about the negative effects of the platforms, emphasizing the company's efforts and investments, side-stepping criticism, and deploying proof points to support their claims, including favorable metrics in the form of CSERs. As with other external statements from the company, and given the nature of its platforms as credence goods, consumers would have been more reliant on Meta to provide accurate, honest, and relevant information about its products. Thus, consumers are likely to take away a false net impression of Meta's platforms and their capacity to impose harmful content and experiences on their users.

### D. Meta conveyed to consumers that it effectively prevents U13s from using its platforms

346.    In this section I address Meta's public statements regarding its efforts to prevent children under age 13 ("U13s") from using its platforms, how those statements are likely to shape consumer perceptions, and how evidence from Meta employees and documents reveals an internal narrative about Meta's platforms which is in stark contrast to the narrative one presented publicly. A summary of this section is presented below.

347.    Meta or high-ranking Meta employees including Meta's CEO, Head of Instagram, Global Head of Safety, Deputy Chief Privacy Officer, and Instagram's Head of Public Policy, have made public statements that fall into one of the two following categories:

    a.   U13s are not allowed to use, and do not use, Meta's platforms; and

    b.   Meta invests in and is engaged in age-gating, age-assurance[759], age-enforcement,

---

[759]    Meta employees define "age assurance" as "an umbrella term that [the company] uses to essentially understanding users' age" which can include "age-gating", "age verification" and "collecting age." Deposition of Michael "Miki" Rothschild, January 21, 2025, 604:5-11; Deposition of Adam Mosseri, March 17, 2025, 700:2-16.

Expert Report of Adam L. Alter, Ph.D.                                206

Highly Confidential

age-detection, and removal efforts to inhibit U13 use in connection with its policy of prohibiting U13s on its platforms.

348.    The above statements have a tendency to mislead because:

a.    A reasonable consumer would falsely believe that Meta did not have knowledge that U13s are on the platform and its registration process enables such underage use, when it in fact the company has such awareness; and

b.    A reasonable consumer would falsely believe that Meta meaningfully invests in underage enforcement and its efforts in age-gating, age-enforcement, age-detection, age assurance, and underage removal were effective at inhibiting U13 use, when in fact Meta internally did not prioritize investment in policing underage use and knew its efforts were not effective and behind industry standards.

349.    Below, I focus my analysis on nine illustrative statements that I identified through a review of the operative complaints and my own independent investigation. I selected the statements discussed in the report based on several factors, including the nature of their deception, their likelihood of reaching consumers, and the ease of grouping them together for purposes of discussion. The list is not exhaustive, and Meta made many similar misleading statements especially pertaining to age-gating, age-assurance, age-enforcement, age-detection, and removal efforts to inhibit U13 use in connection with its policy of prohibiting U13s on its platforms. The absence of a particular statement from the tables below should not be taken to imply that the absent statement is not potentially deceptive.

350.    I then analyze each grouping of statements to identify the tactics that Meta deployed and relied on to bolster the persuasiveness of its public narrative. Finally, I demonstrate how these

Highly Confidential

factual claim about the *actual* composition of users on Meta's platforms. Meta's Global Head of Safety reinforced this as the intent of Meta's messaging when she explicitly stated, as a matter of fact, that U13s are "not on Instagram." Therefore, the most natural interpretation of these statements as a whole is that, because U13s are not permitted on the platforms, they are largely absent from the platforms and that Meta does not have internal knowledge that suggests otherwise. The repetition of the claim that U13s are not permitted on Meta's platforms is an instance of Meta's drumbeat messaging strategy, reinforcing over time the perception that U13s are not on Meta's platforms to any significant degree, and that any who are in contravention of Meta's policies are dealt with swiftly.

### ii.    Analysis of individual statements: Age-gating, Age Enforcement, and Removal Efforts

355.    Meta representatives have also made public statements describing investment and engagement in various efforts to ensure that U13s are prevented from using Meta's platforms, as well as internal efforts at finding new methods and technologies to identify, remove, and/or police U13 users on the platforms, as shown in Table 13:

