[*Submitting Counsel on Signature Page*]

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| IN RE: SOCIAL MEDIA ADOLESCENT ADDICTION/PERSONAL INJURY PRODUCTS LIABILITY LITIGATION | MDL No. 3047 |
| | Case No. 4:22-md-03047-YGR |
| THIS DOCUMENT RELATES TO: | **STATE ATTORNEYS GENERAL'S MOTION IN LIMINE NO. 3 TO EXCLUDE LEGAL CONCLUSION TESTIMONY** |
| 4:23-cv-05448 | Judge: Hon. Yvonne Gonzalez Rogers |
| | Magistrate Judge: Hon. Peter H. Kang |
| | Date:  June 26, 2026<br>Time:  8:00 AM<br>Place: Courtoom 1, 4th Floor |

**NOTICE OF MOTION IN LIMINE**

PLEASE TAKE NOTICE THAT, at 8:00 AM on June 26, 2026, before the Honorable Yvonne Gonzalez Rogers, in Courtroom 1, Floor 4, of the United States District Court, Northern District of California, located at 1301 Clay Street, Oakland, CA 94612, the 29 State Attorneys General Plaintiffs will and hereby do move this Court, under the Federal Rules of Evidence, for an order precluding Meta from using certain legal conclusion testimony at trial. This Motion is based on this Notice, the accompanying Memorandum of Points and Authorities, any other papers submitted in connection with this Motion, the accompanying Declaration of Zachary Richards and exhibits thereto, and any other matters presented at the time of the hearing.

## STATEMENT OF RELIEF SOUGHT

The twenty-nine State AGs seek entry of an order barring Meta from introducing at trial testimony that comprises improper legal conclusions.

STATE ATTORNEYS GENERAL'S MOTION IN LIMINE NO. 3 TO EXCLUDE LEGAL CONCLUSION TESTIMONY
4:22-md-03047-YGR; 4:23-cv-05448-YGR

**INTRODUCTION**

The State Attorneys General ("AGs") respectfully move to exclude the improper legal opinions of Meta expert Mary Catherine Wirth. Ms. Wirth repeatedly departs from the proper role of an expert witness and instead offers legal opinions regarding the meaning of federal statutes, regulatory guidance, and constitutional principles. She interprets COPPA and FTC guidance, applies those legal standards to the facts of this case, and offers opinions regarding the constitutionality of age-verification requirements. In doing so, she repeatedly offers legal conclusions regarding Meta's obligations under COPPA and related legal authorities.

These opinions are inadmissible. Expert witnesses may not instruct the factfinder on the meaning of statutes or regulations, define legal standards, or apply legal standards to reach ultimate conclusions. Those functions belong exclusively to the Court and, where appropriate, the factfinder. Because the challenged portions of Ms. Wirth's report consist of impermissible legal conclusions rather than admissible expert testimony, they should be excluded.[1]

## I.   LEGAL STANDARD

Expert testimony is admissible only if it "will help the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702(a). Although experts may draw on specialized knowledge and experience to explain technical or industry-specific matters, they may not testify regarding the meaning, interpretation, or application of statutes, regulations, or other legal authorities. "Instructing the jury as to the applicable law is the distinct and exclusive province of the court." *Nationwide Transp. Fin. v. Cass Info. Sys., Inc.*, 523 F.3d 1051, 1058 (9th Cir. 2008).

Accordingly, expert testimony that interprets legal requirements or tells the factfinder what the law requires constitutes an inadmissible legal conclusion. *See Hangarter v. Provident Life and Acc. Ins. Co.*, 373 F.3d 998, 1016 (9th Cir. 2004). Experts likewise may not define or interpret legal terms whose meaning is central to the ultimate issue. *See McHugh v. United Serv. Auto. Ass'n*, 164 F.3d 451, 454 (9th Cir. 1999). The same principle applies to testimony purporting to interpret regulatory guidance or similar government-issued materials. *See Zeiger v. WellPet LLC*, 526 F. Supp. 3d 652, 680 (N.D. Cal. 2021).

