[*Submitting Counsel on Signature Page*]

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| IN RE: SOCIAL MEDIA ADOLESCENT ADDICTION/PERSONAL INJURY PRODUCTS LIABILITY LITIGATION | MDL No. 3047 |
| | Case No. 4:22-md-03047-YGR |
| THIS DOCUMENT RELATES TO: | **STATE ATTORNEYS GENERAL'S OPPOSITION TO META'S MOTION IN LIMINE NO. 2 TO PRECLUDE EVIDENCE SECOND-GUESSING META'S POLICIES AND PROCEDURES AS IRRELEVANT AND BARRED UNDER SECTION 230** |
| 4:23-cv-05448 | |
| | Judge: Hon. Yvonne Gonzalez Rogers |
| | Magistrate Judge: Hon. Peter H. Kang |

**INTRODUCTION**

Meta's Motion in Limine No. 2 to preclude evidence second-guessing Meta's policies and procedures seeks to impose a sweeping, overbroad evidentiary ban that would prevent the State Attorneys General (State AGs) from proving their case. Meta disguises its Rule 702 challenges to exclude the opinions of five expert witnesses and a nonretained expert as a single motion in limine premised on relevancy arguments. Not only is this procedurally improper, but it also seeks to relitigate issues that have already been decided by this Court.

Meta fundamentally mischaracterizes the AGs' claims. The AGs are challenging Meta's affirmative misrepresentations about its conduct, which are demonstrably false or misleading, including when contrasted with the feasible alternatives that Meta considered and deliberately chose not to implement. This evidence is thus relevant to the AGs' state consumer protection deception claims. Moreover, expert testimony that Meta had the capability to implement safer and/or more effective practices, but ultimately declined to do so, is directly relevant to what Meta actually knew and did. Therefore, evidence of what Meta could feasibly have implemented is probative of whether its practices were unfair or unconscionable under state consumer protection statutes, and whether Meta violated COPPA.[1]

Meta also erroneously argues that Section 230 and the First Amendment bar the AGs from introducing this evidence. The AGs' claims do not seek to hold Meta liable as a publisher of third-party content; rather, they seek to hold Meta accountable for (1) its own affirmative misrepresentations, which are not immunized by Section 230, (2) its own design features that the Court has already held do not implicate Section 230, and (3) COPPA violations, which the Court has held do not treat Meta as a publisher. Similarly, the First Amendment does not shield Meta from liability for unfair and deceptive acts and practices, or from liability under COPPA. Because Section 230 and the First Amendment do not bar those claims, evidence probative of those claims should be admitted. As such, Meta's motion in limine should be denied in full.

---

[1] To the extent that the AGs' experts propose alternative designs as potential injunctive relief, evidence of reasonable alternative designs is also probative for this reason as well.

## I.    ARGUMENT

Under Rule 403, relevant evidence may be excluded if its probative value is substantially outweighed by the danger of "unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. Trial courts have discretion to limit or exclude evidence under Rules 402 and 403. *U.S. v. Scholl*, 166 F.3d 964, 971 (9th Cir. 1999).

A motion in limine "should not be used to resolve factual disputes or weigh evidence." *BNSF Ry. Co. v. Quad City Testing Lab'y, Inc.*, 2010 WL 4337827, at *1 (D. Mont. Oct. 26, 2010). "Motions in limine are not to be used as a backdoor attempt to get around the scheduling order's deadline for the filing of Daubert motions." *Corcoran v. CVS Pharmacy*, 2021 WL 633809, at *6 (N.D. Cal. Feb. 18, 2021). And, crucially, motions in limine cannot be leveraged so a party can attempt a "second summary judgment motion" or seek to get a "second bite at the apple" to relitigate already-settled issues. *Razaghi v. Razaghi*, 2024 WL 4539244, at *3 (D. Nev. Oct. 21, 2024).

