# Exhibit F

CONFIDENTIAL

Page 1

SUPERIOR COURT OF THE STATE OF CALIFORNIA
FOR THE COUNTY OF LOS ANGELES
SPRING STREET COURTHOUSE

COORDINATION PROCEEDING           )
SPECIAL TITLE [RULE               )
3.400]                            )
                                  )   JCCP No. 5255
IN RE: SOCIAL MEDIA               )
ADOLESCENT ADDICTION              )   For Filing Purposes
(JCCP No. 5255)                   )   22STCV21355
                                  )
_____   )
                                  )
THIS DOCUMENT RELATES TO:         )
                                  )
Cristina Arlington Smith,         )
et al. TikTok Inc., et            )
al, Case No. 22STCV21355          )
Los Angeles Superior              )
Court                             )
                                  )

                        - - - -
                      CONFIDENTIAL
                  ATTORNEYS' EYES ONLY
                    VIDEO-RECORDED
               EXPERT WITNESS TESTIMONY OF
                    NASIR MEMON, Ph.D.
                    (Pages 1 - 418)
              Held at the Covington & Burling
       415 Mission Street, San Francisco, California
          Thursday, August 14, 2025, 9:29 a.m.
        REPORTED BY:  ELAINA BULDA-JONES, CSR 11720

CONFIDENTIAL

Page 266

that and this was provided to me in an edited manner and I looked at it and compared and then I said okay, this says everything that I agree with and I approved it, yes.

BY MR. OLSZEWSKI-JUBELIRER:

Q.   So counsel, your Meta's lawyers, made changes to your initial report?

A.   Yes.

Q.   In the JCCP?

A.   Yes.

Q.   To prepare a report for the -- to file in the State AGs' case in the MDL?

A.   To help me.

MR. CHAPUT:  Object to the form.

THE WITNESS:  Yes.

BY MR. OLSZEWSKI-JUBELIRER:

Q.   Okay.  Let's talk about your assignment for that -- for the report that you served in the MDL.  This is paragraph 9 on page 6.

Are you there?

A.   Yeah.

Q.   This paragraph reads, "In connection with these claims, I have been asked to review expert reports submitted on behalf of Plaintiffs on May 16, 2025, and respond to the opinions regarding Meta's

CONFIDENTIAL

Page 267

age verification systems."

A.    Uh-huh.

Q.    Is that correct?

A.    Uh-huh.

Q.    This was the full scope of your assignment for your expert opinions in the MDL?

MR. CHAPUT:  Object to form.

THE WITNESS:  I'm sorry, I got lost on the pages.  So assignment 8 -- paragraph 8, is it?

BY MR. OLSZEWSKI-JUBELIRER:

Q.    This is paragraph 9.

A.    Nine.

Q.    On page 6.

A.    Yes.  And that's what I did, yes.

Q.    That is the full scope of your assignment for preparing your expert opinions in the MDL; is that correct?

MR. CHAPUT:  Object to the form. Characterization.

THE WITNESS:  Oh, I -- I think the full scope also included my opinions on the age verification techniques used by Meta.  And those are sort of replicated here, more or less, a little fashion, right, they're replicated here, reflected here as well.

Page 268

BY MR. OLSZEWSKI-JUBELIRER:

Q.   So your assignment was also to affirmatively describe the reasonableness of Meta's age verification systems; is that right?

MR. CHAPUT:  Object to form.

THE WITNESS:  That's the way I looked at the report, yes, because it talks about the same things that -- regarding -- it describes my opinions about them, the age verification report.

BY MR. OLSZEWSKI-JUBELIRER:

Q.   Okay.  The two things that we've described are responding to expert reports submitted by plaintiffs in the MDL and affirmatively describing the reasonableness of Meta's age verification systems.

Is that the full scope of your assignment for your expert work in the MDL?

MR. CHAPUT:  Object to form.

THE WITNESS:  I would think so, yes, yes, that's what it was.

BY MR. OLSZEWSKI-JUBELIRER:

Q.   Your expert report in the MDL discusses which plaintiffs' expert reports you considered and were responding to, correct?

A.   It would, yes.

CONFIDENTIAL

Page 269

Q.    Okay.  So if we look at page 61, for example, that's part of your materials considered list, and it lists five expert reports that you reviewed?

A.    Yes.

Q.    Okay.  Are you aware that only one of those experts, Dr. Colin Gray, submitted a report in the State AGs' case?

A.    Yes, I -- I was informed about that, yes.

Q.    And the other four experts did not submit reports in the State AGs' case; is that right?

A.    But -- they did not, but I was looking at the -- the broader sort of landscape in my response. And talked about all the experts' reports where my opinions were impacted or questioned.  Where I could offer something.  So it was given that broader scope.

Q.    Which sections of your report respond specifically to Dr. Gray's opinions?

MR. CHAPUT:  Object to form.

THE WITNESS:  It is scattered because, depending on the points, they are organized, right. Dr. Gray does -- says this in this particular topic, that topic, so off the top of my head I can't point you, yeah.

CONFIDENTIAL

Page 270

BY MR. OLSZEWSKI-JUBELIRER:

Q.    Looking through the report, how would you find out which sections of the report respond specifically to Dr. Gray's opinions as opposed to the opinions of other experts who were not -- did not prepare reports for the State AGs' case?

A.    I would search for his name.

Q.    Okay.  You would -- and, for example, there are footnotes --

A.    Sure.

Q.    -- for Dr. Gray's name in the text that show where the report responds specifically to Dr. Gray's opinions, correct?

MR. CHAPUT:  Object to form.

THE WITNESS:  There are notes that specify that, yes.

BY MR. OLSZEWSKI-JUBELIRER:

Q.    Okay.  You list several opinions in paragraph 14 and 15 of your report.  This is page 7 -- I'm sorry, page 8.

A.    Yeah.

Q.    Okay.  So paragraph 15 are specific opinions about what you're describing in paragraph 14, which is whether "Meta's implementation of measures designed to prevent the