[*Submitting Counsel on Signature Page*]

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| IN RE: SOCIAL MEDIA ADOLESCENT ADDICTION/PERSONAL INJURY PRODUCTS LIABILITY LITIGATION<br><br>THIS DOCUMENT RELATES TO:<br><br>4:23-cv-05448 | MDL No. 3047<br><br>Case No. 4:22-md-03047-YGR<br><br>**RESPONSE TO COURT'S ORDER TO PROVIDE DOCUMENTATION REGARDING CERTAIN META MISREPRESENTATIONS**<br><br>Judge: Hon. Yvonne Gonzalez Rogers<br><br>Magistrate Judge: Hon. Peter H. Kang |

Pursuant to the Court's instructions at the June 26, 2026 Pretrial Conference, the State Attorneys General ("State AGs") provide the attached documentation regarding the factual basis for Statement Nos. 66 and 74's tendency to deceive. The State AGs can furnish additional documents regarding these or other misrepresentations, should the Court require additional documentation. The State AGs also will provide the full evidentiary foundation for all misrepresentations they intend to pursue at trial when they file their Proposed Findings of Fact & Conclusions of Law on July 31. As argued in response to Meta's Motion in Limine #4, ECF 3121, the State AGs assert that their deception claims based on Meta's misrepresentations are not subject to Section 230, regardless of whether the misrepresentations concern third-party content, since those claims are based on Meta's own conduct and independent knowledge. *See* ECF 3154.

1

Statement No. 66 reads: "█████████ stated that some posts seen by M.R. on Instagram before her suicide were 'safe' for children to see." Statement No. 74 reads: "While we allow people to discuss their experiences with suicide and self-harm—as long as it's not graphic or promotional—this year we've taken important steps to make this content harder to find in Search and to hide it completely from teens, even if it's shared by someone they follow."

The following documents relate to the suicide and self-injury content that M.R. was exposed to on Meta's platforms before her suicide, as well as Meta's suicide and self-injury content policies. The documents are relevant to the AGs' allegations that Statements No. 66 and 74—asserting that the suicide and self-injury content that M.R. was exposed to was "safe" for children to see and that Meta does not allow graphic or promotional suicide and self-injury content on the platforms—are false or misleading. The documents are also relevant to several other statements listed in the AGs' misrepresentation chart, including statements about platform safety and age appropriateness, such as Statement No. 81.

- **Ex. A, Email Correspondence, META3047MDL-003-00175144 at -51, -53:** Email correspondence among Instagram leadership team discussing four proposed platform changes to decrease visibility of self-harm content, most of which were not subsequently enacted. A Meta employee cautions that "those [changes] will take a while, especially because there is no I[nstagram] P[rogram Manager] for self injury." Nick Clegg, Meta's President of Global Affairs, expresses concerns about the likely efficacy of the proposed changes: "The fact that we have age limits which are unenforced (unenforceable?) and that there are, as I understand it, important differences in the stringency of our policies on I[nstagram] vs [Facebook] makes it difficult to claim we are doing all we can."

- **Ex. B, Email Correspondence, META3047MDL-014-00159844:** Email discussing a gap in Instagram's enforcement of graphic or promotional suicide self-injury content, stating that "the bottom line is that I[nstagram] is violating our policies—not users! I[nstagram] is choosing to display images in a violating way for any policy area where the caption matters . . . topics like hate, violence, bullying, SSI."

- **Ex. C, Email Correspondence, META3047MDL-050-00334656:** Email debriefing news article on M.R. suicide: "While I'd love to say we have no open risks, there's enough at 'risk' maturity to keep me up at night (especially as we look across the family of apps)."

- **Ex. D, Chat Transcript, META3047MDL-146-00091654:** Meta employee states that "we are not aligned with experts that much" on how to handle SSI content and "we are doing bad [things] like leaving [SSI content] up and discoverable and no one thinks that's good." Another employee states that "the discoverability thing is REALLY bad," and that "the way I[nstagram] displays [this] stuff in search definitely violates our policies."

- **Ex. E, Email Correspondence, META3047MDL-004-00024089 at -89-90:** Email chain discussing various proposed platform changes to reduce risk of users encountering self-harm content, responding to Nick Clegg's observation that "we don't have a simple, human answer to why I[nstagram] carried harrowing self harm images that no reasonable person think [sic] should have appeared, and which seem to serve no self-help purpose whatsoever." Monica Bickert responds to these proposed platform changes by saying "I am just setting expectations internally that my team can't execute on most of this stuff - it is about tech resources. We wouldn't say this externally."

- **Ex. F, Email Correspondence, META3047MDL-004-00025195:** Email chain after Meta's response to the M.R. suicide had largely concluded, wherein Nick Clegg stated that "I pretty well had to yell at a room full of senior FB folk before we got some movement" on changing policies concerning self-harm content on the Instagram platform.

