*[Parties and counsel listed on signature pages]*

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| IN RE: SOCIAL MEDIA ADOLESCENT ADDICTION/PERSONAL INJURY PRODUCTS LIABILITY LITIGATION<br><br>This Document Relates To:<br><br>*ALL ACTIONS* | MDL No. 3047<br><br>Case No.: 4:22-md-03047-YGR<br><br>**AGENDA AND JOINT STATEMENT FOR JULY 17, 2026 FINAL PRETRIAL CONFERENCE (MDL AG ACTION)**<br><br>Judge: Hon. Yvonne Gonzalez Rogers<br>Magistrate Judge: Hon. Peter H. Kang |

## I.  Proposed Agenda

- Argument on State AGs' Penalty and Disgorgement Charts and Supporting Materials (ECF 444 (3217)) and Meta's Submission Re Same (ECF 455 (3237))[1]

- Argument on Parties' Proposed Jury Instructions and Special Verdict Forms (ECF 459 (3241))[2]

- Collateral Order Appeal (*see* § IV(A))

- Meta's Proposal to Schedule Separate Remedies Phase of Trial (*see* § IV(B))

- Meta's Requests for Clarification re Court's *in Limine* Rulings (Pretrial Order No. 4) (*see* § IV(C))

- Witness Issues (*see* § IV(D))

- Exhibit Admissibility and Custodians (State AGs) (*see* § IV(E))

- Personal injury cases recently transferred to MDL with hearings noticed for July 17, 2026:

    o  *Sullivan* (4:25-cv-05081-YGR) – MTDs (ECF 39, MDL No. 3101; ECF 44, 45); Plaintiffs' Motion to Remand (ECF 9; 23; 24); Plaintiffs' Motion to Remand (ECF 9; 23, 24)

    o  *Vuckovich* (4:26-cv–06333-YGR) – Plaintiff's Motion to Remand (ECF 4, 5, 15, 16)

## II.  Joint Update

The Parties have continued conferring on Trial, Deposition Designations, Sealing, and Remote Video Access Protocols, and report the following progress:

- The Parties expect to reach agreement to exchange **deposition designations** before trial for all witnesses listed as "will calls" on the Parties' July 9 witness lists, and to then follow a protocol closely aligned with that proposed in *Breathitt* for the remaining witnesses.

- The Parties have agreed, subject to Court approval, to **post admitted exhibits** (with redactions) to both ECF and to a standalone website by midnight the day the exhibit is admitted or, if there are any redaction disputes, by midnight the next day after presentation to the Court that morning.

---

[1] The Court ordered the AGs to "submit a statement of no more than three (3) pages … in response to [Meta's] argument that they are seeking duplicative recoveries."  ECF 462 (3244) at 1.  As the party seeking relief, Meta requests leave to file a reply to that statement.  *See Iglesia Ni Cristo v. Cayabyab*, No. 18-cv-00561-BLF, slip. op. (N.D. Cal. Feb. 19, 2020) ("Plaintiff has not shown an adequate basis for deviation from the normal briefing practice that gives the moving party the last word.").

[2] The AGs would like to discuss with the Court as part of this argument the extent to which further instructions should be given to the advisory jury on Meta's defenses, beyond those reflected in the Parties' July 9 submission.  Meta does not believe anything further should be submitted to the advisory jury on Meta's defenses, which are either predominately legal in nature or not *affirmative* defenses.

1

- The Parties have agreed to the same framework for a **restricted video feed** that was used in the first JCCP trial, and to which the *Breathitt* parties agreed, *see* ECF 2941, and respectfully request confirmation that the Court is amenable to facilitating such access for the MDL AG trial.

***Pretrial Updates.*** Per the Pretrial Schedule (ECF 3139-1), *as amended* ECF 437 (3210), the Parties have made the following pretrial submissions: (1) proposed **questions for the juror questionnaire** (filed June 17, *see* ECF 391 (3151), 393 (3153)); (2) **exhibit lists** (filed June 17, *see* ECF 400 (3160), 436 (3170); (3) **joint statement of the case** (filed July 2, *see* ECF 452 (3231)); (4) proposed **jury instructions and special verdict forms** (filed July 9, *see* ECF 459 (3241)); (5) **witness lists** (filed July 9, *see* ECF 460 (3242), 461 (3243)); (6) **deposition and discovery designations/objections** (deposition disputes filed June 30, *see* ECF 446 (3220), discovery disputes filed July 8, *see* ECF 458 (3240)); and (7) **trial/evidentiary stipulations** (due July 13; *see also* ECF 448 (3224) (standard stipulations)).

