[*Submitting Counsel on Signature Page*]

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: SOCIAL MEDIA ADOLESCENT ADDICTION/PERSONAL INJURY PRODUCTS LIABILITY LITIGATION | MDL No. 3047 |
| | Case No. 4:22-md-03047-YGR |
| THIS DOCUMENT RELATES TO: | **STATE AGS' REPLY REGARDING STATE AGS' PENALTY AND DISGORGEMENT CHARTS AND SUPPORTING MATERIALS, ECF 444 (3218)** |
| 4:23-cv-05448 | |
| | Judge: Hon. Yvonne Gonzalez Rogers |
| | Magistrate Judge: Hon. Peter H. Kang |

***Introduction.***[1] Meta devotes substantial attention to criticizing the potential size of the AGs' requested monetary relief. In doing so, Meta misstates the law and ignores evidence of the vast scope and gravity of its unlawful conduct. Pursuant to Court Order, ECF 462 (3244) at 1, the AGs focus this Reply on one of Meta's erroneous arguments: that the AGs request double recovery.[2]

Meta's concern over the potential size of the requested remedies rings hollow in light of the evidence the AGs will present at trial. The AGs will prove that Meta deceived the public about the safety of its platforms while deliberately designing them to induce compulsive use and increase revenue. For the four AGs bringing consumer protection claims in the August 2026 trial, the evidence will show almost 40 million monthly instances of teen users spending more than 2 hours per day, on average, on Instagram between January 2013 and March 2024—amounting to each such teen user spending roughly 60 hours per month on Instagram alone. AGs' Submission, Ex. B. And despite Meta's repeated claims that children under 13 ("U13s") were not permitted on its platforms, the evidence will show that, from 2012 to 2023, more than 4.6 million U13s used Instagram and 3.9 million U13s used Facebook in those same four States. *Id.,* Ex. A. Meta's unlawful conduct poses serious risks for the development and mental health of youth who compulsively use its platforms, with lasting consequences for their families and communities.

The AGs do not seek double recovery. The AGs do, however, insist on substantial remedies, as provided for under the law, in order to effectively punish, deter, and strip Meta—a company that accrued more than $200 billion in revenue in 2025 alone—of its ill-gotten gains from its unlawful activity. Ex. 1, Meta Platforms, Inc., Form 10-K, at 61 (Jan. 28, 2026).

***Meta's arguments are premature.*** The AGs will present their final requests for monetary relief at trial, selecting remedies supported by the proof and consistent with the framework set forth in the AGs' Submission on remedies. The AGs do not seek, and will not request, excessive recovery beyond what the law permits. The AGs are also mindful that the Court will not grant remedies that

---

[1] Throughout this Reply, the "AGs' Submission" refers to ECF 445-1 (3218-1) and exhibits, and "Meta's Submission" refers to ECF 456-1 (3238-1) and exhibits.

[2] The AGs do not concede the legal or factual accuracy of the other arguments and positions in Meta's Submission.

are improper under applicable legal standards.

***Meta misstates the law.*** Meta's premise—that penalties are duplicative unless violations are limited to the number of offending acts or the number of people who viewed or relied upon deceptive statements—is incorrect. *See* AGs' Submission at 8–9 (citing supportive cases and statutes). When counting violations, the factfinder looks to the evidence and "circumstances of the case," and accounts for the reach, duration, repetition, or severity of the misconduct—*not* individual injury, loss, or reliance. *People v. JTH Tax, Inc.*, 212 Cal. App. 4th 1219, 1251 (2013); *see, e.g.*, *May Dep't Stores Co. v. State ex rel. Woodard*, 863 P.2d 967, 975 (Colo. 1993) (counting a violation for each *day* that a deceptive advertisement appeared); *People v. Johnson & Johnson*, 77 Cal. App. 5th 295, 354 (2022) (violation counts need only be "reasonably related to the gain or the opportunity for gain achieved by the dissemination of the . . . deceptive advertisement" (internal quotation omitted)). Meta's cases are inapposite, as they either do not pertain to statutory civil penalties or are limited to their facts. *See, e.g.*, *Granelli v. Chicago Title Ins. Co.*, 2012 WL 2072648, at *11-12 (D.N.J. June 8, 2012) (equitable relief was duplicative where "direct damage[s]" wholly compensated the plaintiff for the economic injury); *Ptaszynski v. Atl. Health Sys., Inc.*, 111 A.3d 111, 120 (N.J. Super. Ct. App. Div. 2015) (discussing damages, not statutory civil penalties); *Lexton-Ancira Real Estate Fund, 1972 v. Heller*, 826 P.2d 819, 823 (Colo. 1992) (same); *Johnson & Johnson*, 77 Cal. App. at 354 ("[s]ubsequent decisions interpreting *Olson* have concluded that . . . total circulation can be a reasonable method to determine the number of statutory violations"); *People v. Ashford Univ., LLC*, 100 Cal. App. 5th 485, 515 (2024) (California "courts have limited *Jayhill* to its facts"). Meta also ignores that under KRS 367.990, each unlawful act or practice is a separate violation as to each consumer to whom it was directed *and* each transaction in which it was employed. Finally, Meta's due process argument is wholly speculative.

