[*Parties and Counsel Listed on Signature Pages*]

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: SOCIAL MEDIA ADOLESCENT ADDICTION/PERSONAL INJURY PRODUCTS LIABILITY LITIGATION | MDL No. 3047 |
| THIS DOCUMENT RELATES TO: | Case Nos. 4:22-md-03047-YGR-PHK 4:23-cv-05448-YGR |
| *People of the State of California, et al. v. Meta Platforms, Inc., et al.* | **STATE AGS' MOTION SEEKING PERMISSION TO USE EXHIBITS IN OPENING STATEMENT** |
| Defendants. | Judge: Hon. Yvonne Gonzalez Rogers |
| | Magistrate Judge: Hon. Peter H. Kang |

**NOTICE OF MOTION AND MOTION**

PLEASE TAKE NOTICE that, at least 35 days from the date of filing,[1] before the

Honorable Yvonne Gonzalez Rogers, in Courtroom 1, Floor 4, of the United States District Court,

Northern District of California, located at 1301 Clay Street in Oakland, California, Plaintiff State

Attorneys General ("AGs"), will and hereby do move this Court for an order granting the AGs'

---

[1] Given the importance of the admissibility issues raised in the motion, the AGs request that the Court set a hearing on the motion during the week of August 10, 2026. The parties have agreed that briefing on this motion will be complete by 12:00 p.m. PT on August 10. *See* Declaration of Katherine Read ("Read Decl.") ¶ 41. A Stipulated Motion to Shorten Time and for an Expedited Hearing is being filed contemporaneously with this Motion in compliance with Civ. L-R 6-2.

Motion Seeking Permission to Use Exhibits in Opening Statement. This Motion is based upon the accompanying Memorandum of Points and Authorities, the accompanying Declaration of Katherine Read, and all exhibits thereto, and on such other written and oral arguments as may be presented to the Court.

**TABLE OF CONTENTS**

**Page**

MEMORANDUM OF POINTS AND AUTHORITIES ................................................................. 1

I.   INTRODUCTION ........................................................................................................... 1

II.  ARGUMENT .................................................................................................................... 2

    A.   Exhibits May Be Shown to the Jury in an Opening Statement if There Is a Good Faith Basis to Admit Them into Evidence. ........................................................ 2

    B.   The AGs Seek to Include Excerpts of Internal Meta Documents and Presentations That Will Be Sponsored by the Testimony of the Author, Custodian, or Person with Knowledge. ......................................................................... 2

    C.   The AGs Request to Include Excerpts of Internal Meta Documents, Presentations, and Communications that May Be Admitted Through the Testimony of Meta Executives ...................................................................................... 9

    D.   The AGs Request to Include Excerpts of Public Documents. ................................... 16

III. CONCLUSION ................................................................................................................. 17

**TABLE OF AUTHORITIES**

**Page**

CASES

*ABS Ent., Inc. v. CBS Corp.*
908 F.3d 405 (9th Cir. 2018)................................................................................................ 5, 8

*Arroyo v. Int'l Paper Co.*
611 F. Supp. 3d 824 (N.D. Cal. 2020) ...................................................................................... 13

*Barthelemy v. Air Lines Pilots Ass'n*
897 F.2d 999 (9th Cir. 1990)..................................................................................................... 13

*Bronson v. Samsung Elecs. Am., Inc.*
No. 18-02300, 2019 WL 2617053 (N.D. Cal. June 26, 2019) ...................................................... 5

*Clark v. City of Los Angeles*
650 F.2d 1033 (9th Cir. 1981).................................................................................................. 8, 9

*Deckers Outdoor Corp. v. Last Brand, Inc.*
No. 23-04850, 2026 WL 1658528 (N.D. Cal. June 8, 2026) ....................................................... 2

*Excelligence Learning Corp. v. Oriental Trading Co.*
2004 WL 2944048 (N.D. Cal. Dec. 20, 2004) ............................................................................ 16

*In re Kaypro*
218 F.3d 1070 (9th Cir. 2000).................................................................................................... 13

*L.A. News Serv. v. CBS Broad., Inc.*
305 F.3d 924 (9th Cir. 2002)................................................................................................... 7, 16

*Leonard v. United States*
277 F.2d 834 (9th Cir. 1960)........................................................................................................ 2

*Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd.*
454 F. Supp. 2d 966 (C.D. Cal. 2006)........................................................................................ 14

*Miller v. Fairchild Indus., Inc.*
885 F.2d 498 (9th Cir. 1989)................................................................................................. 13, 14

*Rearden LLC v. Crystal Dynamics, Inc.*
2019 WL 8275254 (N.D. Cal. July 12, 2019)............................................................................. 12

*S.E.C. v. Jasper*
678 F.3d 1116 (9th Cir. 2012).................................................................................................... 16

*Self-Realization Fellowship Church v. Ananda Church of Self-Realization*
206 F.3d 1322 (9th Cir. 2000)..................................................................................................... 13

iv

## TABLE OF AUTHORITIES
### (continued)

**Page**

*Sidibe v. Sutter Health*
103 F.4th 675 (9th Cir. 2024)......................................................................................... 8

*United States v. Pac. Gas & Elec. Co.*
2016 WL 3903384 (N.D. Cal. July 19, 2016)....................................................... 13, 14

*United States v. Ray*
930 F.2d 1368 (9th Cir. 1990)........................................................................................ 5

*United States v. Town of Col. City*
935 F.3d 804 (9th Cir. 2019).................................................................................... 5, 8

*Weil v. Citizens Telecom Servs. Co., LLC*
922 F.3d 993(9th Cir. 2019)..................................................................................... 4, 8

**FEDERAL RULES**

Federal Rule of Evidence
401............................................................................................................................ 10
403.............................................................................................................................. 8
602.............................................................................................................................. 6
801............................................................................................................................ 12
801(d)(2)(D) ....................................................................................................... *passim*
803(3) ......................................................................................................................... 7
803(6) ................................................................................................................. *passim*

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I.    INTRODUCTION

The AGs seek permission from the Court to show excerpts from certain exhibits to the jury as part of the AGs' opening statement. *See* Standing Order Re: Pretrial Instructions in Civil Cases, Judge Yvonne Gonzales Rogers ("Pretrial Standing Order"), § 6.f.

