[*Submitting Counsel on Signature Page*]

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| IN RE: SOCIAL MEDIA ADOLESCENT ADDICTION/PERSONAL INJURY PRODUCTS LIABILITY LITIGATION | MDL No. 3047 |
| | Case No. 4:22-md-03047-YGR |
| THIS DOCUMENT RELATES TO: | **STATE AGS' OPPOSITION TO META'S EMERGENCY MOTION FOR SPOLIATION SANCTIONS** |
| *People of the State of California, et al. v. Meta Platforms, Inc. et al.* | Judge: Hon. Yvonne Gonzalez Rogers |
| 4:23-cv-05448 | Magistrate Judge: Hon. Peter H. Kang |

**TABLE OF CONTENTS**

Introduction ........................................................................................................................1

Background .........................................................................................................................2

Argument ............................................................................................................................4

    I.      Meta's Emergency Spoliation Motion Is Untimely ................................................4

    II.     Even If Timely, Meta's Emergency Motion Fails on the Merits ............................4

          A.      Meta Has Not Established that Mr. Bejar Spoliated Relevant Evidence .....5

          B.      Even Assuming Spoliation, Meta Cannot Impute Mr. Bejar's Conduct to the State AGs ...........................................................................................7

          C.      Meta's Requested Remedies Are Grossly Disproportionate ......................9

Conclusion ........................................................................................................................11

**TABLE OF AUTHORITIES**

**CASES**

*Apple Inc. v. Samsung Elecs. Co.*
  888 F. Supp. 2d 976 (N.D. Cal. 2012) .................................................................5, 6, 9

*Blockchain Innovation, LLC v. Franklin Res., Inc.*
  No. 21-08787, 2024 WL 4008759 (N.D. Cal. Aug. 30, 2024) .....................................4, 5, 7, 9

*Domingo v. Donahoe*
  No. 11-05333, 2013 WL 12173925 (N.D. Cal. Mar. 27, 2013) ..................................5

*Evolutionary Intel., LLC v. LivingSocial, Inc.*
  No. 13-04205, 2014 WL 213179 (N.D. Cal. Jan. 17, 2014)........................................5

*Gay v. Parsons*
  No. 16-05998, 2024 WL 4224893 (N.D. Cal. Sept. 17, 2024) ..............................7, 8

*Hernandez v. Sessions*
  872 F.3d 976 (9th Cir. 2017) ........................................................................8

*In re Oracle Corp. Sec. Litig.*
  627 F.3d 376 (9th Cir. 2010) ......................................................................10

*Jones v. Riot Hospitality Group LLC*
  95 F.4th 730 (9th Cir. 2024) ..................................................................5, 10

*Patelco Credit Union v. Sahni*
  262 F.3d 897, 913 (9th Cir. 2001)  ...............................................................4

*Pennwalt Corp. v. Durand-Wayland, Inc.*
  708 F.2d 492 (9th Cir. 1983) ....................................................................2, 7

*Ramos v. Swatzell*
  No. 12-01089, 2017 WL 2857523 (C.D. Cal. June 5, 2017) ...................................7, 8

*Steves & Sons, Inc. v. JELD-WEN, Inc.*
  327 F.R.D. 96 (E.D. Va. 2018) .....................................................................6

*Wilson v. Beloit Corp.*
  921 F.2d 765 (8th Cir.1990) ........................................................................8

**STATUTES**

Cal. Penal Code § 632.....................................................................................8

**COURT RULES**

Fed. R. Civ. P. 37........................................................................................................5, 6, 7, 9, 10

Fed. R. Civ. P. 45.................................................................................................................*passim*

N.D. Cal. Civ. L.R. 37-3............................................................................................................4

**OTHER AUTHORITIES**

The Sedona Conference, *Commentary on Ephemeral Messaging*
22 Sedona Conf. J. 435 (2021)..............................................................................................1

iii

**INTRODUCTION**

Just days before trial, Meta asks the Court to impose extraordinary sanctions against the State AGs based on alleged Rule 45 discovery misconduct by Arturo Bejar, an independent third-party witness whom the State AGs do not employ, represent, or control. Meta seeks to prevent Mr. Bejar from testifying altogether or, failing that, to obtain an adverse-inference instruction. Mot. at 17, 20. Meta's motion is untimely and should be denied for that reason alone. On the merits, Meta has not and cannot establish that particular responsive evidence was irretrievably lost, has not shown a basis to impute an independent non-party's conduct to the State AGs, and has not demonstrated prejudice warranting any sanction—much less witness preclusion or an adverse inference. Meta may cross-examine Mr. Bejar when he testifies in this trial just as Meta did in previous trials, including last month in Tennessee; that is more than enough. Meta's emergency motion should be summarily denied.

