Michael Ward (SBN 146484)
michael.ward@bakerbotts.com
BAKER BOTTS L.L.P.
1001 Page Mill Road, Bldg. One, Suite 200
Palo Alto, California 94304
Telephone: 650-739-7557
Facsimile: 650-739-7699

Matthew Jacobs (SBN 171149)
matt.jacobs@bakerbotts.com
Karan Singh Dhadialla (SBN 296313)
karan.dhadialla@bakerbotts.com
BAKER BOTTS L.L.P.
101 California Street, Suite 3200
San Francisco, California 94111
Telephone: 415-291-6200
Facsimile: 415-291-6300

*Counsel for Non-Party Arturo Bejar*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### OAKLAND DIVISION

| | |
|---|---|
| IN RE: SOCIAL MEDIA ADOLESCENT ADDICTION/PERSONAL INJURY PRODUCTS LIABILITY LITIGATION | MDL No. 3047 |
| | Case Nos.: 4:22-md-03047-YGR-PHK and 4:23-cv-05448-YGR |
| THIS FILING RELATES TO: | **NON-PARTY ARTURO BEJAR'S OPPOSITION TO META'S MOTION FOR SPOLIATION SANCTIONS PRECLUDING STATE AGS FROM CALLING THIRD-PARTY WITNESS ARTURO BEJAR AT TRIAL OR, IN THE ALTERNATIVE, FOR ADVERSE-INFERENCE INSTRUCTIONS** |
| *All Actions* | Judge: Hon. Yvonne Gonzalez Rogers |
| | Magistrate Judge: Hon. Peter H. Kang |

# Table of Contents

|  |  | Page |
|---|---|---|
| I. | FACTUAL BACKGROUND | 7 |
| II. | ARGUMENT | 10 |
|  | A. Meta Has Not and Cannot Establish That Mr. Bejar Deleted Relevant Documents So the Entire Motion Is Based on An Incorrect Premise | 10 |
|  | B. Mr. Bejar Had No Continuing Discovery Obligation to Meta | 11 |
|  | C. Even If Meta's Allegations Were True, It Is Not Entitled to the Extraordinary Relief Sought | 13 |
| III. | CONCLUSION | 14 |

1

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

CASES

*Blockchain Innovation, LLC v. Franklin Res., Inc.*,
2024 WL 4008759 (N.D. Cal. Aug. 30, 2024) ...............................................................14

*Discover Fin. Servs., Inc. v. Visa U.S.A., Inc.*,
2006 WL 8460949 (S.D.N.Y. Aug. 3, 2006) ..................................................................12

*E & J Gallo Winery v. Encana Energy Servs., Inc.*,
2005 WL 8172972 (E.D. Cal. Jan. 28, 2005) .................................................................13

*erinMedia, LLC v. Nielsen Media Rsch., Inc.*,
2007 WL 1970860 (M.D. Fla. July 3, 2007) ..................................................................12

*Gay v. Parsons*,
2024 WL 4224893 (N.D. Cal. Sept. 17, 2024) ...............................................................12

*Herzig v. Arkansas Foundation for Medical Care, Inc.*
2019 WL 2870106 (W.D. Ark. July 3, 2019) .................................................................13

*In re 3M Combat Arms Earplug Prods. Liab. Litig.*,
2020 WL 6531421 (N.D. Fla. Nov. 5, 2020) ..................................................................12

*In re Application of Shahrokh Mireskandari*,
2013 WL 12112488 (S.D. Cal. Mar. 1, 2013) ............................................................6, 12

*Leaks v. Target Corp.*,
2015 WL 4092450 (S.D. Ga. July 6, 2015) ....................................................................12

*Lofton v. Verizon Wireless (VAW) LLC*,
308 F.R.D. 276 (N.D. Cal. 2015).............................................................................12, 13

*Ramos v. Swatzell*,
2017 WL 2857523 (C.D. Cal. June 5, 2017) ..................................................................12

