Ashley M. Simonsen (Bar No. 275203)
COVINGTON & BURLING LLP
1999 Avenue of the Stars
Los Angeles, California 90067
Telephone: (424) 332-4800
Facsimile: (424) 332-4749
Email: asimonsen@cov.com

*Attorneys for Defendant Meta Platforms, Inc. f/k/a Facebook, Inc.*

*[Additional counsel listed on signature pages]*

**UNITED STATES DISTRICT COURT**

**FOR THE NORTHERN DISTRICT OF CALIFORNIA**

**OAKLAND DIVISION**

IN RE: SOCIAL MEDIA ADOLESCENT ADDICTION/PERSONAL INJURY PRODUCTS LIABILITY LITIGATION

This Document Relates To:

*People of the State of California, et al. v. Meta Platforms, Inc.*

MDL No. 3047

Case Nos.: 4:22-md-03047-YGR
4:23-cv-05448-YGR

**BENCH BRIEF OF DEFENDANT META PLATFORMS, INC. IN SUPPORT OF OBJECTIONS TO TESTIMONY OF ARTURO BÉJAR**

Judge: Hon. Yvonne Gonzalez Rogers
Magistrate Judge: Hon. Peter H. Kang

## I. INTRODUCTION

Meta objects to expected testimony from Arturo Béjar, a non-retained expert, regarding opinions about (1) whether any of Meta's statements were false or misleading, (2) Meta's state of mind, motivations, or beliefs, or (3) third-party content or features subject to Section 230 immunity. This Court has made clear that experts do not assist the trier of fact by offering conclusions on ultimate issues or unsupported speculation about a defendant's state of mind. *See, e.g.*, ECF 350 (3068) at 3-5, 7-12 (Alter Order). Mr. Béjar has consistently exceeded those bounds in his prior testimony against Meta in related cases. He has opined that Meta's statements were untrue or misleading, speculated about Meta's intentions and priorities in areas far exceeding the scope of his former role at the company, and opined on the safety of Meta's services (based on his assessment of content-moderation policies and the effects of features subject to Section 230 immunity).

Meta anticipates Mr. Béjar will attempt to present such testimony in this case. According to their non-retained expert disclosure, the AGs will seek to elicit opinions from Mr. Béjar about (1) whether Meta's conduct was misleading or unfair, (2) what Meta knew, intended, or prioritized as a company, and (3) "harms associated with Meta's platforms" and the "efficacy of Meta's safety features." *See* Ex. A, AGs' Non-Retained Expert Disclosure ("Disclosure") at 7-15. Although Mr. Béjar can testify about facts—*e.g.*, how a feature might work—he is no better positioned than the factfinder to assess whether those facts are consistent with Meta's public statements, and it would be deeply prejudicial to allow him to offer such testimony. Mr. Béjar also cannot broadly opine on Meta's state of mind, motivations, or intent, because such opinions exceed the scope of his personal knowledge. Nor can Mr. Béjar testify about "safety features" or harms associated with third-party content, given the bar of Section 230.[1]

## II. BACKGROUND

Mr. Béjar has repeatedly offered sweeping conclusions on questions properly reserved for the finder of fact. Most recently, in Tennessee, Mr. Béjar opined that 196 Meta statements "are all misleading." Ex. B, 7/29/26 TN Tr. 1465:2-14; *see also id.* 1443:4-6 ("Q: And your testimony is that these are 196 deceptive statements from Meta, correct? A: Correct."). Despite later conceding accuracy

[1] Meta's arguments apply equally to Mr. Béjar's status as a fact witness.

"issues throughout" the list of those statements he prepared, Mr. Béjar reiterated that, in his "opinion as an expert," those statements "cause a false or deceptive impression of some issues or an incomplete picture of other issues." Ex. C, 7/30/26 TN Tr. 1665:7-25. This approach permeated Mr. Béjar's testimony, where he characterized statement after statement as inaccurate or deceptive. *See, e.g.*, Ex. D, 7/28/26 TN Tr. 1135:9-13 ("That is not a truthful nor accurate statement."); *id.* 1135:14-22 ("that statement is just not true"); *id.* 1136:10-19 ("[Meta's statement] paints a very false picture of how Meta prioritized safety[.]"); *id.* 1134:11-23 ("[Mr. Zuckerberg's Facebook post] makes a number of statements that are not true, and I believe painted a false picture of how Meta treats the safety of young people."); *id.* 1087:11-17 ("Q: But in your view, does Meta's Transparency Center accurately tell the public about the risks to children on Instagram? A: It does not. Q: Okay. Do they paint a false picture of safety? A: Yes. It paints a false picture of safety."); Ex. B, 7/29/26 TN Tr. 1303:22-1304:10 ("I don't think that's truthful nor accurate, and I think it creates a false impression of what the company does with regards to under-13 accounts.").

