[*Submitting Counsel on Signature Page*]

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| IN RE: SOCIAL MEDIA ADOLESCENT ADDICTION/PERSONAL INJURY PRODUCTS LIABILITY LITIGATION<br><br>THIS DOCUMENT RELATES TO:<br><br>*People of the State of California, et al. v. Meta Platforms, Inc. et al.*<br><br>4:23-cv-05448 | MDL No. 3047<br><br>Case No. 4:22-md-03047-YGR<br><br>**STATE AGS' OBJECTIONS TO META'S PRIVILEGE ASSERTIONS CONCERNING TESTIMONY OF JASON D. SATTIZAHN**<br><br>Judge: Hon. Yvonne Gonzalez Rogers<br><br>Magistrate Judge: Hon. Peter H. Kang |

## INTRODUCTION

The Court should reject Meta's attempt to cloak Jason D. Sattizahn's fact testimony in attorney-client privilege. Mr. Sattizahn, a former Meta researcher, will testify that Meta embedded lawyers in its research process [redacted]. As he testified to Congress, "[redacted]." The New Mexico trial court rejected Meta's privilege claims, holding that Meta's lawyers were "broadly dispensing more business-type advice, dispensing advice related to how to . . . keep[] the brand safe."

Meta's request to prospectively constrain Mr. Sattizahn's trial testimony is, in substance, an untimely sixth motion *in limine*. On the eve of trial, Meta seeks yet another evidentiary-exclusion order after exhausting its allotted motions, which the Court should reject. *See* ECF 534 (3392) at 2 ("[T]his motion falls into the category of a 'Hail Mary' attempt to eliminate a strong witness for the plaintiffs.").

Nevertheless, Meta's privilege claims also fail on the merits. The privilege protects legal communications; it does not hide underlying business conduct simply because lawyers participated. If management had carried out the same decisions—[redacted]—the resulting facts would unquestionably not be privileged. Meta cannot transform those facts into legal advice merely by routing the decisions through counsel.

Even if some challenged communications otherwise qualify for the privilege, the crime-fraud exception applies if those communications furthered intentional destruction or concealment of evidence. By November 2021, Meta had received formal investigative demands from multiple State AGs, including California, Kentucky, Nebraska, and New Jersey, plaintiffs in this enforcement action. Intentional destruction or concealment of responsive evidence, undertaken with knowledge or purpose, implicates these states' criminal codes. *See, e.g.*, Cal. Penal Code §§ 131, 132 et seq.; Ky. Rev. Stat. § 367.990(3), (4); Neb. Rev. Stat. §§ 28-922, 87-1123; N.J. Stat. Ann. 2C:29-1. Moreover, intentional concealment of evidence constitutes a fraud on the court. *See, e.g.*, *United States v. Est. of Stonehill*, 660 F.3d 415, 444 (9th Cir. 2011) ("Most fraud on the court cases involve a scheme by one party to hide a

key fact from the court and the opposing party.").

Meta cannot have it both ways. Either Meta's policy [redacted] was a business decision not subject to the attorney-client privilege—or if it was somehow "legal advice," then it is subject to the crime-fraud exception. In sum, Mr. Sattizahn should be permitted to testify freely to the kinds of statements identified as examples in his prior deposition transcript.

## BACKGROUND

Mr. Sattizahn is a former Meta researcher who worked at the company from 2018 to 2024. He holds a PhD in Integrative Neuroscience. The State AGs have identified him as a "priority" fact witness, expected "to testify about Meta's suppression of sensitive research relating to child users and the negative effects of Meta's platforms on young users." ECF 461 (3243) at 8.

Mr. Sattizahn is a Meta whistleblower. In September 2025, he testified before a Congressional subcommittee that Meta's in-house counsel [redacted].[1] According to Mr. Sattizahn, in the fall of 2021, following Frances Haugen's disclosures to Congress and in the press, Meta "roll[ed] out new processes and policies to manipulate, control, and erase data. [redacted]."[2] Mr. Sattizahn testified that Meta lawyers "[redacted]"[3] Mr. Sattizahn "[redacted]."[4]

The timing is critical. In November 2021, at least four State AGs—California, Kentucky, Nebraska, and New Jersey—issued formal state-law investigative demands to Meta seeking information

[1] Mr. Sattizahn's written statement is publicly available on the Senate Judiciary Committee's website: https://www.judiciary.senate.gov/imo/media/doc/6ccd5abd-cbb9-5107-d48d-b99e821eb244/2025-09-09%20-%20Testimony%20-%20Sattizahn1.pdf (last visited August 17, 2026).

