Ashley M. Simonsen (Bar No. 275203)
COVINGTON & BURLING LLP
1999 Avenue of the Stars
Los Angeles, California 90067
Telephone: (424) 332-4800
Facsimile: (424) 332-4749
Email: asimonsen@cov.com

*Attorneys for Defendant Meta Platforms, Inc. f/k/a Facebook, Inc.*

*[Additional counsel listed on signature pages]*

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

IN RE: SOCIAL MEDIA ADOLESCENT ADDICTION/PERSONAL INJURY PRODUCTS LIABILITY LITIGATION

This Document Relates To:

*People of the State of California, et al. v. Meta Platforms, Inc., et al.*

MDL No. 3047

Case Nos.: 4:22-md-03047-YGR
4:23-cv-05448-YGR

**META'S MOTION TO PRECLUDE TESTIMONY ON ATTORNEY-CLIENT PRIVILEGED COMMUNICATIONS BY FORMER EMPLOYEE JASON SATTIZAHN**

Judge: Hon. Yvonne Gonzalez Rogers
Magistrate Judge: Hon. Peter H. Kang

Date: August 18, 2026 or as soon thereafter as the Court may hear the motion
Time: 1:00 PM

## NOTICE OF MOTION AND MOTION

PLEASE TAKE NOTICE THAT, on August 18, 2026 at 1:00 PM, or as soon thereafter as the motion may be heard, before the Honorable Yvonne Gonzalez Rogers, in Courtroom 1, Floor 4, of the United States District Court, Northern District of California, located at 1301 Clay Street, Oakland, CA 94612, Defendant Meta Platforms, Inc. ("Meta") will and hereby does move this Court for an order precluding testimony on attorney-client privileged communications by Jason Sattizahn at trial as described in the accompanying Memorandum of Points and Authorities. This Motion is based on this Notice, the accompanying Memorandum, any other papers submitted in connection with the Motion, the accompanying Declaration of Ashley M. Simonsen and the exhibits thereto, and any other matters presented at the time of the hearing.

DATED: August 17, 2026

Respectfully submitted,

By: */s/ Ashley M. Simonsen*

Ashley M. Simonsen (Bar No. 275203)
COVINGTON & BURLING LLP
1999 Avenue of the Stars
Los Angeles, California 90067
Telephone: (424) 332-4800
Facsimile: (424) 332-4749
Email: asimonsen@cov.com

*Attorneys for Defendant Meta Platforms, Inc. f/k/a Facebook, Inc.*

*[Additional counsel listed on signature pages]*

# TABLE OF CONTENTS


I. BACKGROUND ........ 1

II. LEGAL STANDARD ........ 2

III. ARGUMENT ........ 3

1. The Purported Advice Sattizahn Testifies About Is Legal, Not Business, Advice ........ 5

2. Meta Has Not Waived Privilege Over the Legal Advice Provided to Sattizahn. ........ 7

3. The Crime-Fraud Exception Does Not Apply. ........ 8

CONCLUSION ........ 10

The State AGs' submission of the testimony they seek to elicit from Jason Sattizahn *confirms* that they intend to question him about documents and statements by Meta's in-house counsel conveying legal advice. Before the JCCP trial, Judge Kuhl was faced with the precise question before this Court and ruled that "Plaintiff's counsel must refrain from asking questions that will elicit testimony as to the specific attorney-client communications Sattizahn received" because "[a]dvice by counsel concerning the direction of a client's future research activities, how that research should be characterized, and whether research findings should be made public is within the protection of the attorney-client privilege." ECF 2717-1 at 26. Sattizahn then did not testify. Conversely, in the two trials where Sattizahn was permitted to testify without any such prior ruling, he repeatedly disclosed—and in several instances volunteered—privileged legal advice. This Court should follow Judge Kuhl's approach. An advance order preventing the AGs from asking about Meta's privileged communications, and precluding Sattizahn from volunteering such testimony, is crucial to set the parameters for his testimony.

