# Exhibit 8

E-Served: Feb 2 2026 4:01PM PST Via Case Anywhere

FILED
Superior Court of California
County of Los Angeles
02/02/2026
David W. Slayton, Executive Officer / Clerk of Court
By: A. Rosas Deputy

**SUPERIOR COURT OF THE STATE OF CALIFORNIA**
**FOR THE COUNTY OF LOS ANGELES**

***Social Media Cases***
**JCCP5255**
**(Lead Case: 22STCV21355)**

**Dept. 12 SSC**
**Hon. Carolyn B. Kuhl**

**Meta's Motion to Exclude Certain Trial Testimony by Former Employee Jason Sattizahn**

Court's Ruling: The Motion is granted in part. Sattizahn may not offer testimony regarding specific attorney-client privileged communications. However, Sattizahn may provide testimony based on his personal knowledge regarding Meta's research practices and policies.

Meta moves for an order in limine to exclude or limit testimony by former Meta employee Jason Sattizahn (Sattizahn). Meta provides three main reasons for why the testimony should be excluded:

> First, as this Court recently held, Sattizahn's testimony is at its core about "advice by counsel concerning the direction of a client's future research activities, how that research should be characterized, and whether research findings should be made public"— communications that are squarely "within the protection of the attorney-client privilege." 1/15/26 Ruling on Pls.' Mot. to Comp. Prod. of Unredacted Docs. ("JCCP Privilege Ruling") at 4. Sattizahn should not be permitted to testify (and counsel should not be permitted to ask) about privileged communications with Meta's in-house counsel. Second, despite having been disclosed only as a fact witness, Sattizahn will seek to offer the type of speculative testimony this Court has already excluded as improper lay opinion testimony. See 9/22/25 Ruling on Def.' Gen. Causation Sargon Mots. ("GC Sargon Ruling") at 32-

> 33. Third, Sattizahn's testimony is irrelevant to K.G.M.'s claims and to these cases more generally: he had no role with Instagram—the only Meta service K.G.M. challenges. Any probative value of his testimony would, in any event, be substantially outweighed by its prejudicial effect, distraction, and likelihood to cause juror confusion.

(Meta's Mot., at p. 1, internal italics, bolded typeface, and brackets omitted.) Meta claims that, at a minimum, Sattizahn should be prohibited from testifying about Instagram, given that his testimony about Instagram is not based on personal knowledge. Finally, Meta argues that the court should preclude Plaintiffs from referring to Sattizahn as a "whistleblower."

Meta's first argument is well-taken, but it does not justify excluding all of Sattizahn's testimony. This court's prior conclusion applies equally here: "Advice by counsel concerning the direction of a client's future research activities, how that research should be characterized, and whether research findings should be made public is within the protection of the attorney-client privilege so long as evidence concerning such research is not destroyed and is not concealed in litigation." (Ruling on Pls' Mot. Compel Production, Jan. 15, 2026, at p. 4.) Nothing in the briefing currently before the court justifies reaching a different conclusion here. This court disagrees with Plaintiffs' contention that direction provided by an attorney regarding how a client should proceed with internal research to minimize legal risks is merely "business advice" that is not entitled to the attorney-client privilege. The fact that a business chooses to operate a certain way based on legal advice provided by its general counsel does not render the attorney-client communications non-privileged "business advice."

The court also rejects Plaintiffs' contention that Meta waived the privilege over the communications. Privilege "is waived with respect to a communication protected by the privilege if any holder of the privilege [i.e., Meta], without coercion, has disclosed a significant part of the communication or has consented to disclosure made by anyone." (Evid. Code, § 912, subd. (a).) "[T]he holder of a privilege need only take 'reasonable steps' to protect privileged communications. No case has required that the holder of a privilege take extraordinary or heroic measures to preserve the confidentiality of such communications." (*Regents of University of California v. Superior Court* (2008) 165 Cal.App.4th 672, 675.) Here, the communications were made public by Sattizahn, not by Meta, and Sattizahn did not have authorization to reveal those communication publicly. Since then, Meta has continued to state that the testimony by Sattizahn includes privileged attorney-client communications. Plaintiffs fault Meta for having "failed to take any steps to remove the testimony from the public