Highly Confidential

**Table 13. Meta's statements claiming that Meta invests in and is engaged in effective age-gating, age-assurance, age-detection, and removal efforts to inhibit U13 use**

| No. | Date | Speaker | Statement | Context |
|---|---|---|---|---|
| D5 | December 8, 2021 | Adam Mosseri, Head of Instagram | "I am especially focused on the safety of the youngest people who use our services. This work includes keeping underage users off our platform." | *Hearing Before the United States Senate Committee on Commerce, Science, and Transportation Subcommittee on Consumer Protection, Product Safety, and Data Security*, 117 Cong. at 2 (2021) (Testimony of Adam Mosseri)[768] |
| D6 | March 17, 2021 | Meta | "we know that young people can lie about their date of birth. We want to do more to stop this from happening," "we are continuously looking for better ways to identify and remove underage accounts." | Included in an Instagram blog post titled "Continuing to Make Instagram Safer for the Youngest Members of Our Community."[769] |
| D7 | July 27, 2021 | Pavni Diwanji, VP of Youth Products | "This technology is also the basis of important changes we're making to keep young people safe […] We're also building similar technology to find and remove accounts belonging to people under the age of 13." | Ms. Diwanji authored a post on Meta's website titled "How Do We Know Someone Is Old Enough to Use Our Apps?"[770] |
| D8 | March 25, 2021 | Mark Zuckerberg, CEO of Meta | "if we detect that someone might be under the age of 13, even if they lied, we kick them off." | Senator Long asked Mr. Zuckerberg: "So a 13-year-old would never—I mean an 11-year-old would never put in the wrong birthday by 2 years and say they were 13? Is that kind of your policy?"[771] |

---

[768]  Mosseri, Adam, Dec. 8, 2021, Testimony Before the Senate Committee on Commerce, Science, and Transportation Subcommittee on Consumer Protection, Product Safety, and Data Security, https://www.commerce.senate.gov/services/files/3FC55DF6-102F-4571-B6B4-01D2D2C6F0D0.

[769]  March 17, 2021, "Continuing to Make Instagram Safer for the Youngest Members of Our Community," *INSTAGRAM.com,* https://about.instagram.com/blog/announcements/continuing-to-make-instagram-safer-for-the-youngest-members-of-our-community. Accessed July 14, 2025.

[770]  Diwanji, Pavni, July 27, 2021, "How Do We Know Someone Is Old Enough to Use Our Apps?," *FB.com*, https://about.fb.com/news/2021/07/age-verification/. Accessed July 14, 2025.

[771]  *Disinformation Nation: Social Media's Role in Promoting Extremism and Misinformation Before H. Comm. on Communications and Technology*, 117th Cong. (2021), https://www.congress.gov/117/meeting/house/111407/documents/HHRG-117-IF16-Transcript-20210325.pdf

Highly Confidential

| No. | Date | Speaker | Statement | Context |
|---|---|---|---|---|
| D9 | N/A | Meta | "we will delete the account if we can't verify the account is managed by someone over 13 years old." | Included in the section of Instagram's Help Center titled "Report a child under 13 on Instagram."[772] |

---

[772] "Report a child under 13 on Instagram," *Instagram,* https://help.instagram.com/517920941588885?helpref=faq_content. Accessed July 14, 2025.

Expert Report of Adam L. Alter, Ph.D.                                          213

356.    Meta has made a number of representations related to its level of investment and efforts to inhibit and police U13 use. In Statement D5, Head of Instagram Adam Mosseri in his March 2021 written congressional testimony expressly stated that the company is "especially focused" on "keeping underage users" off the Instagram platform.

357.    Similarly, in Statement D6, which appeared in a March 2021 blog post on the safety of young Instagram users, Meta stated that it "want[s] to do more" to stop young users from lying about their age, and that it was "continuously looking for better ways to identify and remove underage accounts."[773] Similarly, Meta made Statement D7 a few months later in a July 2021 blog post discussing Meta's development of AI-based age-detection technology, claiming that the company was "building similar technology to find and remove accounts belonging to people under the age of 13."[774] Such statements communicate proof points that are designed to demonstrate Meta's dedication to the safety of U13s, and the integrity of its processes for detecting and removing U13s.

358.    Meta representatives have also made statements conveying that the processes it follows when removing suspected U13 accounts from its platforms are effective in removing an U13 account in a timely manner once identified. For example, in Statement D8, in response to a question before Congress about children lying about their age to access Meta's platforms, CEO Mark Zuckerberg stated that, "if we detect that someone might be under the age of 13, even if they lied, we kick them off."[775] Similarly, Statement D9, which appears in the section in

---

[773]    Mar. 17, 2021, "Continuing to Make Instagram Safer for the Youngest Members of Our Community," *Instagram,* https://about.instagram.com/blog/announcements/continuing-to-make-instagram-safer-for-the-youngest-members-of-our-community. Accessed July 14, 2025

[774]    Diwanji, Pavni, July 27, 2021, "How Do We Know Someone Is Old Enough to Use Our Apps?," *FB.com,* https://about.fb.com/news/2021/07/age-verification/. Accessed July 14, 2025.