---

[1] To the extent other Meta experts or witnesses intend to offer legal conclusions at trial, they are similarly inadmissible and the State AGs will object at trial.

An expert also may not testify regarding what a party was legally required to do or what conduct would satisfy a legal standard. *U.S. v. Pilling*, 2024 WL 897944, at *6–7 (D. Idaho Mar. 1, 2024). Likewise, experts may not offer opinions on ultimate issues of law or otherwise substitute their judgments for those of the Court and factfinder. *Nationwide*, 523 F.3d at 1058–60. In particular, it is the exclusive "province of the jury to apply the law to the facts . . . [and] to determine whether the defendant did what he 'should' have done to comply with the applicable law." *Pilling*, 2024 WL 897944, at *6.

## II.   CHALLENGED OPINIONS

The State AGs seek to exclude portions of Opinions 2, 3, and 4 of Ms. Wirth's report. Ex. A, April 15, 2026 Expert Rebuttal Report of Mary Catherine Wirth ("Wirth Report").[2] The challenged testimony falls into three categories of improper legal opinions:

(1)  Opinions interpreting COPPA and applying COPPA's legal standards to the facts of this case. *See, e.g.,* Ex. A, Wirth Rep. ¶¶ 8, 9, 12, 31, 34, 35, 56–58; *see also* Ex. B, Wirth Rep. (Jan. 9, 2026) ¶¶ 7, 11, 28–31, 53, 58.

(2) Opinions interpreting FTC guidance and applying that guidance to Meta's conduct. *See, e.g.*, Ex. A, Wirth Rep. ¶¶ 32, 33, 36, 47, 51, 52; Ex. B, Wirth Rep. (Jan. 9, 2026) ¶¶ 28-31, 60, 65-66.

(3) Opinions concerning the constitutionality of age-verification requirements and the requirements of the First Amendment. *See, e.g.*, Ex. A, Wirth Rep. ¶¶ 13, 61, 64, 69, 71, 73.

## III.   ARGUMENT

The State AGs move to exclude improper legal opinions by Ms. Wirth that interpret COPPA and FTC guidance, apply those legal authorities to disputed facts in this case, and opine on constitutional questions concerning age-verification requirements.

### A. Ms. Wirth impermissibly interprets COPPA and applies COPPA's legal standards to the facts of this case

Ms. Wirth's COPPA-related opinions are improper. First, she repeatedly opines on what COPPA requires as a matter of law. Second, she applies COPPA's legal standards to the facts of this case and, in

---

[2] Ex. A, Wirth Rep. ¶¶ 8, 9, 12, 13, 31-36, 47, 51, 52, 56-58, 60-64, 69, 71, 73. Many of these improper opinions were also contained in Ms. Wirth's January 9, 2026 Expert Rebuttal Report responding to the State AG's former expert Patrick McDaniel. Ex. B, Wirth Rep. (Jan. 9, 2026) ¶¶ 7, 11, 28–31, 53, 58, 60, 65–66.

doing so, effectively resolves disputed issues that bear directly on the scope of Meta's statutory obligations. Both types of testimony invade the province of the Court and the factfinder and should be excluded. *See Nationwide*, 523 F.3d at 1058.

First, Ms. Wirth repeatedly opines on the legal obligations imposed by COPPA. *See, e.g.*, Ex. A, Wirth Rep. ¶ 12 ("Universal age-verification is not mandated in the U.S."), ¶ 35 ("U.S. law does not require... any form of more robust age verification at registration"), ¶ 47 ("An age assurance program *must* do what is expressly required by the FTC COPPA FAQ."), ¶ 58 ("the U.S. . . .has not adopted age verification legislation. . . ."); *see also* Ex. B, Wirth Rep. (Jan. 9, 2026) ¶¶ 53, 58. Additionally, Ms. Wirth opines that, under COPPA, platforms have "no obligation to investigate or verify age absent actual knowledge that a specific user is under 13." Ex. A, Wirth Rep. ¶ 32; *see also id.* ¶¶ 9, 36, 52; Ex. C, Wirth Dep. (May 8, 2026) 57:13–15 ("General knowledge that under-13s lie isn't enough. It has to be specific knowledge. So that's, like, the baseline rule."). Even if that interpretation of COPPA were correct (which it is not[3]), it is not a proper subject of expert testimony. Whether Meta possessed "actual knowledge" of U13 users is itself a disputed issue in this litigation. By telling the jury that COPPA obligations arise only upon what she characterizes as "specific knowledge" of a particular U13 user, Ms. Wirth is not merely describing industry practice; she is offering a legal interpretation of when obligations under COPPA attach. *See Nationwide*, 523 F.3d at 1058 (upholding exclusion of expert opinion that discussed "parties' legal rights, duties, and obligations under the law").