**A.  The challenged evidence is both relevant to and probative of the AGs' deception claims.**

Meta erroneously contends that evidence of reasonable alternative designs and policies are not relevant to or probative of the AGs' claims. However, that technologically feasible alternatives were available and deliberately discarded is central to showing the misleading nature of Meta's representations about what it did. The AGs allege that Meta made affirmative public misrepresentations regarding prioritization of wellbeing over profits, safety and addictiveness of the platforms, and effectiveness at keeping U13s off the platforms. *See, e.g.*, State AGs' Amend. Complaint, Dkt. 4:23-cv-05448, ECF 207, at ¶¶ 134–225; 414–29; *see also* Third Amend. Notice by State AGs re Actionable Misrepresentations, ECF 3144. To prove that these statements were deceptive, the AGs should be able to present evidence that Meta knew about reasonable alternative designs. This evidence shows that, by contrast, Meta knew about the comparable ineffectiveness of the measures it actually implemented.[2]

---

[2] Although relevant evidence may be excluded if its probative value is substantially outweighed by its likelihood of confusing the issues or wasting time, Fed. R. Evid. 403, that likelihood is vanishingly small here. The evidence of reasonable alternative designs is highly probative and central to the claims, as described below. Meta has not satisfactorily demonstrated any risk of juror confusion – a jury is completely capable of separating evidence of discarded alternatives from evidence of features Meta actually deployed. And, to the extent that Meta seeks to exclude testimony from Dr. Gray regarding

2

STATE ATTORNEYS GENERAL'S OPPOSITION TO META'S MOTION IN LIMINE NO. 2 TO PRECLUDE EVIDENCE SECOND-GUESSING META'S POLICIES AND PROCEDURES AS IRRELEVANT AND BARRED UNDER SECTION 230
4:22-md-03047-YGR; 4:23-cv-05448-YGR

**1. Testimony that Meta failed to prioritize health and safety over its business interests is relevant to the AGs' deception claims.**

Meta seeks a second attempt to exclude expert opinions from Dr. Adam Alter as to whether Meta's public representations were deceptive or misleading. Meta's MIL No. 2, ECF 3117, at 1 (seeking to exclude Alter Rpt. ¶ 188). Specifically, Meta seeks to exclude Alter's opinion that "Meta *could have done more* to prioritize tools designed to improve user well-being." *Id*. As an initial matter, this Court already heard Meta's Rule 702 motion seeking to exclude Alter's opinions, and Meta should not be able to shoehorn what are essentially Rule 702 arguments into this motion. Meta's statements about prioritizing profits over safety and the seriousness of its efforts to keep underage users off its platforms stand in direct contrast to the feasibility and effectiveness of various design and policy alternatives that Meta considered but ultimately did not implement. These statements, contrasted with the fact that Meta chose not to implement certain designs or policies that were available to them, are probative of whether Meta was actually prioritizing safety and wellbeing in line with its public representations.

**2. Expert testimony that Meta's platforms were designed to be addictive are relevant to the AGs' deception claims.**

Meta also seeks to exclude Dr. Ravi Iyer's opinions that the design of Meta's platforms optimized for engagement, not well-being. ECF 3117, at 2 (seeking to exclude Iyer Rpt. ¶¶ 47 and 54). But Meta has made numerous public representations claiming that its products are not designed to be addictive, and the evidence that Meta designed recommendation algorithms to optimize engagement is relevant to determining whether these statements are deceptive. Indeed, the existence and feasibility of alternative designs such as reverse chronological feed or feeds powered by explicit user preferences show that Meta deliberately made design choices that facilitated addiction, as opposed to less addictive alternatives. *See* Ex. A, Iyer Rpt. ¶¶ 20–26; Ex. B, Iyer Reb. Rpt. ¶¶ 38, 46; *see also* Ex. C, Narayanan Reb. Rpt. ¶¶ 51–52.

**3. Expert testimony that Meta declined to implement safer alternative designs are relevant to the AGs' deception claims.**

Meta seeks to exclude potential testimony from Dr. Gray, Mr. Bejar, and Mr. Estes as to the safer alternative designs that Meta could have but chose not to adopt. ECF 3117, at 1–2 (seeking to exclude

---

whether Meta acted in accordance with the ACM Code of Ethics and ABET standards, these codes set forth relevant industry standards within the field of engineering and computing design. Meta inaccurately conflates industry design standards with abstract "subjective ethical standards."