- **Ex. G, Email Correspondence, META3047MDL-004-00025341 at -41-42:** Email exchange involving Nick Clegg and other Facebook policy leaders stating that "it was not till the large meeting in Sheryl's office . . . that there was any recognition that the policy was too heavily skewed towards the needs of those committing SSI rather than those susceptible to copying it. The lack of connection between what we commit to publicly and what we do internally really worried, and slightly shocked, me." Clegg's statement responded to an earlier email observing that "the safety policy team was slower than they could have been to schedule meet with experts

. . . and failed to communicate/anticipate eventual policy changes" and that "[w]e strategically de-prioritized SSI product work on I[nstagram]."

RESPONSE TO COURT'S ORDER TO PROVIDE DOCUMENTATION REGARDING CERTAIN META MISREPRESENTATIONS
4:22-md-03047-YGR; 4:23-cv-05448-YGR

DATED: 6/29/2026

Respectfully submitted,

**PHILIP J. WEISER**
Attorney General
State of Colorado

*/s/ Krista Batchelder*
Krista Batchelder, CO Reg. No. 45066, *pro hac vice*
Deputy Solicitor General
Jason Slothouber, CO Reg. No. 43496, *pro hac vice*
Chief Trial Counsel, Consumer Protection
Lauren M. Dickey, CO Reg. No. 45773, *pro hac vice*
First Assistant Attorney General
Elizabeth Orem, CO Reg. No. 58309
Assistant Attorney General
Colorado Department of Law
Ralph L. Carr Judicial Center
Consumer Protection Section
1300 Broadway, 7th Floor
Denver, CO 80203
Phone: (720) 508-6000
Krista.Batchelder@coag.gov

*Attorneys for Plaintiff State of Colorado, ex rel. Philip J. Weiser, Attorney General*

**ROB BONTA**
Attorney General
State of California

*/s/ Jordan Hefcart*
Nicklas A. Akers (CA SBN 211222)
Senior Assistant Attorney General
Bernard Eskandari (SBN 244395)
Emily Kalanithi (SBN 256972)
Supervising Deputy Attorneys General
Nayha Arora (CA SBN 350467)
David Beglin (CA SBN 356401)
Megan O'Neill (CA SBN 343535)
Joshua Olszewski-Jubelirer (CA SBN 336428)
Marissa Roy (CA SBN 318773)
Brendan Ruddy (CA SBN 297896)
Jordan Hefcart (CA SBN 366087)
Deputy Attorneys General
California Department of Justice
Office of the Attorney General
455 Golden Gate Ave., Suite 11000
San Francisco, CA 94102-7004
Phone: (415) 510-4400
Fax: (415) 703-5480
Megan.ONeill@doj.ca.gov
*Attorneys for Plaintiff the People of the State of California*

**RUSSELL COLEMAN**
Attorney General
Commonwealth of Kentucky

/s/ *Matthew Cocanougher*
J. Christian Lewis (KY Bar No. 87109),
*pro hac vice*
Philip Heleringer (KY Bar No. 96748),
*pro hac vice*
Zachary Richards (KY Bar No. 99209),
*pro hac vice*
Daniel I. Keiser (KY Bar No. 100264),
*pro hac vice*
Matthew Cocanougher (KY Bar No. 94292),
*pro hac vice*
Assistant Attorneys General
1024 Capital Center Drive, Ste. 200
Frankfort, KY 40601
Christian.Lewis@ky.gov
Philip.Heleringer@ky.gov
Zach.Richards@ky.gov
Daniel.Keiser@ky.gov
Matthew.Cocanougher@ky.gov
Phone: (502) 696-5300
Fax: (502) 564-2698

*Attorneys for Plaintiff the Commonwealth of Kentucky*

**JENNIFER DAVENPORT**
Attorney General
State of New Jersey

By: /s/ *Thomas Huynh*
Kashif T. Chand (NJ Bar No. 016752008),
*Pro hac vice*
Assistant Attorney General
Thomas Huynh (NJ Bar No. 200942017),
*Pro hac vice*
Section Chief, Deputy Attorney General
Verna J. Pradaxay (NJ Bar No. 335822021),
*Pro hac vice*
Mandy K. Wang (NJ Bar No. 373452021),
*Pro hac vice*
Deputy Attorneys General
New Jersey Division of Law
124 Halsey Street, 5th Floor
Newark, NJ 07101
Kashif.Chand@law.njoag.gov
Thomas.Huynh@law.njoag.gov
Verna.Pradaxay@law.njoag.gov
Mandy.Wang@law.njoag.gov

*Attorneys for Plaintiffs Jennifer Davenport, Attorney General for the State of New Jersey, and Jeremy E. Hollander, Acting Director of the New Jersey Division of Consumer Affairs*

## <u>SIGNATURE CERTIFICATION</u>

Under Civ. L.R. 5-1(h)(3), I hereby attest that all signatories listed, and on whose behalf the filing is submitted, concur in this filing's content and have authorized this filing.

DATED: 06/29/2026

/s/ *Jordan Hefcart*
Jordan Hefcart

*Attorney for Plaintiff People of the State of California*