***Pending Submissions.*** The following submissions remain pending before the Court:

- Meta's Rule 702 motions (fully briefed April 24) as to Carl Saba (ECF 276 (2845), 409-42 (2913), 304 (2990)) and Justin McCrary (ECF 409-18 (2843), 409-21 (2915), 409-25 (2988))

The Parties seek approval to hold the deposition of Mr. Wakefield, one of the three Meta 30(b)(6) witnesses, on July 24, seven days after the current deadline for such depositions per ECF 439 (3212) at 2.

## III.    Disputed/Other Issues

### A.    Collateral Order Appeal

**Meta's Position:** Meta is mindful that the Court has previously indicated that the pending collateral order appeal would not delay the trial, but re-states its position that the Court is "automatically divested of jurisdiction to proceed *with trial*" on the AGs' consumer protection claims during the pendency of the appeal. *Chuman v. Wright*, 960 F.2d 104, 105 (9th Cir. 1992) (emphasis added) (citing *U.S. v. Claiborne*, 727 F.2d 842, 850 (9th Cir. 1984)); *see* ECF 2191 at 10–11. Trial of those claims could proceed only if the Court were to find waiver or frivolity, *see id.*, but any such finding is foreclosed by the Ninth Circuit briefing (including the AGs' MTD, which did not assert frivolity as a basis for dismissal), and by the Ninth Circuit's deferral of Plaintiffs' MTDs the appeal pending merits resolution.

The appeal addresses some of the same issues the AGs seek to try. *See Claiborne*, 727 F.2d at 850 (jurisdiction-divesting rule was "devised … to avoid confusion or waste of time resulting from having the same issues before two courts at the same time"). While the AGs have attempted to disclaim any overlap

between their claims and the issues on appeal, they continue to assert omissions-based theories that are inherently bound up with the issues before the Ninth Circuit.[3]  Notably, the AGs previously recognized that even their *cross-appeal* would "impact[ their] ability to go to trial."  2/12/25 Tr. at 48:21–23.

If the Court intends to proceed to trial notwithstanding the pending appeal, Meta wishes to apprise the Court that it would then seek a stay from this Court and, if necessary, the Ninth Circuit.

**State AGs' Position:** The "divestiture of jurisdiction rule … is a judge made rule," not a true jurisdictional bar. *Rodriguez v. Cty. of L.A.*, 891 F.3d 776, 790 (9th Cir. 2018). So, "an error in following [the Ninth] circuit's divestiture procedure does not entirely eliminate the authority of the district court to hear a case." *Id.* at 791. If the Court allows the case to proceed to trial, the Ninth Circuit would "appl[y] harmless error analysis." *Id.*

In any case, even if the Court could be divested of jurisdiction, it has at most been divested of jurisdiction[4] to hold a trial on the issues raised on appeal. *Suzuki v. Cnty. of Contra Costa*, No. 18-CV-06963-SI, 2019 WL 4674418, at *1 (N.D. Cal. Sept. 25, 2019). Meta's appeal was limited to the question of whether the Court erred in "den[ying] the Meta Defendants' motions to dismiss claims for *failure to warn* of alleged risks relating to certain platform features as barred by … Section 230 … when claims targeting the same underlying platform features are barred by Section 230." Dkt. 1330, p. 3 (emphasis added). The State AGs do not bring failure to warn claims, nor are any of their deception claims based on pure omissions. Dkt. 2779, p. 3, n.1.

If Meta believed that the Court was deprived of jurisdiction regarding the AGs' deception claims, it should not have filed an MSJ regarding them. Instead, it should have moved to stay any further proceedings regarding the issues on appeal. Because Meta has not objected to the case proceeding until

---

[3] For instance, the AGs propose instructions (1) that "Meta violated the CCPA by failing to disclose material information" and (2) that "the knowing concealment, suppression, or omission of any material fact with intent that others rely upon such concealment" violates NJ law.  To be clear, these instructions should be rejected given the AGs' prior disavowal of these theories.  *See* ECF 365 (3115) at 3-6.

[4] The Court has not been divested of jurisdiction at all. *Nascimento v. Dummer*, 508 F.3d 905, 908 (9th Cir. 2007). ("When a Notice of Appeal … refers to a non-appealable interlocutory order … the ordinary rule that the district court cannot act until the mandate has issued on the appeal does not apply.").

now—and to the contrary, has fully litigated the case—it should not be allowed to invoke the divestiture rule at the eleventh hour to avoid trial.

**B.      Meta's Proposal to Schedule Separate Remedies Phase of Trial**

**<u>Meta's Position</u>:** Meta respectfully proposes that the Court schedule a separate remedies phase of the trial, to allow for the presentation of evidence on remedies issues (including disgorgement and injunctive relief) that will not be heard by the advisory jury, and that would not warrant the Court's time unless and until the Court finds liability on the claims and specific theories at issue in this trial.