***The AGs do not seek double recovery.*** The AGs describe which remedies are sought for each cause of action below.

- *Remedy Chart 1.*[3] Remedy Chart 1 counts each unique teen and U13 on Meta's

---

[3] The AGs may separate Remedy Chart 1 into two separate charts—one that is specific to teens and one that is specific to U13s—at trial, without changing the numbers or calculations.

platforms as a single violation, thereby measuring the reach of Meta's unlawful conduct. Meta's deceptive conduct was likely to mislead, or had a tendency or capacity to mislead, each counted consumer (in addition to parents, regulators, and others not represented in these counts). Meta's unfair business practices promoting ineffective safety tools and unsafe features likewise apply to all consumers counted. The number of unique teens and U13s also reasonably reflects Meta's opportunity for gain from its unlawful conduct. *See, e.g.*, ECF 267-1 (2783-1) at 34 (Meta's business depends on the number of users, retention, and engagement). The number of U13s also reflects violations arising from Meta's collection of personal information from children who visited its platforms that were directed to children, and violations related to age verification.

- *Remedy Chart 2*. This chart counts violations based on the monthly instances in which teen users spent more than 0.5, 1, or 2 hours per day on average on the platforms in a given month. The AGs bring unfairness and deception claims, which stem from different misconduct. Remedy Chart 2 reflects an alternative way to count violations for those claims regarding Meta's unfair and deceptive conduct related to the compulsive nature of Instagram or Facebook. The three time-threshold categories also provide *alternative*, not cumulative, bases to count violations.[4]

- *Remedy Chart 3*. Remedy Chart 3 reflects Meta's unfair and deceptive practices relating to the collection of U13s' data, where Meta had actual knowledge the U13s were underage. These penalties are an *alternative* to the U13 person counts in Remedy Chart 1 as to each of the four States.[5]

- *Remedy Charts 4-6*. While multiple claims entitle the AGs to disgorgement, the AGs only seek to disgorge ill-gotten gains once. These charts reflect disgorgement related to (i) Meta's unfair and deceptive conduct as to teens (Remedy Chart 4); (ii) its unfair and deceptive conduct as to U13s (Remedy Chart 5); and (iii) violations of COPPA (Remedy Chart 6). With respect to state law claims, the AGs seek disgorgement in addition to civil penalties, as is proper under the law. The AGs cite authority supporting this position, *see* AGs' Submission at 11, and Meta cites no contrary authority.

---

[4] The AGs are unlikely to present the instances associated with the 0.5 hour threshold as a means of counting violations, but these instances provide meaningful context about teen usage patterns relevant to penalty factors. *See* AG Submission at 9–10 (statutory penalty factors).

[5] Remedy Chart 3 does not double count Meta's violations, as Meta suggests. Meta's Submission at 25–26. As Meta concedes, violations can be counted based on each "separate, affirmative act." *Id.* at 10. COPPA prohibits "collect[ing] personal information from a child" without providing the required protections. 15 U.S.C. § 6502(a)(1). This Court has also recognized that "keep[ing] or us[ing]" children's data after obtaining actual knowledge violates COPPA. ECF 440 (3214) at 35. Thus, *each time* Meta collected, used, *or* maintained *each piece* of personal information from a child after obtaining actual knowledge, Meta violated COPPA, and by extension, the state consumer protection laws. Despite this multitude of violative acts against each child, Remedy Chart 3 counts only *one* violation for each child (or child's account) affected by the unlawful act identified in Remedy Charts 3.A-3.D. Thus the AGs *under*count Meta's actual knowledge violations, even if some of the same children are represented in more than one of Charts 3.A-3.D.