Documentary evidence is the bedrock of the AGs' case against Meta. Meta's internal research, employee communications, and strategic planning documents establish the significant risks inherent in Meta's platform design and reveal how Meta deceived the public about those risks. The AGs' opening statement thus references the documents that are foundational to their case. Showing excerpts from these documents would greatly aid the jury's ability to follow the AGs' opening presentation and understand key facts. Most importantly, all of the documents are admissible and will be supported by the testimony of qualified sponsoring witnesses. Moreover, there is no risk of confusion for the jury or unfair prejudice to Meta, as the AGs intend to show excerpts of Meta's documents as they were produced to the AGs—the evidence of Meta's wrongdoing speaks for itself. Accordingly, the AGs should be permitted to show the jury critical exhibits that will be admitted into evidence.

This motion also highlights Meta's unjustified refusal to engage in meaningful negotiations about the admissibility of documents before the literal eve of trial. Prior to filing this motion, the AGs sent Meta the list of exhibits contemplated in the motion, the specific witnesses who would sponsor them, and the grounds for admission. *See* Read Decl. ¶ 42. In response, Meta took the blanket position that no party should use *any* exhibits in their opening statement. Meta refused to provide its positions on the admissibility of *any* of the documents the AGs cited, except to note limited portions of a handful of documents that Meta considered prejudicial and that the AGs promptly agreed to exclude. *Id.* This response is emblematic of the obstructionist position Meta has taken on the issue of evidence admissibility in the lead-up to trial. Despite the Court's order that the parties make a "good faith effort" to stipulate to the admissibility of documents before trial, *see* Pretrial Standing Order § 6.e, Meta has refused to stipulate to the admissibility of

1

any documents in advance of trial. *See* Read Decl. ¶ 42. Meta's position is in direct defiance of the Court's Pretrial Standing Order and will create (and has already created) significant inefficiencies for the parties and the Court. The AGs respectfully assert that the Court's ruling on this motion will provide much-needed guidance on the admissibility of documents before trial and motivate Meta to engage in good faith negotiations and stipulate to the admissibility of documents in advance rather than waste trial time.

## II. ARGUMENT

### A. Exhibits May Be Shown to the Jury in an Opening Statement if There Is a Good Faith Basis to Admit Them into Evidence.

"An opening statement is confined to facts counsel intends, or in good faith expects, to prove; it may not be used to place before the jury matters which counsel knows will not be admitted." *Deckers Outdoor Corp. v. Last Brand, Inc.*, No. 23-04850, 2026 WL 1658528, at *1 (N.D. Cal. June 8, 2026) (citing *Leonard v. United States*, 277 F.2d 834, 841 (9th Cir. 1960)). The AGs request to use the following admissible exhibits in their opening statement. In the sections below, the AGs identify the exhibits and the specific excerpts that the AGs wish to show the jury, and describe the grounds for admissibility, sponsoring witnesses, and foundation for each document.[2]

### B. The AGs Seek to Include Excerpts of Internal Meta Documents and Presentations That Will Be Sponsored by the Testimony of the Author, Custodian, or Person with Knowledge.

**Plaintiff Exhibit Nos. 1931, 723, 1945, 818, 244, 2841, 1691, 4142**

The AGs seek to show the jury excerpts from internal Meta presentations that they may properly admit through the testimony of the custodians and authors of the documents, all of whom are included on the AGs' witness list. This includes:

- "Teen Mental Health Deep Dive" presentation: Title slide and chart showing that according to a survey conducted by Meta, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

---

[2] The authenticity of the exhibits cited in this motion is not at issue. Per the parties' joint trial stipulation, "[t]he Parties agree as to the authenticity of all documents and data produced by any Party in this litigation as a general matter but reserve the right to discuss concerns with any specific document . . . ." ECF 474 (3258) at 11 (granted at ECF 485 (3284) at 2-3). All of the exhibits subject to this motion are documents produced by Meta in discovery, with the exception of Meta's 10-K, which may be authenticated by witness testimony. There is no reasonable basis for Meta to claim that any of the produced documents cited are not authentic.

2

STATE AGS' MOTION FOR PERMISSION TO USE EXHIBITS IN OPENING STATEMENT
Case Nos. 4:22-md-03047-YGR-PHK; 4:23-cv-05448-YGR

██████████████████████████████ Ex. A, Pltf. Ex. No. 1931, at 1, 21.[3] Wendy Gross, current Head of Marketing Insights for Creators & Threads and former Head of Product Marketing Insights for Instagram at Meta, is custodian and author, and will testify at trial. *See id.* at 1 (Gross noted as author).

- "IG Brand in App Insights" presentation: Title slide and slide stating that ████████ ████████████████████████████████████ Ex. B, Pltf. Ex. No. 723, at 1, 9. Gross is custodian and author. *See* Ex. C, Gross. Dep., Jan. 28, 2025, at 238:20-238:22 (confirming authorship of "IG Brand in App Insights" presentation).

- "Teen Mental Health: Creatures of Habit - Aug/Sep 2019" presentation: Title slide and slide discussing Meta's internal marketing research surveying teen users and stating that ████████████████████████████ and that ███████████████ *See* Ex. D, Pltf. Ex. No. 1945 at 1, 15. Gross is custodian. Ex. C, Gross Dep., Jan. 28, 2025, at 74:9-74:18 (confirming presentation was created for Meta by third party agency).