There is no emergency. Meta created the very problem about which it now complains. Meta admits that it has known since March 2025 that Mr. Bejar used Signal[1] to communicate with former Meta employees. Simonsen Decl., ¶¶ 10–11. More importantly, by January 20, 2026, Meta had identified the precise preservation concern that it now presents as newly discovered. *E.g.*, *id*., ¶¶ 16–17. After reviewing Mr. Bejar's supplemental production, in January 2026, Meta specifically complained to Mr. Bejar's counsel that the production contained references to moving conversations "to text, WhatsApp, or Signal" but lacked corresponding messages, and expressly asserted that responsive communications may not have been "adequately preserved" and that "relevant materials were insufficiently preserved." *Id*., Ex. 6 at 10–11. Meta nevertheless never sought Signal-specific preservation discovery, supplemental productions, forensic relief, spoliation sanctions, or anything else.

Meta's delay alone is fatal. Fact discovery closed in April 2025. ECF (1159).[2] Meta filed this emergency motion in August 2026—more than a year after that cutoff and more than six months after it

---

[1]Signal is a ubiquitous text-messaging application (or "app") used by journalists, attorneys, government officials, activists, and ordinary individuals for legitimate data-security and personal-privacy reasons. *See generally* The Sedona Conference, *Commentary on Ephemeral Messaging*, 22 Sedona Conf. J. 435 (2021). Signal allows for "ephemeral messaging," which involves "(1) automated disposition of message content on the sender's application *and* that of the recipient; and (2) E2E encryption functionality." *Id*. at 446.

[2] ECF citations adhere to the Court's preference that briefings "reference docket numbers in this docket [23-05448] with the MDL docket number placed in parentheses," ECF 439 (3212) at 1, unless a referenced filing does not appear on a particular docket.

notified Mr. Bejar's counsel of a potential preservation issue. Meta has not shown, nor can it, any diligence to excuse this delay. Sitting on the issue for months, choosing to do nothing about it, and then springing it mere days before trial is obviously improper and too late.

Meta's motion also fails on the merits. Even assuming Mr. Bejar had an applicable preservation duty, Meta has not established what particular responsive evidence was lost after that duty arose, when it was lost, whether equivalent evidence can be obtained from another participant, or facts showing the culpability required for the extreme sanctions that it seeks. And even if Mr. Bejar personally failed to preserve something, Meta offers no basis to impute that conduct to the State AGs. Mr. Bejar is a non-party represented by independent counsel; the State AGs do not possess Mr. Bejar's devices, administer his Signal account, or control his retention settings. Meta's attempt to transform a cooperating third-party witness into an agent of the State AGs has no support in the record, or reality. Meta's recourse under the Federal Rules—if any—for Mr. Bejar's alleged subpoena noncompliance is only contempt under Rule 45. Fed. R. Civ. P. 45(g); *see also, e.g.*, *Pennwalt Corp. v. Durand-Wayland, Inc.*, 708 F.2d 492, 494 (9th Cir. 1983) ("The only authority in the Federal Rules of Civil Procedure for the imposition of sanctions against a nonparty for failure to comply with a subpoena duces tecum is Rule 45([g])."). Meta's choice to now seek sanctions against the State AGs—just days before the start of trial—is frivolous.

Finally, Meta identifies no prejudice remotely proportionate to the relief requested. Meta has received Mr. Bejar's document productions, knew of his Signal use before his first deposition, and examined him for more than 40 hours over five deposition days. Simonsen Decl., ¶ 12. Meta may cross-examine Mr. Bejar in this trial. The Court should not reward Meta's delay by now upending the State AGs' trial presentation based on a trumped-up preservation issue that Meta identified months ago but chose not to pursue. The motion must be denied.