*Reinsdorf v. Skechers U.S.A., Inc.*,
296 F.R.D. 604 (C.D. Cal. 2013) ...................................................................................13

*These Ponies Are Miserable v. City of Los Angeles*,
2025 WL 3248690 (C.D. Cal. Nov. 7, 2025).................................................................13

*Thoma v. VXN Grp., LLC*,
2026 WL 1676369 (C.D. Cal. May 20, 2026) ................................................................12

*TLX Inc. v. JetBlue Airways Corp.*,
2022 WL 523320 (D. Ariz. Feb. 22, 2022).....................................................................12

2

OTHER AUTHORITIES

Federal Rule of Civil Procedure Rule 45 ...............................................................................6, 12

Federal Rule of Civil Procedure Rule 26 ...................................................................................12

NON-PARTY ARTURO BEJAR'S OPPOSITION TO MOTION          CASE NOS.: 4:22-MD-03047-YGR-PHK
FOR SPOLIATION SANCTIONS

Meta's request for sanctions on the eve of trial is based on Meta's withholding of key facts long known to it and the stringing together of speculative inferences intended to suggest that witness and former high level Meta executive Arturo Bejar intentionally destroyed evidence relevant to his testimony. But when actually aligned against the uncontroverted facts, those nefarious inferences are just false.

The actual facts are these:

1.  Mr. Bejar received no request by any party to preserve or produce his communications with former employees until February 11, 2025 when he received a subpoena from Meta seeking such materials.

2.  He collected and ultimately produced all responsive documents, including *all* Signal communications in his possession. Mr. Bejar used Signal as a communications platform only on a very limited basis and he searched and produced all responsive chats to Meta in March 2025.

3.  Prior to late 2025, Mr. Bejar had not enabled auto-delete on his Signal app, so in point of fact, there are no Signal messages with former employees responsive to the subpoena that had been deleted and which were not collected and produced to Meta. Mr. Bejar only turned on the auto-delete feature of Signal many months *after* he had produced his Signal chats in compliance with the Meta subpoena.

4.  Signal is widely used by tens of millions of Americans to protect their security and their privacy from hackers and from the predatory data practices of companies like Meta. It is used by regular people, academics, researchers, journalists, whistleblowers, and Silicon Valley engineers and executives. There is nothing nefarious about Mr. Bejar being concerned about the security of his communications.

5.  As a non-party, Mr. Bejar has no continuing obligation to produce documents to Meta. Meta cannot and does not explain how automatic deletions of material *after* he has fully complied with the subpoena could possibly give rise to a sanctions order against him.

6.  The questions from Meta's counsel in Tennessee clearly asked about his *current* use of Signal, rather than his historic use. Although Mr. Bejar is a native Spanish speaker, anyone would reasonably interpret them as such.

7.  Although Meta has known for months that Mr. Bejar used Signal, its lawyers have examined Mr. Bejar for more than 40 hours over five deposition days, they have examined him at two trials, and they did not ask Mr. Bejar a single question about this topic until last week.

It is hardly surprising under the circumstances that Meta is desperately trying to smear Mr. Bejar. It has lost two trials featuring testimony from Mr. Bejar, a former high ranking employee and

consultant who has repeatedly provided critical testimony that Meta leaders, including Mark Zuckerberg and Adam Mosseri, were aware of the widespread harms its Instagram platform was inflicting on teens and underage users.  Meta cannot simply dismiss Mr. Bejar as a poor performing, low level employee who was not aware of the many things Meta was supposedly doing to protect children. Zuckerberg personally entrusted Mr. Bejar as the primary executive responsible for the safety and security of the Facebook platform. When Mr. Bejar left the company in 2018, he was proud of his work. But after his daughter and her friends described to him the unwanted sexual advances and misogynistic abuse they were then experiencing on the Instagram platform, he returned to the company as a consultant to identify what had gone wrong after he left. Mr. Bejar gathered data already known to the internal safety teams and reported it directly—in writing—to Zuckerberg, Mosseri and other senior executives. His reports were met with silence and inaction. In the two trials that have occurred, and the third underway in Tennessee, Meta has been unable to impeach this fully corroborated, first-hand, contemporaneous account from a trusted senior executive.