Likewise, in the JCCP, Mr. Béjar testified that "Meta absolutely was not transparent about the way these features could harm kids"; that Meta was not "transparent in the congressional testimony"; and that language on Meta's website "is very misleading." Ex. E, 3/5/26 JCCP Tr. 4861:21-4862:5; *see also id.* 4869:18-4870:4 (describing statements as "profoundly misleading of everybody who worked at the company, and most importantly, profoundly misleading of everybody else in the world"). So too in New Mexico, where Mr. Béjar testified that Meta's statements were "just so dangerously misleading to say that, right, to all employees and to the world." Ex. F, 2/10/26 NM Tr. 1691:5-18; *see also, e.g.*, *id.* 1706:25-1707:4 ("the comment is profoundly misleading"); *id.* 1734:1-5 ("Q: [A]re the community standards enforcement reports disclosure and transparency or are they deception? A: They are deception."); *id.* 1711:12-16 ("[CSERs] misrepresent[] the harm on Meta's platforms.").

Mr. Béjar has also offered sweeping opinions about Meta's priorities, intentions and motivations as a company. In Tennessee, Mr. Béjar testified that Meta's "top priority" was "more eyeballs, more time," Ex. G, 7/27/26 TN Tr. 848:4-10, and that Meta was not prioritizing the safety of children on Instagram. *Id.* 847:25-848:3. He suggested that "the goals of almost every [*sic*] team … had to do with how much time you spend," Ex. B, 7/29/26 TN Tr. 1297:12-16, and that "the main purpose of the safety tools that Meta launched" was "as a response to negative press cycles or controversy." Ex. G, 7/27/26 TN

Tr. 852:4-20. In New Mexico, Mr. Béjar testified that, "on many different fronts," "Meta prioritized competing with like TikTok and Snap" and was not "prioritizing safety and well-being." Ex. F, 2/10/26 NM Tr. 1689:8-17. He did the same in the JCCP, where Mr. Béjar testified that safety was "[a]bsolutely not" a priority for Meta. Ex. E, 3/5/26 JCCP Tr. 4802:21-23.

Mr. Béjar has also opined that Meta's platforms are not safe because of third-party content and features like algorithms, infinite scroll, and notifications. He has testified that "infinite scroll," "playing videos automatically," and "algorithmic recommendation" are "the elements of Meta's platform designed to encourage excessive and compulsive use." Ex. E, 3/5/26 JCCP Tr. 4830:1-25; *see also* Ex. D, 7/28/26 TN Tr. 978:4-979:6 (similar). Mr. Béjar has also described in his New Mexico and Tennessee testimony how his 14-year-old daughter received misogynistic comments and explicit photos from third parties on Instagram. *See, e.g.*, Ex. F, 2/10/26 NM Tr. 1507:8-9 ("she started getting really sort of awful comments, awful messages"); *id.* at 1523:15-17 (other users would "comment on her body, would send her messages, extremely inappropriate, like sexual propositions"); Ex. G, 7/27/26 TN Tr. 879:3-6 ("she told me that she had started receiving sexual stuff from other people, people that she didn't know in person, like pictures of private parts and requests for sex"). In testimony about his report "Teen Accounts, Broken Promises," Mr. Béjar described his use of "test" accounts to assess the effectiveness of content-based tools by collecting information about "sensitive" content on Instagram, including "suicide or self-harm content." Ex. D, 7/28/26 TN Tr. 1201:23-1202:15.

The AGs' disclosure indicates they intend for Mr. Béjar to testify similarly here, including that "Meta misleads the public to believe that its platforms are safe for teens," Disclosure at 12; that "Meta misleads the public to believe that … it has policies that it effectively enforces," *id.* at 13; that "Meta's public reporting was misleading," *id.* at 14. The disclosure also reflects that Mr. Béjar will offer wide-ranging opinions about what Meta as a company or its executives knew, intended, or desired. *See, e.g.*, *id.* at 15 ("This reflects a company that does not want to know the harm that people are experiencing on its platform, in particular teens."); *id.* at 10 ("Growth and engagement were a top priority for Meta, and safety was not a priority but an afterthought."). The disclosure indicates that Mr. Béjar will testify that Meta's platforms were not safe because of third-party content and barred features: "the design of the platform … encourages young girls to create racy content," *id.* at 12; "Meta would even recommend

unconnected adult strangers to young users," *id*. at 13; "suicide and self-injury content is easily accessed by kids on Instagram," *id*. These opinions invade the province of the factfinder, constitute impermissible speculation about Meta's state of mind, and invite liability to be imposed on Meta for the third-party content on its platforms, warranting exclusion under Rules 702 and 403.

## III. ARGUMENT

### A. Mr. Béjar Cannot Opine on Ultimate Issues of Liability.

As the Court explained in its Rule 702 ruling on Adam Alter, experts "cannot serve as a conduit for attorney argument." ECF 350 (3068) at 8. Because "reasonable jurors [are] fully capable of making a factual decision without expert opinion," *id.*, expert opinions are limited to those that would "help the trier of fact to understand the evidence or to determine a fact in issue," Fed. R. Evid. 702(a). Mr. Béjar's testimony that Meta's public statements are "deceptive," "misleading," and "not truthful" offers precisely the type of ultimate legal conclusion this Court has found impermissible.