[2] *Id.*

[3] Senate Judiciary Hearing, *Questions for the Record for Jason Sattizahn*, available at https://www.judiciary.senate.gov/imo/media/doc/6ccd5abd-cbb9-5107-d48d-b99e821eb244/2025-09-09%20-%20QFR%20Responses%20-%20Sattizahn.pdf (last visited August 17, 2026).

[4] *Id.*

for investigations that would lead to this enforcement action. *See* ECF (2474) at 13. Thus, to the extent Mr. Sattizahn's testimony establishes that Meta [redacted] after those demands, the conduct occurred while formal law-enforcement investigations were underway and subject to state preservation obligations.

On December 8, 2025, Mr. Sattizahn sat for a sequestered deposition in the New Mexico AG enforcement action. Under the governing order, the New Mexico AG could question him about communications with Meta's in-house counsel without waiving any Meta privilege; any resulting privilege disputes would be presented promptly to the New Mexico court in the first instance. *See* ECF (2527) at 2–3. The State AGs in this MDL were permitted to attend but not to question the witness. *Id.*

On January 21, 2026, the New Mexico court rejected Meta's privilege assertions concerning the challenged portions of Mr. Sattizahn's deposition testimony. It held that, in directing Meta researchers, Meta's lawyers were "overwhelming[ly]" not providing legal advice but were "broadly dispensing more business-type advice, dispensing advice related to how to . . . keep[] the brand safe." *New Mexico v. Meta Platforms, Inc.*, No. D-101-CV-2023-02838, Hr'g Tr. 110:4–17 (N.M. 1st Jud. Dist. Ct. Jan. 21, 2026). In the JCCP, applying California's statutory privilege law, Judge Kuhl departed from the New Mexico ruling, upholding some of Meta's privilege claims as to "particular" "specific" statements made directly by lawyers, but permitting "Sattizahn's testimony regarding how he and other employees conducted research. For example, Sattizahn may testify that, pursuant to the company's practices/policies, he excluded certain evidence from internal studies." ECF (2949), Ex. A at 3.

For the MDL, Magistrate Judge Kang directed that the parties start with the "the New Mexico court rule[ing] in the first instance" because it would "narrow the range of disputes that may otherwise need to be resolved by this Court," but ordered that "any arguments as to admissibility shall be raised at the appropriate time with the Court presiding over the trial at issue (i.e., Judge Gonzalez Rogers for the MDL . . . )." ECF (2527) at 2–3.

Leading up to this briefing, Meta withdrew many of its privilege assertions (many communicated for the first time to the State AGs after this briefing had already been ordered)..[5] Several disputes

[5] Any suggestion by Meta that the State AGs have waived privilege challenges would be frivolous. Meta continues to clawback documents (as recently as July 21, 2026) and did not provide its current Sattizahn privilege designations until August 13, 2026.

remain, highlighted in pink in the parties' *in camera* submission. Meta also claims privilege over three exhibits to Mr. Sattizahn's deposition that appear on the State AGs' trial exhibit list: State AG Trial Exs. #2432, #2424, and #2390 (Sattizahn Dep. Exs. 69, 70, and 71). Setting aside the procedural impropriety of Meta seeking a sixth motion in limine, the Court's *in camera* review will nonetheless resolve these targeted disputes and provide practical guidance for eliciting Mr. Sattizahn's live testimony at trial.[6]

## ARGUMENT

### I. FEDERAL COMMON LAW OF PRIVILEGE CONTROLS

Under Rule 501 of the Federal Rules of Evidence, where, as here, "there are federal question claims and pendent state law claims present, the federal law of privilege applies." *Agster v. Maricopa County*, 422 F.3d 836, 839–40 (9th Cir. 2005) (citation omitted). By seeking *in camera* review, Meta concedes that California privilege law does not apply. *See, e.g.*, *Costco Wholesale Corp. v. Superior Court*, 47 Cal. 4th 725, 736 (2009) (California law does not "permit[] in camera disclosure of information alleged to be protected by the attorney-client privilege"); *Fourth Age Ltd. v. Warner Bros. Digital Distrib.*, No. 12-09912, 2015 WL 12720324, at *4 (C.D. Cal. Aug. 6, 2015) ("Thus, even broaching the subject of applying California privilege law would be inappropriate because it prohibits [the court] from doing what has already be done—inspect the Submitted Documents in camera.").