## I. BACKGROUND

Jason Sattizahn is a former Meta researcher. From 2018 until early 2022, he conducted research for Facebook Marketplace, Facebook Faith, and Facebook Live Shopping. Ex. 1. at 62:19–24.[1] He then worked until April 2024 for Meta's Reality Labs division, a division that develops virtual reality ("VR") headsets and other products. *Id.* at 65:20–66:14. He never worked for Instagram. *Id.* at 407:3–10. In September 2025, nearly 18 months after his employment with Meta was terminated, Sattizahn testified before a Senate subcommittee, asserting his view that Meta's in-house lawyers [redacted]. *Id.* at 28:7–11; Ex. 2 at 4; Ex. 3 at 7–8.[2]

[1] "Dep. Tr." refers to the transcript of Sattizahn's December 8, 2025 sequestered deposition. Excerpts of that deposition were submitted to the Court *in camera* on August 14, 2026; additional excerpts are submitted *in camera* with this Motion, and are attached to the Simonsen Declaration as Exhibit 1. Meta asserts privilege over the yellow-highlighted passages of the transcript; the AGs seek to proffer at trial the passages highlighted in pink. All exhibit references herein are to the Simonsen Declaration. Privileged information in exhibits are submitted for *in camera* review, pursuant to the Parties' agreement and Court's Order that such *in camera* submissions do not waive privilege. *See* ECF 534 (3392).

[2] Although not the subject of this Motion, Meta contends that Sattizahn's testimony—addressed primarily to Meta's VR services—should separately be excluded under Rules 401 and 403. Meta's VR services provide virtual reality headsets and software. *None* of the AGs' claims relate to VR. Further, Sattizahn's purported knowledge of age-assurance issues relates to Meta's VR services, which expressly permit

Sattizahn's December 2025 deposition was conducted pursuant to a unique procedure developed by a New Mexico state-court judge whereby the questioning attorneys were permitted, subject to Meta's objections, to probe Meta's attorney-client privileged communications. Magistrate Judge Kang conditioned the AGs' attendance—like the MDL PI/SD and JCCP Plaintiffs—on their agreement that "they will not take the position that Meta waived privilege by virtue of allowing them to attend the New Mexico portion of the deposition" and "the attorney-client privilege is Meta's—not Sattizahn's—to waive." *See* ECF 2527 at 2. Magistrate Judge Kang further ordered that "the New Mexico court's rulings on [Meta's privilege objections] will not be binding in the MDL or JCCP" and that "any arguments as to admissibility shall be raised at the appropriate time with the Court presiding over the trial at issue (i.e., Judge Gonzalez Rogers for the MDL and Judge Kuhl for the JCCP)." *Id.* at 2–3.

Prior to the first JCCP trial, Judge Kuhl granted Meta's motion for an order prohibiting Sattizahn from testifying about specific communications from Meta's in-house counsel, Ex. 4 (*see also* ECF 2717-1 at 24), after which plaintiff elected not to call him. By contrast, in New Mexico and Tennessee, where the courts declined to issue advance rulings precluding such testimony, the plaintiffs did call Sattizahn, and he repeatedly offered testimony disclosing Meta's privileged communications. *See* Ex. 5 (New Mexico testimony); Ex. 6 (Tennessee Testimony). In addition to volunteering privileged information, in the Tennessee trial, Sattizahn repeatedly volunteered extraneous and inflammatory information such as references to the New Mexico trial, *see, e.g.*, Ex. 6 at 4500:4, and to a so-called "Ray-Ban/Meta stories terrorist attack in New Orleans," *see id.* at 4503:25–4504:3.

## II. LEGAL STANDARD

Testimony is properly excluded from trial if it is subject to a valid claim of attorney-client privilege. *See United States v. Bauer*, 132 F.3d 504, 510 (9th Cir. 1997) (holding that "it was error to admit" attorney-client privileged communication). When the predominant purpose of a communication is legal, it is protected by the privilege even if it also has a non-legal purpose. *Greer v. Cnty. of San Diego*, 127 F.4th 1216, 1224 (9th Cir. 2025). "[W]here attorney-client privilege is concerned, hard cases should

under-13 users. It would be highly confusing to inject these VR-related age-assurance issues into this trial, which deals with services (Facebook and Instagram) that prohibit under-13 users.

be resolved in favor of the privilege, not in favor of disclosure." *United States v. Mett*, 178 F.3d 1058, 1065 (9th Cir. 1999). "As the Supreme Court has repeatedly cautioned, '[a]n uncertain privilege, or one which purports to be certain but results in widely varying applications by the courts, is little better than no privilege at all.'" *Id.* (quoting *Upjohn Co. v. United States*, 449 U.S. 383, 393 (1981)).