record," but Plaintiffs fail to explain how Meta has the ability to remove Congressional testimony from the public record. Meta's supposed failure to "raise privilege after the MDL Plaintiffs put [Sattizahn] on their witness list" is also insufficient to show waiver. "Meta does not (contrary to Plaintiffs' suggestion) seek to exclude the entirety of Sattizahn's testimony on grounds of privilege." (Meta's Reply, at p. 3, fn. 3.) Furthermore, Plaintiffs identify no authority suggesting that a party's failure to object to a witness's inclusion on a trial witness list would prevent that party from objecting to specific privileged testimony at trial.

Despite the foregoing, it is also true that the existence of legal advice regarding how Meta and its entities conducted research does not shield the actual facts of how and why such research was carried out. This court has explained:

> [The fact that attorneys communicated direction to employees] does not mean that a party opponent cannot comment on the research itself, the direction of the research, the characterization of the research findings, or the fact that research was not made public (insofar as such facts are relevant in litigation). A party opponent may not, of course, invade any attorney-client privileged communications that may have motivated the client's decision-making regarding research.

(Ruling on Pls' Mot. Compel Production, Jan. 15, 2026, at p. 4.) Accordingly, the privileged nature of the attorney-client communications does not render inadmissible Sattizahn's testimony regarding how he and other employees conducted research. For example, Sattizahn may testify that, pursuant to the company's practices/policies, he excluded certain evidence from internal studies. However, Sattizahn cannot state that, for example, on a given date he received a particular communication from a particular attorney; nor may Sattizahn detail the *specific* contents of that particular attorney communication. Plaintiffs' counsel must refrain from asking questions that will elicit testimony as to the specific attorney-client communications Sattizahn received. Meta is not incorrect to suggest that there is a danger that Sattizahn might volunteer attorney-client privileged information, but that danger cannot entirely be eliminated without improperly excluding relevant, non-privileged evidence; counsel and this court will have to work together to prevent Sattizahn from recounting specific attorney-client privileged communications when testifying before the jury.

Meta argues that testimony by Sattizahn as to how and why research was conducted should be excluded because Meta may have to rely on

attorney-client privileged communications to rebut Sattizahn's testimony. This argument is not persuasive. Meta cannot shield evidence regarding its business operations merely because those operations were informed by attorney-client privileged communications. That privileged communications might be useful in rebutting Sattizahn's testimony regarding how he and other employees were instructed to do their jobs perhaps demonstrates the danger of using attorneys to provide direct instruction to lower-level employees, but it does not justify excluding testimony from employees regarding their roles as researchers for Meta. It is not the role of the court in a ruling on a motion in limine to determine whether or not the testimony sought to be excluded is credible. If the testimony is admissible the jury determines its credibility. Moreover, the court notes that Plaintiffs have agreed to stipulate that Meta's cross-examination of Sattizahn "does not constitute waiver" of any asserted privilege. (Pls' Opp., at p. 9.)

Meta's second main argument is that Sattizahn should not be allowed to offer improper lay opinion testimony. Meta claims that "Plaintiff's counsel intends to present [Sattizahn] to the jury as a witness with expertise across a wide array of topics and the ability to offer opinion testimony on expert topics, including youth safety." (Meta's Mot., at p. 8.) As an example, Meta claims that "Sattizahn willingly and repeatedly speculated [at his deposition] about the intentions of the Reality Labs lawyers who advised him." (Meta's Mot., at p. 9.) Meta's second argument also is unpersuasive. The record makes clear that, as Plaintiffs state, Sattizahn will testify "about his experience working at Meta and Meta's research practices." (Pls' Opp., at pp. 12-13.) Such testimony is proper lay testimony, as Sattizahn's testimony would be based on facts within his personal knowledge. (*People v. Valencia (*2021) 11 Cal.5th 818, 837.) If a particular conclusion drawn by Sattizahn regarding Meta's motives in instructing researchers to exclude certain information in internal studies is too "speculative," that would not turn Sattizahn into an expert witness. Ultimately, a question calling for speculation or speculative testimony can be objected to at trial.