[775]    *Disinformation Nation: Social Media's Role in Promoting Extremism and Misinformation Before H. Comm.*

Highly Confidential

Instagram's Help Center titled "Report a child under 13 on Instagram," states that "we will delete the account if we can't verify the account is managed by someone over 13 years old."[776] These descriptions of Meta's process for removing suspected U13 accounts imply that any individuals who have slipped through the cracks are immediately removed from the platform as soon as Meta identifies them. As with the statements of Ms. Bickert and Mr. Mosseri discussed earlier (Statements D2 and D4),[777] the touting of Meta's removal processes creates the impression that suspected U13 users are anomalous and dealt with immediately when identified. Moreover, the message conveys that the default policy is that a user account will be removed unless Meta confirms that the user is over 13.

### iii.    Evaluation of consumer understanding

359.    As the discussion of consumer information-processing in Section VIII explained, consumers generally assume with reason that a company's communications regarding issues of health or safety are *complete*, meaning that information relevant to consumers on those issues is not omitted from public statements. Given this default assumption, consumers are likely to understand Meta's statements that U13 users are "not allowed" or "not permitted" on Meta's platforms, coupled with statements that, as a matter of fact, U13s are "not on Instagram," as statements indicating that Meta's policy prohibiting U13s results in the absence of U13s on the platform. Any indication or evidence suggesting that Meta was aware that its official age policies were not meaningfully enforced or that its lax age-gating process enabled U13 to use the

---

*on Communications and Technology*, 117th Cong. (2021),
https://www.congress.gov/117/meeting/house/111407/documents/HHRG-117-IF16-Transcript-20210325.pdf
[791]    "Report a child under 13 on Instagram," *Instagram,*
https://help.instagram.com/517920941588885?helpref=faq_content. Accessed July 14, 2025.
[777]    As discussed, Statements D2 and D4 both go on to describe review and removal processed for flagged U13 accounts.

device's operating system.[827] Additionally, Meta's policy team recommended that the company try to show that it was developing products appropriate for minors and that it be explicit that age modeling was not reliable for "hard" enforcement (i.e., the removal of underage users).[828]

> d. *Meta's enforcement and removal of U13 users was ineffective and under-resourced*

378.    Despite public claims to the contrary, internal sources reveal that Meta did not effectively enforce or remove U13 users. Beyond the limitations noted above, Meta internally acknowledged in a 2020 document titled "Child Safety – State of Play," which noted that "age assurance" was an area where Meta was "most vulnerable and need[ed] to step up our efforts," that one of its "vulnerabilities" was that it had a "[l]ack of U13 proactive age identification and enforcement mechanism[s]" and had identified as an "Area of Improvement" developing a "system for age verification to block U13s from our services[.]"[829] In a September 2020 email forwarding this document to Vice President of Global Affairs, Nick Clegg, a Meta strategic advisor noted that it was "quite worrying" and "tends to confirm the impression I have that this area of work is often sidelined" and "doesn't have the resources or consistent leadership support" needed.[830]

379.    Evidence also indicates that Meta's internal policies regarding age verification differ from the policies it communicates publicly. In particular, Statement D9 found in Instagram's Help Center notes that "we will delete the account if we can't verify the account is managed by

---

[827]    Deposition of Robert Sherman, April 30, 2025, 130:25-132:17; META3047MDL-065-00042982, "Re: WKLY Cross-Family Reviews | Escalation: Age Management," Match 4, 2020.
[828]    META3047MDL-034-00479217, "Re: WKLY Cross-Family Reviews: Youth Privacy Pre-read," January 21, 2021.
[829]    META3047MDL-004-00027356, "Child Safety - State of Play (7/2020)" July 2020; Deposition of Antigone Davis, March 4, 2025, 319:18-323:21.
[830]    Deposition of Antigone Davis, March 4, 2025, 316:3-13; META3047MDL-004-00027355, "Kids note," September 1, 2020.

Highly Confidential

someone *over* 13 years old." (emphasis added)[831] By contrast, in response to an interrogatory posed by the Plaintiffs in this matter, Meta stated that its internal policy is that "[w]here Meta has indicia that the user is not *under* the age of 13, Meta may automatically permit the user who has been flagged as potentially underage to continue using Instagram."[832] Whereas Meta's publicly communicated standard for retaining flagged accounts is verification that the flagged user is *over* 13, its internal policy, as enforced in practice, is that by default a user's account is not removed unless the company verifies that the user is *under* 13.[833] A default such as that allows many more U13 accounts to remain on the platform than if the company only allowed users on the platform who could affirmatively demonstrate that they are aged 13 years or older. Meta's default practice of allowing U13s on its platforms unless it can verify that the account holder is U13 is in clear contrast with other age-restricted activities such as gambling, smoking, and voting, where the default is that those wishing to engage in the activity must affirmatively prove they are old enough before being permitted to do so.