The same is true of Ms. Wirth's opinion that "COPPA only requires that a platform obtain verifiable parental consent when it allows users under the age of 13 to register." *See* Ex. A, Wirth Rep. ¶ 12 (citing 16 C.F.R. § 312.5(a)(1)), Ex. B, Wirth Rep. (Jan. 9, 2026) ¶¶ 53, 58; *see also* Ex. A, Wirth Rep. ¶¶ 35, 56–58, 69. Likewise, she opines that "general knowledge of underage users gives rise to no specific investigative duty." Ex. A, Wirth Rep. ¶56. These opinions do not describe industry custom or operational practices. They purport to define the scope of Meta's legal obligations under COPPA, *see id.* ¶ 35 ("U.S.

---

[3] This opinion is misleading because it is framed as applying to all "platforms," when the legal obligations imposed by COPPA depend on, among other things, whether a service is a general-audience platform or a platform directed to children, and if it is directed to children, whether children are a primary audience or whether it qualifies as a so-called "mixed audience" platform. By presenting a simplified rule applicable to all platforms, Ms. Wirth not only offers a legal interpretation of COPPA but also obscures important distinctions contained in the statutory and regulatory framework.

law does not require . . . any form of more robust age verification at registration"), and therefore constitute impermissible legal opinions. *See Nationwide*, 523 F.3d at 1058.

Moreover, several of Ms. Wirth's interpretations oversimplify or misstate the statutory framework and thus risk confusing or misleading the jury. For example, her opinion that platforms have "no obligation to investigate or verify age absent actual knowledge" is framed as applying to *all* platforms, even though COPPA's requirements depend in part on whether a platform is a general-audience platform, a platform directed to children, or a mixed audience platform (a sub-category of "directed to children"). *See* 64 Fed. Reg. 59889, 59890 (Nov. 3, 1999); Ex. E, Fed. Trade Comm'n, *Complying with COPPA: Frequently Asked Questions* (last accessed Jun. 9, 2026), https://www.ftc.gov/business-guidance/resources/complying-coppa-frequently-asked-questions ("COPPA FAQs"). And once an operator obtains actual knowledge that a user is under thirteen, COPPA requires the operator to provide the protections mandated by the statute—not merely to decide whether to investigate further. *See* 15 U.S.C. § 6502(a)(1); 16 C.F.R. § 312.3; *see also* Ex. E, COPPA FAQ H.6. Similarly, her assertion that COPPA requires parental consent only when a platform allows U13 users to register overlooks that COPPA's parental-consent requirements apply to platforms that are directed to children and also to operators that have actual knowledge of U13 users. *See* 16 C.F.R. §§ 312.2, 312.3. These shortcomings further illustrate why Ms. Wirth's opinions are improper. The Court, rather than a retained expert, must determine what COPPA requires and instruct the jury accordingly.

Second, Ms. Wirth improperly applies COPPA's legal classifications to the facts of this case. *See, e.g.*, Ex. A, Wirth Rep. ¶¶ 4, 32–33, 35, 51. In particular, COPPA distinguishes among "general audience," "directed to children," and "mixed audience" (a sub-category of "directed to children") platforms; those classifications carry significant legal consequences. *See* 16 C.F.R. § 312.2. Whether Meta's platforms fall within one of those categories is a disputed issue in this litigation because the classification directly affects the scope of Meta's obligations under COPPA.