STATE ATTORNEYS GENERAL'S OPPOSITION TO META'S MOTION IN LIMINE NO. 2 TO PRECLUDE EVIDENCE SECOND-GUESSING META'S POLICIES AND PROCEDURES AS IRRELEVANT AND BARRED UNDER SECTION 230
4:22-md-03047-YGR; 4:23-cv-05448-YGR

Estes Rpt. ¶¶ 3, 4, 41, Gray Rpt. ¶¶ 73, 128, and State AGs' Non-Retained Expert Disclosure at 8–9 ("Disclosure")). Meta's statements that its platforms are safe for young users cannot be reviewed in a vacuum; their tendency to mislead must be assessed in the context of what other, safer options were available, and the fact that Meta considered and discarded alternatives. *See Zrowka v. BNSF Ry. Co.*, 2023 WL 3412465, at *1 (D. Mont. May 12, 2023) (references to safer alternative methods can be relevant, as "[t]he jury cannot be expected to determine reasonability in a vacuum").

### 4. Testimony regarding whether Meta effectively prevents U13s from using its platforms is relevant to the AGs' deception claims.

Meta also seeks to exclude expert opinions about the effectiveness of Meta's age assurance practices. ECF 3117, at 1–2 (seeking to exclude Estes Rpt. ¶¶ 60, 113; Sheatsley Rpt. ¶¶ 8, 200; Gray Rpt. ¶ 127; Disclosure at 11). Meta publicly claims that it effectively keeps U13s off its platforms. Evidence of Meta's age assurance and related practices are thus directly relevant to determining whether those statements are false or misleading. Expert testimony that there were technologically feasible and cost-effective alternatives that Meta chose not to implement directly contradict these statements. *See Eisenbise v. Crown Equip. Co.*, 260 F. Supp. 3d 1250, 1259-60 (S.D. Cal.) (expert's opinion as to safer alternative designs was relevant); *In re Bard Implanted Port Catheter Prods. Liab. Litig.*, 2026 WL 923452, at *6 (D. Ariz. Apr. 6, 2026) (denying Defendants' motion to exclude evidence of reasonable alternative designs). And, evidence that Meta knew its age assurance policies were ineffective is probative of whether Meta's public representations convey a complete and accurate picture of its practices.

Meta even second-guessed its own age gate design by changing the default age at sign-up various times. *See* State AGs' Opp. to Meta's Mot. for Summ. J., ECF 2779, at 53 n. 82. Evidence of Meta's knowledge and consideration of other reasonable alternative designs, and subsequent failure to implement those more effective designs (including both expert testimony and Meta's own internal documents), is probative of whether Meta was in fact effectively preventing U13s from using its platforms.

Meta has acknowledged the relevance of this alternative design evidence by endorsing experts who put forth affirmative opinions regarding the reasonableness of Meta's age verification practices. *See, e.g.*, Ex. D, Wirth Rpt. ¶ 50-55; Ex. E, Memon Rpt. ¶ 63; ("Meta's multi-layered age verification processes, designed to enforce its platforms' age restrictions, are reasonable and met or exceeded prevailing industry

practices throughout the relevant period."); Ex. F, Memon Dep. 267:15-268:20. Because Meta has put its policies and practices at issue in its defense, Meta cannot now exclude the AGs from pointing to evidence of reasonable alternative designs. *See Zrowka*, 2023 WL 3412465, at *1.

### B. The challenged evidence is probative of the AGs' unfairness claims.

Evidence of reasonable alternative designs or policies is relevant and probative of whether Meta's conduct was unfair or unconscionable. For instance, evidence of reasonable alternative designs for time restriction tools is highly probative of the reasonableness of Meta's conduct. Meta's decision to make its time restriction tools opt-in as opposed to opt-out, or in making those tools easily dismissible, is probative of whether harms resulting from extended use were reasonably avoidable. In addition, evidence that Meta possessed superior technology to detect U13s (e.g. soft-matching) and deliberately chose not to deploy those methods is probative of Meta's unfair and unconscionable conduct. Similarly, if other peer companies can successfully implement alternative age verification processes like credit card age verification, Meta's failure to implement the same would fall short of commonly accepted industry standards, and Meta's choice to not take those approaches is further evidence of unfair and unconscionable conduct.