The AGs concede (and Meta agrees) that disgorgement involves complex calculations "and is therefore best assessed exclusively by the Court." ECF 444 (3217) at 1. The AGs also concede (and the Court has confirmed) that injunctive relief will be tried solely to the Court. *See* 4/15/26 Tr. at 78:1–12. Further, the Court has indicated that it will exclude from the advisory jury evidence relating to practice or policy changes that "post-date the remedial period," while noting that "[s]uch evidence may be relevant for injunctive relief" to be addressed "separately, if warranted." ECF 457 (3239) at 2; *see also* AGs' MIL No. 2, ECF 379 (3129) at 3 (conceding that such evidence "may bear on injunctive relief—which is a matter for the Court, rather than the advisory jury"). Thus, to the extent liability is found, there needs to be a separate phase of trial to address, at a minimum, disgorgement and injunctive relief. Meta maintains that civil penalties, too, should be presented solely to the Court. *See* ECF 455 (3237) at 23–26.

Meaningful time will be needed to hear evidence on these issues. While the AGs previously said they would need only one day on injunctive relief, *see* 4/15/26 Tr. at 78:1–12, that is woefully insufficient. Meta will need to present fact and expert testimony about the feasibility of the AGs' requested injunctive relief, and about its current practices and policies. Time will also be needed for evidence on the AGs' claims for disgorgement. These evidentiary presentations will require a week's time, not just one day.

Moreover, it is more efficient for the Court—and the Parties—to await liability findings before making further disclosures on remedies, and then trying them. *See, e.g.*, *Musk v. Altman*, 2026 WL 1047935, at *1 (N.D. Cal. Apr. 17, 2026) (bifurcating liability and remedies phases). The AGs made a generalized disclosure for the first time in February that they plan to seek broad-ranging injunctive relief extending far beyond the specific statements and features at issue in this trial. *See* ECF 257 (2724)

(attached as **Exhibit A**).  The AGs should be required to provide greater specificity about the injunctive relief they seek in a disclosure that takes into account the Court's liability findings, after which the Parties should be permitted to identify trial witnesses, exhibits, and other disclosures relevant to those requests. (The Parties reserve the right to call new witnesses at the remedies stage.)

This sequencing makes sense for three reasons.  *First*, the Court's liability findings could entirely moot the need for any consideration of remedies.  *Second*, the scope of liability, if any, will impact the specific injunctive relief and disgorgement (and penalties) the AGs may properly request and that the Court may award.  *Third*, if the Court finds only partial liability, there will be no need to present evidence on those portions for which liability was *not* found.  For these reasons, Meta requests that the Court provide for a sequencing of the trial in two phases: (1) a liability phase (to be presented to the advisory jury that the Court has decided to empanel in August–September 2026); and (2) a one-week remedies phase (to be presented to the Court following liability determinations and further remedies disclosures).

**State AGs' Position:** Meta overstates concerns about the timing of a remedies phase, and its proposal injects delay and unreasonably expands the scope of evidence required. First, much of the evidence related to the unfair and deceptive nature of Meta's business practices that require injunctive remediation will come in during the liability phase and need not repeated. For example, the AGs will present during the liability phase:  evidence of Meta's inadequate age gating functions that protect teen and U13 users; the inadequacy of Meta's procedures to remove known U13 users; and the inadequacy of Meta's so-called time management features. None of this evidence needs to be repeated during an injunctive remedies phase for the court to order an injunction that Meta need remedy these deficiencies.

Second, this Court is ultimately responsible for issuing Findings of Fact & Conclusions of Law ("FoF & CoL") as to both liability and remedies and will be well situated to consider the weeks of liability evidence that will inform remedies, particularly injunctive relief. In advance of trial the parties will submit their proposed FoF & CoL which will outline both the liability and remedies findings that they are asking the Court to make and the evidence that will support the Court's rulings. The Court will also require the parties to update their proposed FoF & CoL after trial based on the evidence actually submitted.  This road map will effectively allow the Court to assess evidence supporting or negating the relief requested.

Third, additional limited evidence and argument related to injunctive relief and disgorgement will be required but can be presented while the jury deliberates, or soon thereafter. This will include specific injunctive relief for which no evidence is presented during the liability phase, such as request for a monitor. Similarly, although the State AGs agree that evidence related to disgorgement calculations need be presented during a remedies phase to the Court, to the extent that entitlement to disgorgement is a determination of fact, evidence of such will rely on proof presented during the liability phase.

Finally, the State AGs have proposed presenting civil penalties to the advisory jury and the calculations for which the State AGs seek civil penalties (person counts and time spent) are relevant to both liability and remedies. For all of these reasons, the State AGs oppose Meta's request.