Dated: July 13, 2026

Respectfully submitted,

**PHILIP J. WEISER**                          **ROB BONTA**
Attorney General                              Attorney General
State of Colorado                             State of California

*/s/ Krista Batchelder*                        */s/ Nayha Arora*
Krista Batchelder, (CO Reg.45066), *pro hac vice*    Nicklas A. Akers (CA SBN 211222)
Deputy Solicitor General                      Senior Assistant Attorney General
Shannon Stevenson (CO Reg. 35542), *pro hac vice*    Bernard Eskandari (CA SBN 244395)
Solicitor General                             Emily Kalanithi (CA SBN 256972)
Elizabeth Orem (CO Reg. 58309), *pro hac vice*    Supervising Deputy Attorneys General
Assistant Attorney General                    Megan O'Neill (CA SBN 343535)
Colorado Department of Law                    Nayha Arora (CA SBN 350467)
Ralph L. Carr Judicial Center                 Joshua Olszewski-Jubelirer
Consumer Protection Section                   (CA SBN 336428)
1300 Broadway, 7th Floor                      Jordan Hefcart (CA SBN 366087)
Denver, CO 80203                              Brendan Ruddy (CA SBN 297896)
Phone: (720) 508-6384                         Samantha Beckett (CA SBN 308456)
krista.batchelder@coag.gov                    Deputy Attorneys General
Shannon.stevenson@coag.gov                    California Department of Justice
Elizabeth.orem@coag.gov                       Office of the Attorney General
                                              455 Golden Gate Ave., Suite 11000
*Attorneys for Plaintiff State of Colorado, ex rel.*    San Francisco, CA 94102-7004
*Philip J. Weiser, Attorney General*           Phone: (415) 510-4400
                                              Fax: (415) 703-5480
                                              megan.oneill@doj.ca.gov

                                              *Attorneys for Plaintiff the People of the State*
                                              *of California*

STATE AGS' REPLY REGARDING STATE AGS' PENALTY AND DISGORGEMENT CHARTS AND SUPPORTING MATERIALS,
ECF 444 (3218), 4:22-md-03047-YGR; 4:23-CV-05448-YGR

**RUSSELL COLEMAN**
Attorney General
Commonwealth of Kentucky

/s/ *Matthew Cocanougher*
J. Christian Lewis (KY Bar No. 87109),
*pro hac vice*
Philip Heleringer (KY Bar No. 96748),
*pro hac vice*
Zachary Richards (KY Bar No. 99209),
*pro hac vice app. forthcoming*
Daniel I. Keiser (KY Bar No. 100264),
*pro hac vice*
Matthew Cocanougher (KY Bar No. 94292),
*pro hac vice*
Assistant Attorneys General
1024 Capital Center Drive, Ste. 200
Frankfort, KY 40601
Christian.Lewis@ky.gov
Philip.Heleringer@ky.gov
Zach.Richards@ky.gov
Daniel.Keiser@ky.gov
Matthew.Cocanougher@ky.gov
Phone: (502) 696-5300
Fax: (502) 564-2698

*Attorneys for Plaintiff the Commonwealth of Kentucky*

**JENNIFER DAVENPORT**
Acting Attorney General
State of New Jersey

By: /s/ *Kashif T. Chand*
Kashif T. Chand (NJ Bar No. 016752008),
*Pro hac vice*
Assistant Attorney General
Thomas Huynh (NJ Bar No. 200942017),
*Pro hac vice*
Assistant Section Chief, Deputy Attorney General
Verna J. Pradaxay (NJ Bar No. 335822021),
*Pro hac vice*
Mandy K. Wang (NJ Bar No. 373452021),
*Pro hac vice*
Deputy Attorneys General
New Jersey Office of the Attorney General, Division of Law
124 Halsey Street, 5th Floor
Newark, NJ 07101
Tel: (973) 648-2052
Kashif.Chand@law.njoag.gov
Thomas.Huynh@law.njoag.gov
Verna.Pradaxay@law.njoag.gov
Mandy.Wang@law.njoag.gov

*Attorneys for Plaintiffs Jennifer Davenport, Acting Attorney General for the State of New Jersey, and Jeremy E. Hollander, Acting Director of the New Jersey Division of Consumer Affairs*

## ATTESTATION

I, Jordan Hefcart, hereby attest, pursuant to N.D. Cal. Civil L.R. 5-1, that the concurrence to the filing of this document has been obtained from each signatory hereto.

DATED: July 13, 2026

/s/ *Jordan Hefcart*

STATE AGS' REPLY REGARDING STATE AGS' PENALTY AND DISGORGEMENT CHARTS AND SUPPORTING MATERIALS, ECF 444 (3218), 4:22-md-03047-YGR; 4:23-CV-05448-YGR