- "Teen Fundamentals" presentation: Title slide and slide showing ████████████ ██████████████████████████████████████ ██████████████████████████████████████ ██████ Ex. E, Pltf. Ex. No. 244, at 1, 13. Authored by Shayli Jimenez, current Senior User Experience Researcher who will testify at trial.

- "Long Term Retention: The Young Ones are the Best Ones and Other Learnings" report: Title page and excerpt describing ████████████████████ ████████████████████████████████ Ex. F, Pltf. Ex. No. 2841, at 1–2, 16. Co-authored by former Meta Product Lead Robert Chen who will testify at trial.

- "Appearance-based social comparison on Instagram" document: Data from internal Meta post that summarizes results from survey of Instagram users. *See* Ex. G, Pltf. Ex. No. 1691, at 1 (████████████████████████

---

[3] Hereinafter, all citations to lettered exhibits (such as "Ex. A," "Ex. AA," etc.) refer to the exhibits to the Read Declaration. In addition, all page numbers for the lettered exhibit refer to PDF page numbers.

3

████████████████████████████████████████████████████

████████████████████████████). Co-written by former Meta researcher Justin Cheng who will testify at trial.

- "Hard Life Moments – Mental Health Deep Dive" presentation: Chart ████████████ ████████████████████████████████████████ ████████████████████████████ Ex. H, Pltf. Ex. No. 4142, at 19–20. Co-authored by former Meta Senior Quantitative User Experience Researcher Shilpa Mody, who will testify via designation.

- "Youth Empathy Framing" presentation: Excerpts from document 1) describing that ████████████████████████████████████████████ ████████████████████████████████████████████.";
2) stating that ████████████████████████████ ████████████████████████████ and 3) stating that if ████████████████ ████████████████████████████████████████ ████████████████████████████████████████ ████████████████ Ex. I, Pltf. Ex. No. 818, at 1, 10. Gross and Jimenez are custodians and both will testify at trial.

These documents are highly relevant to the AGs' case because they show the falsity and misleading nature of Meta's statements about the safety of teens on its platforms and the company's knowledge about risks to teens. They also illustrate Meta's efforts to increase platform engagement of teens and children. The AGs plan to call the authors and/or custodians of each document as live or by-designation witnesses in the AGs' case-in-chief. *See* ECF 461 (3243) at 4–6. These sponsoring witnesses will provide sufficient testimony to admit the documents as business records or admissions.

First, the authors and custodians of the above-mentioned presentations, reports, and research summaries are all "qualified witness[es]" who can lay the foundation that the documents are business records that they, or other Meta employees or agents with knowledge, created and maintained in the normal course of Meta's regularly conducted business activities. *See* Fed. R.

4

Evid. 803(6). *See also, e.g., ABS Ent., Inc. v. CBS Corp.*, 908 F.3d 405, 425 (9th Cir. 2018). The Ninth Circuit "broadly interpret[s]" the meaning of the phrase "'[an]other qualified witness' to require only that the witness understand the record-keeping system." *United States v. Ray*, 930 F.2d 1368, 1370 (9th Cir. 1990) (citations omitted). "Rule 803(6) 'only requires [testimony by] 'someone with knowledge' about the record-keeping, not necessarily . . . someone with knowledge about how the reports were made or maintained." *United States v. Town of Col. City*, 935 F.3d 804, 813–14 (9th Cir. 2019) (quoting *ABS Ent., Inc.*, 908 F.3d at 426) (alterations in original).

Second, these research documents and presentations are alternatively and additionally admissible as admissions of a party opponent. The documents' authors and custodians possess the requisite knowledge to lay the foundation that the research documents were created by Meta agents or employees while working for Meta. *See* Fed. R. Evid. 801(d)(2)(D). And all of the documents plainly concern matters within the scope of that employment relationship. Further, the documents and the statements within them constitute Meta's admissions regardless of each author's level of employment at the company. That the employee or agent declarants are not or were not corporate officers or managers is not the relevant inquiry under Rule 801(d)(2)(D). Instead, the key requirement is that the declarant made a statement within the scope of their employment, which is plainly true here for all of the research documents. *See Weil v. Citizens Telecom Servs. Co.,* LLC, 922 F.3d 993, 999–1000 (9th Cir. 2019) ("Our sister circuits have similarly focused the scope inquiry on whether the declarant was involved in a process leading up to a challenged decision, rather than focusing on whether the declarant was a final decision-maker.") (citing decisions); *Bronson v. Samsung Elecs. Am., Inc.*, No. 18-02300, 2019 WL 2617053, at *4 (N.D. Cal. June 26, 2019) (records created by Samsung repair-center employee were admissible against Samsung as statements of a party opponent).

**Plaintiff Exhibit No. 27**

The AGs request to show the jury a chart from an internal slide deck titled "IG Mental Well-being – Multi-half Strategy – Communities Review (8 Dec 2022)" depicting ▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ *See* Ex. J, Pltf. Ex. No. 27, at 50. The inefficacy of Meta's

5

time management tools is central to the AGs' deception and unfairness claims. Former Meta Data Scientist George Volichenko, who worked on the slide deck and the tools it discusses as part of his work on Instagram's Wellbeing team, will testify at trial and possesses the personal knowledge to properly lay the foundation for admitting this document as a business record and admission. *See id.* at 23 ("@georgy@fb.com" tagged in document); 926 (comment by "George Volichenko").