## BACKGROUND

Mr. Bejar is not a party to this enforcement action. *See, e.g.*, ECF (2525) at 1. He is a former Meta employee who worked at the company from 2009 to 2015 and again from 2019 to 2021. *See, e.g.*, ECF (1765) at 3. After leaving Meta, Mr. Bejar publicly criticized Meta's youth-safety practices and later provided information to government investigators. *See id*. At all relevant times in this litigation, he has

been represented by independent private counsel at Baker Botts L.L.P.

On February 11, 2025, Meta served Mr. Bejar with a Rule 45 subpoena seeking, among other things, communications with former Meta employees. ECF (2006-3). Mr. Bejar made initial productions in March and April 2025. Simonsen Decl., ¶¶ 9–10. His March production—before his fact depositions—contained two Signal threads consisting of eight screenshots, including a Signal conversation with former Meta employee Frances Haugen. *Id*., ¶ 11. Thus, the record is clear that Meta knew before deposing Mr. Bejar that he communicated with former Meta employees over Signal. *See id*.

Meta then had extensive access to Mr. Bejar under oath. He sat for a three-day fact deposition on April 7, 8, and 9, 2025, followed by non-retained-expert depositions on July 10 and December 11, 2025. Simonsen Decl., ¶ 12. In total, Mr. Bejar sat for five deposition days and provided more than 40 hours of testimony. *Id*. Mr. Bejar has now also provided hours of additional trial testimony in New Mexico, the JCCP, and Tennessee, Simonsen Decl., ¶¶ 24–26, giving Meta ample additional opportunity to inquire about Signal preservation. Meta should not be rewarded for its failure to do so by upending this trial.

Following this Court's December 9, 2025 resolution of a discovery dispute concerning Meta's Rule 45 subpoena, ECF (2525), Mr. Bejar made a supplemental production on January 12, 2026. Simonsen Decl., ¶¶ 14–15. On January 20, 2026, Meta's counsel wrote to Mr. Bejar's counsel specifically questioning why "there are no text, WhatsApp, or Signal messages in Mr. Bejar's production" and asserted that those communications may not have been "adequately preserved." *Id*., Ex. 6 at 10–11. Meta also pointed to a text thread produced by another former employee but absent from Mr. Bejar's production to argue that "relevant materials were insufficiently preserved." *Id*.

Meta knew how to seek immediate judicial intervention. Two days later, on January 22, 2026, it threatened an "emergency" request to Magistrate Judge Kang concerning alleged deficiencies in the former employees' productions in advance of the JCCP trial. Simonsen Decl., Ex. 6 at 8–10. Meta then asked counsel to confirm that the former employees had searched "all relevant sources of ESI (including text messages)." *Id*. at 4–5. Mr. Bejar's counsel responded that each client had conducted "a diligent search of their electronic messages" and that responsive documents identified through those searches had been produced. *Id*. at 2–3. Meta reserved rights as to certain formalities surrounding confidentiality but did nothing more to address the identified issue. *Id*. at 2.

Only after Mr. Bejar concluded his testimony in the Tennessee AG trial on July 30, 2026, did Meta revive the Signal issue. More than six months after expressly identifying a possible preservation issue, on August 3, 2026, Meta demanded an emergency Zoom hearing before Magistrate Judge Kang to depose Mr. Bejar yet again, Simonsen Decl., Ex. 43 at 3–4, but after realizing that would be procedurally improper, *see id*., Ex. 46 at 13–14, Meta quickly pivoted to this untenable emergency-sanctions motion seeking to preclude Mr. Bejar entirely or obtain an adverse inference. Mot. at 17, 20.