That is the predicate for this desperate and baseless smear.

Let us set aside for the moment the fact that Mr. Bejar actually produced the messages they now brazenly claim he deleted. The key passage in the Meta brief is on page 10 where Meta asserts that Mr. Bejar used Signal for all of his communications with former employees and that he had auto-delete configured to automatically delete messages from *November 2023*. This entire allegation is based wholly and exclusively on Mr. Bejar's testimony in Tennessee. In fact, that testimony was very properly understood by him to relate to his *current* practice: Note the present tense: "I *have* ephemeral messaging on Signal..." Simonsen Decl., Ex. 8 at 1712:13 (emphasis added). Mr. Bejar continued by saying that "I have been doing this pretty much since the time that I – that I started." Started what? Counsel for Meta did not seek to clarify.  In fact, the follow up question was, again, in the present tense:

Q.  And so your texts with these individuals, they *disappear*?

A. Yes, they *do*.

*Id*. at 1712:11–21 (emphasis added).

Non-Party Arturo Bejar's Opposition to Motion for Spoliation Sanctions                    Case Nos.: 4:22-md-03047-YGR-PHK

Meta takes that ambiguous statement by a non-native English speaker about "pretty much" using ephemeral messaging "since the time that I – that I started" to leap to the conclusion that Mr. Bejar used auto-delete to remove and cherry pick messages with former employees since 2023. Brief at 15. Putting aside the fact that the state attorney general offices with whom he communicated in 2023 never requested that he preserve communications with former employees (as Meta well knows but ignores), Mr. Bejar never actually testified that he deleted, directly or indirectly, communications with former employees called for by the February 11, 2025 Meta subpoena. As the attached declaration makes clear, Mr. Bejar did not turn on auto-delete on Signal until late 2025 *after* he collected the communications called for by the Meta subpoena. Meta knows this because he produced those Signal chats to them back in March 2025, almost immediately after receiving the subpoena. Mr. Bejar's statement in his Declaration that he did not then have auto-delete enabled is corroborated by the simple fact that he found and produced several Signal communications with employees—all of which were produced to Meta.

Meta's tale of spoliation cites to the testimony of Anneke Buffone in which she said that she had communications on Signal with Mr. Bejar, which were not produced. Brief at 16. This is misleading in the extreme. Mr. Bejar did not know, meet or communicate with Ms. Buffone until December 2025, which is long *after* the Meta subpoena service date and is thus outside its scope. Declaration of Arturo Bejar ("Bejar Decl.") ¶ 17. Thus, her statements prove nothing about spoliation. Because Mr. Bejar is a third-party witness who had already produced his responsive communications, he had absolutely no obligation to create a record of or retain such communications. Rule 45 makes clear that he had and has no continuing obligation once he complied with the subpoena issued on February 11, 2025. *In re Application of Shahrokh Mireskandari*, 2013 WL 12112488, at *3 (S.D. Cal. Mar. 1, 2013) ("The subpoena cannot be read to include documents not in existence at the time of service of the subpoena.").

Meta's motion thus fails for numerous reasons: a) Meta cannot show that Mr. Bejar destroyed evidence (he did not); b) Meta cannot even show that Mr. Bejar was under any obligation to preserve communications with employees until the February 11, 2025 subpoena and Mr. Bejar has fully produced all relevant documents in his possession in response to that subpoena; c) Meta cannot show

NON-PARTY ARTURO BEJAR'S OPPOSITION TO MOTION FOR SPOLIATION SANCTIONS                    CASE NOS.: 4:22-MD-03047-YGR-PHK

that Mr. Bejar had any continuing obligation to preserve documents after the subpoena date; d) Meta cannot show that a single communication required by its subpoena has been destroyed by Mr. Bejar; e) Meta knew about Mr. Bejar's use of Signal but failed to propound discovery or otherwise ask him questions about that use before last week; and f) Meta has not and cannot show prejudice in any way.