It is for the finder of fact "to determine both the meaning of [Meta's statements] and whether the facts indicate [they were] accurate." *In re Apple Inc. Securities Litigation*, 2023 WL 4556765, at *3 (N.D. Cal. 2023) (Gonzalez Rogers, J.). Mr. Béjar "goes too far" when he "address[es] an ultimate issue of fact which is the province of the jury." *Id.* For instance, an expert's statements describing the defendant's practices as "unfair and not clear and conspicuous" were improper as "legal conclusions … not properly within the province of expert testimony." *Berman v. Freedom Fin. Network, LLC*, 400 F. Supp. 3d 964, 972 (N.D. Cal. 2019) (Gonzalez Rogers, J.). "To claim that a person dressed as an expert can opine in court and seek to interpret" statements "at the core of the parties' dispute would usurp the jury's role" and "open the door to 'legal experts' frequenting the courtroom." *Dolby Lab'ys Licensing Corp. v. Adobe Inc.*, 2019 WL 6327210, at *2 (N.D. Cal. Nov. 26, 2019) (Gonzalez Rogers, J.). Accordingly, Mr. Béjar should be precluded from testifying that Meta's statements were misleading or deceptive.

### B. Mr. Béjar Cannot Testify to Meta's Motives or Beliefs.

Mr. Béjar cannot speculate as to Meta's intentions, motives, and beliefs as a company. This Court has reiterated that "an expert cannot generally speculate as to someone's state of mind," ECF 350 (3068) at 3, or "opine on corporate motives," ECF 457 (3239) at 5; *see also* ECF 2857 at 6 (expert "may not opine as to defendants' intent" based on interpretation of Meta company documents). While Mr. Béjar may

offer testimony based on his "personal knowledge" of areas "in which [he] worked," ECF 457 (3239) at 5, he cannot properly testify on Meta's priorities, goals, and motivations as a company.

"Courts routinely exclude expert testimony as to intent, motive, or state of mind as issues better left to a jury." *Camenisch v. Umpqua Bank*, 763 F. Supp. 3d 871, 882 (N.D. Cal. 2025) (citation omitted). Expert testimony "concerning a corporation's state of mind, subjective motivation, or intent" is improper because it describes "lay matters which a jury is capable of understanding and deciding without the expert's help." *In re E. I. du Pont de Nemours & Co. C-8 Pers. Inj. Litig.*, 345 F. Supp. 3d 897, 902 (S.D. Ohio 2015) (cleaned up). And "[p]ersonal views on corporate ethics and morality are not expert opinions." *In re Baycol Prod. Litig.*, 532 F. Supp. 2d 1029, 1053 (D. Minn. 2007).

### C. Mr. Béjar Cannot Testify that Meta's Platforms Are Not Safe Because of Third-Party Content or Barred Features.

Mr. Béjar cannot testify that Meta's platforms are not safe because of third-party content or immunized features. *See Fair Hous. Council of San Fernando Valley v. Roommates.Com*, LLC, 521 F.3d 1157, 1171 (9th Cir. 2008) ("material that third parties seek to post online is perforce immune under section 230"); ECF 123 (1214) at 25 (listing barred features under Section 230). Because evidence about third-party content and immunized features cannot serve as a basis for liability, it is of no "consequence in determining the action," and is irrelevant under Rule 401. To the extent any evidence related to third-party content or barred features could be relevant, permitting it would confuse the jury and unfairly prejudice Meta under Rule 403 by placing in issue features and third-party content that cannot be the basis for liability. This is true as a general matter, but is particularly true with respect to Mr. Béjar's testimony about his daughter. Such testimony relates solely to third-party content and has Rule 403 implications.

## IV. CONCLUSION

For these reasons, the Court should preclude Mr. Béjar from testifying on ultimate issues of liability; Meta's state of mind, motivations, and beliefs; and the safety of Meta's platforms based on third-party content and barred features.

DATED: August 17, 2026

Respectfully submitted,

By: */s/ Ashley M. Simonsen*

Ashley M. Simonsen (State Bar. No. 275203)
COVINGTON & BURLING LLP
1999 Avenue of the Stars
Los Angeles, CA 90067
Telephone: + 1 (424) 332-4800
Email: asimonsen@cov.com

Paul W. Schmidt, *pro hac vice*
Timothy C. Hester, pro hac vice
COVINGTON & BURLING LLP
One City Center
850 Tenth Street, NW
Washington, DC 20001-4956
Telephone: + 1 (202) 662-5324
Facsimile: + 1 (202) 778-5324
Email: pschmidt@cov.com
Email: thester@cov.com

*Attorneys for Defendant Meta Platforms, Inc. f/k/a Facebook, Inc.*