Because California embodies "a liberal view of the [attorney-client] privilege that conflicts with the strict view applied under federal common law," it would be "legal error" for this Court to follow Judge Kuhl's JCCP rulings on privilege issues.[7] *United States v. Ruehle*, 583 F.3d 600, 608–09 (9th Cir. 2009) ("This legal error is critical in this case. The district court applied [California's] liberal view of the privilege that conflicts with the strict view applied under federal common law, which governs here."); *see also id*. at 609 ("By approaching the [attorney-client] question with a presumption that the privilege

---

[6] The State AGs do not present an exhaustive catalogue of every privilege challenge. The State AGs understand that this submission will allow the parties to obtain targeted, efficient guidance from the Court about eliciting testimony at trial, which will guide the parties' approach to handling similar areas and topics during live testimony. The State AGs' selection of targeted challenges to efficiently advance the Court's guidance is not intended as a waiver as to any other part of the deposition or exhibits.

[7] The federal common law of privilege differs significantly from California's statutory privilege law. Critically, under California law, the opponent has the burden to overcome an assertion of attorney-client privilege because attorney-client communications are presumed to be privileged. *Andrawes v. Flora Media, Inc.*, No. 18-00431, 2018 WL 6362639, at *2 (C.D. Cal. Nov. 5, 2018) (citing Cal. Evid. Code § 917(a)). As discussed below, under federal law, the proponent bears that burden.

attached, the district court inverted the burden of proof, improperly placing the onus on the government to show what information was not privileged.") (citing California law).

Instead, the New Mexico privilege rulings are persuasive. New Mexico follows federal common law to "define[] the contours of when the [attorney-client] privilege may be invoked for in-house counsel who provide both legal and business advice . . . ." *Bhandari v. Artesia Gen. Hosp.*, 2014-NMCA-018, ¶ 16, 317 P.3d 856, 861 (N.M. Ct. App. 2013) (citing federal cases).

## II. META CANNOT MAKE A "CLEAR SHOWING" THAT THE "PRIMARY PURPOSE" OF ANY CHALLENGED TESTIMONY WAS FOR LEGAL ADVICE

The attorney-client privilege protects confidential communications made for the purpose of obtaining or providing legal advice. *See, e.g.*, *United States v. Chen*, 99 F.3d 1495, 1501 (9th Cir. 1996). "Because it impedes full and free discovery of the truth, the attorney-client privilege is strictly construed." *Weil v. Inv./Indicators, Rsch. & Mgmt., Inc.*, 647 F.2d 18, 24 (9th Cir. 1981). The privilege protects only communications, and not underlying facts. *Upjohn Co. v. United States*, 449 U.S. 383, 396 (1981). "That a person is a lawyer does not, *ipso facto*, make all communications with that person privileged." *Chen*, 99 F.3d at 1501.

The "party asserting the attorney-client privilege has the burden of establishing the relationship and the privileged nature of the communication." *United States v. Bauer*, 132 F.3d 504, 507 (9th Cir. 1997). In this District, "attorney declarations generally are necessary to support the designating party's position in a dispute about attorney-client privilege." *Dolby Lab'ys Licensing Corp. v. Adobe Inc.*, 402 F. Supp. 3d 855, 865–66 (N.D. Cal. 2019) (citing cases). Thus, to the extent that Meta provides inadequate or conclusory attorney declarations—or none at all—Meta's assertion of privilege should be rejected on this basis alone. *See, e.g.*, *Oracle Am., Inc. v. Google, Inc.*, No. 10-03561, 2011 WL 3794892, at *3 (N.D. Cal. Aug. 26, 2011).

"Corporations may not conduct their business affairs in private simply by staffing a transaction with attorneys." *United States v. ChevronTexaco Corp.*, 241 F. Supp. 2d 1065, 1076 (N.D. Cal. 2002). Because "communications involving in-house counsel might well pertain to business rather than legal matters," "[t]he privilege does not protect an attorney's business advice." *Id.*

In the Ninth Circuit, "the primary-purpose test governs in assessing attorney-client privilege for

dual-purpose communications." *In re Grand Jury*, 23 F.4th 1088, 1090 (9th Cir. 2021). Under this test, the Court asks whether the communication's primary purpose was to give or receive legal advice rather than business or other non-legal advice. "[A] dual-purpose communication can only have a single 'primary' purpose." *Id*. at 1091.