## III. ARGUMENT

Barring a ruling by this Court, the bulk of Sattizahn's testimony at trial would reveal Meta's privileged communications. None of the AGs' arguments for overcoming Meta's privilege has merit.

### A. Sattizahn Will Reveal Meta's Privileged Communications at Trial Without a Prior Order

Without clear advance guardrails on Sattizahn's testimony, it is a virtual certainty that he will disclose Meta's privileged legal advice at trial. This is precisely what happened in both the New Mexico and Tennessee trials, as described below. And it will surely happen again here—the AGs are seeking to question Sattizahn about privileged communications, as reflected in their objections to Meta's privilege claims from Sattizahn's deposition. *See* Aug. 14, 2026 *in camera* submission.

In the New Mexico trial, for example, virtually the entirety of the State's substantive direct examination of Sattizahn pertained to privileged communications between Meta in-house counsel and Sattizahn. For example, the State questioned Sattizahn about a privileged document prepared by counsel entitled "Best Practices for Sensitive Research and A/C Privilege," Ex. 5 at 4131:16–4136:14, 4153:17–4161:9, and about a document that was provided to Sattizahn by "Kristin Zobel, the attorney . . . [redacted]," *id.* at 4161:18–4181:20. Notably, the AGs here seek the Court's permission to use *both* documents at trial. Moreover, counsel for New Mexico repeatedly and directly inquired into Sattizahn's knowledge of specific communications with Meta in-house counsel Kristin Zobel. *See, e.g.*, *id.* at 4124:8-9 ("What do you recall of those conversations [with Zobel]?"); *id.* at 4124:23 ("What did [Zobel] tell you?"); *id.* at 4125:8-11 ("Did [Zobel] tell you anything about [redacted] . . . What did she tell you?"); *id.* at 4125:22-25 ("Did [Zobel] talk to you at all about [redacted]? . . . What did she tell you about that?"); *id.* at 4126:17-21 ("Did [Zobel] discuss with you anything about [redacted]? . . . And what did she say?"). The trial transcript reflects

that Sattizahn responded to these extensive inquiries, over Meta's objections, by disclosing the privileged information the State sought. *See id.* The pink-highlighted deposition excerpts submitted by the AGs to the Court confirm that they seek to ask similar questions in this trial.[3]

Although the Tennessee judge never overruled Meta's privilege objections wholesale, Sattizahn nevertheless testified at length about specific communications with Zobel and other Meta attorneys conveying legal advice, necessitating multiple objections and lengthy sidebars. *See, e.g.*, Ex. 6 at 4349:17–21 (describing Zobel as "[redacted]"); *id.* at 4350:10–20 (testifying that Zobel purportedly told him to [redacted] and [redacted]); *id.* at 4351:13–4352:14 (testifying that Zobel [redacted]); *id.* at 4352:15–4353:22 (claiming he was told [redacted]); *id.* at 4356:5–12 (claiming he was [redacted]"); *id.* at 4398:8–4400:6 (similar).

Importantly, Sattizahn is likely to volunteer testimony about privileged communication *even if* the AGs' counsel were to pose questions that do not, on their face, seek to elicit such information. For example, during his redirect examination in New Mexico, Sattizahn was asked about a 2023 incident that involved alleged advice from a Meta in-house lawyer. Following an objection and sidebar, counsel for the State asked Sattizahn to explain a prior answer on that subject "without getting into details." Ex. 5 at 4332:15–16. Ignoring that direction, Sattizahn volunteered testimony providing specific details on legal advice he claimed to have received from a Meta attorney. *Id.* at 4333:17–4334:9. Given his prior testimony, there is an obvious risk that Sattizahn will volunteer details about legal advice in response to general questions—placing Meta in the untenable position of asserting privilege claims before the jury