Meta's third argument is that Sattizahn's testimony should be excluded as irrelevant, prejudicial, and/or unsupported by Sattizahn's personal knowledge. Meta argues that, "[t]o the extent Sattizahn could offer any testimony related to any of the specific features challenged in these cases, it would be limited to Reality Labs' virtual reality products … ." (Meta' Mot., at p. 10.) Plaintiffs provide evidence in support of their contention that Sattizahn observed Meta's general research practices, practices that related to Reality Labs' virtual reality products, but also to Facebook and Instagram. (See, e.g., Pls' Opp., at p. 14, citing Sattizahn's testimony; see also McConnell Decl., Ex. E, Judge Kang's Order RE Admission of Sattizahn to Preliminary Witness List, Oct. 31, 2025, at p. 5 [stating that the court was

"not persuaded by Meta's characterization that Mr. Sattizahn's knowledge is strictly limited to [virtual reality] products"].) If there is evidence that, as Sattizahn testified, Meta's researchers operated as a "single integrated company" rather than being "siloed" into "various product lines," then Sattizahn's testimony regarding his particular research regarding virtual reality products may be relevant to claims regarding Instagram and Facebook. (Pls' Opp., at p. 14.) The question of whether Meta directed its employees to conduct research in a way that would mask the detrimental effects of its platforms/products is potentially highly relevant to K.G.M.'s claims. Given the testimony's probative value, Meta has failed to show that it should be excluded under Evidence Code section 352. Meta's claims of "undue prejudice" are restatements of its arguments regarding privilege, which are adequately addressed above and do not justify exclusion of relevant evidence.

Meta argues that, at a minimum, Sattizahn should not be allowed to testify about Instagram, given that Sattizahn's personal knowledge is limited to Facebook and Reality Labs. As explained above, it is possible that Sattizahn's research experience for Meta is relevant to K.G.M.'s claims concerning Instagram use, regardless of whether Sattizahn actually has personal knowledge about Instagram itself. Meta is correct that Plaintiffs have failed to show that Sattizahn can offer testimony regarding how Instagram itself functioned, but Sattizahn may offer evidence at trial regarding his personal knowledge of Meta's research practices insofar as those research practices concern issues relevant to Instagram's effects on minors. Whether particular testimony lacks foundation must be determined at trial.

Finally, Meta argues that Plaintiffs' counsel should be precluded from referring to Sattizahn as a "whistleblower." A "whistleblower is defined as "one who reveals something covert or who informs against another [¶] *especially*: an employee who brings wrongdoing by an employer or by other employees to the attention of a government or law enforcement agency." ("Whistleblower," Merriam-Webster Online Dictionary, https://www.merriam-webster.com/dictionary/whistleblower.) Meta argues that "labeling someone a 'whistleblower' in the presence of the jury carries with it the imprimatur that the individual is both telling the truth and has, in fact, uncovered evidence of wrongdoing." (Meta's Mot., at p. 13.) Plaintiffs can characterize Sattizahn's role using a term consistent with *their* view of the evidence – i.e., Plaintiffs' view that Sattizahn's testimony suggests wrongdoing in the nature of negligent failure to use care to protect minor users or to warn of the dangers of social media use by minors.

Meta cites two unpublished federal district court criminal cases decided under the Federal Rules of Evidence restricting the government's use of the term "victim" during a criminal trial on the ground that it the term was prejudicial insofar as it presupposed that a crime was committed. (See Meta's Mot., at p. 13 [citing two unpublished federal district court cases].) But even in *United States v. Gaviola* (E.D. Cal. 2025) 2025 U.S.Dist LEXIS 189532, one of the cases cited by Meta, the government was allowed to use the term "victim" to describe its allegations in opening and closing argument. (*Id.* at *15-*16.) Here, Meta does not dispute that Sattizahn provided testimony to Congress in order to reveal "something covert" about Meta's operations. The fact that Plaintiffs' counsel refers to Sattizahn as a "whistleblower" in stating its theory of the case would not unfairly prejudice Meta at trial.

Date: 2/2/2026

Carolyn B. Kuhl / Judge
Judge of the Superior Court of Los Angeles