380.    Meta's reporting flow for U13 accounts is also notably ineffective. According to Mr. Béjar, it is "almost impossible to report underage accounts."[834] In one email from 2019, Monica Bickert referred to the reporting flow as "broken," after she attempted to report a user for being underage and experienced an error.[835] In response to this discovery, Antigone Davis replied, "I agree it is more than pretty bad and suggests we want to deter underage reporting."[836]

---

[831]    "Report a child under 13 on Instagram," *INSTAGRAM.com,* https://help.instagram.com/517920941588885. Accessed July 14, 2025.

[832]    Meta's Responses and Objections to the Illinois Civil Investigative Demand, dated April 10, 2023, at 5 (emphasis added).

[833]    Meta's Responses and Objections to the Illinois Civil Investigative Demand, dated April 10, 2023, at 5.

[834]    Deposition of Arturo Béjar, April 7, 2025, 195:7-24.

[835]    Deposition of Monika Bickert, May 1, 2025, Exhibit 51.

[836]    Deposition of Monika Bickert, May 1, 2025, Exhibit 51.

Highly Confidential

381.    Multiple internal Meta documents cite substantial backlogs of underage reports that the company has failed to address in a timely manner. For example, an April 2021 "Underage & Age Verification Data 1-Pager" "identified a backlog of >2[million] reports" from underage reporting flows that have not been addressed, that "33% of IG users don't have a stated age" and that "[c]urrent underage review protocols might not be effective."[837] In another email in 2021, which included Instagram's Head of Public Policy Karina Newton, one Meta employee noted that there was a 1.42 million collective backlog in the age collection reporting flow.[838] Other documents also cite "[b]acklogs of actionable information about individuals who have failed age gates,"[839] including a "~700K [U13] job backlog."[840]

382.    According to Mr. Béjar, the company's policies that govern U13 users in practice allow many such users on the company's platforms.[841] Not only did Mr. Béjar state that Instagram had the ability to build effective tools to prohibit U13s from using the platform, but also that executives who state that they don't allow U13s on Instagram are, in fact, "lying."[842] This lie is evidenced by the fact that it is not difficult to find U13 users on the platform today. Just weeks prior to Mr. Béjar's April 2025 deposition, he found tens of thousands of users engaging with a trend on Instagram while stating that they were aged, for example, "11, 9, 8, 7."[843]

### v.    Conclusion

383.    The evidence described above demonstrates that Meta's public statements reassuring

---

[837]    META3047MDL-020-00542010, "Underage & Age Verification Data 1-Pager," April 1, 2021.
[838]    Deposition of Karina Newton, February 27, 2025, Exhibit 20 at 3.
[839]    META3047MDL-004-00027355, "Child Safety – State of Play (720).docx," Sept. 1, 2020, Deposition of Antigone Davis, March 4, 2025, Exhibit 52.
[840]    META3047MDL-034-00027362, "Child Safety State of Play Interim update - September 2020," September 2020.
[841]    Deposition of Arturo Béjar, April 7, 2025, 192:24-25.
[842]    Deposition of Arturo Béjar, April 7, 2025, 188:20-190:9.
[843]    Deposition of Arturo Béjar, April 7, 2025, 195:16-24.

Highly Confidential

consumers that U13s are not allowed to use, and do not use, Meta's platforms, and that Meta invests in and is engaged in effective age-gating, age-verification, age-enforcement, age-assurance, age-detection, and removal efforts to inhibit U13 use had the tendency to mislead. On the basis of Meta's statements, a reasonable consumer would be likely to believe that Meta was unaware that its platforms hosted substantial numbers of U13s, and that its lax age-gating efforts enabled such underage use. However, Meta did, in fact, have such knowledge. Similarly, a reasonable consumer would be likely to believe that Meta meaningfully invested in age-assurance, and would expect Meta's efforts at age-gating, age-verification, age-detection, age assurance and removal to be effective at keeping U13s from using its platforms. Again, Meta did not in fact prioritize investment in policing underage use and knew its efforts were not effective and behind industry standards. In general, Meta's statements regarding its purported efforts to keep U13s off its platforms imply that the company was proactive in addressing the issue, whereas internal evidence indicates that Meta was reactive, at best, and in many cases failed to act altogether. Individual flagged U13 accounts were removed to some extent, but the company did very little to dissuade and prevent U13s from joining and using the platforms in the first place. Meta's reactive posture is also reflected in its default practice of allowing U13s to join and remain on the platforms unless Meta could verify their underage status, rather than requiring users to affirmatively prove their age before being permitted to sign up.

384.    As a result, because Meta's statements omit important and highly relevant information about the extent of improper underage usage of its platform and ineffectiveness of its age-enforcement efforts, and therefore provided an overall impression that U13 use is essentially a "non-issue," they had the tendency to mislead consumers who might have otherwise acted differently in monitoring their U13's use or ensuring disuse.