Yet Ms. Wirth repeatedly treats that issue as resolved. During her deposition, she testified:

> If you don't allow under-13s on your platform, you have no obligation -- you know, you've got general audience, mixed audience, et cetera, you know. Mixed audience is directed at children as well as others, where you allow under-13s. Meta doesn't allow under-13s. So, yes, in my experience, that would be considered by the FTC, and anybody in the industry, and anybody in the trust and safety community, to be a general-audience site.

Ex. C, Wirth Dep. (May 8, 2026) 58:3–12.

This testimony goes well beyond describing industry practice. Ms. Wirth repeatedly applies COPPA's legal classifications to the facts of this case and concludes that Meta is a "general audience" platform. *See, e.g.*, Ex. A, Wirth Rep. ¶¶ 57–58 (implying that the only legal obligations to which Meta is subject are those for general audience platforms).

Ms. Wirth similarly relies throughout her report on the premise that Meta's platforms are not "directed to children" because Meta's Terms of Service prohibit U13 users from creating accounts. *See, e.g.*, Ex. A, Wirth Rep. ¶ 12, n. 3; ¶ 32, n. 17; Ex. B, Wirth Rep. (Jan. 9, 2026) ¶¶ 29, 53, 58; *see also* Ex. C, Wirth Dep. (May 8, 2026) 58:3–8; Ex. D, Wirth Dep. (Feb. 24, 2026) 196:14–20, 198:15–18. But determining whether a service is "directed to children" requires consideration of multiple factors and a totality-of-the-circumstances analysis. *See* 16 C.F.R. § 312.2; *People of the State of California v. Meta Platforms, Inc.*, 753 F. Supp. 3d 849, 876 (N.D. Cal. 2024) (ECF No. 1214) ("The FTC has explained this test 'look[s] to the totality of the circumstances' such that 'no single factor will predominate over another.'"). Indeed, whether the operator "intends" for U13 users to use the platform is not dispositive of whether the platform qualifies as "general audience." *See* Ex. E, COPPA FAQ H.2 ("although you may intend to operate a 'teen service,' in reality, your site may attract a substantial number of children under 13, and thus may be considered a 'Web site or online service directed to children' under the Rule.'"). By effectively treating Meta's claimed prohibition on U13 users as sufficient to establish that its platforms are not directed to children, Ms. Wirth substitutes her own legal conclusion for the factfinder's assessment of the evidence under the Court's instructions. *See Nationwide,* 523 F.3d at 1058–60.

Whether Meta's platforms are "general audience," or "directed to children" (and if they are directed to children, whether they qualify as "mixed audience") is a matter for the Court and factfinder to resolve based on the evidence and the Court's instructions regarding COPPA. Ms. Wirth may not short-circuit that inquiry by assigning legal classifications to Meta's platforms and then using those as the basis for her opinions regarding Meta's obligations under COPPA.

Ms. Wirth advances further conclusions regarding Meta's legal obligations. For example, she opines that Meta does not have obligations to implement universal age verification or obtain verified parental consent. *See* Ex. A, Wirth Rep. ¶¶ 12, 58; Ex. B, Wirth Rep. (Jan. 9, 2026) ¶¶ 53, 58. Again, those

opinions do not merely interpret COPPA; they apply COPPA's legal standards to the facts of this case and conclude that Meta is exempt from obligations that the State AGs contend COPPA imposes.

To the extent Ms. Wirth attempts to frame any of the foregoing opinions as reflecting industry standards or Trust & Safety practices, that characterization does not cure the problem. The issue in this case is the meaning and application of COPPA itself. An expert may not offer legal conclusions merely by presenting them as opinions regarding industry practice. *See, e.g.*, *In re Rezulin Prods. Liab. Litig.*, 309 F. Supp. 2d 531, 558 (S.D.N.Y. 2004) ("testimony encompassing an ultimate legal conclusion based upon the facts of the case is not [admissible] and may not be made so simply because it is presented in terms of industry practice") (*quoting United States v. Bilzerian*, 926 F.2d 1285, 1295 (2d Cir. 1991)). Here, Ms. Wirth is not merely explaining how online platforms operate; she is opining on what COPPA requires and how COPPA applies to Meta. Because Ms. Wirth repeatedly interprets COPPA's requirements, applies COPPA's legal classifications to Meta, and offers conclusions regarding the scope of Meta's legal obligations, her improper legal opinions as to COPPA should be excluded.