### C. The challenged evidence is probative of the AGs' COPPA claims.

As discussed above, Meta also seeks to exclude expert testimony about which age assurance policies could have been implemented. ECF 3117, at 1–2 (seeking to exclude Estes Rpt. ¶¶ 60, 113; Sheatsley Rpt. ¶¶ 8, 200; Gray Rpt. ¶ 127; Disclosure at 11). Evidence that Meta possessed the technical capabilities to detect and remove U13s with greater precision and efficacy, and then declined to implement such capabilities, is at the core of the AGs' COPPA claims. *See* State AGs' Mot. Partial Summ. J., ECF 2695, at 4, 24–26. Whether Meta had actual knowledge that users were under 13 depends in large part on what Meta's underage detection capabilities were, and what techniques and signals were available that Meta chose to ignore.

For example, Meta had the technical capabilities to use probabilistic soft-matching to identify accounts linked to known U13 users, and acknowledged that it was "difficult to defend the use of [soft-matching] for advertising purposes without also using these links for age management." *See* Ex. G, Hartnett Dep. Ex. 27 at META3047MDL-050-00014485. The AGs' expert Dr. Sheatsley analyzed Meta's

data on which accounts its soft-matching models accurately predicted belonged to the same users, and he determined how many accounts Meta predicted to belong to underage users but allowed to remain on the platform (while continuing to collect their data). Ex. H, Sheatsley Rpt. ¶¶ 8, 200. In addition, Meta documents discuss how employees did not want news to leak that Meta was internally testing new applications for its age-detection tools, because otherwise the company would "face significant policy pressure to use techniques like this, to enforce age restrictions," and "[i]f the pressure got high enough, which is possible, we might have to pro-actively try to identify and then remove everyone under 13 from Facebook & Messenger." *See* Ex. I, META3047MDL-277-00000447. The business decision not to implement soft-matching and heuristic age detection models for underage enforcement were calculated to allow Meta to turn a willfully blind eye to the presence of U13s on its platforms.

Evidence of Meta's shoddy age verification system and of the more effective age verification systems that Meta chose not to implement are also probative of the State AGs' claim that Meta's platforms are directed to children under COPPA. Meta incorrectly claims that its policy nominally prohibiting U13s from its platforms, and its (deficient) efforts to remove them, mean that its platforms cannot be directed to children. *See* Meta's Mot. Summ. J, ECF 2704, at 64–66 ("It would be illogical for Meta to block and try to remove U13s if the goal of the platforms were to achieve a U13 audience."); *see, e.g.*, Ex. D, Wirth Rpt. ¶¶ 12, 58. And again, Meta has put the reasonableness of its policies at issue, so the State AGs should likewise be able to present evidence that Meta's practices were ineffective compared to the available alternatives. *See Zrowka*, 2023 WL 3412465, at *1.

**D. The State AGs' unfairness, deception, and COPPA claims are not barred by Section 230.**

Meta argues that Section 230 bars testimony that Meta could have or should have been more effective at enforcing its own policies or should have adopted different policies or practices. As discussed above, this evidence is relevant the State AGs' unfairness, deception, and COPPA claims. None of those claims are barred by Section 230. *First*, with regard to unfairness, the State AGs' claims are rooted directly in Meta's own conduct—addictive design and business priorities; internal product design decisions; and age-assurance practices, including with respect to verification, detection, and deletion of U13 accounts—not third-party content. This Court has already specifically addressed this issue with respect to age verification and other features, ECF 430 at 15; *see also* State AGs' Opp. to Meta's MIL No. 5, and the