**C.     Request for Clarification re Court's *in Limine* Rulings (Pretrial Order No. 4)**

Meta requests clarification regarding three aspects of the Court's MIL rulings, discussed below.

**1.     Age Verification as Premise of State AGs' Unfairness Claims**

**<u>Meta's Position:</u>** The Court's MTD and MSJ rulings state that the AGs' Unfairness Claims concern three specific features: "[1] appearance-altering features, [2] features related to restricting time spent on the platform, and [3] Instagram's 'multiple accounts' function."  MSJ Order, ECF 440 (3214) at 2–3; *see also* MTD Order, ECF 123 (1214) at 45.  In denying Meta's MIL No. 5, the Court ruled that it "will not exclude evidence of Meta's age verification systems."  ECF 457 (3239) at 6.  The Court similarly granted the AGs' motion to strike Kyle Jensen because the AGs' "spent a significant, significant amount of time" during discovery on age verification.  6/26/26 Tr. at 11:21–25.  Meta respectfully submits that the Court's rulings on the AGs' motion to strike Jensen and Meta's MIL No. 5 concerned the *admissibility* of age-verification *evidence*, but did not address whether the AGs may assert age verification as a fourth feature supporting their Unfairness Claims.  Meta requests the Court's clarification that they may not.

The Court should also reject the AGs' newfound attempt below (*see* p. 7), to expand the scope of their Unfairness Claims, on the eve of trial, beyond specific challenged features—a position that stands in direct conflict with this Court's Section 230 rulings and the AGs' own statements.  *See, e.g.*, AGs' Trial Strategy Letter Brief, ECF 2626 at 5 ("The State AGs' unfairness claims … concern *four discrete features*: appearance-altering filters, time restriction tools, the multiple accounts function, and Meta's age verification tools.") (emphasis added).  And given the AGs' confirmation that the four co-lead States

"have decided to no longer premise their unfairness claims on cosmetic surgery effects" or other beauty filters, *see infra* Section IV(C)(3), the Court should confirm that the AGs' Unfairness Claims are limited for purposes of trial to two features: (1) time management tools and (2) multiple accounts on Instagram.

**State AGs' Position:** Despite Meta's attempts to narrowly define the State AGs' unfairness claims, those claims concerns Meta's overarching unfair acts and practices in the course of developing and implementing its business strategies, including with respect to certain features. For example, it is not the mere existence of Meta's time restriction tools that give rise to liability, but rather, it is how Meta deployed that tool to convince parents that it had effective guardrails against excessive time spent, when all along, those tools were designed to avoid impacting time spent in service of Meta's business model. The same is true with respect to Meta's deficient age verification systems and the role they played in Meta's business goals relating to young users on its platform.

Meta effectively seeks reconsideration on the Court's decision that Meta has had notice that age verification features are part of the State AGs' unfairness claim. The Court's decision was clear: Age verification systems are part of those claims. Further argument on this issue is improper.

### 2. Alleged Misrepresentations

**Meta's Position:** In denying Meta's MIL No. 4, the Court noted that "[o]nce the Court receives the final list" of the AGs' claimed misrepresentations on July 15, "it will determine whether further narrowing is appropriate." ECF 457 (3239) at 5. Meta requests the opportunity to submit targeted briefing on this issue on July 21, with a response from the AGs due on July 24.

**State AGs' Position:** The State AGs oppose Meta's request for further briefing on the applicability of Section 230 to their deception claims. The AGs' misrepresentations about aspects of its platforms all involve Meta's own conduct and statements—not the content of third parties. The Court is fully capable of precluding inadmissible evidence at trial, and Meta has had no less than three chances to raise this issue between Motions to Dismiss and for Summary Judgment—where Meta failed to litigate this argument—as well as Meta's MIL No. 4. Meta should not receive a fourth bite at the apple here.

### 3. Third-Party Filters

**Meta's Position:** In denying Meta's MIL No. 5, the Court noted that (1) if "the AGs' proffers made during the pretrial conference … were not part of the record … and if the magistrate judge excluded

that evidence, then [cosmetic surgery and other third-party filters] will be excluded from trial"; but that (2) "if the AGs' proffer is accurate, the Court will reopen discovery for that limited basis."  ECF 457 (3239) at 6.  On July 9, the AGs confirmed that they "*have decided to no longer pursue unfairness theories of liability with respect to cosmetic surgery effect filters and do not seek to reopen discovery on this issue.*"  **Exhibit B**.  They also confirmed they "agree that filters that are not cosmetic surgery effects *are not part of the states' unfairness claims*," **Exhibit C**—meaning filters are no longer one of the "features" on which the AGs' Unfairness Claims are premised.  The next day they changed their position, explaining that:

> *The 4 Lead States still agree that filters will not be part of their unfairness claims*, but we propose that the Parties engage in further conferrals and discussions with respect to the states proceeding to trial in 2027 to determine whether further discovery or briefing on filters is necessary or desirable on filters as part of those states' unfairness claims.