**Plaintiff Exhibit Nos. 2715, 3254**

The AGs request to show a chart from an Instagram-branded presentation titled "Bad Experiences and Encounters Framework (BEEF) Survey – Data collection: Jun 27-July 8, 2021," showing ███████████████████████████████████████████. Ex. K, Pltf. Ex. No. 2715, at 21. Meta listed only "Meta Platforms" as the custodian of this document, even though former Instagram User Researcher and Meta witness Kyle Andrews is listed as the author on the first page of the presentation. *Id*. at 1. Former Meta employee and contractor Arturo Bejar will testify that he helped develop the BEEF survey while consulting for Meta. *See* Ex. L, Bejar Dep., April 7, 2025, at 282:21-286:12. As such, Mr. Bejar has sufficient knowledge to establish that it is an admission and a business record. *See* Fed. R. Evid. 602 advisory committee's notes (1972) (explaining that Rule 602 personal-knowledge requirement does not "govern the situation of a witness who testifies to a hearsay statement as such, if he has personal knowledge of the making of the statement"). In addition, the AGs may call Mr. Andrews himself to testify about the BEEF Survey. *See* ECF 461 (3243) at 3 (listing Kyle Andrews as a "may call" witness). Finally, this document may also be admitted through the testimony of Meta's corporate executives. Mr. Bejar shared the BEEF survey work directly with Mr. Mosseri, who thus has sufficient knowledge to establish that the document is a business record or admission. *See* Ex. M, Pltf. Ex. No. 1538, at 1. The presentation may also be admitted through the testimony of Mr. Zuckerberg, even if he does not have personal knowledge of the specific document. *See infra* Sec. II.C, p. 12.[4]

---

[4] The referenced section outlines how the testimony of Meta's corporate witnesses who claim to lack personal knowledge of a document can still establish that it is an admission if they can testify that the requirements of Rule 801(d)(2)(D) are met. For reasons further explained in Section II.C below, Mr. Zuckerberg has sufficient knowledge to establish that the Instagram-
(continued…)

Mr. Bejar can also properly lay the foundation for the admission of the Instagram Q3 2021 Community Standards Enforcement Report (CSER). The AGs seek to include excerpts from two pages of the report showing ███████████████ ███████████████████████████████ ████████████████████████████, which contradict the data gathered in the BEEF survey. *See* Ex. N, Pltf. Ex. No. 3254 at 3, 4. The CSER report is not hearsay because the AGs will offer it to show that Meta released this information to the public, rather than for the truth of that information. *See, e.g., L.A. News Serv. v. CBS Broad., Inc.*, 305 F.3d 924, 935 (9th Cir. 2002) ("Out-of-court declarations introduced to show the effect on the listener are not hearsay."). Mr. Bejar gained personal knowledge of this CSER report and the data it contains during his time working on safety issues at Meta, and he can therefore establish that the report is an admission and business record. *See* Ex. L, Bejar Dep., April 7, 2025, 343:15-344:13. In addition, Meta's corporate executives also have personal knowledge of this and other CSER reports given that they are public statements of the company. *See id.* (explaining that Meta publishes CSERSs publicly on its Transparency Center website).

**Plaintiff Ex. No. 1243**

The AGs also seek to include an internal employee chat in which Shayli Jimenez (who will testify at trial) ████████████████████ ██████████████████████ Ex. O, Pltf. Ex. No. 1243 at 1. Ms. Jimenez went on to say that ██████████████████████████ ███████████████████████████████████ *Id.* As an initial matter, the AGs may offer evidence of the chats for a non-hearsay purpose: as evidence of Meta's knowledge and "state of mind." Fed. R. Evid. 803(3). Observations about ██████████ ████████ by Meta's researchers focused on studying teens and the issue of compulsive use are highly probative of the company's actual knowledge of the risks of its platforms. And beyond that, the chats are admissions. The employees' comments regarding ████████

branded BEEF survey presentation was written by a Meta employee within the scope of their employment.

7

████████ pertain directly to their employment as researchers studying compulsive use in the context of Meta's products and teen users. The chats are therefore statements of a party opponent, regardless of the declarants' level of seniority at the company. *See, e.g., Weil*, 922 F.3d at 999–1000.

The chats are also business records. Rule 803(6) applies broadly to a "record of an act, event, condition, opinion, or diagnosis." *See* Fed. R. Evid. 803(6). Current and former employee witnesses, including Arturo Bejar, will testify that Meta employees routinely used internal chats to memorialize work-related commentary between team members while conducting regular business activities on behalf of Meta. *See* Fed. R. Evid. 803(6)(B-D); *Town of Col. City*, 935 F.3d at 813–14 ("Rule 803(6) 'only requires [testimony by] 'someone with knowledge' about the record-keeping, not necessarily . . . someone with knowledge about how the reports were made or maintained' . . . .") (quoting *ABS Entm't, Inc.*, 908 F.3d at 426) (first and second alterations in original). In this instance, the chats are part of a discussion between Ms. Jimenez and her colleagues about ████████████████████████████ ████████████ *See* Ex. O, Pltf. Ex. No. 1243, at 1. Accordingly, the chats constitute records of ████████████████████ by "someone with knowledge," *e.g.*, Meta researchers studying how teen brains interact with Meta's platforms and created close in time to the observations they documented. Fed. R. Evid. 803(6)(A). In addition, the ample evidence of compulsive use associated with Meta's platforms (as gathered by its own researchers) and of Meta's intent to drive engagement with teens supports the conclusion that the employees' observations are wholly accurate. *See Clark v. City of Los Angeles*, 650 F.2d 1033, 1037 (9th Cir. 1981) ("The basis for the business record exception is that accuracy is assured because the maker of the record relies on the record in the ordinary course of business activities.").

Meta may object to the admission of this and other documents under Federal Rule of Evidence 403, as it has done so in other proceedings. However, a court's exclusion of evidence based on Rule 403 is only appropriate when its "probative value is substantially outweighed" by the danger of undue prejudice, *see* Fed. R. Evid. 403, and exclusion "must be cautious and sparing." *Sidibe v. Sutter Health*, 103 F.4th 675, 691 (9th Cir. 2024) (internal citation omitted).