## ARGUMENT

### I.   META'S EMERGENCY SPOLIATION MOTION IS UNTIMELY

Meta's motion is beyond untimely. Any problem is entirely of Meta's own making. Fact discovery closed in April 2025. ECF (1159). Meta filed this spoliation motion on August 7, 2026, more than a year after the fact-discovery cutoff, and more than six months after Meta itself identified in January 2026 the possibility that responsive Signal and other electronic messages had not been preserved. Simonsen Decl., Ex. 6 at 10–11; *see also* Civ. L.R. 37-3 ("no motions related to fact discovery may be filed more than 7 days after the fact discovery cut-off"). Meta has shown a complete lack of diligence in pursuing this non-party discovery issue and should not be rewarded now for that failure. *See, e.g., Patelco Credit Union v. Sahni*, 262 F.3d 897, 913 (9th Cir. 2001) ("Defendants' failure to obtain the requested documents is due to their own lack of diligence.")

To be sure, the Tennessee testimony last month may have given Meta some additional detail about Mr. Bejar's Signal settings. But it did not reveal for the first time the possibility that responsive Signal communications had been lost. Meta had expressly raised that possibility more than six months earlier. Simonsen Decl., Ex. 6 at 10–11. Yet Meta did not pursue Signal-specific preservation discovery, request forensic inspection, seek a supplemental deposition on retention practices, file a spoliation motion, or even meaningfully question Mr. Bejar on Signal preservation during the three recent trials. Meta cannot convert that litigation choice into an emergency days before this trial. On this basis alone, Meta's motion must be denied.

### II.   EVEN IF TIMELY, META'S EMERGENCY MOTION FAILS ON THE MERITS

Meta's motion requires a chain of findings that the record does not support. First, Meta must establish that particular relevant evidence actually existed, was lost while subject to a preservation

obligation, and cannot be restored or replaced through additional discovery. *See* Fed. R. Civ. P. 37(e); *Blockchain Innovation, LLC v. Franklin Res., Inc.*, No. 21-08787, 2024 WL 4008759, at *5 (N.D. Cal. Aug. 30, 2024). Second, it must establish a legally sufficient basis to attribute an independent non-party's alleged loss to the State AGs. *See Blockchain*, 2024 WL 4008759, at *3–4. Third, it must establish the culpability and remedial predicates required for the extraordinary sanctions that it seeks. *See Jones v. Riot Hosp. Grp. LLC*, 95 F.4th 730, 734–36 (9th Cir. 2024); *Blockchain*, 2024 WL 4008759, at *5. Meta fails at every step.

Rule 37(e) addresses ESI "lost because a party failed to take reasonable steps to preserve it" and provides that specific measures may be ordered only where the information "cannot be restored or replaced through additional discovery." Fed. R. Civ. P. 37(e). Mr. Bejar is not a party, so Rule 37(e) does not itself authorize sanctions against him. Meta instead invokes the Court's inherent authority and seeks to impute Mr. Bejar's conduct to the State AGs. But Meta cannot obtain the sanctions that it seeks against the State AGs without proving the underlying loss and attribution and the culpability required for the particular sanction sought. *See, e.g., Jones*, 95 F.4th at 734–36. Meta can establish none of those requirements.

### A.    Meta Has Not Established that Mr. Bejar Spoliated Relevant Evidence

Meta has not established the threshold facts necessary for a spoliation finding. Even assuming Mr. Bejar was subject to an applicable preservation duty by February 2025—or earlier—Meta still must identify responsive evidence that existed, was lost after the duty arose, and cannot be restored or replaced. *See, e.g.*, *Apple Inc. v. Samsung Elecs. Co.*, 888 F. Supp. 2d 976, 989–92 (N.D. Cal. 2012); *Blockchain*, 2024 WL 4008759, at *5. Meta cannot rely on speculation. *See, e.g.*, *Evolutionary Intel., LLC v. LivingSocial, Inc.*, No. 13-04205, 2014 WL 213179, at *3 (N.D. Cal. Jan. 17, 2014) ("Without specific evidence based on sworn testimony that spoliation has in fact occurred, a vague generalized 'loss of evidence' argument is unpersuasive."); *Domingo v. Donahoe*, No. 11-05333, 2013 WL 12173925, at *3 (N.D. Cal. Mar. 27, 2013) ("[S]peculation that some unspecified emails from some unspecified timeframe were improperly destroyed is insufficient to warrant sanctions for spoliation.").