While Mr. Bejar is not a party to this litigation, and has no financial interest in its outcome, he has a very strong interest in ensuring that his reputation is not improperly besmirched, as Meta has tried to do in this demonstrably flawed motion for sanctions. He has not engaged in spoliation of any kind.

## I.   <u>FACTUAL BACKGROUND</u>

Mr. Bejar was Director of Engineering at Facebook before it was known as Meta. Bejar Decl. ¶ 1. While working at Yahoo, he was approached by executives at Meta and was personally recruited by Mark Zuckerberg to lead its security program. *Id*. ¶ 2. This role later expanded to oversee Facebook's safety programs which became known as Protect & Care. *Id*. He left in 2018 but returned two years later as a consultant to the Instagram business unit. *Id*. This move was instigated by the reports of his daughter and her friends about the volume of unwelcome sexual advances and misogynistic abuse they received on Instagram and the company's lack of response. *Id*.

Mr. Bejar spent months researching why the company was not preventing and reducing harm to children. *Id*. ¶ 3. He delivered his findings in writing to Mark Zuckerberg, Adam Mosseri, Sheryl Sandberg and other senior leaders. *Id*. This message was met with complete silence from Zuckerberg and inaction from other senior leaders. *Id*. Mr. Bejar finished his consulting engagement with Instagram and left the company. *Id*. He did not retain any of the documents or communications from that work. *Id*.

Ironically, his initial involvement in the litigation came at the request of Meta which contacted him to serve as a witness in the matter of *Federal Trade Commission v. Meta Platforms, Inc*. *Id*. ¶ 4. He was prepared by Meta's outside lawyers for a deposition taken by the FTC on February 2, 2023. *Id*. This demonstrates that he left with company with no animus.

He was later subpoenaed to testify in other proceedings, including before the U.S. Senate Judiciary Committee on November 7, 2023. *Id*. ¶ 5. Although he has provided truthful testimony, he is

not a party to the lawsuit, has no personal financial interest in the outcome and has never been paid as an expert. *Id*. Although New Mexico's Attorney General sought to retain him, Mr. Bejar declined. *Id*.; Simonsen Decl., Ex. 24.

In April 2023, Mr. Bejar was asked by the Tennessee Attorney General's Office to sit for an investigative deposition. Bejar Decl. ¶ 6. He was not asked to provide or preserve any of his personal, post-employment private communications, including with other former employees. *Id*.

On April 27, 2023, the Tennessee Attorney General issued a Request for Information. *Id*. ¶ 8; Simonsen Decl., Ex 1. On November 13, 2023, the New Mexico Attorney General issued a Civil Investigative Demand. Bejar Decl. ¶ 8; Simonsen Decl., Ex. 2. He complied with both requests. *Id*. But neither sought production of his private communications with current or former Meta employees, nor was he asked to preserve such communications. *Id*.

The first time he was asked about personal communications was in a subpoena issued by Meta on February 11, 2025. *Id*. ¶ 7; ECF 2006-3. Although he had been examined by Meta multiple times in depositions before this date, they never inquired about these communications. *Id*.

Meta seeks to cast any Signal use as inherently suspicious. But over 100 million people use the platform. *Id*. ¶ 9. As a career security professional, Mr. Bejar is aware of the risks of accumulating unnecessary personal information in cyberspace and the data scraping of "private" emails by many platforms including Meta's WhatsApp. *Id*. Following the millions of other users, he actually began using Signal on a limited basis for this reason in 2023. *Id*. ¶ 10. But Mr. Bejar did not trigger the auto-delete feature on Signal until late 2025, which was long *after* he received the subpoena seeking communications with current and former employees, and long ***after he had collected his Signal chats and produced them to Meta which was in March 2025.*** *Id.* ¶¶ 10, 12. While there was motion practice about the scope of the subpoena before the Court, the Signal messages were not part of that dispute before the Court. Meta concedes that they were provided to his counsel and produced to Meta in March 2025. Brief at 7; Bejar Decl. ¶ 11. In short, Mr. Bejar did not auto-delete (or otherwise delete) Signal messages until long after he had collected his chats and produced them to Meta in compliance with the Meta subpoena.