For internal communications involving in-house counsel that "may relate to both legal and business advice," Meta must make a "clear showing" that the "speaker" made the communications for the primary purpose of obtaining or providing legal advice. *ChevronTexaco*, 241 F. Supp. 2d at 1076. In-house counsel receives heightened scrutiny under the law precisely because counsel often participates in and carries out ordinary business decisions. *See id*. ("In-house counsel may be involved intimately in the corporation's day to day business activities and frequently serve as integral players in business decisions or activities. . . . . The privilege does not protect an attorney's business advice."). The inquiry is functional: whether counsel was applying legal expertise to rights, duties, or liability, or instead participating in operational, commercial, reputational, or other business decision-making. Caselaw provides relevant examples of "business advice" that is not protected by the attorney-client privilege:

(A) **Product- or operational-implementation decisions driven by commercial considerations, even when a legal requirement creates the need to choose among options.** *See Epic Games, Inc. v. Apple Inc.*, 161 F.4th 1162, 1180 (9th Cir. 2025), *cert. granted in part*, No. 25-1311, 2026 WL 1871316 (U.S. June 30, 2026) (no privilege over "slides" "analyz[ing] how various compliance options would affect its revenue" following injunction as "classic business advice regarding business risks").

(B) **Public relations, branding, and communications strategy in response to potential regulatory action.** *See In re Cal. Bail Bond Antitrust Litig.*, 778 F. Supp. 3d 1051, 1059 (N.D. Cal. 2025) ("After thorough and careful in camera review of the communications, the court finds that [lawyer]'s advice was primarily and explicitly to 'rally the industry' and coordinate an industry-wide response . . . .").

(C) **Business management and logistical steps that do not require legal expertise—even when carried out by counsel.** *See Wisk Aero LLC v. Archer Aviation Inc.*, No. 21-02450, 2023 WL 2699971, at *5 (N.D. Cal. Mar. 29, 2023) (rejecting claim of attorney-client privilege where "the redacted sentence references a logistical step needed to effectuate the planned change in [the company's]

business"); *McCaugherty v. Siffermann*, 132 F.R.D. 234, 238 (N.D. Cal. 1990) (attorney-client privilege applicable only if "neither business purposes nor regulatory requirements would have provided sufficient incentive to make the communication").

(D) **Marketing strategy and ordinary corporate-risk analysis in which legal risk is only one business consideration.** *See Illumina Inc. v. BGI Genomics Co.*, No. 19-03770, 2021 WL 2662074, at *4 (N.D. Cal. June 29, 2021) ("statement that the company needs to assess legal risk as part of its [business] analysis is not privileged.").

(E) **Revenue, pricing, profitability, and economic valuation or analysis.** *See United States v. Sanmina Corp.*, 968 F.3d 1107, 1117 (9th Cir. 2020) (no attorney-client privilege where client "engaged DLA Piper for the purpose of conducting a fair market value analysis to be used for tax compliance reasons").

Meta cannot make the required "clear showing" that the challenged portions of Mr. Sattizahn's testimony reveal communications made primarily to obtain or provide legal advice. Each transcript and exhibit challenge is addressed in turn:

(1) <u>Sattizahn Dep. Tr., 112:22–113:16</u>: The testimony concerns operational implementation by in-house counsel directed to Meta's research processes and brand and reputational management. The challenged testimony does not reveal legal analysis concerning Meta's rights, duties, or liability; it describes a business and operational decision. No legal expertise was required to carry out the decision. Its primary purpose was not legal advice.

(2) <u>Sattizahn Dep. Tr., 114:20–115:24</u>: Same.

(3) <u>Sattizahn Dep. Tr., 117:2–20:</u> Same. (Also subject to crime-fraud, discussed below.)

(4) <u>Sattizahn Dep. Tr., 118:9–119:13</u>: Same. (Also subject to crime-fraud, discussed below.)

(5) <u>Sattizahn Dep. Tr., 125:8–126:4</u>: Same. (Also subject to crime-fraud, discussed below.)

(6) <u>Sattizahn Dep. Tr., 128:23–129:8</u>: Same. The testimony also expressly refers to a third party's involvement, which independently defeats confidentiality. *See, e.g.*, *In re Pac. Pictures Corp.*, 679 F.3d 1121, 1126–27 (9th Cir. 2012) ("voluntarily disclosing privileged documents to third parties will generally destroy the privilege"). (Also subject to crime-fraud, discussed below.)