[3] *See, e.g.*, Dep. Tr. at 125:8–10 ("I was told by Meta's legal counsel, [redacted]."); *id.* 375:25–5 ("Q. And your testimony is that [Meta's in-house counsel] specifically said . . . [redacted]? A. [redacted]."). Sattizahn's testimony in response to these questions, also highlighted in pink in the AGs' submission, included purported descriptions of legal advice on specific issues. *See, e.g.*, *id.* at 110:7–119:13 (testifying in depth about an attorney-created document titled "Best Practices for Sensitive Research and A/C"), 142:3–18 (alleging that Zobel [redacted] 376:13–377:7 (alleging that Zobel [redacted]).

after the "bell has been rung." Indeed, the AGs' counsel have acknowledged that they cannot control what Sattizahn will say in response to even the most carefully crafted questions. Simonsen Decl. ¶ 15.

In short, Sattizahn is eager to disclose the details of legal advice, as reflected in his New Mexico and Tennessee trial testimony. Some variant of Judge Kuhl's order—delineating that the AGs may not seek to elicit testimony disclosing privileged communications and legal advice, *and* that Sattizahn may not volunteer such testimony—should be entered to provide clarity in advance of Sattizahn's testimony.

**B. The AGs' Arguments for Overcoming Meta's Privilege Lack Merit.**

The AGs have proffered various theories for overcoming Meta's privilege. Judge Kang and Judge Kuhl already rejected those theories in ruling on other privilege challenges by the MDL/JCCP Plaintiffs and the AGs. The Court should likewise reject them here.

**1. The Purported Advice Sattizahn Testifies About Is Legal, Not Business, Advice.**

As reflected in the pink-highlighted deposition passages submitted to the Court, the AGs intend to question Sattizahn regarding his characterization of Meta in-house attorneys' rationale for giving privileged legal advice, Dep. Tr. at 113:11–16, the contents of specific privileged communications, 142:3–18, 376:13–377:7, and two documents over which Meta has asserted privilege, *see* Exs. 11–12. This is heartland legal advice; and the AGs' argument that it is merely business advice fails.

The overwhelming majority of the topics about which the State AGs intend to question Sattizahn pertain to his communications with Meta in-house attorney Kristin Zobel. *See*, *e.g.*, Dep. Tr. at 142:4, 348:15–17, 375:25–377:10, 378:5–11, 379:14–24, 381:19–382:5, 382:23–383:9, 384:12–17, 385:9–11. Ms. Zobel has provided sworn testimony that the only purpose of her advice was for legal reasons. *See* Ex. 7 ¶ 11 ("When advising researchers, I only provided legal advice. I did not provide advice for any business or other purposes."). This legal advice related to ways to structure and summarize Meta's internal research to avoid or mitigate *legal* risk. *See id.* It is common sense that in-house lawyers would (and, indeed, should) provide advice on how employees can comply with legal obligations relating to research. *See Upjohn Co.*, 449 U.S. at 392 ("In light of the vast and complicated array of regulatory legislation confronting the modern corporation, corporations, unlike most individuals, constantly go to lawyers to find out how to obey the law."). It is similarly conventional and proper for in-house attorneys to advise

employees on structuring reports or other internal communications to avoid imprecise language that could create risks in litigation. *See, e.g.*, *In re Uber Techs., Inc., Passenger Sexual Assault Litig.*, 2024 WL 4907142, at *4 (N.D. Cal. Nov. 27, 2024) (if an employee wrote to another employee, "'in-house counsel has asked that grounds for termination be discussed only in general terms because any error in the details could increase the risk of litigation,' that communication would likely be privileged").

The AGs also challenge two documents included as exhibits to Sattizahn's deposition[4] over which Meta claims privilege in their entirety. Both concern legal advice given by Meta in-house counsel to its researchers [redacted]. *See* Exs. 11–12. One (Exhibit 70 to Sattizahn's deposition) provides [redacted]. Ex. 11; Dep. Tr. at 488:23-489:2 (Q. [redacted]). Another (Deposition Exhibit 71), is a slide deck prepared by attorney Elaine Dai [redacted]. Ex. 12; Ex. 9 ¶ 10. Notably, after counsel for Tennessee attempted to introduce these exhibits, and Meta's counsel objected on privilege and relevance grounds, the Court did not admit either of them. *See* Ex. 6 at 4316:15–4328:15; 4341:11–4343:6.