**B.  Ms. Wirth's opinions interpreting and applying FTC COPPA guidance are likewise inadmissible**

Ms. Wirth also offers impermissible opinions regarding the meaning and application of FTC guidance interpreting COPPA.

First, throughout her report, Ms. Wirth relies on the COPPA FAQs and opines that, under that guidance, platforms may rely on a user's self-declared age and have no affirmative obligation to investigate or verify age information. Ex. A, Wirth Rep. ¶ 32; Ex. B, Wirth Rep. (Jan. 9, 2026) ¶ 29. These opinions are not merely descriptions of industry practice. They are interpretations of agency guidance concerning compliance with COPPA. Accordingly, Wirth's contention that "[a]lthough the FAQs may have their origins in law . . . understanding and applying them does not require any particular legal expertise" is both incorrect and itself an impermissible legal opinion. *See* Ex. A, Wirth Rep. ¶¶ 32–33; Ex. B, Wirth Rep. (Jan. 9, 2026) ¶¶ 29-30.

Courts routinely exclude expert testimony that purports to interpret regulatory guidance or otherwise instruct the factfinder regarding the meaning of legal authority. *See Zeiger*, 526 F. Supp. 3d at 680 (excluding expert testimony interpreting "regulatory guidance or government-endorsed model

regulations"). That principle applies here. The COPPA FAQs are not simply operational recommendations or generic business advice. They are guidance issued by the agency charged with enforcing COPPA, and they address how entities may satisfy their statutory obligations.

The legal significance of the COPPA FAQs is underscored by the fact that courts have considered similar agency FAQs when interpreting statutes and regulations. *See Nacarino v. Kashi Co.*, 77 F.4th 1201, 1213 (9th Cir. 2023) (evaluating the persuasive weight of an agency FAQ and "find[ing] the interpretation on the agency's webpage persuasive."). Indeed, the parties themselves cited the COPPA FAQs ten times in their proposed COPPA jury instructions, and many more times in summary judgment briefing on their legal disputes over the interpretation of COPPA's requirements. That reliance demonstrates that the guidance is being treated as a source of legal interpretation relevant to the issues in this case, not merely as informal business advice.

Second, Ms. Wirth likewise applies her interpretation of the FTC's guidance to the facts of this case. For example, she opines that "Meta follows long-accepted FTC guidance to businesses on age gating" and that "both Instagram and Facebook present a neutrally structured birth-date field at sign-up, consistent with the FTC's explicit guidance." Ex. A, Wirth Rep. ¶ 51; Ex. B, Wirth Rep. (Jan. 9, 2026) ¶ 65. These opinions do not merely describe Meta's practices. They apply Ms. Wirth's interpretation of FTC guidance to Meta's conduct and conclude that Meta's age-gating practices satisfy the FTC's expectations.

That testimony is improper and risks confusing the jury. The issues in this case are whether Meta complied with COPPA and violated the State AGs' consumer-protection laws—not whether Meta complied with the COPPA FAQs. Whether and to what extent FTC guidance informs the proper interpretation of COPPA is a question for the Court. Ms. Wirth may not instruct the jury regarding the meaning of that guidance, opine on the legal obligations it imposes, or use her interpretation of the guidance to define Meta's duties under COPPA. Nor may she invite the jury to conflate compliance with agency guidance with the governing legal standards. It is the Court's role—not Ms. Wirth's—to interpret COPPA, including, where relevant, FTC guidance, and instruct the jury on what it requires. And it is the role of the factfinder, not a retained expert, to determine whether Meta's conduct satisfies those standards.