6

Court should not entertain Meta's attempt to relitigate the issue through a motion in limine. *Second*, with regard to deception, the State AGs' claims are based on whether Meta misrepresented its priorities, the impacts of its platforms on safety and wellbeing, and the presence of U13s on the platforms. The State AGs' deception claims thus seek to hold Meta liable for its own conduct based on its own knowledge in making a misrepresentation, not for third-party content, and are not barred by Section 230. *See generally* State AGs' Opp. to Meta's MIL No. 4. *Finally*, with regard to COPPA, the Court has held that "COPPA [claims] also do not treat defendants as publishers." ECF 430, at 20; *see also* Order, ECF 1214, at 21 n.17. A motion in limine is not the proper vehicle to relitigate that holding. In sum, because the State AGs' unfairness, deception, and COPPA claims are not barred by Section 230, evidence relevant to those claims should not be excluded.

**E. The State AGs' unfairness, deception, and COPPA claims are not barred by the First Amendment.**

Meta contends that the First Amendment bars evidence related to its platform's entire backend architecture, recommendation algorithm framework, and age-assurance structure. Again, as discussed above, this evidence is relevant to the State AGs' unfairness, deception, and COPPA claims. None of those claims are barred by the First Amendment. *First*, with regard to unfairness, because the State AGs' unfairness claims challenge what Meta does—designing and implementing harmful platform features—the claims regulate non-expressive conduct and are not subject to heightened scrutiny. *See* State AGs' Opp. to Meta's MIL No. 5. Further, the State AGs' unfairness claims do not implicate *Moody v. Netchoice, LLC* because they do not address Meta's content moderation standards. 603 U.S. 707, 718 (2024); *see also* State AGs' Opp. to Meta's MIL No. 5. *Second*, with regard to deception, as the State AGs argued in their response to Meta's motion for summary judgment,  ECF 2779, at 21, their deception claims challenge Meta's commercial speech because the challenged statements reflect a commercial actor's description of the attributes of its goods and services on matters relevant to consumers' decision-making. *See*, *e.g.*, *CTIA - The Wireless Ass'n v. City of Berkeley*, 928 F.3d 832, 848 (9th Cir. 2019). Further, the statements challenged by those claims are misleading because they concealed the potential harms and dangers associated with Meta product use. *See In re R. M. J.*, 455 U.S. 191, 202 (1982). This misleading commercial speech is not protected. *See Cent. Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n of New*

*York*, 447 U.S. 557, 563 (1980). *Finally*, with regard to COPPA, because the State AGs' claims target Meta's conduct—"fail[ing] to provide required notice and obtain parental consent before collecting certain information from children," ECF 430 at 20—the State AGs' claims regulate non-expressive conduct and are not subject to heightened scrutiny. *Sorrel v. IMS Health Inc.*, 564 U.S. 552, 567 (2011) (noting that "restrictions on protected expression are distinct from restrictions . . . on nonexpressive conduct."). In sum, because the State AGs' unfairness, deception, and COPPA claims are not barred by the First Amendment, evidence relevant to those claims should not be excluded.

## CONCLUSION

For the foregoing reasons, this court should deny Meta's motion in limine to exclude evidence "second-guessing" its policies by offering examples of reasonable alternative designs.

DATED: 6/17/2026                                Respectfully submitted,

**PHILIP J. WEISER**                            **ROB BONTA**
Attorney General                                Attorney General
State of Colorado                               State of California