*Id.*  Given the AGs' shifting positions, Meta is compelled to provide the Court with its full position on this issue, confirming in response to the Court's ruling that the AGs' proffers at the June 26 conference were neither (1) part of the record nor (2) accurate.  Thus, no State should be permitted to premise its Unfairness Claims on appearance-altering filters at trial, and discovery should not be reopened on this issue.

At the June 26 conference, the AGs asserted that once cosmetic surgery filters are "provided to Meta," "then Meta, based on what we've been able to discern, . . . [is] putting them on the platform." 6/26/26 Tr. at 130–31.  They claimed this constitutes first-party conduct by Meta, and that they'd discerned this through public webpages about Meta's Spark AR (augmented reality) platform.  *Id.* at 130–31.  They further claimed that they could not have discovered more information about Meta's "role with respect to the Spark AR platform" because it is a "VR [virtual reality] product" that "has not been within the scope of discovery in this case," which they claimed has "excluded virtual reality."  *Id.* at 131, 127:3–8.

The AGs' assertions are wrong.  Meta never objected to discovery on the basis that Spark AR was part of Meta's VR business, and Judge Kang never limited the AGs' ability to obtain discovery on Spark AR or filters more generally.  To the contrary, Plaintiffs sought and obtained meaningful discovery about filters,[5] including *nearly 4,000 documents* that contain the term "Spark AR."  That discovery yielded *no*

---

[5] Meta explained in discovery that "image filters" "refer to Camera Effects … and Spark AR."  *E.g.*, Meta's Resp. to Dep. by Written Question No. 223 (July 25, 2024) at 108.  Meta agreed to produce (continued…)

*evidence* that Meta created or played a role in creating cosmetic surgery effects on its platforms, including through Spark AR.  The webpages about Spark AR that *are* in the record confirm that it was *third-party developers* who created and published filters to their followers on Meta's platforms through Spark AR.[6]  Spark AR was, in this way, no different from the camera function that is part of Instagram:  Meta provides a platform that allows third parties to create cosmetic filters, just as it allows third parties to generate pictures using the camera function.  The generation of the filter (or the picture) is not conduct by Meta; it is third-party content.  *See* Meta's MIL No. 5, ECF 373 (3123) at 2, 4–6; *accord* ECF 457 (3239) at 6 ("Meta can be held liable for its own conduct, *not for the conduct of others*.") (emphasis added).

Apparently recognizing that they cannot make a proffer that would avoid application of Section 230 to cosmetic surgery filters, the AGs said on July 9 that they were abandoning their "unfairness" theories with respect to all appearance-altering filters, and would not seek to reopen discovery.  *See* **Ex. B**.  Although the AGs subsequently sought to limit this representation to the four co-lead States, *see* **Ex. C**, the Court should hold *all* of the consumer protection States to it.  For the reasons above, Meta requests final confirmation that (1) the AGs may not premise their Unfairness Claims on appearance-altering filters at trial and (2) discovery on this issue will not be re-opened, including for the non-lead States.

Meta further requests confirmation that the AGs may not, contrary to their suggestion below (*see* p. 10), introduce evidence about Meta's decision to lift the ban on cosmetic surgery filters to prove their deception claims.  The AGs have identified no statements by Meta that directly relate to or contradict that decision.  Nor may the AGs use such evidence to prove that generalized safety statements were misleading, which would end-run Section 230.  *See Ahern v. Apple Inc.*, 411 F. Supp. 3d 541, 562 (N.D. Cal. 2019) ("puffery … cannot undergird a claim based on a material omission"); *see also* Meta MIL No. 4, ECF 371 (3121) at 4–6 (Section 230 bars deception theories based on third-party content or barred features).

---

documents discussing "appearance-altering filters," "cosmetic or beauty filters," and the "Named Features" (which included appearance-altering filters).  Meta ran as a search term "filter* w/3 (cosmetic OR beauty)" across 100+ MDL custodians and produced nearly 2,500 documents hitting on that term.  And Plaintiffs questioned several Meta witnesses about filters, one almost exclusively on that topic.

[6] *See, e.g.*, **Exhibit D** (Chandhok, N., *Camera Effects Platform is now Spark AI* (Oct. 5, 2018) (ECF 400.1 (3160.1) at 103 (Exhibit No. 10,785)) (clarifying that Spark AR "put[s] the power of augmented reality into the hands of all developers and creators" and that developer "participants will be able to use Spark AR Studio to design … experiences and make them available to their followers on Instagram.").