The probative value of these communications by Meta researchers studying addiction issues is very high and does not present any "undue prejudice" to Meta because the communications reflect the actual statements and knowledge of employees within the company that were not shared with the public. The chats are not the idiosyncratic comments of rogue employees, but rather statements that express opinions directly related to their experience as Meta researchers focused on the issue of teen wellbeing. Such opinions are highly probative of Meta's knowledge of the platforms' risks, outweighing any risk of prejudice to Meta.

> **C.    The AGs Request to Include Excerpts of Internal Meta Documents, Presentations, and Communications that May Be Admitted Through the Testimony of Meta Executives.**

**Plaintiff Ex. Nos. 1748A, 1748B, 75**

The AGs request to show excerpts from two internal emails that were sent or received by executive witnesses. First, the AGs seek to show excerpts from an email and attachment that were sent directly to Adam Mosseri, Head of Instagram. The email, with the subject line "Teens Strategic Focus H1 2017," states, ███████████████████████████ Ex. Q, Pltf. Ex. No. 1748A, at 1-2. Similarly, the attachment includes a slide stating, ████████ ████████ Ex. P, Pltf. Ex. No. 1748B at 17. As a recipient of the email and attachment, Mr. Mosseri can lay the foundation that both were authored by Meta employees within the scope of their employment. Fed. R. Evid. 801(d)(2)(D). He can also establish that the email and attached document, both of which ██████████████████ ██, were created and maintained in the normal course of Instagram's regular business activities. Fed. R. Evid. 803(6). The content of the emails establishes that Mr. Mosseri and his colleagues were relying on the information shared via email to conduct Meta's business. *See Clark*, 650 F.2d 1037 (9th Cir. 1981) (business records under 803(6) are those "relied upon by the business in the performance of its functions").

Second, the AGs request to show an excerpt from an email sent by Antigone Davis, Meta's Global Head of Safety, in which Ms. Davis states, ████████████████ ████████ Ex. R, Pltf. Ex. No. 75, at 1. This is plainly an admission by a Meta employee within the scope of her employment, and one that is obviously relevant to the AGs' claims related

9

to Meta's failure to keep children off its platforms. *See* Fed. R. Evid. 401 & 801(d)(2)(D). The email is also a business record. The testimony of former and current Meta employees will show that employees normally rely on email to discuss and solve issues related to the company's platforms, which is the purpose of the email exchange in which Ms. Davis made her statement. *See id.* 803(6); Ex. R, Pltf. Ex. No. 75 at 1-5 (█████████████████████ ██████████ ).

**Plaintiff Ex. Nos. 3871, 537B, 556, 4224, 1358**

Other exhibits that the AGs seek to show and may admit through the testimony of Meta leadership are documents that the corporate executive witnesses have testified about previously, and/or were designated as custodians of such documents. This includes:

- "Cosmetic Surgery Effects (a/c priv)" document: First page ███████████████ ████████████████████████████████████████; images included in document █████████████████████████; and excerpt stating that ████████████ █████████████████████ Ex. S, Pltf. Ex. No. 3871, at 1-3.[5] Meta CEO Mark Zuckerberg is custodian and previously testified about the document. *See* Ex. T, Zuckerberg Dep., March 27, 2025, 300:1-311:11.

- "Company Milestones" presentation: Slide showing that Meta ████████████ ████████████████████. *See* Ex. U, Pltf. Ex. No. 537B, at 4. Zuckerberg is custodian of presentation and previously testified about it. *See* Ex. V, Zuckerberg Dep., May 8, 2026, 86:10-105:4.

- "H2 2019 - Central Products: Growth" document: Chart showing ████████ ████████████████████████████. *See* Ex. W, Pltf. Ex. No. 556, at 3. Zuckerberg is custodian.

---

[5] The AGs' opening statement will not reference any privileged material.

- "Project Daisy Launch Discussion" presentation: Excerpt showing ████████████ ████████████████████████████ ████████████████████████████ Ex. X, Pltf. Ex. No. 4224, at 3; excerpt stating that ████████████████████████████ ████████ *See id.*

at 4. Zuckerberg is custodian.

All of these documents are probative of the misleading nature of Meta's public statements about prioritizing safety for teens. Given his designation as a custodian, Mr. Zuckerberg has sufficient knowledge to prove testimony that establishes these documents as business records and admissions of Meta employees made within the scope of their employment.

Similarly, the AGs request to show an excerpt from an internal presentation titled "Child Safety, State of Play" stating, ████████████████████████████ ████████████████████████████ Ex. Y, Pltf. Ex. No. 1358B, at 5.[6] Meta Global Head of Safety Antigone Davis previously testified that her team prepared this document. *See* Ex. Z, Davis Dep., March 4, 2025, 146:17-147:1. Ms. Davis is