Mr. Bejar testified in Tennessee that he uses Signal for communications "in this area," that he uses ephemeral messaging, and that messages subject to those settings disappear. Simonsen Decl., Ex. 8 at

1712:7–21, 1714:12–15. That testimony describes a completely unremarkable communication practice. It does not establish that any particular responsive messages existed after any preservation obligation attached, when they disappeared, what they contained, or whether equivalent evidence is available from another participant. *See, e.g.*, *Steves & Sons, Inc. v. JELD-WEN, Inc.*, 327 F.R.D. 96, 107 (E.D. Va. 2018) ("Information is lost for purposes of Rule 37(e) only if it is irretrievable from another source, including other custodians.") (citation omitted).

Meta's reliance on Anneke Buffone illustrates the gap. *See* Mot. at 16. Meta asserts that Ms. Buffone communicated with Mr. Bejar over Signal during a period spanning December 2025 through February 2026. *Id*. But Meta identifies no specific missing message, no deletion date, and no particular information that is now unavailable. Ms. Buffone—the other participant—is known to Meta and has already been deposed. Simonsen Decl., ¶ 59. Meta has not shown that the information it believes was conveyed in those communications is unavailable from her or another source, nor has Meta demonstrated that any alleged communication with Ms. Buffone fell within the preservation obligations of the Rule 45 subpoena underlying Meta's emergency motion.

Meta has likewise failed to establish the culpability necessary for its requested sanctions. The Ninth Circuit has explained that "intent" in this context is "most naturally understood" as "the willful destruction of evidence with the purpose of avoiding its discovery by an adverse party." *Jones*, 95 F.4th at 735. Mr. Bejar testified that his Signal practices arose from longstanding communications-security concerns associated with his background as a security engineer. Simonsen Decl., Ex. 8 at 1712:11–21. Meta identifies no evidence that Mr. Bejar adopted Signal or any particular retention setting for the purpose of hiding evidence from Meta.

Meta instead speculates that because certain Signal screenshots that Mr. Bejar preserved do not display a countdown icon, he may have selectively preserved favorable chats while allowing others to disappear. Mot. at 17 n.10. But even Meta must acknowledge that this only "suggests" competing possibilities. *Id*. That speculation is a far cry from *Jones*, where sanctions followed a developed forensic record showing actual deletions, third-party confirmation of communications, repeated discovery violations, and evidence supporting an intent to deprive. *See* 95 F.4th at 734–37.

Meta likewise cannot use a presumption about the contents of lost evidence to prove that

spoliation occurred. Its reliance on *Apple Inc.*, 888 F. Supp. 2d at 993, addresses what may be inferred once spoliation has been established. It does not relieve Meta of proving the antecedent fact that particular responsive evidence actually existed and was lost.

Finally, Meta has not established that any supposedly lost ESI "cannot be restored or replaced through additional discovery." Fed. R. Civ. P. 37(e). The identities of the former employees are known; several have been deposed; and Meta does not show that it has attempted to obtain the allegedly missing communications or equivalent information from the other participants—despite being aware of the issue since at least January 2026. On this record, Meta has not come close to establishing non-party spoliation.

## B. Even Assuming Spoliation, Meta Cannot Impute Mr. Bejar's Conduct to the State AGs

Even if Mr. Bejar independently failed to preserve responsive information, Meta still must establish a basis to impute that conduct to the State AGs. It cannot. The closest Northern District authority cuts against Meta. In *Blockchain Innovation, LLC*, 2024 WL 4008759, the Court rejected an effort to attribute alleged preservation failures by non-parties to the plaintiff absent a sufficient agency or control relationship. *Id.*, at *3–4. The Court distinguished cases involving non-party institutions that controlled the evidence and had a special relationship with the litigants, like those authorities relied on by Meta. *See Gay v. Parsons*, No. 16-05998, 2024 WL 4224893 (N.D. Cal. Sept. 17, 2024) (employee–employer); *Ramos v. Swatzell*, No. 12-01089, 2017 WL 2857523 (C.D. Cal. June 5, 2017) (same).