Mr. Bejar was asked about Signal use in last week's Tennessee trial. *Id.* ¶ 16. As the transcript itself and Mr. Bejar's Declaration make clear, the questions asked about his current practice and that is what he described. *Id.* This is obvious from the testimony itself:

Q: When you text, for example, with Dr. Buffone, do you use an app called Signal?

A: Yes…

Q: And the settings that you have on Signal, is it ephemeral messaging?

A: Yes, I have ephemeral messaging on Signal.  I have been doing this pretty much since the time that I – that I started.  My background is a security engineer and from a professional paranoid, I try to be very mindful about my communications as they would say in the field.

Q: And so your texts with these individuals, they disappear.

A: Yes, they do…

Simonsen Decl., Ex. 8 at 1712:7–21 (emphasis added).

On their face, the questions are posed in the present tense and the answers follow accordingly. The only statement about Mr. Bejar's past practices is a very vague and confusing half sentence: "I have been doing this pretty much since the time that I – that I started." Meta counsel did not ask what Mr. Bejar meant that "that I started" or, indeed, what he meant by "pretty much." That is literally the only evidence Meta offers suggesting that Mr. Bejar was using auto-delete. There are dozens of questions which could have been asked of him that Meta chose not to pose, which suggests that this was either not a major event for Meta (as it now claims) or that counsel wanted to exploit the ambiguity.

The confusion was further exacerbated because counsel was asking about communications with a particular employee, Ms. Buffone, whom he has never met and did not communicate with at all (Signal or otherwise) until *after* he had collected and produced his Signal chats. *Id.* at 1712:7-8; Bejar Decl. ¶ 17.

Meta also claims alleged auto deletion of Signal communications between Mr. Bejar and Dr. Alison Lee. Brief at 8 n.5. But that is also baseless.  First, Mr. Bejar did not auto delete or otherwise delete any messages with her at the time of the subpoena. The Signal message exchange with her he described in his Tennessee testimony did not occur until December 2025. And he did not delete it

9

either. He still has it. In the message, Dr. Lee asked about artificial intelligence safety issues for children—not social media. *Id*. ¶ 18. This places the communication outside both the temporal and subject matter scope of the subpoena, but Mr. Bejar still has it. If he had been autodeleting all of his messages or otherwise deleting his Signal messages as alleged by Meta, this message would have also been deleted.

Mr. Bejar's Declaration makes clear that he never turned on auto-delete on Signal until late 2025 after he had searched for and produced Signal chats and other responsive communications to Meta. *Id*. ¶ 11. Thus, there should no longer be any dispute in the record that responsive communications were intentionally deleted, or even inadvertently deleted.

Meta was clearly aware for a long time that Mr. Bejar had used Signal to communicate to employees because at least two such messages were produced, including messages with a key witness who might be the leading whistleblower against Meta. *Id*. ¶ 14.

Meta has had multiple opportunities to explore his Signal use but has chosen not to do so for whatever reasons. He has been deposed for 40 hours across five days in various cases. Simonsen Decl ¶ 12. He also provided testimony in the previous trials finding Meta culpable in New Mexico and California. Altogether, he has been examined in deposition and trial on the following dates: April 7–9, 2025; July 10, 2025; December 11, 2025; February 9-10, 2026; March 5-6, 2026; and July 27-30, 2026. Bejar Decl. ¶ 15. Yet in none of these examinations (until last week in Tennessee) did Meta's able counsel ask him about Signal use. *Id*. ¶ 16.