(7) <u>Sattizahn Dep. Tr., 142:5–143:17</u>: Same. (Also subject to crime-fraud, discussed below.)

(8) <u>Sattizahn Dep. Tr., 375:13–380:17</u>: Same. The testimony also concerns [redacted]—an underlying act, not itself a privileged communication. (Also subject to crime-fraud, discussed below.)

(9) <u>Sattizahn Dep. Tr., 381:21–385:8</u>: Same. The testimony also concerns [redacted]—an underlying act, not itself a privileged communication. (Also subject to crime-fraud, discussed below.)

(10) <u>State AG Trial Ex. #2432 (Sattizahn Dep. Ex. 69)</u>: This March 7, 2023 internal document concerns operational changes to research protocols and brand/reputational considerations in response to potential regulatory action. No legal expertise was required to carry out the decision. Its primary purpose was not legal advice, it was to lay out policies and procedures for conducting research. The company's operationalization of its decision to assess legal risk is not itself privileged. The document was disclosed to Congress. (Also subject to crime-fraud, discussed below.)

(11) <u>State AG Trial Ex. #2424 (Sattizahn Dep. Ex. 70)</u>: This internal guidance document concerns [redacted]. Although it contemplates attorney involvement, the challenged content describes [redacted] rather than legal analysis, no legal expertise was required to carry out the business decision, and the document itself contains no legal advice. The company's operationalization of its decision to assess legal risk is not itself privileged. The document was disclosed to Congress. (Also subject to crime-fraud, discussed below.)

(12) <u>State AG Trial Ex. #2390 (Sattizahn Dep. Ex. 71)</u>: This November 10, 2021 internal guidance document likewise concerns [redacted] The challenged content describes [redacted] rather than legal advice. The company's operationalization of its decision to assess legal risk is not itself privileged. Mr. Sattizahn also discussed the document's contents at length in deposition testimony over which Meta does not assert privilege. *E.g.*, *id.*, 113:23–114:9; *see also Weil*, 647 F.2d at 24 ("voluntary disclosure of the content of a privileged attorney communication constitutes waiver of the privilege as to all other such communications on the same subject"). The document was disclosed to Congress. (Also subject to crime-fraud, discussed below.)

## III. EVEN IF THE ATTORNEY-CLIENT PRIVILEGE APPLIES, IT MUST GIVE WAY TO THE CRIME-FRAUD EXCEPTION

"It is well settled that the attorney-client privilege does not extend to attorney-client communications which solicit or offer advice for the commission of a crime or fraud." *In re Grand Jury Investigation*, 974 F.2d 1068, 1071 (9th Cir. 1992). To vitiate the attorney-client privilege under the crime-fraud exception, a party must satisfy a two-part test:

> First, the party must show that "the client was engaged in or planning a criminal or fraudulent scheme when it sought the advice of counsel to further the scheme." Second, it must demonstrate that the attorney-client communications for which production is sought are "sufficiently related to" and were made "*in furtherance of* [the] intended, or present, continuing illegality."

*In re Grand Jury Investigation*, 810 F.3d 1110, 1113 (9th Cir. 2016) (quoting *In re Napster, Inc. Copyright Litig.*, 479 F.3d 1078, 1090 (9th Cir. 2007)).

The Court may rely on what the allegedly privileged communications themselves reveal to establish the crime-fraud exception. The U.S. Supreme Court has rejected an independent-evidence requirement, specifically holding that "*in camera* review may be used to determine whether allegedly privileged attorney-client communications fall within the crime-fraud exception." *United States v. Zolin*, 491 U.S. 554, 574 (1989). Here, the Court already has the challenged materials *in camera*. Thus, the question is whether the present record—including the communications themselves, Mr. Sattizahn's testimony, the timing of the State AG investigations, and any evidence of actual alteration, deletion, or concealment—satisfies both prongs of the Ninth Circuit test as to each challenged communication.