As Judge Kuhl previously held (while addressing this same proffered testimony), "[a]dvice by counsel concerning [1] the direction of a client's future research activities, [2] how that research should be characterized, and [3] whether research findings should be made public is within the protection of the attorney-client privilege." Ex. 8 at 4; *see also id.* ("A party opponent may not, of course, invade any attorney-client privileged communications that may have *motivated the client's decision-making regarding research*." (emphasis added)). Judge Kuhl expressly "disagree[d] with [JCCP] Plaintiffs' contention"—echoed by the AGs here—"that direction provided by an attorney *regarding how a client*

[4] Meta previously claimed privilege over Exhibit 69 to Sattizahn's deposition, which Sattizahn testified "was prepared by Meta's legal team to provide legal guidance to the [research] team" and that it "was a document that would have been prepared by the lawyers and shown to [Sattizahn] and other researchers." *See* Dep. Tr. at 486:12–488:3. Although Sattizahn's testimony provided Meta with a good faith basis to assert privilege over the document, after further investigation, Meta withdraws its claim of privilege.

*should proceed with internal research to minimize legal risks* is merely 'business advice' that is not entitled to the attorney-client privilege." *Id.* at 2 (emphasis added).

Moreover, even if legal advice is motivated by a desire to protect a company's reputation or "brand"—for instance, by complying with the law or avoiding litigation—it is properly privileged if the purpose of the specific communication is to convey legal advice. *See, e.g.*, *In re Copper Mkt. Antitrust Litig.*, 200 F.R.D. 213, 219 (S.D.N.Y. 2001) (attorney advice about press releases that "was necessary in the context of the government investigation, actual and anticipated private litigation, and heavy press scrutiny" the company faced was privileged when the "legal ramifications and potential adverse use of such communications were material factors in the development of the communications"). Companies can and often do retain lawyers to protect their reputation—by ensuring that they comply with the law and minimize litigation risk—and if a lawyer provides legal advice to ensure such compliance with the law, the advice is properly subject to attorney-client privilege. *See Upjohn Co.*, 449 U.S. at 392. Indeed, one of a lawyer's "most fundamental client functions" is to "advis[e] the client" of "the likely legal impact of possible alternative expressions" when speaking. *In re Grand Jury Subpoenas Dated Mar. 24, 2003*, 265 F. Supp. 2d 321, 330 (S.D.N.Y. 2003); *see also Greer*, 127 F.4th at 1225 (noting that providing "options for avoiding future liability-creating incidents" is "a classic function of legal advice").

**2. Meta Has Not Waived Privilege Over the Legal Advice Provided to Sattizahn.**

As a threshold matter, the State AGs have waived the right to challenge Meta's assertion of privilege over the documents and communications at issue. They have been on notice of Meta's privilege claims since, at a minimum, January 26, 2026. Ex. 13. The Rule 502(d) Clawback Order in this case provides that the State AGs had 14 calendar days to challenge Meta's assertion of privilege. ECF 248 ¶ 3(a). By waiting more than six months, to the eve of trial, the State AGs waived that opportunity.

Meta has not waived its attorney-client privilege over the legal advice that Sattizahn previously disclosed to Congress or that he testified about in New Mexico and Tennessee. "[A] disclosure of confidential material constitutes a waiver of the attorney-client privilege only if it is voluntary and not compelled." *Transamerica Computer Co. v. Int'l Bus. Machs. Corp.*, 573 F.2d 646, 651 (9th Cir. 1978). And, a disclosure "made without opportunity to claim the privilege" does not effectuate waiver. *Id.*