**C. Ms. Wirth's opinions regarding the constitutionality of universal age verification should be excluded.**

Ms. Wirth also offers opinions regarding the constitutionality of "universal age verification" requirements for social media platforms and the purported reasons for why such requirements have not been adopted in the United States. Ex. A, Wirth Rep. ¶¶ 60–61. Those opinions are irrelevant, unhelpful to the factfinder, and well outside the proper scope of expert testimony.

Throughout her report, Ms. Wirth opines that universal age verification for social media platforms is not required in the United States and would be unconstitutional. *See id.* ¶¶ 60–64. She discusses age verification laws adopted in other countries, attempts to distinguish age-verification requirements applicable to social media platforms from those applicable to pornography websites, cites constitutional case law, and concludes that the United States has declined to adopt universal age verification requirements because of the nation's commitment to free speech. *See id.* ¶¶ 60–64. As she puts it, "it is no surprise that we, as a nation, have deliberately chosen *not* to mandate a 'papers please' approach to online speech." *Id.* ¶ 64.

These opinions are plainly improper. Expert witnesses may not offer opinions regarding the constitutionality of statutes, interpret constitutional requirements, or instruct the factfinder regarding the meaning of constitutional law. *See Nationwide*, 523 F.3d at 1058 ("Resolving doubtful questions of law is the distinct and exclusive province of the trial judge."); *Zeyen v. Boise Dist.,* #1, 2022 WL 2047688, at *5 n.7 (D. Idaho June 7, 2022) (rejecting portions of an expert report which "claim[ed] to determine . . . questions of constitutional law," because "[s]uch determinations are the distinct province of a court").
Nor may Ms. Wirth circumvent that rule by characterizing her opinions as policy observations. Her report repeatedly offers conclusions regarding what constitutional principles permit, what laws could be enacted consistent with the First Amendment, and why the U.S. has allegedly chosen not to adopt certain regulatory approaches. Those are not matters requiring specialized expertise. They are legal and policy judgments reserved for courts and lawmakers.

In addition, Ms. Wirth provides no reliable basis for her sweeping assertions regarding why particular countries have enacted age-verification laws or why the United States has not. Her opinions amount to speculation regarding legislative and policy choices rather than expert analysis grounded in any

identifiable methodology. *See Zrowka v. BNSF Ry. Co.*, 2023 WL 3412465, at *7 (D. Mont. May 12, 2023) (expert testimony must rest on a reliable basis rather than "subjective belief of unsupported speculation"). Because Ms. Wirth's opinions on universal age verification consist of constitutional interpretations, legal conclusions, and unsupported policy speculation, they should be excluded.[4]

## CONCLUSION

For the foregoing reasons, the State AGs respectfully request this Court exclude the challenged portions of Ms. Wirth's testimony and report containing legal interpretations, legal conclusions, and other inadmissible opinions as set forth above.

---

[4] Even if Ms. Wirth's conclusions are admissible, they must still be excluded, as any probative value is substantially outweighed by the risks of unfair prejudice and potential to mislead the jury. Fed. R. Evid. 403; *see United States v. Hitt*, 981 F.2d 422, 424 (9th Cir. 1992). If Ms. Wirth were permitted to opine as to the constitutionality of age verification laws, the jury might be misled into believing that they cannot render a verdict that holds Meta liable for its failure to implement age verification, or that any such verdict could be overturned as unconstitutional.

STATE ATTORNEYS GENERAL'S MOTION IN LIMINE NO. 3 TO EXCLUDE LEGAL CONCLUSION TESTIMONY
4:22-md-03047-YGR; 4:23-cv-05448-YGR

DATED: 06/09/2026

Respectfully submitted,

**PHILIP J. WEISER**
Attorney General
State of Colorado

*/s/ Krista Batchelder*
Jason Slothouber, CO Reg. No. 43496, pro hac vice
Chief Trial Counsel
Krista Batchelder, CO Reg. No. 45066, pro hac vice
Deputy Solicitor General
Lauren M. Dickey, CO Reg. No. 45773
First Assistant Attorney General
Elizabeth Orem, CO Reg. No. 58309
Assistant Attorney General
Colorado Department of Law
Ralph L. Carr Judicial Center
Consumer Protection Section
1300 Broadway, 9th Floor
Denver, CO 80203
Phone: (720) 508-6651
Krista.Batchelder@coag.gov