*/s/ Krista Batchelder*                         */s/ Megan O'Neill*
Krista Batchelder, CO Reg. No. 45066, *pro*     Nicklas A. Akers (CA SBN 211222)
*hac vice*                                      Senior Assistant Attorney General
Deputy Solicitor General                        Bernard Eskandari (SBN 244395)
Jason Slothouber, CO Reg. No. 43496,            Emily Kalanithi (SBN 256972)
*pro hac vice*                                  Supervising Deputy Attorneys General
Chief Trial Counsel, Consumer Protection        Nayha Arora (CA SBN 350467)
Lauren M. Dickey, CO Reg. No. 45773, *pro*      David Beglin (CA SBN 356401)
*hac vice*                                      Megan O'Neill (CA SBN 343535)
First Assistant Attorney General                Joshua Olszewski-Jubelirer (CA SBN
Elizabeth Orem, CO Reg. No. 58309               336428)
Assistant Attorney General                      Marissa Roy (CA SBN 318773)
Colorado Department of Law                      Brendan Ruddy (CA SBN 297896)
Ralph L. Carr Judicial Center                   Deputy Attorneys General
Consumer Protection Section                     California Department of Justice
1300 Broadway, 7th Floor                        Office of the Attorney General
Denver, CO 80203                                455 Golden Gate Ave., Suite 11000
Phone: (720) 508-6000                           San Francisco, CA 94102-7004
Krista.Batchelder@coag.gov                      Phone: (415) 510-4400
                                                Fax: (415) 703-5480
*Attorneys for Plaintiff State of Colorado, ex* Megan.ONeill@doj.ca.gov
*rel. Philip J. Weiser, Attorney General*
                                                *Attorneys for Plaintiff the People of the State*
                                                *of California*

STATE ATTORNEYS GENERAL'S OPPOSITION TO META'S MOTION IN LIMINE NO. 2 TO PRECLUDE EVIDENCE SECOND-GUESSING META'S
POLICIES AND PROCEDURES AS IRRELEVANT AND BARRED UNDER SECTION 230
4:22-MD-03047-YGR; 4:23-CV-05448-YGR

| **RUSSELL COLEMAN** | **JENNIFER DAVENPORT** |
|---|---|
| Attorney General | Attorney General |
| Commonwealth of Kentucky | State of New Jersey |
| | |
| /s/ *Zachary Richards* | By: /s/ *Thomas Huynh* |
| J. Christian Lewis (KY Bar No. 87109), | Kashif T. Chand (NJ Bar No. 016752008), |
| *pro hac vice* | *Pro hac vice* |
| Philip Heleringer (KY Bar No. 96748), | Assistant Attorney General |
| *pro hac vice* | Thomas Huynh (NJ Bar No. 200942017), |
| Zachary Richards (KY Bar No. 99209), | *Pro hac vice* |
| *pro hac vice* | Section Chief, Deputy Attorney |
| Daniel I. Keiser (KY Bar No. 100264), | General |
| *pro hac vice* | Verna J. Pradaxay (NJ Bar No. 335822021), |
| Matthew Cocanougher (KY Bar No. 94292), | *Pro hac vice* |
| *pro hac vice* | Mandy K. Wang (NJ Bar No. 373452021), |
| Assistant Attorneys General | *Pro hac vice* |
| 1024 Capital Center Drive, Ste. 200 | Deputy Attorneys General |
| Frankfort, KY 40601 | New Jersey Division of Law |
| Christian.Lewis@ky.gov | 124 Halsey Street, 5th Floor |
| Philip.Heleringer@ky.gov | Newark, NJ 07101 |
| Zach.Richards@ky.gov | Kashif.Chand@law.njoag.gov |
| Daniel.Keiser@ky.gov | Thomas.Huynh@law.njoag.gov |
| Matthew.Cocanougher@ky.gov | Verna.Pradaxay@law.njoag.gov |
| Phone: (502) 696-5300 | Mandy.Wang@law.njoag.gov |
| Fax: (502) 564-2698 | |
| | *Attorneys for Plaintiffs Jennifer Davenport,* |
| *Attorneys for Plaintiff the Commonwealth of* | *Attorney General for the State of New Jersey,* |
| *Kentucky* | *and Jeremy E. Hollander, Acting Director of* |
| | *the New Jersey Division of Consumer Affairs* |

## <u>SIGNATURE CERTIFICATION</u>

Under Civ. L.R. 5-1(h)(3), I hereby attest that all signatories listed, and on whose behalf the filing is submitted, concur in this filing's content and have authorized this filing.

DATED: 06/17/2026

/s/ *Zachary Richards*
_____
Zachary Richards

*Attorney for Plaintiff the Commonwealth of Kentucky*