**State AGs' Position:** With respect to the State AGs' deception claims, Meta's affirmative decision to lift bans on these effects after it commissioned research and learned about the serious negative mental health impacts of these filters, especially on young girls, directly contradict Meta's public statements that it prioritizes safety over profits and growth and that the platforms are safe for young people. *See*, *e.g.*, AGs' List of Actionable Misrepresentations (ECF 3103) at 8, 10, 48, 57, and 82.

However, the four Lead States proceeding to trial in August have decided to no longer premise their unfairness claims on cosmetic surgery effects, although they maintain their position that cosmetic surgery effects are neutral, non-expressive tools and not third-party information. The remaining states proceeding to trial in 2027 on unfairness claims respectfully request that the Court allow the Parties to engage in further conferrals, and later briefing if necessary, regarding whether reopening discovery is warranted as to the specific mechanics of how cosmetic surgery effects were made available on Meta's platforms via Meta's proprietary Spark AR platform. Meta's extensive argument on this issue is improper for this CMC Statement, and the State AGs disagree with Meta's characterization of the record.

**D.      Witness Issues**

The Parties have reached agreement about the production of certain witnesses for trial, and continue to confer on others, including the first two witnesses discussed below. In addition, Meta seeks to challenge the AGs' addition of a new fact witness to their July 9 witness list, also discussed below.

**Adam Mosseri (Head of Instagram)**

- **State AGs' Position:** Meta indicated willingness to accept service for only one day of testimony for Adam Mosseri. Mr. Mosseri made a number of the misrepresentations at issue in the case, and is central to many issues and documents in the case. The AGs will work in good faith to schedule Mr. Mosseri's testimony, but need some flexibility on when to call him. The AGs have offered to narrow the scope of their appearance request to six trial days at the end of August (Aug 20-31), in exchange for which they would agree to Meta's request that Mark Zuckerberg be called only on September 1.

- **Meta's Position:** Meta told the AGs that Mr. Mosseri, and apex witness, could testify on September 2. The AGs unreasonably demanded that he reserve a separate 6 days for potential testimony spanning 2 weeks, including the date (August 20) another plaintiff tentatively accepted for his testimony at the second JCCP trial. In response, Meta offered two days in the AGs' window and has not heard back.

**Antigone Davis (Global Head of Safety)**

- **State AGs' Position:** Antigone Davis is within the Court's subpoena power. The fact that Ms. Davis "regularly transacts business in person… within 100 miles" of the presiding Court and has done so throughout the period at issue clearly establishes the Court's jurisdiction under FRCP 45(c)(1)(A).

*See Jones v. PGA Tour, Inc.*, No. 22-cv-04486-BLF, 2023 U.S. Dist. LEXIS 61147, at \*19-20 (N.D. Cal. Apr. 3, 2023) (collecting cases finding subpoena power attaches to patterns of work-related travel far less extensive than Ms. Davis's); see also, e.g., META3047MDL-014-00088295: (showing Davis attending multiple events in the Bay Area in 2015); META3047MDL-014-00120486 (same for 2017); META3047MDL-034-00364516 (same for 2019). Meta's position is that because she resides in Washington D.C., "Ms. Davis lives beyond the subpoena power of the Court." That assertion ignores two of the three prongs of the FRCP 45(c)(1)(A) test, and its incompleteness renders it inaccurate.

- **Meta's Position:** Ms. Davis resides in Maryland and her regular place of work is in Washington, DC. It would severely distort Rule 45(c)(1)(A) to force her to travel to Oakland for testimony simply because she works for a company based in California and has attended events there over the course of her employment. Attending "multiple" events in a jurisdiction, as the AGs represent Ms. Davis did in 2015, 2017, and 2019, is insufficient. *See In re NFL's*, 2024 WL 3915910, at \*2–3 (C.D. Cal. May 15, 2024) (4-times yearly trips of 10 days, 5 trips of 14-18 days, or quarterly meetings insufficient); *M'Baye v. New Jersey Sports Prod., Inc.*, 246 F.R.D. 205, 208 (S.D.N.Y. 2007) (14-18 days over 2 years insufficient). Nevertheless, Meta is considering the AGs' position and has told them that it is attempting to identify with Ms. Davis if there is a reasonable date for potential testimony in Oakland, assuming the AGs will be flexible in accommodating a witness who lives across the country.

**Nathan Blake (Colorado Deputy AG)**

**Meta's Position:** The AGs have improperly disclosed a new fact witness, Nathan Blake, one month before trial. Mr. Blake supervises the attorneys working on this case, was never identified by the State as a fact witness or deposed in that capacity. *See* 8/13/25 Dep. 18:25–19:10; ECF 300 (2964). For that reason alone, he should be stricken. *See* 5/27/2026 Tr. at 81:2–4. The fact that Meta disclosed Mr. Blake on its list is beside the point; per the Court's Standing Pretrial Order, "a party may not rely on an opposing party's identification of a witness for their own case in chief."