---

[6] Meta untimely clawed back this document on July 21, 2026, despite the unredacted version being used and disclosed at various points during this litigation. Read Decl. ¶ 43. The language included in this motion is not part of the clawback, but the AGs intend to use the unredacted version in the opening statement. As part of this motion to use the exhibit in opening, the AGs ask the Court to find that the clawback was improper. The AGs disclosed the "Child Safety, State of Play" document in their responses to Meta's Second Set of Interrogatories on December 23, 2024. *See* Ex. AA at 7, 12 (citing clawed back document, META3047MDL-015-00000400). The fully unredacted version was used as Exhibit 20A to the deposition of Antigone Davis on March 4, 2025. *See* Read Decl. ¶ 43. The AGs also listed this document in two of their experts' materials considered lists. Ex. Z at 2 (citing clawed back document, META3047MDL-015-00000400); Ex. BB at 2 (same); Ex. CC at 2 (same); Ex. DD at 2 (same). The parties previously stipulated that Meta will "promptly assert clawbacks over any document on . . . (2) the MDL AGs' preliminary exhibit list." *See* ECF 2949 at 6. The AGs provided their initial exhibit list to Meta on June 6, 2026. Meta's July 21 clawback notice, sent 45 days after receiving that list and less than a month before trial, is not "prompt" as contemplated by the stipulation. The AGs also note that this clawback is part of Meta's recent efforts to claw back other documents, some of which have even been previously submitted to the Court as part of the AGs' filings and appear in the Court's orders. For example, Meta clawed back a document containing a workplace chat between Meta employees that was used as Exhibit 39 to the State AGs' Motion for Partial Summary Judgment on COPPA filed on January 30, 2026, and quoted in the body of the motion. *See* ECF 249 (2696) at 6-7. This same language was used in the Court's June 29, 2026 Order on the State AGs' Motion for Partial Summary Judgment. *See* ECF 3214, at 30 (citing Dkt. No. 2696-41.) But Meta waited until July 10, 2026 Meta to issue a clawback notice to redact language in these exhibits, in direct violation of the Rule 502 Clawback Order requiring notice within seven days of a filing to the Court. *See* ECF 248 ¶ 5(b).

therefore a proper sponsoring witness to establish at trial that this presentation is an admission and business record.

**Plaintiff Ex. No. 145**

The AGs also request to show excerpts from exhibits that may be admitted through Meta executives even if the witnesses disclaim current personal memory or knowledge of the documents.[7]

For example, the AGs seek to show an internal email describing Meta's failure to checkpoint Facebook users who attempted to change their age to under 13. *See* Ex. EE, Pltf. Ex. No. 145, at 4 (███████████████████████████████████████████████████████████████████). The email is part of a larger email chain between Meta employees discussing this issue and proposing various solutions. *See id.* at 6-8. The cited statement is direct evidence of Meta's actual knowledge of underage users on its platforms. The email thread is an admission, and the testimony of Mark Zuckerberg and Antigone Davis may provide testimony satisfying the requirements of Rule 801(d)(2)(D), even if these executives claim that they have never seen this email before and do not have personal knowledge of it.

Admissions enjoy "freedom . . . from technical demands of searching for an assurance of trustworthiness . . . and the rule requiring firsthand knowledge." *See* Advisory Committee comment to FRE 801. Thus, "the only foundation required for 801(d)(2)(B) adoptive admissions is a showing that they were made or adopted by the opposing party or by its agent on a matter within the scope of that agency; there is no personal-knowledge requirement." *Rearden LLC v. Crystal Dynamics, Inc.*, 2019 WL 8275254, at *5 (N.D. Cal. July 12, 2019) (internal citation and quotation omitted). Here, given that the email was written by an employee using an "@fb.com" email address, both Mr. Zuckerberg and Ms. Davis can testify that the author was a Meta employee at the time the statement was made, writing about matters within the scope of their

---

[7] The AGs do not concede that Meta's executives lack personal knowledge of any of the cited documents, but anticipate that they may attempt to disclaim such knowledge at trial.

12

employment. *See United States v. Pac. Gas & Elec. Co.*, 2016 WL 3903384, at \*6 (N.D. Cal. July 19, 2016) (holding that "it [did] not matter, for the purposes of *admissibility*, that [PG&E supervisor] had never seen the challenged exhibits (emails and documents alike) before his testimony was used as the basis for their admission under Rule 801(d)(2)(D)" because he "did not need to have previously seen the exhibits to know that, for example, the author of an email was a PG&E employee at the time the statement was made . . .").

Accordingly, the AGs may admit the email as an admission through the testimony of Ms. Davis and Mr. Zuckerberg, then ask these witnesses questions about the contents of the email based on their personal knowledge of the topic it addresses. Both Ms. Davis and Mr. Zuckerberg have personal knowledge of Meta's age enforcement and COPPA compliance efforts based on their respective roles as Meta's CEO and Global Head of Safety. *See In re Kaypro*, 218 F.3d 1070, 1075 (9th Cir. 2000) ("Personal knowledge may be inferred from a declarant's position."); *Barthelemy v. Air Lines Pilots Ass'n*, 897 F.2d 999, 1018 (9th Cir. 1990) (holding that a CEO's personal knowledge of various corporate activities could be presumed); *see also Self-Realization Fellowship Church v. Ananda Church of Self-Realization*, 206 F.3d 1322, 1330 (9th Cir. 2000) (holding that corporate officer "could be expected to know the identity of [company] employees and their tasks").

Ms. Davis and Mr. Zuckerberg can also establish that the email is a business record without having seen the email before. *See Miller v. Fairchild Indus., Inc.*, 885 F.2d 498, 514 (9th Cir. 1989) (describing that "[t]he foundation requirement for Rule 803(6) may be satisfied by the testimony of anyone who is familiar with the manner in which the document was prepared, even if he lacks firsthand knowledge of the matter reported, and even if he did not himself either prepare the record or even observe its preparation") (quotation marks and internal citation omitted). Ms. Davis and Mr. Zuckerberg are both familiar with the manner in which Meta employees use email to conduct and record regular business activities, such as diagnosing and discussing business problems as is the case here. *See Arroyo v. Int'l Paper Co.*, 611 F. Supp. 3d 824, 833 (N.D. Cal. 2020) (holding that HR manager who was not author or recipient of email between HR representatives could authenticate email as business record).