No comparable relationship exists here. Mr. Bejar is not employed by the State AGs and is not represented by them. He is a former Meta employee, represented by independent Baker Botts counsel. The State AGs did not control his phone, his Signal account, or his retention settings. Meta served its Rule 45 subpoena on Mr. Bejar, negotiated his discovery responses with his independent counsel, moved against him to compel, and received productions directly from him. Calling Mr. Bejar an important or "star" witness does not transform him into the State AGs' discovery agent, notwithstanding Meta's baseless accusations of "complicity." *See, e.g.*, Mot. at 18 (State AGs "have apparently been complicit in [Mr. Bejar's] knowing failure to preserve relevant information"); *id*. at 18 n.11 ("Mr. Bejar has functioned more as an agent of the AGs . . . ."). Moreover, Meta's motion conspicuously omits any mention of Rule 45—the very basis for its non-party subpoena to Mr. Bejar. Rule 45 provides the

Federal Rules' only sanction for Mr. Bejar's alleged subpoena noncompliance: contempt. Fed. R. Civ. P. 45(g); *Pennwalt Corp.*, 708 F.2d at 494 & n.4. By disregarding the governing Rule and relying instead on speculative inferences, Meta asks the Court to impose a remedy untethered to law or fact. The Court should decline Meta's invitation.

Meta's own authorities require more. For example, in *Gay v. Parsons*, 2024 WL 4224893, the Court held that imputation of a non-party's spoliation to a party—there, the party's employer—requires, among other things, a basis to conclude that the party itself acted with a culpable state of mind in failing to prevent the destruction. *Id.* at *7; *see also Ramos*, 2017 WL 2857523, at *6–7(same). Meta identifies no such evidence here, and none is supported by the record. *See, e.g.*, *Wilson v. Beloit Corp.*, 921 F.2d 765, 767 (8th Cir.1990) ("Absent some special relationship or duty arising by reason of an agreement, contract, statute, or other special circumstance, the general rule is that there is no duty to preserve possible evidence for another party to aid that other party in some future legal action against a third party.").

In particular, Meta repeatedly conflates two distinct concepts: knowing that Mr. Bejar used Signal and knowing that he was using Signal in a manner that was destroying responsive evidence subject to an existing preservation duty. The former is undisputed. The latter is not. Meta points to no evidence that any State AG knew, while the alleged destruction was occurring, that responsive messages were disappearing or that the State AGs had any ability to alter Mr. Bejar's personal retention settings.

In a moment of candid desperation, Meta leans on its counsel's recollection of statements made by State AG counsel during an August 2026 meet-and-confer. Mot. at 18; Simonsen Decl., ¶ 31. Those remarks do not establish historical knowledge or culpability and are not evidence. It should go without saying that a lawyer's advocacy during a meet-and-confer about the legal obligations of an independently represented non-party sheds no light on whether the State AGs knew months earlier that responsive messages were being lost by a non-party, let alone whether they could have prevented it.[3]

---

[3] Meet-and-confers are intended to reduce unnecessary burdens on district courts and encourage cooperation before parties seek judicial intervention. *See, e.g.*, *Hernandez v. Sessions*, 872 F.3d 976, 1000 n.29 (9th Cir. 2017). When counsel later weaponizes that process, it chills candor and undermines the cooperation that the process is designed to promote. Meta's counsel is careful to indicate that supposed verbatim quotes are based on "contemporaneous notes." *E.g.*, Simonsen Decl., ¶ 31. However, the use of quotation marks suggests a recording or transcript from which to verify the quoted language

Nor do the government preservation notices on which Meta relies establish imputation. To the contrary, Meta invokes those notices to argue that Mr. Bejar himself had independent notice of preservation obligations. Mot. at 13–14. Whatever those notices establish as to Mr. Bejar, they do not establish that the State AGs possessed or controlled his devices or acted culpably in connection with his personal communications practices.

## C.   Meta's Requested Remedies Are Grossly Disproportionate

Rather than seeking contempt under Rule 45, Meta asks for the most disruptive possible relief: barring Mr. Bejar from testifying at all or instructing the jury that he knowingly destroyed relevant evidence and permitting an inference that the evidence would have been unfavorable to him. Mot. at 17, 20. Neither remedy is remotely proportionate to the record that Meta has developed. *See, e.g.*, *Apple Inc.*, 888 F. Supp. 2d at 992 ("Courts should choose 'the least onerous sanction corresponding to the willfulness of the destructive act and the prejudice suffered by the victim.'") (quoting *Schmid v. Milwaukee Elec. Tool Corp.*, 13 F.3d 76, 79 (3d Cir. 1994)). Indeed, the only appropriate "remedy" is already available to Meta. As it did last month in the Tennessee trial, Meta may cross-examine Mr. Bejar about his communications.