## II.    ARGUMENT

### A.    Meta Has Not and Cannot Establish That Mr. Bejar Deleted Relevant Documents So the Entire Motion Is Based on An Incorrect Premise

Meta's entire argument seeking to exclude Mr. Bejar's testimony rests on the false assumption that he was using the auto delete function on Signal to hide his communications with current and former Meta employees. It is simply not so.

While the motion is filled with ominous sounding collaboration between Mr. Bejar and the attorneys general, the brief is a bit like a Jackson Pollack painting—lots of color splashed on a canvas

NON-PARTY ARTURO BEJAR'S OPPOSITION TO MOTION        CASE NOS.: 4:22-MD-03047-YGR-PHK
FOR SPOLIATION SANCTIONS

with the meaning left up to the viewer. The extreme sanction sought requires more clarity than random splashes of paint on canvas.

The only actual evidence suggesting that Mr. Bejar was deleting messages through the auto-delete function is the testimony elicited in last week's trial in Tennessee. In fact, Meta now concedes that while it was aware of Signal use previously, it only became aware of his use of the auto-delete feature in the Tennessee trial testimony. Brief at 8, 19. This pivot is actually an admission of an important point: the use of Signal (an app used by roughly 100 million people) is neither nefarious nor a discovery violation. The alleged violation requires evidence of actual deletion intended to thwart a known obligation.

And the sole basis for the assertion that Mr. Bejar used auto-delete on Signal is his Tennessee testimony which, as noted above, was ambiguous ***at best.*** The relevant testimony, as described above, is more reasonably understood to be a description of practices long after he had satisfied his production obligations. The appropriate questions would have focused on his practice in communications with employees at the time of the subpoena issued on February 11, 2025. Meta's lawyers chose not to ask those questions. There is literally no relevance to his ***current*** use of Signal because (as set forth below in Section B) he has no continuing obligation to Meta.

Whatever confusion might have arisen from the trial testimony in Tennessee has been cleared up by the Declaration attached to this opposition in which Mr. Bejar makes clear that he did not trigger the auto-delete function on Signal until late 2025, after he had complied with the Meta subpoena. And that statement is fully corroborated by his possession and production of prior Signal chats when he received the subpoena and his subsequent retention of those Signal chats (that were purportedly auto-deleted") even today. In short, there is no evidence in the record (beyond the vague and confusing questioning by Meta's lawyers in Tennessee) that contradicts Mr. Bejar's Declaration.

Because there is no evidence of spoliation, the motion should be denied.

**B.      Mr. Bejar Had No Continuing Discovery Obligation to Meta**

Meta's Motion makes references to Mr. Bejar's alleged "involvement" with the attorney general offices of various states prior to its subpoena of February 11, 2025. Brief at 3, 4, 5, 14. All of this discussion is irrelevant for two reasons. First, he was under no duty to preserve communications

11

with employees; he was never asked for them nor asked to preserve them.[1] Bejar Decl. ¶¶ 7, 8. Second, and more profoundly, he in fact did not trigger the auto-delete function on Signal until late 2025, so in point of fact that was no spoliation even if there had been some earlier obligation to preserve (which there wasn't). Bejar Decl. ¶ 12.

The question is thus whether Mr. Bejar violated the February 11, 2025 Meta Subpoena when he turned on the auto-delete function in late 2025. First, there was nothing nefarious about this decision. Signal, including auto-delete, is in wide use and indeed is recommended by many tech security professionals. *Id*. ¶ 9.