For challenges (3) through (12), listed above, the State AGs respectfully contend that the testimony and exhibits show intent on Meta's part to [redacted] after formal State AG investigations began. Specifically, as discussed, Meta was subject to preservation duties following its receipt of formal state-law investigative demands from at least California, Kentucky, Nebraska, and New Jersey. Misconduct of this kind, if undertaken with the requisite knowledge and intent, implicates state evidence-tampering statutes. *See, e.g.*, Cal. Penal Code §§ 131, 132 et seq.; Ky. Rev. Stat. §§ 367.990(3), (4); Neb. Rev. Stat. §§ 28-922, 87-1123; N.J. Stat. Ann. 2C:29-1.

The State AGs recognize that Magistrate Judge Kang previously rejected application of the crime-fraud exception as to four specific documents, but that ruling was premised on a situation that is

not present here: Magistrate Judge Kang's June 5, 2026 order reasoned that "the pre- and post-advice versions" of the underlying documents remained available, so there was no "destruction of evidence" or "irreversible or unreviewable alteration." *See, e.g.*, ECF (2630, 3053); ECF (3107) at 5, 7–8. That ruling makes actual destruction, concealment, or impairment of evidence—not merely attorney involvement in revising research—the critical factual question. That is precisely the misconduct that State AGs allege here. *See also, e.g.*, *Est. of Stonehill*, 660 F.3d at 444 ("fraud on the court cases involve a scheme by one party to hide a key fact from the court and the opposing party").

Application of the crime-fraud doctrine here would bring this Court into accordance with the D.C. Court of Appeals who recently denied Meta's mandamus petition seeking to overturn the trial court's application of the crime-fraud doctrine to four internal Meta documents containing information that appear strikingly similar in kind to the materials challenged here by the State AGs:

> The trial court noted that the documents were dated after the related multidistrict litigation began, so that the attorney communications described in the documents were relayed to Meta researchers while Meta was the subject of litigation relevant to the employees' research. The trial court found that the documents described attorney communications that "explicitly advised Meta researchers to 'remove,' 'block,' 'button[ ] up,' 'limit,' and 'update' their research" in order to "specifically limit Meta's potential liability, while Meta was already the subject of a related multidistrict litigation.

*In re Meta Platforms, Inc.*, --- A.3d ----, 2026 WL 2053555, at *2 (D.C. Ct. App. 2026).

Accordingly, if the Court's *in camera* review shows that a challenged communication furthered [redacted] during the State AG investigation or litigation, the attorney-client privilege should not shield that communication.

## CONCLUSION

The only logical explanation for Meta's directions to [redacted] is either (1) to conceal evidence of Meta's knowledge and deceptions in this ongoing MDL and related litigation, or (2) to protect Meta's business reputation in case the document is leaked. Neither saves Meta's privilege assertions here. *See* ECF (2881) at 6. For these reasons, the Court should reject Meta's privilege assertions related to Mr. Sattizahn's deposition and three exhibits.

DATED: August 17, 2026

Respectfully submitted,

**PHILIP J. WEISER**
Attorney General
State of Colorado

/s/ *Krista Batchelder*
Krista Batchelder, CO Reg. No. 45066, *pro hac vice*
Deputy Solicitor General
Jason Slothouber, CO Reg. No. 43496, *pro hac vice*
Chief Trial Counsel, Consumer Protection
Lauren M. Dickey, CO Reg. No. 45773, *pro hac vice*
First Assistant Attorney General
Elizabeth Orem, CO Reg. No. 58309
Assistant Attorney General
Colorado Department of Law
Ralph L. Carr Judicial Center
Consumer Protection Section
1300 Broadway, 7th Floor
Denver, CO 80203
Phone: (720) 508-6000
Krista.Batchelder@coag.gov

*Attorneys for Plaintiff State of Colorado, ex rel. Philip J. Weiser, Attorney General*

**ROB BONTA**
Attorney General
State of California

/s/ *Bernard A. Eskandari*
Nicklas A. Akers (CA SBN 211222)
Senior Assistant Attorney General
Bernard Eskandari (CA SBN 244395)
Emily Kalanithi (CA SBN 256972)
Supervising Deputy Attorneys General
Nayha Arora (CA SBN 350467)
David Beglin (CA SBN 356401)
Megan O'Neill (CA SBN 343535)
Joshua Olszewski-Jubelirer (CA SBN 336428)
Brendan Ruddy (CA SBN 297896)
Jordan Hefcart (CA SBN 366087)
Deputy Attorneys General
California Department of Justice
Office of the Attorney General
455 Golden Gate Ave., Suite 11000
San Francisco, CA 94102-7004
Phone: (415) 510-4400
Fax: (415) 703-5480
Megan.ONeill@doj.ca.gov