Consistent with those principles, courts have consistently refused to find waiver in circumstances where privileged materials have been publicly disclosed to Congress or the media by a person who lacks authority to act on behalf of the privilege-holder. *See, e.g.*, *Dukes v. Wal-Mart Stores, Inc.*, 2013 WL 1282892, at *5 (N.D. Cal. Mar. 26, 2013) (unauthorized disclosure of legal memorandum to *New York Times* did not waive privilege); *see also Alexander v. F.B.I.*, 198 F.R.D. 306, 315 (D.D.C. 2000) (unauthorized disclosure of attorney-client communications in testimony to a House Committee by a "lower level . . . employee" did not waive the employer's privilege). Indeed, the AGs previously confirmed in response to direct questioning from Magistrate Judge Kang that Sattizahn could *not* waive Meta's privilege by testifying publicly before Congress about Meta's privileged communications. *See* Ex. 10 at 37:24–39:5; *accord* ECF 2523 at 2 (agreeing that "the attorney-client privilege is Meta's—not Sattizahn's—to waive"). And as Judge Kuhl succinctly noted, "Plaintiffs fail to explain how Meta has the ability to remove Congressional testimony from the public record." Ex. 8 at 3; *see also id.* at 2 ("No case has required that the holder of a privilege take extraordinary or heroic measures to preserve the confidentiality of such communications." (quoting *Regents of Univ. of Cal. v. Superior Court* (2008) 165 Cal. App. 4th 672, 675). Courts have likewise declined to find that a party waived privilege where—as in New Mexico and Tennessee[5]—disclosure of the privileged communications was compelled over that party's objections. *See Transamerica Comput. Co.*, 573 F.2d at 651 (finding based on review of case law that disclosure of privileged communications must be "voluntary and not compelled" to constitute waiver).

**3. The Crime-Fraud Exception Does Not Apply.**

Finally, the AGs cannot overcome Meta's privilege by invoking the crime-fraud exception, which requires a showing, by a preponderance of the evidence, that legal advice was in furtherance of a crime or a fraud. *In re Napster, Inc. Copyright Litig.*, 479 F.3d 1078, 1090 (9th Cir. 2007), *abrogated on other grounds by Mohawk Indus., Inc. v. Carpenter*, 558 U.S. 100 (2009). The party claiming the crime-fraud exception also bears the burden of proving that it applies to *each* challenged communication. *See Napster*,

[5] Meta maintained a running objection to Sattizahn's disclosure of privileged communications in his New Mexico trial testimony. *See* Ex. 5 at 4119:22–4120:3. The New Mexico court, applying New Mexico law, denied those objections. Meta similarly objected to Sattizahn's improper disclosure of privileged communications in Tennessee. *See, e.g.*, Ex. 6 at 4533:14–22.

479 F.3d at 1090; *In re Grand Jury Subpoena*, 419 F.3d 329, 344 (5th Cir. 2005). The AGs have made no such showing. As described above, the privileged communications Sattizahn has disclosed reflect conventional, proper legal advice aimed at mitigating legal risk that may arise from research. Lawyers can, and should, advise their clients about such potential legal risks. As the Ninth Circuit has held in addressing a similar privilege challenge, "[i]f a party could establish the crime-fraud exception simply by showing that an opponent structured a business transaction to limit its liability, the attorney-client privilege would be worth little." *Napster*, 479 F.3d at 1097. That is because "[s]uch a standard would defeat a primary purpose of the attorney-client privilege, which is to encourage individuals to seek legal counsel 'to guide them through [the] thickets' of complex laws." *Id.*

In any event, the AGs have proffered no facts that could support a finding by this Court that the crime-fraud exception applies to the specific privileged communications the AG seek to elicit at trial here.[6] Indeed, the MDL/JCCP Plaintiffs, including the AGs, have already repeatedly tried, and failed, to pierce Meta's privilege on the same "crime-fraud" theory—namely, that Meta's in-house counsel supposedly caused "spoliation" of research by suggesting changes to research studies, research summaries, and reports. *See* ECF 2474, 2633-1, 2879, 2881-1, 3053. As Judge Kuhl held in rejecting this same challenge by the JCCP plaintiffs, "[a]dvice by counsel concerning the direction of a client's future research activities, how that research should be characterized, and whether research findings should be made public is within the protection of the attorney-client privilege so long as evidence concerning such research is not destroyed and is not concealed in litigation." Ex. 8 at 2. Magistrate Judge Kang agreed, *twice* rejecting the AGs' challenge to the same documents on the same theory. *See* ECF 2629 at 23 (finding no basis to conclude that Meta had engaged in spoliation of documents); ECF 3053 at 11–12, *aff'd* ECF 3212 at 1–2. Notably, Judge Kuhl later applied this same reasoning to reject the same crime-fraud theory for piercing the privilege as to Sattizahn's testimony. *See* ECF 2717-1 at 25. The deposition passages challenged by the AGs likewise reflect conventional legal advice involving suggestions to edits to research studies or reports. *See, e.g.*, Dep. Tr. 117:2–20; 125:23–126:4; 142:5–17.