*Attorneys for Plaintiff State of Colorado, ex rel.*
*Philip J. Weiser, Attorney General*

**ROB BONTA**
Attorney General
State of California

*/s/ Megan O'Neill*
Nicklas A. Akers (CA SBN 211222)
Senior Assistant Attorney General
Bernard Eskandari (SBN 244395)
Emily Kalanithi (SBN 256972)
Supervising Deputy Attorneys General
Nayha Arora (CA SBN 350467)
David Beglin (CA SBN 356401)
Megan O'Neill (CA SBN 343535)
Joshua Olszewski-Jubelirer
(CA SBN 336428)
Brendan Ruddy (CA SBN 297896)
Deputy Attorneys General
California Department of Justice
Office of the Attorney General
455 Golden Gate Ave., Suite 11000
San Francisco, CA 94102-7004
Phone: (415) 510-4400
Fax: (415) 703-5480
Megan.oneill@doj.ca.gov

*Attorneys for Plaintiff the People of the State of*
*California*

**RUSSELL COLEMAN**
Attorney General
Commonwealth of Kentucky

*/s/ Zachary Richards*
Philip Heleringer (KY Bar No. 96748),
*pro hac vice*
J. Christian Lewis (KY Bar No. 87109),
Zachary Richards (KY Bar No. 99209),
Daniel I. Keiser (KY Bar No. 100264),
Matthew Cocanougher (KY Bar No. 94292),
Assistant Attorneys General
1024 Capital Center Drive, Suite 200
Frankfort, KY 40601
Philip.Heleringer@ky.gov
Phone: (502) 696-5300
Fax: (502) 564-2698

*Attorneys for Plaintiff the Commonwealth of*
*Kentucky*

**JENNIFER DAVENPORT**
Attorney General
State of New Jersey

*/s/ Mandy Wang*
Kashif T. Chand (NJ Bar No. 016752008),
pro hac vice
Assistant Attorney General
Thomas Huynh (NJ Bar No. 200942017),
*Pro hac vice*
Assistant Section Chief, Deputy Attorney
General
Verna J. Pradaxay (NJ Bar No. 335822021),
*Pro hac vice*
Mandy K. Wang (NJ Bar No. 373452021),
*Pro hac vice*
Deputy Attorneys General
New Jersey Office of the Attorney General,
Division of Law
124 Halsey Street, 5th Floor
Newark, NJ 07101

STATE ATTORNEYS GENERAL'S MOTION IN LIMINE NO. 3 TO EXCLUDE LEGAL CONCLUSION TESTIMONY
4:22-md-03047-YGR; 4:23-cv-05448-YGR

Tel: (973) 648-2052
Kashif.Chand@law.njoag.gov

*Attorney for Plaintiffs Jennifer Davenport,*
*Attorney General for the State of New Jersey,*
*and Jeremy E. Hollander, Acting Director of*
*the New Jersey Division of Consumer Affairs*

STATE ATTORNEYS GENERAL'S MOTION IN LIMINE NO. 3 TO EXCLUDE LEGAL CONCLUSION TESTIMONY
4:22-md-03047-YGR; 4:23-cv-05448-YGR

# SIGNATURE CERTIFICATION

Under Civ. L.R. 5-1(h)(3), I hereby attest that all signatories listed, and on whose behalf the filing is submitted, concur in this filing's content and have authorized this filing.

DATED: 06/09/2026

/s/ *Zachary Richards*
Zachary Richards

*Attorney for Plaintiff the Commonwealth of Kentucky*

STATE ATTORNEYS GENERAL'S MOTION IN LIMINE NO. 3 TO EXCLUDE LEGAL CONCLUSION TESTIMONY
4:22-md-03047-YGR; 4:23-cv-05448-YGR