The subject matter of Mr. Blake's proffered testimony also warrants exclusion, for two reasons. *First*, the AGs' July 9 witness list disclosed Mr. Blake for legal topics like "the powers of State Attorneys General to bring consumer protection lawsuit." ECF 461 (3243) at 4. That testimony is improper. *See, e.g.*, Pretrial Order No. 4, ECF 457 (3239) at 3. *Second*, Mr. Blake repeatedly refused to testify on these topics at his deposition. *See* 8/13/25 Dep. 216:18–217:18 (refusing to "talk about the different considerations that we took into account as we decided whether to file this lawsuit"); *id.* 76:9–18 (refusing to answer questions about AG consultations pre-filing); *id.* 8/13/25 Dep. 77:24–78:20 (same); *id.* 361:8–17 (same, regarding consults with schools).

**State AGs' Position:** Meta inquired whether the AGs planned to present certain State witnesses live, including Mr. Blake, and the AGs said they did with respect to Mr. Blake. He has been identified by

Meta, and his appearance at trial can hardly be a surprise.  The State AGs do not intend to call Mr. Blake for any topic outside of those on which his 30b6 deposition was noticed.  The only material Mr. Blake refused to testify to at his deposition was on the basis of privilege, which he of course cannot unilaterally waive in any context, whether in deposition or at trial.  See, e.g., Blake 8/13/25 Dep. 76:2-18; 126:24-128:2 ECF 300 (2964).  To the extent that Meta believes his testimony is improper legal opinion, it can object at trial or file a motion to strike to which the AGs will object. In the interim, and consistent with this Court's Order regarding three of Meta's 30(b)(6) witnesses it is affirmatively calling live at trial (PTO.3, ECF.3212] the AGs agree to make Mr. Blake available for a 3.5 hour deposition.

### E.    Exhibit Admissibility and Custodians

**State AGs' Position:** Since May 7, the State AG's have had pending in front of Judge Kang a Motion to Compel Meta to produce metadata about who could edit and view a small subset of trial-critical Google Drive documents. Meta refused to provide any custodian information for those documents beyond identifying "Meta Platforms" as the custodian. Because Meta Platforms is the disclosed custodian, these documents are necessarily business records.

**Meta's Position:** The Court should defer to Magistrate Judge Kang to resolve this pending discovery dispute.  To the extent the AGs are suggesting this Court should preempt him in ruling on it, any such decision should be made on full briefing.  *See* ECF 3023 (Parties' Joint Letter Brief).  In any event, the AGs misstate the issue.  Meta has not refused to provide "custodian" information for the documents at issue, which are *non-custodial documents*; it has refused the AGs' years-late request to produce "Viewer" and "Collaborator" metadata fields for the reasons set forth in its briefing.  *See* ECF 3023 at 7–8, 9–10.  The AGs provide no support or explanation for their (inexplicable) assertion that "these documents are necessarily business records," which ignores the elements required to satisfy the business records hearsay exception.  *See* Fed. R. Evid. 803(6).

Respectfully submitted,

DATED: July 10, 2026                              By:  */s/ Ashley M. Simonsen*

**COVINGTON & BURLING LLP**
Ashley M. Simonsen, SBN 275203
1999 Avenue of the Stars
Los Angeles, CA 90067
Telephone: (424) 332-4800
Facsimile: + 1 (424) 332-4749
Email: asimonsen@cov.com

Phyllis A. Jones, *pro hac vice*
Paul W. Schmidt, *pro hac vice*
Timoty C. Hester, *pro hac vice*
David N. Sneed, *pro hac vice*
COVINGTON & BURLING LLP
One City Center
850 Tenth Street, NW
Washington, DC 20001-4956
Telephone: + 1 (202) 662-6000
Facsimile: + 1 (202) 662-6291
Email: pajones@cov.com

**DAVIS POLK & WARDWELL LLP**

By:  */s/ James P. Rouhandeh*
James P. Rouhandeh, *pro hac vice*
Antonio J. Perez-Marques, *pro hac vice*
Caroline Stern, *pro hac vice*
Corey M. Meyer, *pro hac vice*
DAVIS POLK & WARDWELL LLP
450 Lexington Avenue
New York, New York 10017
Telephone: (212) 450-4000
Facsimile: (212) 701-5800
rouhandeh@davispolk.com
antonio.perez@davispolk.com
caroline.stern@davispolk.com
corey.meyer@davispolk.com

*Attorney for Defendants Meta Platforms, Inc.*
*f/k/a Facebook, Inc.; and Instagram, LLC*