13

**Plaintiff Ex. Nos. 4257, 4256, 4255**

Similarly, other documents may be admitted through the testimony of Mr. Mosseri even if he disclaims personal knowledge of them. The AGs cite excerpts from two versions of a Meta-branded presentation called "Leading on IG Youth Protections," with the subtitle, "IG Leadership Review." *See* Ex. FF, Pltf. Ex. Nos. 4256, at 1; Ex. GG, 4257 at 1. The earlier version of this presentation includes admissions of Meta's knowledge that Instagram poses risks to teen mental health. *See* Ex. FF, Pltf. Ex. No. 4256 at 5 (slide containing statement that ███████████ ███████████████████████████████████████████████████████ ████████████████████████████████████████). Those references were removed from the later version of the presentation. *See* Ex. GG, Pltf. Ex. No. 4257, at 5.

Mr. Mosseri has personal knowledge of this document as a member of the "IG Leadership" team. *See* Ex. HH, Pltf. Ex. No. 4255, at 1, 8 (███████████████████ ██████████████████████████████). Moreover, based on the face of the presentation, Mr. Mosseri can establish that it is an admission and business record, as he "need not to have previously seen the exhibit[] to know that . . . the logo on [the] slideshow presentation belong[s] to [Meta], and was therefore authored by [Meta] employees." *See id.*, at 44; *PG&E*, 2016 WL 3903384, at *6; *see also Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd.*, 454 F. Supp. 2d 966, 974 (C.D. Cal. 2006) ("Documents that bear StreamCast's trade names, logos, and trademarks are statements by StreamCast itself, and are admissible as admissions by a party-opponent . . . ."). And as Head of Instagram, Mr. Mosseri is plainly familiar with the subject matter of the presentation: Instagram's strategies for complying with and responding to youth safety regulations. Accordingly, his testimony that the presentation was created by Meta employees within the scope of their employment is sufficient to admit the document as a statement of a party opponent, even if he does not have personal knowledge of the specific document. Likewise, Mr. Mosseri does not need to have personal knowledge of the document to establish that it is a business record. *See Miller*, 885 F.2d at 514. Given Mr. Mosseri's role at Meta, he is qualified to testify that the presentation was created in the ordinary course of Meta's regular business activities.

14

STATE AGS' MOTION FOR PERMISSION TO USE EXHIBITS IN OPENING STATEMENT
Case Nos. 4:22-md-03047-YGR-PHK; 4:23-cv-05448-YGR

The presentations are also admissible through any Meta witness because Meta designated "Meta Platforms" as the sole custodians of the documents under FRE 803(6). If "Meta Platforms" is the appropriate custodian to verify that the document is a business record, then by definition any Meta employee can admit the document as a business record. This is particularly true given that Meta has refused to provide other information to lay such a foundation—the State AGs requested metadata fields that Google Drive automatically tracks for who had access to view and edit this (and other) documents, but Meta has refused to provide that metadata for any documents. *See* ECF 3023 at 6-7. That dispute is still pending in front of Magistrate Judge Kang.

For the same reasons, an internal employee chat related to the "Leading on IG Youth Protections" presentation is admissible through the testimony of Mr. Mosseri. The AGs seek to show an excerpt from the chat discussing ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬ *See* Ex. HH, Pltf. Ex. No. 4255, at 9. Although Mr. Mosseri did not participate in the chat himself, he possesses the knowledge to recognize that the chat participants, each using an "@meta.com" email address, were all Meta employees at the time their statements were made, discussing a topic that is plainly within the scope of their employment. And as discussed, the testimony of former Meta employees will establish that the chat is a business record, as Meta employees regularly used chat to record information as they conducted their ordinary business activities. In addition to Mr. Mosseri, the AGs may admit these documents through the testimony of Francesco Fogu, the current Director of Product Design at Instagram. Mr. Fogu, who will testify at trial, *see* ECF 461 (3243) at 5, can establish that the documents are admissions and business records as one of the participants in the chat and an editor of the presentation. *See* Ex. HH, Pltf. Ex. No. 4255 at 1 (email summary of chat sent from "Francesco Fogu" and to "ffogu@meta.com"); *id.* at 9 (showing "Francesco Fogu" participating in chat and discussing edits to document).

Finally, the presentations and chat are highly probative of Meta's knowledge of the risks of its platforms to youth and the company's intent to deceive consumers. The removal of

15

statements ███████████████████████████████████████████, and ███████████████████ shows that Meta intentionally took steps in order to conceal research findings about the risks of its platforms.

**D.    The AGs Request to Include Excerpts of Public Documents.**

Lastly, the AGs request to use in their opening statement excerpts from public documents.

**Plaintiff Ex. No. 4111**

The AGs seek to show an excerpt from in Meta's 2024 Form 10-K that includes the following statements by Meta: 1) "Substantially all of [Meta's] revenue is currently generated from marketers advertising on Facebook and Instagram," and 2) "The size of our active user base and our users' level of engagement across our products is critical to our success." *See* Ex. II, Pltf. Ex. 4111, at 23. As a signatory on the Form 10-K, *id*. at 205, Mr. Zuckerberg can authenticate this document and lay the foundation for its admission as a statement of a party opponent and business record. *See S.E.C. v. Jasper*, 678 F.3d 1116, 1122–23 (9th Cir. 2012) (noting that "virtually all 10–Ks [are] admissible as a business record so long as [they are] properly authenticated"); *Excelligence Learning Corp. v. Oriental Trading Co.*, 2004 WL 2944048, at *9 (N.D. Cal. Dec. 20, 2004) (statements in Form 10-K were "party admissions").