First, Meta has not shown actual prejudice. It received Mr. Bejar's productions, including Signal communications; knew about his Signal use before his first deposition; and examined him for more than 40 hours over five deposition days, to say nothing of the hours of additional trial time during which Meta could have questioned Mr. Bejar about this. Simonsen Decl., ¶¶ 11–12. Meta has also deposed or obtained discovery from former Meta employees with whom Mr. Bejar communicated. Meta identifies no concrete subject on which its ability to cross-examine Mr. Bejar at trial has been materially impaired because of a particular missing message. *Blockchain Innovation* is directly instructive. There, the Court denied spoliation sanctions where defendants failed to show that the alleged failure to preserve text messages caused prejudice; and it emphasized that even upon a showing of prejudice, Rule 37(e) permits only "measures no greater than necessary to cure the prejudice." 2024 WL 4008759, at *5. Here, Meta has not made even the threshold showing.

---

beyond "notes." *But cf.* Cal. Penal Code § 632. Highlighting this very issue, Meta later filed extensive errata to its initial filing. *E.g.*, ECF 513-1 (3350-1) at 18 (correcting a purportedly verbatim quote).

STATE AGS' OPPOSITION TO META'S EMERGENCY MOTION FOR SPOLIATION SANCTIONS
4:22-md-03047-YGR; 4:23-cv-05448-YGR

Second, complete witness preclusion has no reasonable nexus to even the speculated loss. Meta seeks to bar testimony not merely about communications with former employees, but about Mr. Bejar's years at Meta, his personal observations, Meta's systems and safety practices, his own communications with Meta personnel, and other matters having nothing to do with any supposedly missing Signal messages. As a non-retained expert and fact witness—formerly Meta's Leader for Integrity and Care and later an independent contractor specializing in child safety—Mr. Bejar is expected to testify about the inadequacy of Meta's safety tools; Meta's prioritization of growth over safety; the mismatch between Meta's public representations about the prevalence of harms on its platforms, including in its CSER reports, and its internal findings in the BEEF and TRIPS surveys; and research he conducted, both at Meta and independently, regarding Meta's platforms. ECF 461 (3243) at 3. Precluding Mr. Bejar's testimony would give Meta an unwarranted windfall, not remedy any demonstrated prejudice from supposed lost communications with former employees. *See, e.g.*, *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 386–87 (9th Cir. 2010) ("[S]anction[s] should be carefully fashioned to deny the wrongdoer the fruits of its misconduct yet not interfere with that party's right to produce other relevant evidence.").

Third, an adverse inference is unsupported. Meta proposes telling the jury that Mr. Bejar "knowingly destroyed relevant communications" and permitting an inference that the missing evidence was unfavorable to him. Mot. at 20. Those are the very factual propositions that Meta has not established. And to the extent Meta seeks to impute an ESI loss to the State AGs, an adverse inference is especially untenable absent proof of intent to deprive. *See, e.g.*, *Jones*, 95 F.4th at 735–36; Fed. R. Civ. P. 37(e)(2). Meta has no evidence that any State AG possessed the requisite intent.

Finally, Meta's own delay confirms that these remedies are unnecessary. In January 2026, Meta expressly suspected that responsive electronic communications may not have been preserved. It knew how to seek emergency relief and threatened to do so. Yet it did not pursue preservation discovery or sanctions. Having allowed that issue to languish for more than six months, Meta cannot credibly contend that excluding a witness days before trial is the only means of curing an evidentiary problem of its own making. To the extent that there was ever an argument to be made, it is untimely and long since waived.

# CONCLUSION

For these reasons, Meta's motion is untimely and, in any event, fails on the merits. The motion should be denied in full, and the State AGs should be permitted to present their affirmative trial case without additional last-minute disruption.