Second and more to the point, Mr. Bejar had already fulfilled all of his legal obligations to Meta by late 2025. Federal Rule of Civil Procedure Rule 45, unlike Rule 26, does not impose a continuing obligation on a non-party to supplement responses or produce documents created after the service date. *In re Application of Shahrokh Mireskandari*, 2013 WL 12112488, at *3. This rule is consistent across jurisdictions. *See In re 3M Combat Arms Earplug Prods. Liab. Litig.*, 2020 WL 6531421, at *3 (N.D. Fla. Nov. 5, 2020); *erinMedia, LLC v. Nielsen Media Rsch., Inc.*, 2007 WL 1970860, at *4 (M.D. Fla. July 3, 2007); *Leaks v. Target Corp.*, 2015 WL 4092450, at *2 (S.D. Ga. July 6, 2015); *Discover Fin. Servs., Inc. v. Visa U.S.A., Inc.*, 2006 WL 8460949, at *2 (S.D.N.Y. Aug. 3, 2006). Mr. Bejar's obligation extended only to documents in his possession on that date. The

---

[1] Courts in this Circuit hold that "there is no duty to preserve possible evidence for another party to aid that other party in some future legal action against a third party." *TLX Inc. v. JetBlue Airways Corp.*, 2022 WL 523320, at *2 (D. Ariz. Feb. 22, 2022). The narrow exception for "interested" third parties requires a principal-agent or analogous legal relationship where the third party controlled key evidence, funded the defense, or was obligated to indemnify a party. *See, e.g., Gay v. Parsons*, 2024 WL 4224893, at *4 (N.D. Cal. Sept. 17, 2024) (collecting cases); *Ramos v. Swatzell*, 2017 WL 2857523, at *6 (C.D. Cal. June 5, 2017) (third party controlled defendant's personnel file and paid for his legal defense); *Lofton v. Verizon Wireless (VAW) LLC*, 308 F.R.D. 276, 279 (N.D. Cal. 2015) (third party agent's violations of state and federal law formed basis of complaint against defendant). Mr. Bejar fits none of these categories. Meta acknowledges that he declined New Mexico's expert retention agreement. Mot. at 4; Simonsen Decl., Ex. 24. He does not fund or control any litigation against Meta. Bejar Decl. ¶ 5. He has independent counsel and no indemnification obligation with the States or other plaintiffs. *Id*; Brief at 14. There are no indicia that Mr. Bejar is an "interested" third party, as stated under the law, and Meta cites no authority suggesting otherwise. *See TLX*, 2022 WL 523320, at *2 (holding that third party's purported desire to protect defendant client is not enough to show that it is not disinterested); *Thoma v. VXN Grp., LLC*, 2026 WL 1676369, at *5 (C.D. Cal. May 20, 2026) (declining to impute third party's spoliation to plaintiff client where third party was "not alleged to have any role in funding or prosecuting this litigation").

NON-PARTY ARTURO BEJAR'S OPPOSITION TO MOTION FOR SPOLIATION SANCTIONS                    CASE NOS.: 4:22-MD-03047-YGR-PHK

subpoena called for the production of materials from 2012 through the date of production. ECF 2006-3. Bejar objected to this unlawful extension of the scope of the subpoena and Meta understandably did not seek to compel this unsupported burden. Thus, the period covered by the subpoena is arguably only those communications in his possession on the date the subpoena was served, and it is certainly no later than the date of collection and production of the Signal messages, which was completed by March 31, 2025. That should mean the date of the subpoena itself—February 11, 2025, but regardless, the Signal communications were produced to Meta in March 2025, many months before he turned on auto-delete on the Signal platform. Bejar Decl. ¶ 9.

> **C.** **Even If Meta's Allegations Were True, It Is Not Entitled to the Extraordinary Relief Sought**

Meta bears the burden of showing that relevant evidence was actually destroyed. "Mere speculation that [] deleted documents may exist that might be helpful to a party's case is [] an insufficient basis for a finding of spoliation." *Reinsdorf v. Skechers U.S.A., Inc.*, 296 F.R.D. 604, 631 (C.D. Cal. 2013). A spoliation claim thus requires more than pointing to the existence of an auto-delete feature and asking the Court to do the rest. *See E & J Gallo Winery v. Encana Energy Servs., Inc.*, 2005 WL 8172972, at *3 (E.D. Cal. Jan. 28, 2005) (no spoliation where moving party pointed to plaintiff's auto-delete policies and left the court "to speculate as to what may be missing").