*Attorneys for Plaintiff the People of the State of California*

**RUSSELL COLEMAN**
Attorney General
Commonwealth of Kentucky

/s/ *J. Christian Lewis*
J. Christian Lewis (KY Bar No. 87109), *pro hac vice*
Philip Heleringer (KY Bar No. 96748), *pro hac vice*
Zachary Richards (KY Bar No. 99209), *pro hac vice*
Daniel I. Keiser (KY Bar No. 100264), *pro hac vice*
Matthew Cocanougher (KY Bar No. 94292), *pro hac vice*
Assistant Attorneys General
1024 Capital Center Drive, Ste. 200
Frankfort, KY 40601
Christian.Lewis@ky.gov
Philip.Heleringer@ky.gov
Zach.Richards@ky.gov
Daniel.Keiser@ky.gov

**JENNIFER DAVENPORT**
Attorney General
State of New Jersey

By: /s/ *Thomas Huynh*
Kashif T. Chand (NJ Bar No. 016752008), *Pro hac vice*
Assistant Attorney General
Brian F. McDonough (NJ Bar No. 026121980) *Pro hac vice*
Thomas Huynh (NJ Bar No. 200942017), *Pro hac vice*
Section Chief, Deputy Attorney General
Verna J. Pradaxay (NJ Bar No. 335822021), *Pro hac vice*
Mandy K. Wang (NJ Bar No. 373452021), *Pro hac vice*
Deputy Attorneys General
New Jersey Division of Law
124 Halsey Street, 5th Floor
Newark, NJ 07101

Matthew.Cocanougher@ky.gov
Phone: (502) 696-5300
Fax: (502) 564-2698

*Attorneys for Plaintiff the Commonwealth of Kentucky*

Kashif.Chand@law.njoag.gov
Brian.McDonough@law.njoag.gov
Thomas.Huynh@law.njoag.gov
Verna.Pradaxay@law.njoag.gov
Mandy.Wang@law.njoag.gov

*Attorneys for Plaintiffs Jennifer Davenport, Attorney General for the State of New Jersey, and Jeremy E. Hollander, Acting Director of the New Jersey Division of Consumer Affairs*

**SIGNATURE CERTIFICATION**

Under Civ. L.R. 5-1(h)(3), I hereby attest that all signatories listed, and on whose behalf the filing is submitted, concur in this filing's content and have authorized this filing.

DATED: August 17, 2026

*/s/ Bernard A. Eskandari*
Bernard A. Eskandari

*Attorney for Plaintiff the People of the State of California*

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: SOCIAL MEDIA ADOLESCENT ADDICTION/PERSONAL INJURY PRODUCTS LIABILITY LITIGATION<br><br>THIS DOCUMENT RELATES TO:<br><br>4:23-cv-05448 | MDL No. 3047<br><br>Case No. 4:22-md-03047-YGR<br><br>**DECLARATION OF BERNARD ESKANDARI IN SUPPORT OF STATE AGS' OBJECTIONS TO META'S PRIVILEGE ASSERTIONS CONCERNING TESTIMONY OF JASON D. SATTIZAHN**<br><br>Judge: Hon. Yvonne Gonzalez Rogers<br><br>Magistrate Judge: Hon. Peter H. Kang |

I, Bernard A. Eskandari, declare as follows:

1. I am a Supervising Deputy Attorney General and a member of the California State Bar. I represent the People of the State of California in this matter. The following facts are within my personal knowledge, except for those stated on information and belief. If called as a witness, I could and would competently testify thereto.

2. Attached as Exhibit A is a true and accurate copy of an excerpt of the transcript for *New Mexico v. Meta Platforms, Inc.*, No. D-101-CV-2023-02838, Hr'g Tr. (N.M. 1st Jud. Dist. Ct. Jan. 21,

2026).

I declare under penalty of perjury that the foregoing is true and correct. Executed on August 17, 2026, in Oakland, California.

Bernard A. Eskandari

# Exhibit A

MARICOPA REPORTING

# Transcript of Proceedings

**Date:** January 21, 2026

**Case:** State of New Mexico v. Meta Platforms, Inc., et al
**Case** #:D-101-CV-2023-02838

CONFIDENTIAL PORTIONS

Maricopa Reporting, Inc.
https://www.maricopareporting.com/
Phone: (480) 597-4744
scheduling@MaricopaReporting.com

And so we would request -- and we can do this with a separate motion if the Court prefers -- that they be precluded from being used at trial, as we have no ability to cross-examine them.