[6] The Court, not the jury, must resolve any preliminary factual questions necessary to determine whether the crime-fraud exception vitiates the attorney-client privilege. *See* Fed. R. Evid. 104(a).

In his deposition, Sattizahn alleged only two specific instances in which attorneys allegedly ordered the deletion of data: [redacted] German [redacted] and another relating to "a very specific bizarre instance" regarding a woman [redacted] Dep. Tr. at 373:19–24 (Germany); 384:2–17; 385:15–18 ([redacted]). Even were the Court to credit Sattizahn's testimony on either subject, it is facially insufficient to warrant application of the crime-fraud exception.

According to Sattizahn's testimony, [redacted] Germany [redacted] Dep. Tr. at 94:18–95:18; 195:11–197:5. But EU privacy laws govern retention of information related to an EU citizen. *See, e.g.*, G.D.P.R. 17(1), (1)(a) (imposing an "obligation to erase personal data without undue delay" where "the personal data are no longer necessary in relation to the purposes for which they were collected"); *see also* Ex. 7 ¶ 9 ("I do not direct that research findings or data should be deleted or changed. The only time I have advised that data should be removed from Meta's files is when it was necessary to ensure compliance with privacy laws and/or in accordance with any applicable Meta privacy policy precluding the retention of data, and only if that same data was not subject to a legal preservation obligation.").

In his deposition, Sattizahn also alleged that Zobel [redacted]. Dep. Tr. at 386:8–14; 387:14–24. But as Sattizahn conceded, Zobel's purported advice [redacted]. *Id.* at 386:8–14. More fundamentally, legal advice [redacted]—even if given—is not in furtherance of a "crime" or "fraud." It is rather a lawyer's considered judgment about the appropriate bounds for a research report—the sort of conventional legal advice related to research studies that in-house lawyers provide to mitigate legal risk and ensure compliance with privacy laws and other legal obligations.

**<u>CONCLUSION</u>**

For the above reasons, the Court should preclude the AGs from inquiring into, and Sattizahn from testifying about, Meta's attorney-client privileged communications at trial.

DATED: August 17, 2026

Respectfully submitted,

By: */s/ Ashley M. Simonsen*

Ashley M. Simonsen (Bar No. 275203)
COVINGTON & BURLING LLP
1999 Avenue of the Stars
Los Angeles, California 90067
Telephone: (424) 332-4800
Facsimile: (424) 332-4749
Email: asimonsen@cov.com

Paul W. Schmidt, *pro hac vice*
Timothy C. Hester, *pro hac vice*
David N. Sneed, *pro hac vice*
COVINGTON & BURLING LLP
One City Center
850 Tenth Street, NW
Washington, DC 20001-4956
Telephone: (202) 662-6000
Facsimile: (202) 662-6291
Email: pschmidt@cov.com
Email: thester@cov.com
Email: dsneed@cov.com

Brian L. Stekloff, *pro hac vice*
WILKINSON STEKLOFF LLP
2001 M Street, NW
Washington, DC 20036
Telephone: + 1 (202) 847-4030
Email: bstekloff@wilkinsonstekloff.com

Moira Penza, *pro hac vice*
WILKINSON STEKLOFF LLP
130 W 42nd Street
New York, NY 10036
Telephone: + 1 (212) 294-8914
Email: mpenza@wilkinsonstekloff.com

*Attorneys for Defendant Meta Platforms, Inc. f/k/a Facebook, Inc.*