**PHILIP J. WEISER**
Attorney General
State of Colorado

_/s/ Krista Batchelder_
Krista Batchelder, CO Reg. No. 45066,
*pro hac vice*
Deputy Solicitor General
Shannon Stevenson, CO Reg. No. 35542, *pro hac vice*
Solicitor General
Elizabeth Orem, CO Reg. No. 58309, *pro hac vice*
Assistant Attorney General
Colorado Department of Law
Ralph L. Carr Judicial Center
Consumer Protection Section
1300 Broadway, 7th Floor
Denver, CO 80203
Phone: (720) 508-6651
krista.batchelder@coag.gov
Shannon.stevenson@coag.gov
Elizabeth.orem@coag.gov

*Attorneys for Plaintiff State of Colorado, ex rel.*
*Philip J. Weiser, Attorney General*

**ROB BONTA**
Attorney General
State of California

_/s/ Megan O'Neill_
Nicklas A. Akers (CA SBN 211222)
Senior Assistant Attorney General
Bernard Eskandari (SBN 244395)
Emily Kalanithi (SBN 256972)
Supervising Deputy Attorneys General
Nayha Arora (CA SBN 350467)
Megan O'Neill (CA SBN 343535)
Joshua Olszewski-Jubelirer (CA SBN 336428)
Marissa Roy (CA SBN 318773)
Brendan Ruddy (CA SBN 297896)
Deputy Attorneys General
California Department of Justice
Office of the Attorney General
455 Golden Gate Ave., Suite 11000
San Francisco, CA 94102-7004
Phone: (415) 510-4400
Fax: (415) 703-5480

14

Megan.Oneill@doj.ca.gov

*Attorneys for Plaintiff the People of the State of California*

**RUSSELL COLEMAN**
Attorney General
Commonwealth of Kentucky

*/s/ Philip Heleringer*
J. Christian Lewis (KY Bar No. 87109),
*Pro hac vice*
Philip Heleringer (KY Bar No. 96748),
*Pro hac vice*
Zachary Richards (KY Bar No. 99209),
*Pro hac vice*
Daniel I. Keiser (KY Bar No. 100264),
*Pro hac vice*
Matthew Cocanougher (KY Bar No. 94292),
*Pro hac vice*
Assistant Attorneys General
1024 Capital Center Drive, Suite 200
Frankfort, KY 40601
CHRISTIAN.LEWIS@KY.GOV
PHILIP.HELERINGER@KY.GOV
ZACH.RICHARDS@KY.GOV
DANIEL.KEISER@KY.GOV
MATTHEW.COCANOUGHER@KY.GOV
Phone: (502) 696-5300
Fax: (502) 564-2698

*Attorneys for Plaintiff the Commonwealth of Kentucky*

**JENNIFER DAVENPORT**
Attorney General
State of New Jersey

*/s/ Thomas Huynh*
Brian F. McDonough (NJ Bar No. 026121980),
*Pro hac vice*
Kashif T. Chand (NJ Bar No. 016752008),
*Pro hac vice*
Assistant Attorneys General
Thomas Huynh (NJ Bar No. 200942017),
*Pro hac vice*
Section Chief, Deputy Attorney General
Patrick J. Misale (NJ Bar No. 401352022)
*Pro hac vice*

AGENDA AND JOINT STATEMENT FOR JULY 17, 2026 FINAL PRETRIAL CONFERENCE (MDL AG ACTION)
4:22-md-03047-YGR

Verna J. Pradaxay (NJ Bar No. 335822021),
*Pro hac vice*
Mandy K. Wang (NJ Bar No. 373452021),
*Pro hac vice*
Deputy Attorneys General
New Jersey Office of the Attorney General,
Division of Law
124 Halsey Street, 5th Floor
Newark, NJ 07101
Tel: (973) 648-2052
Brian.Mcdonough@law.njoag.gov
Kashif.Chand@law.njoag.gov
Thomas.Huynh@law.njoag.gov
Verna.Pradaxay@law.njoag.gov
Mandy.Wang@law.njoag.gov

*Attorneys for Plaintiffs Jennifer Davenport, Attorney General for the State of New Jersey, and Jeremy E. Hollander, Acting Director of the New Jersey Division of Consumer Affairs*

AGENDA AND JOINT STATEMENT FOR JULY 17, 2026 FINAL PRETRIAL CONFERENCE (MDL AG ACTION)
4:22-md-03047-YGR

**ATTESTATION**

I, Ashley M. Simonsen, hereby attest, pursuant to N.D. Cal. Civil L.R. 5-1, that the concurrence to the filing of this document has been obtained from each signatory hereto.

Dated: July 10, 2026

By: */s/ Ashley M. Simonsen*