**Plaintiff Ex. Nos. 2168, 4032, 4021, 2169, 2176**

The AGs also request to show the jury examples of child-directed social media content that was posted publicly on Facebook and Instagram.[8] *See* Ex. JJ, Pltf. Ex. No. 2168; Ex. KK, Pltf. Ex. No. 4032; Ex. LL, Pltf. Ex. No. 4021; Ex. MM, Pltf. Ex. No. 2169; Ex. NN, Pltf. Ex. No. 2176. The AGs do not offer these posts to assert the truth of the statements they contain, but for the non-hearsay purpose of showing that this kind of content was published on Meta's platforms. *See L.A. News Serv.*, 305 F.3d at 935. Adam Alter, one of the AGs' experts, will authenticate these exhibits as images of social media content he found on Instagram and Facebook.

---

[8] The AGs reiterate that they do not intend to show any comments on the posts that could be construed as CSAM.

16

## III.    CONCLUSION

The AGs respectfully request that the Court allow the use of these exhibit excerpts in their opening statement.

Dated: August 3, 2026                                      Respectfully submitted,

                                                          By:  */s/ Katherine Read*

                                                          **ROB BONTA**
                                                          Attorney General
                                                          State of California

                                                          Nicklas A. Akers (CA SBN 211222)
                                                          Senior Assistant Attorney General
                                                          Bernard Eskandari (SBN 244395)
                                                          Emily Kalanithi (SBN 256972)
                                                          Supervising Deputy Attorneys General
                                                          Megan O'Neill (CA SBN 343535)
                                                          Joshua Olszewski-Jubelirer (CA SBN 336428)
                                                          Brendan Ruddy (CA SBN 297896)
                                                          Nayha Arora (CA SBN 350467)
                                                          Samantha Beckett (CA SBN 308456)
                                                          Katherine Read (CA SBN 341463)
                                                          Deputy Attorneys General
                                                          California Department of Justice
                                                          Office of the Attorney General
                                                          455 Golden Gate Ave., Suite 11000
                                                          San Francisco, CA 94102-7004
                                                          Phone: (415) 510-4400
                                                          Fax: (415) 703-5480
                                                          Katherine.Read@doj.ca.gov

                                                          *Attorneys for Plaintiff the People of the State of California*

                                                          **PHILIP J. WEISER**
                                                          Attorney General
                                                          State of Colorado

                                                          */s/ Krista Batchelder*
                                                          Krista Batchelder, CO Reg. No. 45066,
                                                          *pro hac vice*
                                                          Deputy Solicitor General
                                                          Shannon Stevenson, CO Reg. No. 35542,

17

*pro hac vice*
Solicitor General
Jason Slothouber, CO Reg. No.  43496
*pro hac vice*
Chief Trial Counsel
Colorado Department of Law
Ralph L. Carr Judicial Center
Consumer Protection Section
1300 Broadway, 7th Floor
Denver, CO 80203
Phone: (720) 508-6000
Krista.Batchelder@coag.gov
Shannon.Stevenson@coag.gov
Jason.Slothouber@coag.gov

*Attorneys for Plaintiff State of Colorado, ex rel.
Philip J. Weiser, Attorney General*


**RUSSELL COLEMAN**
Attorney General
Commonwealth of Kentucky

*/s/ Philip Heleringer*
J. Christian Lewis (KY Bar No. 87109),
*Pro hac vice*
Philip Heleringer (KY Bar No. 96748),
*Pro hac vice*
Zachary Richards (KY Bar No. 99209),
*Pro hac vice*
Daniel I. Keiser (KY Bar No. 100264),
*Pro hac vice*
Matthew Cocanougher (KY Bar No. 94292),
*Pro hac vice*
Assistant Attorneys General
1024 Capital Center Drive, Suite 200
Frankfort, KY 40601
CHRISTIAN.LEWIS@KY.GOV
PHILIP.HELERINGER@KY.GOV
ZACH.RICHARDS@KY.GOV
DANIEL.KEISER@KY.GOV
MATTHEW.COCANOUGHER@KY.GOV
Phone: (502) 696-5300
Fax: (502) 564-2698

*Attorneys for Plaintiff the Commonwealth of
Kentucky*

18

**JENNIFER DAVENPORT**
Attorney General
State of New Jersey

*/s/ Kashif T. Chand*
Kashif T. Chand (NJ Bar No. 016752008),
*Pro hac vice*
Assistant Attorney General
Thomas Huynh (NJ Bar No. 200942017),
*Pro hac vice*
Section Chief, Deputy Attorney General
Verna J. Pradaxay (NJ Bar No. 335822021),
*Pro hac vice*
Mandy K. Wang (NJ Bar No. 373452021),
*Pro hac vice*
Deputy Attorneys General
New Jersey Office of the Attorney General,
Division of Law
124 Halsey Street, 5th Floor
Newark, NJ 07101
Tel: (973) 648-2052
Kashif.Chand@law.njoag.gov
Thomas.Huynh@law.njoag.gov
Verna.Pradaxay@law.njoag.gov
Mandy.Wang@law.njoag.gov

*Attorneys for Plaintiffs New Jersey Attorney General and the New Jersey Division of Consumer Affairs Jennifer Davenport, Attorney General for the State of New Jersey, and Jeremy E. Hollander, Acting Director of the New Jersey Division of Consumer Affairs*

STATE AGs' MOTION FOR PERMISSION TO USE EXHIBITS IN OPENING STATEMENT
Case Nos. 4:22-md-03047-YGR-PHK; 4:23-cv-05448-YGR

## **SIGNATURE CERTIFICATION**

Under Civ. L.R. 5-1(i)(3), I, Katherine Read, hereby attest that all signatories listed, and on whose behalf the filing is submitted, concur in this filing's content and have authorized this filing.

DATED: August 3, 2026                                    */s/ Katherine Read*

STATE AGS' MOTION FOR PERMISSION TO USE EXHIBITS IN OPENING STATEMENT
Case Nos. 4:22-md-03047-YGR-PHK; 4:23-cv-05448-YGR