DATED: August 11, 2026

Respectfully submitted,

**PHILIP J. WEISER**
Attorney General
State of Colorado

*/s/ Krista Batchelder*
Krista Batchelder, CO Reg. No. 45066, *pro hac vice*
Deputy Solicitor General
Jason Slothouber, CO Reg. No. 43496, *pro hac vice*
Chief Trial Counsel, Consumer Protection
Lauren M. Dickey, CO Reg. No. 45773, *pro hac vice*
First Assistant Attorney General
Elizabeth Orem, CO Reg. No. 58309
Assistant Attorney General
Colorado Department of Law
Ralph L. Carr Judicial Center
Consumer Protection Section
1300 Broadway, 7th Floor
Denver, CO 80203
Phone: (720) 508-6000
Krista.Batchelder@coag.gov

*Attorneys for Plaintiff State of Colorado, ex rel. Philip J. Weiser, Attorney General*

**ROB BONTA**
Attorney General
State of California

*/s/ Bernard A. Eskandari*
Nicklas A. Akers (CA SBN 211222)
Senior Assistant Attorney General
Bernard Eskandari (CA SBN 244395)
Emily Kalanithi (CA SBN 256972)
Supervising Deputy Attorneys General
Nayha Arora (CA SBN 350467)
David Beglin (CA SBN 356401)
Megan O'Neill (CA SBN 343535)
Joshua Olszewski-Jubelirer (CA SBN 336428)
Brendan Ruddy (CA SBN 297896)
Jordan Hefcart (CA SBN 366087)
Deputy Attorneys General
California Department of Justice
Office of the Attorney General
455 Golden Gate Ave., Suite 11000
San Francisco, CA 94102-7004
Phone: (415) 510-4400
Fax: (415) 703-5480
Megan.ONeill@doj.ca.gov

*Attorneys for Plaintiff the People of the State of California*

**RUSSELL COLEMAN**
Attorney General
Commonwealth of Kentucky

*/s/ J. Christian Lewis*
J. Christian Lewis (KY Bar No. 87109), *pro hac vice*
Philip Heleringer (KY Bar No. 96748), *pro hac vice*
Zachary Richards (KY Bar No. 99209), *pro hac vice*
Daniel I. Keiser (KY Bar No. 100264), *pro hac vice*

**JENNIFER DAVENPORT**
Attorney General
State of New Jersey

By: */s/ Thomas Huynh*
Kashif T. Chand (NJ Bar No. 016752008), *Pro hac vice*
Assistant Attorney General
Brian F. McDonough (NJ Bar No. 026121980) *Pro hac vice*
Thomas Huynh (NJ Bar No. 200942017), *Pro hac vice*
Section Chief, Deputy Attorney

Matthew Cocanougher (KY Bar No. 94292), *pro hac vice*
Assistant Attorneys General
1024 Capital Center Drive, Ste. 200
Frankfort, KY 40601
Christian.Lewis@ky.gov
Philip.Heleringer@ky.gov
Zach.Richards@ky.gov
Daniel.Keiser@ky.gov
Matthew.Cocanougher@ky.gov
Phone: (502) 696-5300
Fax: (502) 564-2698

*Attorneys for Plaintiff the Commonwealth of Kentucky*

General
Verna J. Pradaxay (NJ Bar No. 335822021), *Pro hac vice*
Mandy K. Wang (NJ Bar No. 373452021), *Pro hac vice*
Deputy Attorneys General
New Jersey Division of Law
124 Halsey Street, 5th Floor
Newark, NJ 07101
Kashif.Chand@law.njoag.gov
Brian.McDonough@law.njoag.gov
Thomas.Huynh@law.njoag.gov
Verna.Pradaxay@law.njoag.gov
Mandy.Wang@law.njoag.gov

*Attorneys for Plaintiffs Jennifer Davenport, Attorney General for the State of New Jersey, and Jeremy E. Hollander, Acting Director of the New Jersey Division of Consumer Affairs*

## SIGNATURE CERTIFICATION

Under Civ. L.R. 5-1(h)(3), I hereby attest that all signatories listed, and on whose behalf the filing is submitted, concur in this filing's content and have authorized this filing.

DATED: August 11, 2026

*/s/ Bernard A. Eskandari*
Bernard A. Eskandari

*Attorney for Plaintiff the People of the State of California*