Moreover, Meta bears the burden of proving that any spoliation was the result of a party acting with a culpable state of mind, meaning that the party had the intent of destroying documents to keep them out of the hands of a litigant. *Lofton v. Verizon Wireless* (VAW) LLC, 308 F.R.D. 276, 285 (N.D. Cal. 2015) ("Before imposing sanctions on a nonparty, [] the Court is required to make an explicit finding of bad faith or improper purpose"). A bad faith finding requires specific evidence that Mr. Bejar moved to Signal for the purpose of hiding responsive communications that are helpful to Meta. *See, e.g., These Ponies Are Miserable v. City of Los Angeles*, 2025 WL 3248690, at *7 (C.D. Cal. Nov. 7, 2025) (plaintiff enabled auto-delete after receiving, and before responding to, a message asking how he was "planning [his] arrest" that formed the basis of his suit; produced communications showed the plaintiffs used Signal to "start dropping incriminating details"); *Herzig v. Arkansas Foundation for*

NON-PARTY ARTURO BEJAR'S OPPOSITION TO MOTION FOR SPOLIATION SANCTIONS                 CASE NOS.: 4:22-MD-03047-YGR-PHK

*Medical Care, Inc.* 2019 WL 2870106, at *5 (W.D. Ark. July 3, 2019) (parties hid their switch to Signal and gave misleading responses that they had no responsive communications).

Here, Meta cannot show that even a single document to which it was entitled was destroyed by Mr. Bejar. Meta relies entirely on Mr. Bejar's own testimony in Tennessee about his use of auto delete, which did not occur until the Signal documents were produced to Meta. Nor is there any evidence of ill intent on his part. Mr. Bejar did not leave Meta on bad terms. To the contrary, his first involvement in these matters came at the request of Meta itself, and he complied and agreed to be prepared by Meta's lawyers. He has no financial interest in the litigation and is not being paid.

Mr. Bejar's testimony is important because he provides contemporaneous accounts of knowledge and intent within Meta, and he is a very credible witness. This motion is Meta's attempt to besmirch his reputation, having failed to persuade any of the juries who have heard his testimony that he is unreliable. He deserves better.

Even if the allegations were true, and they are demonstrably not, the remedy Meta seeks is extraordinary and would deprive the jury of critical evidence from inside Meta. There is not even a credible suggestion that the hypothetical conversations he had with former employees would undermine the core of his testimony in any way. *Blockchain Innovation, LLC v. Franklin Res., Inc.*, 2024 WL 4008759, at *5 (N.D. Cal. Aug. 30, 2024) (the Court "may order measures no greater than necessary to cure the prejudice"). If the Court is at all concerned with what Mr. Bejar did about preservation, the proper course is to permit Meta's counsel to cross examine Mr. Bejar about his use of Signal and any false implication that he did not meet his duties can be rebutted.

## III.    CONCLUSION

For the foregoing reasons, Mr. Bejar respectfully requests that this Court deny the Motion.

Dated: August 11, 2026                     BAKER BOTTS L.L.P.

                                           */s/ Michael Ward*
                                           Michael Ward (SBN 146484)
                                           michael.ward@bakerbotts.com
                                           BAKER BOTTS L.L.P.
                                           1001 Page Mill Road, Bldg. One, Suite 200
                                           Palo Alto, California 94304
                                           Telephone: 650-739-7557
                                           Facsimile: 650-739-7699

Matthew Jacobs (SBN 171149)
matt.jacobs@bakerbotts.com
Karan Singh Dhadialla (SBN 296313)
karan.dhadialla@bakerbotts.com
BAKER BOTTS L.L.P.
101 California Street, Suite 3200
San Francisco, California 94111
Telephone: 415-291-6200
Facsimile: 415-291-6300

*Counsel for Non-Party Arturo Bejar*

15