JUDGE BIEDSCHEID: All right. You certainly may make that motion.

MS. MONROE: Understood, Your Honor. Thank you.

MR. HESTER: Your Honor, may I be heard briefly?

JUDGE BIEDSCHEID: Actually, my understanding at this point is I have got a privileged objection, I've got an argument from each side, and while this would be the longest sidebar in the history of a jury trial, I am essentially ruling on that objection.

So, no, I think I've got what I need to make my ruling, but thank you.

MS. MONROE: Your Honor, if I may, just one procedural note. The State, when responding, created a ruling chart based on the page and lines in the documents. I believe Meta responded to that. And if it would be helpful for the parties to come together and create a fulsome chart where you can write the objections, we can do that. I just wanted

to note that for the Court.

JUDGE BIEDSCHEID: All right. Well, thank you for that.

So I've reviewed the Zobel and Die statements. I've reviewed the submissions on this matter. I've previously heard a bit about the Sattizahn issues and also about the Zobel and Die deposition issues.

Let me tell you, first of all, just to make it clear because, again, as you've heard me say, I do strive to have a logical thread through decisions and, that is, I did not rule as I did earlier on Zobel and Die's deposition or, rather, nondeposition based on a determination that their communications with Sattizahn necessarily amounted to attorney/client communications, but rather on their -- their statements about their understanding of their role, about communications that they very well could have been asked about related to what I think would likely have been their legal role within the company, and that, I viewed, as inappropriate.

But communications have at least two ends to them, so that was the Zobel/Die concerns of the Court.

I think as I said at the time, it is true

that I'm -- perhaps to a fault, we'll find out -- sensitive to protecting attorney/client communications and work product.

That being said, after all of the review I've done on this matter, the Court overrules the privilege objections by the defendants. The Court finds that certainly the -- the overwhelming purpose of the communications testified about and of the Sattizahn testimony go not to solicited legal advice or opinions or company legal advice being provided to Sattizahn as much as they do to, essentially, broadly dispensing more business-type advice, dispensing advice related to how to document matters, how to avoid, you know, potential -- I think what counsel said about, you know, keeping the brand safe. That was certainly my overwhelming impression from reviewing these materials.

And the Court does further find that if there's any issue about this not being properly protected matter, the Court does find that there's been waiver here in terms of a lack of diligence in terms of earlier efforts or lack thereof to pull some of these materials back from the public sector.

And then the Court also has given a great deal of thought to the fact that, again, as I guess

it's Bhandari states, there is a lack of precise guidance and contours in New Mexico as to what is privileged and what is not, but it is quite clear that this is a discretionary determination.

And I do want to say for the record that part of this exercise of discretion of this manner goes to the fact that I do believe that the -- some of the testimony and contentions of this witness do go to core issues in the case, core issues that the plaintiffs have the burden of proof on, and therefore the Court finds that it would be unreasonable and unfairly prejudicial to the plaintiffs to preclude them from presenting the testimony of this witness for the reasons that I've just stated.

So the ruling is today that the objections based on privilege are overruled. And that is as to testimony and exhibits.

MR. HESTER: Your Honor, may I request clarification on one point?

JUDGE BIEDSCHEID: Well, I don't know that I've got more articulation left in me, but I will try.

MR. HESTER: It really just goes to the question -- I'm not sure whether the State is intending to present Sattizahn at trial. But I just

wanted to make clear that the objections that have been overruled are in relation to our -- the deposition, and we would still be permitted, I would take it, to object to particular questions at trial insofar as they're seeking disclosure of privileged advice.

JUDGE BIEDSCHEID: I will just say right now, I mean, what I would envision for trial is -- I mean, one, I don't know exactly how he'll be presented, and I'm not going to request that information today.

Parties may object at trial; that is true. If the objections are taking up court or, more importantly, probably, jury time and they go to the direct issues or pretty darn close to direct issues I've just ruled on, then eventually I'm going to shut that down. But I am not ruling at this time that there can't be an objection at trial.

MR. HESTER: All right. Thank you, Your Honor.

JUDGE BIEDSCHEID: All right.

MS. MONROE: Thank you, Your Honor.

JUDGE BIEDSCHEID: Thank you.

All right. Let's see. I think --

MS. MONROE: Your Honor, do we move back